IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| EASTMAN KODAK COMPANY, ALTEK | ) | |
| CORPORATION and CHINON INDUSTRIES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**ALTEK CORPORATION'S ANSWER TO
SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Altek Corporation ("Altek") responds to Plaintiff Ampex Corporation's ("Ampex") Second Amended Complaint as follows:

**NATURE OF THE ACTION**

1.      Altek admits that Ampex's Second Amended Complaint purports to allege a claim for patent infringement under the laws of the United States, 35 U.S.C. § 100 *et. seq.*  Altek denies that Ampex's Second Amended Complaint sets forth a valid cause of action under the laws of the United States that would entitle it to any damages or injunctive relief.

2.      Altek admits that Ampex's Second Amended Complaint purports to allege a claim for infringement of U.S. Patent No. 4,821,121 (the "'121 Patent"), but denies that it has committed patent infringement.  Altek states that the '121 Patent speaks for itself.  Altek is without

1

knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in paragraph 2 and therefore denies the same.

3.     Altek admits that Ampex's Second Amended Complaint purports to allege a claim for infringement of the '121 Patent, but denies that it has committed patent infringement.

## PARTIES

4.     Altek is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 and therefore denies the same.

5.     Altek is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 and therefore denies the same.

6.     Altek admits the allegations of paragraph 6 of the Second Amended Complaint.

7.     Altek is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 and therefore denies the same.

## JURISDICTION AND VENUE

8.     The allegations of paragraph 8 state conclusions of law to which no response is required. To the extent a response is required, those allegations are denied.

9.     Altek is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 and therefore denies the same.

10.     Altek admits that its subsidiary and subcontractor manufacture and/or manufactured some of the digital cameras accused of infringement in the Second Amended Complaint and that it provides or has provided some of these digital cameras to Eastman Kodak Company ("Kodak").

2

The remaining allegations of paragraph 10 state conclusions of law to which no response is required. To the extent a response is required, the remaining allegations of paragraph 10 are denied.

11.     Altek denies that it has committed acts of patent infringement. The remaining allegations of paragraph 11 state conclusions of law to which no response is required. To the extent a response is required, those allegations are denied.

## CLAIM FOR RELIEF

12.     Altek states that the '121 Patent speaks for itself. Altek is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 12 and therefore denies the same.

13.     Altek admits that its subsidiary and subcontractor manufacture and/or manufactured some of the digital cameras accused of infringement in the Second Amended Complaint and that it provides or has provided some of these digital cameras to Kodak. Altek denies that the listed digital camera models infringe the '121 Patent. Altek admits that one or more of the Defendants manufactures, uses, sells, offers to sell and/or imports into the United States some of the listed Kodak digital camera models.

14.     Altek denies that it makes, imports, uses, sells, offers for sale, markets or licenses digital cameras covered by the '121 Patent.

15.     Altek denies the allegations of paragraph 15.

16.     Altek admits that it has not entered into a license agreement with Ampex.  Altek denies

that it has committed patent infringement and denies that the claims of the '121 patent relate to

digital cameras.

17.     Altek denies the allegations of paragraph 17.

18.     Altek denies the allegations of paragraph 18.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

19.     The Second Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

20.     Altek has not infringed the patents-in-suit, has not actively induced infringement of the

patents-in-suit, and has not contributed to infringement of the patents-in-suit.

### THIRD AFFIRMATIVE DEFENSE

21.     The '121 Patent is invalid, void or unenforceable under one or more sections of Part II of

Title 35 of the U.S. Code, including without limitation 35 U.S.C. §§ 102, 103 and 112.

