IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPEX CORPORATION, | ) |
| | ) |
| *Plaintiff,* | ) C.A. No. 04-1373 (KAJ) |
| | ) |
| v. | ) **(Jury Trial Demanded)** |
| | ) |
| EASTMAN KODAK COMPANY, ALTEK CORPORATION, and CHINON INDUSTRIES, INC., | ) |
| | ) |
| *Defendants.* | ) |

## AMPEX'S REPLY TO ALTEK CORPORATION'S COUNTERCLAIMS

Plaintiff Ampex Corporation ("Ampex") hereby replies to defendant Altek Corporation's ("Altek") Answer to Second Amended Complaint for Patent Infringement. Ampex replies to the numbered paragraphs of Altek's Counterclaims as follows:

26.     Ampex admits that Altek purports to seek a declaratory judgment of patent invalidity, unenforceability and non-infringement as set forth in paragraph 26 of Altek's Counterclaims.

27.     Ampex admits that Altek invokes the jurisdiction of this Court under the provisions set forth in paragraph 27 of Altek's Counterclaims, and admits that a justiciable controversy exists between the parties as set forth in paragraph 27 of Altek's Counterclaims.

28.     With respect to paragraph 28 of Altek's Counterclaims, Ampex states that, to the extent that said paragraph incorporates admissions, denials, or other answers to Ampex's averments in Ampex's complaint, and to the extent that such incorporation is not susceptible to reply, Ampex does not reply. Notwithstanding the foregoing, Ampex admits that it has alleged a claim for infringement of U.S. Patent No. 4,821,121 (the "'121 patent"), and admits that it

previously notified Altek in writing of the existence of the '121 patent and offered to license the '121 patent to Altek. In addition, Paragraphs 33-46 of this Reply are incorporated fully as if set forth herein. To the extent paragraph 28 of Altek's Counterclaims contain averments not denied or admitted above, Ampex denies the averments.

29.     Ampex denies each and every averment in paragraph 29 of Altek's Counterclaims.

30.     With respect to paragraph 30 of Altek's Counterclaims, Ampex states that, to the extent that said paragraph incorporates admissions, denials, or other answers to Ampex's averments in Ampex's complaint, and to the extent that such incorporation is not susceptible to reply, Ampex does not reply. Notwithstanding the foregoing, Ampex admits that it has alleged a claim for infringement of the '121 patent, and admits that it previously notified Altek in writing of the existence of the '121 patent and offered to license the '121 patent to Altek. In addition, Paragraphs 33-46 of this Reply are incorporated fully as if set forth herein. To the extent paragraph 30 of Altek's Counterclaims contain averments not denied or admitted above, Ampex denies the averments.

31.     Ampex denies each and every averment in paragraph 31 of Altek's Counterclaims.

32.     With respect to paragraph 32 of Altek's Counterclaims, Ampex states that, to the extent that said paragraph incorporates admissions, denials, or other answers to Ampex's averments in Ampex's complaint, and to the extent that such incorporation is not susceptible to reply, Ampex does not reply. Notwithstanding the foregoing, Ampex admits that it has alleged a claim for infringement of the '121 patent, and admits that it previously notified Altek in writing of the existence of the '121 patent and offered to license the '121 patent to Altek. In addition,

Paragraphs 33-46 of this Reply are incorporated fully as if set forth herein. To the extent paragraph 32 of Altek's Counterclaims contain averments not denied or admitted above, Ampex denies the averments.

