**PRICKETT, JONES & ELLIOTT**
A PROFESSIONAL ASSOCIATION
**1310 KING STREET, BOX 1328**
**WILMINGTON, DELAWARE 19899**
TEL: (302) 888-6500
FAX: (302) 658-8111
http://www.prickett.com

Writer's Direct Dial: (302) 888-6520
Writer's Telecopy Number: (302) 888-6331
Writer's E-Mail Address: PMLukoff@prickett.com

January 10, 2006

The Honorable Kent A. Jordan            **VIA EFILE AND HAND DELIVERY**
United States District Court
844 King Street
Wilmington, DE 19801

RE:   **Ampex Corporation v. Eastman Kodak Co., et al.** C.A. No. 04-1373 KAJ

Dear Judge Jordan:

   Pursuant to this Court's Civil Trial Procedures, Defendants Eastman Kodak Company and Altek Corporation ("Defendants") respectfully submit this letter addressing three discovery disputes that Defendants have been unable to resolve after consultation with Plaintiff Ampex Corporation ("Ampex"). Defendants seek an order compelling the production of: (i) Ampex analyses of competitive products; (ii) the names of former Ampex employees with whom Ampex or its counsel has entered confidentiality/retention agreements in connection with this litigation; and (iii) a specific confidentiality/retention agreement relating to this litigation between counsel for Ampex and Carlos Kennedy, a former Ampex employee.

(i)   **Ampex Analyses of Competitive (Now Prior Art) Products.**

   In connection with its invalidity and inequitable conduct claims, Defendants requested documents relating to Ampex's knowledge of prior art systems that were competitive with Ampex products. See, e.g., Del. Doc. Request No. 31; ITC Doc. Request No. 113.

   Ampex witnesses have testified that such documents were created on a regular basis. For instance, Carlos Kennedy, a former Ampex "product planner" responsible for analyzing competitive products, testified that he and another product planner, Charles Anderson, created reports after every trade show, including the industry's biggest trade show, the National Association of Broadcasters ("NAB") convention (Kennedy Transcript, p. 46-9). Mr. Kennedy explained that he and Mr. Anderson attended all of the NAB conventions from 1980 to 1985 and regularly created reports after the conferences (Kennedy Transcript, p. 52-3). Mr. Kennedy also testified that they created weekly product planning reports and reports following customer visits that routinely addressed competitive products (Kennedy Transcript, p. 127-8). Likewise, Ken Regnier, another former Ampex employee, testified that Ampex engineering managers created analyses of competitive products following trade shows (Regnier Transcript, p. 273).

   Despite the clear relevance of these types of documents to Defendants' invalidity and inequitable conduct case, Ampex has failed to produce *a single report* drafted by either Mr. Kennedy or Mr. Anderson. Of particular concern, Ampex has failed to produce any documents analyzing competitive products displayed at the 1982 NAB convention. The Quantel Paint Box system, which Ampex's own expert in the ITC Investigation admitted is *the best prior art to the*

The Honorable Kent A. Jordan
January 10, 2006
Page 2

*asserted patent* (Anderson Transcript, p. 466), was first demonstrated at the NAB convention that year. Mr. Kennedy testified that he "certainly" prepared a report on the NAB '82 convention (Kennedy Transcript, p. 165). While Ampex has produced Mr. Regnier's report from NAB '79 and NAB '83, it has notably not produced any NAB reports authored by Mr. Regnier or other engineering managers relating to NAB '82.

Ampex claims that it has looked in "all logical places" for these documents. (December 1, 2005 letter from Brightman to Hirsch). Yet, Ampex's 30(b)(6) witness on document retention testified that Ampex "retain[s] all documents" (Genberg Transcript, p. 36) and multiple Ampex witnesses have testified that they were *not* asked to search for relevant documents. For example, Carlos Kennedy testified that he had not been asked to collect documents (Kennedy Transcript, pp. 193-194). Similarly, Leslie Oxley, Ampex's 30(b)(6) witness regarding certain Ampex products, testified that he had not been asked to collect documents (Oxley Transcript, p. 21).

Ampex should not be permitted to avoid production by simply stating that it cannot locate relevant documents that were indisputably created. See Bell v. Woodward Governor Co., No. 03-C-50190, 2004 WL 3121301 at * 3-4 (N.D. Ill. Dec. 20, 2004) (granting motion to compel where "one party presents evidence through deposition testimony that certain responsive documents very likely exist or at least existed at one time and the other party states that they have not located such documents"). Defendants respectfully request, therefore, that the Court compel the production of all Ampex analyses of competitive, prior art products.

