January 11, 2006

**BY ELECTRONIC FILING**

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE  19801

       RE:  <u>Ampex v. Eastman Kodak, C.A. No. 04-1373-KAJ</u>

Dear Judge Jordan:

    This letter sets forth Plaintiff Ampex Corporation's response to Defendants Eastman Kodak Company and Altek Corporation's letter addressing three discovery issues.

    **(i)**    **Ampex Analyses of Competitive Alleged Prior Art Products**

    In connection with the ITC action and the present Delaware action, Ampex has diligently searched for and produced or scheduled on a privilege log all documents that it has located in response to defendants' requests concerning Ampex's knowledge of alleged prior art systems, specifically Del. Document Request No. 31 and ITC Document Request No. 113.

    In response to defendants' requests, Ampex has also provided a list of the various locations from which it has collected, reviewed and produced documents responsive to defendants' requests. (1/6/05 letter from Mr. Beamer to Mr. Summersgill)  Ampex has also agreed to conduct, and has conducted, additional searches for post-NAB reports describing competitive products. Ampex had already located and produced post-NAB reports for the years 1979 and 1983. To date, Ampex has not located additional post-NAB reports for other years, including 1982. Ampex has informed defendants that its search is ongoing, and any additional reports that are located will be produced.

    Ampex maintains its position that the record is not clear that post-NAB reports were in fact prepared after every NAB. Examination of the 1979 and 1983 memoranda that were produced indicates that preparation of such documents was not in accord with any requirement or formalized procedure, but rather at the discretion of the author, and depending on the particular circumstances and events at that particular time. Mr. Regnier testified that he did not remember whether any post-NAB memo describing competitive products was written for NAB'81 or NAB '82. (Regnier Tr. 273-74). Mr. Kennedy's testimony also does not appear to be dispositive on

The Honorable Kent A. Jordan
January 11, 2006
Page 2

this subject. (Kennedy Tr. 196:23-197:2). Moreover, even if such reports were created, there is no evidence that they still existed when Mr. Kennedy left Ampex in 1991 (Kennedy Tr. 56-57):

>   Q.   Did you still have copies of any of your NAB memos in your files at the time you left Ampex?
>
>   A.   I don't know.
>
>   Q.   Did you have copies of any of Mr. Anderson's NAB memos in your files at the time you left Ampex?
>
>   A.   I don't know.

As would be expected, Ampex discarded documents in the ordinary course of its business in the 1980's, and in particular in 1991, when Ampex implemented a restructuring plan, and Mr. Kennedy left the company. Defendants take out of context Ms. Genberg's 30(b)(6) testimony that "we retain all documents." That statement was made in response to a line of inquiry concerning whether Ampex has made efforts to preserve technical documents since the commencement of this litigation. (Genberg Tr. 33:24-36:8).

Moreover, as a matter of course in collecting documents, Ampex has asked employees and former employees whether they possess pertinent documents. In the case of Ampex's former employees, there were a few instances where such persons did possess documents, and those documents were collected and produced or listed. Contrary to Defendants' statements, Mr. Kennedy testified that he *was* asked if he possessed documents relating to his work at Ampex. (Tr. 199:21-201:2). He also testified that he located no documents responsive to Defendants' subpoena. (Tr. 194:8-195:7). Defendants' reliance on Mr. Oxley's 30(b)(6) testimony is irrelevant. Mr. Oxley testified that he has no documents related to the ADO alleged prior art system in his files, and that he never maintained documents related to the alleged AVA prior art system. (Tr. 21:23-22:23). In any event, counsel represents that Mr. Oxley was indeed asked whether he had any documents from the time period in question, and he did not.

In contrast to the *Bell* case cited by defendants, Ampex has done considerably more than simply state it has not located responsive documents. Ampex has diligently searched for and produced responsive documents, agreed to conduct additional searches, and informed defendants of all locations searched. For at least the above reasons, defendants' motion regarding post-NAB reports should be denied.

>   (ii)   **The Names Of Former Ampex Employees With Whom Ampex Or Its Counsel Has Entered Confidentiality/ Retention Agreements**

All but three of the former Ampex employees with whom Ampex or its counsel has entered confidentiality/retention agreements in connection with this litigation have already been identified to defendants, by way of deposition testimony, the parties' witness lists from the ITC action, and/or in response to defendants' interrogatories. In light of this, Ampex offered, as a compromise, to provide a complete list of these former employees and the dates of their

agreements with Ropes & Gray/Ampex, provided that defendants agreed to drop their insistence on piercing the attorney-client privilege by demanding production of the agreements. (1/6/06 letter from Mr. Beamer to Mr. Summersgill). Defendants rejected Ampex's offer. (1/9/06 letter from Mr. Hirsch to Mr. Beamer).

Defendants make specific reference to former Ampex employee Junaid Sheikh. However, defendants neglect to state that Ampex specifically identified Mr. Sheikh as a percipient fact witness with knowledge of the Ampex AVA *prior* to the depositions of Ampex's 30(b)(6) witnesses. (See Ampex's response to Altek's Interrogatory No. 21). Ampex's 30(b)(6) witnesses were prepared and deposed on the subjects for which Ampex agreed to provide a corporate designee. Defendants also deposed Mr. Sheikh as a fact witness regarding AVA. Ampex had no duty to designate Mr. Sheikh as a corporate representative under Rule 30(b)(6), and Mr. Sheikh has no obligation to take on that responsibility. Mr. Sheikh is not under Ampex's control, and was represented at his deposition by his own counsel.

Ampex stands ready to produce a list of the names of the former Ampex employees with whom Ampex/Ropes & Gray have entered confidentiality/retention agreements in connection with this litigation, provided that production of such information is not considered a waiver of the attorney-client privilege or work product immunity.

### (iii) The Agreement with Mr. Carlos Kennedy

Ampex has already informed defendants of the conditions of Ropes & Gray's relationship with Mr. Kennedy, which defendants allege they are entitled to learn under the *Semel* case. Ampex has informed defendants of the existence of the agreement, the date of the agreement, the parties thereto, the terms of Mr. Kennedy's compensation for time spent preparing for his deposition, and that the agreement states that Mr. Kennedy's retainer of Ropes & Gray is at Ampex's expense.

Other than these facts, Ampex believes that the agreement itself is protected by the attorney-client privilege because it contains additional statements reflecting legal advice. The *Chao* case cited by defendants does not compel production of the Kennedy agreement. The Court's statement in *Chao* that "a retention letter from a lawyer usually is not privileged" is mere dicta, with no citation to authority. Where, as is the case here, a retention letter contains privileged communication, Ampex believes it may properly be withheld.

Ampex respectfully requests that defendants' motion be denied.

Respectfully,

*/s/ Julia Heaney (#3052)*


cc:   Peter T. Dalleo, Clerk (By Hand)
      Paul M. Lukoff, Esquire (By Email)
      Michael J. Summersgill, Esquire (By Email)
      Norman H. Beamer, Esquire (By Email)