IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPEX CORPORATION, )<br>)<br>    *Plaintiff,* )<br>)<br>    v. )<br>)<br>EASTMAN KODAK COMPANY, )<br>ALTEK CORPORATION, and )<br>CHINON INDUSTRIES, INC., )<br>)<br>    *Defendants.* )<br>) | C.A. No. 04-1373 (KAJ) |

**PLAINTIFF AMPEX CORPORATION'S COMMENTS ON DEFENDANTS'
TUTORIAL PRESENTATION**

By agreement between the parties, subject to the approval of the Court, Plaintiff Ampex Corporation submits the following comments on Defendants' Tutorial, presented on January 12, 2006.

**I.   THE VIDEO OF QUANTEL'S PAINT BOX PRODUCT LACKS FOUNDATION**

Defendants have asserted that the '121 patent is invalid because, *inter alia*, of certain activities of non-party Quantel Limited, a company based in the United Kingdom. One of Defendants' experts, Richard Taylor, is the Chairman of Quantel. The allegedly invalidating activities relate to Quantel's "Paint Box" product, which was a software-controlled video-graphics workstation that consisted of a computer, monitor, and tablet.

During the Tutorial, Defendants counsel played a video purporting to show the operation of the Paint Box (Tr. 36-39). Ampex believes that it is premature, and beyond the scope of these comments, to fully lay out the flaws of this video presentation, or the reasons why the '121 patent is not invalid in light of the sale or use of the Paint Box product, at this stage of the proceedings. However, it is important to note that this video lacks the proper probative foundation to be admissible evidence of how the Paint Box purportedly functioned prior to April 1983, when the application for the '121 patent was filed. The video was made by Mr. Taylor after this lawsuit was commenced, using a Paint Box device that was returned to Quantel from a customer, after years of updates and changes to the product, made long after the filing date of the '121 patent. Neither Quantel nor Defendants have provided any documentation on the changes that have been made to the hardware and software of this device over the nearly twenty years it was out of Quantel's possession.

Moreover, parts of the demonstration are a hindsight attempt to make the operation of the Paint Box appear more similar to the operation taught by the '121 patent. In fact, there is no competent evidence that the Paint Box was actually used, prior to the April 1983, in the manner shown in certain portions of the video.

Most importantly, when the video shows the Paint Box engaged in the browsing of full size pictures, that operation is in accord with the prior art that is cited and distinguished in column one of the '121 patent. (See Ampex's presentation at Tr. 11:16-13:8). The Quantel browse approach is able to reach the same end result as that of the invention of the '121 patent: displaying a mosaic of reduced size versions of the full size images stored in the device. But, as explained about the prior art in Column 1 of the '121 patent (col. 1, lines 30-43, 50-54):

> For example, it might be desirable to create a special effect with multiple images or an editor may wish to view and compare several images at the same time for the purpose of selecting those images which will be used in a television broadcast. However, each of the several images which are to be simultaneously displayed must first be read from the disk store as full size images and then reduced for insertion into the multi-image display. This process takes 1/4 to 1/2 second for each image and results in a delay of several seconds for the composite multi-image display. Such a time delay is at best disconcerting for a busy editor and precludes use of the editing features of the system during a real time broadcast.
>
> U.S. Pat. No. 4,302,776, "Digital Still Picture Storage System With Size Change Facility", to Taylor et al discloses a still store system in which multiple images may be accessed and reduced in size for simultaneous display as discussed above.

During Ampex's tutorial (Tr. 11:20-12:19), this Quantel prior art method of creating a browse screen was demonstrated with Figure 18 of the Taylor '776 patent, referred to in the above quote from the '121 patent. Defendants' tutorial ignored the critical fact that the Paint Box uses this same flawed approach.

## II. DEFENDANTS' DESCRIPTION OF THE "CFA IMAGE" IS INCORRECT

Defendants' presentation concerning its cameras incorrectly describes the "CFA image" (*i.e.*, the "Color Filter Array Image") that is created when the Kodak cameras capture an image. Defendants repeatedly described the CFA image as "just ... in effect a black-and-white image" (Tr. 58:12-13, *to like effect*, Tr. 50:20-21, 58:12-13). This is not correct. The CFA image is a color image.

Ampex's explanation of the "Bayer filter" during its presentation correctly describes how this aspect of the Kodak cameras work (Tr. 27:20-28:25). That presentation depicts how the CFA image is generated by placing the Bayer filter in front of the array of charge coupled devices (CCDs). The resulting image is a color image. Defendants' charts which show the CFA image starting as a black-and-white image, and then later being converted to color, are incorrect.

3

It is important to note that, when the CFA image is captured by the camera, all of the useable information for that image is captured and stored in the camera. As taught in the '121 patent, and as Ampex explained during the tutorial, as an image is converted from an optical image to a final, stored, electronic image, the digital data is subjected to standard processing and compression techniques — but the image itself is preserved. That is all that the invention of the '121 patent requires.

The use of a CFA image generated by the Bayer filter is in accord with these principles. As Ampex explained during its presentation, one way to obtain a color image is to use three arrays of CCDs — one for each of the primary colors: red, green and blue. (Likewise, three tubes can be used). But many camera manufacturers resort to the expedient of using only one CCD array in their cameras, with a Bayer filter in front of the array to generate a color image. This is just one more routine technique to cut down on the expense of the device, while still obtaining the proper level of image quality.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff Ampex Corporation*

**OF COUNSEL:**

Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

4

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC  20005
(202) 508-4600

5

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on January 23, 2006, I caused to be electronically filed the foregoing *Plaintiff Ampex Corporation's Comments on Defendantts' Tutorial Presentation* with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Paul M. Lukoff, Esquire
> David E. Brand, Esquire
> Prickett, Jones & Elliott, P.A.

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

Paul M. Lukoff, Esquire
Prickett, Jones, Elliott
1310 King Street
Wilmington, DE  19899

### BY FEDERAL EXPRESS

Michael J. Summersgill, Esquire
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109


*/s/ Jack B. Blumenfeld*
Jack B.Blumenfeld (#1014)