**PRICKETT, JONES & ELLIOTT**
A PROFESSIONAL ASSOCIATION
**1310 KING STREET, BOX 1328**
**WILMINGTON, DELAWARE 19899**
TEL: (302) 888-6500
FAX: (302) 658-8111
http://www.prickett.com

Writer's Direct Dial:
(302)888-6520
Writer's Telecopy Number::
(302)888-6331
Writer's E-Mail Address:
PMLukoff@prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

February 7, 2006

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

**VIA EFILE AND HAND DELIVERY**

RE:    Ampex Corporation v. Eastman Kodak Company, et al.,
       C.A. No. 04-1373-KAJ

Dear Judge Jordan:

This letter responds to Ampex's discovery letter filed yesterday in anticipation of tomorrow's February 8, 2006 conference call with the Court.

Ampex's attempt to compel additional discovery must be addressed in the larger context of the extensive discovery regarding the single asserted patent that has taken place since the December 2004 initiation of this dispute. In the combined ITC and Delaware actions, Ampex has now served on Eastman Kodak Company 11 sets of document requests (285 total requests), 11 sets of interrogatories (131 total interrogatories), and 3 sets of requests for admission (211 total requests) (this does not include discovery served on and responded to by defendant Altek Corporation). Kodak has responded (or will timely respond) to each of these sets of requests, and, including source code, has produced the equivalent of well over 1,000,000 pages of documents. It has also made millions of pages of documents stored on databases available for inspection. In contrast, Ampex has produced less than 150,000 pages.

Ampex's voracious appetite for documents, however, remains unsatisfied. It now seeks additional documents of, at best, marginal relevance. Its strategy appears at least as much designed to burden defendants with the expense and disruption of discovery as it is to obtain relevant information. Ampex, whose only significant business is the licensing and enforcement of its patents, has little to lose from such a strategy as it has no significant ongoing business operations that are subject to defendants' discovery.

**Ampex's Interrogatory No. 2 Regarding A Reasonable Royalty Rate and A Royalty Base**

Ampex's letter seeks to compel Kodak to provide the reasonable royalty rate to which Kodak would have agreed in a hypothetical negotiation and the base to which that rate should be applied. Ampex's request improperly seeks *pure expert testimony* rather factual information. *See Joy Tech., Inc. v. Flakt, Inc.*, 954 F. Supp. 796 at 806-807 (D. Del. 1996) (relying on the opinion testimony of qualified experts to calculate reasonable royalty damages); *Oxford Gene Tech. Ltd., v. Mergen Ltd.*, 345 F. Supp.2d 431 at 441-442 (D. Del. 2004). Kodak is obligated to provide all of the underlying factual information that may be relevant to the determination of a reasonable royalty rate and the base to which that rate will apply, including licenses, sales information, and financial information. Until the deadline for expert reports, however, Kodak is not obligated to provide an *opinion*, based on that underlying factual information, of what the reasonable royalty

The Honorable Kent A. Jordan
February 7, 2006
Page 2

rate should be. In fact, until he has reviewed all of the factual information produced in fact discovery, including Ampex's licenses (some have not yet been produced) and the 30(b)(6) deposition of Ampex regarding damages issues (not yet taken), Kodak's expert will likely not have finalized his opinion on what that rate would be. Ampex's attempt to obtain early expert opinion should be denied.

**Evidence of Payment, Including Royalty Reports**

Ampex seeks an order compelling Kodak to produce royalty reports provided to Kodak by licensees of two of Kodak's digital still camera patents, the '107 and '831 patents. As an initial matter, these two patents are utterly irrelevant to a determination of the value of Ampex's '121 patent. Nonetheless, in the interest of compromise, Kodak produced the licenses of these two patents.[1] The licenses include, among other information, the licensing rate. In its continued grab for more, Ampex now seeks Kodak's royalty reports relating to those licenses.

Ampex has not been able to articulate any reason why these reports, which represent Kodak's most sensitive business data relating to its licensees (several of whom also happen to be Ampex's licensees), should be produced. Kodak has produced the licenses without redactions, thus providing Ampex with the licensing rate information, and a witness will be provided to address questions Ampex may have about the terms of the agreements. Ampex's assertion that it needs the royalty reports for "some of the licenses" to determine "implied royalty rates" is misplaced. Ampex fails to identify which licenses it is referring to, or to explain why such reports are necessary when the royalty rates are *explicitly set forth in the licenses*.

Because the business information Ampex seeks relating to Kodak's licensees is most sensitive, to the extent that the Court is considering granting any portion of Ampex's request for royalty reports, Kodak requests that its licensees be given a period of time in advance to move for a protective order, or take other necessary steps to protect their interests.

