## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMPEX CORPORATION,      )
     )
     Plaintiff,      )
     )
     v.      )      C.A. No. 04-1373-KAJ
     )
EASTMAN KODAK COMPANY,      )
ALTEK CORPORATION and CHINON      )
INDUSTRIES, INC.,      )
     )
     Defendants.      )
     )

---

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF
### THEIR MOTION FOR BIFURCATION AND PROTECTIVE ORDER

**OF COUNSEL:**

S. Calvin Walden
Paul B. Keller
Rebecca M. McCloskey
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

William F. Lee
Donald R. Steinberg
Michael J. Summersgill
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

PAUL M. LUKOFF (I.D. No. 96)
DAVID E. BRAND (I.D. No. 201)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500

*Attorneys for Defendants*

Date: February 22, 2006

## TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDING .........................................................3

III.   SUMMARY OF ARGUMENT ...................................................................................4

IV.    STATEMENT OF FACTS........................................................................................4

       A.    Ampex's Allegations of Infringement ......................................................4

       B.    Ampex's Purported Support for its Claim of Willful Infringement ........6

       C.    Ampex's Requests for Production of Opinions of Counsel.....................7

V.     ARGUMENT ........................................................................................................8

       A.    BIFURCATION OF DISCOVERY AND TRIAL REGARDING WILLFUL
             INFRINGEMENT IS APPROPRIATE TO PROTECT THE ATTORNEY
             CLIENT PRIVILEGE................................................................................9

             1.    The attorney client privilege is entitled to the "utmost respect."................9

             2.    Allegations of willful infringement place defendants in the difficult
                   position of having to choose between preserving the attorney client
                   privilege and mounting an effective defense to the charge of willfulness.10

             3.    By deferring the waiver decision until after liability has been determined,
                   bifurcation resolves the Quantum Dilemma and eliminates the risk of
                   needless waiver of the attorney client privilege.........................................12

             4.    Bifurcation is also Justified to Avoid Prejudice to Defendants at the Trial
                   of Infringement Issues..............................................................................14

       B.    BIFURCATION IS PARTICULARLY APPROPRIATE BECAUSE AMPEX
             HAS NOT MADE A PRIMA FACIE CASE OF WILLFUL INFRINGEMENT.16

       C.    BIFURCATION OF LIABILITY AND WILLFULNESS WILL RESULT IN NO
             PREJUDICE TO AMPEX ...................................................................................19

       D.    BIFURCATION OF LIABILITY AND WILLFULNESS WILL PROMOTE
             JUDICIAL ECONOMY .....................................................................................19

VI.    CONCLUSION .................................................................................................20

i

# TABLE OF AUTHORITIES

## Cases

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*,
   228 F.3d 1338 (Fed. Cir. 2000) ........................................................................ 17, 18

*Allergan Inc. v. Pharmacia Corp.*,
   No. Civ.A.01-141-SLR, 2002 WL 1268047 (D. Del. May 17, 2002) .................... 9, 13, 14, 19

*Aptargroup, Inc. v. Owens-Illinois, Inc.*,
   2003 WL 21557632 (N.D. Ill. July 3, 2003)........................................................ 11, 15

*Armsted Indus. v. Nat'l Castings, Inc*,
   16 U.S.P.Q. 2d 1737 (N.D. Ill. 1990) ................................................................ 15

*Avia Group Int'l, Inc. v. Nike, Inc.*,
   22 U.S.P.Q.2d 1475 (D. Or. 1991) .................................................................... 15

*B. Braun Med. Inc. v. Abbott Labs.*,
   32 U.S.P.Q.2d 1211 (E.D. Pa. 1994) ................................................................ 11

*Ciena Corp. v. Corvis Corp.*,
   210 F.R.D. 519 (D. Del. 2002) .......................................................................... 8

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
   No. 04-1609, 05-1141, 05-1202, 2006 WL 335607 (Fed. Cir. Feb. 15, 2006)........................ 16

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
   78 F.3d 1575 (Fed. Cir. 1996) .......................................................................... 16

*Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*,
   408 F.3d 1374 (Fed. Cir. 2005) ........................................................................ 16

*Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 357 F. Supp.2d 1105 (S.D.
   Iowa 2005) .................................................................................................... 10, 12

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*,
   383 F.3d 1337 (Fed. Cir. 2004) ........................................................................ 9, 11

*Laitram Corp. v. Hewlett-Packard Co.*,
   791 F.Supp. 113 (E.D. La. 1992)........................................................................ 14, 15

*Lear Corp. v. Bertrand Faure Tech. Ctr., Inc.*,
   No. 00-CV-72895, 2001 U.S. Dist. LEXIS 25479 (E.D. Mich. Sept. 4, 2001)........................ 13

*Nat'l Presto Indus., Inc. v. West Bend Co.*,
   76 F.3d 1185 (Fed. Cir. 1996) .......................................................................... 14

*Norian Corp. v. Stryker Corp.*,
   363 F.3d 1321(Fed.Cir.2004).............................................................................. 16

*Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*,
   206 F.R.D. 396 (D. Del. 2002) .......................................................................... 13

*Novopharm Ltd. v. Torpharm, Inc.*,
  181 F.R.D. 308 (E.D.N.C. 1998) ................................................................ 9, 11, 12, 13

*Paine Webber, Jackson & Curtis, Inc., v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  587 F. Supp. 1112 (D. Del. 1984) ................................................................................. 8

*Pfizer Inc. v. Novopharm Ltd*,
  57 U.S.P.Q.2d 1442 (N.D. Ill. 2000) .................................................................. 10, 13, 19

