

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 392584 (N.D.Ill.)
**(Cite as: 1992 WL 392584 (N.D.Ill.))**

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.
PITTWAY CORPORATION, Plaintiff,
v.
MAPLE CHASE COMPANY, Seatt Corporation, and Jameson Home Products, Inc. Defendants.
**No. 91 C 3582.**

Dec. 16, 1992.

MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

*1 At the center of this lawsuit is United States Patent No. 4,138,670, referred to in this opinion as "the '670 patent." The 670 patent issued to Plaintiff Pittway based on an application filed on January 3, 1977. The patent is directed to a battery-powered smoke detector, such as that found in a typical home. Pittway has accused defendants of infringement. Defendants, referred to here collectively as "Seatt," have counterclaimed for the invalidity of the patent and move the Court for summary judgment on its counterclaim. Seatt also moves for an order bifurcating the issues of liability, damages and willfulness. [FN1]

BACKGROUND

Seatt's summary judgment motion is grounded solely on the deposition testimony of Quentin Schneider, one of two co-inventors of the '670 patent. Mr. Schneider testified that after the patent was written but before the application was filed, he learned of a problem in the smoke alarm's electrical circuitry which controlled the operation of the horn. According to Mr. Schneider, under the '670 circuitry design, there is a small but continuous amount of electrical current flowing through the horn when the horn is off. Over an extended period, this continuous flow of current corrodes the horn contacts and ultimately results in horn failure.

Mr. Schneider identified a schematic during his deposition that he said represented a redesign of the circuitry which rectified the problem of continuous current flow through the horn. The schematic reflecting the redesigned circuitry was dated September 7, 1976; the '670 patent, which did not reflect the circuitry redesign, was filed in January of 1977. Mr. Schneider explained that the redesigned circuitry created a likelihood of increased horn life by substantially reducing the flow of low level current through the horn contacts. He testified further that he was probably responsible for the change in circuitry design, and that any change he made "would have had to happen with Mr. Schwarzbach's understanding, and he had to sign off on changes that I made." Mr. Schwarzbach is the co-inventor of the '670 patent.

Though it is not reflected in the '670 patent application, the circuitry change identified by Mr. Schneider was incorporated into the commercial embodiment of the '670 patent--Pittway's 769 AC/DC smoke detector.

SUMMARY JUDGMENT STANDARDS

The operation of Rule 56 of the Federal Rules of Civil Procedure remains constant regardless of the subject matter of the dispute. What shifts is the substantive evidentiary burden through which a judge views the evidence when ruling on a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2513-14 (1986). Thus, in a patent case, as in all cases, summary judgment is appropriate when no genuine issue of material fact remains for decision and the moving party is entitled to judgment as a matter of law. Tillotson, Ltd. v. Walbro Corp., 831 F.2d 1033, 1036 (1987). But because an issued patent "carries a statutory presumption of validity ..., which must be overcome by clear and convincing evidence," a party seeking to invalidate a patent through summary judgment bears a heavy burden. Id. (citations omitted). Furthermore, in considering the motion, the court must draw all reasonable inferences in the light most favorable to the non-movant. Id. at 1037.

BEST MODE [FN2]

*2 Seatt contends that Pittway's failure to disclose the redesigned smoke alarm circuitry, which Mr. Schneider described as an improvement over the circuitry disclosed in the '670 application, invalidates

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 2
Not Reported in F.Supp., 1992 WL 392584 (N.D.Ill.)
**(Cite as: 1992 WL 392584 (N.D.Ill.))**

the '670 patent under the best mode requirement.
The patent application statute requires that "[t]he
specification ... set forth the best mode contemplated
by the inventor of carrying out the invention." 35
U.S.C. § 112. "The purpose of the best mode
requirement is to ensure that the public, in exchange
for the rights given the inventor under the patent
laws, obtains from the inventor a full disclosure of
the preferred embodiment of the invention." *Dana
Corp. v. IPC Limited Partnership,* 860 F.2d 415, 418
(1988), *cert denied,* 109 S.Ct. 2068 (1989).

Patent invalidity for failure to disclose the best mode
requires that "(1) the inventors knew of a better mode
of carrying out the claimed invention than they
disclosed in the specification, and (2) the inventors
concealed that better mode." *Engel Industries, Inc. v.
Lockformer Co.,* 946 F.2d 1528, 1531 (Fed.Cir.1991).
Pittway asserts that there are numerous genuine
issues of material fact that preclude summary
judgment.    Most of the arguments advanced by
Pittway are unpersuasive.    We address these
arguments in turn.

Pittway contends that Mr. Schneider's deposition
testimony is self-contradictory.    In its brief, Pittway
presents snippets of Mr. Schneider's testimony which,
when viewed in isolation, call into question Mr.
Schneider's resolve about the existence of a horn
corrosion problem.    The Court has read the relevant
portions of Mr. Schneider's deposition transcript and
finds his testimony clear.    Mr. Schneider perceived a
problem in the horn circuitry caused by continuous
current flow through the horn contacts.    He testified
that he made a change in the circuitry to correct the
perceived problem and that the change was made
before the '670 application was filed, though it is not
disclosed in the application.

We need not find, as Pittway suggests, that Mr.
Schneider's testimony "establish[es] the existence of
a horn corrosion problem as a fact beyond dispute."
Rather, we need only find that Mr. Schneider
reasonably believed at the time Pittway filed the
patent application that the redesigned circuitry
represented the best mode for practicing the
invention.    Stated more broadly, it is the inventor's
belief about the best mode for practicing the
invention at the time of filing that determines
compliance with the best mode requirement.    *See,
e.g., Texas Instruments, Inc. v. U.S. Int'l Trade
Com'n.,* 871 F.2d 1054, 1061 (Fed.Cir.1989) (no
violation of best mode requirement where inventors
did not consider "word boost" feature part of best
mode of their invention); *Dana Corp.,* 860 F.2d at

419 (court focuses on what inventor thought
constituted the best mode of his invention to
determine compliance with best mode requirement).
Similarly, that Mr. Schneider may not be able to
identify who advised him of the perceived horn
corrosion problem is of no great moment.    He
testified that he believed the problem existed and of
his awareness of a similar longstanding problem in
telephone switches.    That is enough to establish Mr.
Schneider's reasonable belief in the existence of the
problem and that the redesigned circuitry, which in
his view eliminated the problem, represented the best
mode of practicing the invention.

**\*3** Pittway presents evidence that disputes Mr.
Schneider's testimony as to the reason for the
circuitry modification and who effected the change.
According to Pittway, the change was not made to fix
any problem with the horn but for marketing reasons,
and the modification was not originated by Mr.
Schneider but an electronics engineer named Slater.
We need not delve into the details of Pittway's
argument or the evidence presented to support it
because it is beside the point.    What matters is this:
a circuitry change was made before Pittway filed the
application, Mr. Schneider knew about the change
and considered the modified circuitry an
improvement over the '670 circuitry that Pittway
disclosed. [FN3] In this Court's view, the reason for
the change and who originated it are not
determinative of whether the '670 patent satisfies 35
U.S.C. § 112, and Pittway cites no authority that
says they are.

Pittway also argues that a factual issue exists as to
whether the circuitry change could fix the problem
that Mr. Schneider described concerning continuous
current flow through the horn.    Pittway asserts that
contrary to Mr. Schneider's testimony, the redesigned
circuitry does not eliminate the flow of microcurrents
through the horn contacts.    First, we agree with Seatt
that Mr. Schneider did not testify that the
modification would totally eliminate the flow of
microcurrents through the horn.    He testified that in
contrast to the '670 circuitry, the redesigned circuitry
would allow "substantially less than a microamp" of
current flow through the horn when the horn is off.
He equated current of "substantially less than a
microamp" with "no current" for purposes of
contrasting the level of current flow in the '670
circuitry and the modified circuitry.    Second, the
argument is irrelevant.    It is not the Court's job to
decide whether an inventor's conception of what is
"best" is in fact the best mode for carrying out an
invention.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                              Page 3
Not Reported in F.Supp., 1992 WL 392584 (N.D.Ill.)
**(Cite as: 1992 WL 392584 (N.D.Ill.))**

As intimated earlier, not all of Pittway's arguments miss the mark. Pittway has submitted an affidavit of Mr. Schwarzbach, the co-inventor of the '670 patent. In his affidavit, Mr. Schwarzbach states that he did not believe before the '670 patent application was filed (nor does he believe today) that the redesigned circuitry represents the best mode for practicing the invention of the '670 patent. He prefers the '670 circuitry design because, unlike the modified design, the '670 design provides an audible trouble signal if the battery is removed from the smoke detector reminding the owner to replace the missing battery. Pittway contends, therefore, that Mr. Schwarzbach's affidavit raises a genuine issue of material fact as to whether the inventors of the '670 patent preferred the modified circuitry.

