### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | **REDACTED** |
| ALTEK CORPORATION and CHINON | ) | |
| INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REDACTED OPENING BRIEF IN SUPPORT OF
## ITS MOTION TO DISQUALIFY ERIC ANDERSON AS AN EXPERT WITNESS

Paul M. Lukoff (I.D. No. 96)
David E. Brand (I.D. No. 201)
PRICKETT, JONES & ELLIOTT, P.A.
1310 King St.
P.O. Box 1328
Wilmington, DE
(302) 888-6500

William F. Lee
Donald R. Steinberg
Michael J. Summersgill
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109

S. Calvin Walden
WILMER CUTLER PICKERING
 HALE AND DORR LLP
399 Park Avenue
New York, NY 10022

## <u>Table of Contents</u>

<u>PAGE</u>

I.    INTRODUCTION ........................................................................................................ 1

II.    NATURE AND STAGE OF THE PROCEEDING ..................................................... 2

III.    SUMMARY OF ARGUMENT ................................................................................... 3

IV.    STATEMENT OF FACTS ......................................................................................... 3

    A.    Between 1993 and 2000, Mr. Anderson Worked with Kodak to Develop Kodak's Digital Cameras. .................................................................................. 3

        1.    As an Employee of Apple Computer and FlashPoint Technology, Mr. Anderson Worked with Kodak on the Kodak Digital Cameras. .......... 3

        2.    Mr. Anderson's Work Regarding the Kodak Digital Cameras Relates to the Technology at Issue in this Litigation. ................................ 4

            (a) In Conjunction with Mr. Anderson's Work on the Generation and Processing of Thumbnails, Mr. Anderson Received Kodak's Proprietary Algorithm for Creating Thumbnails. ................... 5

            (b) Mr. Anderson Contributed to the Development of Kodak's Algorithm for Generating Screennail Images. ...................................... 7

            (c) Mr. Anderson Received Detailed Confidential Information Regarding Image Processing in the Kodak Digital Cameras. .............. 9

        3.    Mr. Anderson Is Obligated To Maintain the Confidentiality of Kodak's Confidential Information. .......................................................... 11

    B.    Mr. Anderson Admitted Receiving Kodak Confidential Information During His Work for Kodak. .................................................................................. 13

    C.    Administrative Law Judge Robert Barton Disqualified Mr. Anderson During the ITC Proceedings Because of A "Clear Conflict of Interest." ............. 16

V.    ARGUMENT ............................................................................................................ 19

    A.    Mr. Anderson's Work on the Design and Development of Kodak's Digital Cameras Precludes His Retention in this Case. .................................................. 20

        1.    Mr. Anderson Was Obligated to Keep Kodak's Information Confidential. .................................................................................... 20

        2.    Mr. Anderson Received Kodak Confidential Information That is Relevant to This Litigation. ................................................................... 22

    B.    Many Other Potential Experts Were Available to Ampex. .................................. 26

VI.    CONCLUSION ........................................................................................................ 26

## Table of Authorities

**PAGE**

### Federal Cases

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*
95 CV 8833 (RPP), 2000 U.S. Dist. LEXIS 321 (S.D.N.Y. Jan. 14, 2000) ........................... 24

*Eastman Kodak Company v. Agfa-Gevaert N.V.*
No. 02-CV-6564, 2003 WL 23101783 (W.D.N.Y. Dec. 4, 2003) ............................. 20, 22, 24

*Cordy v. Sherwin-Williams Co.,*
156 F.R.D. 575 (D.N.J. 1994) ................................................................................ 20

*Koch Refining Co. v. Boudreaux, MV*
85 F.3d 1178 (5th Cir. 1996) ............................................................................... 20

*Michelson v. Merrill Lynch,* ............................................................................... 19
No. 83 Civ. 8898 (MEL), 1989 U.S. Dist. LEXIS 3013 (S.D.N.Y. March 28, 1989)

*Space Systems/Loral v. Martin Marietta Corp., Civ. No.*
95-20122 SW, 1995 WL 686369 (N.D. Cal. Nov. 15, 1995) ..................................... 20, 24, 25

*Wang Labs., Inc. v. Toshiba Corp,*
762 F. Supp. 1246 (E.D. Va. 1991) ................................................................. 19, 20, 21, 22

# I.     INTRODUCTION

Defendants Eastman Kodak Company ("Kodak") and Altek Corporation ("Altek") respectfully submit this Opening Brief in support of their Motion to Disqualify Ampex Corporation's ("Ampex") proposed expert witness Eric Anderson.

