# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPEX CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-1373-KAJ |
| ) | |
| EASTMAN KODAK COMPANY, ) | |
| ALTEK CORPORATION and CHINON ) | |
| INDUSTRIES, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' COMPENDIUM OF UNREPORTED OPINIONS

**OF COUNSEL:**

S. Calvin Walden
Paul B. Keller
Rebecca M. McCloskey
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

William F. Lee
Donald R. Steinberg
Michael J. Summersgill
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Date: March 15, 2006

PAUL M. LUKOFF (I.D. No. 96)
DAVID E. BRAND (I.D. No. 201)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500

*Attorneys for Defendants*

19660.3\299837v1

Westlaw.

Not Reported in F.Supp.2d                                                                                       Page 1
Not Reported in F.Supp.2d, 2004 WL 896002 (D.Del.)
**(Cite as: 2004 WL 896002 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
ARTHROCARE CORPORATION, Plaintiff,
v.
SMITH & NEPHEW, INC., Defendant.
**No. Civ. 01-504-SLR.**

March 10, 2004.

Jack B. Blumenfeld, Karen Jacobs Louden, and
James W. Parrett, Jr. , of Morris, Nichols, Arsht &
Tunnell, Wilmington, Delaware, for Plaintiff,
Matthew D. Powers, Jared Bobrow, and Perry Clark,
of Weil, Gotshal & Manges LLP, Redwood Shores,
California, of counsel.

William J. Marsden, Jr., and Keith A. Walter, Jr.,
of Fish & Richardson P.C., Wilmington, Delaware, for
Defendant, Mark J. Hebert, and Kurtis D. MacFerrin,
of Fish & Richardson P.C., Boston, Massachusetts, of
counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 On July 25, 2001, plaintiff Arthrocare
Corporation ("Arthrocare") filed this action against
defendant Smith & Nephew, Inc. ("Smith &
Nephew") alleging willful infringement of certain
claims of U.S. Patent Nos. 5,697,536 (the " '536
patent"), 5,697,882 (the " '882 patent") and 6,224,592
(the " '592 patent) directed to electrosurgery devices
and methods. (D.I.1) Smith & Nephew answered the
complaint on September 13, 2001 denying the
infringement allegations and asserting five
affirmative defenses including noninfringement,
invalidity, misuse, unenforceability based upon
inequitable conduct, and unclean hands. (D.I.10)
Smith & Nephew also asserted counterclaims for
declaratory judgment that the patents in suit are
invalid and not infringed by any act of Smith &
Nephew and that the '592 patent is unenforceable due

to inequitable conduct. (D.I.10) On September 26,
2001, Arthrocare denied Smith & Nephew's
counterclaims. (D.I.20) With the court's permission,
Smith & Nephew amended their answer on
November 27, 2002 to add counterclaims for antitrust
violations under 15 U.S.C. § 1 of the Sherman Act.
(D.I.219) Specifically, Smith & Nephew alleges that
Arthrocare and Ethicon, Inc. violated antitrust law by
bringing and maintaining the instant action to restrain
trade "knowing the ' 536, '882, and/or '592 patents are
invalid, unenforceable, and/or not infringed by any
act of Smith & Nephew." (D.I. 219 at ¶ 27-37)

ArthroCare is organized under the laws of the State
of Delaware with its principal place of business in
California. (D.I. 1 at ¶ 2) Smith & Nephew is also
organized under the laws of State of Delaware with
its principal place of business in Massachusetts. (D.I.
1 at ¶ 3) Smith & Nephew manufactures and sells the
following three allegedly infringing products: the
Saphyre bipolar ablation probe ("Saphyre"), the
Dyonics Control RF System ("Control RF"), and the
ElectroBlade Resector ("ElectroBlade"). The court
has jurisdiction over this case pursuant to 28 U.S.C. §
§ 1331, 1338(a) and 2201(a).

The court separated the issues raised by the parties
into two phases pursuant to Smith & Nephew's
motion to bifurcate the issues of willfulness and
damages until a jury verdict on infringement and
validity of the patents in suit. (See D.I. 206) The first
phase, in turn, included the issues of infringement,
validity, and inequitable conduct ("the patent
litigation"). The parties tried these issues before a
jury from April 30, 2003 through May 9, 2003. On
May 12, 2003, the jury returned a verdict in favor of
Arthrocare on all issues. (See D.I. 405) That is, the
jury found that Smith & Nephew directly infringed,
induced infringement, and contributed to the
infringement of the following claims of the three
patents in suit with its Saphyre, ElectroBlade, and
Control RF products: claims 46, 47, and 56 of the
'536 patent, claims 13, 17, and 54 of the '882 patent,
and claims 1, 3, 4, 11, 21, 23, 26, 27, 32, and 42 of
the '592 patent. (See id.) The jury also found that
none of the patents were invalid on anticipation or
lack of enablement grounds. (See id.)

*2 The second phase is presently pending before the
court and includes the issues of willfulness, damages,
and Smith & Nephew's antitrust counterclaims.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 2
Not Reported in F.Supp.2d, 2004 WL 896002 (D.Del.)
(Cite as: 2004 WL 896002 (D.Del.))

Currently before the court is Arthrocare's motion to dismiss Smith & Nephew's antitrust counterclaims. [FN1] (D.I.429) For the reasons that follow, the court grants said motion.

> FN1. Arthrocare filed this motion to dismiss on May 27, 2003. Smith & Nephew has not responded, despite mentioning its antitrust counterclaims in its answering brief opposing Arthrocare's motion for a permanent injunction in the patent litigation filed with the court on June 4, 2003. (*See* D.I. 436) The court, therefore, presumes that Smith & Nephew does not oppose the motion.

II. BACKGROUND

Arthrocare filed suit against Ethicon, Inc., Mitek Surgical Products, Inc., and Gynecare, Inc. in the Northern District of California on February 13, 1998, alleging infringement of eight claims in four patents. (*Arthrocare Corp. v. Ethicon, Inc.,* No. C-98-0609 WHO (N.D.Cal. Dec. 1, 1998); D.I. 321, ex. A at 1) The claims at issue included: (1) claims 40 and 44 of United States Patent No. 5,697,909 ("the '909 patent); (2) claim 45 of the '536 patent; (3) claim 101 of United States Patent No. 5,697, 281 ("the '281 patent); and (4) claims 1, 26, 28, and 32 of the '882 patent. (*Id.* at 2) On March 10, 1998, Arthrocare moved for a preliminary injunction against Ethicon and Mitek to enjoin the two from making, using, importing, selling, or offering for sale an electrosurgery system marketed and sold under the VAPR System name. (*Id.*) Senior Judge William H. Orrick issued a memorandum decision on December 1, 1998 denying Arthrocare's preliminary injunction motion. (*Id.* at 33) Judge Orrick found that the defendants raised substantial questions as to (1) whether claims 40 and 44 of the '909 patent and claims 26 and 28 of the '882 patent are invalid for obviousness; (2) whether claim 45 of the '536 patent and claim 101 of the '281 patent are invalid for anticipation and obviousness; and (3) whether claims 1 and 32 of the '882 patent are invalid for lack of enablement. (*Id.*) The parties settled the litigation in June 1999 prior to trial.

III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). In analyzing a motion to dismiss under this rule, the court, therefore, must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). The court, however, is not required to credit "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* The defendant has the burden of persuasion to show that no claim has been stated. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

IV. DISCUSSION

*3 Smith & Nephew's antitrust counterclaims are premised on the idea that Arthrocare and Ethicon filed "sham" litigation against Smith & Nephew to prevent or to restrain it from entering the arthroscopic surgery market. [FN2] Smith & Nephew appears to base this allegation on Judge Orrick's ruling that there were substantial questions concerning the validity of the '882 and '536 patents. In fact, Smith & Nephew particularly asserts that the "patent infringement action is objectively baseless in that no reasonable litigant could realistically expect success on the merits." (D.I. 219 at ¶  36) Arthrocare argues in rebuttal that the jury's verdict in its favor on infringement and invalidity proves that the patent litigation was not a "sham."

> FN2. Arthrocare and Ethicon have a combined seventy-five percent share of the market in the United States for arthroscopic surgical devices. (D.I. 219 at ¶ 35)

A party who petitions the government for redress generally is immune from antitrust liability. *Eastern R.R. Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington,* 381 U.S. 657 (1965). Commonly referred to as the *Noerr-Pennington* doctrine, this immunity extends to persons who petition all types of government entities, including legislatures, administrative agencies, and courts. *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972). Although originally developed in the antitrust context, courts have applied this doctrine universally

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 3
Not Reported in F.Supp.2d, 2004 WL 896002 (D.Del.)
(Cite as: 2004 WL 896002 (D.Del.))

to business torts. *See Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 128-29 (3d Cir.1999)* (applying the doctrine to common law claims of malicious prosecution, tortious interference with contract, tortious interference with prospective economic advantage, and unfair competition); *see also IGEN Int'l, Inc. v. Roche Diagnostics GmbH, 335 F.3d 303, 310 (4th Cir.2003).* Noerr-Pennington immunity, however, is subject to an exception for "sham" litigation. The Supreme Court has held that *Noerr-Pennington* immunity does not apply to petitions that are a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr, 365 U.S. at 144.* In this regard, the Supreme Court outlined a two-part definition for the term "sham litigation." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Ind., 508 U.S. 49 (1993).* As an objective first part, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id. at 60.* If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, then the suit does not qualify as sham litigation and is immunized under the *Noerr-Pennington* doctrine. *Id.* In other words, the antitrust claim premised on the sham exception must fail. The subjective second part of the definition arises only if the challenged litigation is objectively meritless. In such case, the court must decide whether the "baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor." ' *Id.* at 60-1.

