## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPEX CORPORATION,<br><br>       *Plaintiff,*<br><br>       v.<br><br>EASTMAN KODAK COMPANY,<br>ALTEK CORPORATION, and<br>CHINON INDUSTRIES, INC.,<br><br>       *Defendants.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     C.A. No. 04-1373 (KAJ) |

## RESPONSE OF EASTMAN KODAK COMPANY TO PLAINTIFF AMPEX CORPORATION'S FIRST SET OF DOCUMENT REQUESTS (NOS. 1-70)

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Eastman Kodak Company ("Eastman Kodak Company") objects and responds as follows to the First Set of Document Requests (Nos. 1-70) propounded by Plaintiff Ampex Corporation ("Ampex").

## GENERAL RESPONSE

Eastman Kodak Company has responded to Ampex's First Set of Document Requests as it interprets and understands each document request set forth therein. If Ampex subsequently asserts an interpretation of any document request that differs from Eastman Kodak Company's interpretation, Eastman Kodak Company reserves the right to supplement, revise, amend, or modify its objections and/or responses.

-1-

## GENERAL OBJECTIONS

Eastman Kodak Company generally objects to Ampex's First Set of Document Requests as follows. These general objections shall be and hereby are, incorporated by reference into each response and specific objection below as though fully set forth therein.

1.      Eastman Kodak Company objects to Ampex's First Set of Document Requests to the extent that it is overly broad, unreasonably burdensome, or seeks discovery of materials that are not relevant to the claim or defense of any party or otherwise reasonably calculated to lead to the discovery of admissible evidence.

2.      Eastman Kodak Company objects to Ampex's First Set of Document Requests to the extent that it calls for Eastman Kodak Company to do more than is required under the Federal Rules of Civil Procedure, the Local Rules, or other applicable law.

3.      Eastman Kodak Company objects to Ampex's First Set of Document Requests to the extent that it seeks discovery of materials that are protected from disclosure by the attorney-client privilege, work product doctrine, or any other applicable privilege. Any inadvertent disclosure of such protected information shall not be deemed to be a waiver of any privilege, immunity, or other grounds for nondisclosure with respect to such information.

4.      Eastman Kodak Company objects to Ampex's First Set of Document Requests to the extent it purports to seek discovery of materials outside the possession, custody, or control of Eastman Kodak Company.

5.      Eastman Kodak Company objects to Ampex's First Set of Document Requests to the extent that it requests documents that are already in Ampex's possession, custody, or control

US1DOCS 5343150v1

**A-53**

or that are already contained in the public domain, or that are otherwise equally available to all parties.

6.    Eastman Kodak Company objects to Ampex's First Set of Document Requests to the extent that it seeks documents produced or made available for inspection during the ITC Investigation.

7.    Eastman Kodak Company objects to Ampex's First Set of Document Requests on the grounds that it seeks proprietary, confidential, or trade secret information. Eastman Kodak Company objects to producing confidential proprietary information owned by third parties that may be in Eastman Kodak Company's possession subject to a non-disclosure agreement or similar agreement. Subject to further agreement between the parties concerned, Eastman Kodak Company will produce responsive documents marked in accordance with the pending Protective Order in this litigation.

8.    Eastman Kodak Company reserves all objections that may be available to it at any hearing or trial or on any motion to the use or admissibility of any material produced. The production of any material does not constitute an admission by Eastman Kodak Company that such material or the information contained therein is relevant to this action or admissible in evidence.

9.    Eastman Kodak Company's objections and responses do not constitute admissions relative to the existence of any documents or information, to the relevance or admissibility of any documents or information, to the relevance or admissibility of any documents produced, or to the truth or accuracy of any statement or characterization contained in

-3-

Ampex's requests. All objections as to relevance, authenticity or admissibility of any document are expressly reserved.

10. Eastman Kodak Company reserves the right to supplement, revise, amend, or modify its responses or to supply additional documents or information if such further material becomes available in the course of its ongoing diligent inquiries, through discovery, or otherwise. These responses should not be construed as, and do not constitute, a waiver of Eastman Kodak Company's right to adduce additional facts at any hearing in this action.

11. Eastman Kodak Company objects to the "Instructions" and "Definitions" in Ampex's First Set of Document Requests to the extent they deviate from the Federal Rules of Civil Procedure, the Local Rules, or other applicable law.

12. Eastman Kodak Company objects to the "Instructions" Ampex purports to impose upon it to the extent they go beyond the requirements of the Federal Rules of Civil Procedure. Without limitation, the "Instructions" are improper in that they:

    (a)    purport to require Eastman Kodak Company's production of privileged information;

    (b)    purport to require Eastman Kodak Company to provide a burdensome detailing of privileged documents and information withheld, beyond the requirements imposed by the Federal Rules of Civil Procedure; and

    (c)    purport to require Eastman Kodak Company to provide a burdensome detailing of documents which no longer exist and which are beyond Eastman Kodak Company's possession, custody or control, again beyond the requirements imposed by the Federal Rules of Civil Procedure.

13. Eastman Kodak Company objects to the "Definitions" recited in Ampex's First Set of Document Requests on the grounds that the definitions are overly broad and unreasonably burdensome. In particular, Eastman Kodak Company objects as follows:

-4-

(a) The definitions of the terms "Kodak" and "Chinon" are overly broad and call for the production of privileged material. The definitions of these terms include entities and individuals who are not within Eastman Kodak Company's control and include within their scope relationships that both wholly pre-date and wholly post-date the events in suit. For purposes of responding to Ampex's First Set of Document Requests, Eastman Kodak Company excludes from the definitions of these terms attorneys, entities and individuals who are beyond Eastman Kodak Company's control, entities and individuals whose relationship with Eastman Kodak Company either pre-date or post-date the events in suit, and entities and individuals that had no involvement in the events at issue.

(b) The definitions of the terms "Altek," "Funai," and "TI," are overly broad. The definitions of these terms include within their scope relationships that both wholly pre-date and wholly post-date the events in suit, and entities and individuals that had no involvement in the events at issue.

(c) The definition of the term "documents" is overly broad and unreasonably burdensome to the extent it deviates from the requirements of the Federal Rules of Civil Procedure. For purposes of responding to Ampex's First Set of Document Requests, Eastman Kodak Company gives the term "document" its ordinary meaning contemplated by the Federal Rules of Civil Procedure.

