**PRICKETT, JONES & ELLIOTT**
A PROFESSIONAL ASSOCIATION
1310 KING STREET, BOX 1328
WILMINGTON, DELAWARE 19899
TEL: (302) 888-6500
FAX: (302) 658-8111
http://www.prickett.com

Writer's Direct Dial:
(302) 888-6520
Writer's Telecopy Number::
(302) 888-6331
Writer's E-Mail Address:
PMLukoff@prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

May 10, 2006

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

**VIA EFILING AND HAND DELIVERY**

RE:  **Ampex Corp. v. Eastman Kodak Co., et al.
C.A. No. 04-1373 (KAJ)**

Dear Judge Jordan:

Defendants Eastman Kodak Company ("Kodak") and Altek Corporation ("Altek") respectfully submit this response to Ampex's letter seeking to compel the production of all communications between trial counsel and Defendants relating to the issue of infringement.

## I.   Factual and Procedural Background

On August 29, 2001, more than ten years after Kodak began selling its digital cameras, and twelve years after U.S. Patent No. 4,821,121 (the "'121 patent") issued, Ampex sent Kodak a letter demanding that Kodak take a license to the '121 patent. In response, Kodak conducted an internal analysis of Ampex's infringement claim and concluded that its digital cameras did not infringe the '121 patent. On September 14, 2001, Kodak responded to Ampex's demand by requesting that Ampex provide the basis for Ampex's infringement assertions. Ampex did not respond to Kodak's request and did not provide any basis for its assertion of infringement.

On May 26, 2004, nearly three years later, Ampex sent Kodak a second letter demanding that Kodak license the '121 patent. On June 18, 2004, Kodak repeated its request that Ampex provide the basis for its claim of infringement. Once again, Ampex did not respond.

In August, 2004, in response to Ampex's threats regarding the '121 patent, Kodak retained the law firm Roylance, Abrams, Berdo and Goodman LLP ("Roylance") to provide a further opinion on the issue of whether Kodak's digital cameras infringed the '121 patent.

On October 21, 2004, Ampex filed suit against the Defendants in the International Trade Commission asserting infringement of the '121 patent. On the same date, Ampex also filed this action but it was stayed pending resolution of the ITC investigation. The ITC is statutorily permitted to grant only injunctive relief so neither Ampex's claim for damages nor its assertion of willful infringement was at issue during the ITC action.

On July 29, 2005, Ampex moved to withdraw its complaint in the ITC action. As a result, on August 23, 2005, Ampex's complaint was dismissed and this action commenced. Two weeks later, on September 2, 2005, Roylance provided Defendants with an opinion that the Defendants' digital cameras do not infringe the '121 patent.

The Honorable Kent A. Jordan
May 10, 2006
Page 2

## II. Ampex is not entitled to *all* communications between trial counsel and the Defendants relating to the subject matter of infringement.

The Defendants have already produced communications between: (1) the Defendants and opinion counsel (Roylance); (2) trial counsel (WilmerHale) and opinion counsel; and (3) trial counsel and the Defendants relating to the substance of the opinion. Ampex now seeks all communications between the Defendants and trial counsel on the issue of infringement. By way of example, Ampex indicated that it seeks draft interrogatory responses from the ITC investigation that relate in any way to the issue of infringement and that were communicated to the Defendants. Defendants believe that such a broad waiver is unwarranted.

Defendants objected to the production of communications with trial counsel, other than those relating to the substance of the opinion of counsel, on the grounds that a production of such communications was not compelled by then existing law. This jurisdiction has only waived the privilege between client and trial counsel where trial counsel was either the same as opinion counsel or trial counsel was substantively involved in the preparation of the opinion. *See Novartis Pharm. Corp. v. Eon Labs Mfg.*, 206 F.R.D. 396 (D. Del. 2002); *Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307 (D. Del. 2000). Moreover, other jurisdictions have also strictly limited the waiver as it applies to trial counsel. *See, e.g., Terra Novo, Inc. v. Golden Gate, Inc.*, No. C-03-2684, 2004 WL 2254559 (N.D. Cal., Oct. 1, 2004) (communications between trial counsel and client are outside of the scope of the waiver); *Douglas Press, Inc. v. Universal Mfg. Co.*, No. 01 C 2565 2003 WL 21361731, at *3 (N.D. Ill. June 11, 2003) ("Based on Universal's representation that it is not relying on any opinions from [trial counsel] as part of its advice of counsel defense, Universal need not disclose any documents or other materials prepared by the firm."); *VLT, Inc. v. Artesyn Tech., Inc.*, 198 F. Supp. 2d 56 (D. Mass. 2002) (waiver of communications between client and trial counsel includes only those that are inconsistent with the opinion).

The rationale for these limitations on the waiver as it applies to trial counsel has been that waiver would "inappropriately chill communications between trial counsel and client and would impair trial counsel's ability to give the client candid advice regarding the merits of the case." *Motorola, Inc. v. Vosi Techs., Inc.*, No. 01 C 4182, 2002 WL 1917256, at *2 (N.D. Ill. Aug. 19, 2002). This rationale applies in particular in this case where the ITC action, in which willfulness was not at issue, preceded this action.

