IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AMPEX CORPORATION, | ) ) ) | |
| *Plaintiff*, | ) ) | C.A. No. 04-1373 (KAJ) |
| v. | ) ) ) | |
| EASTMAN KODAK COMPANY, ALTEK CORPORATION, and CHINON INDUSTRIES, INC. | ) ) ) ) ) | |
| *Defendants*. | ) ) | |

**AMPEX'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO COMPEL DISCLOSURE OF WITHHELD
COMMUNICATIONS AND FOR PRODUCTION OF A PRIVILEGE LOG**

                MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                Jack B. Blumenfeld (#1014)
                Julia Heaney (#3052)
                1201 N. Market Street
                P.O. Box 1347
                Wilmington, DE 19899-1347
                (302) 658-9200
                jblumenfeld@mnat.com
                jheaney@mnat.com
                  Attorneys for Plaintiff Ampex Corporation

OF COUNSEL:
Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC  20005
(202) 508-4600

May 18, 2006

i.

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| TABLE OF CITATIONS | | ii |
| NATURE AND STAGE OF THE PROCEEDINGS | | 1 |
| SUMMARY OF THE ARGUMENT | | 2 |
| THE PERTINENT FACTS | | 3 |
| A. | The Circumstances Of Kodak's Advice Of Counsel Defense | 3 |
| ARGUMENT | | 4 |
| A. | The Waiver Of Attorney-Client Privilege And Work Product Applies To Trial Counsel Communications When They Are Probative Of An Infringer's State Of Mind On The Same Subject Matter | 4 |
| B. | Ampex Needs To Discover Trial Counsel's Pre-April 11, 2006 Communications With Defendants On The Subject Matter Of Infringement In Order To Fully And Fairly Assess Their States Of Mind | 6 |
| C. | The Waiver of Privilege is Not Limited to Trial Counsel's "Opinions" On the Same Subject Matter | 8 |
| D. | Waiver of Trial Counsel Communications In This Case Does Not Require The Court To Permit Unfettered Access To Communications With The Client Made During Trial | 10 |
| E. | Defendants Should Produce A Privilege Log | 12 |
| CONCLUSION | | 14 |

ii.

# TABLE OF CITATIONS

Page(s)

Cases

*Akeva, LLC v. Mizuno Corp.*,
  243 F. Supp. 2d 418 (M.D.N.C. 2003) .......... 5

*Chimie v. PPG Indus., Inc.*,
  218 F.R.D. 416 (D. Del. 2003) .......... 9, 12

*Convolve, Inc. v. Compaq Computer Corp.*,
  224 F.R.D. 98 (S.D.N.Y. 2004) .......... passim

*Dunhall Pharms., Inc. v. Discus Dental, Inc.*,
  994 F. Supp. 1202 (C.D. Cal. 1998) .......... 6

*Fort James Corp. v. Solo Cup Co.*,
  412 F.3d 1340 (Fed. Cir. 2005) .......... 5, 6, 8

*In re EchoStar Communications Corp.*,
  2006 WL 1149528 (Fed. Cir. May 1, 2006) .......... passim

*Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P.*,
  266 F. Supp. 2d 1144 (C.D. Cal. 2003) .......... 9

1.

## NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action, scheduled for trial on December 4, 2006. Ampex alleges that defendants Kodak, Altek, and Chinon willfully infringed the '121 patent in suit. Fact and expert discovery closed on February 28 and May 12, 2006, respectively. On April 17, 2006, the Court permitted Defendants to assert the defense of advice of counsel and permitted limited additional discovery on that subject. (D.I. 255).

In April and May, 2006, the parties met and conferred in an attempt to resolve issues relating to the scope of the waiver. The parties agreed only that the scope of waiver does not include core work product of any outside attorney, and does include communications between trial counsel and the clients (defendants Kodak, Altek, and Chinon) referring expressly to the opinion. Kodak refused to produce any other trial counsel materials communicated to the defendants relating to the subject matter of the opinion (infringement), and refused to produce a privilege log.

