# TAB A

Westlaw.

--- F.3d ----  Page 1

--- F.3d ----, 2006 WL 1149528 (C.A.Fed.)
(Cite as: --- F.3d ----)

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
  United States Court of Appeals,Federal Circuit.
     In re ECHOSTAR COMMUNICATIONS
    CORPORATION, Echostar DBS Corporation,
      Echostar Technologies Corporation, and
    Echosphere Limited Liability Company, and
        Merchant & Gould P.C., Petitioners.
             Misc. Nos. 803, 805.

                   May 1, 2006.

**Background:** In patent infringement action in which defendant asserted defense of reliance on advice of in-house counsel, plaintiff sought production of relevant documents, including documents relating to outside counsel whose advice was not relied on. The District Court determined that defendant waived its attorney-client privilege, and that waiver extended to work-product not communicated to defendant. Defendant petitioned for writ of mandamus, and outside counsel moved to intervene and petitioned for a writ of mandamus.

**Holdings:** The Court of Appeals, Gajarsa, Circuit Judge, held that

8(1) defendant waived its attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel, but

25(2) outside counsel's work product that was not communicated to defendant and did not reflect a communication, was not within the scope of defendant's waiver of work product immunity.

Petitions granted in part.

**[1] Mandamus 250 ⟲0**

250 Mandamus
The remedy of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power.

**[2] Mandamus 250 ⟲0**

250 Mandamus
A party seeking a writ of mandamus bears burden of proving that it has no other means of obtaining the relief desired, and that the right to issuance of the writ is clear and indisputable.

**[3] Mandamus 250 ⟲0**

250 Mandamus
A writ of mandamus may be sought when the challenged order turns on questions of privilege.

**[4] Mandamus 250 ⟲0**

250 Mandamus
Fact that defendant in patent infringement case had complied in large part with discovery order did not mean that it could not challenge a part of the order in a petition for a writ of mandamus.

**[5] Courts 106 ⟲0**

106 Courts
Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law.

**[6] Patents 291 ⟲0**

291 Patents
Questions of privilege and discoverability that arise from assertion of the advice-of-counsel defense in a patent infringement case necessarily involve issues of substantive patent law. 35 U.S.C.A. §§ 284-285.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                    Page 2

--- F.3d ----, 2006 WL 1149528 (C.A.Fed.)
(Cite as: --- F.3d ----)

**[7] Attorney and Client 45** ⇐0

45 Attorney and Client
The attorney-client privilege protects disclosure of communications between a client and his attorney.

**[8] Patents 291** ⇐0

291 Patents
Defendant which chose, in patent infringement case, to rely on the advice of in-house counsel, thus waived its attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel.

**[9] Attorney and Client 45** ⇐0

45 Attorney and Client
Once a party announces that it will rely on the advice of counsel defense in response to an assertion of willful patent infringement, the attorney-client privilege is waived, and the waiver applies to all other communications relating to the same subject matter.

**[10] Attorney and Client 45** ⇐0

45 Attorney and Client
The opinion formed in a patent infringement case by defendant's in-house counsel and conveyed to defendant's executives constituted a legal opinion, for purposes of determination of the scope of defendant's waiver of attorney-client privilege, even though it was not a traditional opinion of counsel.

**[11] Federal Courts 170B** ⇐0

170B Federal Courts
Court of Appeals reviews a district court's determination as to the scope of a waiver of attorney-client privilege for an abuse of discretion.

