IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, ALTEK CORPORATION and CHINON INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**COMPENDIUM OF UNREPORTED OPINIONS
CITED IN DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT OF INEQUITABLE CONDUCT**

PAUL M. LUKOFF (I.D. #96)
DAVID E. BRAND (I.D. #201)
1310 King Street
P. O. Box 1328
Wilmington, DE 19899
Tel. 302.888.6500
Fax: 302.888-6331
*Attorneys for Defendants*

**OF COUNSEL**
William F. Lee
Donald R. Steinberg
Michael J. Summersgill
Jordan L. Hirsch
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800

Date: May 23, 2006

**UNREPORTED OPINIONS**

Gilbarco, Inc. v. Octel Commc'ns Corp.
No. C-94-20780-JW, 1996 WL 75304 (N.D. Cal. February 15, 1996)

IDEC Pharm. v. Corixa Corp.
No. 01-1637-IEC (RBB), 2003 WL 24147449 (S.D. Cal. October 14, 2003)

Marlow Indus., Inc. v. Igloo Prods. Corp.
65 Fed. Appx. 313 (Fed. Cir. 2003)

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 75304 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
GILBARCO INC., Plaintiff,
v.
OCTEL COMMUNICATIONS CORP., Defendant.
No. C-94-20780-JW.

Feb. 15, 1996.

Michael J. Lennon, Kenyon & Kenyon, New York City, James P. Kleinberg, McCutchen, Doyle, Brown & Enersen, San Jose, CA, for plaintiff.
Robert P. Feldman, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, Stuart Madsen, Octel Communications Corporation, Milpitas, CA, for defendants.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S COUNTER-MOTION

WARE, District Judge.
*1 Defendant Octel Communications Corporation's ("Defendant") motion for summary judgment based on unenforceability, as well as Plaintiff's counter-motion for summary judgment, was heard by the Court on February 9, 1996. Robert Feldman of the Wilson, Sonsini, Goodrich & Rosati law firm appeared on behalf of Defendant and Michael J. Lennon of the Kenyon & Kenyon law firm appeared on behalf of Plaintiff Gilbarco, Inc. ("Plaintiff"). Based upon all pleadings filed to date, as well as on the oral argument of counsel, the Court GRANTS Defendant's motion and DENIES Plaintiff's counter-motion, as discussed in greater detail below.

I. BACKGROUND

Defendant moves this Court for an order granting its motion for summary judgment on the basis that the patent involved in this litigation, United States Patent No. 4,625,081 ("the '081 patent"), is invalid as a matter of law as a result of inequitable conduct which occurred during its prosecution. Plaintiff filed a counter-motion for summary judgment, requesting an order that the Court dismiss Defendant's defense of unenforceability on the basis that Defendant cannot establish that the inventors intended to deceive the PTO.

The '081 patent application was filed on November 30, 1982 by three Delphi employees, Lawrence Lotito, Ann Donaldson and Theresa Huxford. The applicants then assigned their rights in the patent to Delphi and Delphi went out of business shortly thereafter. Delphi was owned by Exxon Corporation, which also owned Gilbarco, a gas pump manufacturer. When Delphi went out of business, Exxon gave Gilbarco the rights to the '081 patent. Exxon sold Gilbarco in 1987. Gilbarco filed this action in 1994.

The '081 patent was issued on November 26, 1986 and describes a computerized voice service system that utilizes telephones, telephone lines and digital storage for recording, storing and forwarding messages. The '081 patent utilizes a "message basket" system whereby each client owns a message basket which is segregated into an inbasket and outbasket section. Through the message basket, a client may retrieve messages left in its inbasket and send messages to others through its outbasket. This system is known as the Delta 2 Telephone Voice Message System.

Defendant contends that the applicants, specifically Dr. Lawrence Lotito, withheld 4 material documents from the Patent and Trademark Office ("PTO") which disclose prior art and which show that Delphi offered to sell the Delta 2 system more than one year prior to the date of the '081 application. Defendant further contends that Dr. Lotito submitted a false declaration to the PTO which indicated that he was not aware of the withheld prior art. In fact, Dr. Lotito had authored several documents which memorialized his intimate knowledge of the withheld prior art and affirmed that he was not aware of any offers to sell the invention described in the '081 patent. Such evidence, Defendant asserts, supports a finding that Dr. Lotito intended to deceive the PTO.

