# EXHIBIT 23

| An das Europäische Patentamt | Seite 1 | Für das Europäische Patentamt bestimmt |
|---|---|---|
| To the European Patent Office | Page 1 | For the use of the European Patent Office |
| A l'Office européen des brevets | | Page destinée à l'Office européen des brevets |

# ANTRAG AUF ERTEILUNG EINES EUROPÄISCHEN PATENTS / REQUEST FOR GRANT OF A EUROPEAN PATENT / REQUETE EN DELIVRANCE D'UN BREVET EUROPEEN

| | |
|---|---|
| Der (Die) Unterzeichnete(n) beantragt (beantragen) die Erteilung eines europäischen Patents aufgrund dieser Anmeldung. <br><br> XX (We), the undersigned, request the grant of a European Patent on the basis of the present application. <br><br> Je (Nous), soussigné(s) requiers (requérons) la délivrance d'un brevet européen sur la base de la présente demande. | Nummer der Anmeldung / Application No. / N° de la demande <br><br> 84302203-9 |
| | Tag des Eingangs (Regel 24 (2)) / Date of Receipt (Rule 24 (2)) / Date de réception (règle 24 (2)) <br><br> 30 MAR 1984 |
| Zeichen des (der) Anmelders (Anmelder) oder Vertreters (Vertreter) (max. 15 Positionen) XXXXXXXX Representative's Reference (maximum 15 spaces) Référence du (des) demandeur(s) ou du (des) mandataire(s) (max. 15 caractères ou espaces) <br><br> ARGH /EA 1098 | Tag des Eingangs beim EPA (Regel 24 (4)) / Date of Receipt at the EPO (Rule 24 (4)) / Date de réception à l'OEB (règle 24 (4)) <br><br> 06. 4. 84 |
| | Anmeldetag / Date of Filing / Date de dépôt |

| I. Anmelder Applicant Demandeur | Weitere (Weitere) Anmelder ist (sind) in Feld XIX (Seite 5) angegeben. ☐ Additional applicant(s) indicated in Part XIX (page 5). Les autres demandeurs sont mentionnés à la rubrique XIX (page 5). | 98779900 |
|---|---|---|

Name / Nom

**AMPEX CORPORATION**

| Anschrift (mit Postleitzahl und Staat) Address (including postal code and State) Adresse (avec le code postal et le nom de l'Etat) <br><br> 401 Broadway, Redwood City, State of California 94063, United States of America. | Zustellanschrift Address for correspondence Adresse pour la correspondance | |
|---|---|---|

| Telefonnummer / Telephone number / Numéro de téléphone | Telegrammanschrift / Telegraphic address / Adresse télégraphique | Telexanschrift / Telex address / Numéro de télex |
|---|---|---|

| Staatsangehörigkeit / Nationality / Nationalité <br> a corporation organised and existing under the laws of the State of California, United States of America. | Staat des Wohnsitzes oder Sitzes / State of residence or of principal place of business / Etat du domicile ou du siège du demandeur <br><br> CALIFORNIA |
|---|---|

| II. Vertreterbestellung / Appointment of representative(s) / Constitution de mandataire(s) | 03240218 |
|---|---|

Nr. / No. / N° 4081    C.A. HAMER

Name (Hier nur einen Vertreter angeben, der in das europäische Patentregister eingetragen und den zugestellt wird). Name (Here name only one representative, who is to be listed in the Register of European Patents and to whom notification is to be made). Nom (n'indiquer ici qu'un seul mandataire, qui sera inscrit au Registre européen des brevets et auquel seront adressées les notifications).

HORTON; ANDREW ROBERT GRANT

Geschäftsanschrift (falls erwünscht, mit Angabe der Sozietät oder Firma, in der der Vertreter tätig ist) Address of place of business (including, if desired, the partnership or firm in which the representative works) Adresse professionnelle (si on le souhaite, avec l'indication du cabinet ou de la société où le mandataire exerce ses activités)

BOULT, WADE & TENNANT
27 Furnival Street
LONDON  EC4A 1PQ
United Kingdom

| Telefonnummer / Telephone number / Numéro de téléphone | Telegrammanschrift / Telegraphic address / Adresse télégraphique | Telexanschrift / Telex address / Numéro de télex |
|---|---|---|
| 01-404-5921 | BOULT LONDON TELEX | 267271 BOULT G |

EPA/EPO/OEB Form 1001.1 02.82

AX031664

Seite 2
Page 2

Für das Europäische Patentamt bestimmt
For the use of the European Patent Office
Page destinée à l'Office européen des brevets

---

**III.  Erfinder / Inventor / Inventeur**

☐  Anmelder ist (sind) alleiniger (alleinige) Erfinder.
   The applicant(s) is (are) the sole inventor(s).
   Le(s) demandeur(s) est (sont) le (les) seul(s) inventeur(s).

☒  Erfindernennung auf gesondertem Schriftstück.
   Designation of inventor attached.
   Voir la désignation de l'inventeur ci-jointe.

---

**IV.  Bezeichnung der Erfindung / Title of invention / Titre de l'invention**

"ELECTRONIC STILL STORE WITH HIGH SPEED SORTING AND
METHOD OF OPERATION"

---

**V.  Die Anmeldung ist eine Teilanmeldung**
   The application is a divisional application
   La présente demande constitue une demande divisionnaire

   ☐

   Nummer der früheren Anmeldung / Earlier application
   number / Numéro de la demande initiale

**VI.  Es handelt sich um eine Anmeldung nach Art. 61 (1) (b)**
   The application is an Art. 61 (1) (b) application
   La présente demande constitue une demande selon l'article 61 (1) (b)

   ☐

   Nummer der früheren Anmeldung / Original application number /
   Numéro de la demande initiale

---

**VII.  Prioritätserklärung (gegebenenfalls) / Declaration of priority (if any) / Déclaration de priorité (s'il y a lieu)**

(Angabe des Staats und Anmeldetags nicht nachholbar. Bei europäischen und internationalen Anmeldungen ist zumindest ein in diesen
Anmeldungen benannter Staat anzugeben.) / (Failure to indicate the State and filing date cannot subsequently be made good. At least one
State designated in European and international applications must be indicated.) / (Il ne peut être remédié au défaut d'indication de l'Etat
et de la date de dépôt. Dans le cas de demandes européennes et internationales, il y a lieu d'indiquer au moins un Etat désigné)

Weitere Priorität(en) ist (sind) in Feld XIX (Seite 5) angegeben.
Additional priority claim(s) indicated in Part XIX (page 5).
Les autres revendications de priorité sont indiquées à la rubrique XIX (page 5).

| | Staat / State / Etat | Anmeldetag / Filing date / Date de dépôt | Aktenzeichen / Application No. / N° de la demande |
|---|---|---|---|
| 1. | UNITED STATES OF AMERICA | 8th April 1983 | 483327 |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

---

**VIII.  Benennung von Staaten /**     (Da eine nachträgliche Benennung nicht zulässig ist, werden vorsorglich sämtliche Staaten in Feld XVII benannt)
**Designation of States /**     (As subsequent designation is not permitted, all States are designated in Part XVII as a precautionary measure)
**Désignation des Etats**     (Etant donné qu'une désignation ultérieure n'est pas admissible, tous les Etats sont désignés à toutes fins utiles à la rubrique XVII)

| | | | | |
|---|---|---|---|---|
| 1. | GERMAN FEDERAL REPUBLIC | ☐ | 9. | ☐ |
| 2. | FRANCE | ☐ | 10. | ☐ |
| 3. | UNITED KINGDOM | ☐ | 11. | ☐ |
| 4. | THE NETHERLANDS | ☐ | 12. | ☐ |
| 5. | SWITZERLAND & LIECHTENSTEIN | ☐ | 13. | ☐ |
| 6. | | ☐ | 14. | ☐ |
| 7. | | ☐ | 15. | ☐ |
| 8. | | ☐ | 16. | ☐ |

---

**IX.  Verschiedene Anmelder für verschiedene benannte Staaten (gegebenenfalls) / Different applicants for different designated States (where applicable) / Différents demandeurs correspondant aux différents Etats désignés (s'il y a lieu)**

