## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, ALTEK | ) | |
| CORPORATION and CHINON INDUSTRIES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | | |

## COMPENDIUM OF UNREPORTED OPINIONS CITED IN DEFENDANTS'
## ANSWERING BRIEF IN OPPOSITION TO
## PLAINTIFF'S MOTION TO COMPEL

PAUL M. LUKOFF (I.D. #96)
DAVID E. BRAND (I.D. #201)
1310 King Street
P. O. Box 1328
Wilmington, DE 19899
Tel. 302.888.6500
Fax: 302.888-6331
*Attorneys for Defendants*

OF COUNSEL:
William F. Lee
Donald R. Steinberg
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Rebecca M. McCloskey
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

Date: May 25, 2006


Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21361731 (N.D.Ill.)
**(Cite as: 2003 WL 21361731 (N.D.Ill.))**

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
DOUGLAS PRESS, INC., Plaintiff,
v.
UNIVERSALMANUFACTURING COMPANY,
Defendant.
**No. 01 C 2565.**

June 11, 2003.

*MEMORANDUM OPINION AND ORDER*

NOLAN, Magistrate J.

*1 Plaintiff Douglas Press, Inc. ("Douglas Press") filed suit against defendant Universal Manufacturing Company ("Universal") alleging patent and trademark infringement. This matter is now before the Court on Douglas Press' Motion to Compel Production of and/or Disclosure of Withheld Opinions of Universal's trial counsel. For the reasons set forth below, the motion is denied.

BACKGROUND
In 1995, Douglas Press sent demand letters to Universal asserting that it was violating Douglas Press' patents. At that time, Universal retained two Kansas City attorneys, Gerald Kraai and Mark Brown, to respond to the letters. After Douglas Press filed the instant lawsuit in April 2001, Universal retained the law firm of Jenner & Block to serve as trial counsel. Kraai initially filed an appearance along with Jenner & Block but he subsequently withdrew as counsel on or about September 25, 2001. Universal has asserted an advice of counsel defense to Douglas Press' allegations of willful infringement and has produced the opinions it received in that regard from Kraai and Brown. However, Universal has refused to produce any opinions from Jenner & Block. Douglas Press filed this motion to compel, arguing that Universal waived any privilege with respect to the Jenner & Block opinions when it chose to assert the advice of counsel defense. Douglas Press also argues that it is entitled to Jenner & Block's

opinions because Universal asserted the affirmative defenses of estoppel and laches.

DISCUSSION
A claim of willful patent infringement generally focuses on "whether the infringer exercised due care to avoid infringement, usually by seeking the advice of competent and objective counsel." *Motorola, Inc. v. Vosi Technologies, Inc.,* No. 01 C 4182, 2002 WL 1917256, at *1 (N.D.Ill. Aug. 19, 2002) (quoting *Vulcan Engineering Co. v. Fata Aluminum, Inc.,* 278 F.3d 1366, 1378 (Fed.Cir.2002)). Thus, "[i]t is well-established that the assertion of an advice of counsel defense results in a waiver of the attorney-client and work product protections." *Thermos Co. v. Starbucks Corp.,* No. 96 C 3833, 1998 WL 781120, at *1 (N.D.Ill. Nov. 3, 1998). A party may also waive privilege in the course of asserting the affirmative defense of estoppel. [FN1] *See Beneficial Franchise Co. v. Bank One, N.A.,* 205 F.R.D. 212, 216 (N.D.Ill.2001); *THK America, Inc. v. NSK Co.,* 157 F.R.D. 637, 650 (N.D.Ill.1993) ("if a defense of estoppel may be defeated by showing that the party asserting the defense actually relied not on plaintiff's conduct but on its lawyers' advice, the party claiming estoppel has put attorney-client communications in issue"). The proper scope of the waiver, however, is less clear.

> FN1. Unlike the estoppel defense, laches does not require a showing of detrimental reliance. *See Dentsply International, Inc. v. Sybron Corp.,* No. 84 C 3822, 1986 WL 5757, at *3 (N.D.Ill. May 12, 1986). Thus, Universal's assertion of the laches defense does not put its advice of counsel at issue in the case and is not a basis for waiving the privilege with respect to the opinions of Jenner & Block. *See Chamberlain Group v. Interlogix, Inc.,* No. 01 C 6157, 2002 WL 467153, at *2 (N.D.Ill. Mar. 27, 2002); *Advertising to Women, Inc. v. Gianni Versace,* No. 98 C 1553, 1999 WL 608711, at *6 (N.D.Ill. Aug. 4, 1999) (assertion of a laches defense does not waive attorney-client privilege because it does not require an inquiry into the defendant's state of mind).

Principles of fairness prevent parties from simply picking and choosing which opinions or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2003 WL 21361731 (N.D.Ill.)
**(Cite as: 2003 WL 21361731 (N.D.Ill.))**

communications they want to disclose. *See Thermos, 1998 WL 781120, at \*1* (quoting *Saint-Gobain/Norton Industrial Ceramics Corp. v. General Electric Co., 884 F.Supp. 31, 33 (D.Mass.1995)*) ("[p]rinciples of fairness ... prevent a party from 'disclos[ing] opinions which support its position, and simultaneously conceal[ing] those [opinions] which are adverse' "). At the same time, a party does not completely waive its privilege with respect to all matters merely by raising an advice of counsel or estoppel defense. Instead, courts have generally found that a party must produce the opinions and documents it relied upon, as well as any other attorney communications involving the same subject matter. *See Beneficial, 205 F.R.D. at 217; Thermos, 1998 WL 781120, at \*1; Motorola, 2002 WL 1917256, at \* 2; Technitrol, Inc. v. Digital Equipment Corp., 181 U.S.P.Q. 731, 732 (N.D.Ill.1974)* ("if the [waiver] rules were limited to only a particular counsel, a party might get several viewpoints and assert reliance on only one, thus barring an inquiry as to the actuality and reasonableness of that reliance").

**\*2** When it comes to trial counsel, however, courts have found that such unfettered access to post-suit work product would be unduly intrusive. Thus, courts have limited the circumstances under which trial counsel's advice must be disclosed. They have not, however, reached a consensus regarding the proper scope of the limitation. In *Thermos,* the court found that waiver extends only to documents that "contain conclusions that contradict or cast doubt on" the opinions relied upon. *1998 WL 781120, at \*5. See also Micron Separations, Inc. v. Pall Corp., 159 F.R.D. 361, 365 (D.Mass.1995)* (waiver as to trial counsel extends only to documents containing "potentially damaging information" or expressing "grave reservations respecting the opinion letter"). In addition, the defendants were only required to produce documents that were actually communicated to them. *Thermos, 1998 WL 781120, at \* 5.*

In *Beneficial,* the court agreed that a party who places privileged documents and communications at issue to advance an equitable estoppel defense must disclose trial counsel's advice and work product only to the extent that it "contradicts or casts doubt on" the disclosed opinions. *205 F.R.D. at 218.* However, the court did not limit disclosure to information communicated to the defendants:

> Not all information conveyed to a client is neatly reflected in a transmittal letter or in a memorandum specifically directed to the client. The practical reality is that if negative information was important enough to reduce to a memorandum, there is a

reasonable possibility that the information was conveyed in some form or fashion to the client.
*Id. See also Dunhall Pharmaceuticals, Inc. v. Discus Dental, Inc ., 994 F.Supp. 1202, 1205 (C.D.Cal.1998). [FN2]*

> FN2. The Court notes that there is also some dispute as to whether the work product underlying the opinions of attorneys other than trial counsel must be disclosed if the information was not clearly communicated to the client. *Compare Thermos, 1998 WL 781120, at \*4* (allowing production only of work product communicated to defendants), with *Clintec Nutrition Co. v. Baxa Corp., No. 94 C 7050, 1996 WL 153881, at \* 1 (N.D.Ill. Mar. 28, 1996)* (requiring production of all documents relied upon or considered by attorney in conjunction with rendering his opinion regardless of whether those documents were communicated to the client). The Court need not address this issue because Douglas Press does not challenge Universal's production with respect to any non-trial attorneys.

In *Motorola,* the court held that all post-suit opinions of trial counsel, who were not the same lawyers who provided the pre-suit opinions defendant was going to rely upon, were protected from disclosure without exception. *2002 WL 1917256, at \*2.* The court reasoned that the willful nature of the defendant's misconduct "logically depend[ed] upon the advice it received before suit was filed," and that waiver "would inappropriately chill communications between trial counsel and client and would impair trial counsel's ability to give the client candid advice regarding the merits of the case." *Id.*

More recently in *Lakewood Engineering and Manufacturing Co. v. Lasko Products, Inc., No. 01 C 7867, 2003 WL 1220254 (N.D.Ill. Mar. 14, 2003),* the court followed the rationale of both *Beneficial* and *Thermos* and found that trial counsel's advice must only be disclosed to the extent that it contradicts or casts doubt on the opinions that have been disclosed, regardless of whether those materials were communicated to the client. *Id.* at \*10. However, if the defendant did not rely on trial counsel's opinions on willful infringement and did not intend to rely on those opinions at trial, the defendant did not have to disclose any opinions of its trial counsel at all. *Id.*

**\*3** In this case, Douglas Press argues that Universal has waived any privilege with respect to the opinions

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21361731 (N.D.Ill.)
(Cite as: 2003 WL 21361731 (N.D.Ill.))

of Jenner & Block because it already produced the opinions of Kraai who served as trial counsel along with Jenner & Block for approximately four months. Pl. Reply, pp. 2-3. Douglas Press claims that Universal intends to rely upon the advice of Jenner & Block as part of its advice of counsel defense and that it cannot now selectively produce only those opinions it chooses. *Id.,* pp. 3-4. With respect to Universal's estoppel defense, Douglas Press argues that it is entitled to demonstrate that Universal did not rely on Douglas Press' purported inaction and delay in filing this case, "but rather some other facts, such as its own attorneys' advice." *Id.,* p. 6. For its part, Universal denies that it is relying on any formal opinions from Jenner & Block to support its advice of counsel defense. Def. Reply, pp. 1-2. Universal suggests that this Court should follow *Motorola* and prohibit disclosure of any post-suit opinions of trial counsel. Universal also claims that Douglas Press has not met its burden of establishing that Jenner & Block's opinions contradict or cast doubt on the opinions of Kraai and Brown. Def. Mem., pp. 2-3; Def. Reply, pp. 2-3.

The Court finds that the following approach to waiver is appropriate in this case. Based on Universal's representation that it is not relying on any opinions from Jenner & Block as part of its advice of counsel defense, Universal need not disclose any documents or other materials prepared by the firm. As noted by the *Motorola* court, the defense logically depends on advice Universal received before suit was filed, and waiver "would inappropriately chill communications between trial counsel and client and would impair trial counsel's ability to give the client candid advice regarding the merits of the case." 2002 WL 1917256, at *2. *See also Lasko,* 2003 WL 1220254, at *10 ("[t]o the extent that [defendant] did not rely on trial counsel's opinions on willful infringement, and as such will not rely on such opinions at trial, [defendant] need not disclose any opinions of its trial counsel").

