**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-1373 (KAJ) |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| EASTMAN KODAK COMPANY, | ) | |
| ALTEK CORPORATION, and | ) | |
| CHINON INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**AMPEX CORPORATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT THAT U.S. PATENT NO. 4,802,019
IS NOT PRIOR ART TO U.S. PATENT NO. 4,821,121**

OF COUNSEL:
Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

Original Filing Date: May 23, 2006
Redacted Filing Date: May 31, 2006

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julie Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
*Attorneys for Plaintiff Ampex Corporation*

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDING..........................................................1

SUMMARY OF ARGUMENT ..............................................................................1

STATEMENT OF FACTS ...................................................................................2

    A.   The '121 Patent...............................................................................2

    B.   The Harada Patent............................................................................3

           1.    The Harada Parent Application of January 3, 1983 ...........................3

           2.    The Harada Continuation-In-Part Application of May 12, 1986 .........5

ARGUMENT ....................................................................................................8

I.     SUMMARY JUDGMENT.............................................................................8

    A.   The Effective Filing Date Of The Harada Patent Is May 12, 1986, Unless Kodak Can Show The January 8, 1983 Parent Application Enables At Least One Claim Of The Harada Patent.......................................9

    B.   The Disclosure Of The January 8, 1983 Parent Application Does Not Enable Any Claimed Invention Of The Harada Patent ...............................11

    C.   The Conclusory Assertions Of Kodak's Expert Cannot Create Genuine Issues..............................................................................................14

CONCLUSION.................................................................................................17

# TABLE OF CITATIONS

Page

## FEDERAL CASES

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 ....................................13

*Anderson v. Liberty Lobby*, Inc.,
    477 U.S. 242, 106 S.Ct. 2505, [91 L.Ed.2d 202].........................................9

*B&S Plastics Inc. v. Hydro Air Industries Inc.*, 37 U.S.P.Q.2d 1660 .......................................13

*In re Brandstadter*, 484 F.2d 1395..........................................................................15

*Bruning v. Hirose*, 161 F.3d 681 ...............................................................................16

*Celotex Corp. v. Catrett*, 477 U.S. 317 .......................................................................9

*In re Daniels*, 144 F.3d 1452 .....................................................................................10

*In re Donahue*, 550 F.2d 1269 ...................................................................................16

*Genentech Inc. v.* Novo *Nordisk, A/S*, 108 F.3d 1361 ...............................................11

*Goodman v. Mead Johnson & Co.*, 534 F.2d 566 .......................................................8

*In re Johannes B. Buchner*, 929 F.2d 660......................................................................15

*Matsushita Electric Industrial Co, Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S.Ct. 1348, [89 L.Ed.2d 538].........................................8, 9

*National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.*,
    166 F.3d 1190 ................................................................................................14

*In re Paul Chu*, 66 F.3d 292 ......................................................................................10

*Pennwalt Corp v. Akzona Inc.*, 740 F.2d 1573.............................................................13

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133, 120 S.Ct. 2097, [147 L.Ed.2d 105].........................................8

*South Corporation v. United States*, 690 F.2d 1368 ...................................................10

*Utter v. Hiraga*, 845 F.2d 993 ................................................................................12

*In re Wertheim*, 646 F.2d 527 ..........................................................................10, 11

*In re Wright*, 999 F.2d 1557................................................................................12

### FEDERAL STATUTES

35 U.S.C. § 102(e) ..................................................................................1, 2, 9, 10

35 U.S.C. § 103 .............................................................................................5, 10

35 U.S.C. § 112 ................................................8, 10, 11, 12, 13, 14, 15, 16

35 U.S.C. § 114, ¶ 4 ..........................................................................................8

35 U.S.C. § 120 .........................................................................................10, 11

Fed. R. Civ. P. 56(c) .........................................................................................8

Fed. R. Civ. P. 56(e) .........................................................................................9

iii

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff Ampex Corporation ("Ampex") asserts that digital cameras of defendants Kodak, et al. ("Kodak") infringe Ampex's U.S. Patent No. 4,821,121 ("the '121 patent"). Kodak alleges that the parent application portion of U.S. Patent No. 4,802,019, naming Harada, et al. as inventors ("the Harada patent") is prior art pursuant to 35 U.S.C. § 102(e), and anticipates the '121 patent. In this motion, Ampex seeks summary judgment that no portion of the Harada patent is available as a reference to invalidate the '121 patent because it is not prior art under Section 102(e).