### FOURTH AFFIRMATIVE DEFENSE

22.     Altek has not willfully infringed and is not willfully infringing the '121 Patent.

### FIFTH AFFIRMATIVE DEFENSE

23.     Plaintiff's alleged claims for relief are barred by the doctrine of laches.

4

## SIXTH AFFIRMATIVE DEFENSE

24.    This court lacks jurisdiction over one or more of the defendants.

## SEVENTH AFFIRMATIVE DEFENSE

25.    The '121 Patent is unenforceable due to inequitable conduct.  Specifically, and as set

forth in paragraphs 32 through 46 of Count III of Defendant's Counterclaim, Ampex committed

inequitable conduct during prosecution before the United States Patent and Trademark Office

("USPTO") of the patent applications that led to the patent-in-suit by:

(i)    intentionally not disclosing to the USPTO a product (Ampex's AVA system) that

was promoted and sold by Ampex itself and that demonstrated the critical features

of Ampex's alleged invention, including the ability to capture a video image,

generate a reduced size lower resolution image from the captured full size image,

store the full size image and the reduced size image in random access memory

and on disk, recall the full size image and the reduced size image from disk to

random access memory, and display multiple reduced size images.  Ampex and

individuals involved in the prosecution of the '121 Patent were aware of the

Ampex Video Art system ("AVA") and its features.  Daniel Beaulier, the named

inventor of the '121 Patent, designed parts of the AVA and had knowledge of the

AVA's features prior to filing the applications that issued as the '121 Patent;

**REDACTED**                        Joel Talcott, Esq., Ampex's

Patent Counsel during the prosecution of the '121 Patent, and other attorneys who

prosecuted the '121 Patent, including Gregory Roth, Esq., were involved in the

5

prosecution of at least one patent directed to the AVA system filed before the applications that issued as the '121 Patent;

**REDACTED**

and Mr. Talcott and others involved in the prosecution of the '121 Patent were aware of the AVA before and during the prosecution of the applications that issued as the '121 Patent;

(ii)    intentionally not disclosing to the USPTO a product that Ampex was aware of (the Quantel Paint Box) which demonstrated the critical features of Ampex's alleged invention, including the ability to capture a video image, generate a reduced size lower resolution image from the captured full size image, store the full size image and the reduced size image in random access memory and on disk, recall the full size image and the reduced size image from disk to random access memory, and display multiple reduced size images. Ampex and individuals involved in the prosecution of the '121 Patent were aware of the Quantel Paint Box ("Paint Box") and its features. Mr. Talcott and others at Ampex considered the Paint Box to be a competitive product

**REDACTED**                        Mr. Talcott

was aware of the Paint Box during the prosecution of the applications that issued as the '121 Patent;

**REDACTED**

and Mr. Beaulier, Mr. Talcott, and members of Ampex's Patent Department attended the National Association of Broadcasters

6

("NAB") meeting in Dallas between April 4-7, 1982, where the Paint Box was demonstrated;

(iii)   intentionally not disclosing to the USPTO a product that Ampex was aware of (the Quantel DLS 6000 series) which demonstrated the critical features of Ampex's alleged invention, including the ability to capture a video image, generate a reduced size lower resolution image from the captured full size image, store the full size image and the reduced size image in random access memory and on disk, recall the full size image and the reduced size image from disk to random access memory, and display multiple reduced size images. Ampex and individuals involved in the prosecution of the '121 Patent were aware of the DLS 6000 series ("DLS") and its features. Mr. Beaulier observed the DLS in operation at trade shows and elsewhere and knew that the DLS was relevant to the '121 Patent;

**REDACTED**

and

(iv)   making other material omissions and misrepresentations to the USPTO during prosecution of the applications that issued as the '121 Patent, including arguing that the prior art did not disclose a direct connection between disk and random

7

access memory even though Ampex was aware that its own AVA system disclosed this feature; arguing that the prior art did not disclose storing full and reduced size images simultaneously in random access memory even though Ampex was aware that its own AVA system disclosed this feature; and arguing that the prior art did not disclose storing reduced size images on disk using only the memory corresponding to the reduced size image even though Ampex was aware that its own AVA system disclosed this feature. Ampex and individuals involved in the prosecution of the '121 Patent knew that the AVA had these features. Mr. Beaulier designed parts of the AVA and had knowledge of the AVA's features prior to filing the applications that issued as the '121 Patent;

**REDACTED**

Mr. Talcott and other attorneys who prosecuted the '121 Patent, including Mr. Roth, were involved in the prosecution of at least one AVA patent filed before the applications that issued as the '121 Patent;

**REDACTED**                     and

Mr. Talcott and others involved in the prosecution of the '121 Patent were aware of the AVA before and during the prosecution of the applications that issued as the '121 Patent.