33. Ampex denies each and every averment in paragraph 33 of Altek's Counterclaims. All of the individuals who were substantively involved in the preparation and prosecution of the applications that led to the issuance of the '121 patent were aware of their duties of candor and good faith dealing with the United States Patent and Trademark Office ("USPTO"), and were aware of their duty to disclose material prior art that they were aware of to the USPTO. Furthermore, these individuals complied with their duties and obligations to the USPTO. The inventor, Daniel A. Beaulier, correctly believed that the prior art identified and described in the '121 application (appearing in Column 1 of the issued '121 patent) was the most pertinent prior art that he was aware of, and correctly believed that the description of that art set forth in the '121 application was accurate and complete. The attorneys and agents involved in the prosecution of the '121 application properly relied on Mr. Beaulier's knowledge and understanding of the pertinent art, as described in the '121 application, and were not aware of any other prior art or information that was more material to the prosecution of the '121 applications. In addition, none of the individuals involved in the prosecution of the '121 application intentionally withheld any prior art or information, or otherwise participated in the prosecution, with any intent to mislead the USPTO or any of the USPTO Examiners involved in the prosecution.

34. With respect to paragraph 34 of Altek's Counterclaims, Ampex denies that the averment in the first sentence of paragraph 34 completely and accurately describes the subject matter of the '121 patent claims. The claims themselves correctly describe the invention

3

of those claims. Ampex admits that Daniel A. Beaulier is the sole named inventor of the '121 patent. Ampex admits that Mr. Beaulier was involved with the preparation and filing of the original application that led to the '121 patent, but denies that Mr. Beaulier was involved with the prosecution of the applications that led to the '121 patent after June 1983. Ampex admits that Joel Talcott was Ampex's Patent Counsel from 1983 to 1987, and that he was promoted to General Counsel in 1987. Ampex admits that from 1983 through 1989, Mr. Talcott's responsibilities included supervision of in-house patent attorneys and agents and outside counsel doing Ampex's patent prosecution work, but denies that Mr. Talcott had substantive involvement in the preparation, filing and prosecution of the applications that led to the '121 patent. Ampex admits that Gregory Roth was involved with the preparation and filing of the original application that led to the '121 patent, but denies that Mr. Roth was involved with the prosecution of the applications that led to the '121 patent after the original application was filed. Ampex denies that Mr. Beaulier, Mr. Talcott, Mr. Roth, or any individual substantively involved in the preparation, filing or prosecution of the '121 patent was aware of any non-cumulative, material prior art that disclosed or described the subject matter of the claims of the '121 patent. Ampex denies that during the prosecution of the '121 patent, Mr. Beaulier, Mr. Talcott, Mr. Roth, or any individual substantively involved in the preparation, filing or prosecution of the '121 patent had knowledge of the features and operation of the Ampex Video Art system ("AVA") or Quantel Paint Box that Altek alleges are relevant to the '121 patent claims. Ampex admits that Mr. Beaulier had knowledge of the pertinent features of the Quantel DLS 6000, all of which were disclosed to the USPTO in the '121 patent specification and art cited therein. Ampex otherwise denies that during the prosecution of the '121 patent, Mr. Beaulier, Mr. Talcott, Mr. Roth, or any individual substantively involved in the preparation, filing or prosecution of the '121 patent had

knowledge of the features and operation of the Quantel DLS 6000 that Altek alleges are relevant to the '121 patent claims. Ampex denies that any AVA, Quantel Paint Box, and Quantel DLS 6000 products contained the combination of features alleged by Altek, or that they were operated in the manner alleged by Altek. Ampex denies that AVA, the Quantel Paint Box, and the Quantel DLS 6000 disclose all or most of the elements of the claims of the '121 patent, denies that these systems are material to the patentability of the inventions claimed in the '121 patent, denies that these systems either alone or together with other prior art render invalid the asserted claims of the '121 patent, denies that these systems disclose claim limitations not found in the prior art of record, and denies that these systems are not cumulative with respect to the prior art that was cited and considered by the USPTO during the prosecution of the '121 patent. In reply, Ampex states that the AVA, Quantel Paint Box, and Quantel DLS 6000 are less pertinent than, and in any event are at most cumulative to, the disclosure of the '776 patent and other prior art disclosed, cited and described in the '121 patent specification. To the extent paragraph 34 contains averments not denied or admitted above, Ampex denies the averments.