(ii)   **The names of former Ampex employees with whom Ampex or its counsel has entered confidentiality/retention agreements.**

During the ITC action, Ampex produced 30(b)(6) designees without knowledge of the topics for which they were designated to testify. By way of example, Ampex designated former Ampex employee Les Oxley to testify regarding the Ampex AVA system. Mr. Oxley testified, however, that he knew *nothing* about the function and capabilities of the relevant AVA system. (Oxley Transcript, p. 23-29) (Q: Do you know anything about the function [or] the capabilities of the 1980 AVA system? A: No.). Similarly, Ampex's 30(b)(6) witness regarding the conception and reduction to practice of the claimed invention, Joel Talcott, responded to over *three hundred and fifty questions* during his 30(b)(6) deposition with "I don't know." Ampex represented that these individuals were the best remaining witnesses to testify with respect to old, discontinued technologies. In subsequent discovery, however, Defendants learned that Ampex had entered into undisclosed confidentiality and retention agreements with multiple former employees at the outset of the ITC litigation, some of whom appear to be far better suited to testify with respect to the topics requested by Defendants. In fact, when it came time to submit written testimony for the ITC trial, Ampex selected as its trial witnesses some of these former employees instead of its 30(b)(6) witnesses. With respect to the AVA system, for instance, Ampex offered the testimony of one of its former AVA engineers, Junaid Sheikh, who it had hired as a "consultant," *not* the unprepared 30(b)(6) witness who it had made available to Defendants. Ampex is, of course, bound by its 30(b)(6) deponents' testimony and Defendants will, at the appropriate time, seek to preclude any testimony inconsistent with that of its 30(b)(6) witnesses.

In order to assess Ampex's efforts to produce relevant documents and appropriate witnesses in this action going forward, Defendants asked Ampex to provide the names of the former employees who entered into such confidentiality and retention agreements with Ampex since 2001 (Interrogatory No. 12). Such individuals may have relevant information and

19660.3\294556v1

The Honorable Kent A. Jordan
January 10, 2006
Page 3

Defendants believe that the identity of these individuals is something that Ampex would ordinarily have to disclose in connection with its initial disclosures. See Fed. R. Civ. P. 26(a)(1)(A). Ampex has nevertheless refused to provide the individuals' identities on the grounds that they are protected from disclosure by the work product doctrine. (December 6, 2005 letter from Brightman to Walden).

Under applicable law, the names of individuals who have retained Ropes & Gray are facts that Ampex must produce. See In re Grand Jury Investigation, 631 F.2d 17, 19 (3rd Cir. 1980) ("in the absence of unusual circumstances, the privilege does not shield…the identity of clients"). Likewise, the identity of former employees contacted to locate information in connection with this case is factual information that does not reveal privileged attorney work product. See National Union Fire Insurance Co. of Pittsburgh, PA v. Stauffer Chemical Co., No. 87C-SE-11, 1991 WL 14168 at *1 (Del. Super. Jan. 15, 1991) (plaintiff cannot withhold identities of interviewed former employees even though the names may indicate "a narrowing of the field by [plaintiff's] counsel"). Defendants therefore request that the Court order Ampex to identify the individuals with whom it (or its counsel) has entered confidentiality and retention agreements.

(iii)   **The Agreement with Mr. Carlos Kennedy**

On November 14, 2005, Defendants issued a subpoena to former Ampex employee, Carlos Kennedy, seeking, among other documents, all agreements between Mr. Kennedy and Ropes & Gray. (Subpoena to Carlos Kennedy, Doc. Request No. 1). Defendants requested the agreements to determine the nature of the relationship between Mr. Kennedy and Ropes: whether Mr. Kennedy was required to preserve relevant documents in connection with the agreement; whether Mr. Kennedy was required to search for and produce relevant documents in connection with the agreement; whether Mr. Kennedy agreed to testify for Ampex and was therefore available as a 30(b)(6) witness; and the nature of Ropes & Gray's agreement to compensate Mr. Kennedy for his work on this litigation. Ampex acknowledges the existence of a December 21, 2004 confidentiality and retention agreement between Ropes & Gray and Mr. Kennedy but Ampex and Mr. Kennedy have refused to produce the agreement, or even a redacted version of the agreement, on grounds of privilege. (November 23, 2005 email from Beamer to Hirsch); (December 6, 2005 letter from Brightman to Walden). In fact, Mr. Kennedy, represented by counsel for Ampex, *failed to produce a single document* in response to the subpoena. (November 22, 2005 email from Beamer to Summersgill).

The conditions of Ropes & Gray's relationship with Mr. Kennedy are facts that Defendants are entitled to learn. See In re Semel, 411 F.2d 195, 197 (3rd Cir. 1969) (the fact of retainer, identity of the client, and the conditions of an attorney's employment "do not come within the privilege of the attorney-client relationship"). Courts have found that retention agreements are typically not privileged. See Chao v. Koresko, No. 04-MC-74, 2004 WL 1749179 at * 3 (E.D. Pa. Aug. 2, 2004) ("A retention letter from a lawyer is usually not privileged" and must be produced in response to a subpoena). Defendants respectfully request that the Court order Ampex to produce the agreement with Mr. Kennedy or, in the alternative, produce it to the Court for an *in camera* review to determine whether any portions can be withheld as privileged.

The Honorable Kent A. Jordan
January 10, 2006

                                             Respectfully submitted,

                                             PAUL M. LUKOFF

PML/mhl
cc:    Jack B. Blumenfeld, Esquire (Via Efiling)
       Norman H. Beamer, Esquire (Via E-Mail & FedEx)
       Jesse J. Jenner, Esquire (Via E-Mail & FedEx)
       S. Calvin Walden, Esquire (Via Email)
       Michael J. Summersgill, Esquire (Via Email)

19660.3\294556v1