**Redactions**

As explained above, Kodak has sought to compromise with Ampex regarding the scope of production regarding the Kodak '107 and '831 patents. Ampex acknowledges that the parties had reached a compromise on the production of correspondence related to the licensing of Kodak's '107 and '831 patents, but neglects to inform the Court that after this compromise was reached, Ampex served non-party subpoenas for *these same documents* on the Lerner, David law firm (counsel for Sony Corporation in litigation between Kodak and Sony) as well as the Andre-Troner firm that has assisted Kodak in its licensing negotiations (the subpoena to the Andre-Troner firm also demands a deposition). Ampex has also recently threatened to serve a document and deposition subpoena on another company that has assisted Kodak in analyzing products for potential infringement of Kodak's patents, Semiconductor Insights.

Ampex also mischaracterizes the parties' earlier compromise and Kodak's supposed "unduly narrow reading of that compromise." There has been no narrow reading of what was a clear compromise. As we informed the Court in our discovery letter dated January 11, 2006, Kodak

---

[1] Kodak has still not produced 2 license agreements -- for licensees Alfred B. Levine and Skanhex Technologies Inc. -- because those entities have still not consented to their production. Kodak thus joins Ampex's request that the Court issue an Order that these two licenses be produced so that Kodak can produce them.

The Honorable Kent A. Jordan
February 7, 2006
Page 3

agreed to produce correspondence that relates to the "substance" of the '107 and '831 patents. This is what Kodak has been doing and continues to do. Kodak was also clear in negotiating the compromise that it would be redacting those portions of the responsive documents that concern patents other than the '107 and '831 patents (even Ampex does not contend that these other patents are relevant to this litigation). The parties were close to negotiating a further compromise whereby Kodak would produce additional documents that address more than just the "substance" of the '107 and '831 patents, and in response, Ampex would withdraw its document and deposition subpoena on Andre-Troner, and would not pursue a subpoena against Semiconductor Insights. However, yesterday, after submitting its letter to the Court in which it stated that the parties are "close" to a further compromise, Ampex scuttled any deal by pulling its offer to forego the Andre-Troner deposition. Kodak requests that the Court hear argument tomorrow as to whether Andre-Troner should be forced to produce the same documents that Kodak and Lerner, David are producing, and whether it should have to submit to a deposition.

As Ampex notes, Kodak has acknowledged some minimal errors in redactions, and has agreed to cooperate with Ampex to ensure that any errors are corrected. But Ampex overstates the number and severity of redaction errors. For example, Ampex complains that Exhibit D is incomplete, but that is how the document was found in the files (as Kodak has explained to Ampex, these documents come from the files of the Andre-Troner firm). Exhibit D is also clearly the same letter as Exhibit E, which was produced in its entirety but for a couple of redactions that Kodak is correcting. Ampex complains that Exhibit F was redacted in its entirety, but appears to have misunderstood that documents were produced with blue slip-sheets to indicate where documents begin and end, and that Exhibit F is a redacted attachment (redacted because it does not pertain to the '107 and '831 patents) to a document that was not redacted in its entirety. As noted above, Kodak has always indicated that it will work with Ampex to address any concerns about the redactions, and fix any errors. There is no need for Court supervision of the redaction process.

**Documents Related to the Ofoto Acquisition**

Ofoto is an online service (it can be reached at www.ofoto.com) that allows users to download and share digital images. It is not restricted to users of Kodak cameras only. Although Kodak considers materials relating to Ofoto irrelevant to any issue in this case, once again, in an effort to compromise, Kodak produced or made available for inspection copious documents relating to Ofoto. Ampex wants more, however, and so would have Kodak re-review its documents to specifically produce documents relating to "Kodak's reasons and motivations for acquiring Ofoto." Ampex argued in its letter yesterday that the Ofoto documents are relevant to the sixth *Georgia Pacific* factor, which covers "convoyed" sales, but the connection between Ofoto and Ampex's "thumbnail" patent-in-suit is far too tenuous. In essence, Ampex is arguing that its patented "technology" is an essential feature that drives the sale of Kodak's digital still cameras, that Kodak's camera sales somehow drive its Ofoto service, and that documents relating to Kodak's purchase of Ofoto are thus fair game for discovery. The simple response is this -- the purchase of the entire Ofoto company demonstrates *nothing* about Kodak's willingness to license a patent relating to the storage and generation of thumbnails. Ampex has never shown that the technology claimed in the '121 patent drives the sales of Kodak's digital still cameras. Ampex has never shown that sales of Kodak's cameras are related to revenues or profits from Ofoto, especially given that users of *any digital camera* can download photos and make use of the services of ofoto.com. Ampex's request should be denied.

19660.3\296756v1

The Honorable Kent A. Jordan
February 7, 2006
Page 4

                                              Respectfully submitted,

                                              PAUL M. LUKOFF
                                              Del. Bar # 96

PML/mhl
cc:    Clerk of the U.S. District Court (Via Hand Deliver)
       Jack B. Blumenfeld, Esquire (Via Efiling)
       Norman H. Beamer, Esquire (Via E-Mail & FedEx)
       Jesse J. Jenner, Esquire (Via E-Mail)
       S. Calvin Walden, Esquire (Via Email)
       Michael J. Summersgill, Esquire (Via Email)
       Jordan L. Hirsch, Esquire (Via Email)