*Pittway Corp. v. Maple Chase Co.*,
  No. 91 C 3582, 1992 WL 392584 (N.D. Ill. Dec. 16, 1992) ....................................... 15

*Plasmanet, Inc. v. Apax Partners, Inc.*,
  No. 02 Civ.9290 BSJ THK, 2003 WL 21800981 (S.D.N.Y. Aug. 5, 2003) ................. 10

*Princeton Biochem., Inc. v. Beckman Indust.*,
  180 F.R.D. 254 (D.N.J. 1997) ........................................................................ 10, 12, 13, 15

*Quantum Corp. v. Tandon Corp*,
  940 F.2d 642, 643-44 (Fed. Cir. 1991) ................................................................... 11, 12

*Read Corp. v. Portec, Inc.*,
  970 F.2d 816 (Fed. Cir. 1992) .............................................................................. 16, 18

*Rhodia Chimie v. PPG Indus., Inc.*,
  218 F.R.D. 416 (D. Del. 2003) ............................................................................ 9, 11, 20

*Sage Prods., Inc. v. Devon Indus., Inc.*,
  No. CV 93-2403 RG (CTX), 1994 WL 791601 (C.D. Cal. Jan. 15, 1994) ................. 13, 19

*Sharper Image Corp. v. Honeywell Int'l Inc.*,
  222 F.R.D. 621 (N.D. Cal. 2004) ............................................................................... 1, 19

*Smith Engineering Co., Inc. v. Eisenmann Corp.*,
  28 Fed.Appx. 958 (Fed. Cir. 2002) ............................................................................. 10

*St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*,
  No. Civ.A.01-557-JJF, 2002 WL 1901268 (D. Del. Aug. 16, 2002) ....................... 9, 14

*U.S. Gypsum Co. v. Nat'l Gypsum Co.*,
  No. 89 C 7533, 1994 WL 74989 (N.D. Ill. Mar. 10, 1994) ................................... 11, 13

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ...................................................................................................... 9

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*,
  520 U.S. 17 (1997) ....................................................................................................... 14

*Yamaha Hatsudoki Kabushiki Kaisha v. Bombadier Inc.*,
  No. SA CV 00-549-DOCEEX, 2001 WL 501354 (C.D. Cal. May 4, 2001) ................. 8

**Rules**
35 U.S.C. § 271(a) ........................................................................................................ 14

iii

**Constitutional Provisions**

Fed. R. Civ. P. 26(c) ................................................................................................ 1, 8

Fed. R. Civ. P. 42(b) ................................................................................................ 1, 8

**Miscellanous**

Donna Fuscaldo, Kodak Urges Camera-Phone Progress --- *CEO Warns That Industry Won't Last Unless Quality of Products is Improved*, Wall St. J., March 15, 2005, at B4 ........................... 4

Pursuant to Fed. R. Civ. P. 42(b), defendants Eastman Kodak Company ("Kodak") and Altek Corporation ("Altek"), (collectively, "Defendants"), respectfully request that the Court bifurcate the issues for this patent infringement case into two phases: (1) a first phase addressing liability and damages; and (2) a second phase addressing Ampex's claim of willful infringement. Defendants further request that the Court enter a protective order pursuant to Fed. R. Civ. P. 26(c) staying discovery relating to opinions of counsel until after liability has been adjudicated.

## I.     INTRODUCTION

Charges of willful infringement are often made yet rarely successful.[1] Despite the low rate of success, the simple inclusion of a willfulness charge in a complaint for patent infringement can create a significant dilemma for defendants: because an opinion of counsel often remains the best defense to a charge of willful infringement, a defendant must choose between relying upon an opinion of counsel and thereby waiving the attorney client privilege, or maintaining the privilege and foregoing its best available defense to a willfulness charge. It should not be that the simple assertion of willfulness – without more – should force defendants to make such a choice.

Ampex Corporation ("Ampex") asserts in this case that Defendants willfully infringed U.S. Patent No. 4,821,121 (the "'121 patent"). Beyond its mere assertion, however, Ampex provides little to support its claim. Bifurcation is therefore appropriate here for the following reasons:

---

[1]     *See, e.g., Sharper Image Corp. v. Honeywell Int'l Inc.*, 222 F.R.D. 621, 636 (N.D. Cal. 2004) ("[T]here are substantial incentives to add such an allegation to a complaint – even if there is no evidentiary foundation for it. As a result, allegations of willfulness have become almost a standard feature of complaints sounding in infringement."); Kimberly A. Moore, *Empirical Statistics on Willful Patent Infringement*, 14 Fed. Cir. B.J. 227, 232 (2004) (finding that in 1999-2000, 92% of patent infringement cases included a claim of willful infringement).

1

First, bifurcation of discovery and trial on willfulness so that willfulness issues are addressed only after determinations on infringement, validity, and enforceability, will avoid the risk of an unnecessary waiver of the attorney client privilege. If defendants are required to choose now whether to rely on an opinion of counsel, and the Court later finds that the patent is not infringed, invalid, or unenforceable, Defendants' waiver of the privilege with respect to the opinion will have been unnecessary. By postponing the determination of willfulness issues until after a determination of liability, bifurcation eliminates this risk of an unnecessary yet irrevocable waiver of the attorney client privilege.

Second, bifurcation is particularly appropriate here because Ampex has not made a prima facie showing of willful infringement. To establish willful infringement, Ampex must show that Defendants *knowingly and deliberately* infringed the '121 patent. Even if taken as true, Ampex's purported basis for its willfulness allegations establish at best only that certain Kodak employees became aware of the '121 patent in 1992. Knowledge of the existence of the patent – particularly where the patent is directed entirely to still store technology for the television broadcast industry and never once references digital cameras – is not enough. Ampex cannot establish the egregious conduct required for willfulness.