Mr. Schwarzbach's affidavit raises two questions, one legal and one factual. First the legal question: in order to give rise to a best mode disclosure requirement, must joint inventors agree that a particular embodiment of an application's claimed invention is the preferred embodiment? Pittway argues that agreement between joint inventors is necessary, citing *Union Carbide Corp. v. Dow Chemical Co., 213 U.S.P.Q. 128, 138 (S.D. Texas 1981), aff'd, 682 F.2d 1136 (5th Cir.1982).* This case provides some support for Pittway's position. The court in *Union Carbide* concluded that joint inventors had not failed to disclose the best mode of a chemical process involving catalysts. Even Seatt concedes that one factor the court relied on in reaching that conclusion was that at the time of filing the inventors could not agree about which of two possible catalysts was preferable. *Id.* The parties have not cited and the Court has not located any other cases touching on this question. [FN4]

*4 In addition to *Union Carbide,* common sense favors Pittway's theory. Before a particular embodiment of an invention can be considered the "best mode" for practicing it, it must be decided what particular embodiment is best. The inventor or inventors make that decision. If co-inventors do not agree about whether a particular embodiment is best, we do not believe that a court should resolve the dispute by finding the failure to disclose an embodiment preferred by one co-inventor constitutes a violation of the best mode requirement. Additionally, Pittway's eventual incorporation of the modified circuitry into its 769 AC/DC smoke detector does not mandate the conclusion that the best mode was not disclosed. Sometimes the commercial embodiment of the claimed invention is

not identical to the best mode contemplated by the inventor at the time of filing. *See Texas Instruments, 871 F.2d at 1061* (no best mode violation though manufactured product different than invention described in specification). Whatever the reason for Pittway's adoption of the modified circuitry, the evidence fails to establish that the inventors of the '670 patent considered the modified circuitry as part of the best mode of practicing their invention.

That leaves the factual question raised by Mr. Schwarzbach's affidavit, which is less difficult to answer. Seatt argues that the Court should disregard Mr. Schwarzbach's affidavit because his assertions in the affidavit "directly contradict[ ] his stated lack of knowledge" at deposition. Seatt's Reply Brief at 11. Seatt is correct that a party cannot establish a genuine issue of fact by contradicting his own earlier statements. *Bank Leumi-Israel, B.M. v. Lee, 928 F.2d 232, 237 (7th Cir.1991)* (no triable issue where defendant testified he had not entered into any agreement with bank outside of Guaranty and later alleged an oral modification of Guaranty). But unlike *Bank Leumi-Israel,* Mr. Schwarzbach's affidavit and deposition testimony are not in direct conflict. True, at his deposition Mr. Schwarzbach professed to have a limited recollection of the events surrounding the '670 patent application. The fact remains, however, that the subject discussed in the affidavit--the modification of the horn circuitry--was never even touched on during the deposition. [FN5] It may well be that if the subject were raised during the deposition, Mr. Schwarzbach would have recounted what he now relates by affidavit.

Under these circumstances, it would be inappropriate to disregard Mr. Schwarzbach's affidavit. His affidavit raises a genuine issue of fact about whether the inventors of the '670 patent considered the modified horn circuitry the best mode for practicing their invention. Seatt's motion for summary judgment is denied.

BIFURCATION

Seatt asks the court to order separate trials on liability, damages and willfulness, to be conducted consecutively to the same jury. [FN6] The motion has special significance to Seatt because Pittway has asked Seatt to produce its attorney-client communications and thereby waive the attorney-client privilege, or be precluded from relying on opinions from their attorneys as a defense against the willful infringement charged by Pittway. [FN7] Seatt explains in its brief that it has "preliminarily" declined to produce its attorney-client

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 392584 (N.D.Ill.)
(Cite as: 1992 WL 392584 (N.D.Ill.))

communications, and has indicated it does not intend to rely on them. Still, Seatt does not want to be forced to choose between waiving the attorney-client privilege or foregoing reliance on the good-faith-advice-of-counsel defense.

*5 Seatt thus claims to be caught between the horns of a dilemma. If liability and willfulness are tried together and Seatt waives the privilege to protect itself from a willfulness finding, it may risk prejudicing itself on the question of liability. If Seatt maintains the privilege and liability is found, it may not use reliance on counsel's advice to fend off a finding of willfulness. The Federal Circuit has stated, in dictum, that trial court's "should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera,* reveal that the defendant is indeed confronted with this dilemma." *Quantum Corp. v. Tandon Corp.,* 940 F.2d 642, 644 (Fed.Cir.1991).

Pittway contends, however, that bifurcation will not extricate Seatt from its dilemma, even if such a dilemma is present. Bifurcation will not allow defendants to defer the decision of whether to waive the attorney-client privilege because, Pittway argues, even if liability and damages are tried separately, liability and willfulness must be tried together because the issues are "inextricably bound." Notwithstanding Pittway's bold presentation of the argument, support for the proposition that liability and willfulness are "inextricably bound" is scant and, in the end, unpersuasive. The court in *Kimberly-Clark Corp. v. James River Corp.,* 14 U.S.P.Q. 2070, 2071 (N.D.Ga.1989) states that the issues of liability for infringement and willfulness cannot be separated, but the court provides no reasoning to support this broad assertion. Judge Bua refused to separate the issues of liability, willfulness and damages in *Keyes Fibre Co. v. Packaging Corp. of America,* 763 F.Supp. 374, 375-76 (N.D.Ill.1991). As to the question of ordering separate trials on liability and willfulness, Judge Bua relied, in part, and without elaboration, on the decision in *Kimberly-Clark. Keyes Fibre,* 763 F.Supp. at 375. In the only other passage of *Keyes* that bears on the separation of liability and willfulness, Judge Bua stated that failure to hold separate trials would not result in prejudice because *Keyes*--unlike this case--was to be tried by the court, sitting without a jury. *Id.* at 376.

In this Court's view, the issues of liability and willfulness are capable of separation and should sometimes be tried separately. For example, as the

Federal Circuit recognized in *Quantum Corp.,* bifurcation may be necessary to avoid forcing a party to choose between asserting a good faith reliance defense or preserving its attorney-client privilege. And there are other factors that can make separate trials on liability and willfulness the appropriate course. Separating liability from willfulness eliminates the danger that evidence of willfulness might prejudice the jury against defendants during the liability phase of the case. The jury need not hear evidence about the desire or intent to infringe to decide whether infringement occurred. *Avia Group Int'l, Inc. v. Nike, Inc.,* 1991 U.S. Dist. LEXIS 20492 at *4 (D.Ore.1991), *aff'd,* 22 U.S.P.Q.2d 1475 (D.Ore.1991). If a jury finds liability, it is the court's job to decide whether increased damages for willful infringement are warranted. *Laitram Corp. v. Hewlett Packard Co.,* 791 F.Supp. 113, 116 (E.D.La.1992) (willful infringement of a patent "is determined by the judge and not the jury"); *see also Fromson v. Western Litho Plate and Supply Co.,* 853 F.2d 1568, 1572 (Fed.Cir.1988) (findings to support or deny increased damages for willfulness made by trial court). Considerations of prejudice to the defendant led the court in *Laitram Corp.* to declare, "[e]vidence of willfulness should be presented in an environment that insures the jury will not be influenced by it." *Laitram Corp.,* 781 F.Supp. at 116.