In this litigation, Ampex asserts that Kodak and Altek's digital cameras infringe U.S. Patent No. 4,821,121 (the "'121 Patent"). Ampex nevertheless attempts to use as an expert witness an individual -- Eric Anderson -- who: worked for seven years on Kodak's digital camera technology; received confidential information relating to Kodak's digital camera technology, including information relating to the processing of thumbnails and screennails; and was explicitly required to maintain this proprietary information in confidence. In fact, Mr. Anderson's own resume boasts that he *successfully guided technology development with product shipments including the Kodak DC220, DC260, DC265, and DC290 digital cameras . . . ."* Based on this extensive prior work relating to Kodak's digital camera technology, the Administrative Law Judge ("ALJ") in the parallel International Trade Commission ("ITC") proceedings (in which Ampex also asserted the '121 patent against Kodak) disqualified Mr. Anderson because of a *"clear conflict of interest."*[1] The same result is appropriate here.

It is well settled that a proposed expert should be disqualified where the proposed expert: (i) had a prior confidential relationship with the party to whom the expert would be adverse; and (ii) received confidential information during that relationship that is relevant to the current litigation. As the ALJ in the ITC proceedings concluded, after receiving extensive briefing and hearing oral argument, Mr. Anderson had an "explicit written obligation to maintain the confidentiality of Kodak confidential information and he received Kodak confidential

---

[1]     ITC Hearing Transcript (July 20, 2005) at 109-111, at A-258 – A-260.

information directly relevant to the current litigation including Kodak's algorithm for processing thumbnail images used in cameras accused of infringement."[2]

Hundreds of individuals are potentially available to serve as experts with respect to the technologies at issue in this case. Indeed, not including Mr. Anderson, Ampex has disclosed *six* technical experts who intend to submit expert reports. Ampex has no need to retain the services of an expert who actually worked on the Kodak technology at issue. Mr. Anderson should be disqualified from serving as an expert in this litigation.

## II.     NATURE AND STAGE OF THE PROCEEDING

Ampex filed its complaint in this action on October 24, 2004, asserting that Defendants infringe certain claims of the '121 patent. On the same date it filed its complaint in this action, Ampex filed a complaint with the International Trade Commission (the "ITC") also asserting infringement of the '121 patent. Pursuant to statute and this Court's order, this litigation was stayed pending final resolution of the ITC action.

On February 2, 2005, Ampex disclosed its intent to use Mr. Anderson as an expert in the ITC action. On July 20, 2005, however, the ITC disqualified Mr. Anderson as an expert witness. The ITC proceeding formally concluded on August 23, 2005, lifting the stay in this case. Discovery has been ongoing in this action since October 2005.

On February 22, 2006, less than a week before the February 28, 2006 close of fact discovery and only five weeks before the then scheduled date for the close of expert discovery, Ampex designated Mr. Anderson as an expert in this case. See Letter from Beamer to Summersgill of 2/22/06, at A-265. Despite the fact that Mr. Anderson had previously been disqualified from serving as an expert in the ITC action, Ampex offered no explanation for how

---

[2]     See ITC Hearing Transcript (July 20, 2005), at 109-111, at A-258 – A-260.

or why Mr. Anderson could appropriately serve as an expert here.  Ampex also refused to inform

Defendants what the general subject matter of Mr. Anderson's report will be.

## III.    SUMMARY OF ARGUMENT

Disqualification of an expert is warranted where: (1) the expert had a prior confidential

relationship with the party to whom the expert would be adverse; and (2) the expert received

confidential information during that relationship that is relevant to the current litigation.  Mr.

Anderson's 1993 to 2000 relationship with Kodak meets these requirements.