**\*4** The court disagrees with Smith & Nephew and finds that Arthrocare instituted the patent litigation in a legitimate attempt to protect its patented inventions. The court rejects the notion that Judge Orrick's decision undermined Arthrocare's belief that its patents were valid, enforceable, and infringed by Smith & Nephew's Saphyre, ElectroBlade, and Control RF probes. Judge Orrick's opinion was based upon a partially developed record and was issued in response to Arthrocare's motion for a preliminary injunction. Under *35 U.S.C. § 282,* a patent is presumed valid, and invalidity may be established only by clear and convincing evidence. *See 35 U.S.C. § 282 (2003).* Such is not the standard employed in a preliminary injunction proceeding.

Additionally, the court notes that in *Applera Corp. V. Micromass UK Ltd., 204 F.Supp.2d 724, 782 (D.Del.2002),* antitrust counterclaims like those at bar were dismissed after a jury verdict of infringement and validity, based upon the reasoning that a jury

verdict in plaintiff's favor proved the litigation had merit. Applying this reasoning to the instant case, the court likewise concludes that the objective threshold for "sham" litigation is not satisfied and that the *Noerr-Pennington* doctrine shields Arthrocare from liability for Smith & Nephew's antitrust counterclaims. Accordingly, the court grants Arthrocare's motion to dismiss Smith & Nephew's counterclaims.

V. CONCLUSION

For the reasons stated, the court grants Arthrocare's motions to dismiss Smith & Nephew's antitrust counterclaims. An order shall issue.

ORDER

At Wilmington, this 10th day of March, 2004, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that Arthrocare's motion to dismiss Smith & Nephew's antitrust counterclaims is granted. (D.I.429)

Not Reported in F.Supp.2d, 2004 WL 896002 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 22331340 (Trial Pleading) Preliminary Jury Instructions (May. 13, 2003)

• 2003 WL 22331339 (Trial Pleading) Charge to the Jury (May. 12, 2003)

• 2003 WL 22331341 (Trial Pleading) Joint Proposed Jury Instructions (May. 06, 2003)

• 1:01CV00504 (Docket) (Jul. 25, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 348302 (W.D.Wis.)
**(Cite as: 2005 WL 348302 (W.D.Wis.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Wisconsin.
BONDPRO CORPORATION, Plaintiff,
v.
SEMENS WESTINGHOUSE POWER
CORPORATION, Defendant.
**No. 04-C-0026-C.**

Feb. 9, 2005.

Joel D. Skinner, Gerald T. Laurie, Michael
Schechter, for Plaintiffs.

David T. Schultz, Attorney at Law, Minneapolis,
MN, for Defendant.

FINAL PRETRIAL CONFERENCE ORDER

CRABB, J.

*1 A final pretrial conference was held in this case
on February 3, 2005, before United States District
Judge Barbara B. Crabb. Plaintiff appeared by Joel D.
Skinner, Jr., Michael Schechter and Gerald Laurie.
Defendant appeared by David Schultz, LeeAnn Bell
and Theresa Kimker.

Counsel agreed to the voir dire questions as
distributed to them at the final pretrial conference.
Counsel estimate that the trial will last no more than
eight days. Eight jurors will be chosen from a
qualified panel of fourteen. Each side will exercise
three peremptory challenges.

Jury selection will begin on Tuesday, February 22,
2005, at 9:00 a.m. unless Judge Shabaz's case does
not settle. If it does not, jury selection in that case
will precede the selection in this case. Counsel should
check with the clerk of court at the end of the day
Friday, February 18, 2005, to learn whether Judge
Shabaz's trial has settled.

Counsel are aware that trial days will run from 9:00
a.m. to 5:30 p.m. Lay witnesses will be sequestered
during trial. Counsel are encouraged to use the visual

presenter to save time and to give the jury access to
all of the exhibits that have been admitted into
evidence.

Counsel for plaintiff is to advise Mr. Schultz no later
than noon on February 18, 2005, of the witnesses he
will be calling on February 22, 2005, and the order in
which he will call them. He has the same duty at the
end of each trial day so long as he is presenting
plaintiff's case in chief. Mr. Schultz is obligated to
give Mr. Laurie the same advice during defendant's
case.

Counsel reviewed the proposed special verdicts and
instructions. They reserved full discussion to the
instruction conference to be held at the close of
evidence in the liability phase. Plaintiff's motions for
attorney participation in voir dire and for vacation of
the **bifurcation** order are DENIED.

I made the following rulings on the parties' motions
in limine.

1. Plaintiff's motion to exclude evidence of all
general or component disclosures is DENIED.

2. Plaintiff's motion to exclude the expert testimony
of Scott Beckwith is DENIED.

3. Plaintiff's motion to exclude the testimony of
other witnesses who have based their opinions on
Scott Beckwith's opinions is DENIED.

4. Plaintiff's motion to exclude evidence of the
content of the MD & A website is DENIED.

5. Plaintiff's motion to exclude the testimony of
Terrence Brennan, Christopher Regan and John
Musone is DENIED as moot because defendant will
not be calling any of these individuals as witnesses.

6. Plaintiff's motion to bar evidence of settlement
negotiations is GRANTED but defendant is free to
introduce evidence of matters that may have been
considered as part of the negotiations provided that
they are otherwise admissible.

7. Plaintiff's motion to exclude evidence of Scott
Wang's divorce and buy out is GRANTED except as
to evidence that relates to plaintiff's value.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 348302 (W.D.Wis.)
**(Cite as: 2005 WL 348302 (W.D.Wis.))**

8. Plaintiff's motion to exclude evidence that was not disclosed timely is GRANTED. This ruling does not apply to evidence in the form of United States **patents**.

**\*2** 9. Defendant's motion to bar plaintiff from playing video depositions of employees of defendant is DENIED.

10. Defendant's motion to exclude the testimony of Dennis Kleinheinz is DENIED. Defendant's objections to the testimony may be explored through cross-examination during the damages phase of the trial.

11. Defendant's motion to exclude evidence of other alleged incidents of trade secret misappropriations is GRANTED.

12. Defendant's motion to exclude evidence of Mark Miller's invention disclosure form is DENIED.

13. Defendant's motion to exclude evidence that defendant allegedly tried to bribe its former employee, Anthony Marshall by offering to rehire him is GRANTED.

14. Defendant's motion to bar admission of plaintiff's photocopy of plaintiff's invention disclosure form is GRANTED.

15. Defendant's motion to bar Grady Frenchik from testifying to his opinion that defendant's **patent** application reads on plaintiff's invention is DENIED.

16. Defendant's motion to exclude evidence of Mark Miller's alleged depression, gambling or acts of insubordination is GRANTED.

17. Defendant's motion to exclude evidence of **willful** or malicious conduct during the liability phase is GRANTED with respect to evidence of **willful** conduct and DENIED with respect to evidence of malicious conduct.

18. At the final pretrial conference, I reserved a ruling on defendant's motion to bar evidence of tape recorded conversations. Having had additional time to consider it, I will deny the motion. I am persuaded that the wording of the Wisconsin statute demonstrates the procedural nature of the statute. Although the statute is aimed at behavior taking place outside the courtroom, the only sanction for violation of the statute is a prohibition on the use of the tape in a courtroom setting.

19. Defendant has moved to bar plaintiff from introducing material disposition reports. The motion is GRANTED. Those reports are relevant only to plaintiff's good faith and fair dealing, which is no longer a part of this case.

Defendant's counsel advised the court and plaintiff's counsel that defendant has disclosed all of the information in its possession relating to the cost of manufacturing slot cells. Defendant is barred from adducing any evidence relating to attorney-client matters unless it has turned over to plaintiff's counsel all documents relevant to the evidence it wants to adduce.

Not Reported in F.Supp.2d, 2005 WL 348302 (W.D.Wis.)

**Motions, Pleadings and Filings** (Back to top)

• 3:04C00026 (Docket) (Jan. 16, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1766369 (N.D.Ill.)
**(Cite as: 2005 WL 1766369 (N.D.Ill.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
MORTON GROVE PHARMACEUTICALS, INC.
v.
PAR PHARMACEUTICAL COMPANIES, INC.
and Par Pharmaceutical, Inc. Defendants.
**No. 04 C 7007.**

July 22, 2005.

*MEMORANDUM OPINION AND ORDER*

KEYS, Magistrate J.

*1 In 2003, Morton Grove Pharmaceuticals ("MGP") filed an Abbreviated New Drug Application ("ANDA") with the United States Food and Drug Administration, seeking approval for a generic version of Bristol-Myers Squibb's Megace® megestrol acetate oral suspension, an appetite enhancing composition used to treat anorexia, cachexia and AIDS-related weight loss. On May 7, 2004, counsel for Pharmaceutical Resources, Inc. [FN1] and Par Pharmaceutical, Inc. (collectively referred to as "Par") wrote to MGP, advising that Par owned "all right and interest" in four United States Patents--namely, U.S. Patent No. 6,028,065 (the '065 Patent), U.S. Patent No, 6,268,356 (the '356 Patent), U.S. Patent No. 6,593,318 (the '318 Patent), and U.S. Patent No. 6,593,320 (the '320 Patent)--that describe and claim megestrol acetate oral suspensions, their use and method of manufacture, and therefore might be relevant to MGP's product. In its letter, Par asked MGP to provide certain information about its generic product so that Par could determine whether MGP's product infringed any of the four **patents**; Par also urged MGP not to launch its product until Par had a chance to make that determination.

> FN1. Counsel for Par has advised the Court that, as of May 27, 2004, Pharmaceutical Resources Inc. has changed its name to Par Pharmaceutical Companies, Inc.