(d) The definition of the terms "Digital Image Storage and Retrieval Device" and "Kodak Device" are overly broad and unreasonably burdensome to the extent that their use calls for Eastman Kodak Company to produce documents related to devices other than the CX4200, CX4210, CX4230, CX4300, CX4310, CX6200, CX6230, CX6330, CX6445, CX7220, CX7300, CX7310, CX7330, CX7430, CX7525, CX7530, DX3900, DX4900, DX6340, DX6440, DX6490, DX7440, DX7590, DX7630, LS420, LS443, LS743, LS753, Z700, Z730, Z740, Z760, Z7590, C300, C310, C330, C340, C360, V530, V550, Easyshare-One, DCS Pro 14n, DCS Pro SLR/c, DCS Pro SLR/n, DCS Proback Plus, and DCS Proback 645 models. Ampex has not accused any other camera models in its Second Amended Complaint and such other models, therefore, are not relevant to this litigation or any claim or defense therein.

(e) The definitions of the terms "Exif," "DCF," "Thumbnail," "Review mode," "Multi-up mode," "Zoom mode," "TIFF," "JPEG," "RAW," "ERI," "DCR," "OEM," "ODM," "Accessories," "Buffer for Clusters," "Source file," "Line number(s)," "CFA buffer," "DSP," "JPEG encoded data," "Primary Image," "APP1 Segment," "EXIF module object," "Compression Ratio," "JPEG Buffer," "Memory Card," and "Most current version" are overly broad and unreasonably burdensome to the extent their use calls for Eastman Kodak Company to produce documents related to devices other than the CX4200, CX4210, CX4230, CX4300, CX4310, CX6200, CX6230, CX6330, CX6445, CX7220, CX7300, CX7310, CX7330, CX7430, CX7525, CX7530, DX3900, DX4900, DX6340, DX6440, DX6490, DX7440, DX7590, DX7630, LS420, LS443, LS743, LS753, Z700, Z730, Z740, Z760, Z7590, C300, C310, C330, C340, C360, V530, V550,

-5-

Easyshare-One, DCS Pro 14n, DCS Pro SLR/c, DCS Pro SLR/n, DCS Proback Plus, and DCS Proback 645 models. Ampex has not accused any other camera models in its Second Amended Complaint and such other models, therefore, are not relevant to this litigation or any claim or defense therein.

(f)   Eastman Kodak Company further objects to the definitions of the terms "Exif," "DCF," "Thumbnail," "Review mode," "Multi-up mode," "Zoom mode," "TIFF," "JPEG," "ERI," "DCR," "Buffer for Clusters," "CFA buffer," "JPEG encoded data," "Primary Image," "APP1 Segment," "EXIF module object," "Compression Ratio," and "JPEG Buffer," to the extent the definitions purport to find support in, rely on, or summarize documents referred to therein. The documents referenced in the definitions speak for themselves.

(g)   Eastman Kodak Company further objects to the definitions of the terms "Exif," "DFC," "Thumbnail," "Review mode," "Multi-up mode," "Zoom mode," "TIFF," "JPEG," "RAW," "ERI," "DCR," "Accessories," "Buffer for Clusters," "Source file," "Line number(s)," "CFA buffer," "DSP," "JPEG encoded data," "Primary Image," "APP1 Segment," "EXIF module object," "Compression Ratio," "JPEG Buffer," and "Memory Card" to the extent they purport to define the features, characteristics, components, modes, incorporated standards, image data of, or data path in the accused models.

14.   Eastman Kodak Company's representation that it will produce responsive documents means that Eastman Kodak Company will make a diligent, good faith effort to locate responsive documents and will produce non-privileged, responsive documents found. Eastman Kodak Company's investigation and efforts are ongoing, and Eastman Kodak Company reserves the right to supplement its objections and responses to Ampex's First Set of Document Requests.

15.   Eastman Kodak Company specifically incorporates herein its objections to the First Set of Interrogatories Propounded by Ampex.

16.   The phrase "will produce" should be read to mean "will produce responsive, non-privileged documents in Eastman Kodak Company's possession, custody, or control."

USIDOCS 5343150v1

17. Eastman Kodak Company objects to producing any documents in response to Ampex's First Set of Document Requests dated after or relating to any period of time after October 21, 2004.

18. Eastman Kodak Company objects to Ampex's First Set of Document Requests because it was served before the parties' Rule 26(f) conference in violation of Fed. R. Civ. P. 26(d). Pursuant to Fed. R. Civ. P. 26, Eastman Kodak Company's response to Ampex's First Set of Document Requests is not due until November 3, 2005 at the earliest.

19. The documents to be produced will be produced at a mutually convenient time and place.

20. Each of the foregoing general objections is incorporated into the specific responses set forth below.

## SPECIFIC OBJECTIONS AND RESPONSES

### DOCUMENT REQUEST NO. 1:

An electronically searchable copy of the most current version of the commented source code for each Kodak Device.

### RESPONSE TO REQUEST NO. 1:

Eastman Kodak Company objects to this Request to the extent it seeks documents produced or made available for inspection during the ITC Investigation.

Subject to and without waiving the foregoing General and Specific objections, Eastman Kodak Company will produce non-privileged documents responsive to this Request, to the extent that such documents exist and were not produced or made available for inspection during the ITC Investigation.

-7-

that such documents exist and were not produced or made available for inspection during the

ITC Investigation.

**DOCUMENT REQUEST NO. 66:**

To the extent not produced in response to other requests, all documents relating to the prosecution of the '335 Patent.

**RESPONSE TO REQUEST NO. 66:**

Eastman Kodak Company objects to this Request because it calls for the production of

documents and materials protected by the attorney-client privilege, work product doctrine, or

other applicable privilege.

Subject to and without waiving the foregoing General and Specific objections, Eastman

Kodak Company will produce non-privileged documents responsive to this Request, to the extent

that such documents exist and were not produced or made available for inspection during the

ITC Investigation.

**DOCUMENT REQUEST NO. 67:**

All documents constituting, referring or relating to any oral or written study, analysis or opinion made at any time by or for anyone with respect to the patentability, validity, enforceability or infringement of the Patent-In-Suit.

**RESPONSE TO REQUEST NO. 67:**

Eastman Kodak Company objects to this Request because it calls for the production of

documents and materials protected by the attorney-client privilege, work product doctrine, or

other applicable privilege.

Eastman Kodak Company further objects to this Request because it improperly attempts

to shift the burden of proof in regard to willful infringement. Ampex has the burden of proving

that any alleged infringement by Eastman Kodak Company was willful. Eastman Kodak

Company cannot and is not required to decide whether to produce an opinion of counsel as a

-43-

defense to an allegation of willful infringement until Ampex has produced evidence to meet its burden.

**DOCUMENT REQUEST NO. 68:**

For any documents Kodak produces that include data, reports, or portions of an electronic database, documents sufficient to fully define all terms that are used therein.

**RESPONSE TO REQUEST NO. 68:**

Eastman Kodak Company objects to this request as overly broad and unduly burdensome.