The Federal Circuit's recent decision in *In re Echostar* contains language that, on its face, could be construed as adopting a broad waiver of all attorney-client communications relating to the subject matter addressed by an opinion. *See In re Echostar Commc'ns Corp.*, Misc. Nos. 803, 805, slip. op. at 7, 16 (Fed. Cir., May 1, 2006). In *Echostar*, however, the defendant was attempting to rely upon an opinion received from in-house counsel while not waiving the privilege as to communications with its outside opinion counsel. *See Echostar,* slip. op. at 6. Communications with trial counsel were not at issue and the Court's opinion does not specifically address the unique circumstances of waiver as it applies to trial counsel. *See Echostar,* slip. op. at 2. The earlier district court decisions attempted to balance the need for confidentiality between trial counsel and client with the need for an appropriate scope of waiver. The *Echostar* opinion does not address these considerations. Moreover, to the extent the *Echostar* case is interpreted as creating a waiver of the privilege with respect to trial counsel, it is likely to be the subject of further review by the Federal Circuit or the Supreme Court.

Even the broad statements in *Echostar* do not justify Ampex's request for all communications between trial counsel and Defendants. The Federal Circuit made clear that it did not intend the waiver to include day to day communications regarding the prosecution of the litigation: "By

19660.3\303745v1

The Honorable Kent A. Jordan
May 10, 2006
Page 3

asserting the advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or her attorney do not give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *See Echostar,* slip. op. at 13. Instead, the Court suggested that only communications rising to the level of "a traditional opinion letter" are encompassed within the waiver. *See Echostar,* slip. op. at 12. In fact, in *Akeva L.L.C. v. Muzuno Corp.*, 243 F. Supp. 2d 418 (M.D.N.C. 2003), which was cited by the Federal Circuit in *Echostar,* and in which the defendant relied on an opinion of counsel that it did not infringe, the court expressly defined the subject matter waiver to mean that "all *opinions* received by the client relating to infringement" must be revealed. *Id* at 422, 423.

Notwithstanding Defendants' objections (and subject to a reservation of their objections), to the extent that this Court interprets *Echostar* as effecting a waiver of communications between trial counsel and client, Defendants are prepared to produce communications from trial counsel that can be fairly interpreted as offering an opinion on whether Defendants infringe the '121 patent (or documents reflecting any such communications). Should the Court deem it appropriate, Defendants are also prepared to produce communications that they believe fall outside the scope of this waiver for *in camera* review.

### III. Ampex is not entitled to a privilege log separately listing all trial counsel communications and work product that fall outside the scope of the waiver.

Ampex also moves to compel Defendants to produce a privilege log listing all trial counsel communications and work product that Defendants contend fall outside the scope of the waiver. The Defendants have already served a privilege log that includes communications between trial counsel and Kodak that occurred prior to the filing of the ITC investigation. Defendants do not believe that the production of an additional log listing all trial counsel communications and work product regarding the issue of infringement is warranted because it would inevitably reveal trial strategy, it is not necessary to assess Defendants' privilege claims, and it would be extraordinarily burdensome to do so.

Defendants cannot realistically produce a privilege log to show that the privileged contents of trial counsel documents do not relate to a particular subject matter without actually revealing the contents of the privileged communications. *See VLT, Inc. v. Artesyn Tech., Inc.*, 198 F. Supp. 2d 56, 59 (D. Mass. 2002) ("In such cases involving the scope of a subject matter waiver, it may be difficult if not impossible for the party asserting the privilege to 'describe the nature of the documents. . . in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.'. . . How can one show that the privileged contents of a document do not relate to a certain subject matter without revealing the contents of what is contained in the documents?"). Providing the date and subject matter of all trial counsel communications and work product would provide a roadmap to Defendants' trial strategy.

Moreover, a detailed log is not necessary to assess Defendants' privilege claims. Instead, once the Court determines the categories of documents that must be produced, Defendants can simply produce the documents that fall into those categories. *See Caliper Tech. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 563 (N.D. Cal. 2003) (in lieu of a privilege log that could itself reveal privileged information, the withholding party may describe the documents categorically).

Finally, to require a privilege log listing all trial counsel communications and work product would impose a significant burden on Defendants. *See, e.g. Imperial Corp. of America v. Sheilds*, 174 F.R.D. 475, 479 (S.D. Cal. 1997) (document-by-document privilege log not required because the large volume of documents to be logged would make the task overly burdensome).

19660.3\303745v1

The Honorable Kent A. Jordan
May 10, 2006
Page 4

Respectfully submitted,

*[signature: Paul M. Lukoff]*

PAUL M. LUKOFF
Del. Bar No. 96

PML/mhl

cc: Clerk of the Court (Via Hand)
    Jack B. Blumenfeld, Esquire (Via E-Filing & E-Mail)
    Norman H. Beamer, Esquire (Via E-Mail & FedEx)
    Jesse J. Jenner, Esquire (Via E-Mail)
    S. Calvin Walden, Esquire (Via E-Mail)
    Michael J. Summersgill, Esquire (Via E-Mail)
    Jordan L. Hirsch, Esquire (Via E-Mail)