Ampex accordingly seeks an order compelling defendants: 1) to disclose all information communicated to Defendants on the same subject matter as their September 2, 2005 opinion of counsel; and 2) to provide a log of all materials withheld on privilege or work-product grounds dated on or before April 11, 2006, the expiration date of the '121 patent.

Pursuant to Stipulated Order (D.I. 255), the parties will schedule a thirty day period to complete deposition and other discovery upon resolution of the scope of waiver and privilege log issues.

2.

## SUMMARY OF THE ARGUMENT

The scope of waiver issues in this case relate to an opinion of counsel obtained almost a year after litigation began, and more than four years after defendant Kodak received notice of the '121 patent from Ampex. Defendants contend that they should be permitted to rely on the opinion of counsel without having to disclose most of trial counsel's communications with defendants on the same subject matter. Unless Ampex is permitted to discover all of trial counsel's communications with the client on the same subject matter, however, it will not be able to fairly investigate or examine whether Defendants had a good faith belief of non-infringement.

The Court has asked the parties to address whether the Federal Circuit's recent decision in *In re EchoStar Communications Corp.*, Misc. Nos. 803, 805, 2006 WL 1149528 (Fed. Cir. May 1, 2006) (attached at Tab A), if applied in this case, would result in the extraordinary circumstance of trial counsel being subjected to discovery of attorney-client communications made during trial. It would not. The Court need only apply the core holding of *EchoStar*, which is that discovery should be permitted to the extent necessary to allow fair cross-examination on the infringer's state of mind, and that the privilege should not be used as both a sword and a shield. Under *EchoStar* and the law prevailing before *EchoStar*, when an infringer puts trial counsel's communications at issue by waiting years to seek an outside opinion, and only then when litigation is about to commence, discovery of trial counsel communications is appropriate.

3.

## THE PERTINENT FACTS

A. The Circumstances Of Kodak's Advice Of Counsel Defense

On April 11, 1989, Ampex Corporation obtained U.S. Patent No. 4,821,121 ("the '121 patent") for an "Electronic Still Store With High Speed Sorting and Method of Operation." Kodak first learned of the '121 patent approximately three years later in 1992, when its in-house patent attorney identified the '121 patent during a clearance inquiry for a prototype digital camera for the professional market. Kodak flagged the '121 patent for investigation, but there was no investigation.

In approximately 1996, Kodak introduced its first digital cameras for the consumer market. By this time, however, several other manufacturers already had introduced digital cameras targeted to consumers.

Ampex learned of Kodak's infringing activity in 2001. Shortly thereafter, on August 29, 2001, Ampex wrote to Kodak and fifteen other digital camera manufacturers. In the letter to Kodak, Ampex identified cameras Ampex believed infringed the '121 patent, and invited Kodak to negotiate a license.

In September, 2001, Kodak acknowledged receipt of the August 29, 2001 letter, and explained that it was investigating the '121 patent. Kodak stated that it would "provide a prompt response" upon completion of its analysis. Kodak did not provide a response.

On May 26, 2004, Ampex contacted Kodak once again. Kodak stalled the ensuing negotiations. Meanwhile, in August, 2004, Kodak sought the assistance of counsel in Washington, D.C. to obtain an opinion on the issue of infringement of the '121 patent. Ampex filed this patent infringement action, and initiated a corresponding patent

4.

infringement action in the United States International Trade Commission, in October, 2004.

Almost a year passed before Kodak received a final written opinion of counsel on the issue of infringement. Kodak received the opinion in September, 2005, approximately two weeks after the termination of the proceedings in the ITC and the resumption of proceedings in this case. The '121 patent expired approximately nine months later on April 11, 2006.