**[12] Federal Civil Procedure 170A** ⇐0

170A Federal Civil Procedure
In general, a party may obtain discovery of any matter that (1) is not privileged and (2) is relevant to the claim or defense of any party. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

**[13] Attorney and Client 45** ⇐0

45 Attorney and Client
Attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice.

**[14] Attorney and Client 45** ⇐0

45 Attorney and Client
Attorney-client privilege is at the discretion of the client.

**[15] Attorney and Client 45** ⇐0

45 Attorney and Client
Client can waive the attorney-client privilege when it uses the advice to establish a defense.

**[16] Federal Civil Procedure 170A** ⇐0

170A Federal Civil Procedure
Work-product doctrine, or work-product immunity, can protect documents and tangible things prepared in anticipation of litigation that are both non-privileged and relevant. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

**[17] Federal Civil Procedure 170A** ⇐0

170A Federal Civil Procedure
Work-product doctrine is not absolute, and a party may discover certain types of work product if they have substantial need of the materials in the preparation of the party's case and are unable without undue hardship to obtain the substantial equivalent by other means. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

**[18] Federal Civil Procedure 170A** ⇐0

170A Federal Civil Procedure
Rule allowing discovery of certain types of work product only allows discovery of factual or non-opinion work product and requires the court to protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----    Page 3
--- F.3d ----, 2006 WL 1149528 (C.A.Fed.)
(Cite as: --- F.3d ----)

of an attorney or other representative. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

[19] Federal Civil Procedure 170A €⇒0

170A Federal Civil Procedure
A party may discover work product if the party waives its immunity.

[20] Federal Civil Procedure 170A €⇒0

170A Federal Civil Procedure
Work product waiver is not a broad waiver of all work product related to the same subject matter, but only extends to factual or non-opinion work product concerning the same subject matter as the disclosed work product.

[21] Federal Civil Procedure 170A €⇒0

170A Federal Civil Procedure
Waiver of work product opinions extends to advice and work product given after litigation began when the advice is relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation.

[22] Federal Civil Procedure 170A €⇒0

170A Federal Civil Procedure
Work-product waiver in a patent infringement case extends only so far as to inform the court of the infringer's state of mind.

[23] Federal Civil Procedure 170A €⇒0

170A Federal Civil Procedure
Work product reflecting counsel's opinions and mental impressions, which is never communicated to the client, is not within the scope of a defendant's waiver of work-product immunity. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

[24] Federal Civil Procedure 170A €⇒0

170A Federal Civil Procedure
When an alleged patent infringer asserts an advice-of-counsel defense regarding willful infringement, it waives its attorney-client privilege and work-product immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused; waiver includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but, when appropriate, any documents referencing a communication between attorney and client.

[25] Federal Civil Procedure 170A €⇒0

170A Federal Civil Procedure
Outside counsel's work product in patent infringement case, that was not communicated to defendant and did not reflect a communication, was not within the scope of defendant's waiver of work-product immunity based on its assertion of an advice-of-counsel defense; any relevant value of such work product was outweighed by the policies of the work-product doctrine.

On Petition for Writ of Mandamus.

Harold J. McElhinny, Rachel Krevans, Alison M. Tucher, Morrison & Foerster LLP, San Francisco, CA, Jon R. Trembath, Merchant & Gould P.C., Denver, CO, for Petitioners.
Morgan Chu, Perry M. Goldberg, Christine Byrd, Irell & Manella LLP, Los Angeles, CA, for Respondent.

Before SCHALL, GAJARSA, and PROST, Circuit Judges.

*ORDER*
GAJARSA, Circuit Judge.
*1 EchoStar Communications Corporation, EchoStar DBS Corporation, EchoStar Technologies Corporation, and Echosphere Limited Liability Company (collectively "EchoStar") petition for a writ of mandamus, in Miscellaneous Docket No. 803, to direct the United States District Court for the Eastern District of Texas, in case 2:04-CV-1, to vacate its September 26, 2005 and October 6, 2005 orders that compelled EchoStar to produce documents created by the law firm Merchant & Gould P.C. that EchoStar asserts are protected from

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                     Page 4

--- F.3d ----, 2006 WL 1149528 (C.A.Fed.)
(Cite as: --- F.3d ----)

discovery by the work-product doctrine. Merchant & Gould moves for leave to intervene in Miscellaneous Docket No. 803 and submits its own petition for a writ of mandamus, filed as Miscellaneous Docket No. 805. TiVo, Inc. opposes the petitions and responds to the motion for leave to intervene. EchoStar and Merchant & Gould reply. We grant Merchant & Gould's unopposed motion for leave to intervene in Miscellaneous Docket No. 803. The motions for leave to file the replies are also granted. To the extent set forth below, we grant the petition for mandamus.