*2 Plaintiff contends that Defendant's motion for summary judgment must be denied because material issues of triable fact exist regarding the materiality of any documents which were not provided to the PTO. Plaintiff also contends that material issues of fact exist regarding whether an offer to sell the exact Delta 2 system described in the '081 patent was made

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 75304 (N.D.Cal.)  
**(Cite as: Not Reported in F.Supp.)**

Page 2

one year prior to the '081 application date, whether certain documents were made available to the public and whether the Delta 2 System had even been fully developed.

At the hearing of the motions, Plaintiff also argued that Defendant could not prove by clear and convincing evidence that Dr. Lotito acted with a deceptive intent because Dr. Lotito turned over his files to the attorney, Mr. Roth, who was preparing the patent application. Plaintiff also moves for a dismissal of Defendant's defense of unenforceability.

II. LEGAL STANDARDS

A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. If he meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial. Id. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law ... Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. Masson v. New Yorker Magazine, Inc., 111 S.Ct. 2419, 2434-35 (1991) (citing Anderson, 477 U.S. at 255); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 588 (1986); T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, 808 F.2d at 631. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

B. Inequitable Conduct Standard

*3 If an applicant withholds material information from the PTO with the intent to acheive an allowance of the claims, an applicant may be found guilty of inequitable conduct and the patent obtained declared unenforceable. LaBounty Mfg., Inc. V. ITC, 958 F.2d 1066, 1070 (Fed. Cir. 1992). Inequitable conduct includes both failure to disclose material information and the submission of false information with the intent to mislead. J.P. Stevens & Co. V. Lex Tex Ltd., 747 F.2d 1553, 1559 (Fed. Cir. 1984). Prior art is considered "material" if a reasonable Patent Examiner would likely find it important in deciding whether to allow any claim in a patent application. 37 C.F.R. § 1.56 (1982). However, the prior art need not anticipate or render obvious the claims in the application. Merck & Co. v. Danbury Pharmacal, Inc., 873 F.2d 1418, 1421 (Fed. Cir. 1989).

In order to obtain summary judgment in the present case, Octel must establish that an '081 patent applicant or the applicant's attorney withheld or misrepresented material prior art and did so with a deceptive intent. J.P. Stevens & Co., infra, at 1559-60. Deceptive intent may established by circumstantial evidence. Paragon Podiatry Lab, Inc.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 75304 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

Page 3

V. KLM Labs, Inc., 984 F.2d 1182, 1184 (Fed. Cir. 1993). If Octel establishes a prima facie case of inequitable conduct, the burden shifts to Gilbarco to offer material facts rebutting Octel's showing or to demonstrate a genuine issue of material fact regarding such conduct. *Id.*

### III. DISCUSSION

#### A. Documents Withheld from PTO

Defendant contends that Plaintiff withheld 4 material documents from the PTO during the prosecution of the '081 application. The Court reviews each document below.

##### 1. SPCC Proposal

Title 35 U.S.C. § 102(b) provides that a person shall be entitled to a patent unless the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States. The '081 patent application was filed on November 30, 1982.

In this case, Defendant contends that the '081 patent is invalid because the invention described therein was on sale in this country before November 30, 1981, a year prior to the date of the '081 application. In support of its contention, Defendant submits a document entitled "Delta 2 Communications Engine and Delphi Voice Messaging System Proposal for Southern Pacific Communications Corporation" (the "SPCC" Proposal). (See Exhibit 13 to Declaration of Irwin R. Gross). The Proposal is dated February 16, 1981.

A review of Exhibit 13 reveals that Plaintiff was offering to sell to SPCC a Delta 2 Voice Messaging System, including both the operating system software necessary to run the Delta 2 computer and the application software necessary for the voice messaging system. Exhibit 13 appears to describe a voice message system which appears to be identical to the voice message system described in the '081 patent application.