☐  Weiterer verschiedener (Weitere verschiedene) Anmelder ist (sind) in Feld XIX (Seite 5) angegeben.
   Additional such applicant(s) indicated in Part XIX (page 5).
   Le(s) différent(s) demandeur(s) additionnel(s) est (sont) mentionné(s) à la rubrique XIX (page 5).

| Name des Anmelders (Namen der Anmelder) / Name(s) of applicant(s) / Nom(s) du (des) demandeur(s) | Benannter Staat (Benannte Staaten) / Designated State(s) / Etat(s) désigné(s) |
|---|---|
| | |

---

EPA/EPO/OEB Form 1001.3 02.82

AX031665

Für das Europäische Patentamt bestimmt
For the use of the European Patent Office
Page destinée à l'Office européen des brevets

**X. Zahl der Patentansprüche: / Number of claims: / Nombre de revendications:**

Ggf. Zahl der Patentansprüche einer weiteren Reihe von Patentansprüchen (Art. 167 (2) (a)): **THIRTEEN**
Number of claims of an additional set of claims (Art. 167 (2) (a)), if any:
Le cas échéant, nombre de revendications dans une série supplémentaire de revendications (art. 167 (2) (a)):

**XI. Zusammenfassung / Abstract / Abrégé**

Abbildung Nr.          wird zur Veröffentlichung mit der Zusammenfassung vorgeschlagen.

Figure No.     1     is proposed for publication with the abstract.

Il est proposé de publier l'abrégé accompagné de la figure n°

**XII. Mikroorganismen / Micro-organisms / Micro-organismes**

☐ Bei der Erfindung wird ein Mikroorganismus verwendet, der gemäß Regel 28 (1) hinterlegt wurde.
The invention involves the use of a micro-organism which has been deposited in accordance with Rule 28 (1).
L'invention comporte l'utilisation d'un micro-organisme, qui a été déposé conformément à la règle 28, paragraphe 1.

Die Angaben nach Regel 28 (1) (c) / The particulars pursuant to Rule 28 (1) (c) / Les indications fournies conformément à la règle 28, (1) (c)

☐ sind auf Seite(n) . . . . , Zeile(n) . . . . der technischen Anmeldungsunterlagen enthalten.
are given on page(s) . . . . , line(s) . . . . of the technical documents in the application.
figurent page(s) . . . . , ligne(s) . . . . des pièces techniques de la demande.

☐ werden später mitgeteilt. / will be submitted at a later date. / seront communiquées ultérieurement.

**XIII. Zusätzliche Abschrift der im europäischen Recherchenbericht angeführten Schriftstücke / Additional copy of the documents cited in the European search report / Copie supplémentaire des documents cités dans le rapport de recherche européenne**

Es wird eine zusätzliche Abschrift der im europäischen Recherchenbericht angeführten Schriftstücke angefordert.
☒ An additional copy of the documents cited in the European search report is requested.
Une copie supplémentaire des documents cités dans le rapport de recherche européenne est demandée.

**XIV. Prüfungsantrag (Artikel 94) / Request for examination (Article 94) / Requête en examen (article 94)**

☒ Es wird hiermit beantragt, zu prüfen, ob die europäische Patentanmeldung und die Erfindung, die sie zum Gegenstand hat, den Erfordernissen des Europäischen Patentübereinkommens genügen.
It is hereby requested that an examination be carried out to establish whether the European patent application and the invention to which it relates meet the requirements of the European Patent Convention.
Le (la) dénommé(e) sollicite(nt) que l'on examine si la demande de brevet européen et l'invention qui en fait l'objet satisfont aux conditions prévues par la Convention sur le brevet européen.

**XV. Gebührenzahlungen / Payment of fees / Paiement des taxes**

Die nachstehenden Gebühren werden (wurden) entrichtet: / The following fees will be (have been) paid: / Les taxes suivantes vont être (ont été) acquittées:

| | | |
|---|---|---|
| ☒ Anmeldegebühr und Recherchengebühr nach Artikel 78 (2) | Filing fee and search fee pursuant to Article 78 (2) | Taxe de dépôt et taxe de recherche, conformément à l'article 78, paragraphe 2 |
| ☒ Benennungsgebühr für jeden in Feld VIII benannten Vertragsstaat nach Artikel 79 (2) | Designation fee pursuant to Article 79 (2) for each Contracting State designated in Part VIII | Taxe de désignation pour chaque État contractant désigné à la rubrique VIII, conformément à l'article 79, paragraphe 2 |
| ☒ Anspruchsgebühr(en) für den 11. und jeden weiteren Patentanspruch nach Regel 31 (1) | Claims fee(s) pursuant to Rule 31 (1) for the 11th and each subsequent claim | Taxe(s) pour chaque revendication à partir de la onzième, conformément à l'article 31, paragraphe 1 |
| ☐ Prüfungsgebühr nach Artikel 94 (2) | Examination fee pursuant to Article 94 (2) | Taxe d'examen, conformément à l'article 94, paragraphe 2. |
| ☒ Gebühr für die zusätzliche Abschrift der im europäischen Recherchenbericht angeführten Schriften | Fee for the additional copy of the documents cited in the European search report | Taxe pour la copie supplémentaire des documents cités dans le rapport de recherche européenne |

**XVI. Antrag auf Rückerstattung der Recherchengebühr / Request for a refund of the search fee / Demande de remboursement de la taxe de recherche**

☐ Ich beantrage hiermit gemäß Art. 10 GebO die (teilweise) Rückerstattung der Recherchengebühr, weil das EPA bereits für eine Patentanmeldung, deren Priorität beansprucht wird (siehe Feld VII) oder die eine frühere Anmeldung im Sinne des Art. 76 oder der Regel 15 EPÜ darstellt, einen Recherchenbericht erstellt hat.
Pursuant to Art. 10, Rules relating to Fees, I hereby request a (partial) refund of the search fee, because the EPO has already prepared a search report on an application whose priority is claimed (see Part VII) or which is the earlier application within the meaning of Art. 76 or the original application within the meaning of Rule 15 EPC.
Je demande par la présente, conformément à l'article 10 du règlement relatif aux taxes, le remboursement (en partie) de la taxe de recherche, l'OEB ayant déjà établi un rapport de recherche pour une demande de brevet dont la priorité est revendiquée (voir rubrique VII) ou qui constitue la demande initiale au sens de l'article 76 ou de la règle 15 de la CBE.

☐ Eine Kopie des Recherchenberichts ist beigefügt.
A copy of the search report is attached.
Une copie du rapport de recherche est jointe.

EPA/EPO/OEB Form 1001.5 02.82

AX031666

Seite 4
Page 4

Für das Europäische Patentamt bestimmt
For the use of the European Patent Office
Page destinée à l'Office européen des brevets

**XVII. Vorsorgliche Benennung sämtlicher Vertragsstaaten (Zusatzangabe zu Feld VIII: Benennung von Staaten) / Precautionary designation of all the Contracting States (Supplement to Part VIII: Designation of States) / Désignation de tous les États contractants à toutes fins utiles (renseignements complétant ceux donnés à la rubrique VIII – Désignation des États)**

[X] Die im Feld VIII angebenen Staaten sind jene, für die die Zahlung der Benennungsgebühren vorgenommen wurde oder derzeit beabsichtigt ist. Vorsorglich werden jedoch sämtliche Vertragsstaaten des EPÜ wie folgt benannt:
Bundesrepublik Deutschland, Niederlande, Vereinigtes Königreich, Schweiz, Frankreich, Luxemburg, Belgien, Schweden, Italien, Österreich, Liechtenstein.[1]
Es wird ersucht, die Benennung der hier zusätzlich benannten Vertragsstaaten als vom Anmelder zurückgenommen zu betrachten, wenn für diese Staaten die Benennungsgebühren nicht bis zum Ablauf der in Regel 85a vorgesehenen Nachfrist entrichtet werden.
Es wird beantragt, einen Hinweis auf die Regel 85a und einer Mitteilung nach Regel 69 (1) betreffend die hier zusätzlich benannten Vertragsstaaten abzusehen.