As for Universal's affirmative defense of estoppel, the Court agrees that Douglas Press is entitled to try to defeat the defense by demonstrating that Universal relied on its attorneys' advice, and not Douglas Press' alleged inaction and delay in filing suit. *See THK America,* 157 F.R.D. at 651 ("[i]f defendants ... relied on favorable opinions from patent counsel, detrimental reliance [on plaintiff's alleged delay in filing suit] may be absent"). However, any such attorney advice was necessarily given prior to the filing of the lawsuit, and prior to the retention of Jenner & Block. Universal has already produced the

pre-suit opinions of Kraai and Brown and waiver of the post-suit Jenner & Block opinions would inappropriately chill communications between trial counsel and client.

CONCLUSION

*4 For the reasons stated above, Douglas Press' motion to compel (Docket Entry # 61-1 and 61-2) is denied.

Not Reported in F.Supp.2d, 2003 WL 21361731 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 23818525 (Trial Motion, Memorandum and Affidavit) Defendant Universal Manufacturing Company's Reply to Douglas Press' Further Brief in Support of Its Motion to Compel Production of Opinions of Trial Counsel (Jun. 5, 2003)

• 2003 WL 23818528 (Trial Motion, Memorandum and Affidavit) Defendant Universal Manufacturing Company's Reply to Douglas Press' Further Brief in Support of Its Motion to Compel Production of Opinions of Trial Counsel (Jun. 5, 2003)

• 2003 WL 23818523 (Trial Motion, Memorandum and Affidavit) Plaintiff Douglas Press' Further Brief in Support of Its Motion to Compel Production of Opinions of Counsel (Jun. 2, 2003)

• 2003 WL 23818522 (Trial Motion, Memorandum and Affidavit) Defendant's Surreply in Support of Its Response to Plaintiff's Motion to Compel Production of Opinions of Trial Counsel (May 28, 2003)

• 2003 WL 23818518 (Trial Motion, Memorandum and Affidavit) Plaintiff Douglas Press' Reply in Support of Its Motion to Compel Production of and/or Disclosure of Withheld Opinions of Counsel (May 14, 2003)

• 2003 WL 23818516 (Trial Motion, Memorandum and Affidavit) Defendant's Response to Plaintiff's Motion to Compel Production of Opinions of Trial Counsel (May 7, 2003)

• 2002 WL 32678310 (Trial Motion, Memorandum and Affidavit) Douglas Press' Reply in Support of Its Motion to Compel (Oct. 25, 2002)

• 2002 WL 32678305 (Trial Motion, Memorandum and Affidavit) Universal Manufacturing Company's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 4
Not Reported in F.Supp.2d, 2003 WL 21361731 (N.D.Ill.)
**(Cite as: 2003 WL 21361731 (N.D.Ill.))**

Response to Douglas Press's Motion to Compel
Discovery Responses (Oct. 21, 2002)

• 2002 WL 32678301 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Response to Defendants'
Motion to Compel Compliance With Universal's
Subpoena (Jun. 18, 2002)

• 2002 WL 32678299 (Trial Motion, Memorandum
and Affidavit) Plaintiff Douglas Press' Reply in
Support of Its Request for Clarification on Entry of a
Protective Order (Mar. 12, 2002)

• 2002 WL 32678296 (Trial Motion, Memorandum
and Affidavit) Defendant's Response Memorandum
to Plaintiff's Motion for Entry of Protective Order
(Jan. 28, 2002)

• 2002 WL 32678292 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Motion for and
Memorandum In Support of Entry of Protective
Order (Jan. 18, 2002)

• 2001 WL 34667357 (Trial Pleading) Complaint
(Apr. 12, 2001)

• 1:01CV02565 (Docket) (Apr. 12, 2001)

• 2001 WL 34667365 (Trial Motion, Memorandum
and Affidavit) Defendant Universal's Response to
Plaintiff's Request for Clarification of Entry of
Protective Order (Mar. 4, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



2006 WL 1149528
--- F.3d ----, 2006 WL 1149528 (Fed.Cir.)
(Cite as: 2006 WL 1149528 (Fed.Cir.))

Page 1

**Briefs and Other Related Documents**

Only the Westlaw citation is currently available.

United States Court of Appeals,
Federal Circuit.
In re ECHOSTAR COMMUNICATIONS
CORPORATION, Echostar DBS Corporation,
Echostar
Technologies Corporation, and Echosphere Limited
Liability Company, and
Merchant & Gould P.C., Petitioners.
**Misc. Nos. 803, 805.**

May 1, 2006.

**Background:** In patent infringement action in which defendant asserted defense of reliance on advice of in-house counsel, plaintiff sought production of relevant documents, including documents relating to outside counsel whose advice was not relied on. The District Court determined that defendant waived its attorney-client privilege, and that waiver extended to work-product not communicated to defendant. Defendant petitioned for writ of mandamus, and outside counsel moved to intervene and petitioned for a writ of mandamus.

**Holdings:** The Court of Appeals, Gajarsa, Circuit Judge, held that

(1) defendant waived its attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel, but

(2) outside counsel's work product that was not communicated to defendant and did not reflect a communication, was not within the scope of defendant's waiver of work product immunity.

Petitions granted in part.

**[1] Mandamus** 26

250k26 Most Cited Cases

**[1] Mandamus** 28
250k28 Most Cited Cases
Remedy of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power.

**[2] Mandamus** 168(2)
250k168(2) Most Cited Cases
A party seeking a writ of mandamus bears burden of proving that it has no other means of obtaining the relief desired, and that the right to issuance of the writ is clear and indisputable.

**[3] Mandamus** 32
250k32 Most Cited Cases
A writ of mandamus may be sought when the challenged order turns on questions of privilege.

**[4] Mandamus** 32
250k32 Most Cited Cases
Fact that defendant in patent infringement case had complied in large part with discovery order did not mean that it could not challenge a part of the order in a petition for a writ of mandamus.

**[5] Courts** 96(7)
106k96(7) Most Cited Cases
Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law.

**[6] Courts** 96(7)
106k96(7) Most Cited Cases
Questions of privilege and discoverability that arise from assertion of the advice-of-counsel defense in a patent infringement case necessarily involve issues of substantive patent law, so that Federal Circuit law applies. 35 U.S.C.A. § § 284-285.

**[7] Witnesses** 198(1)
410k198(1) Most Cited Cases
The attorney-client privilege protects disclosure of communications between a client and his attorney.

**[8] Witnesses** 219(3)
410k219(3) Most Cited Cases
Defendant which chose, in patent infringement case, to rely on the advice of in-house counsel, thus waived its attorney-client privilege with regard to the same subject matter, including communications with counsel other than in-house counsel.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----, 2006 WL 1149528 (Fed.Cir.)
**(Cite as: 2006 WL 1149528 (Fed.Cir.))**

**[9] Witnesses** 🔑219(3)
410k219(3) Most Cited Cases
Once a party announces that it will rely on the advice of counsel defense in response to an assertion of willful patent infringement, the attorney-client privilege is waived, and the waiver applies to all other communications relating to the same subject matter.

**[10] Witnesses** 🔑219(3)
410k219(3) Most Cited Cases
The opinion formed in a patent infringement case by defendant's in-house counsel and conveyed to defendant's executives constituted a legal opinion, for purposes of determination of the scope of defendant's waiver of attorney-client privilege, even though it was not a traditional opinion of counsel.

**[11] Federal Courts** 🔑824
170Bk824 Most Cited Cases
Court of Appeals reviews a district court's determination as to the scope of a waiver of attorney-client privilege for an abuse of discretion.

**[12] Federal Civil Procedure** 🔑1272.1
170Ak1272.1 Most Cited Cases
In general, a party may obtain discovery of any matter that (1) is not privileged and (2) is relevant to the claim or defense of any party. Fed.Rules Civ.Proc.Rule 26(b)(1), 28 U.S.C.A.

**[13] Witnesses** 🔑200
410k200 Most Cited Cases
Attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice.

**[14] Witnesses** 🔑219(3)
410k219(3) Most Cited Cases
Attorney-client privilege is at the discretion of the client.

**[15] Witnesses** 🔑219(3)
410k219(3) Most Cited Cases
Client can waive the attorney-client privilege when it uses the advice to establish a defense.

**[16] Federal Civil Procedure** 🔑1600(3)
170Ak1600(3) Most Cited Cases
Work-product doctrine, or work-product immunity, can protect documents and tangible things prepared in anticipation of litigation that are both non-privileged and relevant. Fed.Rules Civ.Proc.Rule

26(b)(3), 28 U.S.C.A.

**[17] Federal Civil Procedure** 🔑1600(3)
170Ak1600(3) Most Cited Cases
Work-product doctrine is not absolute, and a party may discover certain types of work product if they have substantial need of the materials in the preparation of the party's case and are unable without undue hardship to obtain the substantial equivalent by other means. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

**[18] Federal Civil Procedure** 🔑1600(3)
170Ak1600(3) Most Cited Cases
Rule allowing discovery of certain types of work product only allows discovery of factual or non-opinion work product and requires the court to protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

**[19] Federal Civil Procedure** 🔑1600(5)
170Ak1600(5) Most Cited Cases
A party may discover work product if the party waives its immunity.

**[20] Federal Civil Procedure** 🔑1600(5)
170Ak1600(5) Most Cited Cases
Work product waiver is not a broad waiver of all work product related to the same subject matter, but only extends to factual or non-opinion work product concerning the same subject matter as the disclosed work product.

**[21] Federal Civil Procedure** 🔑1600(5)
170Ak1600(5) Most Cited Cases
Waiver of work product opinions extends to advice and work product given after litigation began when the advice is relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation.

**[22] Patents** 🔑292.3(1)
291k292.3(1) Most Cited Cases
Work-product waiver in a patent infringement case extends only so far as to inform the court of the infringer's state of mind.

**[23] Federal Civil Procedure** 🔑1600(5)
170Ak1600(5) Most Cited Cases
Work product reflecting counsel's opinions and mental impressions, which is never communicated to the client, is not within the scope of a defendant's

2006 WL 1149528
--- F.3d ----, 2006 WL 1149528 (Fed.Cir.)
(Cite as: 2006 WL 1149528 (Fed.Cir.))

Page 3

waiver of work-product immunity. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

[24] Patents 🔑 292.3(1)
291k292.3(1) Most Cited Cases
When an alleged patent infringer asserts an advice-of-counsel defense regarding willful infringement, it waives its attorney-client privilege and work-product immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused; waiver includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but, when appropriate, any documents referencing a communication between attorney and client.

[25] Patents 🔑 292.3(1)
291k292.3(1) Most Cited Cases
Outside counsel's work product in patent infringement case, that was not communicated to defendant and did not reflect a communication, was not within the scope of defendant's waiver of work-product immunity based on its assertion of an advice-of-counsel defense; any relevant value of such work product was outweighed by the policies of the work-product doctrine.
On Petition for Writ of Mandamus.