## SUMMARY OF ARGUMENT

Whether the Harada patent or any portion of it is prior art depends on its effective filing date. There is no dispute that if Kodak can not prove that Harada is entitled to a filing date prior to the '121 patent-in-suit's filing date of April 8, 1983, Harada is not prior art.

As a matter of law, Harada is not entitled to a filing date before April 8, 1983. Harada issued from an application filed on May 12, 1986, and therefore Harada's effective filing date under 35 U.S.C. § 102(e) is May 12, 1986, more than three years after the filing date of the '121 patent.

In an attempt to avoid that problem, Kodak seeks to backdate Harada to an earlier patent application, filed January 3, 1983. The 1986 application was a so-called "continuation in part" ("CIP") of that 1983 application, and by definition added "new matter" to the previous application. For that very reason, Kodak cannot rely on the 1983 application. It is substantially different from the May 12, 1986 application that led to the Harada patent. It lacks an enabling disclosure of at least one element of each of the claims that ultimately issued in the Harada patent.

1

Kodak cannot raise any genuine dispute by arguing that the missing element was enabled by the January 3, 1983 application. The Examiner has expressly determined, and the applicants have already conceded, the opposite in the proceedings before the Patent Office. Indeed, the 1983 application was abandoned, and the new matter was added to the 1986 application, after the applicants failed to overcome the Patent Examiner's rejection of the 1983 application for lack of exactly the enabling support that Kodak now asserts is inherent in the 1983 application.

In an attempt to reverse the Patent Office's rejection, and the Harada applicants' acquiescence in that rejection, Kodak offers only conclusory testimony of its expert. This testimony adds nothing to the same unsupported assertions of sufficient disclosure that were made to, and rejected by, the Patent Office.

As a matter of law, the Harada patent is not entitled to a priority date that would qualify it as prior art under 35 U.S.C. § 102(e). Therefore, Ampex's motion for summary judgment should be granted.

## STATEMENT OF FACTS

### A.    The '121 Patent

As set forth in detail in the Statement of Facts in Ampex's accompanying Claim Construction Brief, the '121 patent describes and claims Daniel Beaulier's inventions relating to improved systems and methods for storing and retrieving digital images. The inventions are an improvement over the prior art, offering a faster "browse screen" that allows more rapid review of large numbers of stored images.

At trial, Ampex will show that Mr. Beaulier first conceived of his invention in **REDACTED** , when he was collaborating on a new design for an electronic still store — a computer-based system for storing large numbers of digital still images. The first product

2

incorporating his invention was the ESS-3, which was made and internally demonstrated

**REDACTED** Mr. Beaulier filed his application for the '121 patent on April 8, 1983, just prior

to the successful public demonstration of the ESS-3 at the National Association of

Broadcasters trade show in the same month.

### B.    The Harada Patent

The Harada patent also discloses a still store system. As set forth in Ampex's

accompanying motion for summary judgment that the '121 patent is not anticipated, the

Harada patent lacks critical elements of the '121 claims. For purposes of this motion,

however, the Harada patent issued from a patent application filed on May 12, 1986. That

application was a continuation-in-part ("CIP") of a parent application filed on January 3,

1983 (Beamer ¶ 4)[1] The parent application of January 3, 1983 was abandoned; no claim

issued from that application.