## COUNTERCLAIMS

Defendant/Counterclaimant Altek Corporation ("Altek") alleges as follows:

26.    These counterclaims seek a declaratory judgment of invalidity, unenforceability and non-infringement of U.S. Patent No. 4,821,121 (the '121 Patent).

8

27.    Jurisdiction of these Counterclaims arises under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, under the laws of the United States concerning actions relating to patents, 28 U.S.C. § 1338(a), under the patent laws of the United States, 35 U.S.C. § 1, et. seq., and under the Court's pendant jurisdiction.  There is a justiciable controversy between Altek and Ampex concerning the validity, infringement and enforceability of the '121 Patent and Altek's liability for infringement thereof.

## Count I - Declaratory Judgment – Invalidity

28.    Paragraphs 1-27 are realleged and incorporated fully as if set forth herein.

29.    The '121 Patent is invalid because it fails to satisfy the conditions for patentability specified in 35 U.S.C. §§ 101 et. seq.

## Count II - Declaratory Judgment – Non-Infringement

30.    Paragraphs 1-29 are realleged and incorporated fully as if set forth herein.

31.    Altek has not infringed and is not infringing the '121 Patent, neither directly, by inducing, nor contributing to infringement by others.

## Count III - Declaratory Judgment – Unenforceability

32.    Paragraphs 1-31 are realleged and incorporated fully as if set forth herein.

33.    The '121 Patent is unenforceable due to inequitable conduct.  The individuals responsible for the preparation, filing, and/or prosecution of the applications that issued as the '121 Patent committed inequitable conduct during prosecution before the USPTO.  Evidence obtained during discovery in the International Trade Commission investigation has uncovered details regarding prior art systems that were known to these individuals, but not disclosed to the USPTO, and

9

misrepresentations made by those individuals during the course of Ampex's prosecution of the '121 Patent. This evidence demonstrates that these individuals breached their duty to prosecute the '121 Patent with candor, good faith, and honesty. Such conduct constitutes fraud before the USPTO and renders the '121 Patent void and/or unenforceable.

34.     Ampex asserts that the claims of the '121 Patent are directed to a device and method for generating and storing reduced size images in random access memory and bulk memory along with full size images. Daniel A. Beaulier, the sole named inventor listed on the '121 Patent, and other individuals associated with the preparation, filing and prosecution of the '121 Patent – including Joel Talcott, Esq., Ampex's Patent Counsel at the time and Gregory Roth, Esq., – were aware of non-cumulative, material prior art systems that operated in the manner described by the claims of '121 Patent. Mr. Beaulier, Mr. Talcott and other individuals involved in the preparation, filing and prosecution of the '121 Patent were aware of the Ampex Video Art system ("AVA"), the Quantel Paint Box ("Paint Box") and the Quantel DLS 6000 series ("DLS"). All of these systems are prior art to the '121 Patent and disclose all or most of the elements of the claims of the '121 Patent. These systems are not cumulative of the prior art before the USPTO as they disclose claim limitations not found in the prior art of record. In addition, these systems are material to the patentability of the invention claimed in the '121 Patent because either alone, or together with other prior art, these systems render invalid the asserted claims of the '121 Patent. Over the six-year prosecution of the '121 Patent, Ampex never disclosed these systems to the USPTO.

**A.     The AVA**

35.     Ampex and individuals involved in the prosecution of the '121 Patent were aware of the AVA system, which is an Ampex product that existed when Ampex prosecuted the applications leading to the '121 Patent. Daniel Beaulier designed parts of the AVA and had knowledge of the AVA's features prior to filing the applications that issued as the '121 Patent.

**REDACTED**
          Mr. Talcott and other attorneys who prosecuted the '121 Patent, including Mr. Roth, were involved in the prosecution of at least one patent directed to the AVA system filed before the applications that issued as the '121 Patent.

                    **REDACTED**
Mr. Talcott and others involved in the prosecution of the '121 Patent were aware of the AVA before and during the prosecution of the applications that issued as the '121 Patent.