35.    With respect to paragraph 35 of Altek's Counterclaims, Ampex denies that Mr. Beaulier, Mr. Talcott, Mr. Roth, or others involved in the prosecution of the '121 patent had knowledge of "the AVA's features" that Altek alleges are relevant to the '121 patent claims during the prosecution that led to the '121 patent. Ampex admits that various versions of products called "AVA" were Ampex products that existed when Ampex filed the original application leading to the '121 patent. Ampex admits that Mr. Beaulier and another engineer, who were not members of the AVA design team, worked for a short time on some analog boards to be used in the AVA system, but denies that these analog boards have anything to do with any size reduction or cut and paste feature of AVA, or any other features of AVA that Altek alleges

5

are pertinent to the subject matter of the '121 claims. Ampex denies that the documents cited by Altek reveal that Mr. Beaulier did any work related to the AVA's features that Altek alleges are relevant to the '121 patent claims. Ampex denies that the AVA's features that Altek alleges are relevant to the '121 patent claims were described in memos and documents that were distributed to Mr. Beaulier and Mr. Talcott. Ampex admits that Mr. Roth was involved in the prosecution of U.S. Patent 4,564,915 relating to a YIQ Computer Graphics System, but denies that such patent relates to "the features of the AVA" that Altek claims are relevant to the '121 patent claims. Ampex admits that Mr. Talcott supervised Ampex patent prosecution for a period of time after the '915 patent application was filed, but denies that Mr. Talcott had substantive involvement in the prosecution of the '915 patent. To the extent paragraph 35 contains averments not denied or admitted above, Ampex denies the averments.

36.  With respect to paragraph 36 of Altek's Counterclaims, Ampex denies that the AVA operated in the manner set forth in the '121 patent claims. Ampex admits that it manufactured and sold products called "AVA" prior to April 1982. Ampex denies that all of the documents relied on by Altek, documents which are dated over a wide time span, refer to the same AVA device, or that any particular device or document is properly classified as prior art to the '121 patent. Ampex denies that AVA discloses all of the elements of the asserted '121 patent claims, denies that AVA was material to the patentability of the '121 patent claims, denies that AVA renders invalid the '121 patent claims, and denies that AVA is not cumulative of the prior art of record. The '121 patent cites and describes the '776 patent owned by Quantel. Like the '776 patent, AVA does not embody any of the inventions of the '121 patent claims. AVA is less pertinent than the '776 patent, which was cited and considered during the prosecution of the '121 patent. Ampex denies that Mr. Beaulier, Mr. Talcott, Mr. Roth, or others involved in the

prosecution of the '121 patent were aware of the AVA's features that Altek claims are relevant to the '121 patent claims during the prosecution of the '121 patent. Ampex denies that Mr. Beaulier, Mr. Talcott, Mr. Roth, or others substantively involved in the prosecution of the '121 patent failed to cite AVA with the intention to deceive the USPTO. To the extent paragraph 36 contains averments not denied or admitted above, Ampex denies the averments.

37.     With respect to paragraph 37 of Altek's Counterclaims, Ampex denies that Mr. Beaulier or Mr. Talcott gained knowledge, before or during the prosecution of the '121 patent, of the features and operation of any Quantel Paint Box products that Altek alleges are relevant to the subject matter of the '121 claims. Ampex admits that Quantel was a competitor of Ampex in the early 1980's, but denies that the Quantel Paint Box competed with Ampex's ESS-3, or any other product that embodied the '121 patent claims. Ampex denies that documents that were distributed to Mr. Beaulier described the Quantel Paint Box features that Altek alleges are relevant to the '121 patent claims. Ampex admits that Mr. Beaulier and Mr. Talcott attended the NAB meeting in 1982, but denies that Mr. Beaulier or Mr. Talcott observed the features or operation of any Quantel Paint Box system that Altek alleges are relevant to the '121 patent claims. To the extent paragraph 37 contains averments not denied or admitted above, Ampex denies the averments.