Third, Ampex will suffer no prejudice as a result of bifurcation of willfulness issues. If Ampex prevails on infringement, validity, and enforceability, it will then have a full opportunity to present its case on willfulness.

Finally, bifurcation will promote judicial economy. The determination of infringement, validity and enforceability may well render discovery and a trial on willfulness unnecessary. Bifurcation will ensure that neither the Court nor the parties will bear the burden of such proceedings unless and until it becomes necessary.

2

## II.    NATURE AND STAGE OF THE PROCEEDING

Ampex filed its complaint in this action on October 24, 2004, asserting that Defendants infringe certain claims of the '121 patent.  Ampex asserted in its complaint that Defendants' infringement of the '121 patent is and has been willful.

On the same date it filed its complaint in this action, Ampex filed a complaint with the International Trade Commission (the "ITC") also asserting infringement of the '121 patent. Pursuant to statute and this Court's order, this litigation was stayed pending final resolution of the ITC action.

On July 20, 2005, the ITC disqualified Ampex's validity expert on the grounds that he had a "clear conflict of interest."  *See* 7/20/05 Hearing Tr. at 113:5-8; 114:25-115:2, at A - 25-27.  The Court also noted that neither Ampex nor its expert had been *"candid and forthright"* with the Court in opposition to defendants' motion to disqualify.  *See id.* at 111:20-112:7 (emphasis added), at A - 23-24.  Nine days later, Ampex withdrew its ITC complaint.  The ITC proceeding formally concluded on August 23, 2005, lifting the stay in this case.

The parties are currently engaged in fact discovery.  Pursuant to the Court's October 17 Scheduling Order, fact discovery concludes on February 28, 2006, expert discovery concludes April 28, 2006, a claim construction hearing is scheduled for June 16, 2006, and trial is scheduled to begin on December 4, 2006.

## III.    SUMMARY OF ARGUMENT

Bifurcation is appropriate for four principal reasons:

First, bifurcation of willfulness issues until after determinations have been made on infringement, validity, and enforceability will avoid the risk of an unnecessary yet irrevocable waiver of the attorney client privilege.

Second, Ampex has not made a prima facie showing of willful infringement. Ampex's mere assertions do not justify an invasion of the attorney client privilege.

Third, bifurcation of willfulness will cause no prejudice to Ampex. If Ampex prevails on liability issues – infringement, validity, and enforceability – it will then have a full opportunity to present its willfulness case.

Finally, bifurcation will ensure that neither the Court nor the parties will bear the burden of discovery and trial on willfulness unless and until it becomes necessary.

## IV.    STATEMENT OF FACTS

### A.    Ampex's Allegations of Infringement

Eastman Kodak Company has been selling digital cameras with the ability to generate and store thumbnails since 1991. *See* Kodak's Second Supplemental Response to Interrogatory No. 2, 2/7/06, at A-124. Kodak is in fact credited with having built the first working digital camera in 1975. *See* Donna Fuscaldo, Kodak Urges Camera-Phone Progress --- *CEO Warns That Industry Won't Last Unless Quality of Products is Improved*, Wall St. J., March 15, 2005, at B4, at A – 19 ("Kodak launched the first digital camera in 1975").

On August 29, 2001, more than ten years after Kodak began selling its digital cameras, and twelve years after the '121 patent issued, Ampex sent a letter to Kodak accusing Kodak of infringing the '121 patent by the sale of its digital cameras. *See* Letter from Talcott to Palumbo

of 8/29/01, at A - 4-5. Ampex demanded that Kodak take a license to the '121 patent. *See id.*
Ampex's letter attached the patent but provided no explanation for how Kodak's cameras
allegedly infringed the '121 patent. *See id.*

Upon receipt of Ampex's demand letter, Kodak investigated Ampex's allegations.[2]
Two weeks later, on September 14, 2001, Kodak responded to Ampex's demand. *See* Letter
from Crocker to Talcott of 9/14/01, at A - 6. Kodak requested that Ampex provide the basis for
its assertion that Kodak's digital cameras infringed the '121 patent. *See id.* Specifically, Kodak
asked Ampex to provide claim charts demonstrating how the claims of the '121 patent allegedly
covered the Kodak cameras. *See id.* Ampex *never* responded to this request.

On May 26, 2004, nearly *three years* later, Ampex sent a second letter to Kodak
demanding once again that Kodak take a license to the '121 patent. *See* Letter from Talcott to
Crocker of 5/26/04, at A - 7. Ampex threatened that it had already filed complaints against
Sanyo Electric Co., Ltd. in the ITC and in the United States District Court for the District of
Delaware, and that it was prepared to do the same against Kodak. *See id.* It again failed,
however, to provide any basis for its claim of infringement. *See id.* Nor did it provide the claim
charts that Kodak had requested in 2001. *See id.*

On June 18, 2004, Kodak again requested that Ampex provide claim charts explaining
how Ampex believed Kodak's products infringed the '121 patent. *See* Letter from Crocker to
Talcott of 6/18/04, at A - 18. Once again, Ampex did not respond to this request. Instead, on
October 21, 2004, Ampex filed suit in this Court and in the ITC alleging that the use of
thumbnails in Kodak's digital cameras infringed its patents.

---

[2]    Pamela Crocker, a Kodak patent attorney, investigated Ampex's allegations. Ms.
Crocker's analysis and conclusions are protected by the attorney-client privilege.