*6 Next, Pittway argues that having pled an affirmative defense of estoppel, Seatt has put its reliance on opinions of counsel in issue, thereby waiving any attorney-client privilege. The Court is not convinced that by simply raising the defense of estoppel Seatt has waived the privilege. Nor do the cases cited by Pittway support such a conclusion. In both *Southwire Co. v. Essex Group, Inc.* and *McLaughlin v. Lunde Truck Sales, Inc.,* it was the existence of an estoppel defense coupled with the defendants' affirmative act of reliance on its counsels' opinions that led the courts to find waiver. *Southwire Co. v. Essex Group, Inc.,* 570 F.Supp. 643, 649 (N.D.Ill.1983) (by stipulating that it relied on counsel's opinions to prove reliance on one issue, defendant waived privilege on separate issue); *McLaughlin v. Lunde Truck Sales, Inc.,* 714 F.Supp. 916, 919-920 (N.D.Ill.1989) (defendant waived privilege by voluntarily submitting affidavit of counsel to support defense of good faith reliance). Seatt has not taken any such affirmative act here. On the contrary, Seatt has indicated that it does not intend to rely on its attorney-client communications.

Thus, it may well be that Seatt's asserted dilemma is real. Under these circumstances, it is appropriate to

Not Reported in F.Supp.                                                                                                    Page 5
Not Reported in F.Supp., 1992 WL 392584 (N.D.Ill.)
(Cite as: 1992 WL 392584 (N.D.Ill.))

follow the advice of the court in *Quantum Corp.* If after *in camera* review of any attorney-client communications bearing on willfulness, the Court concludes that a unitary trial on the issues of liability and willfulness poses a substantial risk of prejudice to Seatt, then the Court may order separate trials on the issues of liability and willfulness. Alternatively, the Court may deem it best to require Seatt, after an opportunity to take reasonable discovery on the other aspects of the case, to decide whether it will assert a good faith reliance defense. Then the Court will decide whether to separate liability and willfulness.

In any event, I conclude that the purposes of Rule 42(b) would be served through bifurcation of the liability and damages issues for trial. The validity and infringement issues are significantly different from the damages issue. The witnesses and documents relevant to these issues are distinct. Presentation of the evidence can be simplified and thus the burden on the jury lessened through bifurcation. The Court's ruling on bifurcation of the liability and damages issues shall in no way affect the timing or method of discovery in this case.

> FN1. Seatt's motion for summary judgment of infringement will be addressed in a separate memorandum and order.

> FN2. Since the Court of Appeals for the Federal Circuit has jurisdiction over all appeals in patent infringement cases, the law of the Federal Circuit governs this lawsuit.

> FN3. Mr. Schneider's affidavit, attached as an exhibit to Pittway's brief, does not alter these facts. The affidavit speaks to who initiated the circuitry change and why--facts tangential to a determination about compliance with the best mode requirement.

> FN4. *In Re Kaplan,* 789 F.2d 1574, 1575-76 (Fed.Cir.1976), cited by Seatt, did not involve a disagreement between joint inventors about the preferred embodiment of an invention. *In Re Kaplan* involved a patent application for a catalytic process submitted by co-inventors Kaplan and Walker. *Id.* at 1574-75. Kaplan was the sole inventor of that part of the process employing a solvent mixture. The solvent mixture part of the process was not claimed in the patent, but was disclosed in the patent specification, because while Kaplan was not the sole inventor of the catalytic process, his

innovation involving the solvent mixture was part of the best mode of practicing the process. *Id.* at 1575. There was no disagreement between Kaplan and Walker about whether use of the solvent mixture was part of the best mode of practicing the catalytic process.

> FN5. Based on excerpts of Mr. Schwarzbach's deposition attached to Seatt's reply brief, the Court has no basis to conclude otherwise.

> FN6. Seatt makes this request pursuant to Federal Rule of Civil Procedure 42(b), which states:
> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or three-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

> FN7. An allegation of willful infringement presupposes that the infringing party knows of the plaintiff's patent rights. Generally, once a party learns of the existence of a patent, that party must seek the advice of competent legal counsel before taking any potentially infringing action. *Royco, Inc. v. AG-Bag Corp.,* 857 F.2d 1418, 1428 (Fed.Cir.1988). Although not determinative, failure to seek legal advice supports a finding of willful infringement. *Royco,* 857 F.2d at 1428. Conversely, reliance on counsel's advice "militates against a finding of willfulness." *Keyes Fibre Co. v. Packaging Corp. of America,* 763 F.Supp. 374, 375 n. 1 (N.D.Ill.1991). A willfulness determination may entitle a party to treble damages. *Royco,* 857 F.2d at 1429.

Not Reported in F.Supp., 1992 WL 392584 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 1:91cv03582 (Docket) (Jun. 10, 1991)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 392584 (N.D.Ill.)
**(Cite as: 1992 WL 392584 (N.D.Ill.))**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 21800981 (S.D.N.Y.)
**(Cite as: 2003 WL 21800981 (S.D.N.Y.))**

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
PLASMANET, INC., Plaintiff,
v.
APAX PARTNERS, INC., f/k/a/ Patricof & Co.
Ventures, Inc., Traffix, Inc., f/k/a
Quintel Communications, Inc., Jeffrey L. Schwartz,
Robert Machinist, Thomas
Hirschfeld, and Alan J. Patricof, Defendants.
**No. 02 Civ.9290 BSJ THK.**

Aug. 5, 2003.

Owner of patent on lottery gaming system brought infringement action against competitor who counterclaimed for declaratory judgment that patent was not infringed, was invalid, and was unenforceable. Upon competitor's motion for order allowing completion of pretrial discovery on issue of liability and damages and staying of discovery on competitor's reliance of advice of counsel as defense to willful infringement claim, the District Court, Theodore H. Katz, United States Magistrate Judge, held that: (1) competitor's motion would be construed as motion for protective order, and (2) prejudice to competitor far outweighed any prejudice to patent owner by deferring discovery on competitor's reliance on advice of counsel, and warranted staged discovery order.

Motion granted.

West Headnotes

**[1] Patents** 292.4
291k292.4 Most Cited Cases
Motion filed by competitor in patent infringement action, seeking order allowing partial completion of discovery and staying of discovery regarding advice-of-counsel defense, would be construed as motion for protective order, pursuant to which court was required to balance impact of deferral of discovery on interests of justice by protecting competitor from undue oppression or burden, against resulting

prejudice to patent owner caused by undue expense, inefficiency, or delay. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

**[2] Patents** 292.4
291k292.4 Most Cited Cases
Balance of interests between competitor that would have to choose either to waive attorney-client privilege to protect itself against finding of willful infringement or to maintain privilege at risk of being found to be willful infringer, compared to alleged prejudice that would result to patent owner from stay of discovery on competitor's reliance advice-of-counsel defense, warranted order allowing staged discovery to enable competitor to avoid waiver of attorney-client privilege; patent owner would not be prejudiced by deferring discovery relating to competitor's reliance on attorney's opinion because discovery would continue as to issues of damages and willfulness, and deferral of discovery on limited issue would not result in substantial delay. Fed.Rules Civ.Proc.Rule 26(c), 28 U.S.C.A.

MEMORANDUM OPINION AND ORDER

KATZ, Magistrate J.

*1 This patent infringement action has been referred to this Court for general pretrial supervision and reports and recommendations on various dispositive motions. This Opinion and Order addresses a motion brought by two of the Defendants to stay pretrial discovery with respect to a possible advice-of-counsel defense to Plaintiff's claim of willful infringement, until pretrial discovery on all other issues is completed and dispositive motions relating to the validity of Plaintiff's patent and Plaintiff's claim of infringement have been resolved. For the reasons that follow, Defendants' motion is granted. [FN1]

> FN1. Defendants' motion also seeks a bifurcation of the trial on issues of liability and damages, with issues relating to the alleged willfulness of Defendants' infringement of Plaintiff's patent deferred to the damages portion of the trial. This portion of the motion is not addressed, as it rests within the discretion of the trial judge--the Honorable Barbara S. Jones.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 2
Not Reported in F.Supp.2d, 2003 WL 21800981 (S.D.N.Y.)
**(Cite as: 2003 WL 21800981 (S.D.N.Y.))**

## BACKGROUND

Plaintiff, Plasmanet, Inc. ("Plasmanet"), alleges willful infringement of its patent--a lottery gaming system and the method of conducting that system in a computer network environment--by Defendants Traffix Inc. ("Traffix") and Jeffrey L. Schwartz ("Schwartz") (hereinafter referred to collectively as "Traffix"). Traffix has brought counterclaims, seeking a declaratory judgment that the patent-in-suit is not infringed, is invalid, and is unenforceable. [FN2] Prior to the initiation of this suit, Traffix sought and was provided with a legal written opinion ("the Opinion") from its patent attorneys, as to whether the Traffix GroupLotto website infringes Plaintiff's patent. Traffix may rely on an advice-of-counsel defense to rebut Plaintiff's allegation of willful infringement. However, Traffix seeks to defer its assertion of the advice-of-counsel defense since to do so now would require the complete disclosure of its attorney's Opinion, thus resulting in the waiver of the attorney-client privilege as to its contents. Without staged discovery, in order to avoid disclosing the Opinion and waiving the privilege, Traffix would be required to forego its advice-of-counsel defense.