First, from 1993 to 2000, Mr. Anderson was engaged in a confidential relationship with

Kodak.  Mr. Anderson's relationship with Kodak was governed by employment and

confidentiality agreements that explicitly obligated him to keep Kodak proprietary information

confidential.

Second, during his seven-year relationship with Kodak, Mr. Anderson worked on the

development of Kodak's digital cameras.  During this process, he received confidential

information from Kodak, including, among other things, information relating to the generation

and processing of thumbnails and screennails, that is directly relevant to the technology at issue

in this litigation.

## IV.    STATEMENT OF FACTS

**A.    Between 1993 and 2000, Mr. Anderson Worked with Kodak to Develop Kodak's
Digital Cameras.**

**1.    As an Employee of Apple Computer and FlashPoint Technology, Mr.
Anderson Worked with Kodak on the Kodak Digital Cameras.**

First as an employee of Apple Computer, Inc. ("Apple"), and later as an employee of

FlashPoint Technology, Inc. ("FlashPoint"), Eric Anderson worked with Kodak on the design

and development of the software used to process images in Kodak's digital cameras.

In 1992, Kodak and Apple commenced a joint venture to design and develop consumer digital cameras. Between 1993 and 1996, as an employee of Apple, Mr. Anderson was the chief system architect for the Kodak development project and was responsible for the overall design of the camera software operating system. See Izumi Decl. ¶ 4, at A-240 – A-241. See also Anderson ITC Initial Report ¶ 7 (Mar. 24, 2005), at A-180 ("From 1987 to 1996, I was in various engineering management positions at Apple Computer, Inc., including work on developing digital cameras and other digital imaging products and applications. I was chief architect for a number of such projects.").

In 1996, Apple divested its camera operating division and Mr. Anderson became the Chief Technology Officer of the new company, FlashPoint Technology, Inc. Between 1997 and 2000, Kodak entered a series of development agreements with FlashPoint for the development of the camera operating system software for Kodak digital cameras. During that time, as an employee of FlashPoint, Mr. Anderson worked closely with Kodak engineers to develop Kodak's next generation of digital cameras. See Napoli Decl. ¶ 4, at A-246. In fact, Mr. Anderson's resume boasts that, as the Chief Technology Officer of FlashPoint, he "*successfully guided technology development with product shipments including the Kodak DC220, DC260, DC265, and DC290 digital cameras . . .*" Resume of Eric Anderson, at A-167 (emphasis added).

2.    **Mr. Anderson's Work Regarding the Kodak Digital Cameras Relates to the Technology at Issue in this Litigation.**

Ampex asserts in this litigation that certain Kodak and Altek digital cameras infringe the '121 Patent because of the manner in which the digital cameras generate and process images, including thumbnail and screennail images (smaller versions of the full size photographs in the camera).

- 4 -

See, e.g., Ligler Supp. Expert Report, at A-224. See also Ligler Dep. Transcript (June 1, 2005), at A-231. The principle technical issue in this litigation, therefore, is the manner in which the accused cameras capture, generate, store, process, and display images, including primarily thumbnail and screennail images.

> **(a)** **In Conjunction with Mr. Anderson's Work on the Generation and Processing of Thumbnails, Mr. Anderson Received Kodak's Proprietary Algorithm for Creating Thumbnails.**

Mr. Anderson's work for Kodak included developing software relating to the processing of thumbnail images in the Kodak cameras. See, e.g., April 1999 Amendment to Development Agreement, at A-151

See Email from Ward of 1/16/97, at A-12 See also, e.g., "Action Items from Sharing Camera Design Review" (Jan. 22, 1997), at A-14

In order to perform the work that FlashPoint and Mr. Anderson were conducting with respect to thumbnails, FlashPoint and Mr. Anderson needed to understand how the Kodak

thumbnails were generated.

See UI Change Requests (May 15, 1997), at A-87

Anderson Laboratory Notebook, at A-90 – A-92 .  See also id. at A-94, A-102, A-115, A-123, A-126 – A-134

See Exhibit C to Storer Report, at A-214; Exhibit D to Storer Report, at A-217.  See also Smith Decl. ¶ 5, at A-243

**(b)    Mr. Anderson Contributed to the Development of Kodak's Algorithm for Generating Screennail Images.**

In connection with that process, Kodak shared detailed confidential information relating to the generation of screennails with Mr. Anderson.  <u>See</u> Smith Decl. ¶ 8, at A-244.