MGP apparently chose not to provide Par with the requested information. Instead, on November 1, 2004 (the same day the FDA approved its ANDA), MGP filed this lawsuit, seeking a declaratory judgment that it had not infringed, does not infringe and will not infringe any of the four **patents** identified in Par's May 7 letter. MGP also sought a declaration that the claims of the '065 Patent, the '356 Patent, the '318 Patent, and the '320 Patent are invalid and unenforceable because of certain alleged instances of inequitable conduct during the prosecution of one or more of the **patents** at issue.

Par answered the complaint and filed a counterclaim, alleging that MGP's product does, in fact, infringe the '318 Patent. Par also alleged **willful** infringement of the '318 Patent, intentional interference with prospective economic advantages, and unjust enrichment. Par's counterclaim alleged infringement of just the '318 Patent; it did not allege that MGP had infringed any claim of the '065 Patent, the '356 Patent, or the '320 Patent. MGP answered Par's counterclaims, denying any wrongdoing and claiming that the claims of the '318 Patent are invalid and unenforceable.

On January 11, 2005, the district court entered a preliminary discovery order providing, among other things, that the issue of **willfulness** would be **bifurcated** and "considered only if, and after, liability is established"; the order similarly tabled discovery on this issue until after liability was resolved. *See* Preliminary Discovery Order, ¶ 1. The court also deferred the inequitable conduct issue and ordered that "no discovery shall take place with regard thereto until after the issue of liability has been determined." *Id.,* ¶ 2. The court's order further provided that fact discovery would close on June 14, 2005, and that expert discovery would begin thereafter. *See* Minute Order entered January 11, 2005.

*2 The court's January 11, 2005 order also required Par to prepare a claim chart, identifying which claims of which **patents** it alleges MGP is infringing. Par did so on February 25, 2005. In its chart, Par argued that MGP's product literally infringes at least claims 41, 42, 47, 48, 49, 52, 53, and 59 of the '318 Patent-- all of which disclose a particular pharmaceutical composition--and it attempted to show the basis for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 1766369 (N.D.Ill.)
**(Cite as: 2005 WL 1766369 (N.D.Ill.))**

its arguments as to each claim. Par also argued, in its claim chart, that MGP's product literally infringes at least claims 1, 2, and 6 of the '320 Patent, which together disclose a method of preparing a particular pharmaceutical composition. Par also argued, in its claim chart, that MGP's product literally infringes at least claims 1, 2, 3, 4, and 14 of the '065 Patent, which together disclose a particular composition. Par also stated that, although it had, as yet, no basis to allege direct infringement of the '356 Patent, MGP's product might also induce or contribute to infringement by doctors and other healthcare providers.

Significantly, Par specifically stated in its claim chart that it "shall move the Court for leave to file an Amended Supplement Answer and Counterclaim alleging infringement of the '320 Patent and any other related claim shortly." *See* Counterplaintiff's Claim Chart, p. 7. Par said the same thing in the section of the chart dealing with the '065 patent.

Pursuant to the January 11, 2005 order and in response to Par's claim chart, on March 28, 2005, MGP prepared its own claim chart. In it, MGP noted that Par had not asserted claims of infringement with respect to the '320 and '065 patents, *see* Counterdefendant's Claim Chart, p. 1, but it nonetheless responded to Par's infringement claims as to those patents.

On April 18, 2005, Par advised MGP that it planned to amend its answer and counterclaim, and it sent MGP a copy of its draft amended pleading. In response, MGP advised Par that it intended to amend its Complaint; MGP also asked Par to agree to a 30-day extension of discovery. Par indicated that it did not object in principle to MGP amending its complaint, but it refused to consent to a 30-day extension of discovery; instead, it agreed to extend discovery for two weeks. MGP rejected this offer and advised Par that it would consent to Par's amendment only if Par agreed to a 60-day extension of discovery; Par offered three weeks. Apparently convinced that MGP was not going to agree to the amendment, on May 27, 2005, Par filed its motion seeking leave of Court to file the amended answer and counterclaim, which the district judge then referred to this Court.

Par's proposed amendment includes, in addition to the claims of infringement and **willful** infringement of the '318 Patent, intentional interference with prospective economic advantages and unjust enrichment, claims of infringement and **willful** infringement of the '320 Patent, and infringement and **willful** infringement of the '065 Patent. Despite this, Par argues that the new claims involve matters that are already at issue in the case and should not require any extension of the discovery schedule.

**\*3** MGP objects to Par's request to amend its counterclaim, arguing that amendment is inappropriate at this late stage, especially because Par has stalled and failed to meet its obligations concerning discovery involving the existing claims and counterclaims. MGP argues that, if Par is allowed to amend its counterclaim, MGP should at least be given a 60-day extension of discovery so that it can properly address Par's deficiencies with regard to discovery on the current claims, as well as discovery on the claims Par seeks to add. MGP also seeks leave to amend its complaint to beef up the inequitable conduct allegations and to add a claim alleging violations of Section 2 of the Sherman Act.

"Leave to amend a pleading is to be 'freely given when justice so requires." ' *Crest Hill Land Development, LLC v. City of Joliet,* 396 F.3d 801, 804 (7th Cir.2005); Fed.R.Civ.P. 15(a). "Even so, leave to amend is not automatically granted, and may be properly denied at the district court's discretion for reasons including undue delay, the movant's bad faith, and undue prejudice to the opposing party." *Crest Hill,* 396 F.3d at 804 (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). In *Crest Hill,* for example, the district court denied the defendant the opportunity to amend its answer because the request to amend came five months after the defendant had filed its original answer and one month after discovery had closed, and because the amendments the defendant sought raised for the first time a new argument; the Seventh Circuit affirmed that decision. *Id.*

In this case, Par filed its original answer and counterclaim on December 6, 2004, and sought leave to amend on May 23, 2005--a little over five months later. Additionally, although Par filed its motion for leave to amend before the close of discovery, it didn't beat the clock by much: discovery closed less than a month later, on June 14, 2005, before the motion was even briefed. None of which is to say that Par should necessarily be denied the opportunity to amend; the timing of the motion simply means that the Court must take a close look at whether the issues raised in the amended answer and counterclaim have truly been explored and developed in discovery and whether MGP will truly be surprised and prejudiced by the amendment.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1766369 (N.D.Ill.)
(Cite as: 2005 WL 1766369 (N.D.Ill.))

Page 3

Before analyzing the particulars under Rule 15, the Court must lay out a bit of background about the particular allegations raised in the complaint and counterclaim. With respect to the **patents** at issue in this lawsuit, it is helpful to know that all four bear the same title and recite the same abstract; each is entitled "flocculated suspension of megestrol acetate," and each discloses "[a] novel oral pharmaceutical composition in the form of a stable flocculated suspension in water ... comprising: megestrol acetate; at least one compound selected from the group consisting of polyethylene glycol, propylene glycol, glycerol, and sorbitol; and a surfactant, wherein polysorbate and polyethylene glycol are not simultaneously present." *See* U.S. **Patent** No. 6,593,318B2, abstract (issued July 15, 2003); U.S. **Patent** No. 6,593,320B2, abstract (issued July 15, 2003); U.S. **Patent** No. 6,028,065, abstract (issued Feb. 22, 2000); U.S. **Patent** No. 6,268,356 B1, abstract (issued July 31, 2001). And all of the **patents** are related: the '356 **Patent** states on its face that it is a continuation of the '065 **Patent**, *see* U.S. **Patent** No. 6,268,356B1, col. 1, lines 6-7; the '318 **Patent** states on its face that it is a continuation of the '356 **Patent**, which was, in turn, a continuation of the '065 **Patent**, *see* U.S. **Patent** No. 6,593,318B@, col. 1, lines 6-9; and the '320 **Patent** states that it "is a division of application Ser. No. 09/757,261, filed Jan. 9, 2001, now allowed, which is a continuation of ... U.S. Pat. No. 6,268,356B1, issued Jul. 31, 2001, and which is a continuation of ... U.S. Pat. No. 6,028,065, issued Feb. 22, 2000, all in the name of N. Ragunathan, et al., entitled 'Flocculated Suspension of Megestrol Acetate." ' U.S. **Patent** No. 6,593,320 B2, col. 1, lines 6-14.

*4 And the **patents** disclose inventions that are related. The '065 **Patent** discloses, in 19 claims, several different oral pharmaceutical compositions--each in the form of a stable flocculated suspension in water. *See* U.S. **Patent** No. 6,028,065, col. 7, line 23--col. 8, line 49. The '356 **Patent** claims, in just one claim, a method of treating a neoplastic condition that consists of administering the particular oral pharmaceutical composition disclosed in claim 1 of the '065 **Patent**. *See* U.S. **Patent** No. 6,268,356B1 col. 8, lines 14-32. The '318 **Patent** appears to combine and supplement the two previous **patents** to disclose, in 68 claims, various pharmaceutical compositions and methods for using those compositions to treat a neoplastic condition. *See* U.S. **Patent** No. 6,593,318B2, col. 7, line 43--col. 12, line 11. Finally, the '320 **Patent** claims, in 10 claims, a method of preparing the stable flocculated suspension compositions. *See* U.S. **Patent** No. 6,593,320B2, col.

8, lines 26-58.

With this background in mind, the Court considers the parties' arguments concerning the appropriateness of Par's requested amendment. Turning first to the question of "undue delay," although it is true, as MGP points out, that Par's request to amend came late in the day--just a few weeks before fact discovery was set to close--there is nothing in the record to suggest that this delay was "undue" or that it was in any way the result of bad faith on Par's part. Par has represented that, when it filed its original answer and counterclaim, it lacked sufficient information to allege infringement of the ' 320 and '065 **patents** because it had only MGP's product label at that time, and therefore did not yet know the concentrations of ingredients in MGP's product or the method MGP used to manufacture its product. *See* Par's Brief in Reply to MGP's Objection to Par's Motion for Leave to File an Amended Answer and Counterclaims, p. 4. The Court has no reason to doubt this explanation, which would suggest that Par's delay was reasonable, not undue.