Eastman Kodak Company further objects to this Request as ambiguous.

**DOCUMENT REQUEST NO. 69:**

All documents referred to, used in responding to, or identified in Kodak's responses to any of the First Set of Interrogatories served concurrently herewith.

**RESPONSE TO REQUEST NO. 69:**

Eastman Kodak Company objects to this Request because it calls for the production of documents and materials protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to and without waiving the foregoing General and Specific objections, Eastman Kodak Company will produce non-privileged documents responsive to this Request, to the extent that such documents exist and were not produced or made available for inspection during the ITC Investigation.

**DOCUMENT REQUEST NO. 70:**

For all documents produced or identified by Kodak which are written in a language other than English, all English translations thereof.

**RESPONSE TO REQUEST NO. 70:**

Eastman Kodak Company objects to this Request because it calls for the production of documents and materials protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

-44-

Subject to and without waiving the foregoing General and Specific objections, Eastman

Kodak Company will produce existing English translations, translated by Eastman Kodak

Company in the normal course business, to the extent that such documents exist and were not

produced or made available for inspection during the ITC Investigation.

As to the objections,

EASTMAN KODAK COMPANY.

William P. DiSalvatore
S. Calvin Walden
Rebecca M. McCloskey
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

William F. Lee
Michael J. Summersgill
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6000
Fax: (617) 526-5000
*Counsel for Defendant Eastman Kodak Company*

October 28, 2005

-45-

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing RESPONSE OF EASTMAN KODAK COMPANY TO PLAINTIFF AMPEX CORPORATION'S FIRST SET OF DOCUMENT REQUESTS (NOS. 1-70) were served this 28th day of October 2005, as follows:

**COUNSEL FOR PLAINTIFF
AMPEX CORPORATION:**

Jesse J. Jenner
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
E-mail: jesse.jenner@ropesgray.com
**(VIA FEDERAL EXPRESS AND EMAIL – 1 COPY)**

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301
E-mail: Norman.Beamer@ropesgray.com
**(VIA EMAIL – 1 COPY)**

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
E-mail: jblumenfled@mnat.com
**(VIA EMAIL – 1 COPY)**

Rebecca M. McCloskey

-46-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1373 (KAJ) |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| ALTEK CORPORATION, and | ) | |
| CHINON INDUSTRIES, INC., | ) | |
| | ) | |
| *Defendants.* | ) | |

**RESPONSE OF ALTEK CORPORATION TO PLAINTIFF AMPEX CORPORATION'S
FIRST SET OF DOCUMENT REQUESTS (NOS. 1-47)**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Altek Corporation

("Altek") objects and responds as follows to the First Set of Document Requests (Nos. 1-47)

propounded by Plaintiff Ampex Corporation ("Ampex").

**GENERAL RESPONSE**

Altek has responded to Ampex's First Set of Document Requests as it interprets and

understands each document request set forth therein. If Ampex subsequently asserts an

interpretation of any document request that differs from Altek's interpretation, Altek reserves the

right to supplement, revise, amend, or modify its objections and/or responses.

**GENERAL OBJECTIONS**

1.    Altek objects to Ampex's First Set of Document Requests to the extent that it is

overly broad, unreasonably burdensome, or seeks discovery of materials that are not relevant to

USIDOCS 5345835v1

**A-63**

the claim or defense of any party or otherwise reasonably calculated to lead to the discovery of admissible evidence.

2.      Altek objects to Ampex's First Set of Document Requests to the extent that it calls for Altek to do more than is required under the Federal Rules of Civil Procedure, the Local Rules, or other applicable law.

3.      Altek objects to Ampex's First Set of Document Requests to the extent that it seeks discovery of materials that are protected from disclosure by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Any inadvertent disclosure of such protected information shall not be deemed to be a waiver of any privilege, immunity, or other grounds for nondisclosure with respect to such information.

4.      Altek objects to Ampex's First Set of Document Requests to the extent it purports to seek discovery of materials outside the possession, custody, or control of Altek.

5.      Altek objects to Ampex's First Set of Document Requests to the extent that it calls for the production of documents other than those referring or relating to the accused Kodak cameras manufactured by Altek.

6.      Altek objects to Ampex's First Set of Document Requests to the extent that it requests documents that are already in Ampex's possession, custody, or control or that are already contained in the public domain, or that are otherwise equally available to all parties.

7.      Altek objects to Ampex's First Set of Document Requests to the extent that it seeks documents produced or made available for inspection during the ITC Investigation.

USIDOCS 5345835v1

8.    Altek objects to Ampex's First Set of Document Requests on the grounds that it seeks proprietary, confidential, or trade secret information. Altek objects to producing confidential proprietary information owned by third parties that may be in Altek's possession subject to a non-disclosure agreement or similar agreement. Subject to further agreement between the parties concerned, Altek will produce responsive documents marked in accordance with the pending Protective Order in this litigation.

9.    Altek reserves all objections that may be available to it at any hearing or trial or on any motion to the use or admissibility of any material produced. The production of any material does not constitute an admission by Altek that such material or the information contained therein is relevant to this action or admissible in evidence.

10.    Altek's objections and responses do not constitute admissions relative to the existence of any documents or information, to the relevance or admissibility of any documents or information, to the relevance or admissibility of any documents produced, or to the truth or accuracy of any statement or characterization contained in Ampex's requests. All objections as to relevance, authenticity or admissibility of any document are expressly reserved.

11.    Altek reserves the right to supplement, revise, amend, or modify its responses or to supply additional documents or information if such further material becomes available in the course of its ongoing diligent inquiries, through discovery, or otherwise. These responses should not be construed as, and do not constitute, a waiver of Altek's right to adduce additional facts at any hearing in this action.

3

12.    Altek objects to the "Instructions" and "Definitions" in Ampex's First Set of Document Requests to the extent they deviate from the Federal Rules of Civil Procedure, the Local Rules, or other applicable law.

13.    Altek objects to the "Instructions" Ampex purports to impose upon it to the extent they go beyond the requirements of the Federal Rules of Civil Procedure. Without limitation, the "Instructions" are improper in that they:

    (a)    purport to require Altek's production of privileged information;

    (b)    purport to require Altek to provide a burdensome detailing of privileged documents and information withheld, beyond the requirements imposed by the Federal Rules of Civil Procedure; and

    (c)    purport to require Altek to provide a burdensome detailing of documents which no longer exist and which are beyond Altek's possession, custody or control, again beyond the requirements imposed by the Federal Rules of Civil Procedure.