## ARGUMENT

A. The Waiver Of Attorney-Client Privilege And Work Product Applies To Trial Counsel Communications When They Are Probative Of An Infringer's State Of Mind On The Same Subject Matter

When an accused infringer chooses to rely on advice of counsel as a defense to willful infringement, it waives the attorney-client privilege with regard to any communications relating to the same subject matter. *EchoStar*, 2006 WL 1149528 at *3. The waiver also may apply to work product if it refers or relates to attorney-client communications. *Id.*, 2006 WL 1149528 at *8. Once the waiver is made, it applies to any document or opinion that embodies or discusses a communication relating to the subject matter of the advice. *Id.*

The scope of the waiver depends first and foremost on what is necessary to fairly examine the infringer's state of mind in a given case. *Id.*, 2006 WL 1149528 at *7. "The overarching goal is to prevent a party from using the advice he received as both a sword . . . and a shield . . . ." *Id.* Courts must assess what is necessary to assess an infringer's state of mind by careful examination of the facts of each case. "There is no bright line test for determining what constitutes the subject matter of a waiver, rather

5.

courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005).

The waiver of privilege may apply to trial counsel communications when necessary to assess the state of mind of the infringer. *See EchoStar*, 2006 WL 1149528 at *7. In *EchoStar*, the Federal Circuit held that the waiver applies to any communication with counsel on the same subject matter. *Id.*, 2006 WL 1149528 at *3. Although *EchoStar* did not involve discoverability of trial counsel communications, its emphasis on assessing the state of mind of the infringer suggests, at a minimum, that the waiver also may apply to communications with trial counsel.[1] *EchoStar* cites with approval *Akeva, LLC v. Mizuno Corp.*, 243 F. Supp. 2d 418, 423 (M.D.N.C. 2003), which expressly applies the waiver to trial counsel's communications. *EchoStar*, 2006 WL 1149528 at *3, *6 & n.4.

*EchoStar's* holding is consistent with district court cases holding that the waiver may apply to trial counsel communications. These cases similarly focus on ensuring that the patentee has a fair opportunity to assess the infringer's state of mind. *Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98, 104 & n.5 (S.D.N.Y. 2004) (where infringer relies on an opinion of counsel received after commencement of litigation, waiver applies to trial counsel communications to allow fair evaluation of infringer's state of mind); *Akeva*, 243 F. Supp. 2d at 423 ("[A]ll knowledge gained by the

---

[1] Defendants concede that applying the waiver to trial counsel communications "would be consistent with a reading of *EchoStar*." May 11 Tr. at 7.

6.

infringer relating to the advice subject must be revealed so that the factfinder can make its own determination as to whether the reliance was reasonable.").

Before *EchoStar*, some district courts had forbidden or limited access to trial counsel communications by limiting the scope of the waiver in time to the commencement of the litigation. *E.g. Dunhall Pharms., Inc. v. Discus Dental, Inc.*, 994 F. Supp. 1202 (C.D. Cal. 1998). In these cases, the infringer typically received an opinion from outside counsel prior to litigation, such that trial counsel's advice, received much later in time, may have been less pertinent. *See Convolve*, 224 F.R.D. at 104 n.5; *Dunhall*, 994 F. Supp. at 1206. *EchoStar* holds, moreover, that courts may not arbitrarily limit the waiver to communications made prior to litigation. *EchoStar*, 2006 WL 1149528 at *6 n.4.

Under *EchoStar* and the weight of authority prior to *EchoStar*, trial counsel communications fall within the scope of the waiver unless they are not relevant to ongoing infringement issues, *i.e.*, they are not sufficiently probative of the infringer's state of mind. Under *Fort James*, relevance and the degree to which trial counsel communications are probative of the infringer's state of mind must be assessed on a case by case basis.