I

TiVo sued EchoStar for infringement of its U.S. Patent No. 6,233,389 ("the '389 patent"). In response to the allegation of willful infringement, EchoStar asserted the defense of reliance on advice of counsel. Prior to the filing of the action, EchoStar relied on advice of in-house counsel. After the action was filed, EchoStar obtained additional legal advice from Merchant & Gould but elected not to rely on it. Presumably to explore further EchoStar's state of mind in determining that it did not infringe the patent, TiVo sought production of documents in the possession of EchoStar and Merchant & Gould. The district court held that by relying on advice of in-house counsel EchoStar waived its attorney-client privilege and attorney work-product immunity relating to advice of any counsel regarding infringement, including Merchant & Gould. The district court indicated that the scope of the waiver included communications made either before or after the filing of the complaint and any work product, whether or not the product was communicated to EchoStar. The district court also held that EchoStar could redact information related only to trial preparation or information unrelated to infringement. EchoStar produced communications, including two infringement opinions from Merchant & Gould, but did not produce any work product related to the Merchant & Gould opinions.[FN1]

Thereafter, the parties sought clarification of the district court's order. TiVo argued that the district court should order EchoStar to produce all Merchant & Gould documents that relate to the advice-of-counsel defense, even if EchoStar was not in possession of the documents because they were never communicated to EchoStar. EchoStar argued that it should only be required to produce documents that were provided to it by Merchant & Gould.

On October 5, 2005, the district court issued an order that clarified its previous order and stated that the waiver of immunity extended to all work product of Merchant & Gould, whether or not communicated to EchoStar. The district court determined that the documents could be relevant or lead to the discovery of admissible evidence because they might contain information that was conveyed to EchoStar, even if the documents were not themselves conveyed to EchoStar. EchoStar petitions this court for a writ of mandamus with respect to the Merchant & Gould documents not provided to EchoStar,[FN2] challenging the district court's rulings. Merchant & Gould moves for leave to intervene in EchoStar's petition and submits its own petition for a writ of mandamus.

II

*2 [1][2][3] The remedy of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power. *In re Calmar, Inc.,* 854 F.2d 461, 464 (Fed.Cir.1988). A party seeking a writ bears the burden of proving that it has no other means of obtaining the relief desired, *Mallard v. U.S. Dist. Court,* 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989), and that the right to issuance of the writ is "clear and indisputable," *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). A writ of mandamus may be sought when the challenged order turns on questions of privilege. *In re Regents of Univ. of Cal.,* 101 F.3d 1386, 1387 (Fed.Cir.1996); *In re Pioneer Hi-Bred Int'l, Inc.,* 238 F.3d 1370, 1374 (Fed.Cir.2001).

EchoStar argues that a writ of mandamus should issue, among other reasons, because the district court erred in determining that (1) the attorney-client privilege had been waived and (2)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the waiver of any privilege extended to work-product that was not communicated to EchoStar because, *inter alia*, the documents are not relevant to whether EchoStar had a good faith belief that it did not infringe. Merchant & Gould also argues that the district court erred in requiring the production of documents that Merchant & Gould did not provide to EchoStar because any such documents could not be relevant to whether EchoStar reasonably had a good faith belief that it did not infringe, based upon advice from counsel.

In response, TiVo argues, *inter alia*, that (1) EchoStar is not entitled to a writ of mandamus because it has complied, in large part, with the district court orders it now challenges, (2) the attorney-client privilege was waived when EchoStar asserted a defense of reliance on advice of in-house counsel, (3) the relevance of the Merchant & Gould documents can be determined when they are offered as evidence, and (4) even though the Merchant & Gould documents may not have been provided to EchoStar, they may contain information that was otherwise conveyed to EchoStar.