*4 In addition, Dr. Lotito continuously reported to Delphi regarding the progress being made on the offer to sell the voice message system to SPCC from April, 1981 through July of 1981. (See Exhibits 5, 8, 10, 15 and 16). In fact, in September of 1991, Delphi accepted a check in the amount of $250,000.00 from SPCC for purchase of the voice message system. (Exhibit 10). None of these documents were provided to or disclosed to the PTO during the '081 patent application process.

Plaintiff contends that the Court cannot grant summary judgment based on the failure to disclose the Proposal since there are material issues of disputed fact regarding the following three areas: (1) whether the Proposal was ever sent to SPCC, (2) whether the Proposal discussed a concept or an actual developed product and (3) whether the Proposal constitutes material prior art.

With respect to the first alleged point of contention, Plaintiff points out that the Proposal is stamped "DRAFT" and that both Dr. Lotito and Ms. Donaldson, both named inventors, testified that they did not recall that the Proposal had been sent to SPCC. (See Exhibits E and F to Declaration of Robert F. Perry). The deponents lack of recollection is countered, however, by the testimony of Mr. Brown, a Delphi salesman. Mr. Brown testified that the Proposal was sent. (See Exhibit I). Further, Dr. Lotito's and Ms. Donaldson's testimony does not indicate that the Proposal was NOT sent. In fact, Dr. Lotito's subsequent reports to Delphi support the conclusion that the proposal was sent, since SPCC was negotiating with Delphi for the purchase of the system. (See Exhibits 5, 8, 10, 15 and 16). Exhibits 5, 8, 10, 15 and 16 also contradict Plaintiff's contention that the voice message system described in the Proposal was merely a "concept" and was not developed.

Finally, Plaintiff contends that its expert's testimony contradicts Defendant's expert's testimony regarding whether the Proposal is material prior art, thereby creating a triable issue of fact. As Defendant aptly notes, however, Plaintiff's expert identifies only 1 difference between Claim 1 of the '081 patent and the invention described in the Proposal. That difference is that Claim 1 discloses "message forwarding notices." Plaintiff contends, however, that Claim 1 does NOT require "message forwarding notices" in its pending motion for summary judgment on claim interpretation. Plaintiff cannot have it both ways.

In any event, the standard is not whether a particular document necessarily constitutes prior art. Rather, patent applicants are obliged to disclose to the PTO information which they are aware of which is material to the examination of the application. 37

Not Reported in F.Supp.
Page 4
Not Reported in F.Supp., 1996 WL 75304 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

C.F.R. § 1.56 (1982). Accordingly, the Court finds that there are no material, triable issues of fact regarding the issue of whether the SPCC Proposal constitutes an offer to sell the invention described in the '081 patent.

2. D-VMS Brochure

As noted above, Section 102(b) of Title 35 prohibits the issuance of a patent if the invention described in such patent was described in a printed publication in this or a foreign country more than one year prior to the application date. Defendant contends that in September of 1981, Plaintiff distributed its sales brochure regarding the Delta 2 voice messaging system at a trade show in San Diego. (See Exhibit 18).

*5 Plaintiff does not dispute that such brochure was distributed, but contends that the brochure does not contain sufficient detail to constitute material prior art. Again, however, Plaintiff's contention directly conflicts with its own argument. Plaintiff argues that a 1982 Conference Paper is indisputably prior art. The brochure, however, contains more detail than the Conference Paper. Therefore, Plaintiff's contention is not supported by the record and is insufficient to create a triable issue of material fact.

3. User's Guide

Defendants also contend that Plaintiff distributed a User's Guide at the Trade Show in San Diego. (Exhibit 19). Plaintiff contends that the Guide may not have been available to the public and that, even assuming it were available, it was not detailed enough to constitute prior material art.

With respect to Plaintiff's contention that the Guide may not have been available, the Court does not find that the testimony of Dr. Lotito, indicating that he does not recall if the Guide was available, creates a triable issue of material fact. (Exhibit E). Dr. Lotito testified that he did not recall, while Dr. Brown's testimony affirmatively states that the Guide was distributed. (Exhibit 31). Plaintiff's additional contention, that the Guide contains insufficient detail, has been discussed above.

4. Probe Paper

Defendants also point to the fact that Dr. Lotito was a speaker at a Voice Processing Seminar on November 4 and 5, 1981. During such seminar, Dr. Lotito distributed a paper (the "Probe Paper"), in which he described the Delta 2 Voice Message System, to the 60 or more seminar participants. The Probe Paper was not disclosed to the PTO.