The States indicated in Part VIII are those for which it is at present intended to pay designation fees if these have not already been paid. As a precautionary measure, however, all the EPC Contracting States are being designated as follows:
Federal Republic of Germany, Netherlands, United Kingdom, Switzerland, France, Luxembourg, Belgium, Sweden, Italy, Austria, Liechtenstein.[1]
It is hereby requested that the designation of any additional States thereby included be regarded as withdrawn by the applicant if the designation fees have not been paid by the time the period of grace allowed in Rule 85a expires. A reminder of the provisions of Rule 85a and a communication in accordance with Rule 69, paragraph 1, concerning the additional Contracting States designated above will not therefore be required.

Les États mentionnés sous VIII sont ceux pour lesquels les taxes de désignation ont été payées ou pour lesquels l'on se propose actuellement de verser les taxes de désignation. A toutes fins utiles, l'ensemble des États contractants de la CBE sont toutefois désignés dans l'ordre suivant:
République fédérale d'Allemagne, Pays-Bas, Royaume-Uni, Suisse, France, Luxembourg, Belgique, Suède, Italie, Autriche, Liechtenstein.[1]
Il est demandé, au cas où les taxes de désignation pour les États contractants désignés ci-dessus à titre complémentaire ne seraient pas acquittées dans le délai supplémentaire prévu à la règle 85 bis, que la désignation desdits États soit considérée comme retirée par le demandeur. Le soussigné requiert qu'en ce qui concerne ces mêmes États, il soit renoncé à procéder au rappel de la règle 85 bis ainsi qu'à la notification visée à la règle 69, paragraphe 1.

1) Die Liste der Vertragsstaaten gibt den derzeitigen Stand des Ratifikationsverfahrens wieder. Die Reihenfolge der Aufzählung entspricht der Reihenfolge der Hinterlegung der Ratifikations- oder Beitrittsurkunden. Es steht dem Anmelder frei, eine andere Reihenfolge zu wählen. Dafür besteht aber für die bloße vorsorgliche Benennung von Vertragsstaaten kein Anlaß.
2) The list of Contracting States reflects the current state of the ratification procedure. The order of the list corresponds to the order of the deposit of the ratification or accession documents. The applicant is at liberty to follow a different order, although there is no reason for doing so in the case of a purely precautionary designation of Contracting States.
3) La liste des États contractants reflète l'état actuel de la procédure de ratification. L'énumération des États suit l'ordre dans lequel les instruments de ratification et d'adhésion ont été déposés. Le demandeur a toute liberté de choisir un ordre différent. Il n'existe toutefois aucune raison de le faire lorsqu'il s'agit seulement de désigner les États contractants à toutes fins utiles.

**XVIII. Liste der beigefügten Unterlagen / Checklist / Liste de contrôle**

**A. Anmeldungsunterlagen und Prioritätsbeleg(e)**
Application documents and priority document(s)
Pièces de la demande et document(s) de priorité

| | Stückzahl<br>Number<br>of copies<br>Nombre<br>d'exemplaires | Blattzahl<br>eines Stücks<br>Number of sheets<br>in each copy<br>Nombre de feuilles<br>par exemplaire |
|---|---|---|
| 1. Beschreibung*<br>Description | 3 | 8 |
| 2. Patentansprüche*<br>Claim(s)<br>Revendication(s) | 3 | 5 |
| 2a. Ggf. unterschiedliche Patentansprüche (Art. 167 (2) (a))* /<br>Different claims (Art. 167 (2) (a)), if any /<br>Le cas échéant, revendications différentes (art. 167 (2) (a)) | — | — |
| 3. Zeichnung(en)*<br>Drawing(s)<br>Dessin(s) | 3 | 1 |
| 4. Zusammenfassung*<br>Abstract<br>Abrégé | 3 | 1 |
| 5. Prioritätsbeleg(e)<br>Priority document(s)<br>Document(s) de priorité | 1 | |
| 6. Übersetzung des (der) Prioritätsbelegs (belege) /<br>Translation of priority document(s) /<br>Traduction du (des) document(s) de priorité | — | |

**B. Der Anmeldung in der eingereichten Fassung liegen folgende Schriftstücke bei:**
This application as filed is accompanied by the items below:
A la présente sont annexés les documents suivants:

1. [X] Unterzeichnete Vollmacht / Signed authorisation / Pouvoir signé

2. [X] Erfindernennung / Designation of inventor / Désignation de l'inventeur

3. [ ] Früherer Recherchenbericht / Earlier search report / Rapport de recherche antérieure

4. [X] Abbuchungsauftrag / Instructions to debit account / Ordre de débit

5. [ ] Sonstige Unterlagen (bitte spezifizieren) / Other (please specify) / Autres documents (veuillez préciser)

* in drei Stücken einzureichen / to be filed in triplicate / à déposer en trois exemplaires

EPA/EPO/OEB Form 1001.7 02.82

AX031667

Seite 5
Page 5.

Für das Europäische Patentamt bestimmt
For the use of the European Patent Office
Page destinée à l'Office européen des brevets

XIX. Zusatzangaben / Additional Information / Renseignements complémentaires

☐ Wenn Feld XIX nicht ausreicht, weitere Angaben auf gesondertem unterzeichnetem Blatt.
If there is not enough space in Part XIX, use a separate signed sheet to furnish additional information.
Au cas où la rubrique XIX se révélerait insuffisante, porter les renseignements complémentaires sur une feuille séparée, signée.

Sollte ein Feld für die einzusetzenden Angaben nicht ausreichen, so ist Feld XIX oder, falls auch hier der Platz nicht ausreichen sollte, ein
zusätzliches Blatt zu benützen. Jedes auf dieser Seite fortgesetzte Feld ist mit seiner römischen Zahl und seiner Bezeichnung anzugeben
(z. B. „I. Anmelder (Fortsetzung)".
Use Part XIX if any of the boxes are not large enough to contain information to be furnished. In case there is not enough room, use an
additional sheet. Indicate the box continued on this sheet by its (Roman) numeral and title (e.g. "I. Applicant (continued)".
Prière d'utiliser la rubrique XIX ou une feuille supplémentaire au cas où l'un des emplacements se révélerait insuffisant pour contenir les
renseignements à fournir. Chacune des rubriques ainsi complétées sur la présente feuille sera repérée par son numéro (chiffre romain) et
son titre (par exemple «I. Demandeur (suite)».

II.              Representatives (Continued)

RENNIE:   Ian Malcolm,           BUSHELL:      John Stephen,

BRISTOW:  Cyril,                  HARDISTY:     David Robert,

MAYES:    Stuart David,          BAVERSTOCK:   Michael George Douglas,

~~HORTON: XXX XXXXX XXXXXX XXXXX~~  BAYLISS:      Geoffrey Cyril,

ALLARD:   Susan Joyce,           BIZLEY:       Richard Edward,

ALEXANDER: Thomas Bruce,         CROSS:        Rupert Edward Blount

XX. Unterschrift(en) des (der) Anmelders (Anmelder oder Vertreter (Vertreter)
Signature(s) of ~~applicant(s) or~~ representative(s)
Signature(s) du (des) demandeur(s) ou du (des) mandataire(s)

Für Angestellte nach Artikel 133 (3) Satz 1 EPÜ mit
allgemeiner Vollmacht
For employees under Article 133 (3) 1st sentence EPC
having general authorisation
Pour les employés mentionnés à l'article 133,
paragraphe 3, 1ère phrase de la CBE, munis d'un
pouvoir général

Nr. / No. / N°

Ort / Place / Lieu   LONDON            Datum / Date

30th March 1984

HORTON ;   ANDREW ROBERT GRANT

(Name des (der) Unterzeichneten bitte mit Schreibmaschine wiederholen. Bei juristischen Personen bitte die Stellung des (der) Unter-
zeichneten innerhalb der Gesellschaft mit Schreibmaschine angeben)
(Please type name under signature. In the case of legal persons, the position of the signer within the company should also be typed)
(Le ou les noms des signataires doivent être également dactylographiés. S'il s'agit d'une personne morale, la position occupée au sein de
celle-ci par le ou les signataires sera indiquée à la machine à écrire).