Harold J. McElhinny, Rachel Krevans, Alison M. Tucher, Morrison & Foerster LLP, San Francisco, CA, Jon R. Trembath, Merchant & Gould P.C., Denver, CO, for Petitioners.

Morgan Chu, Perry M Goldberg, Christine Byrd, Irell & Manella LLP, Los Angeles, CA, for Respondent.

Before SCHALL, GAJARSA, and PROST, Circuit Judges.

ORDER

GAJARSA, Circuit Judge.

*1 EchoStar Communications Corporation, EchoStar DBS Corporation, EchoStar Technologies Corporation, and Echosphere Limited Liability Company (collectively "EchoStar") petition for a writ of mandamus, in Miscellaneous Docket No. 803, to direct the United States District Court for the Eastern District of Texas, in case 2:04-CV-1, to vacate its September 26, 2005 and October 6, 2005 orders that compelled EchoStar to produce documents created by

the law firm Merchant & Gould P.C. that EchoStar asserts are protected from discovery by the work-product doctrine. Merchant & Gould moves for leave to intervene in Miscellaneous Docket No. 803 and submits its own petition for a writ of mandamus, filed as Miscellaneous Docket No. 805. TiVo, Inc. opposes the petitions and responds to the motion for leave to intervene. EchoStar and Merchant & Gould reply. We grant Merchant & Gould's unopposed motion for leave to intervene in Miscellaneous Docket No. 803. The motions for leave to file the replies are also granted. To the extent set forth below, we grant the petition for mandamus.

I

TiVo sued EchoStar for infringement of its U.S. Patent No. 6,233,389 ("the '389 patent"). In response to the allegation of willful infringement, EchoStar asserted the defense of reliance on advice of counsel. Prior to the filing of the action, EchoStar relied on advice of in-house counsel. After the action was filed, EchoStar obtained additional legal advice from Merchant & Gould but elected not to rely on it. Presumably to explore further EchoStar's state of mind in determining that it did not infringe the patent, TiVo sought production of documents in the possession of EchoStar and Merchant & Gould. The district court held that by relying on advice of in-house counsel EchoStar waived its attorney-client privilege and attorney work-product immunity relating to advice of any counsel regarding infringement, including Merchant & Gould. The district court indicated that the scope of the waiver included communications made either before or after the filing of the complaint and any work product, whether or not the product was communicated to EchoStar. The district court also held that EchoStar could redact information related only to trial preparation or information unrelated to infringement. EchoStar produced communications, including two infringement opinions from Merchant & Gould, but did not produce any work product related to the Merchant & Gould opinions. [FN1]

Thereafter, the parties sought clarification of the district court's order. TiVo argued that the district court should order EchoStar to produce all Merchant & Gould documents that relate to the advice-of-counsel defense, even if EchoStar was not in possession of the documents because they were never communicated to EchoStar. EchoStar argued that it should only be required to produce documents that were provided to it by Merchant & Gould.

On October 5, 2005, the district court issued an order

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that clarified its previous order and stated that the waiver of immunity extended to all work product of Merchant & Gould, whether or not communicated to EchoStar. The district court determined that the documents could be relevant or lead to the discovery of admissible evidence because they might contain information that was conveyed to EchoStar, even if the documents were not themselves conveyed to EchoStar. EchoStar petitions this court for a writ of mandamus with respect to the Merchant & Gould documents not provided to EchoStar, [FN2] challenging the district court's rulings. Merchant & Gould moves for leave to intervene in EchoStar's petition and submits its own petition for a writ of mandamus.

II

*2 [1][2][3] The remedy of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power. _In re Calmar, Inc._, 854 F.2d 461, 464 (Fed.Cir.1988). A party seeking a writ bears the burden of proving that it has no other means of obtaining the relief desired, _Mallard v. U.S. Dist. Court_, 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989), and that the right to issuance of the writ is "clear and indisputable," _Allied Chem. Corp. v. Daiflon, Inc._, 449 U.S. 33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). A writ of mandamus may be sought when the challenged order turns on questions of privilege. _In re Regents of Univ. of Cal._, 101 F.3d 1386, 1387 (Fed.Cir.1996); _In re Pioneer Hi-Bred Int'l, Inc._, 238 F.3d 1370, 1374 (Fed.Cir.2001).

EchoStar argues that a writ of mandamus should issue, among other reasons, because the district court erred in determining that (1) the attorney-client privilege had been waived and (2) the waiver of any privilege extended to work-product that was not communicated to EchoStar because, _inter alia_, the documents are not relevant to whether EchoStar had a good faith belief that it did not infringe. Merchant & Gould also argues that the district court erred in requiring the production of documents that Merchant & Gould did not provide to EchoStar because any such documents could not be relevant to whether EchoStar reasonably had a good faith belief that it did not infringe, based upon advice from counsel.

In response, TiVo argues, _inter alia_, that (1) EchoStar is not entitled to a writ of mandamus because it has complied, in large part, with the district court orders it now challenges, (2) the attorney-client privilege was waived when EchoStar asserted a defense of reliance on advice of in-house

counsel, (3) the relevance of the Merchant & Gould documents can be determined when they are offered as evidence, and (4) even though the Merchant & Gould documents may not have been provided to EchoStar, they may contain information that was otherwise conveyed to EchoStar.

[4] Regarding TiVo's first argument, that EchoStar is not entitled to mandamus because it has complied in large part with the order, we do not believe it is a requirement that a party refuse to comply at all with an order, if it seeks to challenge only a part of the order. Such a rule would encourage parties not to comply with district court orders that, in large part, they do not challenge, so that they could preserve a challenge only to the portions that they believe are erroneous. EchoStar cannot undo the disclosures it has made to TiVo, but it can challenge the portions of the order that require additional disclosures.

We now turn to the more substantive arguments underlying this petition.

III

[5][6] In this petition, we apply our own law, rather than the law of the regional circuit. This case involves the extent to which a party waives its attorney-client privilege and work-product immunity when it asserts the advice-of-counsel defense in response to a charge of willful patent infringement. "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law." _Advanced Cardiovascular Sys. v. Medtronic, Inc._, 265 F.3d 1294, 1307 (Fed.Cir.2001). A remedy for willful patent infringement is specifically provided in the Patent Act, _see_ 35 U.S.C. § § 284-285; therefore, questions of privilege and discoverability that arise from assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law, _see In re Spalding Sports Worldwide, Inc._, 203 F.3d 800, 803-04 (Fed.Cir.2000) (applying Federal Circuit law to question of attorney-client privilege between patent attorney and patentee).

A

*3 [7] EchoStar first challenges the district court's holding that EchoStar waived the attorney-client privilege when it asserted its defense in response to the charge of willful infringement. The attorney-client privilege protects disclosure of communications between a client and his attorney. _United States v. Zolin_, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); _Upjohn Co. v. United_

*States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

[8][9] Once a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived. "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed.Cir.2005).

[10] EchoStar argues that it did not assert the advice-of-counsel defense because it intended to rely only on an "in-house investigation supervised by in-house counsel." The district court held that the opinion formed by in-house counsel and conveyed to EchoStar executives, although not a traditional opinion of counsel, constituted a legal opinion. We see no error in the district court's determination.

EchoStar summarily asserts that "an internal investigation involving in-house engineers and in-house counsel is simply a different subject matter from legal opinions commissioned at a later date from outside lawyers." This argument is without merit. Whether counsel is employed by the client or hired by outside contract, the offered advice or opinion is advice of counsel or an opinion of counsel. Use of in-house counsel may affect the strength of the defense, but it does not affect the legal nature of the advice. *See Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1390 (Fed.Cir.1983) *(overruled in part on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed.Cir.2004) *(en banc* )).

Thus, when EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel, which would include communications with Merchant & Gould. *See Akeva LLC v. Mizuno Corp.*, 243 F.Supp.2d 418, 423 (M.D.N.C.2003).

**B**

EchoStar next asserts that the district court's order cast too wide a net by including within the waiver's scope documents that were never communicated from Merchant & Gould (the attorney) to EchoStar (the client). The district court stated:

EchoStar had the benefit of choice, as explained by the Federal Circuit in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, of whether to introduce [in-house counsel's] opinion. But once EchoStar chose to introduce the opinion, it opened to inspection all related advice sought and developed regarding EchoStar's potential infringement of the '389 patent. Regardless of when the opinions or materials were transcribed or communicated to EchoStar, such information necessarily relates to the opinion being offered by [in-house counsel] and goes to show EchoStar's state of mind with respect to willful infringement. This is particularly true where, as is the case here, EchoStar's willfulness witness was privy to the substance of the willfulness opinions developed by outside counsel both pre- and post-filing....

*4 *TiVo, Inc. v. EchoStar Comm. Corp.*, No. 2:04-CV-1, at 13 (E.D.Tex. Sept. 26, 2005) ("September Order"). Noting that district courts had ruled differently on whether the waiver of work-product protection covered documents that were not disclosed to the client, the district court discussed the reasons for requiring production of uncommunicated work product:

Still, other courts have mandated production of all material regardless of whether they were disclosed, maintaining that the discovery of such information is necessary to uncover what the client was actually told by opinion counsel. *See Aspex Eyewear Inc. v. E'Lite Optik Inc.*, 276 F.Supp.2d 1084, 1092-93 (D.Nev.2003); *Novartis Pharms. Corp. v. EON Labs Mfg., Inc.*, 206 F.R.D. 396 (D.Del.2002). In *Novartis,* the court stated, "it is critical for the patentee to have a full opportunity to probe, not only the state of mind of the infringer, but also the mind of the infringer's lawyer upon which the infringer so firmly relied." *Id.* at 399. The rationale behind this approach is that, by imposing broad waiver, the advice of counsel defense will only be invoked by "infringers who prudently and sincerely sought competent advice from competent counsel ..." and "[m]oreover, focusing on the infringer's waiver rather than state of mind may reduce the chances of legal gamesmanship creeping into the practice of rendering infringement and validity opinions." *Id.* "[I]f negative information was important enough to reduce to a memorandum, there is a reasonable possibility that the information was conveyed in some form or fashion to the client." *Beneficial Franchise Co. Inc. v. Bank One N.A.*, 205 F.R.D. 212, 218 (N.D.Ill.2001).

September Order at 11-12.

In a subsequent order, the district court further

explained why the scope of the waiver should include work product that was not disclosed to EchoStar:

> Were discovery of "uncommunicated" materials not allowed, accused infringers could easily shield themselves from disclosing any unfavorable analysis by simply requesting that their opinion counsel not send it. This would be unfair.

*TiVo, Inc. v. EchoStar Comm. Corp.,* No. 2:04-CV-1, at 3 (E.D.Tex. Oct. 6, 2005) ("October Order").