### 1.    The Harada Parent Application of January 3, 1983

The original Harada application included five claims, directed to a still store that

generated an "index" screen of small pictures in order to browse the contents of the store.

A key aspect of the claimed invention was the ability to "rearrange" the small pictures on

the index screen, using a "memory control means," in response to a user operating a light

pen or other "selecting means." (Beamer Ex. 4 at AX203781-82).

In the first office action dated January 23, 1985 (Beamer Ex. 4, AX203818-21),

the Examiner rejected then-pending application claims 1-5 because their claimed subject

matter was not enabled by the specification. The Examiner stated that the:

---

[1] "Beamer ¶ _" refers to the accompanying Declaration Of Norman H. Beamer In Support
Of Ampex Corporation's Motion For Summary Judgment That U.S. Patent No. 4,802,019
Is Not Prior Art To U.S. Patent No. 4,821,121

> "apparently mislabeled 'Memory Meplacement Control' is ... not disclosed in an enabling manner. It is still not clear just where the data rearranging takes place. Applicant is warned against the attempted addition of new matter in this regard." (Beamer ¶ 8).

The pending application claims were likewise rejected because they contained limitations directed to the Memory Replacement Control circuitry that was inadequately disclosed (Beamer ¶ 8).

In a foreshadowing of Kodak's expert's assertions in this action (*infra*, Section I.C), in a July 26, 1985 Amendment (Beamer Ex. 4, AX203822-32), the applicants amended the claims in respects not relevant to this motion, and argued in regard to the Memory Replacement Control that "It is believed that the implementation of such a system is well within the capability of one of ordinary skill in the art, without undue experimentation, given the subject disclosure" (Beamer ¶ 9). The applicants also added new claims, including application claim 9, which had the following element:

> said detecting circuit further comprises means for detecting intermediate regions respectively provided between two adjacent segmented areas on said screen, a detecting output thereof being utilized to rearrange the arrangement of said reduced still pictures on said screen. (Beamer ¶ 9).

Like application claims 1-5, this element claimed the functionality of the Memory Replacement Control circuitry.

In a November 13, 1985 Office Action (Beamer Ex. 4, AX203835-40), the Examiner determined that applicant's arguments regarding enablement were unpersuasive. The Examiner again objected to the specification as "failing to provide an enabling disclosure." The Examiner stated that:

> there is still not an adequate description of the 'memory replacement control' and applicant's mere assertion that it is 'well within the capability of one of ordinary skill in the art' is insufficient to rebut the examiner's prima facia [*sic*] rejection.

4

The Examiner also entered a *final* rejection for, *inter alia,* application claims 1, 4 and 9 "for the reasons set forth in the above objection to the specification" (Beamer ¶ 10).[2]

Rather than appeal or otherwise seek reconsideration of the Examiner's decision, the applicants acquiesced to the Examiner's rejection and abandoned the parent application, filing the CIP application on May 12, 1986 (Beamer ¶ 11; Beamer Ex. 5).

### 2.    The Harada Continuation-In-Part Application of May 12, 1986

The claims submitted with the CIP application were essentially unchanged from the pending application claims that had been rejected in the parent application. However, the CIP application introduced *new matter* to address the Examiner's enablement rejections. This new matter described the "memory replacement control" and rearrangement of reduced size picture data in much greater detail. Specifically, the CIP added Figure 6, which shows internal details of the "memory replacement control," and added text spanning more than a column of the issued patent to describe the operation of the memory replacement control and the rearrangement of reduced size picture data performed by that circuitry. Notably, the CIP included new description starting with: "Rearrangement of the reduced still pictures will now be explained," followed by six new paragraphs that describe in detail the manner in which the memory replacement control effected rearrangement of the reduced still pictures. (Beamer ¶¶ 5-7, 11).

In a December 23, 1987 Office Action (Beamer Ex. 5, AX203899-901), because of the new matter, the Examiner did not renew his enablement rejection as to the application claims that had previously been rejected on that ground (*e.g.*, application claims 1, 4 and 9), thus establishing that the claims derived support from the new matter.