36.     The AVA was a video graphics system that allowed an operator to capture, manipulate, and store video images. The AVA could capture a video image and create a reduced size lower resolution image from the captured full size image. The AVA could also store both the full size image and the reduced size image in random access memory and on disk. The AVA could also recall the full size image and the reduced size image from disk to random access memory, and could display multiple reduced size images. The AVA is prior art to the '121 Patent and discloses all of the elements of the asserted claims of the '121 Patent. The AVA was material to the patentability of the invention claimed in the '121 Patent because it alone renders invalid the claims of the '121 Patent and is not cumulative of the prior art of record. Despite being aware of this reference and its materiality, Mr. Beaulier, Mr. Talcott, Mr. Roth and others failed to bring this system to the attention of the USPTO during prosecution of the applications that issued as

the '121 Patent. The circumstances demonstrate that Mr. Beaulier, Mr. Talcott, Mr. Roth and

others failed to cite the AVA system with the intention to deceive the USPTO.

### B.     The Quantel Paint Box

37.     Ampex, Mr. Talcott and Mr. Beaulier were aware of the Quantel Paint Box during

prosecution of the applications leading to the '121 Patent. Quantel, the company that produced

the Paint Box, competed with Ampex in the early 1980s. Mr. Talcott and others at Ampex

considered the Paint Box to be a competitive product.

REDACTED                                    Mr. Talcott was aware of the

Paint Box during prosecution of the applications issued as the '121 Patent.


REDACTED

                              Mr. Beaulier, Mr. Talcott, and approximately

100 Ampex employees attended the NAB meeting in Dallas between April 4 and 7, 1982, where

the Paint Box was publicly displayed and demonstrated.

38.     The Paint Box was a video graphics system that allowed an operator to capture, store, and

manipulate video images. The Paint Box could capture a video image, generate a reduced size

lower resolution image from the captured full size image, and store both the full size image and

the reduced size image in random access memory and on disk. The Paint Box could also access

the full size image and the reduced size image from disk to random access memory. The Paint

Box could also display multiple reduced size images. The Paint Box system is prior art to the

'121 Patent and encompasses all or most of the asserted claims of the '121 Patent. The Paint

Box was material to the patentability of the invention claimed in the '121 Patent because it alone

12

renders invalid the claims of the '121 patent and is not cumulative of the prior art of record. Despite being aware of this reference and its materiality, Mr. Beaulier, Mr. Talcott and others failed to bring this system to the attention of the USPTO during prosecution of the applications that issued as the '121 Patent. The circumstances demonstrate that Mr. Beaulier, Mr. Talcott and others failed to cite the Paint Box with the intention to deceive the USPTO.

### C.    The Quantel DLS 6000 series

39.    Ampex, Mr. Talcott, and Mr. Beaulier were aware of the Quantel DLS 6000 series when Ampex prosecuted the applications for the patent leading to the '121 Patent. Mr. Beaulier observed the DLS in operation at trade shows and elsewhere. Mr. Beaulier also knew that the DLS was relevant to the '121 Patent.


**REDACTED**


40.    The DLS was a still store that allowed an operator to capture, store, and manipulate video images. The DLS could capture a video image and generate a reduced size lower resolution image from the captured full size image. The full size image and the reduced size image could be stored in random access memory and on disk. The DLS could also recall the full size image and the reduced size image from disk to random access memory and could display multiple

reduced size images. The DLS is prior art to the '121 Patent and encompasses all or most of the claims of the '121 Patent.

41.     Mr. Beaulier and other individuals involved in the filing and prosecution of the '121 Patent disclosed one article and two patents – U.S. Patent No. 4,172,264 ("the '264 patent") and U.S. Patent No. 4,302,776 (the "Taylor '776 patent") – describing certain features the DLS, but did not disclose the DLS itself. The disclosed references did not fully describe all of the relevant features of the DLS. The DLS was material to the patentability of the invention claimed in the '121 Patent because it alone renders invalid the claims of the '121 Patent and is not cumulative of the prior art of record. Despite being aware of this reference and its materiality, Mr. Beaulier, Mr. Talcott and others failed to bring the DLS to the attention of the USPTO during prosecution of the applications that issued as the '121 Patent. The circumstances demonstrate that Mr. Beaulier, Mr. Talcott and others failed to cite the DLS with the intention to deceive the USPTO.