38.     With respect to paragraph 38 of Altek's Counterclaims, Ampex denies that the Quantel Paint Box operated in the manner set forth in the '121 patent claims. Ampex denies that the documents relied on by Altek refer to a single Paint Box device, or that any particular device or document is properly classified as prior art to the '121 patent. Ampex denies that the Paint Box encompasses all or most of the asserted '121 patent claims, denies that the Paint Box was material to the patentability of the '121 patent claims, denies that the Paint Box renders

invalid the '121 patent claims, and denies that the Paint Box is not cumulative of the prior art of record. The Paint Box is less pertinent than the '776 patent, which was cited and considered during the prosecution of the '121 patent. Ampex denies that Mr. Beaulier, Mr. Talcott, or others involved in the prosecution of the '121 patent were aware of the features of the Paint Box that Altek alleges are relevant to the '121 patent claims during the prosecution of the '121 patent. Ampex denies that Mr. Beaulier, Mr. Talcott, or others involved in the prosecution of the '121 patent failed to cite the Paint Box with the intention to deceive the USPTO. To the extent paragraph 38 contains averments not denied or admitted above, Ampex denies the averments.

39. With respect to paragraph 39 of Altek's Counterclaims, Ampex admits that Mr. Beaulier was aware of the Quantel DLS 6000 when Ampex prosecuted the applications leading to the '121 patent. All pertinent aspects of the Quantel DLS 6000 are disclosed in Column 1 of the '121 patent. The '121 patent also cites and describes the Quantel '776 patent, that discloses the pertinent aspects of the Quantel DLS 6000. The Quantel DLS 6000 was at most cumulative of the '776 patent, which was cited and considered during the prosecution of the '121 patent. U.S. Patent 4,172,264 and an article describing features of the DLS 6000 entitled "The DLS 6000 A New Digital Still Store Library System" were also cited and considered during the prosecution of the '121 patent. Ampex admits that Ampex document, AMP12596-98, states that "some of the ESS design team had an opportunity to . . . view competitive equipment (Quantel 6000)," but denies that the document states that Mr. Beaulier inspected the DLS. To the extent paragraph 39 contains averments not denied or admitted above, Ampex denies the averments.

40. With respect to paragraph 40 of Altek's Counterclaim, Ampex denies that the Quantel DLS 6000 operated in the manner set forth in the '121 patent claims, and denies that

the Quantel DLS 6000 encompasses all or most of the asserted '121 patent claims. Ampex admits that a version of the Quantel DLS 6000 was publicly demonstrated prior to April 1982, and that patents were issued and an article was published about the Quantel DLS 6000 prior to April 1982. Ampex denies that all of the documents relied on by Altek, documents which are dated over a wide time span, refer to the same Quantel DLS 6000 device, or that any particular device or document is properly classified as prior art to the '121 patent. All pertinent aspects of the Quantel DLS 6000 were cited and considered during prosecution of the '121 patent through the Column 1 discussion of actual electronic still store systems, the citation of U.S. Patents 4,172,264 and 4,302,776, and the article entitled "The DLS 6000 A New Digital Still Store Library System." To the extent paragraph 40 contains averments not denied or admitted above, Ampex denies the averments.

41.  With respect to paragraph 41 of Altek's Counterclaim, Ampex admits that the prior art that was cited and considered during the prosecution of the '121 patent included one article and two patents that describe the Quantel DLS 6000 — U.S. Patents 4,172,264 and 4,302,776, and the article entitled "The DLS 6000 A New Digital Still Store Library System." The '121 patent application also included a background discussion of actual prior art systems ('121 patent, Column 1, lines 15-61). Although the name "Quantel DLS 6000" is not explicitly mentioned, the background discussion discloses the pertinent aspects of the Quantel DLS 6000. Ampex denies that these disclosures of the Quantel DLS 6000 made during the prosecution of the '121 patent did not fully describe all of the features of the Quantel DLS 6000 that are relevant to the '121 patent claims. Ampex denies that the Quantel DLS 6000 was material to the patentability of the '121 patent claims, denies that the Quantel DLS 6000 renders invalid the '121 patent claims, and denies that Quantel DLS 6000 is not cumulative of the prior art of

9

record. At most, the Quantel DLS 6000 is cumulative of the '776 patent, which was cited and considered during the '121 prosecution. Ampex denies that the pertinent aspects of the Quantel DLS 6000 were not before the '121 Patent Examiner, and denies that Mr. Beaulier, Mr. Talcott or others substantively involved with the '121 patent prosecution acted with any intent to deceive the USPTO. To the extent paragraph 41 contains averments not denied or admitted above, Ampex denies the averments.