5

In August 2004, in light of Ampex's threats, Kodak retained the firm of Roylance, Abrams, Berdo and Goodman LLP to provide an opinion regarding the '121 patent. The opinion was completed and provided to Kodak on September 2, 2005. That opinion, and various additional correspondence between Kodak and the Roylance law firm, have been scheduled on Kodak's Privilege Log.

**B.      Ampex's Purported Support for its Claim of Willful Infringement**

Ampex provided an initial alleged basis for its willfulness allegation in response to an interrogatory served by Defendants. *See* Ampex's Response to Interrogatory No. 1, 11/7/05, at A – 80-81. Ampex's three paragraph response asserts that: a Kodak prosecuting attorney cited the '121 patent (among 13 others) in a December 9, 1993 Information Disclosure Statement during the prosecution of a Kodak patent (U.S. Patent No. 5,493,335); Ampex notified Kodak in writing of the existence of the '121 patent in its August 2001 letter; and Kodak prosecuted and obtained U.S. Patent No. 5,164,831 (the "'831 patent"), a patent that Ampex claims covers the same technology as the '121 Patent. *See id.* Information Disclosure Statement from Eastman Kodak Company to the U.S.P.T.O.,12/7/93, at A - 3. Ampex's interrogatory response concludes, based on these three assertions, that Defendants' alleged infringement is and has been willful. *Id.*

On February 13, 2006, after the parties' Rule 7.1 conference regarding this Motion, Ampex supplemented its response to Interrogatory No. 1. *See* Ampex's Second Supplemental Response to Interrogatory No. 1 Re Willful Infringement, 2/13/06 (the "Supplemental Response"), at A – 134-142. Ampex's Supplemental Response adds only one assertion: that in

1992, in conjunction with the development of a new product, Kodak conducted a patent search in which the '121 patent, among twelve others, was identified.[3]  *See id.* at A – 137.

## C.     Ampex's Requests for Production of Opinions of Counsel

On September 15, 2005, in its initial round of discovery in this action, Ampex requested the production of documents relating to opinions of counsel.  *See* Ampex Document Request No. 67 to Kodak, at A - 38; Ampex Document Request No. 44 to Altek, at A - 50.

On October 28, 2005, Defendants objected to Ampex's discovery requests regarding opinions of counsel. Defendants asserted that Ampex had not yet made a prima facie showing of willfulness and that, as a result, Defendants should not be required to make the determination of whether to waive privilege with respect to the opinions:

> Eastman Kodak Company further objects to this Request because it improperly attempts to shift the burden of proof in regard to willful infringement. Ampex has the burden of proving that any alleged infringement by Eastman Kodak Company was willful. Eastman Kodak Company cannot and is not required to decide whether to produce an opinion of counsel as a defense to an allegation of willful infringement until Ampex has produced evidence to meet its burden.

Kodak's Response to Document Request No. 67 at A - 59-60.  *See also* Altek's Response to Document Request No. 44 (same response) at A - 70-71.  Ampex never responded to, or otherwise addressed, Defendants' objection.

On January 27, 2006, Ampex served a second set of discovery relating to opinions of counsel.  *See* Ampex Request for Admission Nos. 92-95 to Kodak at A – 91-92; Ampex Request for Admission Nos. 29-32 to Altek at A - 99; Ampex Document Request Nos. 145-147 to Kodak

---

[3] Ampex also asserts that Kodak attempted to run out the clock on the '121 patent by failing to respond promptly to Ampex's licensing demand during the summer of 2004.  In an August 13, 2004 letter, however, Ampex made clear that it was neither waiting for nor expecting a response from Kodak: "Kodak is free to respond or not respond to our letters and may act on whatever timeline it chooses."  *See* Letter from Talcott to Lee of 8/13/04, at A – 143.

at A - 104; Ampex Document Request Nos. 155-157 to Altek at A - 117. Defendants intend to object to these new discovery requests on the same grounds that they objected to the previous requests.

## V.     ARGUMENT

Bifurcation is appropriate where trying issues separately will avoid prejudice, avoid the expense of unnecessary discovery, conserve judicial resources, or avoid juror confusion. *See* Fed. R. Civ. P. 42(b) ("The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of ... any separate issue ...."); *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 520 (D. Del. 2002) (ordering bifurcation and noting that "[c]ourts, when exercising their broad discretion to bifurcate issues for trial under Rule 42(b), should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case."); *Yamaha Hatsudoki Kabushiki Kaisha v. Bombadier Inc.*, No. SA CV 00-549-DOCEEX, 2001 WL 501354, at *3 (C.D. Cal. May 4, 2001) (ordering separate trials for willfulness and liability and noting that bifurcation "is common in patent cases"); *Paine Webber, Jackson & Curtis, Inc., v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1117 (D. Del. 1984) (bifurcating the issues of liability and damages because "separate trials will reduce jury confusion, tend to avoid prejudice . . . and possibly avoid additional expenses if a damage trial becomes unnecessary").

Protective orders staying discovery relating to opinions of counsel are appropriate in the context of orders bifurcating willfulness. *See* Fed. R. Civ. P. 26(c) ("[T]he court may make any order which justice requires to protect a party or person from ... undue burden or expense, including ... (2) that the disclosure or discovery may be had only on specified terms and

8

conditions, including a designation of the time or place."); *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. Civ.A.01-557-JJF, 2002 WL 1901268, at *1 (D. Del. Aug. 16, 2002) (bifurcating trial and ordering a stay of discovery on the issue of willfulness); *Allergan Inc. v. Pharmacia Corp.*, No. Civ.A.01-141-SLR, 2002 WL 1268047, at *2 n.1 (D. Del. May 17, 2002) (bifurcating the issue of willfulness and ordering a stay of discovery related to willfulness).