> FN2. There are pendent state law claims for trade secret misappropriation against all of the Defendants, and for breach of contract only against the Defendants other than Traffix and Schwartz.

To avoid this Hobson's choice, Traffix seeks an order which would first allow for the completion of pretrial discovery on all issues relating to both liability and damages, staying discovery solely on the issue of Traffix's reliance on the Opinion as a defense to willfulness. Traffix intends to then file a motion for summary judgment seeking dismissal of Plaintiff's claims of patent infringement. If that motion is denied, and the case is to proceed to trial, the remaining discovery relating to the Opinion would be conducted in advance of trial. In this way, Traffix would not be required to disclose privileged communications that would reveal its litigation strategies and the opinions of its counsel on issues of liability, which will be the subject of the summary judgment motion.

Plaintiff opposes the motion, arguing that the proposed procedures would be inefficient and would unnecessarily complicate discovery.

## DISCUSSION

This Court need not address much of Plaintiff's opposition to the motion because, as discussed, the issue of bifurcation of the trial will be addressed separately by Judge Jones, if necessary. Moreover, the thrust of Plaintiff's objections to the proposed discovery plan is based upon a misunderstanding of Traffix's motion. Traffix is not proposing to stay all discovery on damages and willfulness. It is proposing the deferral of only that discovery which relates to the Opinion.

**\*2** [1] Because the Court addresses only that portion of the motion relating to discovery, the Court treats Traffix's motion as one for a protective order, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. [FN3] Thus, the Court balances on the one hand, whether the deferral of discovery with respect to the Opinion serves the interests of justice by protecting Traffix from undue oppression or burden, and, on the other hand, whether by deferring the discovery Plaintiff will be prejudiced in any way, or whether undue expense, inefficiency, or delay would result.

> FN3. By contrast, Traffix's motion to bifurcate the trial is governed by Fed.R.Civ.P. 42(b).

[2] The interests Traffix seeks to protect are the work product of their counsel and the attorney-client privilege with respect to communications in and about the Opinion. While acknowledging that invocation of the defense of advice-of-counsel places in issue privileged communications between Traffix and its counsel, Traffix relies on a line of cases which recognizes that patent cases are particularly amenable to bifurcation on issues of liability and damages, and that such a course is often advisable in order to avoid the prejudice of requiring a defendant to make a choice, early in the litigation, about whether to invoke advice-of-counsel as a defense to willfulness or to waive the attorney-client privilege. The seminal case on this subject is *Quantum Corp. v. Tandon Corp.,* 940 F.2d 641 (Fed.Cir.1991). In the *Quantum* case, the Federal Circuit stated:

An accused infringer ... should not, without the trial courts's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts should thus give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21800981 (S.D.N.Y.)
**(Cite as: 2003 WL 21800981 (S.D.N.Y.))**

court, *in camera,* reveal that the defendant is indeed confronted with this dilemma.
*Id.* at 1762.

Consistent with the *Quantum* court's recommendation, this Court has conducted an *in camera* review of the Opinion and concludes that Defendants are indeed confronted with a so-called *Quantum* dilemma. [FN4] Disclosure of the Opinion would prejudice Traffix with respect to the issue of liability by revealing its attorney's thinking, strategy and opinions.

> FN4. Contrary to Plaintiff's counsel's contention, the submission of the Opinion for *in camera* review is not an improper *ex parte* disclosure of facts and argument to the Court regarding the issue of infringement. First, this Court will be not be deciding the merits of any claims of infringement and does not rely on the substantive views expressed in the Opinion for resolution of the instant motion. Moreover, courts regularly review privileged communications *in camera* in order to assess whether the privilege has been properly invoked. To require disclosure of such communications to opposing counsel would result in a waiver of the privilege. Finally, *in camera* review where a *Quantum* issue is presented is routine. *See, e.g., Valois of America, Inc. v. Risdon Corp.,* No. 3:95 CV 1850, 1998 WL 1661397, at *4 (D.Conn.1998)* ("It is clear from *Quantum* and its progeny, that before bifurcation, the Court must conduct an *in camera* review of the privileged attorney-client communications."); *Neorx Corp. v. Immunomedics, Inc.,* 28 U.S.P.Q.2d 1395, 1396 (D.N.J.1993); *Robotic Vision Sys., Inc. v. View Engineering, Inc.,* No. CV 96-2288, 1997 WL 809679, at *3 (C.D.Cal.1997).

Moreover, the Court cannot discern any prejudice to Plaintiff by deferring discovery relating to the Opinion. Contrary to Plaintiff's concern, Traffix is not proposing to stay all discovery on the issue of damages and willfulness. It merely seek to defer discovery relating to reliance on the Opinion. Therefore, Plaintiff's concern that great inefficiency would result because witnesses would have to be deposed twice in order to explore facts relevant to various issues, is misplaced. For example, Plaintiff contends that Defendant Schwartz will be deposed on issues relating to liability, invalidity, and damages, as well as whether he copied a confidential business roadmap that he obtained from Plaintiff. It contends that this willful act is central to the claim of trade secret misappropriation. Such copying can also be evidence of non-obviousness and commercial success, matters relevant to the validity of the patent. Plaintiff fears that it would be required to depose Schwartz twice, sorting out issues of liability, damages and willfulness, and that the subject of each deposition would become a "complete tangle," because these subjects are relevant to various issues in the case, not just damages. *See* Plasmanet's Opposition to the Traffix Defendants' Motions to Bifurcate ("Pl.'s Opp."), at 2-3. However, there is no reason for such concern. Traffix has no objection to discovery proceeding on these topics. It merely seeks to postpone discovery on its reliance on the Opinion, as a defense to an allegation of willful patent infringement.

**\*3** Under Traffix's proposal, discovery relating to the liability issues-- patent infringement, invalidity, and theft of trade secrets--will be conducted concurrently with discovery relating to damages. It is then Traffix's intention to move for summary judgment on the issues of infringement and validity. Should its motion be granted, there will be no need for further discovery on the Opinion, and therefore no need to waive the attorney-client privilege. Should the motion be denied, only a very limited additional amount of discovery will be required for the case to be ready for trial. Although there may be the need for a second deposition of a representative of Traffix to address the issue of reliance on the advice of counsel, the Court anticipates that such a deposition would be focused and relatively brief.

Under these circumstances, the Court concludes that the prejudice to Traffix by being required to disclose the Opinion far outweighs any prejudice to Plaintiff by deferring discovery on reliance on the Opinion. Moreover, deferring discovery on this limited issue until after resolution of Traffix's summary judgment motion will not result in any substantial delay or inefficiency. Accordingly, Traffix's motion to stay discovery on its reliance on the Opinion until after the resolution of dispositive motions is granted. [FN5]

> FN5. Contrary to Plaintiff's suggestion, Traffix has not waived the attorney-client privilege by simply articulating its dilemma or by submitting the Opinion for *in camera* review. The whole purpose of the review is to determine whether Traffix will be permitted to preserve the attorney-client

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 21800981 (S.D.N.Y.)
**(Cite as: 2003 WL 21800981 (S.D.N.Y.))**

privilege by deferring invocation of the advice-of-counsel defense and disclosure of the advice. *See Neorx,* 1993 WL 592531, at *2 ("If defendant chose to assert the advice-of-counsel defense, plaintiff would be entitled to timely discovery of the attorney-client communications. Otherwise, the attorney-client privilege would be preserved.") There has been no disclosure of the actual privileged communication, only notification of its existence.

SO ORDERED.