Email from Anderson of 2/21/97, at A-40.

In a subsequent email on the same date,

Email from Anderson of 2/21/97 (II), at A-41.

Email from Kyoichi of 3/27/97, at A-73.

See Email from Ward of 4/3/97, at A-74

See also Email of 2/19/97 and attachment regarding screennails, at A-38.

See Smith Decl. ¶ 8, at A-244

**(c)    Mr. Anderson Received Detailed Confidential Information Regarding Image Processing in the Kodak Digital Cameras.**

In conjunction with his work on the DC line of cameras, Mr. Anderson also received detailed confidential information regarding, and contributed to the development of, the overall processing of images in both the capture and review modes of the Kodak digital cameras.

See, e.g., Kodak SC Main Engineering Specification Doc. (Jan. 23, 1997), at A-24 – A-26

See also Kodak SC High Engineering Specification Doc. (Mar. 14, 1997), at A-48 – A-53

Email from Anderson to Ward of 12/26/96, at A-1

Smith Decl. ¶ 9, at A-244.

See, e.g.,

Facsimile from Kodak copied to Anderson (January 9, 1997), at A-4

1996-1997 Kodak camera block diagrams and specifications, at A-67.  See also Smith Decl. ¶ 9,

at A-244.

See, e.g., Email from Anderson to Saylor of 1/9/97, at A-3

See "The SC Series Camera MPU Control

Module Interface Specification for the FlashPoint Operating System" (April 11, 1997), at A-75.

See, e.g., Anderson Laboratory Notebook, at A-93

See also id. at A-100

id. at A-

101

- 10 -

<u>id.</u> at A-102                                    <u>id.</u> at A-113

<u>See</u> Napoli Decl. ¶ 7, at

A-247; Smith Decl. ¶ 9, at A-244.  Indeed, several of the cameras alleged to infringe the '121

patent in this litigation were actually in development while Mr. Anderson was providing

consulting services to Kodak.

<u>See</u> Haneda Development Schedule, EKJ Rev 0.20, 0.1, at A-305.  <u>See</u> <u>also</u> Ampex's

Requests for Admission (Jan. 27, 2006), at A-302.

<u>See</u> "Ansel & Weston Concept" (July 12, 1999), at

A-307; DCS Pro Back Hardware Overview, at A-320.  <u>See</u> <u>also</u> Second Am. Compl., C.A. No.

04-1373 (KAJ) (Sept. 8, 2005), at A-295.  Mr. Anderson is also the sole inventor on at least two

patents relating to the use of thumbnail and screennail images that, in 2003, Kodak licensed from

FlashPoint.  <u>See</u> Martinez Decl., at A-277.  <u>See</u> <u>also</u> U.S. Patent Nos. 5,933,137 and 6,137,534,

at A-157 ('137 Abstract: "In a first aspect a method and system in accordance with the present

invention comprises providing a low resolution image, medium resolution image and high

resolution image within each image file and allowing the medium resolution image to be viewed

on the display.").

    **3.**    **Mr. Anderson Is Obligated To Maintain the Confidentiality of Kodak's Confidential Information.**

- 11 -

Mr. Anderson's work for Kodak while at Apple and FlashPoint was subject to strict confidentiality obligations.

See Izumi Decl. ¶ 7, at A-241.

1998 Development Agreement, at A-135 (emphasis added).

Employment Agreement, at A-161 (emphasis added).

Separation Certification Form, at A-159 (emphasis added).

**B.     Mr. Anderson Admitted Receiving Kodak Confidential Information During His Work for Kodak.**

        In his March 24, 2005 initial expert report in the ITC proceedings, despite the fact that

Ampex had not yet provided Mr. Anderson with any confidential information regarding Kodak's

cameras, Mr. Anderson offered the opinion that "it is probable that the Kodak cameras" infringe

────────────

3

the '121 patent.  Anderson ITC Initial Report ¶ 13 (Mar. 24, 2005), at A-181.