The Court next considers whether MGP will be unduly prejudiced--not just prejudiced--by Par's amendment. MGP argues that it will be prejudiced because the proposed amendment, which alleges infringement of two additional **patents**, will dramatically expand the scope of the case at a point after fact discovery has already closed. And, if one did not fully understand the substance of what is claimed in the various **patents**, this argument might at first blush seem compelling. But, as is evident from the background set out above, to the extent the new counterclaims expand the scope of this case, they do so only minimally. MGP's complaint, which seeks a declaration of non-infringement as to all four **patents**, puts at issue the '320 and the '065 **patents**, as well as the specific question of whether MGP's product infringes those **patents**. And, given that the '318 **Patent** is a continuation of the '065 **Patent**, and given that the '320 **Patent** discloses a method of preparing the compositions disclosed in the other **patents**, the issues involved in proving that MGP has infringed (or not infringed) the '318 **Patent** would seem to dovetail significantly, if not entirely, with the issues involved in proving that MGP has infringed the '065 and the '320 **Patents**.

*5 Additionally, although it is true that Par's request for leave to amend was filed just before fact discovery closed, MGP was aware that the amendment was coming down the pike several months earlier, while discovery was in full swing. Par

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 4
Not Reported in F.Supp.2d, 2005 WL 1766369 (N.D.Ill.)
**(Cite as: 2005 WL 1766369 (N.D.Ill.))**

expressly told MGP on several occasions that it intended to amend its counterclaim. And, indeed, in its complaint, MGP conceded that it was "under a reasonable apprehension" that Par would sue it for infringement of all four patents. *See* Complaint, ¶ 22. And that apprehension was continually fed by Par's words and actions, culminating in the formal request to amend filed in May.

Moreover, even though the claims of infringement as to the '320 and the ' 065 patents were not formally a part of Par's case, the discovery undertaken by the parties to date has encompassed not just the '318 Patent, but the other patents as well. For example, MGP's First Set of Rule 34 Requests to Par includes numerous requests for information about "the patents-in-suit," which MGP defined as the '318 Patent, the '065 Patent, the '356 Patent and the '320 Patent. Similarly, Par's claim chart, which sets forth the claims that are alleged to be infringed and the basis for the claim of infringement, includes claims of the '320 Patent and the '065 Patent, as well as the '318 Patent. And MGP's claim chart, prepared and submitted in response to Par's claim chart, also covers certain claims of the '320 Patent and the '065 Patent, as well as the '318 Patent. In short, the parties have not limited themselves, at least on the infringement question, to the '318 Patent.

In light of all of this--the fact that MGP knew or should have known that the request to amend was coming, the fact that the parties have engaged in fact discovery concerning all of the patents, not just the patent referenced in Par's original counterclaim, and the fact that expert discovery has yet to begin--the Court finds that MGP will not suffer undue prejudice if Par is permitted to amend its counterclaim. Under the circumstances, especially given that leave to amend should be freely granted, the Court finds that Par is entitled to amend its answer and counterclaim.

The Court next considers whether allowing the amendment warrants a re-opening of fact discovery. As explained, the claims at issue are already a part of MGP's case-in-chief, and the parties' discovery to date--which has been limited to the issues of infringement and damages--has included the '320 Patent and the '065 Patent. In its requests to date, MGP asked for discovery on the prosecution history and file history of all four patents, not just the '318 patent. MGP asked for discovery on any litigation and opposition as to validity, enforceability and infringement of any of the four patents, not just the '318 patent. MGP asked for discovery concerning Par's litigation with other potential infringers,

including Alpharma, Teva, and Roxane, concerning any of the four patents, not just the '318 patent. MGP asked for all documents and things concerning any licensing agreements related to any of the four patents, not just the '318 patent. In short, it does not appear that MGP tailored or limited its discovery requests based upon Par's omission of the '320 patent and the '065 patent from its original counterclaims.

*6 That finding is buttressed by the draft discovery requests MGP has submitted to support its objection to the amendment, which purport to lay out the specific discovery MGP says it will need if Par is permitted to amend. MGP claims for example that, if Par is permitted to add infringement claims on the '320 and the '065 patents, it must be permitted to ask Par, via discovery, to admit that the megestrol acetate products manufactured by other competitors--namely, Teva, Roxane Laboratories and Alpharma--do not infringe the pertinent claims of these patents. *See* MGP's First Set of Rule 36 Requests for Admission (Proposed), Request Numbers 1--24 (attached as Exhibit 1 to MGP's Response in Support of its Objection to par's Motion for Leave to File an Amended Answer and Counterclaims). Yet it does not appear that MGP asked Par to admit the same things with respect to the '318 patent. And, given the way MGP styled the rest of its discovery, if it had asked Par about these products, it would have asked the question for each of the four patents, not just the '318 patent.

Similarly, MGP claims that it must now be permitted to pose an interrogatory asking Par whether it is contending that the products manufactured by these competitors are "non-acceptable" substitutes, and, if it is contending as much, to provide a complete, detailed basis for this contention. *See* MGP's Third Set of Rule 33 Interrogatories to PRI and PAR (Proposed), Interrogatory No. 22 (attached as Exhibit 2 to MGP's Response in Support of its Objection to par's Motion for Leave to File an Amended Answer and Counterclaims). But this interrogatory is not limited to the '320 and '065 patents, and was therefore just as relevant under the original counterclaim as it is under the amended counterclaim; if MGP thought it needed this information, it could have--and should have--asked for it before fact discovery closed. MGP may not use the amendment of pleadings to correct its mistakes or oversights in discovery.

MGP has argued that Par's amendments introduce new issues relating to damages, and that it needs additional discovery from Par and from third parties

Not Reported in F.Supp.2d                                                          Page 5
Not Reported in F.Supp.2d, 2005 WL 1766369 (N.D.Ill.)
**(Cite as: 2005 WL 1766369 (N.D.Ill.))**

to address those new issues. In particular, MGP argues that the new claims change "the scope of discovery as to the presence or absence of acceptable non-infringing substitutes." MGP's Response in Support of its Objection to Par's Motion for Leave to File an Amended Answer and Counterclaims, p. 2. But given the substance of the claims of the '318 patent and the '320 and the '065 patents, the Court does not see why this would be the case; certainly, MGP has not explained the point.

Moreover, with respect to damages, Par has indicated that it will not be seeking separate recovery of lost profits for infringement of each asserted patent, but that it intends to treat lost profit damages for infringement of all its patents together. This representation--which will bind Par going forward--undermines MGP's argument on the need for additional fact discovery on damages, at least as to lost profit damages. And, with respect to the remaining damages components, Par has represented that those issues will be addressed during expert discovery, which has not yet begun, and MGP has offered nothing to suggest that this is not the case. MGP's concerns about "acceptable non-infringing substitutes" would seem to be more appropriately explored through expert discovery, than fact discovery anyway.

*7 Finally, the Court considers whether MGP should be permitted to amend its complaint to include its "counterclaim-in-reply" allegations and to add a claim for violation of Section 2 of the Sherman Act. The Court will allow the amendment, in part, because Rule 15 applies with equal force to MGP and Par, in part because MGP should be able to conform its allegations in reply to Par's new counterclaims, *see Pogue v. Allied Products Corp.,* No. 89 C 3548, 1989 WL 111854, at *4 (N.D.Ill. Sept.20, 1989), and in part because Par has not opposed the motion.

*Conclusion*
 For the reasons set forth above, the Court grants Par's motion for leave to amend its answer and counterclaim, denies MGP's motion to extend discovery, and will permit MGP to amend its complaint.

 Not Reported in F.Supp.2d, 2005 WL 1766369 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 3392820 (Expert Report and Affidavit)

Rebuttal Expert Report of Dr. Alexander M. Klibanov (Nov. 23, 2005)

• 2005 WL 3286686 (Trial Motion, Memorandum and Affidavit) Par's Reply Memorandum of Law in Support of its Motion to Dismiss Count VI of Morton Grove's Amended Complaint (Oct. 12, 2005)

• 2005 WL 2716474 (Trial Motion, Memorandum and Affidavit) Mgp's Response to Par's Motion to Dismiss Count VI of Morton Grove's Amended Complaint (Sep. 23, 2005)

• 2005 WL 2716473 (Trial Motion, Memorandum and Affidavit) Mgp's Reply to Second Amended Counterclaims for Relief (Sep. 14, 2005)

• 2005 WL 2716463 (Trial Pleading) Second Amended Answer and Counterclaims (Aug. 30, 2005)

• 2005 WL 2611042 (Trial Motion, Memorandum and Affidavit) Par's Memorandum of Law in Support of its Motion to Dismiss Count Vi of Morton Grove'S Amended Complaint (Aug. 29, 2005)

• 2005 WL 2612074 (Trial Pleading) Amended Complaint for Declaratory Judgment & other Relief (Aug. 15, 2005)

• 2005 WL 2611033 (Trial Motion, Memorandum and Affidavit) Morton Grove Pharmaceuticals' Memorandum in Support of its Request for an in Camera Review of Certain Documents from Par'S Privilege Log (Jul. 29, 2005)

• 2005 WL 2716472 (Trial Motion, Memorandum and Affidavit) Confidential Pursuant to Protective Order (Jun. 14, 2005)

• 2004 WL 3562983 (Trial Motion, Memorandum and Affidavit) Mgp's Reply to Pri and Par's Counterclaims for Relief (Dec. 27, 2004)

• 2004 WL 3562945 (Trial Pleading) Answer and Counterclaims Answer (Dec. 06, 2004)

• 2004 WL 2888632 (Trial Pleading) Jury Trial Demanded (Nov. 01, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 592531 (D.N.J.), 28 U.S.P.Q.2d 1395
(Cite as: 1993 WL 592531 (D.N.J.))