14.    Altek objects to the "Definitions" recited in Ampex's First Set of Document Requests on the grounds that the definitions are overly broad and unreasonably burdensome. In particular, Altek objects as follows:

    (a) The definition of the term "Altek" is overly broad and calls for the production of privileged material. The definition of this term includes entities and individuals who are not within Altek's control and include within its scope relationships that both wholly pre-date and wholly post-date the events in suit. For purposes of responding to Ampex's First Set of Document Requests, Altek excludes from the definitions of this term attorneys, entities and individuals who are beyond Altek's control, entities and individuals whose relationship with Altek either pre-date or post-date the events in suit, and entities and individuals that had no involvement in the events at issue.

    (b) The definitions of the terms "Eastman Kodak Company," "Chinon," "Funai," and "TI," are overly broad. The definitions of these terms include within their scope relationships that both wholly pre-date and wholly post-date the events in suit, and entities and individuals that had no involvement in the events at issue.

4

(c) The definition of the term "documents" is overly broad and unreasonably burdensome to the extent it deviates from the requirements of the Federal Rules of Civil Procedure. For purposes of responding to Ampex's First Set of Document Requests, Altek gives the term "document" its ordinary meaning contemplated by the Federal Rules of Civil Procedure.

(d) The definition of the terms "Digital Image Storage and Retrieval Device," "Kodak Device," and "Altek-Kodak Device" are overly broad and unreasonably burdensome to the extent that their use calls for Altek to produce documents related to devices other than the CX4200, CX4210, CX4230, CX4300, CX4310, CX6200, CX6230, CX6330, CX6445, CX7220, CX7300, CX7310, CX7330, CX7430, CX7525, CX7530, DX3900, DX4900, DX6340, DX6440, DX6490, DX7440, DX7590, DX7630, LS420, LS443, LS743, LS753, Z700, Z730, Z740, Z760, Z7590, C300, C310, C330, C340, C360, V530, V550, Easyshare-One, DCS Pro 14n, DCS Pro SLR/c, DCS Pro SLR/n, DCS Proback Plus, and DCS Proback 645 models. Ampex has not accused any other camera models in its Second Amended Complaint and such other models, therefore, are not relevant to this litigation or any claim or defense therein.

(e) The definitions of the terms "Exif," "DCF," "Thumbnail," "Review mode," "Multi-up mode," "Zoom mode," "TIFF," "JPEG," "RAW," "ERI," "DCR," "OEM," "ODM," "Accessories," "Buffer for Clusters," "Source file," "Line number(s)," "CFA buffer," "DSP," "JPEG encoded data," "Primary Image," "APP1 Segment," "EXIF module object," "Compression Ratio," "JPEG Buffer," "Memory Card," and "Most current version" are overly broad and unreasonably burdensome to the extent their use calls for Altek to produce documents related to devices other than the CX4200, CX4210, CX4230, CX4300, CX4310, CX6200, CX6230, CX6330, CX6445, CX7220, CX7300, CX7310, CX7330, CX7430, CX7525, CX7530, DX3900, DX4900, DX6340, DX6440, DX6490, DX7440, DX7590, DX7630, LS420, LS443, LS743, LS753, Z700, Z730, Z740, Z760, Z7590, C300, C310, C330, C340, C360, V530, V550, Easyshare-One, DCS Pro 14n, DCS Pro SLR/c, DCS Pro SLR/n, DCS Proback Plus, and DCS Proback 645 models. Ampex has not accused any other camera models in its Second Amended Complaint and such other models, therefore, are not relevant to this litigation or any claim or defense therein.

(f) Altek further objects to the definitions of the terms "Exif," "DCF," "Thumbnail," "Review mode," "Multi-up mode," "Zoom mode," "TIFF," "JPEG," "ERI," "DCR," "Buffer for Clusters," "CFA buffer," "JPEG encoded data," "Primary Image," "APP1 Segment," "EXIF module object," "Compression Ratio," and "JPEG Buffer," to the extent the definitions purport to find support in, rely on, or summarize documents referred to therein. The documents referenced in the definitions speak for themselves.

(g) Altek further objects to the definitions of the terms "Exif," "DFC," "Thumbnail," "Review mode," "Multi-up mode," "Zoom mode," "TIFF," "JPEG," "RAW," "ERI," "DCR," "Accessories," "Buffer for Clusters," "Source file," "Line

US1DOCS 5345835v1

number(s)," "CFA buffer," "DSP," "JPEG encoded data," "Primary Image,"
"APP1 Segment," "EXIF module object," "Compression Ratio," "JPEG Buffer,"
and "Memory Card" to the extent they purport to define the features,
characteristics, components, modes, incorporated standards, image data of, or data
path in the accused models.

15.    Altek's representation that it will produce responsive documents means that Altek

will make a diligent, good faith effort to locate responsive documents and will produce non-

privileged, responsive documents found.  Altek's investigation and efforts are ongoing, and

Altek reserves the right to supplement its objections and responses to Ampex's First Set of

Document Requests.

16.    Altek specifically incorporates herein its objections to the First Set of

Interrogatories Propounded by Ampex.

17.    The phrase "will produce" should be read to mean "will produce responsive, non-

privileged documents in Altek's possession, custody, or control."

18.    Altek objects to producing any documents in response to Ampex's First Set of

Document Requests dated after or relating to any period of time after October 21, 2004.

19.    Altek objects to Ampex's First Set of Document Requests because it was served

before the parties' Rule 26(f) conference in violation of Fed. R. Civ. P. 26(d).  Pursuant to Fed.

R. Civ. P. 26, Altek's response to Ampex's First Set of Document Requests is not due until

November 3, 2005 at the earliest.

20.    The documents to be produced will be produced at a mutually convenient time

and place.

6

21.    Each of the foregoing general objections is incorporated into the specific

responses set forth below.

## DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 1:

An electronically searchable copy of the most current version of the commented source code for each Altek Kodak Device.

### RESPONSE TO DOCUMENT REQUEST NO. 1:

Altek objects to this Request to the extent it seeks documents produced or made available

for inspection during the ITC Investigation.

Subject to and without waiving the foregoing General and Specific objections, Altek will

produce non-privileged documents responsive to this Request, to the extent that such documents

exist and were not produced or made available for inspection during the ITC Investigation.

### DOCUMENT REQUEST NO. 2:

The most current version of the User's Guide (an example of which was produced in the ITC Investigation as document number AX38005-59) for each Altek Kodak Device.

### RESPONSE TO DOCUMENT REQUEST NO. 2:

Altek objects to this Request to the extent it seeks documents produced or made available

for inspection during the ITC Investigation.

Subject to and without waiving the foregoing General and Specific objections, Altek will

produce non-privileged documents responsive to this Request, to the extent that such documents

exist and were not produced or made available for inspection during the ITC Investigation.

### DOCUMENT REQUEST NO. 3:

The most current version of the schematic diagrams for each Altek Kodak Device.