        B.      Ampex Needs To Discover Trial Counsel's Pre-April 11, 2006 Communications With Defendants On The Subject Matter Of Infringement In Order To Fully And Fairly Assess Their States Of Mind

In the circumstances present here, all of the *Fort James* factors weigh in favor of full disclosure of trial counsel's communications on the subject matter of infringement. The opinion on which Defendants rely in support of their advice of counsel defense was obtained late, almost a year after this litigation began, only weeks

after it became clear that the ITC case would not resolve the issues between the parties, and just about nine months before the patent expired in April, 2006. If the opinion has any relevance to Defendants' advice of counsel defense at all, it is only for the nine-month period prior to patent expiration.[2]

Ampex cannot fairly test Defendants' state of mind during the nine-month period on which defendants will rely on their opinion of counsel without access to trial counsel's materials on the same subject matter. The nexus in time between Defendants' reliance period and the trial communications at issue is strong. *See Convolve*, 224 F.R.D. 104 & n.5 (ordering disclosure of trial counsel communications to allow examination of the reasonableness of infringer's reliance on opinion of counsel received after commencement of litigation).

Defendants could have taken simple steps that would have reduced, if not eliminated, the need to discover trial counsel communications. Most important, Kodak could have sought and obtained an opinion years earlier, long before litigation. Instead, Kodak waited until the eve of litigation to request an outside opinion, received the opinion only after it became clear that the ITC proceedings would not resolve the issues between the parties, and then waited until discovery had closed to add the advice of counsel defense. Defendants' own actions ensured that the most important facts relating to their advice of counsel defense would be contemporaneous with trial counsel communications.

---

[2] Ampex is willing to withdraw its allegation of willfulness for the period after September 2, 2005, provided Defendants withdraw their reliance on any opinion of outside counsel, and rely solely on in-house counsel with respect to the advice of counsel defense. Ampex would agree, in that case, to forego discovery of trial counsel's communications.

8.

Although the prejudice to Ampex of non-disclosure would be great, the prejudice to Defendants of disclosure is relatively slight. Because Ampex does not seek documents after patent expiration in April, 2006, defendants will be able to communicate freely with trial counsel in the months prior to, and during, trial. Because Ampex does not seek attorney work product, defendants need not disclose attorney thoughts or impressions not communicated to the client. To the extent defendants would suffer any prejudice from disclosing communications with trial counsel on the subject matter of infringement, defendants brought that prejudice on themselves by obtaining and relying on an opinion of counsel long after the commencement of litigation.

      C.      The Waiver of Privilege is Not Limited to Trial Counsel's "Opinions" On the Same Subject Matter

Defendants agree that application of the waiver to trial counsel communications would be consistent with *EchoStar*, but contend that the subject matter of the waiver should be limited to mere "opinions" of trial counsel. (May 11 Tr. at 7-8). This argument is both inconsistent with the law and unworkable in practice.

*EchoStar* states that "when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." *EchoStar*, 2006 WL 1149528 at *4. "Communications" are not limited to "opinions." An opinion is merely one kind of communication. *EchoStar* explains that the subject matter of the waiver extends to "**any** document **or** opinion" on the same subject matter as the opinion of counsel, including "letters, memorandum, conversation, or the like." *Id.*, 2006 WL 1149528 at *8 (emphasis added). And it expressly refers to disclosure of communications **other** than opinions. *Id.* at *3 (*citing Fort James*, 412 F3d at 1349); s*ee also Chimie v. PPG Indus., Inc.*, 218

9.

F.R.D. 416, 418 n.3 (D. Del. 2003) ("The scope of the waiver 'is defined by the subject matter discussed' in the communications regarding [the patent in suit]"); *Convolve*, 224 F.R.D. at 104 ("The subject matter waiver . . . extends to all such 'communications,' not just formal or written opinions."); *Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 266 F. Supp. 2d 1144, 1149 (C.D. Cal. 2003) ("The totality of the circumstances test requires that **all knowledge** gained by the infringer relating to the advice subject matter must be revealed so that the factfinder can make its own determination as to whether the reliance was reasonable.") (emphasis added).