[4] Regarding TiVo's first argument, that EchoStar is not entitled to mandamus because it has complied in large part with the order, we do not believe it is a requirement that a party refuse to comply at all with an order, if it seeks to challenge only a part of the order. Such a rule would encourage parties not to comply with district court orders that, in large part, they do not challenge, so that they could preserve a challenge only to the portions that they believe are erroneous. EchoStar cannot undo the disclosures it has made to TiVo, but it can challenge the portions of the order that require additional disclosures.

We now turn to the more substantive arguments underlying this petition.

III

[5][6] In this petition, we apply our own law, rather than the law of the regional circuit. This case involves the extent to which a party waives its attorney-client privilege and work-product immunity when it asserts the advice-of-counsel defense in response to a charge of willful patent infringement. "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law." *Advanced Cardiovascular Sys. v. Medtronic, Inc.,* 265 F.3d 1294, 1307 (Fed.Cir.2001). A remedy for willful patent infringement is specifically provided for in the Patent Act, *see* 35 U.S.C. §§ 284-285; therefore, questions of privilege and discoverability that arise from assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law, *see In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 803-04 (Fed.Cir.2000) (applying Federal Circuit law to question of attorney-client privilege between patent attorney and patentee).

A

*3 [7] EchoStar first challenges the district court's holding that EchoStar waived the attorney-client privilege when it asserted its defense in response to the charge of willful infringement. The attorney-client privilege protects disclosure of communications between a client and his attorney. *United States v. Zolin,* 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

[8][9] Once a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived. "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.,* 412 F.3d 1340, 1349 (Fed.Cir.2005).

[10] EchoStar argues that it did not assert the advice-of-counsel defense because it intended to rely only on an "in-house investigation supervised by in-house counsel." The district court held that the opinion formed by in-house counsel and conveyed to EchoStar executives, although not a traditional opinion of counsel, constituted a legal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----																																Page 6

--- F.3d ----, 2006 WL 1149528 (C.A.Fed.)
(Cite as: --- F.3d ----)

opinion. We see no error in the district court's determination.

EchoStar summarily asserts that "an internal investigation involving in-house engineers and in-house counsel is simply a different subject matter from legal opinions commissioned at a later date from outside lawyers." This argument is without merit. Whether counsel is employed by the client or hired by outside contract, the offered advice or opinion is advice of counsel or an opinion of counsel. Use of in-house counsel may affect the strength of the defense, but it does not affect the legal nature of the advice. *See Underwater Devices, Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 1390 (Fed.Cir.1983) (*overruled in part on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337 (Fed.Cir.2004) (*en banc*)).

Thus, when EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel, which would include communications with Merchant & Gould. *See Akeva LLC v. Mizuno Corp.,* 243 F.Supp.2d 418, 423 (M.D.N.C.2003).

B

EchoStar next asserts that the district court's order cast too wide a net by including within the waiver's scope documents that were never communicated from Merchant & Gould (the attorney) to EchoStar (the client). The district court stated:
EchoStar had the benefit of choice, as explained by the Federal Circuit in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* of whether to introduce [in-house counsel's] opinion. But once EchoStar chose to introduce the opinion, it opened to inspection all related advice sought and developed regarding EchoStar's potential infringement of the '389 patent. Regardless of when the opinions or materials were transcribed or communicated to EchoStar, such information necessarily relates to the opinion being offered by [in-house counsel] and goes to show EchoStar's state of mind with respect to willful infringement. This is particularly true where, as is the case here, EchoStar's willfulness witness was privy to the substance of the willfulness opinions developed by outside counsel both pre- and post-filing....