Plaintiff argues that the Probe Paper is not material prior art and that another Probe Research Paper had already been provided to the PTO. As noted above, a document does not have to necessarily constitute prior art before an applicant's duty of candor arises. The 1981 Probe Paper may have constituted prior art and, therefore, should have been disclosed to the PTO. The fact that Dr. Lotito disclosed the 1982 Probe Paper does not solve the problem, since the 1982 Paper was published after the critical date here, November 30, 1981, and after the invention was completed.

B. Dr. Lotito's Declaration Submitted to the PTO

In addition to the documents described above, the Defendant also presents the Declaration of Dr. Lotito submitted to the PTO on November 30, 1982. (See Exhibit 29). The Declaration clearly and unequivocally states that the inventors, one of which was Dr. Lotito, do not know and do not believe that the claimed invention was described in any printed publication in any country more than one year prior to the application and that the claimed invention was not in use or on sale in the United States more than one year prior to the application. As shown above, Dr. Lotito clearly knew, since he authored the documents, that the claimed invention had been described in a printed publication and was on sale more than one year prior to the date of the '081 application. Plaintiff does not contend otherwise.

C. Deceptive Intent

*6 Based upon the foregoing, the Court finds that at least one of the applicants for the '081 patent, Dr. Lotito withheld or misrepresented material prior art or submitted a false sworn statement with a deceptive intent. *J.P. Stevens & Co. V. Lex Tex Ltd., 747 F.2d 1553 (Fed. Cir. 1984).* In this instance, the Court finds that Dr. Lotito clearly knew of the existence of the material prior art and failed to disclose such art to the PTO. However, even assuming that Dr. Lotito did not consider such documents, which he authored, to constitute material prior art, he submitted a false, sworn declaration to the PTO. Putting aside the issue

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 75304 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

Page 5

of material prior art, Dr. Lotito swore that he was not aware that a sale of the claimed invention had occurred more than one year prior to the '081 application. This statement is simply false and there can be no "good faith" defense to such statement since Dr. Lotito had intimate knowledge of the proposed sale from the outset. The record is replete with Dr. Lotito's own reports indicating the progress of the sales negotiations between Delphi and SPCC. (See Exhibits 5, 8, 10, 14, 15, and 16).

The system which was offered for sale does not have to include every element of the claimed invention. UMC Electronics Co. V. U.S., 816 F.2d 647, 653 (Fed. Cir. 1987). As a person necessarily skilled in the art, Dr. Lotito certainly realized that the material which he was not supplying to the PTO was material which a reasonable examiner would consider important in deciding whether to issue the patent.

Plaintiff contends, however, that the Court cannot find a deceptive intent by clear and convincing evidence based upon the record before it because the record indicates that Dr. Lotito acted on the advice of counsel and provided all of the documents discussed herein to counsel. The Court has reviewed the entire record, however, and does not find support in it for the contention that Dr. Lotito provided all of the documents herein to his counsel. In addition, when questioned regarding his reliance on counsel's advice, Dr. Lotito was instructed not to answer based on the assertion of the attorney-client privilege. Even assuming, for purposes of this motion, that Dr. Lotito provided all of the documents herein to his counsel, the fact remains that Dr. Lotito signed a false declaration and submitted it to the PTO.

### D. Plaintiff's Counter-Motion

Since the Court grants Defendant's motion for summary judgment and finds that there was inequitable conduct before the PTO during the prosecution of the '081 patent, Plaintiff's counter-motion is DENIED.

### IV. CONCLUSION

Based upon the foregoing, the Court finds that there are no material triable issues of fact and that Defendant is entitled to judgment as a matter of law on the basis that inequitable conduct occurred during the prosecution of United States Patent No. 4,625,081 which renders the patent unenforceable as a matter of law. Accordingly, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's counter-motion for summary judgment..

*7 IT IS SO ORDERED.

N.D.Cal.,1996.
Gilbarco Inc. v. Octel Communications Corp.
Not Reported in F.Supp., 1996 WL 75304 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 5:94cv20780 (Docket) (Oct. 07, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.