EPA/EPO/OEB Form 1001 9 02.82

AX031668

Seite 5
Page 5

Für das Europäische Patentamt bestimmt
For the use of the European Patent Office
Page destinée à l'Office européen des brevets

XIX. Zusatzangaben / Additional information / Renseignements complémentaires

Wenn Feld XIX nicht ausreicht, weitere Angaben auf gesondertem unterzeichnetem Blatt.
If there is not enough space in Part XIX, use a separate signed sheet to furnish additional information.
Au cas où la rubrique XIX se révélerait insuffisante, porter les renseignements complémentaires sur une feuille séparée, signée.

Sollte ein Feld für die einzusetzenden Angaben nicht ausreichen, so ist Feld XIX oder, falls auch hier der Platz nicht ausreichen sollte, ein zusätzliches Blatt zu benützen. Jedes auf dieser Seite fortgesetzte Feld ist mit seiner römischen Zahl und seiner Bezeichnung anzugeben (z. B. J. Anmelder (Fortsetzung)».
Use Part XIX if any of the boxes are not large enough to contain information to be furnished. In case there is not enough room, use an additional sheet. Indicate the box continued on this sheet by its (Roman) numeral and title (e.g.: "I. Applicant (continued)".
Prière d'utiliser la rubrique XIX ou une feuille supplémentaire au cas où l'un des emplacements se révélerait insuffisant pour contenir les renseignements à fournir. Chacune des rubriques ainsi complétées sur la présente feuille sera repérée par son numéro (chiffre romain) et son titre (par exemple «I. Demandeur (suite)».

II.        **Representatives (Continued)**

RENNIE:    Ian Malcolm,              BUSHELL:     John Stephen,

BRISTOW:   Cyril,                    HARDISTY:    David Robert,

MAYES:     Stuart David,            BAVERSTOCK:  Michael George Douglas,

~~HORTON~~XXX~~MAINXX~~XXXXXX~~XXXXXX~~XXXXX,  BAYLISS:     Geoffrey Cyril,

ALLARD:    Susan Joyce,             BIZLEY:      Richard Edward,

ALEXANDER: Thomas Bruce,            CROSS:       Rupert Edward Blount

XX. Unterschrift(en) des (der) Anmelders (Anmelder) oder Vertreters (Vertreter)
Signature(s) of ~~applicant(s) or~~ representative(s)
Signature(s) du (des) demandeur(s) ou du (des) mandataire(s)

Für Angestellte nach Artikel 133 (3) Satz 1 EPÜ mit allgemeiner Vollmacht
For employees under Article 133 (3) 1st sentence EPC having general authorisation
Pour les employés mentionnés à l'article 133, paragraphe 3, 1ère phrase de la CBE, munis d'un pouvoir général

Ort / Place / Lieu    LONDON            Datum / Date

30th March 1984                                    Nr. / No. / N°

HORTON ;   ANDREW ROBERT GRANT

(Name des (der) Unterzeichneten bitte mit Schreibmaschine wiederholen. Bei juristischen Personen bitte die Stellung des (der) Unterzeichneten innerhalb der Gesellschaft mit Schreibmaschine angeben)
(Please type name under signature. In the case of legal persons, the position of the signer within the company should also be typed)
(Le ou les noms des signataires doivent être également dactylographiés. S'il s'agit d'une personne morale, la position occupée au sein de celle-ci par le ou les signataires sera indiquée à la machine à écrire).

AX031669

**ERFINDERNENNUNG / DESIGNATION OF INVENTOR / DESIGNATION DE L'INVENTEUR**

(falls Anmelder nicht oder nicht allein der Erfinder ist) / (where the applicant is not the inventor or is not the sole inventor) / (si le demandeur n'est pas l'inventeur ou l'unique inventeur)

Nr. der Anmeldung / Application N° / N° de la demande

Zeichen des (der) Anmelders (Anmelder) oder Vertreters (Vertreter) (max. 15 Positionen)
X̶e̶i̶c̶h̶e̶n̶s̶ Representative's Reference (max. 15 spaces)
Référence du (des) demandeur(s) ou du (des) mandataire(s)
(15 caractères au maximum)

ARGH/EA1098

In Sachen der europäischen Patentanmeldung (Bezeichnung der Erfindung)
In respect of the European patent application (title of the invention)
En ce qui concerne la demande de brevet européen (Titre de l'invention)

"ELECTRONIC STILL STORE WITH HIGH SPEED
SORTING AND METHOD OF OPERATION"

nennt (nennen) der (die) Unterzeichnete(n)[1]
X (we), the undersigned[1]
le(s) soussigné(s)[1]

AMPEX CORPORATION

als Erfinder[2]:
do hereby designate as inventor(s)[2]:
désigne(nt) en tant qu'inventeur(s)[2]:

BEAULIER; DANIEL A. #

324 Yale Road #

Menlo Park, CA 94025 # USA

☐ (Weitere Erfinder sind auf einem gesonderten Blatt angegeben.)[3]
(Additional inventors indicated on supplementary sheet.)[3]
(les autres inventeurs sont mentionnés sur une feuille supplémentaire.)[3]

Erklärung darüber, wie der (die) Anmelder das Recht auf das europäische Patent erlangt hat (haben):[4]
Statement indicating the origin of the right to the European patent:[4]
Déclaration indiquant l'origine de l'acquisition du droit au brevet:[4]

by virtue of an Assignment dated 16th June 1983.

Ort/Place/Lieu    LONDON         Datum/Date 30th March 1984

Unterschrift(en) des (der) Anmelders (Anmelder) oder Vertreters (Vertreter)
Signature(s) of the applicant(s) or representative(s)
Signature(s) du (des) demandeur(s) ou du (des) mandataire(s)

HORTON; ANDREW ROBERT GRANT

- Namen des (der) Unterzeichneten mit Schreibmaschine wiederholen - / - Please supplement signature(s) by typewritten name(s) - / - dactylographier le(s) nom(s)
du (des) signataire(s) su-dessous de la signature -

EPA/EPO/OEB Form 1002  1.79                              bitte wenden / P. T. O. / T. S. V. P.

AX031670



Erhardtstraße 27
D-8000 München 2
☎ 089 / 2399-0
Tx  523 656 epmu d
FAX 089 / 23 99-44 65

| Europäisches Patentamt | European Patent Office | Office européen des brevets |
| --- | --- | --- |
| Beschwerdekammern | Boards of Appeal | Chambres de recours |

Horton, Andrew Robert Grant
BOWLES HORTON
Felden House
Dower Mews
High Street
Berkhamsted
Hertfordshire HP4 2BL
GRANDE BRETAGNE

Datum/Date
21.12.92

| Zeichen/Rel/Réf | Anmeldung Nr./Application No./Demande n°//Patent Nr./Patent No./Brevet n° |
| --- | --- |
| ARGH/EA 1098 | 84302203.9-2202/ |
| Anmelder/Applicant/Demandeur/Patentinhaber/Proprietor/Titulaire | |
| AMPEX CORPORATION | |

| Aktenzeichen | File Number | Numéro du dossier |
| --- | --- | --- |
| | T 249 191 -351 | |

| In der Anlage erhalten Sie eine Kopie der Entscheidung vom | Please find enclosed a copy of the decision dated | Veuillez trouver en annexe une copie de la décision du |
| --- | --- | --- |
| | 04.12.92 | |

| Geschäftsstelle Tel. (089) 23 99 - | Registry Tel. (089) 23 99 - | Greffe Tél. (089) 23 99 - |
| --- | --- | --- |

R. Schumacher

| Einschreiben | Registered letter | Lettre recommandée |
| --- | --- | --- |

EPA / EPO / OEB Form 3032  09.92

AX031873



| Europäisches Patentamt | European Patent Office | Office européen des brevets |
|---|---|---|
| Beschwerdekammern | Boards of Appeal | Chambres de recours |

Case Number : T T 249/91 - 3.5.1

# D E C I S I O N
## of the Technical Board of Appeal 3.5.1
### of 4 December 1992

Appellant :                     Ampex Corporation
                                401 Broadway
                                M.S. 3-35
                                Redwood City
                                California 94063-3199  (US)


Representative :                Horton, Andrew Robert Grant
                                Bowles Horton
                                Felden House
                                Dower Mews
                                High Street
                                Berkhamsted
                                Hertfordshire HP4 2BL  (GB)


Decision under appeal :         Decision of the Examining Division  of the
                                European Patent Office dated 22 October 1990
                                refusing European patent application
                                No. 84 302 203.9 pursuant to Article 97(1) EPC.