[11] We review the district court's determination as to the scope of the waiver for an abuse of discretion. *In re Pioneer,* 238 F.3d at 1373 n. 2 ("[I]t appears that virtually all the circuits review the decision of a district court [regarding waiver of privilege] underlying a petition for writ of mandamus for abuse of discretion."). EchoStar asserts that to apply the broad scope employed by the district court to the waiver of both attorney-client privilege and work-product doctrine was an abuse of discretion. We agree.

[12][13][14][15] The attorney-client privilege and the work-product doctrine, though related, are two distinct concepts and waiver of one does not necessarily waive the other. *See Carter v. Gibbs,* 909 F.2d 1450, 1451 (Fed.Cir.1990) (*en banc* ), *superseded in non-relevant part,* Pub.L. No. 103-424, § 9(c), 108 Stat. 4361 (1994), *as recognized in Mudge v. United States,* 308 F.3d 1220, 1223 (Fed.Cir.2002); *see also United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). In general, a party may obtain discovery of any matter that (1) is "not privileged" and (2) "is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Among other things, attorney-client communications are designated as "privileged." *See Upjohn,* 449 U.S. at 389; *Genentech, Inc. v. Int'l Trade Comm'n,* 122 F.3d 1409, 1415 (Fed.Cir.1997). "The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *Id.* We recognize the privilege in order to promote full and frank communication between a client and his attorney so that the client can make well-informed legal decisions and conform his activities to the law. *See Upjohn,* 449 U.S. at 389; *XYZ Corp. v. United States,* 348 F.3d 16, 22 (1st Cir.2003). This privilege is at the discretion of the client. *Knorr-Bremse,* 383 F.3d at 1345; *Carter,* 909 F.2d at 1451. The client can waive the attorney-client privilege when, for instance, it uses the advice to establish a defense. *See id.* However, selective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for

favorable advice while asserting its privilege on unfavorable advice. *XYZ Corp.,* 348 F.3d at 24. In such a case, the party uses the attorney-client privilege as both a sword and a shield. *Id.; Fort James Corp.,* 412 F.3d at 1349. To prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter. *Id.*

*5 [16] In contrast to the attorney-client privilege, the work-product doctrine, or work-product immunity as it is also called, can protect "documents and tangible things" prepared in anticipation of litigation that are both non-privileged and relevant. Fed.R.Civ.P. 26(b)(3). Unlike the attorney-client privilege, which protects all communication whether written or oral, work-product immunity protects documents and tangible things, such as memorandums, letters, and e-mails. *See generally Judicial Watch, Inc. v. Dep't of Justice,* 432 F.3d 366 (D.C.Cir.2005). We recognize work-product immunity because it promotes a fair and efficient adversarial system by protecting "the attorney's thought processes and legal recommendations" from the prying eyes of his or her opponent. *Genentech,* 122 F.3d at 1415 (citations omitted); *accord Hickman v. Taylor,* 329 U.S. 495, 511-14, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ("Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.... Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.... Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."); *see also Nobles,* 422 U.S. at 237; *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980). Essentially, the work-product doctrine encourages attorneys to write down their thoughts and opinions with the knowledge that their opponents will not rob them of the fruits of their labor. *Hickman,* 329 U.S. at 511; *Id.* at 516 (Jackson, J. *concurring* ) ("[A] common law trial is and always should be an adversary proceeding. Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary."); *United States v. Adlman,* 68 F.3d 1495, 1501 (2d Cir.1995) ("The purpose of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation."); *Coastal States, 617 F.2d at 864* (noting that the effect of no immunity would mean "less work-product would be committed to paper, which might harm the quality of trial preparation").

[17][18] Like the attorney-client privilege, however, the work-product doctrine is not absolute. *See In re Martin Marietta Corp., 856 F.2d 619, 626 (4th Cir.1988).* First, a party may discover certain types of work product if they have "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent ... by other means." Rule 26(b)(3). This rule, however, only allows discovery of "factual" or "non-opinion" work product and requires a court to "protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative." *Id.; accord United States v. Adlman, 134 F.3d 1194, 1197 (2d Cir.1998); Martin Marietta Corp., 856 F.2d at 626.*

*6 [19][20] Second, a party may discover work product if it waives its immunity. *See id. at 622-23; Thorn EMI N. Am. v. Micron Tech., 837 F.Supp. 616, 621 (D.Del.1993).* However, work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege. *Martin Marietta Corp., 856 F.2d at 626.* Instead, work-product waiver only extends to "factual" or "non-opinion" work product concerning the same subject matter as the disclosed work product. *See id. at 625* (noting that a party "impliedly waived the work-product privilege as to all non-opinion work-product on the same subject matter as that disclosed.") *(citing Nobles, 422 U.S. at 239).*

We recognize that the line between "factual" work product and "opinion" work product is not always distinct, especially when, as here, an attorney's opinion may itself be "factual" work product. When faced with the distinction between where that line lies, however, a district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product.

[21] That being said, we recognize at least three categories of work product that are potentially relevant to the advice-of-counsel defense here. They include: (1) documents that embody a communication between the attorney and client

concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client. *See Thorn EMI, 837 F.Supp. at 622-623.* [FN3] As to the first category, we already noted in section A that when a party relies on the advice-of-counsel as a defense to willful infringement the party waives its attorney-client privilege for all communications between the attorney and client, including any documentary communications such as opinion letters and memoranda. *See also Akeva LLC, 243 F.Supp.2d at 423.* [FN4] As to the other two categories, scholars have noted that our prior opinions do not clearly define the scope of the work-product waiver. [FN5] As a result, the district courts that have addressed this issue are split on just how far to extend that scope. *Compare Thorn EMI, 837 F.Supp. at 621-623 and Steelcase, Inc. v. Haworth, Inc., 954 F.Supp. 1195, 1198-99 (W.D.Mich.1997) with Mushroom Assoc. v. Monterey Mushrooms, Inc., 24 U.S.P.Q.2d 1767 (N.D.Cal.1992); FMT Corp. v. Nissei ASB Co., 24 U.S.P.Q.2d 1073 (N.D.Ga.1992); and Handgards, Inc. v. Johnson & Johnson, 413 F.Supp. 926 (N.D.Cal.1976).* As we discuss in more detail below, we conclude that waiver extends to the third category but does not extend so far as the second.

*7 [22] By asserting the advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or her attorney do not give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies. *See Thorn EMI, 837 F.Supp. at 621-623* ("[C]ourts generally find a [work-product] waiver only if facts relevant to a particular, narrow subject matter are at issue and have been disclosed under circumstances where it would be unfair to deny the other party an opportunity to discover other facts relevant to that subject matter."). Work-product waiver extends only so far as to inform the court of the *infringer's* state of mind. Counsel's opinion is not important for its legal correctness. It is important to the inquiry whether it is "thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." *Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed.Cir.1992).* It is what the alleged infringer knew or believed, and by contradistinction not what other items counsel may have prepared but did not

communicate to the client, that informs the court of an infringer's willfulness.

The overarching goal of waiver in such a case is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice. *See Fort James Corp.*, 412 F.3d at 1349; *Martin Marietta Corp.*, 856 F.2d at 626; *In re Sealed Case*, 676 F.2d 793, 818 (D.C.Cir.1982) ("[W]hen a party seeks greater advantage from its control over work product than the law must provide to maintain a healthy adversary system[,] then the balance of interests recognized in Hickman ... shifts."). To the extent the work-product immunity could have such an effect, it is waived.

[23] The second category of work product, which is never communicated to the client, is not discoverable. Under Rule 26(b)(3), this so-called "opinion" work product deserves the highest protection from disclosure. *See Adlman*, 134 F.3d at 1197. While an accused infringer may waive the immunity for work product that embodies an opinion in letters and memorandum communicated to the client, he does not waive the attorney's own analysis and debate over what advice will be given. *See Ortho Pharm.*, 959 F.2d at 944. Upon waiver of attorney-client privilege, communicative documents, such as opinion letters, become evidence of a non-privileged, relevant fact, namely what was communicated to the client, *see Nobles*, 422 U.S. at 239 n. 14 ("[W]here ... counsel attempts to make a testimonial use of [work-product] materials the normal rules of evidence come into play with respect to ... production of documents."); however, counsel's legal opinions and mental impressions that were not communicated do not acquire such factual characteristics and are, therefore, not within the scope of the waiver. As the *Martin Marietta Corp.* court noted,

*8 There is relatively little danger that a litigant will attempt to use a pure mental impression or legal theory as a sword and as a shield in the trial of a case so as to distort the factfinding process. Thus, the protection of lawyers from the broad repercussions of subject matter waiver in this context strengthens the adversary process, and, unlike the selective disclosure of evidence, may ultimately and ideally further the search for the truth.

856 F.2d at 626. Thus, if a legal opinion or mental impression was never communicated to the client, then it provides little if any assistance to the court in determining whether the accused knew it was infringing, and any relative value is outweighed by the policies supporting the work-product doctrine.

The third category of work product material falls admittedly somewhere interstitially between the first and second. In some instances there may be documents in the attorney's file that reference and/or describe a communication between the attorney and client, but were not themselves actually communicated to the client. For example, if an attorney writes a memorandum or an e-mail to his associate referencing a phone call with the client, in which he indicates that he discussed the client's potential infringement, then such a memorandum is discoverable. Unlike work product that was uncommunicated, this work product references a specific communication to the client. Though it is not a communication to the client directly nor does it contain a substantive reference to what was communicated, it will aid the parties in determining what communications were made to the client and protect against intentional or unintentional withholding of attorney-client communications from the court.

Still, we must emphasize that such communications may contain work product of the second kind--legal analysis that was not communicated. In those situations, the parties should take special care to redact such information, and if necessary the district court may review such material *in camera*. *See* Rule 26(b)(3); *see also id.* advisory committee's note (1970) ("[T]he courts will sometimes find it necessary to order disclosure of a document but with portions deleted."); *Martin Marietta Corp.*, 856 F.2d at 626.

[24] Therefore, when an alleged infringer asserts its advice-of-counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused. This waiver of both the attorney-client privilege and the work-product immunity includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a communication between attorney and client.[FN6]

[25] Here, Merchant & Gould work product that was not communicated to EchoStar or does not reflect a communication is not within the scope of EchoStar's waiver because it obviously played no part in EchoStar's belief as to infringement of the '389

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

patent. *See Steelcase, 954 F.Supp. at 1198- 99.* It may very well be true, as TiVo suggests, that at times some parties would communicate draft opinion letters or the contents thereof to the client confidentially in order to avoid disclosing that communication during potential discovery if and when the attorney-client privilege is waived, but we cannot eviscerate the legitimate policies of the work-product doctrine and chill the principles of our adversary system as a whole on account of the possibility that, from time to time, there may be occurrences of ethical transgressions.