---

[2] Application claims, including all those not rejected on enablement grounds, were rejected as obvious over prior art pursuant to 35 U.S.C. § 103 (Beamer ¶ 10).

The Examiner instead rejected all of the claims on the ground that they were obvious in light of prior art references. (Beamer ¶ 12).

In a May 27, 1998 Amendment (Beamer Ex. 5, AX203906-17), in order to overcome the obviousness rejection, the applicants added new limitations to the pending claims. These amendments resulted in allowance of the claims. (Beamer ¶ 17).

Significantly, all of the issued independent claims (claims 1, 6 and 9) include elements that were originally rejected for lack of enabling support, but which passed muster during the CIP application prosecution once the new matter was added. As shown in the table below, issued claim 1 derives such elements from application claims 1 and 4, and issued claims 6 and 9 derive such elements from application claim 9:

| Parent Application Claim Rejected For Lack Of Enablement | Issued Patent Claim |
| --- | --- |
| **App. Claim 1:** *"memory control means for rearranging the contents of said index memory* means on the basis of the output of said selecting means to rearrange said index picture."<br><br>**App. Claim 4:** "said *memory control means* receives a detecting signal corresponding to one of said intermediate regions *for rearranging the contents of said index memory* so that a selected one of said displayed reduced still pictures is interposed between two adjacent reduced pictures by designating an intermediate region between said two adjacent reduced pictures displayed on said screen." (emphasis added) (Beamer ¶ 19) | **Claim 1:** "memory control means for rearranging the locations of said reduced still picture signals stored in said index memory means on the basis of the output of said selecting means to rearrange the location of reduced still pictures in said index picture, said *memory control means* receiving a detecting signal corresponding to one of said intermediate regions *for rearranging the contents of said index memory* so that a selective one of said displayed reduced still pictures is interposed between two adjacent reduced pictures by designating an intermediate region between said two adjacent reduced pictures displayed on said screen." (emphasis added) (Beamer ¶ 19) |
| **App. Claim 9:** "said detecting circuit further comprises means for detecting intermediate regions respectively provided between two adjacent segmented areas on said screen, a *detecting output thereof being utilized to rearrange the arrangement of said reduced still pictures* on said screen." (emphasis added) (Beamer ¶ 20) | **Claims 6, 9:** "said detecting circuit including means for detecting intermediate regions respectively provided between adjacent segmented areas on said screen, a *detecting output thereof being utilized to rearrange the arrangement of said reduced still pictures* on said screen." (emphasis added) (Beamer ¶ 20) |

The above "memory control means" of issued claim 1 is the "memory replacement

control" of Figures 1 and 6 of the Harada patent (Beamer ¶ 21). During his deposition,

named co-patentee Mr. Harada testified that the "rearrange the arrangement" function of

issued independent claims 6 and 9 is performed by the "memory replacement control"

(Beamer ¶ 22).

This memory replacement control circuitry, and its ability to rearrange the

arrangement of reduced size pictures, is fundamental to the Harada claims. As Mr.

Harada testified:

> "Q: So your invention included the idea of being able to rearrange these
> reduced size pictures in memory without reading them out of disk again; is
> that correct? A: Yes." (Beamer ¶ 22).

Also, this aspect of the patent, once adequately disclosed by the new matter added to the

CIP application, was a key factor in getting the independent claims allowed by the

Examiner. In a May 27, 1998 Amendment, applicants argued that the cited prior art did

not disclose the above limitations (Beamer ¶¶ 16):

> [The cited art] is silent as to any teaching or suggestion of applicants'
> claimed means for detecting intermediate regions provided between
> adjacent segmented areas on the screen and *memory control means for
> rearranging the locations* of the reduced still information picture signals
> on the index picture by a detecting signal corresponding to an intermediate
> region *for rearranging the contents* of the index memory so that a
> selective one of the reduced pictures is interposed between two adjacent
> reduced pictures displayed on the screen.