### D.     Other Material Omissions and Misrepresentations By Ampex During Prosecution of the '121 Patent

42.     The Ampex individuals responsible for the preparation, filing, and prosecution of the '121 Patent made material misrepresentations before the USPTO. During prosecution of the applications that issued as the '121 Patent, Ampex argued that the Taylor '776 patent did not disclose the direct transfer of images between disk and random access memory. However, Ampex's own AVA system had the capability to directly transfer images between disk and random access memory.

43.     Ampex further argued during prosecution of the applications that issued as the '121 Patent that the Taylor '776 patent did not disclose storing the full size image and the reduced size image in random access memory at the same time. However, Ampex's own AVA system had

the capability to store the full size image and the reduced size image in random access memory at the same time.

44.     Ampex further argued during prosecution of the applications that issued as the '121 Patent that the prior art did not teach storage of reduced size images on disk using only the memory corresponding to the reduced size image. However, Ampex's own AVA system had the capability to store reduced size images on disk using only the memory corresponding to the reduced size image.

45.     Ampex and individuals involved in the prosecution of the '121 Patent knew that the AVA had the features described in the preceding paragraphs. Daniel Beaulier designed parts of the AVA and had knowledge of the AVA's features prior to filing the applications that issued as the '121 Patent

                          REDACTED
                                      Mr. Talcott and other attorneys who
prosecuted the '121 Patent, including Mr. Roth, were involved in the prosecution of at least one patent directed to the AVA system filed before the applications that issued as the '121 Patent.

                          REDACTED
                                      Mr. Talcott and others involved in the prosecution
of the '121 Patent were aware of the AVA before and during the prosecution of the applications that issued as the '121 Patent.

46.     The circumstances demonstrate that Mr. Beaulier, Mr. Talcott, Mr. Roth and/or others involved with the preparation, filing and/or prosecution of the '121 patent, by making material misrepresentations, intended to deceive and mislead the USPTO, and this deceit resulted in the

'121 Patent issuing when it otherwise would not have issued. Accordingly, the '121 Patent is unenforceable due to inequitable conduct.

## RELIEF REQUESTED

WHEREFORE, Altek Corporation prays that judgment be entered:

(a)     Dismissing the Second Amended Complaint with prejudice;

(b)     Adjudging the '121 Patent to be invalid, unenforceable and not infringed by any of the defendants;

(c)     Awarding to defendants their costs and reasonable attorneys' fees incurred in defending this action pursuant to 35 U.S.C. § 285; and

(d)     Granting such other and further relief as the Court may deem just and proper.

PRICKETT, JONES & ELLIOTT, P.A.

BY: _____
PAUL M. LUKOFF (I.D. #96)
DAVID E. BRAND (I.D. #201)
1310 King Street
P. O. Box 1328
Wilmington, DE 19899
Tel. 302.888.6500
Fax: 302.888-6331

*Attorneys for Defendant,*
Altek Corporation

16

OF COUNSEL:

William P. DiSalvatore
S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

William F. Lee
Donald R. Steinberg
Michael Summersgill
Monica Grewal
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Date:  September 22, 2005

17

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2005, I electronically filed **ALTEK CORPORATION'S REDACTED ANSWER TO SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

I hereby certify that on September 27, 2005, I have forwarded the above-noted documents to the following non-registered participants as noted below:

**VIA U. S. MAIL**

Jesse J. Jenner, Esquire
Sasha G. Rao, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

**VIA E-MAIL**

Norman H. Beamer, Esquire
Gabrielle E. Higgins, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301

PAUL M. LUKOFF (Bar I.D. #96)
DAVID E. BRAND (Bar I.D. #201)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE  19899-1328
TEL: 302-888-6500
E-MAIL:  PMLukoff@prickett.com
                DEBrand@prickett.com

19660.3\286110v1