42. With respect to paragraph 42 of Altek's Counterclaim, Ampex denies that individuals responsible for prosecuting the '121 patent made material misrepresentations or omissions before the USPTO. Ampex admits that it amended claims during the '121 patent prosecution to require "direct transfer" to distinguish the Taylor '776 patent, which interposed a size reducer between disk storage (18/20) to the frame store (24/124/125). (Paper 30 at 9-10, 11-12.) Ampex denies that AVA had the direct connection that is required by '121 patent claims. To the extent paragraph 42 contains averments not denied or admitted above, Ampex denies the averments.

43. Ampex denies each and every averment in paragraph 43 of Altek's Counterclaims.

44. Ampex denies each and every averment in paragraph 44 of Altek's Counterclaims.

45. With respect to paragraph 45 of Altek's Counterclaim, Ampex denies that Mr. Beaulier, Mr. Talcott, Mr. Roth, or other individuals substantively involved in the prosecution of the '121 patent had knowledge of the AVA's features that Altek alleges are relevant to the '121 patent claims during the prosecution that led to the '121 patent. Ampex admits that Mr. Beaulier and another engineer, who were not members of the AVA design team,

worked for a short time on some analog boards to be used in the AVA system, but denies that these analog boards have anything to do with any size reduction or cut and paste feature of AVA, or any other features of AVA that Altek alleges are pertinent to the subject matter of the '121 patent claims. Ampex denies that the AVA's features that Altek alleges are relevant to the '121 patent claims were described in memos and documents that were distributed to Mr. Beaulier and Mr. Talcott. Ampex admits Mr. Roth was involved in the prosecution of U.S. Patent 4,564,915 relating to a YIQ Computer Graphics System, but denies that such patent relates to the AVA's features that Altek claims are relevant to the '121 patent claims. Ampex admits that Mr. Talcott supervised Ampex patent prosecution for a period of time after the '915 patent application was filed, but denies that Mr. Talcott had substantive involvement in the prosecution of the '915 patent. To the extent paragraph 45 contains averments not denied or admitted above, Ampex denies the averments.

      46.    Ampex denies each and every averment in paragraph 46 of Altek's Counterclaims.

### AFFIRMATIVE DEFENSES TO ALTEK'S COUNTERCLAIMS

Altek's Counterclaims fail to state claims upon which relief can be granted.

### PRAYER FOR RELIEF

**WHEREFORE**, Ampex prays that the Court:

(a)    dismiss Altek's Counterclaims with prejudice;

(b)    grant to Ampex the relief requested in Ampex's Second Amended Complaint;

(c)    award Ampex its costs and reasonable attorneys' fees incurred in connection with Altek's Counterclaims; and

(d)  award Ampex such further, necessary or proper relief as this Court deems just.

## JURY DEMAND

Plaintiff Ampex hereby demands a trial by jury on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL
*Julia Heaney*
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff Ampex Corporation*

OF COUNSEL:

Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005

October 12, 2005

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on October 12, 2005, I caused to be electronically filed the foregoing Ampex's Reply to Altek Corporation's Counterclaims with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Paul M. Lukoff, Esquire
> David E. Brand, Esquire
> Prickett, Jones & Elliott, P.A.

and that I caused copies to be served upon the following in the manner indicated:

### BY FIRST CLASS MAIL

Michael J. Summersgill, Esquire
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

/s/ Julia Heaney
Julia Heaney (#3052)