Bifurcation of discovery and trial regarding willful infringement is appropriate here.

## A. BIFURCATION OF DISCOVERY AND TRIAL REGARDING WILLFUL INFRINGEMENT IS APPROPRIATE TO PROTECT THE ATTORNEY CLIENT PRIVILEGE.

### 1. *The attorney client privilege is entitled to the "utmost respect."*

The attorney client privilege is the law's oldest and most highly regarded privilege. *See Rhodia Chimie v. PPG Indus., Inc.*, 218 F.R.D. 416, 417-8 (D. Del. 2003) (attorney client privilege "regarded with the utmost respect"); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) (attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law"). As the Supreme Court has stated, the attorney client privilege serves the vital role of encouraging "full and frank communications" between attorney and client. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

The attorney client privilege, therefore, should not be lightly disregarded. *See Rhodia Chimie*, 218 F.R.D. at 418 ("One ought to tread carefully when disregarding privileges …."); *Novopharm Ltd. v. Torpharm, Inc.*, 181 F.R.D. 308, 311 (E.D.N.C. 1998) (noting that courts are reluctant to make parties waive the attorney-client privilege); *Princeton Biochem., Inc. v.*

*Beckman Indust.*, 180 F.R.D. 254, 260 n.6 (D.N.J. 1997) (acknowledging that courts

are "reluctant to strip litigants of this fundamental privilege").

2.  *Allegations of willful infringement place defendants in the difficult position of having to choose between preserving the attorney client privilege and mounting an effective defense to the charge of willfulness.*

The best and sometimes only effective means of defending against a charge of willful

infringement is by producing and relying upon an opinion of counsel. *See Kemin Foods, L.C. v.*

*Pigmentos Vegetales del Centro S.A. de C.V.*, 357 F. Supp.2d 1105, 1129 (S.D. Iowa 2005)

(stating that the affirmative duty "may require obtaining competent legal advice"); *Smith*

*Engineering Co., Inc. v. Eisenmann Corp.*, 28 Fed.Appx. 958, 965 (Fed. Cir. 2002) ("This

presents a textbook example of willful infringement, and an instructive lesson on the need to

consult *legal* counsel in evaluating the risk of patent infringement.") (emphasis in original).

Defendants charged with willful infringement, therefore, face the decision of choosing

between waiving the attorney-client privilege and disclosing an opinion of counsel in order to

mount an effective defense to the charge of willfulness, *or* preserving the privilege while running

the risk of being found a willful infringer in the event liability is found. *See Pfizer Inc. v.*

*Novopharm Ltd*, 57 U.S.P.Q.2d 1442, 1443 (N.D. Ill. 2000) (characterizing an alleged infringer's

decision on whether or not to rely on the advice-of-counsel defense as a "Hobson's choice").

This decision becomes particularly difficult when it must be made prior to a

determination on liability issues. A defendant may choose to waive the attorney client privilege

only to later prevail on infringement, validity, or enforceability and find that it has no need to

rely upon the already-disclosed opinion of counsel. *See Plasmanet, Inc. v. Apax Partners, Inc.*,

No. 02 Civ.9290 BSJ THK, 2003 WL 21800981, at *3 (S.D.N.Y. Aug. 5, 2003) (bifurcating the

issue of willfulness and acknowledging that "[s]hould [defendant's] motion [for summary

judgment] be granted, there will be no need for further discovery on the Opinion, and therefore no need to waive the attorney-client privilege."); *Rhodia Chimie*, 218 F.R.D. at 418 ("The power of a charge of willful infringement to knock down privileges that are, in most contexts, regarded with the utmost respect is ... a matter of considerable concern.").

> This has come to be known as the "Quantum dilemma":
>
> > Proper resolution of the dilemma of an accused infringer who must choose between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found.

*Quantum Corp. v. Tandon Corp*, 940 F.2d 642 (Fed. Cir. 1991). *See also Novopharm Ltd.*, 181 F.R.D. at 312 (citing *Quantum* and observing that "[d]elaying adjudication on willfulness, even absent a specific showing of a threat to the attorney-client privilege, avoids 'even the possibility of prejudice to a patent defendant's litigation rights'"); *Aptargroup, Inc. v. Owens-Illinois, Inc.*, 2003 WL 21557632, at *1 (N.D. Ill. July 3, 2003) (granting defendant's motion to bifurcate willfulness and liability after citing "*Quantum* dilemma"); *B. Braun Med. Inc. v. Abbott Labs.*, 32 U.S.P.Q.2d 1211, 1215 (E.D. Pa. 1994) ("[H]aving found a *Quantum*-type dilemma, the Court has bifurcated the issue of willfulness."); *U.S. Gypsum Co. v. Nat'l Gypsum Co.*, No. 89 C 7533, 1994 WL 74989, at *2 (N.D. Ill. Mar. 10, 1994) (citing *Quantum* and noting the "untenable situation" the alleged infringer would be in if trial was not bifurcated).

The Federal Circuit's recent decision in *Knorr-Bremse* did not eliminate this dilemma for defendants charged with willfulness. *See, e.g., Knorr-Bremse*, 383 F.3d at 1346. Although *Knorr-Bremse* eliminated the adverse inference -- the presumption that failure to obtain an

opinion of counsel means that such an opinion would have been unfavorable -- it did not

eliminate an accused infringer's "affirmative duty" to avoid infringing a known patent. *See id.*

The best way of fulfilling that duty, even after *Knorr-Bremse*, may still be by seeking the advice

of counsel. *See Kemin Foods*, 357 F. Supp.2d at 1129 (stating that the affirmative duty "may

require obtaining competent legal advice"). In fact, *Knorr-Bremse* does not offer any new

alternatives for demonstrating that the affirmative duty of care has been met. *See Knorr-Bremse,*

383 F.3d at 1346 (instructing the district court to re-weigh, without the presumption, the factors

illustrated by precedent with respect to willfulness of infringement).