Not Reported in F.Supp.2d, 2003 WL 21800981 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:02cv09290 (Docket) (Nov. 21, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1994 WL 791601 (C.D.Cal.)
**(Cite as: 1994 WL 791601 (C.D.Cal.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
C.D. California
SAGE PRODUCTS, INC., Plaintiff,
v.
DEVON INDUSTRIES, INC., Defendant.
**CV 93-2403 RG (CTX).**

Jan. 25, 1994.
William M. Lee, Jr., Jeffrey Robert Gray, Lee Mann
Smith McWilliams, Sweeney & Ohlson, William T.
Cahill, Phelan Pope Cahill & Devine, Chicago, IL,
for plaintiff.

Robert C. Weiss, Kenneth H. Ohriner, David A.
Randall, Lyon & Lyon, Los Angeles, CA, Mitchell
D. Raup, Mayer Brown & Platt, Eric F. Greenberg,
George Edward Bullwinkel, Bullwinkel Partners
Ltd., Chicago, IL, for Devon Indus. Inc.

Memorandum and Order Granting Defendant's
Motion
for Partial Summary Judgment and Motion for
Bifurcation.

GADBOIS, District Judge.

I. *Background*
**\*1** Plaintiff Sage Products, Inc. ("Sage") produces
receptacles for safe disposal of used syringes,
scalpels, and other hazardous medical waste, called

"sharps disposal containers". Sage owns U.S. Patent
Re 33,413 ('413), which covers the disposal container
shown in Figure 1.



**Figure 1**

As Figure 2
shows, the '413 system consists of an outer enclosure
and an inner container. The outer enclosure is a
simple box structure, permanently mounted on a
hospital wall, with a swinging door. When the door is
open, hospital staff can place the inner container
inside the outer enclosure.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 791601 (C.D.Cal.)
**(Cite as: 1994 WL 791601 (C.D.Cal.))**

Page 2



**Figure 2**

When the inner container is in place and the outer enclosure door closed, hospital staff drop sharps and other medical waste through the opening in the outer enclosure. Once the inner container is full, it is removed, and then usually autoclaved (heated under pressure) to neutralize infectious waste, or simply incinerated. Figure 3, taken from a Sage brochure, shows how the system is used.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 791601 (C.D.Cal.)
**(Cite as: 1994 WL 791601 (C.D.Cal.))**

Page 3



**Figure 3**

Defendant Devon Industries, Inc. ("Devon") manufactures inner containers compatible with Sage's '413 system. Sage alleges that Devon contributorily infringes the '413 patent by selling replacement inner containers to hospitals. On January 10, 1994, Devon moved for partial summary judgment, contending that its inner containers are used for permissible repair, not infringing reconstruction, of the '413 system.

Devon also moved for bifurcation, seeking to have the issues of damages and willfulness tried separately from the issues of validity and infringement.

## II. *Jurisdiction*

This Court has jurisdiction under 28 U.S.C. § § 1331, 1338(a).

## III. *Analysis*

a. *Defendant's Motion for Summary Judgment.*

Replacement of worn or spent parts of a patented combination is permissible repair of the combination, not infringing reconstruction. *Everpure, Inc. v. Cuno,*

Not Reported in F.Supp.                                                                Page 4
Not Reported in F.Supp., 1994 WL 791601 (C.D.Cal.)
**(Cite as: 1994 WL 791601 (C.D.Cal.))**

_Inc., 875 F.2d 300, 303 (Fed. Cir. 1989)_, _cert. denied,_ 493 U.S. 853 (1989); _Porter v. Farmers Supply Serv., Inc., 790 F.2d 882, 886 (Fed. Cir. 1986)_. Defendant argues that once the inner containers are filled with waste, they are spent. Therefore, it contends, replacing the containers is permissible repair of the '413 system, not infringement. _See Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 341 (1961); Everpure, 875 F.2d at 303_ (holding that replacement of a disposable cartridge, which housed a filter, constituted repair, not reconstruction).

Sage replies that the inner container is neither spent nor worn when it is filled with waste, but rather merely in need of emptying. Hanifl aff. ¶ 5. Sage contends that filled inner containers are perfectly salvageable, and therefore, replacing them is impermissible _reconstruction_ of the '413 combination.

This Court rejects this argument. Emptying and reusing filled inner containers defeats the purpose of the '413 combination -- safe disposal of hazardous waste. Sage itself recognizes this, and encourages their customers to dispose of the inner containers for safety's sake. Hanifl Dep. 119:11-22. In fact, Sage's own inner containers are labeled "Single Use Only", and ominously warn of the biohazard within. See Figure 4.



**Figure 4**

**\*2** By its own estimate, Sage's safety campaign has been successful: "90 something percent" of the inner containers are destroyed and replaced after their first use. Hanifl Dep. 119:12-15. That some users may imprudently empty and reuse the inner containers does not, without more, create a genuine issue of material fact. The Federal Circuit has not said that a component is spent only when it is _impossible_ to continue to use it. Rather, the Federal Circuit suggests that a component is spent when continued use is "neither practical nor feasible". _Everpure, 875 F.2d at 303_. Given the extremely hazardous nature of this medical waste, not to mention Sage's safety-conscious efforts to encourage disposal of filled inner containers, a reasonable jury _must_ conclude that filled inner containers are spent within the meaning of _Everpure._ [FN1] Therefore, this Court finds that replacing inner containers is permissible repair of the '413 combination. _Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)_ ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'."); _Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986)_ ("[T]here must be evidence on which the jury could _reasonably_ find for [the opposing party]."). Since the hospitals are not directly infringing the '413 patent, defendants are not liable for either contributory nor

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 791601 (C.D.Cal.)
**(Cite as: 1994 WL 791601 (C.D.Cal.))**

induced infringement; thus, this Court GRANTS defendant's motion for partial summary judgment. *Aro,* 365 U.S. at 341; *Everpure,* 875 F.2d at 302; *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed. Cir. 1986). [FN2]

*b. Devon's Motion for Bifurcation.*

1. *Liability and Willfulness.*

To defend against Sage's charge of willful infringement, Devon intends to rely on several attorney opinion letters. *See* Devon's Exh. A, B, C. Devon is trapped in a catch-22, however. These letters detail Devon's tactical defenses and legal strategies. Thus, if this case is not bifurcated, Devon will be forced to either waive the attorney-client privilege early in the litigation, or retain the privilege and expose itself to a charge of willfulness. To avoid this dilemma, Devon asks this Court to separate the willfulness issue from the issues of validity and infringement under F.R.Civ.P. 42 (b), which allows bifurcation "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." The Federal Circuit encourages bifurcation in these cases, noting that the issue is of "great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege." *Quantum Corp. v. Tandon Corp.,* 940 F.2d 642, 643-44 (Fed. Cir. 1991). *See also Fromson v. Western Litho Plate and Supply Co.,* 853 F.2d 1568, 1572 (Fed. Cir. 1988) (dicta) (suggesting that bifurcation "may be useful in meeting the attorney-client privilege problem").

**\*3** A brief *in camera* review of Devon's opinion letters demonstrates that Devon does indeed face the dilemma discussed in *Quantum.* Although bifurcation may result in some duplication of effort, it will allow Devon to retain the privilege without sacrificing its willfulness defense. Therefore, this Court GRANTS Devon's motion, and orders a separate trial on the issue of willfulness.

2. *Liability and Damages.*

Devon also moves to bifurcate trial of infringement and damages. Devon argues that bifurcation of liability and damages will save effort if Devon prevails on liability, and will avoid confusing the issues. Sage responds that bifurcation will result in duplication and delay. They note that proof of damages and liability overlap. For instance, Sage will use Devon's sales figures to prove commercial success, which in turn proves nonobviousness. These sales figures, of course, are relevant to prove Sage's damages as well.

However, since willfulness and damages can be combined into a single proceeding, bifurcating damages and liability carries little marginal cost. The overlap cited by Sage is minimal, and bifurcation will limit jury confusion and avoid needless work if Devon prevails at the liability stage. Consequently, this Court GRANTS Devon's motion to bifurcate damages and liability. Damages and willfulness will be tried together.

IV. *Conclusion*

There is no genuine issue as to the nature of inner container replacement -- it is repair, not reconstruction. Therefore, this Court GRANTS defendant's motion for partial summary judgment; defendant has not contributorily infringed or induced infringement of U.S. Patent No. Re. 33,413. Devon has also demonstrated that a separate trial of the willfulness and damage issues is appropriate; therefore, this Court GRANTS Devon's motion for bifurcation; the issue of liability for patent infringement is bifurcated from the issues of damages and willful infringement. Liability will be tried first. Discovery of Devon's opinion of counsel is stayed until further order.