Anderson Dep. Transcript (June 16, 2005) at 470-474, at A-279 – A-283. (Emphasis Added).


See id. at 514-15, at  A-284 – A-285.


See id. at 517-18,

at A-287 – A-288.

See <u>id</u>. at 536-39, at A-291 –

A-294.

<u>Id</u>. at 536-39, at A-291 – A-294 (emphasis added).

**C.     Administrative Law Judge Robert Barton Disqualified Mr. Anderson During the ITC Proceedings Because of A "Clear Conflict of Interest."**

Ampex also attempted to use Mr. Anderson as an expert witness in the parallel ITC

proceeding but the ALJ disqualified Mr. Anderson because of a clear "conflict of interest."

On February 2, 2005, Ampex disclosed its intent to use Mr. Anderson as an expert in the

ITC proceedings.  On February 22, 2005, Kodak and Altek moved to disqualify Mr. Anderson on

the grounds that his prior work on Kodak digital cameras created a conflict of interest.  On

March 25, 2005, the ALJ denied the motion without prejudice.  In the order, however, the ALJ

explained that he was willing to reconsider his decision if further discovery revealed additional evidence warranting disqualification.  See ITC Order No. 19 (Mar. 25, 2005), at A-184.

As a result, on April 20, 2005, Kodak served a subpoena on Mr. Anderson seeking documents relating to Mr. Anderson's work on behalf of Kodak between 1993 and 2000.  Mr. Anderson responded to the subpoena by producing press releases, marketing materials, news articles and other publicly available and irrelevant materials, but *none of his signed employment agreements* with FlashPoint.

On May 6, 2005, Kodak served a subpoena on FlashPoint requesting similar documents. See Supboean, at A-198.

On June 15, 2005, Kodak and Altek moved for reconsideration of the ALJ's order denying disqualification in light of the evidence revealed during discovery.  On July 20, 2005, after hearing oral argument, the ALJ granted Kodak and Altek's motion.  The ALJ explained that, although he rarely granted motions for reconsideration, these were the rare circumstances in which reconsideration was justified:

> I rarely grant motions for reconsideration, however in this instance Respondents' further discovery has elicited important relevant information concerning the issue of whether Anderson should be disqualified and that is why I held oral argument on the motion today.

> That further discovery has elicited that he had a further *explicit written obligation to maintain the confidentiality of Kodak confidential information and he received*

> *Kodak confidential information directly relevant to the current litigation*
> including Kodak's algorithm for processing thumbnail images used in cameras
> accused of infringement.

ITC Hearing Transcript (July 20, 2005) at 110-111, at A-259 – A-260 (emphasis added).

After making extensive factual findings, including that Mr. Anderson received "detailed"

Kodak confidential information and had an "explicit duty" to maintain the confidentiality of

Kodak's information, the ALJ ruled that Mr. Anderson had a "clear conflict of interest" and

granted Kodak and Altek's motion to disqualify:

> Anderson had an explicit duty in a signed employment agreement to hold
> customer information, including that of Kodak, in the strictest confidence
> consistent with FlashPoint's agreements with such third parties. FlashPoint has
> produced documents including employment and confidentiality agreement[s]
> obligating Anderson to maintain the confidentiality of FlashPoint's customer's
> information as well as notebooks concerning his work on Kodak digital cameras.

> Moreover, although this was not clear to me when I issued Order 19, it appears
> that Mr. Anderson was intricately involved in development of technologies that
> are still used in Kodak cameras. In his resume Anderson asserts that as Chief
> Technology Officer of FlashPoint he guided technology development with
> product shipments concerning the DC line of Kodak cameras.

> The evidence also suggests that Anderson worked closely with Kodak engineers
> to develop Kodak's digital cameras, and I agree with staff that *this is a clear
> conflict of interest*.

> The evidence also shows that Anderson worked on development of algorithms for
> generating screennails used in Kodak DC cameras and that Kodak shared detailed
> confidential information relating to screennails with Anderson.

> . . . .