Page 1

**H**

**Motions, Pleadings and Filings**

United States District Court, D. New Jersey.
NEORX CORPORATION, Plaintiff,
v.
IMMUNOMEDICS, INC., Defendant.
**Civ. No. 92-2853 (HLS).**

May 26, 1993.
Steven L. Lapidus, Robinson, St. John & Wayne,
Newark, NJ, for plaintiff.

Thomas H. Beck, Fitzpatrick, Cella, Harper &
Scinto, New York City, for defendant.

OPINION

SAROKIN, District Judge.

*1 Before the court is defendant's appeal from an
Opinion and Order issued by Magistrate Judge Joel
A. Pisano on March 23, 1993.

*Background*

On July 8, 1991, plaintiff filed this complaint in the
Western District of Washington claiming patent
infringement and breach of contract. On March 4,
1992, the Honorable Barbara J. Rothstein transferred
the matter to the District of New Jersey.

Defendant subsequently moved before Magistrate
Judge Pisano to bifurcate the issues of liability,
damages, and willfulness and to stay discovery of
defendant's privileged attorneys' opinions. In an
Opinion and Order dated March 23, 1993, the
Magistrate denied defendant's motion for bifurcation
of the issues of liability and damages, ordered
defendant to indicate within ten days of receipt of the
opinion whether it intended to rely upon its attorneys'
opinions and a reliance-upon-the-advice-of-counsel
defense, and denied defendant's motion to stay
discovery of the privileged attorneys' opinions.
[FN1] Defendant timely submitted this appeal from
all three aspects of the order.

*Discussion*

The order under appeal in this case resolved non-
dispositive issues. Accordingly, the court will only
set aside the order if it is found to be clearly
erroneous or contrary to law. Fed.R.Civ.P. 72(a);
Rule 40(D)(4) of the General Rules of the United
States District Court for the District of New Jersey;
*Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108,
1113 (3d Cir.1986).

The Magistrate's decision identified the issue in this
matter as follows: as an accused infringer, defendant
must choose between asserting its attorney-client
privilege (thereby protecting any communications
with its attorneys from discovery) and avoiding a
willfulness finding by demonstrating that it relied on
the advice of counsel. [FN2] If a defendant pursues
the latter course, it waives its attorney-client
privilege and its communications with counsel are
discoverable. The danger associated with this choice
is that discovered materials may prejudice the
defendant on the issue of liability. In an attempt to
avert this danger, a defendant may file a motion to
sever the issue of willfulness and to stay discovery of
its attorney opinions, as the defendant in this case
did. The objective is to deny plaintiff access to
defendant's communications with its counsel unless
and until plaintiff succeeds in proving liability.

The Magistrate correctly observed that the dilemma
facing an accused infringer was recognized by the
Federal Circuit in the case of *Quantum Corp. v.
Tandon Corp.,* 940 F.2d 642, 643 (Fed.Cir.1991).
The *Quantum* court offered general guidance on this
issue as follows:
  An accused infringer ... should not, without the
  trial court's careful consideration, be forced to
  choose between waiving the privilege in order to
  protect itself from a willfulness finding, in which
  case it may risk prejudicing itself on the question
  of liability, and maintaining the privilege, in which
  case it may risk being found to be a willful
  infringer if liability is found. Trial courts thus
  should give serious consideration to a separate trial
  on willfulness whenever the particular attorney-
  client communications, once inspected by the court
  *in camera,* reveal that defendant is indeed
  confronted with this dilemma.
*2 *Quantum,* 940 F.2d at 643-44.

The Magistrate ruled that because defendant had not
yet asserted a reliance-upon-advice-of-counsel

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1993 WL 592531 (D.N.J.), 28 U.S.P.Q.2d 1395
**(Cite as: 1993 WL 592531 (D.N.J.))**

defense and had not submitted any communications for an *in camera* review, defendant's situation had not risen to the level of a *Quantum* dilemma. The Magistrate concluded that defendant had failed to show that he would be prejudiced by a unified trial and thus denied defendant's motion for bifurcation of liability and damages.

Defendant argues that the Magistrate misapplied the guidance found in *Quantum* by ruling that defendant must assert a reliance-upon-the-advice-of-counsel defense as a necessary prerequisite to prevailing on a bifurcation motion and by ruling on the issue without conducting an *in camera* review of its attorney letters. [FN3] The court agrees. In *Quantum*, the plaintiff moved for discovery of the defendant's prelitigation opinion letters of counsel or, in the alternative, to preclude all references to or reliance upon such communications by defendant. Essentially, plaintiff's motion sought to force the defendant to indicate whether it was relying on an advice-of-counsel defense. The defendant countermoved for a separate trial on the issue of willfulness and for deferral of discovery of the attorney opinion letters until after the trial on liability and damages. The trial court conducted an *in camera* review of the defendant's documents and then granted the plaintiff's motion for production of the attorney-client documents and denied the defendant's motion to defer the trial on willfulness. On appeal, the Federal Circuit held that the lower court's substantive decisions were not reviewable. However, in well-considered dicta, the Federal Circuit approved of the method by which the lower court reached its decision. The court stated:

> Procedurally, the court's inspecting the documents *in camera* before ruling on the motions to compel production and defer trial on willfulness was certainly proper and deserves emulation.
> *Quantum, 940 F.2d at 644.*

This court reads the Federal Circuit opinion as suggesting that once a defendant asserts that he is faced with the dilemma identified in *Quantum*, a trial court should inspect the defendant's attorney-client documents *in camera* to ascertain that the dilemma is legitimate. If the dilemma is real, *Quantum* suggests that bifurcation of the willfulness issue is an appropriate way to proceed. On this point, the Federal Circuit stated that:

> While our court has recognized that refusal of a separate trial will not require reversal in every case involving attorney client communications bearing on willfulness, we have suggested the advisability of separate trials in appropriate cases.

*Quantum, 940 F.2d at 644* (citing *Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1572 (Fed.Cir.1988)*).

In this case, the Magistrate did not review the defendant's attorney-client communications before ruling on the issue of bifurcation. Because this procedure is contemplated by *Quantum*, the court will vacate the Magistrate's Opinion and Order and remand the matter for further proceedings. On remand, the Magistrate may review defendant's documents and give consideration to whether the issue of willfulness should be severed. If the Magistrate decides that early discovery of defendant's documents would unfairly prejudice defendant on the liability issue, the Magistrate could order the issue of willfulness to be severed. [FN4] Defendant would then have the opportunity after a liability determination was reached to decide whether to assert the reliance-upon-the-advice-of-counsel defense. Conversely, if the Magistrate determines that a defendant would not be unfairly prejudiced by early discovery of its attorney-client communications, the court would be justified in refusing to sever the issue of willfulness and ordering a unified trial. [FN5] At this point, defendant would be required to make an election regarding his defenses. If defendant chose to assert the advice-of-counsel defense, plaintiff would be entitled to timely discovery of the attorney-client communications. Otherwise, the attorney-client privilege would be preserved.

**\*3** The court notes that its vacation of the Magistrate's decision is based on procedural concerns and that the court expresses no view regarding what substantive outcome the Magistrate should reach after his *in camera* review of defendant's documents. Finally, the court rejects defendant's argument that this matter should be delayed pending the outcome of defendant's summary judgment motion which this court has stayed pending further discovery.

*Conclusion*

For the foregoing reasons, Magistrate Judge Pisano's Opinion and Order of March 23, 1993 is vacated. The matter is remanded to Magistrate Judge Pisano for further action consistent with this opinion.

> FN1. The Magistrate discussed defendant's motion to bifurcate the issue of willfulness under the rubric of deciding defendant's motion to bifurcate the issues of liability and damages. The Magistrate's decision does

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                   Page 3
Not Reported in F.Supp., 1993 WL 592531 (D.N.J.), 28 U.S.P.Q.2d 1395
**(Cite as: 1993 WL 592531 (D.N.J.))**

not appear to give independent analysis to defendant's motion to bifurcate liability and damages.    Given the court's disposition of this matter, the Magistrate will be able to address this issue on remand.

FN2. As noted by the Magistrate, reliance on counsel's advice "militates against a finding of willfulness." *Keyes Fibre Co. v. Packaging Corp. of America,* 763 F.Supp. 374, 375 n. 1 (N.D.Ill.1991).

FN3. Defendant alleges that it informed the Magistrate at a March 17, 1993 hearing that it was willing and able to make its privileged communications available for inspection, but that the Magistrate never asked for submission of the documents.  Def.Mem. at 10.

FN4. However, the court notes that the Magistrate could still decide not to sever the issue of willfulness based on such other considerations as prejudice to the plaintiff, unnecessary expense and delay, and duplication of evidence.

FN5. Alternatively, the Magistrate could order unified discovery and a two-phased trial before the same jury, with infringement addressed in the first phase and willfulness in the second phase.   A final possibility is that the Magistrate could require the defendant to make a choice regarding its defenses after reasonable discovery on the other aspects of the case. See *Pitway Corp. v. Maple Chase Co.,* No. 91-C3582, 1992 WL 392584, at * 6, 1992 U.S.Dist. LEXIS 19237, at *19-20 (N.D.Ill. Dec. 15, 1992).