7

Altek further objects to this Request because it calls for the production of documents and

materials protected by the attorney-client privilege, work product doctrine, or other applicable

privilege.

Altek further objects to this Request because it calls for a legal conclusion.

Subject to and without waiving the foregoing General and Specific objections, Altek will

produce non-privileged documents responsive to this Request, to the extent that such documents

exist and were not produced or made available for inspection during the ITC Investigation.

**DOCUMENT REQUEST NO. 43:**

All documents referring or relating to any joint defense agreement(s) that Altek has
entered into or participated in relating to the Patent-In-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 43:**

Altek objects to this Request because it calls for the production of documents and

materials protected by the attorney-client privilege, work product doctrine, or other applicable

privilege.

**DOCUMENT REQUEST NO. 44:**

All documents constituting, referring or relating to any oral or written study, analysis or
opinion made at any time by or for anyone with respect to the patentability, validity,
enforceability or infringement of the Patent-In-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 44:**

Altek objects to this Request because it calls for the production of documents and

materials protected by the attorney-client privilege, work product doctrine, or other applicable

privilege.

Altek further objects to this Request because it improperly attempts to shift the burden of

proof in regard to willful infringement.  Ampex has the burden of proving that any alleged

infringement by Altek was willful.  Altek cannot and is not required to decide whether to

28

produce an opinion of counsel as a defense to an allegation of willful infringement until Ampex
has produced evidence to meet its burden.

**DOCUMENT REQUEST NO. 45:**

For any documents Altek produces that include data, reports, or portions of an electronic
database, documents sufficient to fully define all terms that are used therein.

**RESPONSE TO DOCUMENT REQUEST NO. 45:**

Altek objects to this request as overly broad and unduly burdensome.

Altek further objects to this Request as ambiguous.

**DOCUMENT REQUEST NO. 46:**

All documents referred to, used in responding to, or identified in Altek's responses to any
of the First Set of Interrogatories served concurrently herewith.

**RESPONSE TO DOCUMENT REQUEST NO. 46:**

Altek objects to this Request because it calls for the production of documents and

materials protected by the attorney-client privilege, work product doctrine, or other applicable

privilege.

Subject to and without waiving the foregoing General and Specific objections, Altek will

produce non-privileged documents responsive to this Request, to the extent that such documents

exist and were not produced or made available for inspection during the ITC Investigation.

**DOCUMENT REQUEST NO. 47:**

For all documents produced or identified by Altek which are written in a language other
than English, all English translations thereof.

**RESPONSE TO DOCUMENT REQUEST NO. 47:**

Altek objects to this Request because it calls for the production of documents and

materials protected by the attorney-client privilege, work product doctrine, or other applicable

privilege.

29

Subject to and without waiving the foregoing General and Specific objections, Altek will produce existing English translations, translated by Altek in the normal course business, to the extent that such documents exist and were not produced or made available for inspection during the ITC Investigation.

As to the objections,

ALTEK CORPORATION.

William P. DiSalvatore
S. Calvin Walden
Rebecca M. McCloskey
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

William F. Lee
Michael J. Summersgill
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6000
Fax: (617) 526-5000
*Counsel for Defendant Altek Corporation*

October 28, 2005

30

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing RESPONSE OF ALTEK CORPORATION TO PLAINTIFF AMPEX CORPORATION'S FIRST SET OF DOCUMENT REQUESTS (NOS. 1-47) were served this 28th day of October 2005, as follows:

**COUNSEL FOR PLAINTIFF**
**AMPEX CORPORATION:**

Jesse J. Jenner
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
E-mail: jesse.jenner@ropesgray.com
**(VIA FEDERAL EXPRESS AND EMAIL – 1 COPY)**

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA  94301
E-mail: Norman.Beamer@ropesgray.com
**(VIA EMAIL – 1 COPY)**

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
E-mail: jblumenfeld@mnat.com
**(VIA EMAIL – 1 COPY)**

Rebecca M. McCloskey

31

# SEALED DOCUMENTS

# A-74 to A-101

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPEX CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-1373-KAJ |
| | ) |
| EASTMAN KODAK COMPANY, | ) |
| ALTEK CORPORATION and CHINON | ) |
| INDUSTRIES, INC., | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF AMPEX CORPORATION'S SIXTH SET OF DOCUMENT REQUESTS TO DEFENDANT EASTMAN KODAK COMPANY (NOS. 143-158)

Pursuant to Rules 26 and 34, Fed. R. Civ. P., Plaintiff Ampex Corporation ("Ampex"), by its undersigned attorneys, hereby requests that Defendant Eastman Kodak Company ("Kodak") produce, within thirty days after service of these Requests, all documents and things in its possession, custody or control that are responsive to the requests listed below. Ampex requests that production be made at the offices of Ropes & Gray, 525 University Avenue, Palo Alto, California 94301, or at such other time and place as may be agreed upon by counsel for the parties.

The obligation imposed by these requests is continuing and, if after answering these requests Kodak acquires any additional or corrective information called for by these requests, Kodak must serve upon Ampex amended or supplemental responses promptly after Kodak becomes aware of such knowledge or information.

## DEFINITIONS AND INSTRUCTIONS

A.    Ampex hereby incorporates the Definitions and Instructions set forth in Ampex's First through Fourth Set of Document Requests to Defendant Eastman Kodak Company, except that the definition of "Kodak Device" is revised as follows:

B.    "Kodak Device" means any Digital Image Storage and Retrieval Device, such as digital cameras and other digital electronic devices, that generates, stores and retrieves digital images, that has ever been made, sold or offered for sale in, or imported or sold for importation into the U.S., by or on behalf of Kodak, including without limitation, all versions of Kodak's CX4200, CX4210, CX4230, CX4300, CX4310, CX6200, CX6230, CX6330, CX6445, CX7220, CX7300, CX7310, CX7330, CX7430, CX7525, CX7530, DC4800, DX3900, DX4900, DX6340, DX6440, DX6490, DX7440, DX7590, DX7630, LS420, LS443, LS743, LS753, Z700, Z730, Z740, Z760, Z7590, Z650, C300, C310, C315, C330, C340, C360, C530, C603, C643, C663, V530, V550, V570, Easyshare-One, DCS Pro 14n, DCS Pro SLR/c, DCS Pro SLR/n, DCS Proback Plus, DCS Proback 645, CD33, CD40, CD43, CW330, CD50, CW330 models.

## DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 143

To the extent not already produced, all documents identified in Kodak's responses to Ampex's interrogatories served in Delaware.