To limit "communications" to trial counsel opinions would lead to inequitable results. It would not permit a full examination of the state of mind of the infringer. Trial counsel could, for example, communicate a fact or argument that is inconsistent with a fact or argument in the opinion to be relied upon for the advice of counsel defense, yet the patentee would never know about that fact or argument unless it were communicated in the context of an "opinion." In many cases, the result would be to permit an infringer to withhold the information that is most probative on the question of reasonable reliance. Defendants' proposal is, therefore, inconsistent with the notion that an infringer cannot use the privilege as both a sword and shield. *EchoStar*, 2006 WL 1149528 at *7.

Defendants raise the specter that a waiver covering all communications would reach communications over trial tactics, witness selections, and drafting of discovery responses. (May 11 Tr. at 8). This is an exaggeration. Most of these communications will not relate to the subject matter of the opinion, in this case infringement. Because Defendants need not disclose work-product, the attorneys'

10.

uncommunicated thoughts and impressions – for example in drafting an interrogatory response[3] – would remain protected from discovery. Redaction can be used to protect advice outside the scope of the subject matter of the opinion. *See EchoStar*, 2006 WL 1149528 at *8; *Convolve*, 224 F.R.D. at 105.

Defendants' reading of *EchoStar* is, moreover, impracticable. It would put parties, and ultimately district court judges, in the position of trying to determine which attorney-client communications constitute "opinions," and which do not. The effect would be to drastically reduce, if not eliminate, the scope of the waiver as it applies to trial counsel. Trial counsel would meticulously avoid communications that could be deemed an "opinion" and likely would devise other tactics to shield communications from disclosure. This case is an excellent example of how limited discovery would be under Defendants' proposed rule: despite the fact that Defendants agree that communications from trial counsel in the form of opinions are discoverable, Defendants have produced no such opinions.

> D.   Waiver of Trial Counsel Communications In This Case Does Not Require The Court To Permit Unfettered Access To Communications With The Client Made During Trial

At the May 11, 2006 conference, the Court expressed concern that application of *EchoStar* in this case could result in the extraordinary circumstance of requiring trial counsel to testify during trial to disclose communications with the client on the subject matter of the opinion of counsel. But the Court need not make such a broad

---

[3]    If a draft interrogatory response relating to infringement was communicated to a Defendant, however, it would be within the scope of the waiver. Documents of this type are necessary to evaluate state of mind.

11.

holding. This case presents the more limited question of whether Defendants can fairly withhold trial counsel communications having put those communications at issue by their own actions. It is governed by the longstanding notion that infringers cannot, in relying on an opinion of counsel, use the privilege as both a sword and a shield. And it turns on the peculiar facts that Kodak waited years to seek an opinion after notice from Ampex and belatedly chose to rely on the opinion despite receiving it almost a year after commencement of litigation.

Furthermore, because Ampex agrees that it is not entitled to discovery of trial counsel communications made after the '121 patent expiration on April 11, 2006, whether *EchoStar* would require discovery of trial counsel communications made during trial is not at issue in this case. That is an issue for another day. The Court can resolve the issues in this case by applying the indisputable core of the holding, which is that the scope of waiver must be sufficient to allow fair examination of the infringer's state of mind.

Ampex does not take a position on whether *EchoStar* requires disclosure of trial counsel communications made during trial. Yet no matter how the Court chooses to read *EchoStar*, the waiver applies to trial counsel's communications in this case. If the Court reads *EchoStar* broadly to cover all trial counsel communications made during the period of reliance – which could include trial in some cases – Defendants must produce all trial counsel communications on the same subject as the opinion (infringement) in this case. If the Court reads *EchoStar* more narrowly merely to hold that the scope of waiver depends on what is necessary to assess the infringer's state of mind, the result is the same.

12.