*4 *TiVo, Inc. v. EchoStar Comm. Corp.,* No. 2:04-CV-1, at 13 (E.D.Tex. Sept. 26, 2005) ("September Order"). Noting that district courts had ruled differently on whether the waiver of work-product protection covered documents that were not disclosed to the client, the district court discussed the reasons for requiring production of uncommunicated work product:Still, other courts have mandated production of all material regardless of whether they were disclosed, maintaining that the discovery of such information is necessary to uncover what the client was actually told by opinion counsel. *See Aspex Eyewear Inc. v. E'Lite Optik Inc.,* 276 F.Supp.2d 1084, 1092-93 (D.Nev.2003); *Novartis Pharms. Corp. v. EON Labs Mfg., Inc.,* 206 F.R.D. 396 (D.Del.2002). In *Novartis,* the court stated, "it is critical for the patentee to have a full opportunity to probe, not only the state of mind of the infringer, but also the mind of the infringer's lawyer upon which the infringer so firmly relied." *Id.* at 399. The rationale behind this approach is that, by imposing broad waiver, the advice of counsel defense will only be invoked by "infringers who prudently and sincerely sought competent advice from competent counsel ..." and " [m]oreover, focusing on the infringer's waiver rather than state of mind may reduce the chances of legal gamesmanship creeping into the practice of rendering infringement and validity opinions." *Id.* " [I]f negative information was important enough to reduce to a memorandum, there is a reasonable possibility that the information was conveyed in some form or fashion to the client." *Beneficial Franchise Co. Inc. v. Bank One N.A.,* 205 F.R.D. 212, 218 (N.D.Ill.2001).

September Order at 11-12.

In a subsequent order, the district court further explained why the scope of the waiver should include work product that was not disclosed to EchoStar:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Were discovery of "uncommunicated" materials not allowed, accused infringers could easily shield themselves from disclosing any unfavorable analysis by simply requesting that their opinion counsel not send it. This would be unfair.

*TiVo, Inc. v. EchoStar Comm. Corp.*, No. 2:04-CV-1, at 3 (E.D.Tex. Oct. 6, 2005) ("October Order").

[11] We review the district court's determination as to the scope of the waiver for an abuse of discretion. *In re Pioneer*, 238 F.3d at 1373 n. 2 (" [I]t appears that virtually all the circuits review the decision of a district court [regarding waiver of privilege] underlying a petition for writ of mandamus for abuse of discretion."). EchoStar asserts that to apply the broad scope employed by the district court to the waiver of both attorney-client privilege and work-product doctrine was an abuse of discretion. We agree.

[12][13][14][15] The attorney-client privilege and the work-product doctrine, though related, are two distinct concepts and waiver of one does not necessarily waive the other. *See Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed.Cir.1990) (*en banc* ), *superseded in non-relevant part*, Pub.L. No. 103-424, § 9(c), 108 Stat. 4361 (1994), *as recognized in Mudge v. United States*, 308 F.3d 1220, 1223 (Fed.Cir.2002); *see also United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). In general, a party may obtain discovery of any matter that (1) is "not privileged" and (2) "is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Among other things, attorney-client communications are designated as "privileged." *See Upjohn*, 449 U.S. at 389; *Genentech, Inc. v. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed.Cir.1997) . "The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *Id.* We recognize the privilege in order to promote full and frank communication between a client and his attorney so that the client can make well-informed legal decisions and conform his activities to the law. *See Upjohn*, 449 U.S. at 389; *XYZ Corp. v. United States*, 348 F.3d 16, 22 (1st Cir.2003). This privilege is at the discretion of the client. *Knorr-Bremse*, 383 F.3d at 1345; *Carter*, 909 F.2d at 1451. The client can waive the attorney-client privilege when, for instance, it uses the advice to establish a defense. *See id.* However, selective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice. *XYZ Corp.*, 348 F.3d at 24. In such a case, the party uses the attorney-client privilege as both a sword and a shield. *Id.; Fort James Corp.*, 412 F.3d at 1349. To prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter. *Id.*