Composition of the Board :

Chairman :   P.K.J. van den Berg
Members  :   W.B. Oettinger
             E.M.C. Holtz

AX031874



BESCHWERDEKAMMERN          BOARDS OF APPEAL          CHAMBRES DE RECOURS
DES EUROPÄISCHEN           OF THE EUROPEAN           DE L'OFFICE EUROPEEN
PATENTAMTS                 PATENT OFFICE             DES BREVETS

| A | | B | X | C | |
|---|---|---|---|---|---|

File Number:          T 249/91 - 3.5.1

Applicatio84 302 203.9

Publication No.:      0 122 094

Title of invention:  Electronic still store with high speed sorting and method
                     of operation

Classification:      H04N 5/76

D E C I S I O N
of 4 December 1992

Applicant:            Ampex Corporation


Headword:

EPC           Articles 54, 56, 83, 84, 111(1), Rules 27(1), 29(1),(2),(5)

Keyword:      "Sufficiency of disclosure (considered, confirmed)" - "Claims clear
              in defining the matter to be protected (yes) - no further
              specifying feature necessary" - "Claims of the same category
              concise (yes)" - "Two-part apparatus claims correctly partitioned
              (yes) - one-part method claim appropriate (yes)" - "Problem can be
              understood from description (yes)" - "Novelty (yes)" - "Ground for
              refusal was not lack of inventive step - remittal to first instance
              for further prosecution (considered not appropriate)" - "Inventive
              step (confirmed)"

- 1 -                    T 249/91

**Summary of Facts and Submissions**

I.  The appeal contests the decision of the Examining Division
    dated 22 October 1990 to refuse the European patent
    application No. 84 302 203.9 (publication number 122 094),
    filed on 30 March 1984.

    The reason given for the refusal was that Claim 1 filed on
    14 July 1989 and as amended on 31 July 1990 lacked
    clarity, did not appear to be properly delimited over the
    cited prior art and could be read onto the latter, that
    the independent Claim 7 was not allowable for the same
    reasons and that the independent Claim 8 was not properly
    delimited over the prior art either.

    As prior art, the Examining Division considered US-A-
    4 302 776, subsequently referred to as D.

II. The appeal was lodged and the respective fee paid on
    1 December 1990 and the notice of appeal contains a
    statement implying that the decision is impugned in its
    entirety.

    On 28 February 1991, the Appellant filed a statement of
    grounds requesting that the appealed decision be set
    aside.

III. In response to Communications from the Board discussing
     the issues of the present case, the Appellant filed, on
     25 September 1992, new claims of which the independent
     claims read as follows:

     "1. An electronic still store system comprising:
     an image store (24) arranged for retrievably storing
     therein a plurality of frames of video images at a full
     resolution, the image store being capable of storing

04832                                              .../...

AX031876

- 2 -          T 249/91

reduced spatial resolution image frames; a frame store
(22) which is operable to receive a full spatial
resolution image frame and to transfer it to the image
store (24), the frame store being operable to receive from
the image store a selected video image frame for output,
this image frame being either a single full resolution
image frame or an image frame comprising reduced
resolution image frames; and a size reducer (26) coupled
to receive from the frame store a full spatial resolution
image frame and in response thereto to produce a reduced
spatial resolution copy; characterised in that the size
reducer (26) is arranged to return to the frame store (22)
the reduced spatial resolution copy, the frame store (22)
is operable to receive and store the reduced spatial
resolution copy while continuing to store the full spatial
resolution image frame, and the image store (22) is
arranged to receive and store such a reduced resolution
copy in addition to each of a plurality of full resolution
image frames that it receives from the frame store.


7. An electronic still store system comprising:
a frame store (22), a bulk image store (24) and a size
reducer (26), the frame store being arranged to receive,
transfer to the bulk image store and output repetitively
normal image data and the bulk image store being arranged
to receive and store image data from the frame store and
to provide selected image data to the frame store, the
frame store being capable of receiving from the image
store, as an alternative to a single normal resolution
image frame, a composite image frame composed of a
selection of reduced resolution copies retrieved from the
bulk image store, characterised in that the size reducer
is arranged to provide to the frame store a reduced
resolution copy of a normal resolution image frame stored
in the frame store, the frame store being arranged to
store the normal resolution image frame temporarily in

04832                                    .../...

AX031877

- 3 -                    T 249/91

first storage locations and the copy thereof in second
storage locations, and further characterised in that the
bulk image store receives from the frame store and stores
a reduced resolution copy of each normal resolution image
frame that it receives from the frame store; the data for
the said composite image frame being temporarily stored in
the said first storage locations.

8. A method of operating a video still store system having
an image store (24) and a frame store (22) coupled for bi-
directional communication of video data with the image
store, comprising in the following order the steps of:

(a)   writing into the frame store video data representing
      full resolution images;

(b)   transferring to the image store from the frame store
      video data representing a plurality of full
      resolution images, generating for each of a plurality
      of full resolution images originally written into the
      frame store a respective reduced resolution copy and
      returning said respective copy to the frame store so
      that the video data representing each of a plurality
      of full resolution images written into the image
      store is accompanied by a respective reduced
      resolution copy; and

(c)   transferring from the image store to the frame store,
      for assembly in the frame store as a single composite
      image, video data representing a reduced resolution
      copy of each of a selected plurality of full
      resolution images."

IV.   In the accompanying letter, the Appellant specified his
      request to the effect that a patent be granted on the
      basis of the following application documents:

04832                                      .../...

- 4 -                    T 249/91

Description:   pages 1 and 4 to 8 as published,
               pages 2, 3a, 3b and 3c filed on
               25 September 1992;
Claims:        1 to 10 filed on 25 September 1992;
Drawing:       1 sheet, as published.

In support of the request for grant of a patent rather
than remittal to the first instance for further
prosecution, the Appellant submitted that the cited prior
art was disclosed in the application as filed, that the
distinctions between the claimed invention and the prior
art had been discussed with the Examining Division and
that the Division had had ample opportunity for a full
examination including the assessment of inventive step.

V.   Oral proceedings, appointed in accordance with the
     Appellant's auxiliary request, were cancelled when it
     became clear that the Appellant's main request could be
     allowed.


Reasons for the Decision

1.   The appeal (cf. paragraph II) is admissible.

2.   The Examining Division in its decision silently assumed
     that the amendments made to the claims on 14 July 1989 did
     not introduce any subject-matter extending beyond the
     content of the application as filed.

     The Board agrees with this finding.

     The amendments made to the claims on 25 September 1992
     only being of a formal nature, the same applies to these
     amendments.


04832                              .../...

- 5 -                 T 249/91

More particularly, Claim 1 is based on the original
Claim 2, and Claim 7 is based on the original Claim 9. The
dependent system claims are based on the original Claims 3
and 5 to 8, and the dependent method claims are based on
the original Claims 12 and 13.

Thus, no objection arises under Article 123(2) EPC.

3.    In the decision under appeal, the following objections
      against the independent claims then on file can be
      identified:

      Claim 1:
      - The objection that Claim 1 lacks clarity as to the
        features claimed and as to the problem underlying the
        difference from the prior art is understood as an
        objection that Claim 1 in defining the matter for which
        protection is sought is not clear, i.e. as an objection
        under Article 84 EPC.