**\*9** In sum, the advice-of-counsel defense to willfulness requires the court to decide, *inter alia*, whether counsel's opinion was thorough enough to "instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." *Ortho Pharm., 959 F.2d at 944.* If a Merchant & Gould document was not communicated to EchoStar or if a Merchant & Gould document does not reference a communication between Merchant & Gould and EchoStar, its relevant value is outweighed by the policies of the work-product doctrine. Thus, it was an abuse of discretion for the district court to determine that the scope of the waiver of privilege extended to such documents.

Accordingly,

IT IS ORDERED THAT:

The petitions are granted. The district court is directed to vacate its orders, to the extent noted above. TiVo is entitled to discovery of Merchant & Gould documents consistent with, and in the manner set forth in, this opinion.

> FN1. EchoStar also provided notes and communications relating to infringement prepared by another firm.

> FN2. No in-house counsel documents are at issue in the petition.

> FN3. We by no means anticipate that all work product in every case will fit into one of these three categories.

> FN4. EchoStar contends that waiver of opinions does not extend to advice and work product given after litigation began. While this may be true when the work product is never communicated to the client, it is not the case when the advice is relevant to

ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation. *See Akeva LLC, 243 F.Supp.2d at 423* ("[O]nce a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement."); *see also Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336, 1351-1353 (Fed.Cir.2001)* (noting that an infringer may continue its infringement after notification of the patent by filing suit and that the infringer has a duty of due care to avoid infringement after such notification).

> FN5. *See* David O. Taylor, *Wasting Resources: Reinventing the Scope of Waiver Resulting from the Advice-of-Counsel Defense to a Charge of Willful Patent Infringement, 12 Tex. Intell. Prop. L.J. 319, 320-21 (2004)*; William F. Lee & Lawrence P. Cogswell, III, *Understanding and Addressing the Unfair Dilemma Created by the Doctrine of Willful Patent Infringement, 41 Hous. L.Rev. 393, 436-37 (2004)*.

> FN6. Merchant & Gould contends that it alone retains the right to deny a party access to work product not communicated to a client. While we do not answer this question directly; here, the client, EchoStar, holds the right to waive privilege for attorney-client communications, *Carter, 909 F.2d at 1451*, and therefore the right to waive privilege to evidence of those communications contained in Merchant & Gould's files. As we stated before, there may be a redaction of information which reflects legal opinions and mental impressions of Merchant & Gould attorneys that were not communicated to EchoStar. Rule 26(b)(3).

--- F.3d ----, 2006 WL 1149528 (Fed.Cir.)

**Briefs and Other Related Documents (Back to top)**

• 06-M805 (Docket) (Oct. 25, 2005)

• 2006-M805 (Docket) (Oct. 25, 2005)

• 2006-M803 (Docket) (Oct. 11, 2005)

• 06-M803 (Docket) (Oct. 11, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1917256 (N.D.Ill.)
(Cite as: 2002 WL 1917256 (N.D.Ill.))

Page 1

☞

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
MOTOROLA, INC., Plaintiff,
v.
VOSI TECHNOLOGIES, INC. and Ivano Stamegna,
Defendants.
No. 01 C 4182.

Aug. 19, 2002.

*MEMORANDUM OPINION AND ORDER*

KENNELLY, J.

*1 In this case, plaintiff Motorola Inc. seeks a
declaratory judgment that it is not infringing patents
held by defendants Vosi Technologies, Inc. and Ivano
Stamegna, or alternatively that those patents are
invalid. Vosi has counterclaimed for patent
infringement, misappropriation of trade secrets,
breach of contract, and fraud. This Memorandum
Opinion and Order concerns two motions filed by
Motorola, one concerning its own attorney-client
privilege and the other concerning Vosi's attorney-
client privilege.

1. Motorola's motion for protective order

In its counterclaim, Vosi alleges that Motorola
willfully infringed its patents, which if proven could
result in an award of treble damages. 35 U.S.C. §
284. Willful infringement consists of deliberate
disregard of the patentee's rights. *Vulcan Engineering
Co. v. Fata Aluminum, Inc., 278 F.3d 1366, 1378
(Fed.Cir.2002)*. "Thus the focus is generally on
whether the infringer exercised due care to avoid
infringement, usually by seeking the advice of
competent and objective counsel, and receiving
exculpatory advice. When it is found that the
infringer acted without a reasonable belief that its
actions would avoid infringement, the patentee has
established willful infringement...." *Id.* If a party
claims reliance on advice of counsel to defend
against a claim of willful infringement, it waives its

attorney-client and work-product privileges with
respect to the subject matter of the legal advice relied
upon. *See In re Pioneer Hi-Bred International, Inc.,
238 F.3d 1370, 1375 (Fed.Cir.2001); Eli Lilly & Co.
v. Zenith Goldline Pharmaceuticals, Inc., 149
F.Supp.2d 659, 661 (S.D.Ind.2001); Thermos Co. v.
Starbucks Corp., No. 96 C 3833, 1998 WL 781120,
at *1 (N.D.Ill. Nov. 3, 1998).*

Motorola, which evidently received opinions from
counsel regarding the Vosi patents, is assessing
whether it should rely on those opinions to defend
against the claim of willful infringement. It has filed
a motion for protective order, seeking a ruling on the
scope of the waiver that will exist if it elects to rely
on advice of counsel. This is an appropriate
procedure; it permits a party to make a fully-
informed and intelligent decision whether to rely on
advice of counsel with full knowledge of the
consequences of the decision. *Cf. Quantum Corp. v.
Tandon Corp., 940 F.2d 642, 643-44 (Fed.Cir.1991)*
(suggesting bifurcation of the issue of willfulness as a
way of relieving party of dilemma of whether to
waive privilege).

Motorola wants the Court to impose three limitations
on the scope of any such waiver. First, Motorola says
that it would rely only on advice concerning the
validity of Vosi's patents; it seeks to limit the waiver
to opinions concerning validity, not those concerning
infringement or other subjects. The Court agrees with
Vosi that this cuts it too narrowly. It is true, as noted
above, that a waiver of the attorney-client privilege
ordinarily concerns only the subject matter of the
communications that are disclosed. *See Micron
Separation, Inc. v. Pall Corp., 159 F.R.D. 361, 365
n.8 (D.Mass.1995)* (reliance on counsel's advice
regarding validity does not waive privilege with
respect to advice regarding infringement). But as
Vosi points out, opinions regarding validity are
necessarily based on a particular construction of the
claims of the patent. It is conceivable that Motorola
could have received an opinion of invalidity that was
based on a very broad construction of the claims,
while also receiving an opinion of non-infringement
that was based on a narrower construction. In that
hypothetical situation, knowledge of the narrower
construction could cast doubt on the premise of the
opinion of invalidity and thus could bear on whether
it was reasonable for Motorola to rely on that
opinion. *Cf. Micron, 159 F.R.D. at 363* (later

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1917256 (N.D.Ill.)
(Cite as: 2002 WL 1917256 (N.D.Ill.))

Page 2

opinions which "cast doubt on the premises or bases of the earlier opinion" relied upon are within scope of waiver of privilege).

*2 In short, opinions that involve issues other than validity but that include a construction of the patent concern, to that extent, the same subject matter as opinions regarding validity. It would be unfair to permit Motorola to make a selective disclosure of opinions that have a bearing on the validity issue. *See Abbott Laboratories v. Baxter Travenol Laboratories, Inc., 676 F.Supp. 831, 832 (N.D.Ill.1987).* For these reasons, if Motorola chooses to rely on its counsel's opinions regarding validity, it must disclose all pre-suit communications of counsel on subjects other than validity insofar as they include a construction of the same patent or patents that are the subject of any validity opinion.

Vosi has agreed to the second limitation proposed by Motorola: that any waiver be limited to matters that were actually communicated to Motorola, and should not include counsel's mental impressions, thought processes, and work product that were not communicated to Motorola.

Motorola's proposed third limitation concerns the post-suit opinions of its trial counsel. Motorola's trial counsel are not the same lawyers who provided the pre-suit opinions on which it may rely to defend against the claim of willful infringement. Motorola argues that trial counsel's opinions should retain their protection irrespective of Motorola's reliance on advice of pre-litigation counsel. The Court agrees with this proposed limitation. *Accord, e . g., Thermos, 1998 WL 781120, at *5; Micron, 159 F.R.D. at 365-66.* The willfulness or non-willfulness of Motorola's conduct logically depends upon the advice it received before suit was filed. Moreover, if a party's reliance on advice of counsel to defend a claim of willful infringement resulted, without more, in a waiver of the attorney-client and work-product privileges pertaining to the opinions of its trial counsel, it would inappropriately chill communications between trial counsel and client and would impair trial counsel's ability to give the client candid advice regarding the merits of the case.

In sum, the Court rules as follows:

1) If Motorola relies on an opinion of counsel regarding validity, it must provide all other opinions of counsel that were communicated to Motorola regarding the issue of validity and all other opinions that were communicated to Motorola that include a

construction of any of the patents in suit.

2) Defendants shall not be permitted to take discovery as to any mental impressions, thought processes, and work product of counsel that were not communicated to Motorola.

3) Defendants shall not be permitted to take discovery of post-suit opinions or work product of Motorola's trial counsel.

2. Motorola's fourth motion to compel discovery

In its fourth motion to compel discovery, Motorola contends that Vosi's attorney-client and work-product privileges should be deemed waived pursuant to what is commonly called the "crime-fraud" exception to those privileges. Communications between attorney and client that are made in furtherance of a crime or fraud are not protected by the attorney-client or work-product privileges. *See, e.g., Clark v. United States, 289 U.S. 1, 15 (1933); In re Grand Jury Subpoenas, 144 F.3d 653, 660 (10th Cir.1998)* (exception applies to work-product privilege as well as attorney-client privilege). The party claiming that the crime-fraud exception applies must make a *prima facie* showing that a crime or fraud was committed. *Clark, 289 U.S. at 15; In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 806 (Fed.Cir.2000).* If the exception applies, the privilege is deemed waived as to documents and communications in furtherance of the crime or fraud. *Spalding, 203 F.3d at 807; see also, e.g., In re Bankamerica Corp. Securities Litigation, 270 F.3d 639, 642 (8th Cir.2001).*

*3 A patent applicant owes the Patent Office a duty of candor and good faith, *Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed.Cir.1995),* which runs from the date of its application until the date a patent is issued or the application is abandoned. *37 C.F.R. § 1.56(a).* The crime-fraud exception to the attorney-client and work-product privileges applies when a *prima facie* showing is made that a patentee procured its patent through a fraud on the Patent Office. *Spalding, 203 F.3d at 807.* The party claiming the exception must make a *prima facie* showing that the patent applicant made a willful misrepresentation or omission of a material fact before the Patent Office, with the intent to deceive the examiner, and upon which the examiner actually relied. *See id.; Leybold-Heraeus Technologies, Inc. v. Midwest Instrument Co., 118 F.R.D. 609, 614 (E.D.Wis.1987).*

Motorola contends that attorney David Duckworth, who prosecuted Vosi's patent applications that led to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1917256 (N.D.Ill.)
(Cite as: 2002 WL 1917256 (N.D.Ill.))