> [T]he Examiner does not and cannot state that [the art] teaches or suggests
> any *rearranging of a reduced information picture* between adjacent
> reduced information pictures on an index screen by a detecting signal
> provided by the use of an intermediate regions between the adjacent
> pictures.

> [N]one of the references cited by the Examiner teach or suggest the use of
> intermediate regions between the index segments to achieve the
> *rearranging of information* displayed by the index....
> (Emphasis added)

7

Thus, each independent claim that issued in the Harada patent — claims 1, 6 and 9 — contains as a subset recitations almost identical to recitations in claims of the parent application that were rejected by the Examiner as non-enabling. Dependent claims 2-5, and 7-8 necessarily include those recitations because they incorporate one of independent claims 1, 6 or 9 by reference pursuant to 35 U.S.C. § 114, ¶ 4.[3]

## ARGUMENT

### I.    SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions, on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman* v. *Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves* v. *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co, Ltd.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

---

[3] 35 U.S.C. § 112, ¶ 4 ("A claim in independent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").

56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

If a non-moving party has the burden of proof regarding an essential element, the non-moving party must make a sufficient showing with respect to that element, or else the moving party is "entitled to judgment as a matter of law." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986).

**A.    The Effective Filing Date Of The Harada Patent Is May 12, 1986, Unless Kodak Can Show The January 8, 1983 Parent Application Enables At Least One Claim Of The Harada Patent**

In order for the Harada patent to be used as a "prior art" reference to invalidate the '121 patent, its filing date must antedate the invention date of the '121 patent. 35 U.S.C. § 102(e) ("a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent" may be used as a "prior art" reference). It is undisputed that the claimed subject matter of the '121 patent is at least entitled to relate back to the date of its original filing, April 8, 1983 (Beamer ¶ 3). Therefore, in order for the Harada patent, or any portion thereof, to be available as a "prior art" reference to invalidate the '121 patent, it must be entitled to a filing date that at least antedates April 8, 1983.[4]

---

[4] Even if the Harada patent were entitled to the January 3, 1983 filing date of its parent application (and it is not), the Harada patent would still not be prior art to the '121 patent. At trial, if necessary, Ampex will prove that the invention date of the '121 patent antedates January 3, 1983.

9

The application that led to the issuance of the Harada patent is a CIP application filed on May 12, 1986 — long after the '121 patent's filing date. Accordingly, Harada cannot be prior art under § 102(e) unless Kodak can show that the effective filing date of the Harada patent was earlier, *i.e.*, the January 3, 1983 filing date of the Harada parent application.

A patent's effective date is presumed to be the filing date of the application leading to the patent. It can receive the benefit of an earlier filing date "*only* if the earlier application provides support for the claims of the later filed application, as required by 35 U.S.C. § 112." *In re Paul Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995) (emphasis added); 35 U.S.C. § 120. The question of whether a patent may assume an earlier filing date pursuant to Section 120 is a question of law. *In re Daniels*, 144 F.3d 1452, 1455 (Fed. Cir. 1988).

Where, as here, the later filed application is a CIP application that includes "new matter" not disclosed in the earlier parent application, the "effective filing date" of the patent remains that of the CIP application unless the parent application *supports the claimed invention of at least one issued claim as required by 35 U.S.C. 112, first paragraph. In re Wertheim*, 646 F.2d 527, 537 (C.C.P.A. 1981):[5]

> A [CIP] application, unlike a continuation application, does not necessarily insure that all critical aspects of the later disclosure were present in the parent ... [O]nly an application disclosing the patentable invention before the addition of new matter, which disclosure is carried over into the patent, can be relied upon to give a reference the benefit of its filing date for the purpose of supporting a §§ 102(e)/103 rejection.