Kodak and Altek face the "Quantum dilemma" here. Forcing Defendants to decide

whether to rely upon an opinion of counsel before a determination of liability risks an

unnecessary waiver of the attorney client privilege. If the Defendants waive the privilege, but

the patent is later found not infringed, invalid, or unenforceable, the attorney client privilege will

have been needlessly but irrevocably waived. *See Quantum*, 940 F.2d at 643-44; *Novopharm*,

181 F.R.D. at 311-312; *Princeton Biochem.*, 180 F.R.D. at 260.

     3.    *By deferring the waiver decision until after liability has been determined,*
         *bifurcation resolves the Quantum Dilemma and eliminates the risk of needless*
         *waiver of the attorney client privilege.*

By postponing the defendant's decision of whether to disclose and rely upon an opinion

of counsel until *after* the issues of infringement, validity, and enforceability have been resolved,

bifurcation eliminates the risk that the privilege will be waived in a case where willfulness is

ultimately not an issue. Bifurcation of discovery and trial regarding willfulness is therefore

appropriate because it eliminates the risk of an unnecessary and irrevocable waiver of the

attorney client privilege. *See, e.g., Quantum*, 940 F.2d at 644 ("Trial courts thus should give

serious consideration to a separate trial on willfulness whenever the particular attorney-client

12

communications ... reveal that the defendant is indeed confronted with this dilemma."); *Allergan Inc.*, 2002 WL 1268047, at *2 n.1 ("Rather than requiring disclosure [of opinions and related documents] at this time, the court will bifurcate the issue of willfulness, and conduct a separate trial with a new jury in the event plaintiffs are found to infringe valid patents."); *Princeton Biochemicals, Inc.*, 180 F.R.D. at 258 (granting the defendant's motion to bifurcate willfulness and liability issues and noting that it was "persuaded by the more recent case law which holds that willful infringement is more appropriately determined after liability has been established"); *Sage Prods., Inc. v. Devon Indus., Inc.*, No. CV 93-2403 RG (CTX), 1994 WL 791601, at *3 (C.D. Cal. Jan. 15, 1994) (granting alleged infringer's motion to bifurcate in view of *Quantum* dilemma and noting that "[a]lthough bifurcation may result in some duplication of effort, it will allow [the alleged infringer] to retain the privilege without sacrificing its willfulness defense.").

Numerous courts have bifurcated willfulness issues for this very reason.  *See, e.g. Lear Corp. v. Bertrand Faure Tech. Ctr., Inc.*, No. 00-CV-72895, 2001 U.S. Dist. LEXIS 25479, at *7 (E.D. Mich. Sept. 4, 2001) (bifurcating willfulness and liability and noting that "patent cases often lend themselves to bifurcation"); *Pfizer, Inc.*, 57 U.S.P.Q.2d at 1445 (concluding that "bifurcation of liability and willfulness issues for the purposes of trial and discovery is warranted"); *Novopharm Ltd.*, 181 F.R.D. at 312 (granting alleged infringer's motion to bifurcate willfulness and infringement and staying discovery on willfulness until after infringement was adjudicated); *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 396, 398 n.2 (D. Del. 2002) ("The Court recognizes that an alleged infringer could incur undue prejudice as a result of the scope of discovery required.  Accordingly, in the future, the Court will consider separating the issues of willfulness and damages from the other patent issues."); *U.S. Gypsum*, 1994 WL 74989, at *2 ("If both [willfulness and liability] issues are tried together, [the defendant] will

13

either be deprived of a colorable defense to the willfulness claim or be damaged by the

admissions in those documents in the liability phase. That is an untenable situation.").

For these same reasons, an order staying discovery relating to willfulness issues is

warranted because otherwise Defendants would still have to make their waiver decision now.

*See Allergan Inc.*, 2002 WL 1268047, at *2 n.1 (bifurcating the issue of willfulness and ordering

a stay of discovery related to willfulness); *St. Clair Intellectual Prop. Consultants, Inc.*, 2002

WL 1901268, at *1 (bifurcating trial and ordering a stay of discovery on the issue of willfulness).

4.      *Bifurcation is also justified to avoid prejudice to defendants at the trial of
        infringement issues.*

Courts may order separate trials where evidence admissible only on a certain issue may

prejudice a party in the minds of the jury on other issues. *See Laitram Corp. v. Hewlett-Packard

Co.*, 791 F.Supp. 113, 116 (E.D. La. 1992). Bifurcation of the issues of liability and willfulness

is appropriate in light of the distinct inquiries each issue involves and the potential for evidence

regarding willfulness to improperly influence a jury's determination regarding infringement.

Patent infringement and willfulness are separate and distinct inquiries. Patent infringement

requires a party to make an objective showing that an individual or entity made, used, sold, or

offered to sell a patented invention during the term of a patent. *See* 35 U.S.C. § 271(a). In

contrast, "[l]iability for willfulness of infringement turns on considerations of intent, state of

mind, and culpability." *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1192 (Fed. Cir.