IT IS SO ORDERED.

FN1. At least one recent case supports this conclusion. In *Surgical Laser Technologies, Inc. v. Surgical Laser Products, Inc.,* 25 USPQ.2d 1806 (D. Pa. 1992), plaintiff sued for infringement of its patent covering a two-piece disposable laser delivery system, used in laser surgery. Plaintiff encouraged customers to discard one of the components after surgery, thereby reducing the chance of infection. *Id.* at 1807. While it was not *impossible* to reuse both components of the system, the court held that replacing the delivery system was repair, not reconstruction. *Id.* at 1808-09.

FN2. Granting defendant's motion promotes public safety. If this Court held that replacing inner containers is reconstruction, Sage would have a monopoly (albeit a legal one) over the inner container market. However, since replacing filled inner containers is permissible repair, the market for inner containers will be competitive. With competitive prices, more consumers

Not Reported in F.Supp.                                                    Page 6
Not Reported in F.Supp., 1994 WL 791601 (C.D.Cal.)
**(Cite as: 1994 WL 791601 (C.D.Cal.))**

     will replace filled inner containers rather
     than risk emptying and reusing them.

Not Reported in F.Supp., 1994 WL 791601
(C.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 2:93cv02403 (Docket) (Apr. 26, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2002 WL 1901268 (D.Del.)
**(Cite as: 2002 WL 1901268 (D.Del.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
ST. CLAIR INTELLECTUAL PROPERTY
CONSULTANTS, INC., Plaintiff,
v.
SONY CORPORATION, Sony Electronics, Inc., and
Sony Corporation of America,
Defendants.
**No. Civ.A.01-557-JJF.**

Aug. 16, 2002.

Frederick L. Cottrell, III and Thomas H. Kovach, of
Richards, Layton & Finger, Wilmington, Delaware.
Ronald J. Schutz, Jake M. Holdreith, Becky R.
Thorson, and Carrie M. Smith, of Robins, Kaplan,
Miller & Ciresi, L.L.P., Minneapolis, Minnesota, for
Plaintiff, of counsel.

Josy W. Ingersoll and Adam W. Poff, of Young
Conaway Stargatt & Taylor, L.L.P., Wilmington,
Delaware. Sidney David, Joseph S. Littenberg,
Jonathon A. David, Jeffrey S. Dickey, and April M.
Mayo, of Lerner, David, Littenberg, Krumholz &
Mentlik, L.L.P., Westfield, New Jersey, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Presently before the Court is a Motion For
Bifurcation Of Liability And Damages/Willfulness
Issues And For A Stay Of Discovery Regarding
Damages/Willfulness Issues (D.I.43) filed by
Defendants Sony Corporation, Sony Electronics, Inc.,
and Sony Corporation of America (collectively
"Sony"). For the reasons set forth below, Sony's
Motion will be granted in part and denied in part.

I. BACKGROUND

This is a patent infringement action in which
Plaintiff St. Clair Intellectual Property Consultants,
Inc. (hereinafter "St. Clair") alleges that Sony
willfully infringes four of St. Clair's patents by
manufacturing, using and selling numerous models of

digital camcorders and still cameras. (D.I. 44 at 1).
Sony answers these allegations by denying
infringement, claiming the patents are invalid, and
asserting a laches defense. Sony also asserts
counterclaims, including patent misuse and unfair
competition. [FN1] (D.I. 44 at 1).

> FN1. Originally, Sony also pleaded the
> defense of estoppel. (D.I. 44 at 1). However,
> Sony has since withdrawn this defense. (*See*
> D.I. 47 at 1).

On March 28, 2002, after discovery had commenced
in this action, the Court issued a decision in *Novartis
Pharmaceuticals Corp v. EON Labs Mfg., Inc.,* 206
F.R.D. 396 (D.Del.2002). As a result of the *Novartis*
decision, Sony filed the instant Motion (D.I.43)
pursuant to Federal Rule of Civil Procedure 42(b),
seeking to bifurcate the issues of damages and willful
infringement from the other issues in this case.

On July 17, 2002, the Court heard argument on
Sony's Motion. During the course of the argument,
Sony's counsel represented that Sony intends to rely
on opinions of counsel in defense of St. Clair's
willfulness claim. (D.I.80). At the close of the parties'
arguments, the Court denied Sony's Motion to the
extent it pertains to damages, and ordered Sony's
counsel to provide the opinion letters Sony intends to
rely upon for an *in camera* review. [FN2] (D.I.80).

> FN2. The Court agrees with St. Clair that
> Sony will not suffer any undue prejudice if
> the liability and damages issues are not
> bifurcated.

On August 1, 2002, the Court received Sony's
opinion letters, as well as other related documents,
and has since reviewed them. This Memorandum
Opinion will address whether separation of St. Clair's
willfulness claim is warranted in the circumstances of
this case.

II. DISCUSSION

Counsel for Sony contends that the discovery
required by *Novartis* in the circumstances of this case
(i.e. that Sony has elected to present a reliance on
advice of counsel defense in response to St. Clair's
charge of willfulness, and the fact that Sony's trial
counsel authored the legal opinion relied upon)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1901268 (D.Del.)
(Cite as: 2002 WL 1901268 (D.Del.))

requires that the issue of willfulness be separated for both discovery and trial. (D.I. 44 at 2-4). Specifically, Sony's counsel represents that communications occurred between Sony and its counsel which relate to issues other than willfulness as well as strategies that Sony might undertake with regard to those issues. (D.I. 44 at 2; D.I. 80). According to Sony, in the event the Court fails to separate the issue of willfulness, the disclosure of these communications to St. Clair will result in undue prejudice to Sony. (D.I. 44 at 2-4).

In response, St. Clair contends that separation of the willfulness issue is not warranted in this case. (D.I. 45 at 4). Specifically, St. Clair contends that separation would result in delay and wasteful duplication of discovery. (D.I. 45 at 11-13).

**\*2** After reviewing the documents submitted by Sony, the Court finds that undue prejudice could result if these otherwise privileged documents were exchanged and used during the trial of the infringement and validity issues. Neither Sony nor St. Clair had the benefit of the Court's *Novartis* decision when Sony engaged counsel to obtain an infringement opinion. Sony and trial counsel conducted their dialogue without the knowledge that their communications on matters other than infringement could be revealed in litigation. For these reasons, the Court is sensitive to Sony's prejudice claim and will separate willfulness from the other patent issues for both discovery and trial.

III. CONCLUSION

For the reasons set forth above, the Court will grant Sony's Motion For Bifurcation (D.I.43) to the extent it pertains to willfulness and deny Sony's Motion For Bifurcation (D.I.43) to the extent it pertains to damages.

An appropriate Order will be entered.

### ORDER

At Wilmington this 16th day of August, 2002, for the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

1. Sony's Motion (D.I.43) to bifurcate the issue of willfulness for both discovery and trial is *GRANTED;*
2. Sony's Motion (D.I.43) to bifurcate the issue of damages is *DENIED;*
3. Discovery on the issue of willfulness is *STAYED* pending resolution of the issues of infringement, validity, and damages.

Not Reported in F.Supp.2d, 2002 WL 1901268 (D.Del.)

**Motions, Pleadings and Filings** (Back to top)

• 1:01cv00557 (Docket) (Aug. 14, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                 Page 1
Not Reported in F.Supp., 1994 WL 74989 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
UNITED STATES GYPSUM COMPANY, Plaintiff,
v.
NATIONAL GYPSUM COMPANY, Defendant.
**No. 89 C 7533.**

March 10, 1994.

MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.
*1 The facts of the case are extensively set out in an
earlier Opinion, *see United States Gypsum v.
National Gypsum Co.,* No. 89 C 7533 (N.D.Ill. Jan.
27, 1993) (Plunkett, J.), and we need not restate them
herein. Suffice it to say that USG sued National for
infringement of two patents involving lightweight
joint compound. National filed a Counterclaim
alleging that USG's enforcement of the patents was a
bad faith attempt to interfere with National's business
relationships in violation of antitrust laws. After
years of litigation and at least four Memorandum
Opinion and Orders from this court, this case is
finally ready to try, and is before us once again today
so that we may decide how we will proceed at trial.