> Anderson also received confidential information concerning the processing of
> images in both the capture and review modes of the Kodak digital cameras.
> Anderson was provided detailed information regarding processing of images and
> received confidential specification, engineering requirements, schematics and
> block diagrams.

> . . . .

> As far as the confidential information, Anderson received Kodak's proprietary
> algorithm for creating thumbnails. He helped to develop this information. He

- 18 -

received detailed confidential information regarding image processing in the Kodak cameras, and he regularly communicated with and met with Kodak's engineers regarding his work on Kodak's digital cameras.

. . . .

For all of these reasons I have decided that I am going to grant Respondent's motion to disqualify Mr. Anderson as an expert witness in this proceeding.

Id. at 112-115, at A-261 – A-264 (emphasis added).

Finally, the ALJ admonished Ampex and Mr. Anderson for their lack of candor in opposition to Kodak and Altek's motion to disqualify:

I would further state that although it is not a basis for my ruling, I believe that Mr. Anderson and Complainant [Ampex] were not candid and forthright about his continuing relationship with FlashPoint in their March 2005 opposition.

Ampex's statement that Anderson did not have a "pertinent current relationship with FlashPoint" is not the type of forthright and candid behavior that I expect from counsel and a party.

Id. at 111-112, at A-260 – A-261.

## V.    ARGUMENT

Federal courts have the inherent power to disqualify an expert from participating in litigation. See Wang Labs., Inc. v. Toshiba Corp., 762 F. Supp. 1246, 1248 (E.D. Va. 1991) ("This power exists in furtherance of the judicial duty to protect the integrity of the adversary process and to promote public confidence in the fairness and integrity of the legal process.") See also Michelson v. Merrill Lynch, No. 83 Civ. 8898 (MEL), 1989 U.S. Dist. LEXIS 3013, at 14 (S.D.N.Y. March 28, 1989) (allowing proposed expert who learned relevant information from a party to testify for an adverse party would "at best create an appearance of impropriety and at

worst compromise the proceedings by providing [the adverse party] with confidential information").[4]

A proposed expert should be disqualified from serving in a litigation where: (1) the proposed expert had a prior confidential relationship with an adverse party; and (2) during the course of that confidential relationship, the adverse party disclosed confidential information to the proposed expert that is relevant to the current litigation. See Wang Labs., 762 F. Supp. at 1248 (an affirmative answer to both of these questions compels disqualification); Space Systems/Loral v. Martin Marietta Corp., CIVIL NO. 95-20122 SW, 1995 U.S. Dist. LEXIS 22305, at 6 (N.D. Cal. November 14, 1995); Eastman Kodak Co. v. Agfa-Gevaert N.V., 02-CV-6564, 2003 U.S. Dist. LEXIS 23260, at 3 (W.D.N.Y. December 4, 2003). Mr. Anderson's extensive work on the design and development of Kodak's digital camera technology compels disqualification here.

**A.    Mr. Anderson's Work on the Design and Development of Kodak's Digital Cameras Precludes His Retention in this Case.**

Mr. Anderson not only had an extended confidential relationship with Kodak -- during which he received Kodak confidential information relevant to this litigation -- but he contributed to the design of the digital camera technology that Ampex now contends infringes its patent.

**1.    Mr. Anderson Was Obligated to Keep Kodak's Information Confidential.**

A confidential relationship exists where the parties reasonably expect communications in connection with the relationship to be maintained in confidence. See Koch Refining Co. v. Boudreaux, M.V., 85 F.3d 1178, 1182 (5th Cir. 1996) (finding that an implied confidential relationship existed, based on a "long standing series of interactions, which have more likely

---

[4]    See also Cordy v. Sherwin-Williams Co., 156 F.R.D. 575, 582 (D.N.J. 1994) (disqualifying proposed expert because "it is simply not possible for [the proposed expert] to ignore what he learned . . . . At the very least, his engagement . . . has to subliminally affect his testimony and assessment of facts").

than not coalesced to create a basic understanding of the [defendant's] modus operandi, patterns of operations, decision making-process, and the like"); <u>Wang Labs.,</u> 762 F. Supp. at 1249 (proposed expert disqualified where party was "objectively reasonable" in "assuming" that a confidential relationship existed).