Not Reported in F.Supp., 1993 WL 592531 (D.N.J.), 28 U.S.P.Q.2d 1395

**Motions, Pleadings and Filings (Back to top)**

• 2:92cv02853 (Docket) (Jul. 15, 1992)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1376586 (D.Del.)
(Cite as: 2004 WL 1376586 (D.Del.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PFIZER INC., Pfizer Ireland Pharmaceuticals,
Warner-Lambert Company, Warner-
Lambert Company, LLC, and Warner-Lambert
Export, Ltd ., Plaintiffs,
v.
RANBAXY LABORATORIES LIMITED and
Ranbaxy Pharmaceuticals, Inc., Defendants.
**No. Civ.A.03-209-JJF.**

June 18, 2004.

Rudolf E. Hutz, Jeffrey B. Bove, and Mary W. Bourke, of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, for Plaintiffs.

Steven J. Balick, and John G. Day, of Ashby & Geddes, Wilmington, Delaware, Darrell L. Olson, John P. Giezentanner, and William R. Zimmerman, of Knobbe, Martens, Olson & Bear, LLP, Irvine, California, Jay R. Deshmukh, and George E. Heibel, of Ranbaxy Inc., Princeton, New Jersey, for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Pending before me is a Motion To Compel Production Of Documents Withheld On Grounds Of Privilege (D.I.122) filed by Plaintiffs Pfizer Inc., Pfizer Ireland Pharmaceuticals, Warner-Lambert Company, Warner-Lambert Company, LLC and Warner-Lambert Export, Ltd. (collectively, "Pfizer") against Ranbaxy Laboratories Limited and Ranbaxy Pharmaceuticals, Inc. (collectively, "Ranbaxy"). By its Motion, Pfizer contends that Ranbaxy has improperly refused to produce certain documents forming the basis of the statements and conclusions made in Ranbaxy's Paragraph IV notification letters. The documents at issue are three e-mail letters reflecting the review, analysis and written opinions of Ranbaxy's in-house and outside counsel. Pfizer contends that Ranbaxy waived any claim of attorney-

client privilege with respect to these documents by including information from the documents in its non-privileged paragraph IV notification letters.

In response, Ranbaxy contends that it has not waived any claim of attorney-client privilege or work product immunity with respect to the documents at issue. Ranbaxy contends that the mere fact that the ANDA notification was based on or consistent with the opinions of its counsel does not amount to a waiver of the attorney-client privilege or work product immunity. Ranbaxy further contends that Pfizer's motion to compel is an attempt to circumvent my order bifurcating the issue of willful infringement from the other issues in the case. Ranbaxy contends that it has not yet made the decision of whether it will rely on the opinions of its counsel in the willfulness phase of the trial, and it should not have to make that decision during this phase of the case.

Based on the parties' respective arguments, it appears that Pfizer does not contest Ranbaxy's assertion that the documents at issue are protected by work product immunity and/or the attorney-client privilege. Thus, the only question remaining for me is the narrow inquiry of whether Ranbaxy waived its privilege and/or immunity by filing its Paragraph IV notification letters based on the advice and opinions of its counsel as relayed in the subject documents. Pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), an abbreviated new drug application ("ANDA") must contain a certification that, in the opinion of the applicant and to the best of his or her knowledge, the patent on the subject drug is "invalid or will not be infringed by the manufacture, use or sale of the new drug for which the application is submitted." In addition, the ANDA applicant is required to provide the patent owner with a "detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed." 21 U.S.C. § 355(j)(2)(B)(iv)(II).

I conclude that the fact that an ANDA applicant bases its Paragraph IV notification letter on the opinions and advice of its attorneys is insufficient to constitute a waiver of the attorney-client privilege and/or work product immunity with respect to the underlying documents expressing that advice or opinion. Pfizer points to several cases suggesting that a party's partial disclosure of attorney-client communications is sufficient to waive the privilege;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1376586 (D.Del.)
(Cite as: 2004 WL 1376586 (D.Del.))

however, none of these cases involve an ANDA applicant. In this regard, I agree with Ranbaxy that the circumstances of this case are analogous to the numerous litigation circumstances in which a client and attorney discuss general information and some of that information makes its way into public filings, such as complaints and answers to interrogatories. Courts considering such circumstances have concluded that the privileges are not waived with respect to the underlying communication between the attorney and the client. *See Beery v. Thomson Consumer Electronics, Inc.,* 218 F.R.D. 599 (S.D.Ohio 2003) (plaintiff in patent infringement suit did not waive attorney-client privilege by relying on attorney's claim construction or infringement opinions at deposition); *Frieman v. USAir Group, Inc.,* 1994 WL 675221, *7 (E .D. Pa.1994) (holding that privilege was not waived with respect to attorney-client communications about cause of accident where certain information was divulged in interviews, depositions and pleadings); *Bristol-Myers Co. v. Sigma Chemical Co.,* 7 U.S.P.Q.2d 1574 (D.Del.1988) (holding that Rule 11 affidavit submitted for purposes of demonstrating a good faith basis for instituting infringement actions did not waive privilege with respect to documents protected by privileges); *Knogo Corp. v. United States,* 213 U.S.P.Q. 936, 941 (Ct.Cl.1980) (holding that assertion of privilege is not precluded over communications in which attorney and client discussed technical information concerning the patent, and some of the technical information was later disclosed in patent application and recognizing that client does not waive privilege by testing validity of patent).

**\*2** Further, I am persuaded, based on the line of questioning pursued by Pfizer at the deposition of Ranbaxy's Jay R. Deshmukh, Esquire, that the subject documents relate primarily to Pfizer's allegations of willful infringement. I have bifurcated the issue of willful infringement from the issues of infringement and validity, and therefore, the issue of whether Ranbaxy will rely on its opinions of counsel to defend against Pfizer's claims of willful infringement is not currently an active issue. Accordingly, Pfizer is not yet entitled to the discovery of these otherwise privileged documents.

An appropriate Order will be entered.

### ORDER
At Wilmington, this 18th day of June 2004, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Plaintiff Pfizer's Motion To Compel Production Of Documents Withheld On Grounds Of Privilege (D.I.122) is DENIED.

Not Reported in F.Supp.2d, 2004 WL 1376586 (D.Del.)

### Motions, Pleadings and Filings (Back to top)

• 1:03cv00209 (Docket) (Feb. 21, 2003)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1939875 (W.D.Wis.)
**(Cite as: 2005 WL 1939875 (W.D.Wis.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Wisconsin.
THIRD WAVE TECHNOLOGIES, INC., Plaintiff,
v.
STRATAGENE CORPORATION, Defendant.
**No. 04-C-680-C.**

Aug. 12, 2005.

ORDER

<u>CRABB</u>, J.

*1 A final pretrial conference was held in this case on August 11, 2005, before United States District Judge Barbara B. Crabb. Plaintiff Third Wave Technologies, Inc., appeared by Donald Best, Tom Pasternak, Mark Pals and Cindy Ahn. Defendant Stratagene Corporation appeared by James Peterson, Kevin Bell and Mark Labgold.

Counsel approved the proposed voir dire questions in the form distributed to them at the final pretrial conference with one exception. The question involving genetically engineered foods will be removed from the voir dire. Counsel also agreed that the magistrate judge could select the jury and give the jury the introductory instructions and preside over the showing of the Federal Judicial Center video on **patent** cases.

Counsel were advised that the schedule for the trial would be as follows: Jury selection would take place on Monday before the magistrate judge following the selection of the jury in *Henderson v. Belfueil.* Trial would actually begin on Tuesday morning, August 23, 2005, at 9:00 a.m. Trial on Tuesday, Wednesday and Thursday would last from 9:00 a.m. to 5:30 p.m., with an hour for lunch. On Friday, August 26, 2005, trial will last from 9:00 a.m. until 2:00 p .m. with no real lunch break, but two shorter breaks during the morning. During the second week, trial in this case would begin at 1:30 p.m. and last until 6:30 p.m. On Tuesday morning, the trial would begin at 8:00 a.m.

and last until 1:00 p.m. and the same schedule would be followed for Wednesday, Thursday and Friday if the trial lasts that long.

Trial in this case will be **bifurcated.** Counsel are not to refer to the matter of damages in the liability phase of trial. The question of **wilfulness** will be tried during the damages phase of the trial.

Eight jurors will be selected from a qualified panel of fourteen. Each side will exercise three peremptory challenges to the qualified panel.

All witnesses will be sequestered, with the exception of expert witnesses and corporate representatives. Counsel are to confer on the question of allowing Kevin Conroy to remain in the courtroom during the trial when he is going to be testifying as a witness.

No later than Monday, August 22, 2005, plaintiff is to advise defendant of the witnesses it will be calling on Tuesday, August 23, 2005, and of the order that it will be calling them. Thereafter, at the end of each trial day, the party calling the witnesses the next day will advise the other party of the witnesses it intends to call and the order in which it will be calling them. It is each side's responsibility to ensure that it has a full slate of witnesses ready to testify each day.

Counsel are to provide the court with exhibit lists and copies of documentary exhibits no later than Monday, August 22, 2005.

Counsel are to work together to prepare notebooks for the jurors to use during the trial that will include copies of the **patents** or portions of them and a list of the words that will be used in the trial and the court's claim constructions.

*2 Counsel have agreed between themselves to divide up their time equally. They will do their own timekeeping.

The parties are still disputing ownership of the **patents** in issue. They have agreed that the court can resolve the question. Plaintiff will file a brief on the issue no later than Wednesday, August 16, 2005. The response brief is due Wednesday, August 24, 2005, and plaintiff may have until August 29, 2005, in which to file and serve a reply brief.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1939875 (W.D.Wis.)
(Cite as: 2005 WL 1939875 (W.D.Wis.))

On the motions in limine, the following rulings were made:

1. Defendant's motion to bar plaintiff from introducing any evidence related to indirect infringement other than the May 20, 2005 stipulation is DENIED.