### DOCUMENT REQUEST NO. 144

All documents that Kodak will rely on to support any contention relating to whether or not any of the following products infringe any claim of the '121 patent, including without limitation any contention that such products are acceptable non-infringing substitutes to the inventions claimed in the '121 patent: Electro-Optic M1.A Camera, Tactical Camera, Hawkeye II Imaging Accessory Camera, D-5000, IRIS, Professional Camera Back, Professional DCS

2

Camera, DCS 100, DCS200, AP NC2000, DCS 4XX, EOS-DCS X, DCS465, DCS 4XX GPS, DCS 4XX CIR, DCS 425, DCS 435, and SCS 1000.

## DOCUMENT REQUEST NO. 145

All documents that Kodak will rely on to support any contention that any claim of the '121 patent is invalid.

## DOCUMENT REQUEST NO. 146

All documents that Kodak will rely on to support any contention that the '121 patent is unenforceable.

## DOCUMENT REQUEST NO. 147

All documents that Kodak will rely on to support any contention that any of the Kodak Devices do not infringe any claim of the '121 patent.

## DOCUMENT REQUEST NO. 148

A complete copy of the most recent version of the Kirin User Interface Specification.

## DOCUMENT REQUEST NO. 149

All documents referring or relating to the Scitex Response 300 systems.

## DOCUMENT REQUEST NO. 150

All documents referring or relating to the Hell Chromacom system.

## DOCUMENT REQUEST NO. 151

All documents identifying payments made to Kodak from Ability Enterprise, Altek, Asia Optical, Canon, Casio, Flashpoint, Funai, Garmin, Hewlett Packard, Hitachi, Intel, Konica Minolta, Kyocera, Lemelson, Levine, NEC, Olympus, Poloroid, Ricoh, Samsung, Sanyo, Skanhex, Sharp, IPEC under the agreements Kodak has produced in this action.

3

## DOCUMENT REQUEST NO. 158

All documents concerning whether the '121 patent was considered in connection with the prosecution of U.S. Patent No. 5,164,831.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Attorneys for Plaintiff Ampex Corporation*

**OF COUNSEL:**

Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

January 27, 2006
504028

5

## CERTIFICATE OF SERVICE

I hereby certify that copies of the forgoing were caused to be served this 27th day

of January, 2006 upon the following in the manner indicated:

### BY HAND DELIVERY

Paul M. Lukoff, Esquire
David E. Brand, Esquire
Prickett, Jones & Elliott, P.A
1310 King Street
Wilmington, DE  19899

### BY FEDERAL EXPRESS

Michael J. Summersgill, Esquire
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109

S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY  10022

Julia Heaney (#3052)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| ALTEK CORPORATION and CHINON | ) | |
| INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF AMPEX CORPORATION'S FOURTH SET OF DOCUMENT REQUESTS TO DEFENDANT ALTEK COMPANY (NOS. 86-153)

Pursuant to Rules 26 and 34, Fed. R. Civ. P., Plaintiff Ampex Corporation ("Ampex"), by its undersigned attorneys, hereby requests that Defendant Altek Corporation ("Altek") produce, within thirty days after service of this Request, all documents and things in its possession, custody or control that are responsive to the requests listed below. Ampex requests that production be made at the offices of Ropes & Gray, 525 University Avenue, Palo Alto, California 94301, or at such other time and place as may be agreed upon by counsel for the parties.

The obligation imposed by these requests is continuing and, if after answering these requests Altek acquires any additional or corrective information called for by these requests, Altek must serve upon Ampex amended or supplemental responses promptly after Altek becomes aware of such knowledge or information.

E.    If a document once existed and has subsequently been lost, destroyed, or is otherwise missing, please identify the document and state the details concerning the loss of such document.

F.    If you claim that the attorney-client privilege or any other privilege, protection or immunity is applicable to any written or electronic communication, you shall specify: (a) the name of each individual who signed it or under whose name it was issued, (b) the name of each individual to whom it was addressed and the name of the individual who received it, (c) the date the document bears, (d) the title of the document, and (e) a description of the contents of the document. You shall also identify each and every person who prepared or participated in the preparation of the communication; state the present location of the communication and all copies thereof; identify each and every person having possession, custody or control of the document and all copies thereof; state the privilege or protection claimed; and provide sufficient further information concerning the communication and the circumstances thereof to explain the claim of privilege or protection and to permit the adjudication of the propriety of the claim.

## DEFINITIONS

As used herein, the following terms are intended to have the meanings indicated:

A.    "Kodak" refers to Defendant Eastman Kodak Company, and any and all of its: (i) divisions, departments, branches, domestic and foreign subsidiaries, business units, joint-venture entities, parents, partners, OEMs, predecessors-in-interest, successors-in-interest, or any other related or affiliated entities; (ii) its present and former officials, executives, directors, officers, agents, employees, consultants, attorneys; and (iii) all others acting or purporting to act on behalf of any of the foregoing.

3

B.    "Altek" refers to Defendant Altek Corporation, and any and all of its: (i) divisions, departments, branches, domestic and foreign subsidiaries, business units, joint-venture entities, parents, partners, OEMs, predecessors-in-interest, successors-in-interest, or any other related or affiliated entities, including without limitation, Altek Lab, Inc.; (ii) its present and former officials, executives, directors, officers, agents, employees, consultants, attorneys; and (iii) all others acting or purporting to act on behalf of any of the foregoing.

C.    "Hyperstone" refers to Hyperstone AG, and any and all of its: (i) divisions, departments, branches, domestic and foreign subsidiaries, business units, joint-venture entities, parents, partners, OEMs, predecessors-in-interest, successors-in-interest, or any other related or affiliated entities; (ii) its present and former officials, executives, directors, officers, agents, employees, consultants, attorneys; and (iii) all others acting or purporting to act on behalf of any of the foregoing including, but not limited to, CML Microsystems, Hyperstone Asia Pacific, and Hyperstone Inc.

D.    "ARC" refers to Arc International, and any and all of its: (i) divisions, departments, branches, domestic and foreign subsidiaries, business units, joint-venture entities, parents, affiliates, partners, predecessors-in-interest, successors-in-interest; (ii) its present and former officials, executives, directors, officers, agents, employees, consultants, attorneys; and (iii) all others acting or purporting to act on behalf of any of the foregoing.

E.    "HP" refers to the Hewlett Packard Company and Hewlett Packard Development Co., Ltd., and any and all of its: (i) divisions, departments, branches, domestic and foreign subsidiaries, business units, joint-venture entities, parents, affiliates, partners, predecessors-in-interest, successors-in-interest; (ii) its present and former officials, executives,

4

directors, officers, agents, employees, consultants, attorneys; and (iii) all others acting or purporting to act on behalf of any of the foregoing.