Should the Court believe it imperative to issue an Order that will discourage other litigants from seeking extraordinary discovery – once again, Ampex takes no position on this issue – the Court can do one or more of the following to ensure that its Order in this case will not signal a radically new discovery regime:

- Read *EchoStar* narrowly to require a case-by-case analysis of the relationship of attorney communications to the infringer's state of mind

- Expressly limit the Order to the facts of this case and find only that trial counsel communications are discoverable where the infringer relies on an opinion received long after the commencement of litigation, and where the infringer had notice of the patent yet did not seek the opinion until litigation was imminent

- Explain that no matter how broadly *EchoStar* is read, the Court retains power to limit the time, place and manner of willfulness discovery pursuant to Fed. R. Civ. P. 16 (the Court could, for example, limit both proof of willfulness and the advice of counsel defense to facts developed before discovery cut-off, as it does for other issues of continuing activity such as infringement)

- Moot the issue in this case by limiting or eliminating the extent to which Defendants can rely on opinions received from outside counsel (see footnote 2, *supra*).

E.    Defendants Should Produce A Privilege Log

Defendants refuse to produce a privilege log, arguing that logging trial counsel materials would inevitably reveal trial strategy, would not be necessary to assess Defendants' privilege claims, and would be extraordinarily burdensome. Ampex disagrees.

When a party withholds information otherwise discoverable under the rules, the withholding party is obligated to produce a log. Fed. R. Civ. P. 26(b)(5). The language of Rule 26(b)(5) is mandatory. Relevant or potentially relevant documents must be logged, even when the burden is substantial. *See Chimie*, 218 F.R.D. at 422.

13.

Defendants do not contend that the withheld documents are not discoverable or not relevant. They are, accordingly, obligated to log them under the Federal Rules.

Defendants can, moreover, prepare a privilege log for the documents without revealing their contents. Defendants prepared such a log for pre-litigation privilege materials. There is no reason to believe that preparation of a post-filing log would be any more revealing of withheld advice than the pre-filing log. In this case, general subject matter descriptions should suffice for most withheld documents. If, for example, a withheld document relates solely to validity issues, Defendants could so specify without identifying the specific advice. And, if there is a subset of documents for which creation of a log truly would reveal the contents of the communication or work product, Ampex would not object to in camera review of these documents (though such review should not be necessary in most circumstances).

As for the burden of preparing a log, Ampex agrees to work with Defendants to minimize it. The problem is, however, one of Defendants' own making. It was Defendants' choice to wait years before seeking an opinion of counsel, and then to rely on that opinion despite receiving it almost a year after the commencement of litigation.

14.

## CONCLUSION

For the reasons stated, Ampex respectfully requests that the Court order Defendants to produce trial counsel communications made through April 11, 2006 on the subject matter of infringement, and to produce a privilege log for all withheld documents dated on or before April 11, 2006.

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

        */s/ Julia Heaney (#3052)*
        Jack B. Blumenfeld (#1014)
        Julia Heaney (#3052)
        1201 N. Market Street
        P.O. Box 1347
        Wilmington, DE 19899-1347
        (302) 658-9200
        jblumenfeld@mnat.com
        jheaney@mnat.com
          Attorneys for Plaintiff Ampex Corporation

OF COUNSEL:

Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600
May 18, 2006

CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on May 18, 2006, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Paul M. Lukoff, Esquire
>David E. Brand, Esquire
>Prickett, Jones & Elliott, P.A.

and that I caused copies to be served upon the following in the manner indicated:

**BY HAND AND E-MAIL**

>Paul M. Lukoff, Esquire
>Prickett, Jones, Elliott, P.A.
>1310 King Street
>Wilmington, DE  19899

**BY FEDERAL EXPRESS AND E-MAIL**

>Michael J. Summersgill, Esquire
>Wilmer Cutler Pickering Hale and Dorr LLP
>60 State Street
>Boston, MA  02109

>*/s/ Julia Heaney (#3052)*
>Julia Heaney (#3052)
>Morris, Nichols, Arsht & Tunnell LLP
>1201 N. Market Street
>P.O. Box 1347
>Wilmington, DE  19899
>(302) 658-9200
>jheaney@mnat.com