*5 [16] In contrast to the attorney-client privilege, the work-product doctrine, or work-product immunity as it is also called, can protect " documents and tangible things" prepared in anticipation of litigation that are both non-privileged and relevant. Fed.R.Civ.P. 26(b)(3). Unlike the attorney-client privilege, which protects all communication whether written or oral, work-product immunity protects documents and tangible things, such as memorandums, letters, and e-mails. *See generally Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366 (D.C.Cir.2005). We recognize work-product immunity because it promotes a fair and efficient adversarial system by protecting "the attorney's thought processes and legal recommendations" from the prying eyes of his or her opponent. *Genentech*, 122 F.3d at 1415 (citations omitted); *accord Hickman v. Taylor*, 329 U.S. 495, 511-14, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ("Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.... Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.... Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the cause of justice would be poorly served."); *see also Nobles,* 422 U.S. at 237; *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980). Essentially, the work-product doctrine encourages attorneys to write down their thoughts and opinions with the knowledge that their opponents will not rob them of the fruits of their labor. *Hickman,* 329 U.S. at 511; *Id.* at 516 (Jackson, J. *concurring* ) ("[A] common law trial is and always should be an adversary proceeding. Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary."); *United States v. Adlman,* 68 F.3d 1495, 1501 (2d Cir.1995) ("The purpose of the doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation."); *Coastal States,* 617 F.2d at 864 (noting that the effect of no immunity would mean "less work-product would be committed to paper, which might harm the quality of trial preparation").

[17][18] Like the attorney-client privilege, however, the work-product doctrine is not absolute. *See In re Martin Marietta Corp.,* 856 F.2d 619, 626 (4th Cir.1988). First, a party may discover certain types of work product if they have "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent ... by other means." Rule 26(b)(3). This rule, however, only allows discovery of "factual" or "non-opinion" work product and requires a court to "protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative." *Id.; accord United States v. Adlman,* 134 F.3d 1194, 1197 (2d Cir.1998); *Martin Marietta Corp.,* 856 F.2d at 626.

*6 [19][20] Second, a party may discover work product if the party waives its immunity. *See id.* at 622-23; *Thorn EMI N. Am. v. Micron Tech.,* 837 F.Supp. 616, 621 (D.Del.1993). However, work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege. *Martin Marietta Corp.,* 856 F.2d at 626. Instead, work-product waiver only extends to "factual" or "non-opinion" work product concerning the same subject matter as the disclosed work product. *See id.* at 625 (noting that a party " impliedly waived the work-product privilege as to all non-opinion work-product on the same subject matter as that disclosed.") (*citing Nobles,* 422 U.S. at 239).

We recognize that the line between "factual" work product and "opinion" work product is not always distinct, especially when, as here, an attorney's opinion may itself be "factual" work product. When faced with the distinction between where that line lies, however, a district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product.

[21] That being said, we recognize at least three categories of work product that are potentially relevant to the advice-of-counsel defense here. They include: (1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client. *See Thorn EMI,* 837 F.Supp. at 622-623. [FN3] As to the first category, we already noted in section A that when a party relies on the advice-of-counsel as a defense to willful infringement the party waives its attorney-client privilege for all communications between the attorney and client, including any documentary communications such as opinion letters and memoranda. *See also Akeva LLC,* 243 F.Supp.2d at 423.[FN4] As to the other two categories, scholars have noted that our prior opinions do not clearly define the scope of the work-product waiver.[FN5] As a result, the district courts that have addressed this issue are split on just how far to extend that scope. *Compare Thorn EMI,* 837 F.Supp. at 621-623 *and Steelcase, Inc. v. Haworth, Inc.,* 954 F.Supp. 1195, 1198-99 (W.D.Mich.1997) *with Mushroom Assoc. v. Monterey Mushrooms, Inc.,* 24 U.S.P.Q.2d 1767 (N.D.Cal.1992); *FMT Corp. v. Nissei ASB Co.,* 24 U.S.P.Q.2d 1073 (N.D.Ga.1992); *and Handgards,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Inc. v. Johnson & Johnson,* 413 F.Supp. 926 (N.D.Cal.1976). As we discuss in more detail below, we conclude that waiver extends to the third category but does not extend so far as the second.