      - The objection that Claim 1 is not properly delimited
        over the prior art is understood as an objection that
        Claim 1 in (a) indicating the prior art features and
        (b) stating the features which, in combination
        therewith, it is desired to protect, is not correctly
        partitioned, i.e. as an objection under Rule 29(1) EPC
        in the sense that either its sub-paragraph (a) or (b)
        or both are violated.

      - The objection that Claim 1 can be read on the prior
        art, is understood as an objection that it would cover
        subject-matter which cannot be considered to be new,
        i.e. as an objection under Article 54, particularly (1)
        and (2), EPC.

04832                                          .../...

AX031880

- 6 -                    T 249/91

Claim 7:
- The objections against Claim 7 are also that it lacks
  clarity (Article 84),

- that Claim 7 is not properly delimited over the prior
  art (Rule 29(1)), and

- that Claim 7 lacks novelty (Article 54).

Claim 8:
- The objection against Claim 8 is also understood as an
  objection under Rule 29(1) EPC.

In addition, the existence of two independent claims of
the same category, viz. system Claims 1 and 7, in the
absence of a second embodiment from the description would
raise the question whether these claims are both
necessary; if not, the statement of claims would not be
concise (Article 84 and Rule 34(1)(c) EPC).

These issues will now be considered in turn for Claims 1,
7 and 8 now on file, i.e. filed on 25 September 1992, in
turn.

4.  Lack of clarity of Claim 1 (Article 84 EPC)

4.1  From a merely linguistic point of view, Claim 1 is clear.
     It defines a system having a configuration which is
     represented in the drawing by blocks 22, 24 and 26 and
     with interconnections represented by black lines with
     arrows and with functions which can briefly be summarised
     as follows:

     - Normal image frames are input to the frame store 22,
       stored therein and transferred both to the size reducer

04832                                    .../...

AX031881

- 7 -                    T 249/91

26 and to the image store 24 and stored also in the
latter.

- Reduced in size copies are returned from the size
  reducer 26 to the frame store, stored therein and
  transferred to the image store 24 where they are stored
  also.

- Both normal and reduced size images can be returned
  from image store 24 to frame store 22 and output by the
  latter.

4.2     Apparently however, the Examining Division did not assume
        that Claim 1 is unclear from a purely linguistic point of
        view but that it is not clear from the point of view of a
        claim's purpose to define the matter for which protection
        is sought.

4.3     A first example of lack of clarity was seen by the
        Examining Division in the feature that the frame store
        (22) "continues to store the full spatial resolution image
        frame while receiving the reduced spatial resolution
        copy".

        This feature was said to distinguish the claimed invention
        from the prior art (D), but to be obscure as to what
        special effect it would allow to achieve and what problem
        it would be intended to solve.

        The Board cannot agree with this latter view.

        The said feature can be understood to mean that the frame
        store is capable from its data capacity and control
        mechanisms, firstly to store a normal (full size) image
        frame, secondly to store a reduced resolution (reduced

AX031882

- 8 -                    T 249/91

size) copy and thirdly to hold the stored full size frame
during the storing of the reduced size copy.

The effect of this feature appears clear: in the frame
store, both the normal frame and the reduced size copy are
stored.

The interpretation of the said feature and its effect
appears moreover confirmed by the description, page 6,
lines 11 to 24 and lines 26 to 30.

A problem underlying this feature can also be understood:
from their origin, the normal frame and the reduced size
copy are not normally available at the same time. The
"continuing to store" feature renders the normal frame
still available in the frame store, when and after the
reduced size copy has been returned to it.

4.4    A second example of lack of clarity was apparently seen by
the Examining Division in that said feature would
represent a pure statement of effect without indicating
any possible implementation thereof.

In the opinion of the Board, however, keeping one kind of
information stored while another is being stored is, for
the skilled person, implementable without any difficulty.

4.5    A third example of lack of clarity was seen by the
Examining Division in the fact that the feature of "the
size reducer (being) arranged to return to the frame store
the reduced spatial resolution copy" does not indicate the
manner in which the size reducer is arranged and connected
to the other units of the claimed system for performing
this function.

04832                                    .../...

AX031883

- 9 -                    T 249/91

It is however clear from the wording of the claim that the
size reducer is connected to the frame store and, in the
opinion of the Board, it is not particularly difficult for
the skilled person to arrange the size reducer so that it
returns the reduced spatial resolution copy to the frame
store.

4.6    It is true that Claim 1 does not define any technological
details of the image and frame stores and of the size
reducer; nor does it define any details of their
interconnections over and above their existence or such
functional features as their property of carrying
particular kinds of image data including the direction of
transfer of these data.

However, such more specific technological details going
beyond said functional features could hardly be found
anywhere in the description; any amendment of Claim 1 to
include such details would therefore run the risk of
violating Article 123(2) EPC.

4.7    On the other hand, if necessary features, essential to the
invention, were missing in Claim 1 and these features
could not be found in the description, an objection that
the claimed invention was not disclosed in the application
(as a whole) in a manner sufficiently clear and complete
for it to be carried out by a skilled person would be
justified.

It is noted, however, that the Examining Division did not
raise such an objection under Article 83 EPC.

Nor does the Board see any reason for raising such an
objection, considering that a skilled addressee would be
able to implement said stores and size reducer, and their

04832                                    .../...

AX031884

- 10 -                    T 249/91

interconnections, without having to rely on information
going beyond common general knowledge.

4.8    Summarising the above, Claim 1 meets, in the opinion of
the Board, the requirement that, in defining the matter
for which protection is sought, it must be clear
(Article 84 EPC).

4.9    As a minor point though, it is noted that a clerical error
occurs in the last reference numeral in parentheses: "22"
should read "24".

5.    Improper delimitation of Claim 1 (Rule 29(1) EPC)

5.1    The pre-characterising portion of Claim 1 is based on D,
particularly its Figure 19 embodiment. It is noted that
the Figure 19 embodiment is a more economic version of the
Figure 18 embodiment insofar as frame store 14 in the
input chain and frame store 24 in the output chain are
constituted by a single common frame store 14/24
selectively connectable into the input chain or in the
output chain by switches 120 and 121.

As a consequence of this fact, it is clear that column 11,
lines 35 to 39 must be read as meaning that both switches
120 and 121 simultaneously are either in the upper
position (not shown) or in the lower position (as shown)
but never in different positions (120 up and 121 down or
vice versa).

5.2    Bearing this in mind, the following can be stated in
respect of the individual features in the pre-
characterising portion of Claim 1:

First feature (page 9, numbered lines 4 to 8): known from
D (disc 18/20);

04832                              .../...

AX031885

- 11 -                    T 249/91

Second feature (lines 8 to 10): known from D (frame store
14/24 in upper position of switches 120/121);

Third feature (lines 10 to 12): known from D (function of
frame store in lower position of switches);

Fourth feature (lines 12 to 14): known from D (function of
optional size change 23);

Fifth feature (lines 14 to 17): known from D (size change
23 in input chain with switches 120/121 in upper
position).

5.3    The following can be stated in respect of the individual
features in the characterising portion:

First characterising feature (lines 18 to 19): in D, the
size change (23) in its position in the input chain
receives image frames from frame store 14/24 (in its "14"
function) and sends the reduced size image to image store
18/20. In its position in the output chain, the size
change (23) receives image frames from image store 18/20
and sends the reduced size frame to frame store 14/24 (in
its "24" function) and other frame stores (124 and 125).
But it never "returns" any images received from the frame
store, after having changed their size, to the frame
store. It is true that, similarly to the frame store 14/24
common to the input and output chains, one and the same
size changer can be shared by both the input and output
chains (column 11, lines 39 to 47). But this does not mean
that a "return" loop exists from frame store 14 via size
change 23 in the input chain to size change 23 in the
output chain and from there back to frame store 24. Such a
return loop would be forbidden firstly because it cannot

04832                                    .../...

AX031886

- 12 -                    T 249/91

be assumed that, when size change 23 is with its input in
the input chain, at the same time its output is in the
output chain, and secondly because of the impossibility of
switch 120 being down and switch 121 being up at the same
time. It follows that the first characterising feature is
new against D.