Page 3

issuance of the patents in suit, committed a fraud on the Patent Office in connection with the prosecution of the patents. It says that Duckworth knowingly submitted a false affidavits from Ivano Stamegna (the inventor and a defendant in this case) in support of the patent applications, and that Duckworth knowingly failed to advise the Patent Office of prior art that invalidated certain of the claims in certain of the patents. We consider these contentions in turn.

In November 1997, the Patent Office rejected all of the claims of the application that ultimately led to issuance of <u>U.S. Patent No. 5,797,088</u>, citing as prior art another patent, the Nagashima patent, which had been issued after Stamegna's application was filed. Duckworth advised Stamegna about the possibility of "swearing behind" the Nagashima patent--in other words, showing that Stamegna had actually conceived of his invention before the date of Nagashima's application, May 20, 1993, and had engaged in activities from before that date continuously to the filing of his own application showing that he was diligent in making the application. Duckworth Dep. 58-61. Following this discussion, Stamegna drafted and sent to Duckworth a statement that he had conceived of the invention in late 1991, but that "in 1992, due to the real estate depression in California, my priorities got shifted and I had to put my invention on hold. In 1993, I began working on it and in 1994 I pursued it diligently putting a lot of energy into the unit...." Motion to Compel, Ex. L. Duckworth then prepared a declaration which Stamegna signed and Duckworth submitted to the Patent Office. The declaration included a statement that Stamegna had conceived of the invention prior to May 20, 1993, and that "[f]rom prior to May 20, 1993, I was diligent in attempting to reduce the invention to practice until at least October 30, 1995," the date of Stamegna's patent application. Motion to Compel, Ex. M, ¶ ¶ 1, 3. He provided details in support of the claim of diligence. *Id.* ¶ ¶ 4-5. The patent examiner relied on Stamegna's statements in allowing the claims in his patent applications. Motion to Compel, Ex. N.

*4 Motorola argues that Stamegna's declaration that Duckworth submitted to the Patent Office was inconsistent with the statement that Stamegna had provided to Duckworth and that this reflects an intent to deceive the examiner. Specifically, it says that Stamegna's initial statement to Duckworth reflected that he was not diligent until 1994 but that his declaration stated that he had been diligent since before May 20, 1993. This is, in the Court's view, a misinterpretation of Stamegna's initial statement.

Stamegna did not say that he *was not* diligent *until* 1994; rather he said that he *was* diligent *in* that year. The two propositions are materially different. The fact that Stamegna (a non-lawyer) had, in his initial statement, used the word "diligently" only with respect to his activities in 1994 does not preclude the possibility that he had exercised diligence, as that term is used in patent law, in 1993. Indeed, Stamegna's initial statement to his attorney included an assertion that he had begun working on the invention in 1993, which is consistent with his later declaration to the Patent Office, and that declaration gave a detailed account of what he had done before May 20, 1993 to support the claim of diligence. Motion to Compel, Ex. M, ¶ ¶ 4-5. Based on the evidence submitted to the Court, the most reasonable inference is that after inquiring of Stamegna upon receiving his initial statement, Duckworth honestly believed that Stamegna could claim that he had been diligent prior to May 1993. The submission of the declaration does not support invocation of the crime-fraud exception.

Motorola's other claim of a fraud on the Patent Office arises from a statement by Duckworth in a document he submitted in support of a patent application that Vosi currently has pending. Duckworth's statement refers to matters that had taken place in connection with his prosecution on Vosi's behalf of two of the patents involved in this case, <u>U.S. Patent Nos. 6,058,298</u> and <u>6,058,078</u>. The '298 patent was issued on May 2, 2000, and the '078 patent was issued on July 4, 2000. Vosi's pending patent application, Application No. 09/561,788, is, as best as we can determine, a continuation application relating to the subject matter of the earlier patents.

In support of the currently-pending application, Duckworth submitted a document to the Patent Office in which he recounted discussions he had in June 2000 with Marsha Banks-Harold, the examiner on the applications that led to issuance of the '298 and '078 patents. Duckworth stated that on June 1, 2000, he called Banks-Harold and advised her that he had uncovered two prior art references which appeared to anticipate "numerous claims, but not all claims" of the '088 patent--which had been issued in 1998--and also implicated "allowed claims" of the applications that led to the '298 and '078 patents. Motion to Compel, Ex. O. Duckworth stated that he told Banks-Harold that this prior art had been uncovered after he had received Notices of Allowance on both the '298 and '078 patents, but before the '298 patent was actually issued (the conversation took place after issuance of the '298

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1917256 (N.D.Ill.)
(Cite as: 2002 WL 1917256 (N.D.Ill.))

Page 4

patent but before issuance of the '078 patent). Duckworth advised Banks-Harold that it was his understanding that an applicant finding himself in these circumstances was permitted to allow a patent to issue despite the belatedly-discovered prior art, so long as the claims that were the subject of the prior art were disclaimed after issuance. Duckworth stated that after consulting with her supervisor, Banks-Harold reported to him that Vosi had two options: it could "withdraw the [pending] application from issuance and abandon the application and then prosecute a continuation application in which the relevant [prior art] information was provided to the Patent Office," or "could allow the patent to issue and thereafter disclaim claims which were considered invalid." Motion to Compel, Ex. O. Duckworth said that he later advised Banks-Harold that he would allow the '078 patent to issue and would then prosecute a continuation application which disclosed the relevant prior art, prosecuting the claims believed to be allowable. *Id.*

*5 In essence, Duckworth and Vosi decided to take the best of both of the proposals the patent examiner had made--in a sense, to have their cake and eat it too. Though the examiner had proposed making a new continuation application in conjunction with a withdrawal of the then-pending application, or alternatively a disclaimer of invalid claims after issuance of the then-pending patent, Vosi and Duckworth elected to make a continuation application without withdrawing the pending application, and Vosi never disclaimed the purportedly invalid claims after allowing the patent to issue. Thus far there has been no explanation of why Vosi or Duckworth chose this course.

But although this course of conduct is suggestive of what could fairly be called sharp practices, the Court does not see how it was a fraud on the Patent Office with respect to the issuance of either the '298 or the '078 patent. Motorola has not attempted to show that Duckworth's claim regarding the timing of his knowledge of the prior art in question was false--for example, that his knowledge of the prior art actually predated Vosi's receipt of the notice of allowance of either of the patents. Nor has Motorola tried to refute Duckworth's claim that the examiner in effect said that it was permissible for an applicant faced with this situation to allow a patent to issue without making further pre-issuance disclosures. And Motorola has not attempted to refute Duckworth's claim that he told the examiner, prior to the issuance of the '078 patent, that he was going to permit that patent to issue, and only then submit a continuation

application. On the present record, the Court cannot say that Duckworth or Vosi committed a fraud on the Patent Office by allowing either patent to issue. Indeed, Duckworth's disclosure of the prior art to the examiner before the '078 patent was issued was the antithesis of fraud, and the issuance of that patent after the examiner knew that Duckworth would allow it to issue and would only then submit a continuation application disclosing the prior art is indicative that the examiner was not defrauded with regard to the '078 patent and that the non-disclosure of the prior art before issuance of the '298 patent likewise was not material.

Motorola argues that Duckworth's and Vosi's failure to follow the advice they say they got from the patent examiner indicates that they were defrauding the Patent Office from the outset. But this is a *non sequitur.* There is no basis for the Court to infer from Duckworth's post-issuance conduct that his statements regarding the timing of his discovery of the prior art were untrue. It is just as likely that the determination not to disclaim the allegedly invalid claims resulted from a decision made after the issuance of the patents. Though Duckworth's and Vosi's failure to follow the examiner's alleged advice is unexplained, it does not constitute *prima facie* evidence of an intent to defraud the Patent Office while the '298 and '078 patent applications were still pending.

*6 If indeed there was a fraud, it took place after issuance of the patents, when Vosi chose not to disclaim the patents and then attempted, both prior to and during this litigation, to enforce them against Motorola. But this was not, in the Court's view, a fraud on the Patent Office. Motorola correctly argues that a patent applicant's duty of candor to the Patent Office extends through the date the patent is issued, *see* 37 C.F.R. § 1.56(a), but it cites no authority for the proposition that a patent holder has a duty of candor vis-a-vis the Patent Office beyond the date of issuance. And Motorola does not contend that Vosi or Duckworth has made any knowing misrepresentations or omissions of material facts in the currently-pending continuation application.

Motorola also suggests that Vosi's attempt to enforce the patents prior to Motorola's filing of this action, its pursuit of a counterclaim for infringement based on the two patents, and its refusal (as yet) to concede, in response to interrogatories, that the patents are invalid in any respect is also evidence of fraudulent intent. But even if this were so, it would not be *prima facie* evidence of an intent to defraud the Patent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1917256 (N.D.Ill.)
**(Cite as: 2002 WL 1917256 (N.D.Ill.))**

Office. Once the patents had issued, the potential victims of the claimed fraud were the public and persons or entities (like Motorola) against whom defendants attempted to enforce a patent that they arguably should have disclaimed, not the Patent Office.

Fraud consisting of the knowing pursuit of baseless litigation may bring the crime-fraud exception into play, *see, e.g., In re Richard Roe, Inc., 168 F.3d 69, 71-72 (2d Cir.1999)*, and there is authority for the proposition that pursuit of a claim of infringement of a patent that the holder knew was invalidly obtained is sufficient to invoke the exception. *Leybold, 118 F.R.D. at 615* (citing *Kockums Industries Ltd. v. Salem Equipment, Inc., 561 F.Supp. 168 (D.Ore.1983)*). But that is not the focus of Motorola's motion. Moreover, a claim of crime or fraud based on the conduct of litigation presents issues that are even more sensitive than those involved when the claim is based on pre-litigation conduct. *See generally Richard Roe, Inc., 168 F.3d at 71-72*. Without a better sense of exactly what claims of what patents Vosi is and is not relying upon to support its allegations of infringement, the Court is not prepared to say that those allegations, or any significant part of them, have "little or no legal or factual basis," let alone that the litigation has been carried on for the purpose of furthering a fraud. *Id. at 71.*

For these reasons, the Court denies Vosi's motion to compel, though the denial is without prejudice to later reassertion following further discovery of the particulars of Vosi's claims in this litigation. In that regard, the Court, on its own motion, directs Vosi (if it has not done so already) to provide a direct answer to Vosi's interrogatory number 20, which requests identification of which claims of the Vosi patents are invalid. Under the circumstances present here, Vosi's answer dated August 5, 2002, which simply refers Motorola to "documents which will be produced by Defendants," is insufficient. A direct answer is to be provided within five days of entry of this order.

Conclusion
*7 For the reasons stated above, Motorola's motion for protective order [docket item 86-1] is granted in part and denied in part, and its fourth motion to compel [item 80-1] is denied.