---

[5] The Court of Custom and Patent Appeals ("C.C.P.A."), a predecessor court to the U.S. Court of Appeals for the Federal Circuit, is binding authority on the Federal Circuit. *South Corporation* v. *United States*, 690 F.2d 1368, 1368 (Fed. Cir. 1982) ("We hold that the holdings of our predecessor courts, ... the United States Court of Customs and Patent Appeals ... shall be binding precedent in this court").

* * *

The dictum in [a previous CCPA opinion] that

> * * * the continuation-in-part application is entitled to the
> filing date of the parent application as to all subject matter
> *carried over* into it from the parent application * * * for
> purposes of * * * utilizing the *patent* disclosure as evidence
> to defeat another's right to a patent * * * [emphasis in
> original]

is hereby modified to further include the requirement that the application,
the filing date of which is needed to make a rejection, must disclose,
pursuant to §§ 120/112, the invention claimed in the reference patent.[6]

Accordingly, in order for any part of the Harada patent to assume its parent
application's filing date, the parent application must enable at least one of the issued
Harada claims in the manner provided by the first paragraph of Section 112. And, even
then, only the portion of the Harada specification that was "carried over" from the parent
application can be prior art dated as of the parent filing date.

**B.     The Disclosure Of The January 8, 1983 Parent Application Does Not
Enable Any Claimed Invention Of The Harada Patent**

Kodak cannot reasonably argue that the January 8, 1983 parent application
enables any claim of the Harada patent, because Harada already had conceded
nonenablement in the proceedings before the Patent Office.

The test of whether a specification of a patent is enabling under Section 112 is
whether it "teach[es] those skilled in the art how to make and use the full scope of the
claimed invention without 'undue experimentation'"). *Genentech Inc.* v. *Novo Nordisk*,

---

[6] *See also* Manual of Patent Examining Procedure § 2136.03 (8[th]ed., Rev. No. 2, 2004):

> In order to carry back the 35 U.S.C. 102(e) critical date of the U.S. patent
> reference to the filing date of a parent application, the U.S. patent
> reference must have a right of priority to the earlier date under 35 U.S.C.
> 120 or 365(c) and the parent application must support the invention
> claimed as required by 35 U.S.C. 112, first paragraph. (citing *In re
> Wertheim*, 646 F.2d at 537).

11

*A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997), quoting *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993). Whether a patent disclosure complies with the enablement aspect of 35 U.S.C. § 112, ¶ 1 is a question of law. *Utter* v. *Hiraga*, 845 F.2d 993, 998 (Fed. Cir. 1988). The Harada applicants failed during the Harada prosecution, just as Kodak fails now, to meet their burden to show that the issued Harada claims were enabled by the parent application.

The key aspect of the claimed invention of the Harada patent, that was not enabled by the disclosure of the parent, is the ability "to rearrange these reduced size pictures in memory without reading them out of disk again" (Beamer ¶ 20). The applicants, in ultimately obtaining a patent, used this aspect of the invention to distinguish that prior art that was then being cited against the application. (Beamer ¶ 16). However, earlier in the prosecution of the Harada parent application, the Examiner determined that the application's disclosure did not enable this aspect of the claimed invention as required by Section 112, ¶ 1. In pertinent part, the Examiner concluded that the "memory replacement control" was not enabled pursuant to Section 112, ¶ 1, further noting that "[i]t is still not clear just where the data rearranging takes place. *Applicant is warned against the attempted addition of new matter* in this regard." (Beamer ¶ 8).

After conclusory argument from the applicants, the Examiner then made his Section 112, ¶ 1 rejection final: "there is still not an adequate description of the 'memory replacement control' and applicant's mere assertion that it is 'well within the capability of one of ordinary skill in the art' is insufficient to rebut the Examiner's prima facia [sic] rejection." (Beamer ¶ 10). In particular, the Examiner determined that the Harada parent disclosure did not support critical claimed recitations: "memory control means for

rearranging the contents of said index memory means" (parent claims 1 and 4); and "a detecting output thereof being utilized to rearrange the arrangement of said reduced still pictures" (parent claim 9) (Beamer ¶¶ 9-10). This claimed means is, and this claimed function is performed by, the Memory Replacement Control which was first adequately disclosed in the new matter added to the CIP application. (Beamer ¶¶ 5-7, 21). The Examiner's determinations are presumed to be correct. *American Hoist & Derrick Co.* v. *Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984).