1996). The two inquiries have little to do with one another because, as the Supreme Court has

made clear, a party's state of mind or intent to infringe is *irrelevant* to the question of

infringement. *See Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997)

(noting that proof of intent is not required for a finding of infringement); *Avia Group Int'l, Inc. v.*

14

*Nike, Inc.*, 22 U.S.P.Q.2d 1475, 1477 (D. Or. 1991) ("Because intent is irrelevant to a determination of patent infringement, there is no overlap concerning willfulness between the issue of liability and damages."). *See also Princeton Biochemicals, Inc.*, 180 F.R.D. at 258 ("A determination regarding patent infringement does not require a detailed inquiry into the elements of willful infringement.").

Apart from being "irrelevant" to the issue of liability, presentation of evidence concerning willfulness has the potential to prejudice an alleged infringer. Evidence of a defendant's intent to infringe likely will confuse or improperly influence a jury on the issue of whether the defendant infringed at all. As the court in *Aptargroup, Inc. v. Owens Illinois* acknowledged, "there is a basis for believing that an 'intent' issue mixed up with an infringement issue will have a tendency to confuse and possibly prejudice the jury, without any real relevant evidence benefit." 2003 WL 21557632, at *1 (ordering bifurcation of willfulness and liability). *See also Laitram Corp.*, 791 F. Supp. at 116 (separating trial on willfulness until after liability and damages are established, noting that "there is the danger ... that the jury will consider evidence that may be admissible on only one issue to the moving party's prejudice on other issues."). Separating liability and willfulness "eliminates the danger that evidence of willfulness might prejudice the jury against [the alleged infringer] during the liability phase of the case." *Pittway Corp. v. Maple Chase Co.*, No. 91 C 3582, 1992 WL 392584, at *5 (N.D. Ill. Dec. 16, 1992); *Armsted Indus. v. Nat'l Castings, Inc*, 16 U.S.P.Q. 2d 1737, 1739 (N.D. Ill. 1990) (noting that "prudence counsels in favor of excluding the bulk of [willfulness] evidence unless and until the jury has first found in favor of [the patent owner] on the separate, threshold questions of patent validity and infringement").

15

**B.     BIFURCATION IS PARTICULARLY APPROPRIATE BECAUSE AMPEX HAS NOT MADE A PRIMA FACIE CASE OF WILLFUL INFRINGEMENT**

Ampex's unsupported allegation of willfulness does not justify an invasion of the attorney client privilege. Defendants should not be compelled, based on Ampex's mere assertion of willfulness alone, to determine now whether they will waive the privilege and rely upon the defense of opinion of counsel. *See, e.g., Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1332 (Fed.Cir. 2004) (affirming a district court's ruling that "the burden of proving willful infringement was on [the plaintiff], and that it was not [the defendant's] burden to come forward with an exculpatory opinion, when [the plaintiff] had not presented a prima facie case of willful infringement."); *Golden Blount, Inc. v. Robert H. Peterson Co.*, No. 04-1609, 05-1141, 05-1202, 2006 WL 335607, at *10 (Fed. Cir. Feb. 15, 2006) ("The patentee must present threshold evidence of culpable behavior before the burden of production shifts to the accused to put on evidence that it acted with due care.").

To prove willful infringement, Ampex must show that Defendants *knowingly and deliberately* infringed the '121 patent. Ampex must show that Defendants acted with "wanton disregard of the patentee's patent rights," or committed some "deliberate tortious act of infringement." *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1583 (Fed. Cir. 1996) (stating that "the deliberateness of the tortious acts" is grounds for a finding of willful infringement). Willful infringement requires a showing of "*egregious conduct*" by the accused infringer. *See Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005) (emphasis added). Ampex has not made a prima facie showing that Defendants' alleged infringement was willful.

Until its recent supplemental interrogatory response in anticipation of this Motion, Ampex's willfulness allegation amounted to three assertions: a Kodak prosecuting attorney cited the '121 patent (among 13 others) in a 1993 Information Disclosure Statement filed with the United States Patent Office during the prosecution of a Kodak patent; Ampex notified Kodak of the existence of the '121 patent in an August 2001 letter; and Kodak prosecuted and obtained the '831 patent that Ampex claims covers the same technology as the '121 Patent. *See* A - 74-84.

Even if taken as true, these three assertions do not establish willful infringement. At best, they establish only that certain employees became aware of the '121 patent. Knowledge of the patent alone, however, is not enough, particularly where, as here, the patent is directed to electronic still store technology for the television broadcast industry and *never once references digital cameras.*[4] *See Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1351-52 (Fed. Cir. 2000) (accused infringer's knowledge of asserted patent, without more, is insufficient to support a conclusion of willfulness).

Ampex's willfulness assertions also fail to address the fact that, despite Kodak's multiple requests, Ampex never provided Kodak with any basis for its claim that Kodak's digital cameras infringed the '121 patent. Twice – once each after Ampex's 2001 and 2004 demand letters – Kodak specifically requested that Ampex provide claim charts or some other support for its license demand. *See* A - 6; A - 18. Twice, however, Ampex simply ignored this request.

Ampex's February 13, 2006 Supplemental Response to Defendants' willfulness interrogatory is equally deficient. Ampex's Supplemental Response adds only one assertion: that in 1992, in conjunction with the development of a new product, Kodak conducted a patent search

---

[4] The fact that a prosecuting attorney becomes aware of a patent during prosecution is no indication of willfulness because the prosecuting attorney is comparing the patent to the patent application he is prosecuting not to the products of the company seeking the patent.