Plaintiff USG argues that we should bifurcate the
trial of the patent infringement from the antitrust
counterclaims. Defendant National, on the other
hand, argues that bifurcation of the antitrust and
patent issues will result in needless duplication of
evidence and will not necessarily result in saving any
trial time. National also argues that a separate trial
of the damages phase is the norm that should be
followed in the present case. USG opposes that
suggestion because it anticipates presenting its proof
of damages in a short and uncomplicated fashion.

*Discussion*

Rule 42(b) of the Federal Rules of Civil Procedure
states, in pertinent part:
The court, in furtherance of convenience or to avoid
prejudice, or when separate trials will be conducive
to expedition and economy, may order a separate trial

of any claim, crossclaim, counterclaim or third-party
claim, or of any separate issue or of any number of
claims ... always preserving inviolate the right of trial
by jury....

Fed.R.Civ.P. 42(b). The question of bifurcation, or,
as in this case, trifurcation, is to be decided by the
trial court on a case-by-case basis. *Lis v. Robert
Packer Hosp., 579 F.2d 819, 824 (3d Cir.), cert.
denied, 439 U.S. 955 (1978); PPG Indus. v. LIbbey-
Owens-Ford Co.,* No. 90 C 6067, slip op. at 2
(N.D.Ill. Sept. 23 1992) (Marovich, J.); *Avia Grp.
Intn'l v. Nike, 22 U.S.P.Q.2d 1475, 1476
(D.C.Or.1991).* The trial court's discretion here is
broad, and is guided by its sense of what format will
"be conducive to the promotion of judicial economy
and the avoidance of prejudice." *PPG,* slip op. at 2
(citing *Naxon Telesign Corp. v. GTE Info. Sys., 89
F.R.D. 333, 341 (N.D.Ill.1980)).* Though the court
should not routinely order separate trials, " 'issues of
validity, title, infringement, and damages in patent
and copyright cases may be separately tried unless
this course will inconvenience the court or seriously
prejudice the rights of some of the parties." *PPG, id.*
(quoting *Swofford v. B. & W., 34 F.R.D. 15
(S.D.Tex.1963), aff'd, 336 F.2d 406 (5th Cir.1964),
cert. denied, 379 U.S. 962 (1965)).* However, the
major consideration is which choice is "most likely to
result in a just final disposition of the litigation." *In
re Innotron Diag., 800 F.2d 1077, 1084
(Fed.Cir.1986)* (citing 9 Charles Wright & Arthur
Miller, *Federal Practice and Procedure, § 2388
(1971)).*

*2 As to the bifurcation of the patent infringement
from the antitrust trial, it is common practice to
bifurcate these issues so that the complex antitrust
issues are reached only if a showing of fraud,
necessary to a *Walker Process* antitrust recovery, is
still tenable after litigating the issue of inequitable
conduct in procuring the patent:
Deferral of trial on antitrust issues, with their
additional requirements of proof of the various
elements of an antitrust violation and of injury to the
complaining party, would be likely in many cases to
lead to a complete avoidance of a complex antitrust
trial by settlement after trial of the patent issues, as in
*Walker Process.*

James B. Pegram, *Separate Trial in Patent-Antitrust
and Patent-Unenforceability Litigation, 64 F.R.D.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 74989 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 2

185, 200 (footnotes omitted). *See also Innotron, 800 F.2d at 1084* (bifurcating patent and antitrust trials is "now standard practice").

We feel that bifurcation of the quite complex, and at this point, contingent, antitrust trial from the patent issues, in accordance with the general practice, best serves the interests of justice in this case. Though, as National points out, there is a degree of overlap between the evidence as to inequitable conduct element in their invalidity defense on USG's infringement claim and the common law fraud element in their *Walker Process* counterclaim, should the patents be found valid and enforceable in the patent trial, a motion for a directed verdict on the Defendant's *Walker Process* counterclaims may be in order. *See, e.g. FMC Corp. v. Manitowoc Co., 835 F.2d 1411, 1417 (Fed.Cir.1987)* ("FMC's failure to establish inequitable conduct precludes a determination that it had borne its greater burden of establishing the fraud required to support its *Walker Process* claim."). *See also Hewlett Packard Co. v. Bausch & Lomb, 882 F.2d 1556, 1563 (Fed.Cir.1989)* (noting that an "extremely high level of misconduct, actual fraud, is necessary to sustain a *Walker Process* claim ..."), *cert. denied, 493 U.S. 1076 (1990)*.

As to the question of separating liability from willfulness, we also feel bifurcation is called for. *See Pittway Corp. v. Maple Chase Co., No. 91 C 3582, 1992 WL 392584, 1992 U.S.Dist. LEXIS 19237, *16 (N.D.Ill. Dec. 15, 1992)* (Zagel, J.) (bifurcating liability and willfulness). National points out that, if these issues are not separated, it is faced with the unpleasant choice of either waiving its attorney-client privilege as to documents it hopes to use to defend itself on the willfulness question, or retaining the privilege to keep the documents out on the liability issue. If both issues are tried together, National will either be deprived of a colorable defense to the willfulness claim or be damaged by the admissions in those documents in the liability phase. That is an untenable situation. *See Quantum Corp. v. Tandon Corp., 940 F.2d 642, 643-44 (Fed.Cir.1991)* (court recognizes the problem, and, in *dicta,* suggests that "[t]rial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications ... reveal that the defendant is confronted with this dilemma.")

**\*3** Aside from the willfulness issue, however, we do not believe damages should be bifurcated. The Plaintiff has represented to us that they do not expect to take more than a day to put their damages case in

evidence. Where, as here, the damages case is not overly complex or extensive, there is no need to bifurcate. *See, e.g., Output Tech. Corp. v. Data Prod. Corp.,* 22 U.S.P.Q.2d 1072 (W.D.Wash.1991) (bifurcation of damages denied in two-week trial where damages were not expected to take more than a day to present).

*Conclusion*

For the reasons stated above, we "trifurcate" this trial into patent liability, willfulness, and antitrust phases.

N.D.Ill.,1994.
U.S. Gypsum Co. v. National Gypsum Co.
Not Reported in F.Supp., 1994 WL 74989 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:89cv07533 (Docket) (Oct. 05, 1989)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 501354 (C.D.Cal.), 59 U.S.P.Q.2d 1088
**(Cite as: 2001 WL 501354 (C.D.Cal.))**

▷

**Motions, Pleadings and Filings**

United States District Court, C.D. California.
YAMAHA HATSUDOKI KABUSHIKI KAISHA et
al.
v.
BOMBARDIER INC., et al.
**No. SA CV 00-549-DOCEEX.**

May 4, 2001.

PROCEEDING (IN CHAMBERS): GRANTING
MOTION TO BIFURCATE

CARTER, J.

*1 Before the Court is Defendant Bombardier's
Motion to Bifurcate and for Stay of Discovery. The
Court deems this motion appropriate for decision
without oral argument. See Fed.R.Civ.P. 78; Local
Rule 7.11. Accordingly, the hearing set for May 7,
2001 at 8:30 a.m. is hereby removed from the Court's
calendar. After consideration of the moving,
opposing, and replying papers, as well as documents
submitted earlier, the Court GRANTS Defendant's
motion to bifurcate and to stay discovery.

I. Introduction

Both Yamaha and Defendant manufacture and sell
personal water craft, or jet skis. Yamaha has alleged
that Bombardier's products infringe on 30 of
Yamaha's patents. Yamaha also alleges that the
infringement was wilful. In turn, Bombardier has
asserted counterclaims of antitrust activity based in
part on Yamaha's proposed royalty payments as a
condition of any licensing agreement. Bombardier
has also asserted estoppel as a defense to
infringement, and reliance on advice of counsel as a
defense to wilful infringement.

Now, Bombardier seeks to bifurcate the trial into
two phases: liability, and if required, damages and
wilfulness. It also requests staying discovery on
wilfulness until after the liability phase.