Mr. Anderson had a clear and unambiguous obligation to maintain the confidentiality of Kodak's proprietary information.  His FlashPoint employment agreements -- which Mr. Anderson failed to produce in response to a subpoena -- confirm that he agreed to hold Kodak information in the "strictest confidence."

Employment Agreement, at A-161 (emphasis added).[5]

See Separation Certification Form, at A-159

(emphasis added).

---

[5]

Agreement, at A-135                                        See 1998 Development

- 21 -

Mr. Anderson received Kodak's confidential information with the explicit understanding that he would maintain the confidentiality of such information. See Napoli Decl. ¶ 7, at A-247; Izumi Decl. ¶ 7, at A- 241; Smith Decl. ¶ 9, at A-244. Mr. Anderson, therefore, had a prior confidential relationship with Kodak. See, e.g., Eastman Kodak Co., 2003 WL 23101783, at *1 (finding proposed expert had a confidential relationship where expert obligated to maintain confidentiality of "company confidential information"); Wang Labs., 762 F. Supp. at 1249 (concluding that confidential relationship exists where parties were "objectively reasonable" in assuming that there is an obligation to maintain materials on a confidential basis).

### 2. Mr. Anderson Received Kodak Confidential Information That is Relevant to This Litigation.

Mr. Anderson's own documents, obtained in discovery from FlashPoint, demonstrate that he was integrally involved in the design and development of the Kodak technology at issue in this litigation.

See Ligler Supp. Expert Report, at A-224. See also Ligler Dep. Transcript (June 1, 2005), at A-231. Documents obtained from FlashPoint show that Mr. Anderson's work for Kodak focused on this very technology. The documents show that Mr. Anderson:

See, e.g., UI Change Requests, at A-87; Smith Decl., at A-242.

See, e.g., Smith Decl., at A-242; Email from Anderson of 2/21/97, at A-40; Email

from Anderson of 2/21/97 (II), at A-41; Email from Kyoichi of 3/27/97, at A-73; Email from Ward of 4/3/97, at A-74 ; Sanjeet Thadani Email of 2/19/97, at A-38.

See, e.g., Smith Decl., at A-242; Engineering Specification Doc. (Jan. 23, 1997), at A-16; Engineering Specification Doc. (Mar. 13, 1997), at A-42; Email from Anderson to Ward of 12/26/96, at A-1; Facsimile from Kodak copied to Anderson (January 9, 1997), at A-4; 1996-1997 Kodak camera block diagrams and specifications, at A-67; Email from Anderson to Saylor of 1/9/97, at A-3.

See, e.g., Smith Decl., at A-242; Anderson Laboratory Notebook, at A-89.

- Is the sole inventor on at least two FlashPoint patents, relating to the use of thumbnail and screennail images, that Kodak licensed in 2003.[6] See, e.g., U.S. Patent No. 5,933,137, at A-157; Martinez Decl., at A-277.

See Haneda Development Schedule, EKJ Rev 0.20, 0.1, at A-305; Ansel & Weston Concept (July 12, 1999), at A-307; DCS Pro Back Hardware Overview, at A-320.

See Ampex Corp.'s Response to Defendant's Third Set of Interrogatories (No. 30), at A-268.

---

[6]

See Ampex ITC Opposition Brief, at A-249

See, e.g., Smith Decl. ¶ 5, at A-243.

See Plaintiff's Dep. Exhibit 329, at A-276.[7]

An expert need only receive confidential information that has a "sufficient connection" to the technology at issue to merit disqualification. See Eastman Kodak Co., 2003 WL 23101783, at *5 (proposed expert disqualified where there was "a sufficient connection between the confidential information [the proposed expert] had access to and the technology at issue."). Mr. Anderson's extensive involvement with Kodak technology at issue in this litigation easily meets this standard.

In Eastman Kodak Co., the court disqualified a proposed expert for the defendant who had worked for the plaintiff during the period that the plaintiff was in the process of developing the technology at issue in the litigation. The court disqualified the proposed expert because he had "had access to, knowledge of and training in many of the 'building blocks' that produced" the technology covered by the patents. See id. at *5 (emphasis added).