2. Defendant's motion to hold plaintiff to the claim construction in *Third Wave Technologies, Inc. v. EraGen Biosciences, Inc.,* is GRANTED.

3. Defendant's motion to limit plaintiff's evidence on direct infringement to the issue of its actual "use" of the claimed methods is DENIED.

4. Defendant's motion to bar plaintiff from submitting any evidence regarding direct infringement not previously disclosed is DENIED as premature. Defendant may raise the issue again if any such evidence is proposed by plaintiff.

5. Defendant's motion to bar the use of statements by its employees related to a discussion about the possible need to obtain a license from plaintiff in order to market *Pfu* FEN-I is DENIED.

6. Defendant's motion to bar plaintiff from attempting to offer expert testimony not previously disclosed is DENIED as premature. However, the parties are limited to the expert testimony disclosed in expert reports.

7. Defendant's motion to bar plaintiff from arguing infringement under the Doctrine of Equivalents is moot.

8. Defendant's motion to omit the reading of any attorney colloquy in deposition designations is GRANTED. However, counsel may re-raise this subject if he believes any colloquy is necessary to the jury's understanding of the questions and answers given.

9. Defendant's motion to bar all reference to other litigation in which it was a party is GRANTED. That ruling applies to litigation involving plaintiff as well, with the exception of the *EraGen* litigation.

10. Defendant's motion to bar plaintiff from asserting that the date of conception was earlier than December 26, 1995, is GRANTED as unopposed.

11. Plaintiff's motion to substantially limit the scope of testimony of defendant's expert, Dr. Joseph Falkinham, is GRANTED with respect to FEN-I nucleases, DENIED as to his testimony on anticipation, DENIED as to his testimony on Gelfand and Turchi prior art and GRANTED with respect to obviousness, DENIED with respect to failure to comply with 35 U.S.C. § 112 and DENIED with respect to non-enablement.

12. Plaintiff's request to bar defendant from presenting evidence or argument related to three affirmative defenses is DENIED with respect to any exemption under 271(e)(1), but such evidence would come in only in the damages phase of the trial. As to inequitable conduct the motion is GRANTED and as to prosecution history estoppel the motion is DENIED as moot.

*3 13. Plaintiff's motion to preclude defendant from asserting that plaintiff's '717 **patent** is prior art to the '314 and '543 **patents** is RESERVED for ruling at a later time.

14. Plaintiff's motion to preclude defendant from entering evidence related to its **patents** nos. '254, '250, '580 is GRANTED.

15. Plaintiff's motion to bar defendant from introducing evidence comparing its products to plaintiff's products covered by the **patents** at issue is DENIED.

16. Plaintiff's motion to preclude defendant from presenting evidence at trial regarding its reliance on opinions of counsel for defendant's failure to comply with discovery requests is GRANTED. Defendant may elicit such evidence only if it has been previously disclosed to plaintiff.

17. Plaintiff's motion to preclude defendant from introducing at trial nineteen inadvertently disclosed documents allegedly containing privileged information is GRANTED with respect to the specified pages of Exhibits 962, 966, 994, 1024, 1026 and 1030. It is DENIED with respect to the unspecified pages of these exhibits and with respect to Exhibits 1191, 1221, 1223, 1226, 1227, 1228, 1230 and 1231.

Not Reported in F.Supp.2d, 2005 WL 1939875 (W.D.Wis.)

**Motions, Pleadings and Filings (Back to top)**

• 3:04C00680 (Docket) (Sep. 15, 2004)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 3
Not Reported in F.Supp.2d, 2005 WL 1939875 (W.D.Wis.)
**(Cite as: 2005 WL 1939875 (W.D.Wis.))**


END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 211647 (N.D.Ill.)
**(Cite as: 1991 WL 211647 (N.D.Ill.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
W.R. GRACE & CO., Plaintiff,
v.
VISKASE CORPORATION, Defendant.
No. 90 C 5383.

Oct. 15, 1991.

*MEMORANDUM **OPINION** AND ORDER*

CONLON, District Judge.

*1 Plaintiff W.R. Grace & Co.--Conn. ("Grace")
sues defendant Viskase Corporation ("Viskase") for
infringing Grace's patent ("the Ferguson patent"). By
court order, the bench trial of this matter is
trifurcated. The issue of infringement, including the
issue of willfulness, shall be tried first. If necessary,
the issue of validity shall then be tried, and the issue
of damages shall be tried last. The infringement trial
shall begin on October 24, 1991. Discovery closed on
August 30, 1991. Nine motions *in limine* are before
the court. Seven motions are brought by Viskase
and two motions are brought by Grace.

*DISCUSSION*

A motion *in limine* serves to exclude irrelevant or
otherwise inadmissible evidence prior to trial, rather
than relying upon sustained objections at trial. To
exclude evidence before trial, the evidence must
clearly be inadmissible on all possible grounds. A
ruling on a motion *in limine* is subject to change as
events at trial unfold. *Moore v. General Motors
Corp., Delco Remy Div.,* 684 F.Supp. 220
(S.D.Ind.1988). Furthermore, a trial judge has broad
discretion to determine the relevance of proffered
evidence. *Hamling v. United States,* 418 U.S. 87,
124-25 (1974); *United States v. Laughlin,* 772 F.2d
1382, 1392 (7th Cir.1985). Accordingly, it is
inappropriate to exclude evidence as irrelevant
without the context of trial.

*Viskase's Motions in Limine*

(1) Motion to exclude the testimony of Donald W.
Banner

After the close of discovery on August 30, 1991,
Grace designated Donald W. Banner ("Banner") as an
expert witness. Grace has proffered Banner, a patent
attorney, to testify on certain legal issues at both the
infringement and validity trials. Viskase moves to
exclude Banner's testimony on the ground that there
is no need for a patent lawyer to explain patent law to
the court. Viskase is correct. Federal judges are
expected to be experts on federal law. *Vucinich v.
Paine, Webber, Jackson & Curtis, Inc.,* 803 F.2d 454,
461 (9th Cir.1986). Accordingly, the testimony of a
legal expert in federal cases is generally unnecessary.
*Marx & Co. v. Diner's Club, Inc.,* 550 F.2d 505, 510
(2nd Cir.1977), *cert. denied,* 434 U.S. 861 (1977);
*See also Loeb v. Hammond,* 407 F.2d 779, 781 (7th
Cir.1969) (question of legal effect of contract is for
judge, thus expert testimony not permitted).

Both parties are represented by numerous patent
lawyers. Banner's proffered testimony offers no
meaningful assistance to the court as the trier of fact.
Fed.R.Evid. 702. Thus, Viskase's motion to exclude
Banner's testimony is granted.

(2) and (3) Motions to exclude testimony of William
MacKnight and Steven Garland

Also after the close of discovery, Grace designated
Dr. William MacKnight ("MacKnight") and Steven
Garland ("Garland") as technical expert witnesses.
Viskase moves to exclude the testimony of both
witnesses on asserted prejudice to Viskase's trial
preparation. However, Grace has informed the court
that neither MacKnight nor Garland will be called at
the infringement trial. Grace's response at p. 3, n. 3.
Thus, Viskase's motions to exclude the testimony of
MacKnight and Garland are denied as moot for
purposes of the infringement trial. If necessary,
Viskase may renew its motions *in limine* to exclude
MacKnight and Garland at the validity trial. In any
event, Grace shall not be permitted to call either
MacKnight or Garland at the infringement trial.

(4) Motion to exclude the use of deposition
testimony of any of Viskase's witnesses who are
available for trial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 2
Not Reported in F.Supp., 1991 WL 211647 (N.D.Ill.)
(Cite as: 1991 WL 211647 (N.D.Ill.))

**\*2** Viskase moves to prohibit Grace from introducing into evidence any deposition testimony of any of Viskase's witnesses who are available for trial, with the exception of Fed.R.Civ.P. 30(b)(6) ("Rule 30(b)(6)") testimony. Viskase contends that the only other situation in which deposition testimony may be introduced at trial is where a witness is unavailable as defined by Rule 32(a)(3).

Viskase's selective reading of the Federal Rules is inappropriate. Rule 32(a)(1) allows the use of deposition testimony to contradict or impeach a trial witness in accordance with the Federal Rules of Evidence. Furthermore, Rule 32(a)(2) provides that the depositions of an officer, director or managing agent of a corporate party may be used by an adverse party at trial for *any purpose* (emphasis added). *See Fey v. Waltson & Co.,* 493 F.2d 1036, 1045-46 (7th Cir.1974) (deposition of party witness may be introduced as substantive evidence even if party witness is available at trial.) This is in addition to Rule 30(b)(6) deposition testimony, which the adverse party may also use for any purpose.

The proper time to consider the admissibility of deposition testimony is at trial. If Viskase has a problem with Grace's use of deposition testimony, Viskase may object. The court may then properly decide the issue in the context of the trial. Viskase's motion is denied.

(5) Motion to exclude evidence contrary to Grace's admissions made during its Rule 30(b)(6) depositions.

Viskase argues that Grace is bound by its Rule 30(b)(6) deposition testimony as a matter of law. On this basis, Viskase moves to **preclude** Grace from introducing any evidence that is contrary to statements made in its Rule 30(b)(6) depositions.

Once again, Viskase misconstrues the law. It is true that a corporation is "bound" by its Rule 30(b)(6) testimony, in the same sense that any individual deposed under Rule 30(b)(1) would be "bound" by his or her testimony. All this means is that the witness has committed to a position at a particular point in time. It does not mean that the witness has made a judicial admission that formally and finally decides an issue. Deposition testimony is simply evidence, nothing more. Evidence may be explained or contradicted. Judicial admissions, on the other hand, may not be contradicted. *Brown & Root, Inc. v. American Home Assur. Co.,* 353 F.2d 113 (5th Cir.1965), *cert. denied,* 384 U.S. 943 (1966).