F.    "Ampex" refers to Plaintiff Ampex Corporation, and any and all of its: (i) divisions, departments, branches, domestic and foreign subsidiaries, business units, joint-venture entities, parents, affiliates, partners, predecessors-in-interest, successors-in-interest; (ii) its present and former officials, executives, directors, officers, agents, employees, consultants, attorneys; and (iii) all others acting or purporting to act on behalf of any of the foregoing.

G.    "Person" refers to natural persons and any and all other legal entities, including without limitation, individuals, corporations, companies, firms, partnerships, joint ventures, proprietorships, associations, governmental bodies or agencies, or other form of business enterprise.

H.    "Patent-In-Suit" refers to United States Patent No. 4,821,121 (the "'121 Patent").

I.    "Counterpart" of the '121 patent or "patent-in-suit" refers to all domestic and foreign, divisional, reissue, reexamination, continuation, or continuation-in-part patents (other than the '121 patent), and patent applications which claim the benefit of the filing date of the '121 patent or patent application or contain a majority of the disclosure of the '121 patent or patent application.

J.    "Digital Image Storage and Retrieval Device" means any digital electronic device that generates, stores and retrieves digital images, including without limitation, digital still cameras, personal digital assistants (PDAs), and camera phones and camcorders with digital still capabilities.

K.     "OEM" means Original Equipment Manufacturer and is a designation for companies that manufacture equipment that is then marketed and sold off to other companies under their own names.

L.     "ODM" means Original Design Manufacturer and is a designation for companies that manufacture products of its own designs, which are then sold under an OEM's brand name.

M.     "Altek Device" means any Digital Image Storage and Retrieval Device such as digital cameras and other digital electronic devices, that generates, stores and retrieves digital images, that has ever been made, sold or offered for sale in, or imported or sold for importation into the U.S. by or on behalf of Altek, including without limitation the CX4200, CX4210, CX4230, CX4300, CX4310, CX6200, CX6230, CX7220, CX7300, CX7310, C300, C310, C315, C330, CW330, C530, C603, C643, CD33, CD40, CD43, and CD50 digital cameras.

N.     "Altek OEM/ODM Device" means any Digital Image Storage and Retrieval Device, such as digital cameras and other digital electronic devices, that generates, stores and retrieves digital images, that has ever been made, sold or offered for sale in, or imported or sold for importation into the U.S. by or on behalf of Altek to or for any party other than Kodak including, but not limited to, all Digital Image Storage and Retrieval Devices for which Altek is an OEM or ODM for HP.

O.     "Kodak Device" means any Digital Image Storage and Retrieval Device, such as digital cameras and other digital electronic devices, that generates, stores and retrieves digital images, that has ever been made, sold or offered for sale in, or imported or sold for importation into the U.S., by or on behalf of Kodak, including without limitation, all versions of Kodak's CX4200, CX4210, CX4230, CX4300, CX4310, CX6200, CX6230, CX6330, CX6445,

6

CX7220, CX7300, CX7310, CX7330, CX7430, CX7525, CX7530, DX3900, DX4900, DX6340, DX6440, DX6490, DX7440, DX7590, DX7630, DC4800, LS443, LS743, LS753, Z650, Z700, Z730, Z740, Z760, Z7590, C300, C310, C315, C330, CW330, C530, C603, C643, C663, CD33, CD40, CD43, CD50, C340, C360, V530, V550, V570, DCS Pro 14n, DCS Pro SLR/c, DCS Pro SLR/n, DCS Proback Plus, DCS Proback 645, and Easyshare-One digital still cameras models.

P.    "Altek Kodak Device" means any Kodak Device manufactured by Altek.

Q.    "EXIF" refers to any and all versions of the Exchangeable Image File Format standard for digital still cameras, as promulgated by the Japan Electronics and Information Technology Industries Association ("JEITA").

R.    "DCF" refers to any and all versions of the Design Rule for Camera File system standard, as promulgated by the Japan Electronics Industry Development Association ("JEIDA").

S.    "Thumbnail" refers to a reduced resolution reproduction of a digital image, such as described in JEITA CP-3451 (EXIF Version 2.2), Section 4.5.5 and JEIDA-49-2-1998 (DCF Version 1.0), Section 3.5.

T.    "Review mode", "Multi-up mode" and "Zoom mode" each refer to the so-named method of reviewing digital images as described, for example, at pages 28, 30 of the DX7630 User's Guide, and to any other corresponding similar, but other-named, methods of image review.

U.    "TIFF" refers to any and all versions of the Tagged Image File Format or Tag Image File Format, a standard file format promulgated by Adobe Systems Incorporated.

V.    "JPEG" refers to any and all versions of the Joint Photographic Experts Group file format, an ISO/ITU standard established by the Joint Photographic Experts Group, as described in any and all revisions of ISO/IEC 10918, including ISO/IEC 10918-1.

W.    "ITC Investigation" means International Trade Commission Investigation No. 337-TA-527.

X.    "Accessories" means bags, cases, batteries, chargers, power supplies, printers, paper, ink, docks, kits, lenses, memory cards, flash cards, SD and MMD cards, and any other products sold by Kodak, which function or are used with, or are intended to function or be used with, any of the Kodak Devices.

Y.    "Source file" refers to the filename of a source code module within the source code for a Device Image Storage and Retrieval Device.

Z.    "Line number(s)" refers to the line numbers included in a source file.

AA.    "CFA buffer" refers to the buffer or area in SDRAM into which CFA data is written during the capture of a still image (see, e.g., Miller CCD Image Specification v 0.3 at ALT0000144).

BB.    "DSP" refers to the digital signal processor block included in the AL8331, AL8600, or other Sunny processors employed in certain of the Altek Devices, as well as the firmware and/or software used to operate that digital signal processor block.

CC.    "JPEG encoded data" is data that has been encoded in accordance with the Joint Photographic Experts Group file format as described in any and all revisions of ISO/IEC 10918, including ISO/IEC 10918-1.

DD.    "Primary Image" refers to a main body image as defined in JEITA CP-3451 (EXIF Version 2.2), Sections 2 and 4.5.2.

8

EE.    "APP1 Segment" refers to the APP1 segment of an EXIF compliant file, as defined in JEITA CP-3451 (EXIF Version 2.2), Section 4.5.4.

FF.    "Compression Ratio" refers to the ratio of compression for a JPEG compressed file, as that term is used in the CX7300 Engineering Requirements Specification.

GG.    "JPEG Output Buffer" refers to the buffer in SDRAM into which JPEG encoded data is written prior to storage in a memory card (*see* EKCCCI014876).

HH.    "Memory Card" refers to a Secure Digital ("SD"), Compact Flash ("CF"), or Multi Media Card ("MMC"), or other form of removable memory card.