*7 [22] By asserting the advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or her attorney do not give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies. *See Thorn EMI,* 837 F.Supp. at 621-623 ( "[C]ourts generally find a [work-product] waiver only if facts relevant to a particular, narrow subject matter are at issue and have been disclosed under circumstances where it would be unfair to deny the other party an opportunity to discover other facts relevant to that subject matter."). Work-product waiver extends only so far as to inform the court of the *infringer's* state of mind. Counsel's opinion is not important for its legal correctness. It is important to the inquiry whether it is "thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." *Ortho Pharm. Corp. v. Smith,* 959 F.2d 936, 944 (Fed.Cir.1992). It is what the alleged infringer knew or believed, and by contradistinction not what other items counsel may have prepared but did not communicate to the client, that informs the court of an infringer's willfulness.

The overarching goal of waiver in such a case is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice. *See Fort James Corp.,* 412 F.3d at 1349; *Martin Marietta Corp.,* 856 F.2d at 626; *In re Sealed Case,* 676 F.2d 793, 818 (D.C.Cir.1982) ("[W]hen a party seeks greater advantage from its control over work product than the law must provide to maintain a healthy adversary system[,] then the balance of interests recognized in Hickman ... shifts."). To the extent the work-product immunity could have such an effect, it is waived.

[23] The second category of work product, which is never communicated to the client, is not discoverable. Under Rule 26(b)(3), this so-called "opinion" work product deserves the highest protection from disclosure. *See Adlman,* 134 F.3d at 1197. While an accused infringer may waive the immunity for work product that embodies an opinion in letters and memorandum communicated to the client, he does not waive the attorney's own analysis and debate over what advice will be given. *See Ortho Pharm.,* 959 F.2d at 944. Upon waiver of attorney-client privilege, communicative documents, such as opinion letters, become evidence of a non-privileged, relevant fact, namely what was communicated to the client, *see Nobles,* 422 U.S. at 239 n. 14 ("[W]here ... counsel attempts to make a testimonial use of [work-product] materials the normal rules of evidence come into play with respect to ... production of documents."); however, counsel's legal opinions and mental impressions that were not communicated do not acquire such factual characteristics and are, therefore, not within the scope of the waiver. As the *Martin Marietta Corp.* court noted,

*8 There is relatively little danger that a litigant will attempt to use a pure mental impression or legal theory as a sword and as a shield in the trial of a case so as to distort the factfinding process. Thus, the protection of lawyers from the broad repercussions of subject matter waiver in this context strengthens the adversary process, and, unlike the selective disclosure of evidence, may ultimately and ideally further the search for the truth.

856 F.2d at 626. Thus, if a legal opinion or mental impression was never communicated to the client, then it provides little if any assistance to the court in determining whether the accused knew it was infringing, and any relative value is outweighed by the policies supporting the work-product doctrine.

The third category of work product material falls admittedly somewhere interstitially between the first and second. In some instances there may be documents in the attorney's file that reference and/or describe a communication between the attorney and client, but were not themselves actually communicated to the client. For example, if an attorney writes a memorandum or an e-mail to his associate referencing a phone call with the client, in which he indicates that he discussed the client's potential infringement, then such a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

memorandum is discoverable. Unlike work product that was uncommunicated, this work product references a specific communication to the client. Though it is not a communication to the client directly nor does it contain a substantive reference to what was communicated, it will aid the parties in determining what communications were made to the client and protect against intentional or unintentional withholding of attorney-client communications from the court.

Still, we must emphasize that such communications may contain work product of the second kind-legal analysis that was not communicated. In those situations, the parties should take special care to redact such information, and if necessary the district court may review such material *in camera*. *See* Rule 26(b)(3); *see also id.* advisory committee's note (1970) ("[T]he courts will sometimes find it necessary to order disclosure of a document but with portions deleted."); *Martin Marietta Corp.*, 856 F.2d at 626.