Second characterising feature (lines 19 to 22): In D, the
frame store is operable (in its "24" function) to receive
(via switch 120 down) and store the reduced size copy.
Furthermore, it stores the full size frame (either via
switch 120 up or, if a full size frame is read from image
store 18/20 and the output size changer 23 is out of
function, via switch 120 down). But from D it cannot be
derived clearly and unambiguously that the frame store may
(although it possibly could) be operable to perform these
two functions at the same time, i.e. continue to store the
full size frame received at some time either from the
input (via switch 120 up) or from the output (via switch
120 down) during those times in which it is receiving
(from the output via switch 120 down) the reduced size
copy. This feature therefore distinguishes the claimed
invention from what can be derived from D and is therefore
new.

In this context, it is to be noted that in the claimed
invention the expression "copy" is strictly to be
understood as meaning the copy of a continuing to exist
original, and not one replacing the original. In D, the
original full size image may be replaced by its reduced in
size version.

Third characterising feature (lines 22 to 25): According
to the first feature in the pre-characterising portion of
Claim 1, the image store stores full size image frames and
is capable of storing also reduced size images. The third

04832                                    .../...

AX031887

characterising feature goes beyond this by defining that
the image store stores a reduced size copy in addition to
each full size frame. In D, the impression prevails that
the image store 18/20 can be operated to store full size
frames (no size changer 23 in the input chain or, if
there, not in operation) or reduced size copies (size
changer 23 in operation in input chain) depending on the
requirements. But it cannot be derived from D that in
every case for each full size frame received from frame
store 14 (with size changer 23 absent or off) also a
reduced size copy (received from frame store 14 via size
changer 23 switched on) shall be stored in the image store
in addition to the full size frame. This feature therefore
distinguishes the claimed invention from what is disclosed
in D, i.e. it is new.

5.4    The question whether the delimitation, or partitioning, of
Claim 1 with respect to the prior art would be correct or
not in relation to a piece of prior art other than D, does
not arise. The Examining Division apparently considered D
to constitute, of all documents mentioned in the search
report, the one coming nearest to the claimed invention.

The Board sees no reason to question this finding.

5.5    Summarising, the Board is of the opinion that Claim 1
meets the requirement that (a) the technical features
which are part of the prior art are indicated in the pre-
characterising portion, and (b) the technical features
which are not part of that prior art, are stated in the
characterising portion (Rule 29(1) EPC).

6.    Lack of novelty of Claim 1 (Article 54 EPC)

6.1    It follows already from paragraph 5.3 and 5.4 that the
subject-matter of Claim 1 is new.

AX031888

- 14 -                    T 249/91

6.2    The Board does not, for the reasons explained in
       paragraphs 4.3 to 4.5, consider Claim 1, or its features,
       to be so obscure that the new features (paragraph 5.3)
       could, despite their intended meaning, be "read onto" the
       prior art (D).

6.3    Thus, in the opinion of the Board, Claim 1 meets the
       requirement of novelty (Article 54, in particular (1) and
       (2), EPC).

7.     <u>Lack of clarity of Claim 7</u>

7.1    Claim 7 is quite differently worded than Claim 1 but can,
       from a merely linguistic point of view, be understood.

7.2    Claim 7 appears at least as clear as Claim 1, as far as
       the definition of the matter for which protection is
       sought is concerned.

7.3    The Examining Division sees a lack of clarity in Claim 7
       similar to the above-mentioned third example of lack of
       clarity of Claim 1 but for similar reasons as explained
       above (paragraph 4.5) the Board does not share this view.

7.4    A further example of lack of clarity is seen by the
       Examining Division in the absence of structural features
       rendering the frame store "capable of receiving ... as an
       alternative to a single ... frame, a composite image frame
       composed of ... reduced resolution copies ...".

       The Board sees no particular problem in this absence,
       considering that the skilled person would know how to
       make the frame store receive a normal image frame, how to
       select a number of reduced size copies stored in the image
       store, how to transfer them to the frame store and how to

04832                                   .../...

AX031889

- 15 -                          T 249/91

make the frame store store these latter copies instead of
the former normal frame.

The Examining Division seems to agree with the Appellant's
submission that Claim 7 "represents a fair summary of the
description pages 7 and 8" but considers this submission
to be a mere statement without the claim containing the
necessary implementing features.

Again, the Board must refer in this context to the fact
that, if such features were necessary but not to be found
in the description, an objection under Article 83 would
have to be made and any amendment introducing such
features would inevitably have to result in an
Article 123(2) objection (cf. paragraphs 4.6 and 4.7). But
such objections were not made and the Board sees no reason
for such objections either.

7.5    In the opinion of the Board, therefore, Claim 7 meets the
requirement of being clear in defining the matter to be
protected (Article 84 EPC).

8.     Improper delimitation of Claim 7

8.1    This point has not been specified by the Examining
Division in any other way than by saying that Claim 7 is
closely related to Claim 1.

8.2    The Board has nevertheless taken up this point but has
come, after Claim 7 has been amended, to a similar result
as with regard to Claim 1 (paragraph 5.5), particularly
for the following reasons:

Precharacterising portion: Even though Claim 7 is quite
differently worded, for similar reasons as with respect to
Claim 1 (cf. paragraph 5.2), Claim 7 contains in its
preamble only features known from D.

04832                                        .../...

AX031890

- 16 -                    T 249/91

First characterising feature (page 11, lines 6 to 8): the
size reducer (23) of D is arranged (in its position in the
output chain) to provide (via switch 120 down) to the
frame store (14/24 in its "24" function) a reduced
resolution copy of a normal resolution image frame stored
in the image store 18/20 but not in the frame store 14/24
(not even in its "14" function with switch 121 up). This
feature is therefore new against D.

Second characterising feature (lines 9 to 11): storing
the normal resolution image frame and the (reduced
resolution) copy thereof at the same time in different
locations does not seem to be the function of frame store
14/24 in any of its two possible connections (switches
120/121 up or down). This feature is therefore new.

Third characterising feature (lines 12 to 15): cf. third
characterising feature of Claim 1 (paragraph 5.3).

Fourth characterising feature (lines 15 to 17): From D it
cannot be derived that the frame store 14/24 (in its "24"
function) is intended to store the composite frame of
reduced size image copies temporarily in those (first)
locations where otherwise the normal resolution image
frame is stored (cf. second characterising feature). This
feature is therefore to be regarded as new.

8.3     Claim 7 is therefore considered to meet the requirements
of Rule 29(1) EPC.

9.      <u>Conciseness of Claims 1 and 7</u> (Article 84 EPC)

The - admissible (cf. paragraph 2) - restriction of the
original Claim 1 by the features of Claim 2 has brought
this subject-matter nearer to that of the original Claim 9

04832                                    .../...

AX031891

- 17 -                    T 249/91

which contained <u>a priori</u> such a restriction. If the
consequential similarity in scope of Claims 1 and 7 now on
file were such as to render their subject-matters
identical, one of these claims would be unnecessary and
have to be deleted because of lack of conciseness of the
claims under Article 84 EPC. <u>Prima facie</u>, such a finding
would appear reasonable and confirmed, in the present
case, by the fact that the application in suit contains
only one embodiment of the invention disclosed.

However, having compared the individual features of
Claims 1 and 7 in detail, the Board has come to the
conclusion that these claims differ in subject-matter. In
particular:

- The frame store according to Claim 1 is "operable to
  store the reduced spatial resolution copy while
  continuing to store the full spatial resolution image
  frame". According to Claim 7, the frame store is
  "arranged to store the normal resolution image frame
  temporarily in first storage locations and the copy
  thereof in second storage locations" and the composite
  image frame data are "temporarily stored in the said
  first storage locations". Thus, apparently, the
  function of the frame store as defined in Claim 7 is
  not identical with, but more specific than, the
  function of that store as defined in Claim 1.

- The image store according to Claim 1 is "arranged for
  storing a plurality of video image frames at full
  resolution" and "arranged to store a reduced resolution
  copy in addition to each of a plurality of full
  resolution image frames". In Claim 7, the definition of
  the storing function of the image store is less
  specific.

.../...