Not Reported in F.Supp.2d, 2002 WL 1917256 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 23821414 (Trial Motion, Memorandum and Affidavit) Response to Opposition to Motorola's Second Motion for an Order to Show Cause and for Sanctions (Jan. 13, 2003)

• 2003 WL 23524702 (Trial Motion, Memorandum and Affidavit) Memorandum In Opposition to Motorola's Second Motion for an Order to Show Cause and for Sanctions (Jan. 06, 2003)

• 2003 WL 23821407 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motorola's Second Motion for an Order to Show Cause and for Sanctions (Jan. 6, 2003)

• 2002 WL 32510040 (Trial Motion, Memorandum and Affidavit) Motorola's Second Motion for an Order to Show Cause and for Sanctions (Dec. 16, 2002)

• 2002 WL 32684073 (Trial Motion, Memorandum and Affidavit) Motorola's Second Motion for an Order to Show Cause and for Sanctions (Dec. 16, 2002)

• 2002 WL 32510029 (Trial Motion, Memorandum and Affidavit) Second Motion for an Extension of Case Schedule and Supporting Memorandum (Nov. 04, 2002)

• 2002 WL 32510026 (Trial Motion, Memorandum and Affidavit) Agreed Motion for an Extension of Case Schedule and Supporting Memorandum (Oct. 03, 2002)

• 2002 WL 32510019 (Trial Motion, Memorandum and Affidavit) Motorola's Sixth Motion to Compel Discovery%n1%n (Sep. 16, 2002)

• 2002 WL 32684069 (Trial Motion, Memorandum and Affidavit) Motorola's Sixth Motion to Compel Discovery%n1%n (Sep. 16, 2002)

• 2002 WL 32684065 (Trial Motion, Memorandum and Affidavit) Motorola's Reply Regarding Its Motion for a Protective Order (Aug. 16, 2002)

• 2002 WL 32684060 (Trial Motion, Memorandum and Affidavit) Vosi's Response to Motorola's Motion for a Protective Order Concerning Waiver of Privilege (Aug. 12, 2002)

• 2002 WL 32684056 (Trial Motion, Memorandum and Affidavit) Motorola's Reply in Support of Its Fourth Motion to Compel (Aug. 9, 2002)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1917256 (N.D.Ill.)
**(Cite as: 2002 WL 1917256 (N.D.Ill.))**

• 2002 WL 32684047 (Trial Motion, Memorandum and Affidavit) Vosi's Response to Privilege Issues in Motorola's Fourth Motion to Compel (Aug. 2, 2002)

• 2002 WL 32510004 (Trial Motion, Memorandum and Affidavit) Motorola's Motion for a Protective Order (Jul. 29, 2002)

• 2002 WL 32684052 (Trial Motion, Memorandum and Affidavit) Motorola's Motion for a Protective Order (Jul. 29, 2002)

• 2002 WL 32684043 (Trial Motion, Memorandum and Affidavit) Partial Response to Motorola's Fourth Motion to Compel (Jul. 25, 2002)

• 2002 WL 32509998 (Trial Motion, Memorandum and Affidavit) Vosi's Motion to Compel Discovery on Accused Products (Jul. 19, 2002)

• 2002 WL 32509993 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Stay Litigation (Jul. 12, 2002)

• 2002 WL 32509987 (Trial Motion, Memorandum and Affidavit) Motorola's Motion for an Order to Show Cause and for Sanctions (Jul. 08, 2002)

• 2002 WL 32684040 (Trial Motion, Memorandum and Affidavit) Motorola's Motion for an Order to Show Cause and for Sanctions (Jul. 8, 2002)

• 2002 WL 32684034 (Trial Motion, Memorandum and Affidavit) Motorola's Response to Motion to Substitute Counsel (Jun. 25, 2002)

• 2002 WL 32509983 (Trial Motion, Memorandum and Affidavit) Motion to Substitute Counsel (Jun. 21, 2002)

• 2002 WL 32509974 (Trial Motion, Memorandum and Affidavit) Corrected Memorandum Supporting Motorola's Second Motion to Compel Discovery%n1%n (Jun. 10, 2002)

• 2002 WL 32684027 (Trial Motion, Memorandum and Affidavit) Vosi's Response to Motorola's Motion to Compel (Jun. 10, 2002)

• 2002 WL 32684031 (Trial Motion, Memorandum and Affidavit) Corrected Memorandum Supporting Motorola's Second Motion to Compel Discovery%n1%n (Jun. 10, 2002)

• 2002 WL 32509978 (Trial Motion, Memorandum and Affidavit) Motorola's Second Motion to Compel Discovery (May. 28, 2002)

• 2002 WL 32684025 (Trial Motion, Memorandum and Affidavit) Motorola's Reply Supporting Its Motion to Dismiss (May 22, 2002)

• 2002 WL 32509972 (Trial Motion, Memorandum and Affidavit) Second Joint Motion for Entry of Protective Order (May. 17, 2002)

• 2002 WL 32509969 (Trial Motion, Memorandum and Affidavit) Memorandum Supporting the Joint Motion for Entry of Protective Order (May. 16, 2002)

• 2002 WL 32684022 (Trial Motion, Memorandum and Affidavit) Memorandum Supporting the Joint Motion for Entry of Protective Order (May 16, 2002)

• 2002 WL 32684018 (Trial Motion, Memorandum and Affidavit) Counterplaintiff's Response to the Counterdefendant's Motion to Dismiss Counts V and VI of the Second Amended Counterclaim (May 15, 2002)

• 2002 WL 32684011 (Trial Motion, Memorandum and Affidavit) Motorola's Reply to Second Amended Counterclaim (May 13, 2002)

• 2002 WL 32510318 (Trial Pleading) Second Amended Counterclaim (Apr. 29, 2002)

• 2002 WL 32684004 (Trial Pleading) Second Amended Counterclaim (Apr. 29, 2002)

• 2002 WL 32509963 (Trial Motion, Memorandum and Affidavit) Motorola's Combined Reply Regarding Its Motion to Dismiss and Opposition to Vosi's Motion to File a Second Amended Counterclaim (Apr. 23, 2002)

• 2002 WL 32683997 (Trial Motion, Memorandum and Affidavit) Motorola's Combined Reply Regarding Its Motion to Dismiss and Opposition to Vosi's Motion to File a Second Amended Counterclaim (Apr. 23, 2002)

• 2002 WL 32683994 (Trial Motion, Memorandum and Affidavit) Counterplaintiff's Response to the Counterdefendant's Motion to Dismiss (Apr. 16, 2002)

• 2002 WL 32683989 (Trial Motion, Memorandum and Affidavit) Defendants' Response to the Plaintiff's

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1917256 (N.D.Ill.)
**(Cite as: 2002 WL 1917256 (N.D.Ill.))**

Page 7

Motion to Compel Discovery (Apr. 9, 2002)

• 2002 WL 32510309 (Trial Pleading) Answer to Second Amended Complaint (Apr. 4, 2002)

• 2002 WL 32683987 (Trial Pleading) Answer to Second Amended Complaint (Apr. 4, 2002)

• 2002 WL 32683980 (Trial Motion, Memorandum and Affidavit) Motorola's Reply to Amended Counterclaim (Apr. 1, 2002)

• 2002 WL 32509955 (Trial Motion, Memorandum and Affidavit) Motorola's Motion to Dismiss Vosi's Counterclaims Four, Five and Six (Mar. 28, 2002)

• 2002 WL 32509960 (Trial Motion, Memorandum and Affidavit) Motorola's Motion to Compel Discovery (Mar. 28, 2002)

• 2002 WL 32683984 (Trial Motion, Memorandum and Affidavit) Motorola's Motion to Compel Discovery (Mar. 28, 2002)

• 2002 WL 32510301 (Trial Pleading) Amended Counterclaim (Mar. 7, 2002)

• 2002 WL 32683974 (Trial Pleading) Amended Counterclaim (Mar. 7, 2002)

• 2002 WL 32510295 (Trial Pleading) Second Amended Complaint (Mar. 4, 2002)

• 2002 WL 32683973 (Trial Pleading) Second Amended Complaint (Mar. 4, 2002)

• 2002 WL 32509939 (Trial Motion, Memorandum and Affidavit) Motion of Defendant/Counterplaintiff for Leave to File Amended Counterclaim (Mar. 01, 2002)

• 2002 WL 32509951 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motorola's Motion for Leave of Court to File A Second Amended Complaint (Feb. 27, 2002)

• 2001 WL 34668649 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiff's Motion to Enjoin Media Statements (Dec. 10, 2001)

• 2001 WL 34554247 (Trial Motion, Memorandum and Affidavit) Supplemental Memordanum in Support of Motorola's Motion to Enjoin Media Statements (Dec. 06, 2001)

• 2001 WL 34668652 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of Motorola's Motion to Enjoin Media Statements (Dec. 6, 2001)

• 2001 WL 34554245 (Trial Motion, Memorandum and Affidavit) Motion to Enjoin Media Statements (Dec. 03, 2001)

• 2001 WL 34668647 (Trial Motion, Memorandum and Affidavit) Motion to Enjoin Media Statements (Dec. 3, 2001)

• 2001 WL 34554296 (Trial Pleading) Amended Complaint (Jul. 9, 2001)

• 2001 WL 34668643 (Trial Pleading) Amended Complaint (Jul. 9, 2001)

• 2001 WL 34554294 (Trial Pleading) Complaint (Jun. 4, 2001)

• 2001 WL 34668639 (Trial Pleading) Complaint (Jun. 4, 2001)

• 1:01CV04182 (Docket) (Jun. 04, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2254559 (N.D.Cal.)
**(Cite as: 2004 WL 2254559 (N.D.Cal.))**

**H**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
TERRA NOVO, INC. a California corporation,
Plaintiff,
v.
GOLDEN GATE PRODUCTS, INC., a California
corporation, Defendant.
**No. C-03-2684 MMC EDL.**

Oct. 1, 2004.
Jay Stephen Mcclaugherty, David Howard Ryan,
Mcclaugherty & Associates, Arcadia, Matthew A.
Newboles, Stetina Brunda Garred & Brucker, Aliso
Viejo, CA, for Plaintiff.

Jeffrey L. Fillerup, Luce Forward Hamilton &
Scripps LLP, San Francisco, CA, for Defendant.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO QUASH DEPOSITION
SUBPOENA

LAPORTE, Magistrate J.