Harada could have contested the Examiner's nonenablement determination, but chose not to do so. Harada did not appeal or otherwise seek reconsideration. Because the Harada applicants instead filed a CIP in order to overcome the Examiner's *final rejection* made pursuant to 35 U.S.C. § 112, ¶ 1, Harada *et al.* are presumed to have acquiesced to the rejection, and the CIP claims are presumed not entitled to the effective date of the parent application. *Pennwalt Corp* v. *Akzona Inc.*, 740 F.2d 1573, 1578-79 (Fed. Cir. 1984). *See also, B&S Plastics Inc.* v. *Hydro Air Industries Inc.*, 37 U.S.P.Q.2d 1660, 1662 (C.D. Cal. 1995) ("a finding of acquiescence 'makes it unnecessary to decide ... whether the claims of the ... patent were supported by the disclosure of the [parent] application or whether the [parent] application actually met the enablement and best mode requirements of section 112 (first paragraph).'").

The new matter added in the CIP included a much more detailed description of the "memory replacement control" and the rearrangement of reduced size picture data (Beamer ¶¶ 5-7). The Harada CIP specifically added Figure 6 that shows internal details of the "memory replacement control" and over a column of text to describe its operation and the rearrangement of reduced size picture data (Beamer ¶ 6).

The new matter is essential support to each of the issued claims. Each of the issued claims includes claim elements almost identical to those rejected by the Examiner in the parent application. Whereas the Examiner rejected the following claim recitations for lack of enablement during the prosecution of the Harada parent application: "*memory control means ... for rearranging* the contents of said index memory" (parent claims 1 and 4); "a *detecting output* thereof being utilized *to rearrange* the arrangement of said reduced still pictures" (parent claim 9) (emphasis added), the Examiner ultimately allowed claim limitations directed to identical structures and/or functions, and identical recitations, to issue in the Harada patent: "*memory control means for rearranging* the contents of said memory ..." (issued claim 1); "a *detecting output* thereof being utilized *to rearrange* the arrangement of said reduced still pictures ..." (issued claims 6, 9) (Beamer ¶¶ 19-20).[7] The fact that the Examiner did not renew his Section 112, ¶ 1 rejection during the prosecution of the Harada CIP application further establishes that only the addition of the new matter enabled the claimed invention of the Harada patent.

**C.    The Conclusory Assertions Of Kodak's Expert Cannot Create Genuine Issues**

In the face of the presumption that the Harada patent is not entitled to the original parent application date, Kodak's only response is to assert, through conclusory testimony of its expert witness Dr. Brad Myers,          **REDACTED**

---

[7]  Issued claims 1, 4 and 9 are the only independent claims of Harada. The failure of an independent claim to satisfy 35 U.S.C. § 112, ¶ 1, necessarily implies that all claims depending therefrom likewise fail to satisfy that requirement. *National Recovery Technologies, Inc.* v. *Magnetic Separation Systems, Inc.*, 166 F.3d 1190, 1192 (Fed. Cir. 1999) (affirming that "asserted dependent claims ... were also invalid for lack of enablement because [those] claims incorporate [independent] claim 1 by reference pursuant to 35 U.S.C. § 112, paragraph 4").