17

in which the '121 patent, among twelve others, was identified. *See* A - 134-142.[5] As with its

earlier assertions, Ampex's new allegation does not establish that Kodak *deliberately infringed.*

At most, it shows that certain Kodak employees became aware of the '121 patent. Again,

however, knowledge alone is not enough. *See Ajinomoto*, 228 F.3d at 1351-52; *Read Corp.*, 970

F.2d at 826 ("deliberate" infringement is required for a finding of willfulness).

Moreover, the facts recited in Ampex's new allegation are actually further evidence that

any alleged infringement was *not willful.* As Ampex references, Kodak conducted a new product

clearance search to ensure that its product would not run afoul of any existing patents. The fact

that the search identified the '121 patent and the Kodak product was cleared is an indication that

Kodak believed its products *did not infringe* the '121 patent.

Willfulness allegations have become an almost "standard feature" of patent infringement

actions because of the strategic advantage to plaintiffs of including such allegations in a

complaint:

> [T]here are often no significant barriers to adding an allegation of willfulness to a
> complaint for patent infringement .... And since an allegation of willfulness can
> impose great pressure on defendants and can create unique opportunities for
> plaintiffs to invade provinces otherwise off limits (confidential communications
> between client and lawyer and the lawyer's work product), there are substantial
> incentives to add such an allegation to a complaint -- even if there is no
> evidentiary foundation for it. As a result, allegations of willfulness have become
> almost a standard feature of complaints sounding in infringement.

---

[5]     The document on which Ampex bases its new assertion is a privileged letter from an
outside law firm retained by Kodak. Defendants notified Ampex that the letter was inadvertently
produced and requested that it be returned. Ampex initially did not adhere to Defendants'
request and included the letter in its supplemental interrogatory response. Ampex subsequently
agreed to return the privileged document but now refuses to remove its discussion of the
document, including a number of quotations, from its interrogatory response.

*Sharper Image Corp. v. Honeywell Int'l Inc.*, 222 F.R.D. 621, 636 (N.D. Cal. 2004). Defendants should not be compelled to waive the attorney client privilege on the basis of Ampex's allegations alone.

**C.    BIFURCATION OF LIABILITY AND WILLFULNESS WILL RESULT IN NO PREJUDICE TO AMPEX**

Bifurcation of infringement and willfulness will result in no prejudice to Ampex. If Ampex prevails on the issues of infringement, validity, and enforceability, it will then have the opportunity to conduct discovery and present its case on willfulness. If Ampex does not prevail on each of these issues, willful infringement will no longer be an issue and Ampex will have no need for such discovery. In fact, bifurcation will spare all parties, including Ampex, the burden of undertaking costly discovery regarding willfulness unless and until it becomes necessary.

**D.    BIFURCATION OF LIABILITY AND WILLFULNESS WILL PROMOTE JUDICIAL ECONOMY**

Bifurcation of willfulness and liability in this case will promote judicial economy and avoid the risk of unnecessary expense because a determination that the '121 patent is either not infringed, invalid, or unenforceable would render discovery and a trial on willfulness unnecessary. *See, e.g., Sage Prods. Inc.*, 1994 WL 791601, at *3 (noting that bifurcation of liability and willfulness/damages would "avoid needless work" in the event the alleged infringer prevailed at the liability phase); *Allergan Inc.*, 2002 WL 1268047, at *2 n.1 ("[R]ather than requiring disclosure [of opinions and related documents] at this time, the court will bifurcate the issue of willfulness, stay discovery relating to willfulness ,and conduct a separate trial with a new jury in the event plaintiffs are found to infringe valid patents."); *Pfizer Inc.*, 57 U.S.P.Q.2d at 1445 ("[A] finding of no liability would obviate the need for discovery and trial on the willfulness issue ….").

19

As this Court has recognized, discovery regarding opinions of counsel can be particularly contentious and costly. *See Rhodia Chimie,* 218 F.R.D. at 418 ("The consequent waiver of privileges and protections that the advice-of-counsel defense entails, however, is now the basis of innumerable disputes ... distracting the court and the parties from addressing the fundamental questions of infringement and validity."). Bifurcation will ensure that neither the Court nor the parties will bear the burden of such discovery unless and until it becomes necessary.

## VI.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court bifurcate the issues for this patent infringement trial into two phases: (1) liability and damages; and (2) willful infringement. Defendants further request that the Court issue a protective order staying discovery relating to opinions of counsel until after liability has been adjudicated. In the event that they do not prevail on this motion to bifurcate, Defendants request that they be permitted to produce opinions of counsel and related documents after the Court rules on this motion, even if the ruling occurs after February 28, 2006.

PRICKETT, JONES, ELLIOTT, P.A.

_____

PAUL M. LUKOFF (I.D. No. 96)
DAVID E. BRAND (I.D. No. 201)
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500

Date: February 22, 2006

**OF COUNSEL:**

S. Calvin Walden
Paul B. Keller
Rebecca M. McCloskey
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

William F. Lee
Donald R. Steinberg
Michael J. Summersgill
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6000
Fax: (617) 526-5000

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2006, I electronically filed **DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO BIFURCATE AND MOTION FOR PROTECTIVE ORDER** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

I hereby certify that on February 22, 2006, I have forwarded the above-noted document to the following as noted below:

**VIA E-MAIL**

Jesse J. Jenner, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

**VIA E-MAIL & FEDERAL EXPRESS**

Norman H. Beamer, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301

**VIA E-MAIL**

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

*Paul M. Lukoff*

PAUL M. LUKOFF (Bar I.D. #96)
DAVID E. BRAND (Bar I.D. #201)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE  19899-1328
TEL: 302-888-6500
E-MAIL:  PMLukoff@prickett.com
            DEBrand@prickett.com

19660.3\297801v1