II. Discussion

Bombardier seeks bifurcation pursuant to Federal
Rule of Civil Procedure 42(b). Rule 42(b) provides
that "the court, in furtherance of convenience or to
avoid prejudice, or when separate trials will be
conducive to expedition and economy, may order a
separate trial of any claim, cross-claim, counterclaim,
or third-party claim, or of any separate issue...."
Bombardier has the burden to demonstrate that
judicial economy would be promoted and that
Yamaha will not suffer prejudice. Spectra-Physics
Lasers, Inc. v. Uniphase Corp., 144 F.R.D. 99, 101
(N.D.Cal.1992).

Bombardier argues that the complexity of the case
warrants bifurcation of liability from damages and
wilfulness. Doing so will not be inefficient because
the issues, and hence the evidence, relating to
liability and to damages and wilfulness do not
significantly overlap. Nor will it prejudice Yamaha's
Seventh Amendment rights. Finally, the bifurcation
will protect Bombardier's attorney-client privilege
and still allow it assert the defense of advice of
counsel at the appropriate time. Yamaha argues that
bifurcation is not warranted because there are
overlapping issues relating to liability and damages
and that its Seventh Amendment rights will be
prejudiced.

I. Overlapping issues

Yamaha argues that Bombardier's antitrust
counterclaim in large part rests on the assertion that
Yamaha's proposed royalty payments for licensees
was anti-competitive. Yamaha also asserts that
royalty rates are a large component of damages
calculations. Therefore, the "royalty rate" is at issue
for both liability and damages, making bifurcation
unworkable. Yamaha also argues that the affirmative
defense of estoppel and advice of counsel involve
Bombardier's state of mind and therefore relate to
both liability and wilfulness.

*2 With respect to estoppel and advice of counsel, as
Bombardier points out, while both go to
Bombardier's state of mind, they involve different
facts. Estoppel defense entails whether Bombardier
relied on Yamaha's conduct. Relevant evidence
would include Yamaha's actions during the relevant
time period, and Bombardier's knowledge of and
reliance on that conduct. In contrast, since the
defense of advice of counsel relies on advice

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 501354 (C.D.Cal.), 59 U.S.P.Q.2d 1088
(Cite as: 2001 WL 501354 (C.D.Cal.))

provided to Bombardier by its attorneys, relevant information will include communications between Bombardier and attorneys. A jury will be able to decide one matter independently of the other.

With respect to the "royalty rates," Bombardier argues that the terms "reasonable royalty" is a term of art used in patent litigation, distinct from any claims that the royalties attempted to be charged by Yamaha were unreasonable and hence anti-competitive. A determination of "reasonable royalty" requires evidence on 15 different factors, each of which is complex. _Georgia-Pacific Corp. v. U.S. Plywood Corp._, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970). Those factors include royalties received by the patentee for the licensing of the patent in suit; the rates paid by the alleged infringer for the use of other patents comparable to the patent in suit; the nature and scope of the license; the established profitability of the product made under the patent; its commercial success and its current popularity; the extent to which the infringer has made use of the invention; and customary profit or selling price in the particular business or in comparable businesses.

On the other hand, the question of whether Yamaha's proposed royalty package violated anti-trust does not require the rigorous analysis required for a damages calculation. Bombardier asserts that the antitrust claim will not require either party to calculate the amount of what a reasonable royalty would have been. Further, the key issues concern not the amount of a reasonable royalty, but whether, for example, Yamaha asserted its patents in bad faith.

2. Yamaha's Seventh Amendment rights

Yamaha argues that bifurcation would result in the loss of its Seventh Amendment right to a unitary jury. Yamaha cites _Arthur Young & Co. United States District Court_, 549 F.2d 686, 692 (9th Cir.1977), a non-patent case, for the proposition that the "the constitutional right to a jury trial has been held to require trial of all issues before one jury in some circumstances." However, immediately following that sentence, the Court continues:
"The right to a unitary jury trial is not an absolute one, however, a principle recognized by both the Gasoline Products and United Air Lines decisions. In United Air Lines, for example, this Circuit expressly refused to hold that such an absolute right exists, but rather stated that where the questions sought to be bifurcated were '(s)o interwoven ... that the (one) cannot be submitted to

the jury independently of the (other) without confusion and uncertainty which would amount to a denial of a fair trial ... (citation omitted) the bifurcation was unconstitutional.' Furthermore, aside from any issue of trial by separate juries, there is no Seventh Amendment requirement that all evidence be presented to the trier of fact at one hearing." (citations omitted)

*3 _Id._ at 693.

As discussed above, the liability and damage issues are not so interwoven that one cannot be determined independently of the other. Bifurcation, while perhaps not routine, is nonetheless common in patent litigation. _See Novopharm Ltd. v. Torpharm, Inc._, 181 F.R.D. 308 (E.D.N.C.1998); _Princeton Biochemicals, Inc. v. Beckman Instruments, Inc._, 180 F.R.D. 254 (D.N.J.1997). In _Princeton,_ the court bifurcated the trial in a patent case involving infringement of only one patent exactly along the lines suggested by Bombardier: liability phase followed by damages and wilfulness

3. Stay of Discovery re Advice of Counsel

Bombardier also seeks a stay of discovery on attorney-client documents until made necessary by a finding of liability. Yamaha opposes the stay on the grounds that any mid-trial discovery will take longer than the month suggested by Bombardier and thus make it less likely if not impossible for the same jury to hear all phases of the trial. Yamaha points out that there are 88 privileged opinions, drafted by at least 18 different individuals and received by 13 different people. Reviewing the documents and conducting depositions will take longer than a month, not to mention then preparing for the trial on wilfulness and damages.

As a threshold matter, as noted above, since Yamaha is not entitled to a unitary jury, even if a second jury were to be empaneled, Yamaha's Seventh Amendment rights would not be implicated. The Court, however, does not share Yamaha's assessment of the amount of time necessary to conduct discovery after liability. First, it will be limited, not to all issues arising from wilfulness, but only to the attorney-client communications. Second, discovery is quite limited with respect to advice of counsel. Deposition of attorneys will be limited to what was communicated to clients, not the attorneys' own work product, including state of mind or impressions. _Steelcase Inc. v. Haworth Inc._, 954 F.Supp. 1195, 1199-1200 (W.D.Mich.1997); _Thorn EMI N. Am. v. Micron_

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 501354 (C.D.Cal.), 59 U.S.P.Q.2d 1088
**(Cite as: 2001 WL 501354 (C.D.Cal.))**

_Tech., 837 F.Supp. 616, 622-23 (D.Del.1993)_. Third, Yamaha is not required to "digest" the opinions provided in order to critique the opinions or their analysis. _Steelcase, 954 F.Supp. at 1199_ ("Especially irrelevant is discovery addressed to the 'legal correctness' of the opinion."). Given the limited scope of discovery, it should be completed within four to six weeks.

In addition, Bombardier should not be placed in the position of either having to **waive** the attorney-client **privilege** during the liability phase, thus providing Yamaha with valuable information it would not otherwise be entitled to, or in waiving a defense to wilfulness. By staying discovery, neither party is unfairly advantaged or disadvantaged, and all parties will receive information they are entitled to at the appropriate time.

III. Disposition

The Court GRANTS Bombardier's motion to bifurcate. The first phase will be limited to the question of liability. If necessary, a second phase will proceed with respect to damages and wilfulness. The Court also GRANTS Bombardier's request for stay of discovery with respect to the defense of advice of counsel. All other discovery relating to liability, damages and other issues of wilfulness shall proceed.

**\*4** The Clerk shall serve a copy of this minute order on all parties to the action.

Not Reported in F.Supp.2d, 2001 WL 501354 (C.D.Cal.), 59 U.S.P.Q.2d 1088

**Motions, Pleadings and Filings (Back to top)**

• 8:00CV00549 (Docket) (Jun. 02, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2006, I electronically filed the **DEFENDANTS' COMPENDIUM OF UNREPORTED OPINIONS** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

I hereby certify that on February 22, 2006, I have forwarded the above-noted document to the following as noted below:

**VIA E-MAIL**

Jesse J. Jenner, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

**VIA E-MAIL & FEDERAL EXPRESS**

Norman H. Beamer, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301

**VIA E-MAIL**

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

PAUL M. LUKOFF (Bar I.D. #96)
DAVID E. BRAND (Bar I.D. #201)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE  19899-1328
TEL: 302-888-6500
E-MAIL:  PMLukoff@prickett.com
                    DEBrand@prickett.com

19660.3\297731v1