> [G]iven Hailstone's extended participation in the research group that generated the tabular grain technology at issue in this action, allowing Hailstone current access to confidential Kodak information in order to evaluate the patents in issue would give an unfair advantage to Agfa.

Id. See also, e.g., Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 95 CV 8833 (RPP), 2000 U.S. Dist. LEXIS 321, at *14-16 (S.D.N.Y. Jan. 14, 2000) (proposed expert disqualified where prior consultancy with adverse party related to one drug and proposed testimony related to different, but comparable drug).

Similarly, in Space Systems, the court disqualified a proposed expert who, as a former employee of the adversary, worked on the development of technology that was subsequently

---

[7]    Kodak has been selling digital cameras that generate and store thumbnails since 1991, yet Ampex waited until 2004 to file suit. Defendants maintain in this action that Ampex unreasonably delayed filing suit against Kodak. Mr. Anderson's work on Kodak's earlier cameras is therefore also relevant to Defendants' laches claim.

included in the accused systems. <u>See Space Systems</u>, 1995 WL 686369, at *2-3. ("There is no doubt that Muhlfelder must be disqualified as an expert witness in this litigation. Muhlfelder was privy to substantial confidential information from Martin Marietta that is relevant to the issues in this case . . . During his employment, Muhlfelder had significant involvement designing the attitude control systems for the [predecessor and accused] satellites . . .").

<u>See</u> Ampex ITC Opposition Brief, at A-249. Unlike the case of Mr. Anderson, however, the court in <u>Space Systems</u> determined that the relevant knowledge that that expert could have obtained through his consulting activities for Martin Marietta customers was "*minimal at best.*" <u>Space Systems,</u> 1995 WL 686369, at *3 (emphasis added). Moreover, the court specifically relied on the fact that both parties *agreed that the expert possessed no confidential information about the specific technology at issue* in the lawsuit. <u>Id.</u> That is far from the case here.

Given Mr. Anderson's direct and extensive involvement with the methods for generating and processing thumbnail and screennail images in the Kodak cameras -- the technology at issue in this litigation -- it would be fundamentally unfair for him to now testify against Kodak.

**B.    Many Other Potential Experts Were Available to Ampex.**

Digital imaging is not an obscure field. There are hundreds of practitioners in the field who have the necessary background and expertise to serve as an expert on Ampex's behalf in this case. In fact, not including Mr. Anderson, Ampex has already disclosed *six* technical experts in this action. Ampex has no compelling need to use an expert who, because of his extensive prior work on behalf of Kodak, has a "clear conflict of interest."

- 25 -

## VI.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motion to Disqualify

Mr. Anderson as an expert witness be granted.

PRICKETT, JONES & ELLIOTT, P.A.

PAUL M. LUKOFF (I.D. No. 96)
DAVID E. BRAND (I.D. No. 201)
Prickett, Jones & Elliott, P.A.
1310 King St.
P.O. Box 1328
Wilmington, DE
(302) 888-6500
*Attorneys for Defendants*

OF COUNSEL:

William F. Lee
Donald R. Steinberg
Michael J. Summersgill
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6000
Fax: (617) 526-5000

S. Calvin Walden
Paul B. Keller
Rebecca M. McCloskey
WILMER CUTLER PICKERING
 HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

Dated:  March 13, 2006

- 27 -

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2006, I electronically filed **DEFENDANTS' REDACTED OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY ERIC ANDERSON** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

I hereby certify that on March 13, 2006, I have forwarded the above-noted document to the following as noted below:

**VIA E-MAIL**

Jesse J. Jenner, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

**VIA E-MAIL & FEDERAL EXPRESS**

Norman H. Beamer, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301

**VIA E-MAIL**

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

*Paul M. Lukoff*

PAUL M. LUKOFF (Bar I.D. #96)
DAVID E. BRAND (Bar I.D. #201)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE  19899-1328
TEL: 302-888-6500
E-MAIL:  PMLukoff@prickett.com
                 DEBrand@prickett.com

19660.3\299562v1