Viskase ignores the differences between evidentiary testimony and judicial admissions. [FN1]

If a Grace trial witness makes a statement that contradicts a position previously taken in a Rule 30(b)(6) deposition, then Viskase may impeach that witness with the prior inconsistent statement. Viskase's motion is denied.

(6) Motion to exclude evidence of validity or infringement of any patent claim other than those agreed as representative

In the final pretrial order of September 24, 1991, the parties agreed that claims 1, 2, and 7 of the Ferguson patent are representative of the claims at issue in this suit. On this basis, Viskase argues that Grace is formally committed to presenting evidence only on claims 1, 2, and 7 only. Thus, Viskase seeks to exclude all evidence regarding any patent claim other than these three "representative" claims.

**\*3** Again, Viskase attempts to confuse the issue. Grace agreed that three of its patent claims are "representative" of the numerous patent claims that Grace has consistently maintained throughout the litigation. This does not mean that Grace agreed that these three claims are *exclusive*. The stipulation is clearly not preclusive in nature. Viskase will not now be permitted to bar most of Grace's claims by its strained reading of the pretrial order and of the law. [FN2] Accordingly, Viskase's motion is denied.

(7) Motion to exclude as evidence of willfulness Viskase's activities before the issuance of the Ferguson patent

The issue of Viskase's willfulness in copying the Ferguson patent is an important issue in the infringement trial. However, a party generally cannot be held liable for willfully infringing an unissued patent. *Gustafson, Inc. v. Intersystems Industrial Products, Inc.,* 897 F.2d 508, 510 (Fed.Cir.1990). Viskase concludes from this legal principle that all evidence regarding Viskase's alleged activities prior to the issue of the Ferguson patent is irrelevant, and thus should be excluded.

Viskase's conclusion is baseless. *Gustafson* does not establish a *per se* rule that willful infringement may never be found when manufacture of the accused device began prior to the issuance of a patent. *Id.* Instead, courts must look to the totality of the circumstances in determining willful infringement. *Id.; See also Central Soya Co. v. George A. Hormel*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 3
Not Reported in F.Supp., 1991 WL 211647 (N.D.Ill.)
(Cite as: 1991 WL 211647 (N.D.Ill.))

*& Co., 723 F.2d 1573, 1577 (Fed.Cir.1983).*
Application of the totality of circumstances test has
led several courts to findings of willful infringement
where the infringer began manufacturing before the
issuance of the patent-in-suit. *See e.g. Kaufman Co.
v. Lantech, Inc., 807 F.2d 970, 979 (Fed.Cir.1986);
Pacific Furniture Mfg. Co. v. Preview Furniture
Corp., 800 F.2d 1111, 1114-15 n. 9 (Fed.Cir.1986).*

The proper time to consider the relevance of
evidence is at trial. Accordingly, Viskase's motion is
denied.

*Grace's Motions in Limine*

(1) Motion to exclude the testimony of Harri Brax,
Roger Conant, and Evo Magrini

On August 29 and 30, 1991, Viskase identified Harri
Brax ("Brax"), Roger Conant ("Conant"), and Evo
Magrini ("Magrini") as trial witnesses. Discovery
closed on August 30, 1991. Grace moves to exclude
the testimony of these three witnesses. Grace argues
that Viskase's last-minute disclosure of these
witnesses has prejudiced Grace's trial preparation.

However, Viskase has represented to the court that
these three witnesses will testify only at the validity
trial. [FN3] Therefore, Grace's motion to exclude
Brax, Conant, and Magrini is denied as moot for
purposes of the infringement trial. If necessary,
Grace may renew its motion *in limine* to exclude
these witnesses from the validity trial. In any event,
Viskase shall not be permitted to call Brax, Conant or
Magrini at the infringement trial.

(2) Motion to **preclude** evidence of Viskase's
**reliance** on **opinions** of **counsel**

*4 In the infringement trial, Viskase plans to assert a
defense of **reliance** on the **opinions** of **counsel** ("the
advice **of counsel** defense") against Grace's claim of
willful infringement. Grace moves to **preclude**
Viskase from offering evidence in support of
Viskase's advice **of counsel** defense.

Grace argues that despite several discovery requests,
Viskase has produced only one **opinion of counsel**,
while asserting attorney-client privilege for other
documents relevant to the advice **of counsel** defense.
According to Grace, the assertion of the advice **of
counsel** defense and the production of one **opinion of
counsel** effectively waives any attorney-client
privilege regarding documents relevant to this
defense. On this point, Grace is correct. *Abbott*

*Laboratories v. Baxter Travenol Laboratories, Inc.,
676 F.Supp. 831, 832-833 (N.D.Ill.1987)* (alleged
infringer relying on advice **of counsel** defense must
waive attorney-client privilege as to all relevant
subject matter). Grace argues that since Viskase has
resisted production of documents regarding its advice
**of counsel** defense, Viskase should be **precluded**
from asserting this defense at trial. In the
alternative, Grace moves that the court compel
Viskase to produce all documents relevant to the
advice **of counsel** defense.

Grace's motion *in limine* is procedurally improper.
If Grace contends that Viskase has wrongfully
resisted discovery, then Grace should have filed a
motion to compel. [FN4] Instead of utilizing the
proper procedures to compel discovery, Grace waited
until after discovery closed to file this motion *in
limine* to **preclude** Viskase's advice **of counsel**
defense. Alternatively, Grace attempts to turn this
motion *in limine* into a belated motion to compel.
This is not acceptable. By failing to file a motion to
compel, Grace chose to take an all-or-nothing
approach with this motion *in limine*. Since Grace
cannot have it all, Grace gets nothing. *See Droughn
v. FMC Corp., 74 F.R.D. 639, 642 (E.D.Pa.1977)*.
Accordingly, Grace's motion is denied. [FN5]

*CONCLUSION*
Viskase's motion *in limine* to exclude the testimony
of Donald W. Banner is granted. Viskase's six other
motions *in limine* are denied. Both of Grace's
motions *in limine* are denied.

> FN1. None of the cases cited by Viskase
> support its position. All of these cases use
> the term "binding" in the same sense
> described above. *Clayton Sanders v. Circle
> K. Corp., 137 F.R.D. 292 (D.Ariz.1991)* (a
> corporation cannot be compelled to
> designate a witness under Rule 30(b)(6) if
> that witness lacks authority to bind the
> corporation); *Poitain Tower Cranes, Inc. v.
> Capitol Tower Cranes, Inc., 892 F.2d 74
> (4th Cir.1989)* (affirmed summary judgment
> against corporation based upon
> uncontroverted Rule 30(b)(6) deposition
> statements); *Ierardi v. Lorillard, Inc., No.
> 90-7049, slip op., 1991 WL 158911, 1991
> U.S.Dist. LEXIS 1187 (E.D.Pa. Aug. 20,
> 1991)* (corporation has duty to prepare Rule
> 30(b)(6) designee to give binding answers,
> rather than allow designee to profess
> ignorance until trial); *McDevitt & Street Co.
> v. Marriott Corp., 713 F.Supp. 906*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 4
Not Reported in F.Supp., 1991 WL 211647 (N.D.Ill.)
**(Cite as: 1991 WL 211647 (N.D.Ill.))**

(E.D.Va.1989) (similar to *Ierardi* ).

FN2. Viskase's only cited authority, *Technitrol, Inc. v. Digital Equipment Corp., 62 F.R.D. 91 (N.D.Ill.1973)*, is not on point. *Technitrol* involves a plaintiff that *expressly* agreed to be bound by the determination of five selected claims out of the twenty-four patent claims originally brought.

FN3. Final Pretrial Order, vol. II, tab D2, p. 2. *See also* Viskase's second and third supplemental responses to interrogatory no. 19. These are marked as Attachments B and C in Viskase's response to Grace's motion *in limine.*

FN4. Not surprisingly, all of the relevant cases relied upon by Grace involve motions to compel, not a motion *in limine.* *Abbott Laboratories,* 676 F.Supp. at 831; *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories,* 1987 WL 10988, 1987 U.S. Dist LEXIS 10324 (N.D.Ill. May 15, 1987); *Antonious v. Wilson Sporting Goods Co.,* 1990 WL 106530, U.S. Dist. LEXIS 8359 (N.D.Ill. July 6, 1990).

FN5. In Viskase's response to Grace's motion, Viskase requests that the court *sua sponte* dismiss Grace's willful infringement claim. Apparently, Viskase is attempting to turn its response to Grace's motion *in limine* into a motion for summary judgment. This is also procedurally improper. The court shall decide the willful infringement issue based upon the evidence presented at trial. Viskase's request is denied.

Not Reported in F.Supp., 1991 WL 211647 (N.D.Ill.)


**Motions, Pleadings and Filings (Back to top)**

• 1:90cv05383 (Docket) (Sep. 14, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2006, I electronically filed **DEFENDANTS' COMPENDIUM OF UNREPORTED OPINIONS IN FURTHER SUPPORT OF ITS MOTION TO BIFURCATE AND MOTION FOR PROTECTIVE ORDER** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

I hereby certify that on March 15, 2006, I have forwarded the above-noted document to the following as noted below:

**VIA E-MAIL**

Jesse J. Jenner, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

**VIA E-MAIL & FEDERAL EXPRESS**

Norman H. Beamer, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301

**VIA E-MAIL**

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

PAUL M. LUKOFF (Bar I.D. #96)
DAVID E. BRAND (Bar I.D. #201)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE  19899-1328
TEL: 302-888-6500
E-MAIL:  PMLukoff@prickett.com
            DEBrand@prickett.com