II.    "Most current version" means the final revision of a document, in terms of chronological order and/or revision number, that accurately describes the operation of the Kodak Device to which it relates.

JJ.    "Any" and "each" should be understood to include and encompass "all"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

KK.    "Documents" as used herein is used in their broadest sense contemplated by Rule 34 of the Federal Rules of Civil Procedure and include, without limitation, the original and all non-identical copies (including those with any notations) of the following items: agreements and contracts; assignments; licenses; correspondence; reports, notes and memoranda; summaries, minutes, notes and records of telephone conversations, meetings and conferences; reports and/or summaries of investigations; opinions and reports of experts and consultants; statements of persons having knowledge of relevant facts; cablegrams and telex messages; patents, registrations of service or trademarks, copyrights, and applications for each of them; opinions of counsel; sales records, including purchase orders, order acknowledgments and

9

invoices; books of account; statements, bills, checks and vouchers; brochures, pamphlets, catalogs, sales literature and sales promotion material; advertisements; trade letters, notices and announcements, and press releases; specification sheets and diagrams; warranty forms; notebooks, data sheets, microfilm, microfiche, photographic negatives, architectural diagrams, blueprints, schematics, hardware description language listings, block, logic and timing diagrams, pictures and photographs; all data or information stored on computer-readable media, such as electro-magnetic or other disks, diskettes, hard disk drives, tapes, cartridges, and CD-ROM, including, but not limited to, software, firmware, source code, and electronic mail.

LL.  "Communication" and "communications" means, unless otherwise specified, any of the following:  (a) any written letter, memorandum, e-mail or other document; (b) any telephone call between two or more persons, whether or not such call was by chance or prearranged, formal or informal; and (c) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal.

MM.  "Relating to" or "as it relates to" means constituting, comprising, containing, consisting of, evidencing, setting forth, proposing, showing, disclosing, describing, discussing, explaining, summarizing, concerning, reflecting, authorizing, or referring to, directly or indirectly.

## DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 86

An electronically searchable copy of the most current version of the commented source code for each Altek OEM/ODM Device.

### DOCUMENT REQUEST NO. 87

The most current version of the User's Guide for each Altek OEM/ODM Device.

10

**DOCUMENT REQUEST NO. 152**

All communications and documents exchanged between ARC and Altek, directly or indirectly via an intermediary, relating to the operation and/or incorporation of any ARC processor or software, including without limitation, the ARC 600 or 700 families of CPU/DSP processor cores, the ARC XY Advanced DSP processor, or the ARC MQX operating system, into any of the Altek Devices.

**DOCUMENT REQUEST NO. 153**

All documents relating to the operation of any ARC processor or software incorporated into any of the Altek Devices including, but not limited to, the ARC 600 or 700 families of CPU/DSP processor cores, the ARC XY Advanced DSP processor, or the ARC MQX operating system.

**DOCUMENT REQUEST NO. 154**

All documents relating to the size and use of the JPEG Output Buffers in the Altek Devices including, but not limited to, the JPEG Output Buffers used in the Altek OEM/ODM Devices.

**DOCUMENT REQUEST NO. 155**

All documents that Altek will rely on to support any contention that any claim of the '121 patent is invalid.

**DOCUMENT REQUEST NO. 156**

All documents that Altek will rely on to support any contention that the '121 patent is unenforceable.

**DOCUMENT REQUEST NO. 157**

All documents that Altek will rely on to support any contention that any of the Altek Devices do not infringe any claim of the '121 patent.

22

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Attorneys for Plaintiff Ampex Corporation*

**OF COUNSEL:**

Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

January 27, 2006
504048

23

A-118

## CERTIFICATE OF SERVICE

I hereby certify that copies of the forgoing were caused to be served this 27th day

of January, 2006 upon the following in the manner indicated:

### BY HAND DELIVERY

Paul M. Lukoff, Esquire
David E. Brand, Esquire
Prickett, Jones & Elliott, P.A
1310 King Street
Wilmington, DE 19899

### BY FEDERAL EXPRESS

Michael J. Summersgill, Esquire
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022

Julia Heaney (#3052)

# SEALED DOCUMENTS

# A-120 to A-142

28348 - 122

**Ampex Corporation**
1228 Douglas Ave.
Redwood City, California 94063-3117
Telephone 650 367-2011

**AMPEX** | Corporation

August 13, 2004

William F. Lee, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109

Dear Mr. Lee:

Since sending my letter of May 26, 2004, we have received communications on behalf of
Kodak concerning Kodak's response. Your letter of June 23, 2004, proposing that
Ampex agree to extend the period for Kodak's response until July 26, was followed by
your phone message of July 19, 2004, stating that you needed additional time to evaluate
the issues of infringement both for cameras made by Kodak and by suppliers and wished
to respond during the second week of September. We then received a phone call from
your partner, Donald Steinberg, affirming that while we may or may not receive a license
proposal from Kodak, your firm is making a sincere effort to respond to the issues raised
by our letter.

As you probably are aware, Ampex now has filed additional actions relating to the
infringement of its '121 patent by Sony. Further we have withdrawn the ITC action
against Sanyo in view of the progress of the licensing negotiations.

As we stated in our letter of May 26, and as I have informed both you and Mr. Steinberg,
Kodak is free to respond or not respond to our letters and may act on whatever timeline it
chooses. In the same manner, Ampex must proceed with its licensing program in
accordance with Ampex's business considerations. We have today sent the
accompanying letter to all companies originally contacted with whom we are not in active
negotiations toward a license agreement. We feel that, despite the contacts from your firm
noted above, we must provide this same notice to Kodak.

WILMER CUTLER PICKERING
HALE AND DORR LLP
FILE COPY

A-143

William F. Lee, Esq.
August 13, 2004
Page 2

We still hope to be able to enter into a mutually satisfactory license with Kodak and look forward to hearing from you.

Very truly yours,

Joel D. Talcott
Vice President—General
Counsel & Secretary

Direct Line:    (650) 367-3330
Facsimile:     (650) 367-3440

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2006, I electronically filed **REDACTED APPENDIX TO DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO BIFURCATE AND MOTION FOR PROTECTIVE ORDER** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

I hereby certify that on March 17, 2006, I have forwarded the above-noted document to the following as noted below:

**VIA E-MAIL**

Jesse J. Jenner, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

**VIA E-MAIL & FEDERAL EXPRESS**

Norman H. Beamer, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301

**VIA E-MAIL**

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

PAUL M. LUKOFF (Bar I.D. #96)
DAVID E. BRAND (Bar I.D. #201)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE  19899-1328
TEL: 302-888-6500
E-MAIL:  PMLukoff@prickett.com
                DEBrand@prickett.com

19660.3\297801v1