[24] Therefore, when an alleged infringer asserts its advice-of-counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused. This waiver of both the attorney-client privilege and the work-product immunity includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a communication between attorney and client.[FN6]

[25] Here, Merchant & Gould work product that was not communicated to EchoStar or does not reflect a communication is not within the scope of EchoStar's waiver because it obviously played no part in EchoStar's belief as to infringement of the '389 patent. *See Steelcase*, 954 F.Supp. at 1198-99. It may very well be true, as TiVo suggests, that at times some parties would communicate draft opinion letters or the contents thereof to the client confidentially in order to avoid disclosing that communication during potential discovery if and when the attorney-client privilege is waived, but we cannot eviscerate the legitimate policies of the work-product doctrine and chill the principles of our adversary system as a whole on account of the possibility that, from time to time, there may be occurrences of ethical transgressions.

*9 In sum, the advice-of-counsel defense to willfulness requires the court to decide, *inter alia*, whether counsel's opinion was thorough enough to " instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." *Ortho Pharm.*, 959 F.2d at 944. If a Merchant & Gould document was not communicated to EchoStar or if a Merchant & Gould document does not reference a communication between Merchant & Gould and EchoStar, its relevant value is outweighed by the policies of the work-product doctrine. Thus, it was an abuse of discretion for the district court to determine that the scope of the waiver of privilege extended to such documents.

Accordingly,

IT IS ORDERED THAT:

The petitions are granted. The district court is directed to vacate its orders, to the extent noted above. TiVo is entitled to discovery of Merchant & Gould documents consistent with, and in the manner set forth in, this opinion.

FN1. EchoStar also provided notes and communications relating to infringement prepared by another firm.

FN2. No in-house counsel documents are at issue in the petition.

FN3. We by no means anticipate that all work product in every case will fit into one of these three categories.

FN4. EchoStar contends that waiver of opinions does not extend to advice and work product given after litigation began. While this may be true when the work

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                        Page 11

--- F.3d ----, 2006 WL 1149528 (C.A.Fed.)
(Cite as: --- F.3d ----)

product is never communicated to the client, it is not the case when the advice is relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation. *See Akeva LLC,* 243 F.Supp.2d at 423 ("[O]nce a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement."); *see also Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1351-1353 (Fed.Cir.2001) (noting that an infringer may continue its infringement after notification of the patent by filing suit and that the infringer has a duty of due care to avoid infringement after such notification).

FN5. *See* David O. Taylor, *Wasting Resources: Reinventing the Scope of Waiver Resulting from the Advice-of-Counsel Defense to a Charge of Willful Patent Infringement,* 12 Tex. Intell. Prop. L.J. 319, 320-21 (2004); William F. Lee & Lawrence P. Cogswell, III, *Understanding and Addressing the Unfair Dilemma Created by the Doctrine of Willful Patent Infringement,* 41 Hous. L.Rev. 393, 436-37 (2004).

FN6. Merchant & Gould contends that it alone retains the right to deny a party access to work product not communicated to a client. While we do not answer this question directly; here, the client, EchoStar, holds the right to waive privilege for attorney-client communications, *Carter,* 909 F.2d at 1451, and therefore the right to waive privilege to evidence of those communications contained in Merchant & Gould's files. As we stated before, there may be a redaction of information which reflects legal opinions and mental impressions of Merchant & Gould attorneys that were not communicated to EchoStar. Rule 26(b)(3).

C.A.Fed.,2006.
In re EchoStar Communications Corp.

--- F.3d ----, 2006 WL 1149528 (C.A.Fed.)

Briefs and Other Related Documents (Back to top)

• 2006-M805 (Docket) (Oct. 25, 2005)
• 06-M805 (Docket) (Oct. 25, 2005)
• 06-M803 (Docket) (Oct. 11, 2005)
• 2006-M803 (Docket) (Oct. 11, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.