AX031892

- 18 -                    T 249/91

The Board for this reason agrees with the Appellant that
Claim 7 should not be regarded as being redundant with
respect to Claim 1, and _vice versa_. As stated in the
description (pages 2 and 3a), the system as it is defined
in Claim 1 and the system as it is defined in Claim 7
constitute, respectively, different "aspects" of "the"
invention. That, in essence, the latter is one and the
same invention does not invalidate the finding that,
taking the details into account, Claims 1 and 7 cover
different subject-matter.

No objection of lack of conciseness arises therefore in
respect of the two system claims.

10.   Lack of novelty of Claim 7

It follows directly from the above considerations
(paragraph 8) that Claim 7 meets the requirement of
novelty.

11.   Improper delimitation of Claim 8

Claim 8 has been re-drafted in the one-part form. The
question of whether this claim is correctly partitioned
is therefore, as such, no longer an issue but has been
extended to the more general question whether its non-
partitioning is appropriate (Rule 29(1) EPC).

In this respect, the Board concludes as follows:

The systems defined in Claims 1 and 7 have practically all
their components (image store, frame store, size reducer)
in common with the system of D. But the individual
functions of these components are different. Claim 8
defines these functions, i.e. the operation of the system,

04832                              .../...

AX031893

in terms of method steps, and the order in which these
steps are to be carried out. It is particularly the
functional interrelationship between the said components,
including the order in which individual functional steps
are carried out, which is different from the prior art.
Therefore, a two-part form of the method claim would seem
to destroy the natural order in which the method steps of
the claimed operation are carried out and, moreover, to
complicate the wording of this claim.

It is therefore considered that the two-part form would
not, in this case, be more appropriate than the one-part
form.

Accordingly, Claim 8 is acceptable in its present form.

12. <u>Other formal matters concerning Claim 8</u>

Lack of clarity of Claim 8 has not been alleged by the
Examining Division, and the Board agrees with this
finding.

In reaching this conclusion, the Board has also considered
that it follows from feature (c) as a matter of mere logic
that the copies reduced in resolution must, in order to be
apt of being assembled to a composite image, necessarily
be of reduced size. No lack of clarity or lack of support
by the description (Article 84) is therefore to be seen in
the fact that no express reference is made to size
reduction.

13. <u>Procedural matters</u>

Lack of novelty (Article 54) of Claim 8 neither having
been alleged by the Examining Division nor appearing to be
an issue which could reasonably be raised, the only

04832

.../...

AX031894

- 20 -                     T 249/91

substantive issue remaining to be decided is whether the
claimed systems and method involve an inventive step
(Article 56).

The decision under appeal is silent about any examination
and conclusion in this respect. From the statement in the
impugned decision that it is not clear what problem is
underlying the difference between the claimed system and
the prior art, no final conclusion can be drawn.

Therefore, prima facie, remittal of the case to the first
instance for further prosecution  might seem to be
warranted.

However, in his first Communication dated 5 October 1988,
the Primary Examiner conceded that there are "essential"
functional differences between the claimed system and the
prior art according to citation D, and that amendments are
conceivable which would render the unallowable claims
allowable. This also applied to the claimed method. With
his second Communication dated 15 September 1989, he
enclosed amended Claims 1 and 8 on the basis of which the
grant of a patent could be envisaged. From a third
Communication, dated 15 May 1990, it can also be derived
that the Examiner objected only to the form but not to the
substance of the independent claims.

In this situation, it can be assumed that in the Examining
Division's opinion the subject-matter claimed involves an
inventive step. For this reason, the Board in exercising
its discretion under Article 111(1) EPC has decided not to
remit the case to the first instance for further
prosecution, but to extend the examination of the appeal
to the question of inventive step.

04832                                   .../...

AX031895

- 21 -                    T 249/91

14.    Remaining substantive matters

The Primary Examiner's opinion that the application
contains subject-matter which involves an inventive step
is shared by the Board.

It remains only to be considered whether this conclusion
can be drawn for the systems and method defined in the
independent claims on file. It would appear, however, that
this issue can be decided for Claims 1, 7 and 8 at the
same time.

In this respect, the Board concludes as follows:

14.1    In paragraph 5.3 each characterizing feature of Claim 1,
and in paragraph 8.2 each characterizing feature of
Claim 7, has been contrasted with the function of the
prior art system, and it is plainly evident that in
Claim 8 the same functional differences from the prior art
are incorporated.

The objective problem to be solved by these features is
apparently to be seen in the fact that several images
reduced in size which are to be simultaneously displayed
as a composite image need not first be read from the image
store and then be reduced for insertion into the multi-
image display, but are available at the same time, and
furthermore that the original full-size image is still
available together with the reduced in size copy thereof
for immediate selection in real time. The main and
essential advantage of the claimed systems and method is
thus the avoidance of any unnecessary delay, i.e. a quick
response to any requests for display or transmission is
obtained.

04832                                        .../...

AX031896

- 22 -                    T 249/91

This is not an express aim in D, and if it were an
implicit goal, it is not achieved to the extent it is
achieved by the claimed systems and method.

Nothing in D would suggest to deviate in any way from its
teaching, as far as the functions of the system elements
such as the frame store are concerned. No incentive can
therefore be derived from D to replace these by different
functions; in particular no hint is given to replace them
by the new functions defined in the characterizing
portions of Claims 1 and 7, and in Claim 8, namely in
particular to store both the original image frame and the
reduced in size copies in the frame store, and also in the
image store. Structurally, this would not even appear to
be possible, without modification, for one and the same
frame store (cf. Fig. 19) performing the functions of both
an input frame store (14) and output frame store (24) (cf.
Fig. 18). According to D, this double function is made
possible by the frame store performing these functions
only at different times by way of switches (120, 121).
With the arrangement of Fig. 18, simultaneous performance
of both functions would theoretically be possible but the
aforementioned problem and its solution by the claimed
features are not disclosed, in connection with this
embodiment, in D.

The subject-matter of Claims 1 and 7, and that of Claim 8,
is therefore not obvious from D.

14.2    No other prior art document has been cited against the
claimed subject-matter. In particular, the Examining
Division has not cited the other document marked Y and X
in the Search Report, viz. DE-A-3 113 134.

The Board does not see any reason either to cite that
document which is not directly concerned with image size

04832                                    .../...

- 23 -                          T 249/91

reduction and assembly to a composite image, neither alone nor in combination with D, against Claims 1, 7 or 8.

14.3    The subject-matter claimed is therefore regarded as involving an inventive step, and in summary the independent claims are allowable.

15.    Other application documents

As to the other documents on file, the following is noted:

15.1    No objection of significance arises against the dependent claims.

15.2    The description on file may not expressly define the technical problem to be solved by the claimed invention.

It is only indirectly that the problem can be understood from the characterizing differences from the prior art re-stated on pages 3a and 3b now on file in conjunction with the disadvantages of the prior art mentioned on page 1 line 28 to page 2 line 4 and in conjunction with advantages resulting from the claimed system and its operation as mentioned on page 3c to page 4 line 14. However, this can be regarded as just meeting the minimum requirement that "the problem (if not expressly stated) and its solution can be understood" (Rule 27(1)(c) EPC).

15.3    A European Patent Application of the same Applicant filed on 7 March 1984 entitled "Apparatus and method for chroma separation" was not found by the Board in the EPO's records.

The sentence on page 5 lines 2 to 7 should therefore be deleted.

04832                                      .../...

- 24 -                    T 249/91

15.4    The description may contain more errors as mentioned also
        by the Primary Examiner but their correction can be left
        to the Appellant or to the first instance when carrying
        out the Board's order.


Order

For these reasons, it is decided that:

1.      The decision under appeal is set aside.

2.      The case is remitted to the first instance with the order
        that a patent be granted on the basis of the application
        documents listed in paragraph IV, with the proviso that
        the further necessary amendments mentioned in paragraphs
        4.9 and 15.3 and any further corrections appearing
        necessary (cf. paragraph 15.4) are executed.


The Registrar:                        The Chairman:



M. Kiehl                              P.K.J. van den Berg



04832