I. INTRODUCTION

*1 Plaintiff Terra Novo, Inc. ("Plaintiff") has
accused Defendant Golden Gate Products, Inc.
("Defendant") of infringing U.S. Patent 6,562,882
(the " '882 Patent"). The '882 Patent provides for the
application of a combination of polyacrylamide
("PAM"), water and mulch to soil to prevent erosion.
Defendant claims that its accused product, Terra-
Lock-50, does not infringe and has filed a
counterclaim alleging that the '882 Patent is invalid.
Defendant has asserted the advice of counsel defense
to willful infringement. Defendant concedes that the
assertion of this defense acts as a waiver of the
attorney-client privilege and the work product
immunity as to the opinion prepared by Opinion
Counsel Ted Bielen ("Opinion Counsel."). The
dispute is over whether the waiver extends to
Litigation Counsel Jeffrey Fillerup and his law firm,
Luce, Forward, Hamilton & Scripps (collectively,

"Litigation Counsel"). Plaintiff issued a deposition
subpoena and document requests to Litigation
counsel. Litigation counsel's Motion to Quash the
Subpoena is presently before the court. For the
following reasons, the Motion to Quash is Granted in
Part and Denied in Part as follows.

II. DISCUSSION

Defendant began selling the allegedly infringing
product in July of 2001. (Fillerup Supp. Decl. Exh.
E, Haille Depo. at 87.) In December of 2001, Plaintiff
sent a letter to Defendant accusing it of infringement.
Defendant's President Michael Haile then consulted
with Jeffrey Fillerup, who later became Litigation
Counsel, and continued to sell Terra-Lock-50. The
Patent and Trademark Officer ("PTO") issued the
'882 patent in early 2003. On June 9, 2003, Plaintiff
filed the Complaint in this case. On July 25, 2003,
Defendant filed its Answer. In February 2004, seven
months after Defendant answered, Opinion Counsel
produced an opinion stating that the '882 patent is
invalid (except for certain claims and in certain very
small concentrations of PAM) based upon specific
pieces of prior art. (Fillerup Decl. Exh. C.) (the
"Bielen Opinion"). The Bielen opinion does not
address any issues outside of validity and specifically
does not address whether Defendant's product
infringes the '882 patent. On March 22, 2004,
Defendant issued a press release which announced
that, based on "advice from our lawyers," Defendant
was continuing to market and sell the accused
product. (Ryan Decl. Exh. 1.)

Plaintiff issued a deposition subpoena and document
request to Litigation counsel. Plaintiff argues that
Defendant's issuance of a press release waived the
attorney-client privilege as to infringement and
Defendant's assertion of the advice of counsel
defense waived all attorney-client privileged
communications and all work product on any issue
relating to validity.

A. The Press Release Did Not Create a Waiver

The press release states that: "As to our Terra-Lock
50 product, we denied Terra Novo's patent
infringement claims for different reasons. (Ryan
Decl. exh. 1.) Our patent lawyer has issued an
opinion letter stating that Terra Novo's patent is
invalid and unenforceable." The release attaches a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2254559 (N.D.Cal.)
**(Cite as: 2004 WL 2254559 (N.D.Cal.))**

summary of the opinion letter and includes the following:

> **\*2** our opinion states that virtually all the claims of the (Harrison) patent are invalid because of prior art.... Thus, we feel that in view of the invalidity of the vast majority of the claims of the patent.... You are free to continue manufacturing using and selling your products at Golden Gate Products, Inc. (*Id.*). The release continues:

> Our patent litigator is also contending in the suit that even if the patent is valid, then Terra-Lock 50 is not infringing Terra Novo's patent. Based on advice from our lawyers, we are continuing to sell Terra-Lock 50.

> (*Id.*).

Plaintiff contends that this release waives the attorney-client privilege as to "Litigation Counsel's opinion that Terra-Lock 50 does not infringe on the patent in issue." (Opp. at 9.) Defendant responds that the press release does not waive the privilege because it does no more than state a contention asserted by Litigation Counsel in Defendant's Answer. The Court agrees.

The next question is whether the statement, "Based on advice from our lawyers, we are continuing to sell Terra-Lock 50," is a sufficient disclosure of a privileged communication to warrant, in fairness, abrogation of the privilege. *Weil v. Investment/Indicators, Research & Management,* 647 F.2d 18, 24 (9th Cir.1981). While the press release could have been more carefully worded, the Court does not believe that fairness dictates a waiver. The contention that the accused product does not infringe has been publicly made, as it must be for Defendant to defend itself. Additionally, the continued sale of the product speaks for itself. Accordingly, the statement does not disclose a privileged communication and does not create a waiver.

**B. Waiver From Assertion of Advice of Counsel Defense**

In an action for patent infringement, where a party is accused of acting willfully, and that party asserts an advice of counsel defense, a party waives "the attorney-client privilege as to communications and documents relating to the advice." *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 929 (N.D.Cal.1976). The general rule is that a "party cannot disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position." *Ortho Pharmaceutical Corp. v. Smith,* 959 F.2d 936, 944

(Fed.Cir.1992) (citation omitted.) Accordingly, fairness may dictate waiver of the attorney-client privilege to prevent its use as both a sword and a shield. *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir.1992). The waiver, however, is only as broad as necessary to assure fair disclosure on the subject matter of the advice. Furthermore, because obtaining an opinion of counsel to defend against willfulness was close to compulsory in the pre-*Knorr* timeframe (*Knorr- Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* --- F.3d ---- 2004 WL 2029912 (Fed.Cir. Sep. 13, 2004)), waiver should be construed narrowly.

**\*3** Litigation Counsel contends that the waiver of the attorney-client privilege is limited to communications from Opinion Counsel and does not extend to communications involving Litigation Counsel. The question of whether a waiver extends to litigation counsel puts two important goals in competition: preventing unfairness resulting from the Defendant's use of the attorney-client privilege as both sword and shield, and preservation of the confidential relationship between client and counsel. After litigation has commenced, the dangers inherent in invading the confidentiality of the attorney-client privilege are magnified. *See, e.g., Sharper Image Corp. v. Honeywell Int'l, Inc.,* 222 F.R.D. 621 2004 WL 1739467 (N.D.Cal. July 28, 2004) at \*20; *see also Electro Scientific Indus., Inc. v. General Scanning, Inc.,* 175 F.R.D. 539 (N.D.Cal.1997) (Extending waiver to litigation or patent counsel, but limiting waiver to period before suit filed.).

In the circumstances of this case, the Court finds that the scope of the waiver is limited to communications between Litigation Counsel and Opinion Counsel. At the hearing, Litigation Counsel stated that he had only provided Opinion Counsel with pleadings filed in the case and documents served on Plaintiff, not confidential work product. Provision of non-confidential documents does not create a waiver. Litigation counsel also attended a meeting with Defendant's President, Mr. Haile, and Opinion Counsel at which the topic of invalidity of the patent in suit was discussed. (Haile Depo. at 97.) Litigation counsel stated at the hearing that he had not voiced an opinion on invalidity at the meeting but listened to Opinion Counsel. However, the assertion of the advice of counsel defense waives any communications between Opinion Counsel and Litigation Counsel on invalidity, and Plaintiff should be able to probe this issue. Accordingly, Defendant must disclose all communications between Opinion Counsel and Litigation Counsel. Litigation Counsel

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2254559 (N.D.Cal.)
(Cite as: 2004 WL 2254559 (N.D.Cal.))

Page 3

must also disclose his firm's work product, if any, that was communicated to Opinion Counsel, whether directly or through the client, prior to the issuance of the Bielen Opinion.

Under the case law at the time Defendant asserted the advice of counsel defense, "Where the infringer fails to introduce an exculpatory opinion of counsel at trial, a court must be free to infer that either no opinion was obtained or, if an opinion were obtained, it was contrary to the infringer's desire to initiate or continue its use of the patentee's invention. *Fromson v. Western Litho Plate and Supply Co.,* 853 F.2d 1568, 1572-73 (Fed.Cir.1988). Thus, as recognized by *Sharper Image,* the negative inference rendered the waiver of attorney-client privilege less than voluntary. However, the Federal Circuit recently reaffirmed the critical importance of the attorney-client privilege and overruled the cases establishing a negative inference. *Knorr- Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* --- F.3d ---- 2004 WL 2029912 (Fed. Cir. Sep 13, 2004). Accordingly, Defendant may now wish to change its election to rely upon the advice of counsel. If Defendant files a statement of intent not to rely upon the advice of counsel defense against willfulness, Defendant need not submit to the discovery authorized in this Order.

III. CONCLUSION

*4 For the foregoing reasons, It Is Hereby Ordered that:
   1. Defendant has waived the attorney-client privilege for all communications prior to the issuance of the Bielen Opinion between Litigation Counsel and Opinion Counsel relating to invalidity of the patent in suit; and
   2. The waiver does not extend to any communications between Litigation Counsel and Defendant or any work product of Litigation Counsel not disclosed to Opinion Counsel.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2004 WL 2254559 (N.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 3622432 (Expert Report and Affidavit) Declaration of Dr. Garn Wallace in support of defendant's motion for partial summary judgment (Dec. 17, 2004)Original Image of this Document (PDF)

• 2004 WL 3622434 (Expert Report and Affidavit) Supplemental Declaration of Dr. Garn Wallace in Support of Defendants Motion for Partial Summary Judgment (Dec. 17, 2004)Original Image of this Document (PDF)

• 2004 WL 3622435 (Partial Expert Testimony) (Partial Testimony) (Nov. 11, 2004)

• 2004 WL 3622433 (Partial Expert Testimony) (Partial Testimony) (Aug. 31, 2004)

• 2004 WL 3622429 (Expert Report and Affidavit) Declaration of Dr. Garn A. Wallace In Support of Defendant's Claim Construction Brief (Jun. 21, 2004)Original Image of this Document (PDF)

• 2004 WL 3625404 (Expert Report and Affidavit) Declaration of Dr. Garn a. Wallace in Support of Defendant's Claim Construction Brief (Jun. 21, 2004)Original Image of this Document (PDF)

• 2004 WL 3622430 (Partial Expert Testimony) (Partial Testimony) (Jun. 18, 2004)

• 2004 WL 3623430 (Expert Report and Affidavit) Supplemental Declaration of Dr. Frantisek Svec IN Support of Plaintiff Terra Novo, Inc.'s Opening Claim Construction Brief (May 28, 2004)Original Image of this Document (PDF)

• 2004 WL 3622431 (Expert Report and Affidavit) (Report or Affidavit) (Feb. 19, 2004)

• 2003 WL 24207076 (Trial Pleading) Complaint for Patent Infringement (Jun. 9, 2003)

• 5:03cv02684 (Docket) (Jun. 09, 2003)

• 3:03cv02684 (Docket) (Jun. 09, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2006, I electronically filed the following document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

**COMPENDIUM OF UNREPORTED OPINIONS CITED IN DEFENDANTS'
ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

I hereby certify that on May 25, 2006, I have forwarded the above-noted document to the following as noted below:

**VIA E-MAIL**

Jesse J. Jenner, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

**VIA E-MAIL & FEDERAL EXPRESS**

Norman H. Beamer, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301

**VIA E-MAIL**

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

**VIA E-MAIL & HAND DELIVERY**

Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

PAUL M. LUKOFF (Bar I.D. #96)
DAVID E. BRAND (Bar I.D. #201)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE  19899-1328
TEL: 302-888-6500
E-MAIL:  PMLukoff@prickett.com
            DEBrand@prickett.com