14

**REDACTED**

Kodak cannot avoid summary judgment by relying on the same conclusory arguments rejected by the Patent Office.  Kodak's argument must be supported by, and its evidence must include, something more than a mere conclusory statement by its expert. *In re Johannes B. Buchner*, 929 F.2d 660, 661 (Fed. Cir. 1991), citing *In re Brandstadter*, 484 F.2d 1395, 1405 (C.C.P.A. 1973)  (An "expert's opinion on the ultimate legal issue [regarding Section 112, ¶ 1] must be supported by something more than a mere conclusory statement."); *see also In re Brandstadter*, 484 F.2d 1395, 1404 (C.C.P.A. 1973)  (holding that expert witness affidavits "that they would themselves be able to

––––––––––––––––––––

**REDACTED**

15

practice the invention ... 'fail in their purpose since they recite conclusions and few facts

to buttress said conclusions'" and are "not sufficient to establish that [the] specification is

enabling within the meaning of §112."); *In re Donahue*, 550 F.2d 1269, 1271 (C.C.P.A.

1977); Manual of Patent Examining Procedure § 716.01(c) (8[th]ed., Rev. No. 2, 2004)

(*citing In re Chilowsky*, 306 F.2d 908 (C.C.P.A. 1962) (an "expert opinion that an

application meets the requirements of 35 U.S.C. 112 is not entitled to any weight;

however, facts supporting a basis for deciding that the specification complies with 35

U.S.C. 112 are entitled to some weight")).

    Dr. Myers primarily devotes his attention to issued independent claim 9.  As to

that claim, Dr. Myers merely asserts:

## REDACTED

                    Dr. Myers' conclusory statement does not deal

with Mr. Harada's testimony that it took between one to one-and-a-half years for the

named patentee to implement the invention disclosed in Figure 6 of the patent.  (Beamer

Ex. 6, pp. 42-43)  ("Q: Do you recognize figure 6?  A: Yes. ... Q: When did you [prepare]

that? A: ... One year or a year and a half before we actually produced that machine.").

Dr. Myers never reconciles his opinion with this fact or introduces contravening evidence

to support his claim that the detecting output would have been trivial to implement.

    An instructive counterexample that highlights Kodak's failure to come forward

with evidence is *Bruning* v. *Hirose*, 161 F.3d 681, 686 (Fed. Cir. 1998), where

applicant's expert witness conducted tests "demonstrat[ing] that [the invention] could be

developed ... in less than 8 hours", the tests "showed no undue experimentation would

have been required in the design of [the invention]." In contrast, Dr. Myers has provided

no evidence, *e.g.*, in the form of tests or experiments, or any other evidence, to reconcile

his conclusion that the detecting output would have been trivial to implement with the

fact that it took at least a year for the named patentee to implement it.

## CONCLUSION

The effective filing date of the '121 patent is April 8, 1983. There is no genuine

dispute that the Harada patent is unsupported by the parent application filed January 1,

1983. Therefore, the Harada patent, as a matter of law, is only entitled to the May 12,

1986 filing date of the CIP application. Because the Harada patent's effective filing date

does not antedate the '121's filing date, the Harada patent is not, as a matter of law,

available as a prior art reference to the '121 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

May 23, 2006

OF COUNSEL:

Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

By: _____
Jack B. Blumenfeld (#1014)
Julie Heaney (#3052)
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801
(302) 575-7291
jblumenfeld@mnat.com
jheaney@mnat.com

*Attorneys for Plaintiff Ampex Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I, Julia Heaney, hereby certify that on May 31, 2006, I caused to be electronically

filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of

such filing(s) to the following:

> Paul M. Lukoff, Esquire
> David E. Brand, Esquire
> Prickett, Jones & Elliott, P.A.

and that I caused copies to be served upon the following in the manner indicated:

### <u>BY E-MAIL and BY HAND</u>

> Paul M. Lukoff, Esquire
> Prickett, Jones, Elliott, P.A.
> 1310 King Street
> Wilmington, DE  19899

### <u>BY E-MAIL and BY FEDERAL EXPRESS</u>

> Michael J. Summersgill, Esquire
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA  02109

*/s/ Julia Heaney*
Julia Heaney (#3052)