**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

AMPEX CORPORATION,

       *Plaintiff,*

       v.

EASTMAN KODAK COMPANY,
ALTEK CORPORATION, and
CHINON INDUSTRIES, INC.,

       *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 04-1373 (KAJ)

**PUBLIC VERSION**

---

**AMPEX CORPORATION'S OPENING BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT THAT THE QUANTEL
PAINTBOX IS NOT PRIOR ART UNDER 35 U.S.C. § 102(a) AND § 102(b)**

OF COUNSEL:
Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julie Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
   *Attorneys for Plaintiff Ampex Corporation*

Original Filing Date: May 23, 2006
Redacted Filing Date: May 31, 2006

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS .........................................................1

SUMMARY OF ARGUMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................2

ARGUMENT............................................................................................................4

I.      THE APPLICABLE LEGAL STANDARDS.......................................................4

        A.      The Summary Determination Standards.................................................4

        B.      Effect Of The Presumption Of Validity..................................................4

        C.      The Corroboration Requirement.............................................................5

II.     DEFENDANTS RELY ON THE UNCORROBORATED ORAL
        TESTIMONY OF TWO WITNESSES, MR. TAYLOR AND
        MR. HOLBROOK, FOR THEIR ASSERTIONS REGARDING THE
        QUANTEL PAINTBOX ...............................................................................6

III.    THERE IS NO CONTEMPORANEOUS EVIDENCE THAT
        CORROBORATES THE ORAL TESTIMONY OF DEFENDANTS'
        WITNESSES THAT THE QUANTEL PAINTBOX IS PRIOR ART .................8

        A.      Claim Element 1:  The Evidence Produced in This Litigation Does
                Not Corroborate That the PaintBox Stored a Reduced Size Image
                on Disk Prior to April 8, 1982 ...........................................................8

                1.      The January, 1983 User's Guide.........................................9

                2.      The DPB 7000/1 Operations And Service Manual ...........................10

                3.      The 2005 Demonstration....................................................10

                4.      The May 1982 Report ........................................................12

                5.      The September 1982 Digital Video Report........................................12

                6.      The Weather Channel Documents .........................................12

                7.      The Preliminary Description  – The Quantel DPB 7000 Digital
                        PaintBox...............................................................................13

                8.      The August 1982 Draft Brochure........................................13

                9.      Mr. Holbrook's Testimony ................................................14

        B.      Claim Element 2:  The Evidence Produced In This Litigation Does
                Not Corroborate That The PaintBox Directly Transferred Data
                From Disk To Random Access Memory Prior To April 8, 1983 .................15

i

C.     Claim Element 3: The Evidence Produced In This Litigation Does Not Corroborate That The Size Reducer of the PaintBox Transferred and Received Data Only From Random Access Memory Prior To April 8, 1983 ........................................................................................16

D.     Claim Element 4: The Evidence Produced in This Litigation Does Not Corroborate That A Relationship Between The Full Size Image And the Reduced Size Image Was Maintained Prior to April 8, 1983 ........16

E.     Allowing Defendants To Use Uncorroborated Corroborating Evidence Would Prejudice Ampex ............................................................................18

F.     Taken Together And Allowed The Most Reasonable Inferences, Defendants' Evidence As A Whole Does Not Corroborate Defendants' Witnesses' Oral Testimony ........................................................................19

CONCLUSION ............................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 ...... 4

*Celotex Corp. v. Catrett*, 477 U.S. 317 ...... 4, 5

*Finnigan Corp. v. International Trade Commission*, 180 F.3d 1354 ...... 4, 5, 6

*Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728 ...... 5, 20

*Lacks Industrial, Inc. v. McKechnie Vehicle Components USA, Inc.*,
    322 F.3d 1335 ...... 19

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 ...... 4

*Stambler v. RSA Sec., Inc.*, 243 F.Supp.2d 70 ...... 5

*Tex. Digital System, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 ...... 5, 20

*The Barbed Wire Patent*, 143 U.S. 275 ...... 6

*Thomson, S.A. v. Quixote Corp.*, 166 F.3d 1172 ...... 5

*Union Carbide Corp. v. America Can Co.*, 724 F.2d 1567 ...... 4

*Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368 ...... 6, 19

## FEDERAL STATUTES

35 U.S.C. § 102 ...... 1, 17, 20

35 U.S.C. § 282 ...... 4

Fed. R. Civ. P. 56 ...... 4

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Ampex Corporation (Ampex) asserts that digital cameras of Defendants Eastman Kodak Company and Altek Corporation infringe Ampex's U.S. Patent No. 4,821,121 ("the '121 patent"). Defendants assert that the '121 patent is anticipated by Quantel's "PaintBox" product, which was a software-controlled video-graphics workstation that consisted of a computer, monitor, and tablet. In this motion, Ampex seeks summary judgment that the PaintBox does not invalidate the '121 patent because it is not prior art under § 102(a) and § 102(b) of Title 35, U.S.C.[1]

## SUMMARY OF ARGUMENT

Defendants cannot meet their clear and convincing burden to prove that Quantel's PaintBox is prior art, because they cannot corroborate the oral testimony upon which they rely to prove how the Paint Box was used before the relevant dates under 35 U.S.C. § 102(a) and § 102(b). Defendants are forced to rely on uncorroborated oral testimony because they could not find contemporaneous documents describing what the PaintBox could do before the relevant dates.

In attempt to create an appearance of corroboration, Defendants have cobbled together a hodgepodge of information that does not show that the PaintBox could meet all of the elements of any claim of the '121 patent. Many of the documents are, in addition to being incomplete, dated years later. Defendants' alleged corroborating evidence is so

---

[1] One difference between § 102(a) and § 102(b) is the date before which alleged invalidating activities must have occurred. Under § 102(a), the relevant date is "before the invention," which is at least the filing date of the '121 patent application, April 8, 1983. At trial, if necessary, Ampex will prove that the '121 patent is entitled to a date-of-invention prior to April 8, 1983, because it invented the subject matter of the claims of the '121 patent prior to that date. Under § 102(b), the relevant date is "one year prior to the date of application," April 8, 1982.

deficient that they offered a video, made in 2005, purporting to show how the PaintBox was used in 1982—despite the fact that the PaintBox's software had been replaced in 1987.

Allowing inferences most favorable to Defendants, the evidence proves at best that the PaintBox may have met some claim elements, but not all. Absent corroborating proof that the PaintBox meets every element of at least one claim of the '121 patent, Defendants cannot make out even a prima facie case that it is prior art.

### STATEMENT OF FACTS

The '121 patent is entitled "Electronic Still Store With High Speed Sorting And Method Of Operation." It was originally filed on April 8, 1983, and lists as the sole inventor, Daniel A. Beaulier.

Prior to Mr. Beaulier's '121 patent invention, one of the significant problems in the prior art was the time it took to browse stored images. This problem is discussed in Column 1 of the '121 patent. As discussed at lines 15-43, there were electronic still store video display systems, like the Quantel DLS6000, which had a slow browse feature. Whenever the operator wanted to browse, the system had to retrieve each full size image, pass it through a size reducer "on the fly," and put the reduced size image on the screen for each separate reduced size image it wanted to produce. It took the same time to display a reduced size image as it did to display a full size image. So, for example, a 4x4 array of reduced size images took 16 times longer to display than one full size image.

Mr. Beaulier solved this slow browse problem by realizing that he could design a system that, for each full size image to be stored, the system automatically generated a reduced size image and stored it along with the full size image on disk. Then, when the operator wanted to browse images, the pre-stored reduced size images could be used. So,

for example, a 4x4 array of sixteen reduced size images can be displayed in the same time that it took to display one full size image. Thus, it was sixteen times faster than the prior art browse method. ('121 patent, 4:58-63.)

There were, in addition to the Quantel DLS6000, other systems that existed at the time of the filing of Mr. Beaulier's '121 patent application. These included video graphics systems, such as Quantel's PaintBox and Ampex's AVA. These systems were not designed for storing and reviewing large numbers of images. Rather, their primary purpose was manipulating images. They had a "cut and paste" graphics feature, which an operator could use to reduce the size of an image. The PaintBox, like the Quantel DLS6000, used "on the fly" size reduction of full size images to create a browse screen. AVA was even further afield from the '121 invention.

Neither the Quantel PaintBox nor the Ampex AVA included Mr. Beaulier's '121 patented invention. They did not automatically generate reduced size images and store them on disk along with full size images for the purpose of making review of multiple images faster. They required storage of the full size image on disk before a reduced size image could be generated.[2]

Defendants nonetheless seek to rely on the Quantel PaintBox as prior art, on the theory that the claims do not require automatic operations and steps, and that the PaintBox was actually used in a way that meets the '121 patent claims. In an attempt to prove use consistent with the '121 patent, Defendants rely on the uncorroborated oral testimony of two witnesses describing a complex series of manual cutting and pasting

---

[2]  See Ampex's Motion For Partial Summary Judgment That U.S. Patent No. 4,821, 121 Is Not Anticipated, submitted herewith.

steps that they say were practiced over twenty years ago, on a PaintBox they say existed over twenty years ago. Defendants overlook the fact that there were different models of the Quantel PaintBox sold and demonstrated at different times. The manuals and source code for the original PaintBox no longer exist, and the later documents that do exist, do not reference the original PaintBox.

**ARGUMENT**

## I.    THE APPLICABLE LEGAL STANDARDS

### A.    The Summary Determination Standards

The standard for summary judgment in a patent case is the same as in any other case. *Union Carbide Corp.* v. *Am. Can Co.*, 724 F.2d 1567, 1571 (Fed. Cir. 1984). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id. at* 587. Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B.    Effect Of The Presumption Of Validity

Patents are presumed valid. 35 U.S.C. § 282 (2001). Accordingly, an accused infringer that asserts that the patent is invalid bears the burden of proving invalidity by clear-and-convincing evidence. *Finnigan Corp.* v. *Int'l Trade Comm'n*, 180 F.3d 1354,

4

1365 (Fed. Cir. 1999). If a non-moving party has the burden of proof regarding an

essential element, the non-moving party must make a sufficient showing with respect to

that element, or else the moving party is "entitled to judgment as a matter of law."

*Celotex Corp.*, 477 U.S. at 323.

### C.    The Corroboration Requirement

The Federal Circuit has held that, as a matter of law, a witness' uncorroborated

assertion about allegedly invalidating activities cannot rise to the level of clear-and-

convincing evidence. *Finnigan Corp.*, 180 F.3d at 1367. This absolute requirement

applies regardless of which sub-part of § 102 is at issue, including § 102(a) and § 102(b).

*Id.* In *Finnigan Corp.*, the sole support for an alleged 102(b)-invalidating activity was

the uncorroborated oral testimony of Mr. Jefferts. The Federal Circuit held: "Such

evidence is insufficient as a matter of law to establish invalidity of the patent. This is not

a judgment that Jefferts testimony is incredible, but simply that such testimony alone

cannot surmount the hurdle that the clear and convincing evidence standard imposes in

proving patent invalidity." *Id.* at 1370.

The requirement for corroboration applies to both interested and non-interested

witnesses. *Finnigan Corp.*, 180 F.3d at 1367-68; *Stambler* v. *RSA Sec., Inc.*, 243 F.

Supp. 2d 70, 72 (D. Del. 2003). Thus, even witnesses who are not a party to the dispute

are subject to the corroboration requirement. *Id. See also Tex. Digital Sys., Inc.* v.

*Telegenix, Inc.*, 308 F.3d 1193, 1217 (Fed. Cir. 2002) and *Juicy Whip, Inc.* v. *Orange

Bang, Inc.*, 292 F.3d 728, 742 (Fed. Cir. 2002).[3]

---

[3]  As the cited cases show, the only Federal Circuit decision that limited the
corroboration requirement to interested witnesses, *Thomson, S.A. v. Quixote Corp.*, 166
F.3d 1172, 1176 (Fed. Cir. 1999), has not been followed.

As the Federal Circuit has noted: "The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony." *Finnigan Corp.*, 180 F.3d at 1366. The history of this disfavor can be traced back to the Supreme Court's ruling in *The Barbed Wire Patent*, 143 U.S. 275 (1892). In that case, despite twenty-four witnesses who testified about allegedly invalidating activities, the Supreme Court reversed a trial court's holding that a patent was invalid. *Id.* That the witnesses themselves were not interested did not immunize their testimony from the corroboration requirement. *Id.* at 284. For the Supreme Court, oral testimony about invalidating activities demands "the closest scrutiny." *Id.* at 284-85.

One reason that mere oral testimony concerning invalidating activities is received with skepticism is that, in modern times, there is usually a documentary record of commercial activities. *Finnigan Corp.*, 180 F.3d at 1366. As the Federal Circuit has noted, it is rare that some contemporaneous physical record does not exist. *Woodland Trust* v. *Flowertree Nursery, Inc.*, 148 F.3d 1368, 1373 (Fed. Cir. 1998).

## II.     DEFENDANTS RELY ON THE UNCORROBORATED ORAL TESTIMONY OF TWO WITNESSES, MR. TAYLOR AND MR. HOLBROOK, FOR THEIR ASSERTIONS REGARDING THE QUANTEL PAINTBOX

The Supreme Court in the *The Barbed Wire Patent* case commented on the dangers of invalidating a patent on oral testimony alone. 143 U.S. at 284 ("Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information"). Here, Defendants offer the uncorroborated oral testimony of two witnesses, Richard J. Taylor and Martin A. Holbrook, on the issue of whether the Quantel PaintBox was prior

art to '121 patent. Mr. Taylor was the Managing Director and Chief Executive of

Quantel in the early 1980's. (Higgins Exh. 1 at ¶ 9)[4] In Mr. Taylor's opinion, "[t]he

PaintBox as sold and demonstrated prior to April 8, 1982 contained each of the elements

of the asserted claims of the '121 patent." (Higgins Exh. 1 at ¶ 62.) Mr. Taylor prepared

a chart detailing his opinion. (Higgins Exh. 1, Tab C).          **REDACTED**

     Martin Holbrook was also employed by Quantel in the early 1980's. Defendants

rely on Mr. Holbrook's oral testimony regarding his alleged demonstration of a Quantel

PaintBox at a meeting of the National Association of Broadcasters between April 4 and 7,

1982 ("NAB '82"). Mr. Holbrook was represented by Defendants' counsel at his

deposition in this matter, and had meetings with Defendants' counsel to discuss his

testimony and to review documents. (Higgins Exh. 7, Holbrook Tr. 14-16, 92.)

     Mr. Taylor and Mr. Holbrook's company, Quantel, was a direct competitor of

Ampex's in the 1980s, and they barred Ampex from Quantel's booths at tradeshows.

(Higgins Exh. 3, 6/7/06 Taylor Tr. 262.) Although the Federal Circuit has *rejected* the

notion that the corroboration rule only applies to interested witnesses, even if that notion

were applied here, Mr. Taylor and Mr. Holbrook are interested enough to trigger the

corroboration rule.

---

[4] "Higgins Exh. __" refers to the Declaration of Gabrielle E. Higgins in Support of
Ampex's Motion For Summary Judgment That The Quantel PaintBox Is Not Prior Art
Under 35 U.S.C. § 102 (a) And § 102(b) submitted herewith.

III.  **THERE IS NO CONTEMPORANEOUS EVIDENCE THAT CORROBORATES THE ORAL TESTIMONY OF DEFENDANTS' WITNESSES THAT THE QUANTEL PAINTBOX IS PRIOR ART**

In the body of his Initial Expert Report, Mr. Taylor references certain evidence in an attempt to corroborate his assertion that the Quantel PaintBox disclosed all of the elements of the asserted claims of the '121 patent. (Higgins Exh. 1 at ¶¶ 56-94). As discussed further below, there are at least four elements of the asserted claims of the '121 patent – referred to below as Claim Elements 1-4 – for which there is no contemporaneous evidence that corroborates the oral testimony of Defendants' witnesses that the PaintBox is prior art.

In an attempt to get around their legally insufficient proof, Defendants offer:

- A 2005 demonstration of how a PaintBox sold in 1982 could be operated. The threshold problem with that demonstration, however, is that the PaintBox product used for the demonstration had its software replaced in 1987. Defendants could not find the source code for the PaintBox's software as it existed in 1982.

- A draft brochure, a user's manual, and a service manual for the PaintBox, all dated *after* April 8, 1982. Defendants could not find the materials that accompanied the PaintBox allegedly sold in March 1982.

- March 1982 documents concerning the alleged sale of a PaintBox, which include no description of Claim Elements 1-4 of the '121 patent.

- Two reports, which refer to the demonstration of a PaintBox at NAB '82, but make no reference to demonstration of Claim Elements 1-4 of the '121 patent.

- A March 1982 Preliminary Description of a Paintbox, which does not disclose Claim Elements 1-4 of the '121 patent.

A.  **Claim Element 1: The Evidence Produced in This Litigation Does Not Corroborate That the PaintBox Stored a Reduced Size Image on Disk Prior to April 8, 1982**

There is no dispute that all of the asserted claims of the '121 patent require the storage of a reduced size image on disk. In his Report, Mr. Taylor, admits that "[a]ll of the asserted claims require the storage of the reduced size image on disk." (Higgins Exh. 1 at ¶ 79).

8

**REDACTED**

As corroboration for this assertion, Defendants rely on items 1-8 set forth below. None of these items provides corroboration that the PaintBox, as it existed prior to April 8, 1982, met Claim Element 1 of the asserted claims of the '121 patent.

### 1.     The January, 1983 User's Guide

Defendants have produced a DPB 7001 PaintBox User Guide, dated January 1983. (Higgins Exh. 5.)

**REDACTED**

There is no contemporaneous evidence to support Mr. Taylor's assertion that the capabilities described in the 1983 User's Guide were present in PaintBox prior to April 8, 1982.

2.    **The DPB 7000/1 Operations And Service Manual**

Defendants have also produced a DPB 7000/1 Operations and Service Manual, dated June 1984. (Higgins Exh. 6.)

**REDACTED**

(Higgins Exh. 3, Taylor 6/6/05 Tr. 134-35.) There is no contemporaneous corroborating documentation to support Mr. Taylor's assertion that the 1984 manual corresponds to the PaintBox as it existed over two years earlier.

3.    **The 2005 Demonstration**

In 2005, for use in this dispute, Mr. Taylor prepared a video demonstration that shows some of the capabilities of the PaintBox. (Higgins Exh. 1 at ¶ 93.[5])

**REDACTED**

---

[5] A copy of the video was attached as Exh. D to Mr. Taylor's Initial Expert Report. A copy of the video is not made of record on this motion because the content of the video is not in issue on this motion.

**REDACTED**

(Higgins Exh. 3, Taylor 6/6/05 Tr. 145.)  Mr. Holbrook also testified that the 2005

demonstration was done using a device with software dated after April 1982.  (Higgins

Exh. 7, Holbrook Tr. 99-100.)

**REDACTED**

**REDACTED**

### 4.     The May 1982 Report

Defendants rely on an Ampex internal report, dated May 18, 1982, which includes commentary from customers about various competitive graphics systems observed at NAB '82. (Higgins Exh. 13.) There is nothing in the report about whether the PaintBox as shown at NAB '82 could store reduced size images on disk.

### 5.     The September 1982 Digital Video Report

Defendants also rely on a September 1982 issue of The Digital Video Report, which discusses the PaintBox as demonstrated at NAB '82. (Higgins Exh. 14.) There is nothing in the report about whether the PaintBox as shown at NAB '82 could store reduced size images on disk.

### 6.     The Weather Channel Documents

According to Mr. Taylor, but unsupported by any contemporaneous corroborating evidence, the PaintBox allegedly sold to The Weather Channel in March 1982 "could store the reduced size image to disk" prior to April 8, 1982.

**REDACTED**

**REDACTED**

These documents describe features of a PaintBox system.  They do not describe a cut and paste feature, and say nothing about the storage of the reduced size image to disk.

       7.     **The Preliminary Description  – The Quantel DPB 7000 Digital PaintBox**

**REDACTED**

The preliminary description provides no corroboration for Mr. Taylor's assertion.

**REDACTED**

Similarly, Mr. Holbrook agreed that the term "storing cut-outs" is "not necessarily referring to reduced-size images."  (Higgins Exh. 7, Holbrook Tr. 112-113.)

       8.     **The August 1982 Draft Brochure**

**REDACTED**

There is no contemporaneous corroborating evidence that the

capabilities described in the draft brochure were present in the PaintBox as it existed

prior to April 8, 1982.                        **REDACTED**

As discussed above with respect to the

Preliminary Description, this provides no corroboration for Mr. Taylor's assertion

because "parts" of pictures or "cut-outs" are not necessarily "reduced size" pictures.

### 9.    Mr. Holbrook's Testimony

In his Report, Mr. Taylor references the uncorroborated oral testimony of his

former Quantel colleague, Mr. Holbrook, who testified at his deposition that he recollects

the details of demonstrating a PaintBox at NAB '82 over twenty years ago, including

demonstration of the cut and paste functionality.  (Higgins Exh. 1 at ¶ 59.)  Any reliance

on Mr. Holbrook's testimony for the proposition that the PaintBox, as it existed prior to

April 8, 1982, stored reduced size images on disk is misplaced.  At his deposition, Mr.

Holbrook admitted that he did not know where in memory or on disk a particular image

was stored at a particular point in time:

> Q.    So you would not be able to say where in memory or on disk a particular
>        image is stored at a particular point in time in the operation of the
>        PaintBox?
>
> A.    You would be correct in saying that, yes.

(Higgins Exh. 7, Holbrook Tr. 36.)

He further testified that he was not familiar at all with the circuitry, architecture, or

software of the PaintBox:

> Q.    Were you familiar at all with the circuitry or software of the PaintBox?
>
> A.    Absolutely not.

14

Q.    When you worked with the engineers, did you ever get into any details about architecture of the PaintBox or algorithms for reducing the size of the image, anything of that nature?

A.    I didn't get involved in that sort of detailed technology. It was not necessary for the user to know this or should not be necessary for a designer using the system to know this.

(Higgins Exh. 7, Holbrook Tr. 37-28.)

**B.    Claim Element 2: The Evidence Produced In This Litigation Does Not Corroborate That The PaintBox Directly Transferred Data From Disk To Random Access Memory Prior To April 8, 1983**

Ampex asserts that claims 7, 8 and 10 of the '121 patent require that the "direct" transfer path is not circuitous or roundabout, and that the transferred data is not significantly processed after it has left the providing or sending structure and before it has reached the receiving structure. (See Ampex's Claim Construction Brief, § II.F., Construction 21.) Defendants dispute Ampex's construction of this claim element. Defendants assert that "direct" transfer means "the transfer of data without intervening circuitry." (Construction, 21.)

According to Mr. Taylor, the PaintBox, as it existed prior to April 8, 1983, met Defendants' construction of this claim element.

**REDACTED**

There is no contemporaneous evidence that corroborates Mr. Taylor's assertions regarding this claim element. Mr. Taylor offers *solely* the June 1984 Operations and Service Manual.

15

**C.**     **Claim Element 3:  The Evidence Produced In This Litigation Does Not Corroborate That The Size Reducer of the PaintBox Transferred and Received Data Only From Random Access Memory Prior To April 8, 1983**

Ampex asserts that claims 7, 8 and 10 of the '121 patent require that the size reducer transfer video pixel data representing images to, and receive such data from, only the random access memory.  (See Ampex's Claim Construction Brief, § II.G. Construction 25.)  Defendants' expert, Mr. Taylor, asserts that claim 8 requires the direct transfer of the full size image from random access memory to the size reducer and the direct transfer of the generated reduced size image from the size reducer to random access memory.  (Higgins Exh. 1 at ¶ 78.)

# REDACTED

There is no contemporaneous evidence that corroborates Mr. Taylor's assertions regarding this claim element.  Mr. Taylor offers *solely* the June 1984 Operations and Service Manual.

**D.**     **Claim Element 4:  The Evidence Produced in This Litigation Does Not Corroborate That A Relationship Between The Full Size Image And the Reduced Size Image Was Maintained Prior to April 8, 1983**

Ampex alleges that each of the asserted claims of the '121 patent requires a "correspondence" between each full size image and the reduced size image generated from that full size image.  In other words, the asserted claims require that a relationship be maintained between each full size image and the reduced size image generated from that full size image.  (See Ampex's Claim Construction Brief, § II.D., Constructions 9-

13.) Defendants dispute Ampex's construction of this claim element. Defendants assert that "corresponding" merely means that "the reduced size image is one that relates to a full size image in that it is a smaller (lower resolution) version of the full sized image." (Higgins Exh. 1 at ¶¶ 73-75; Construction 9.) Nonetheless.

## REDACTED

There is no evidence that corroborates Mr. Taylor's assertions that the PaintBox, as it existed prior to April 8, 1983, maintained a relationship between each full size image and the reduced size image generated from that full size image. To the extent that Defendants rely on Mr. Taylor's assertion that the PaintBox had the capability of automatically assigning consecutive numbers for a sequence of pictures prior to April 8, 1983, there is no contemporaneous evidence that corroborates that the PaintBox had an automatic increment feature prior to April 8, 1983.

Tacitly recognizing that the contemporaneous evidence is insufficient, Defendants seek to bolster the non-contemporaneous (later) evidence with Mr. Taylor's and Mr. Holbrook's own assertions that there are no differences between these items and the PaintBox as it existed prior to the relevant dates under 35 U.S.C. § 102(a) and § 102(b). This is, however, circular reasoning. Messrs. Taylor and Holbrook cannot fill in the gaps in the corroborating evidence with their own testimony. It is their testimony that must be corroborated in the first place. They cannot corroborate their own testimony. To be corroborating evidence, evidence must be independent.

### E. Allowing Defendants To Use Uncorroborated Corroborating Evidence Would Prejudice Ampex

Allowing Mr. Taylor's and Mr. Holbrook's uncorroborated assertions to buttress Defendants' allegedly corroborating evidence would prejudice Ampex because Mr. Taylor's and Mr. Holbrook's gap-filling assertions cannot be effectively cross-examined.

**REDACTED**

For another example, Mr. Taylor and Mr. Holbrook say that the capabilities described in the 1983 User's Manual were present in the PaintBox prior to April 8, 1982. Yet, this statement also cannot be tested because, even though it "searched high and low," Quantel could not find any PaintBox manuals from 1982. From shipping documents accompanying sales of the PaintBox in England in 1982, it is clear that manuals were shipped with the product. For an additional example, Mr. Taylor says that

the DPB 7000/1 Operations and Service Manual dated June 1984 correctly describes the earlier PaintBox. Yet, this statement cannot be tested either because, even though it "looked hard," Quantel could not find any earlier PaintBox service manuals. Additionally, Mr. Taylor says that the capabilities described in the August, 1982 draft brochure were present in the PaintBox prior to April 8, 1982. This draft statement also cannot be tested.

Finally, the 2005 demonstration cannot be effectively cross-examined because the PaintBox product used in the demonstration was out of Quantel's possession for almost twenty years, and there are no records of the changes that have been made to it over that time.

In essence, Defendants are asking the trier of fact to take Mr. Taylor's and Mr. Holbrook's word that the PaintBox as it existed prior to the relevant dates contained all the elements of the '121 patent. Patent law does not allow such indulgence.

**F.    Taken Together And Allowed The Most Reasonable Inferences, Defendants' Evidence As A Whole Does Not Corroborate Defendants' Witnesses' Oral Testimony**

Putting all the evidence together under "rule of reason"[6] does not eliminate the gaps. This is not a case where one document discloses one element, another document discloses another element, etc. Here, there are elements missing from *all* of the evidence. Defendants cannot substitute quantity for quality to avoid summary judgment. Defendants' corroboration is insufficient as a matter of law. *Lacks Indus., Inc.* v. *McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1350-51 (Fed. Cir. 2003) (four pieces of contemporaneous documentary evidence deemed insufficient to

---

[6]  See generally *Woodland*, 148 F.3d at 1371.

corroborate that the allegedly invalidating activity involved the claimed invention); *Juicy Whip, Inc.*, 292 F.3d at 743 ("the evidence presented ... was insufficient as a matter of law to surmount the clear and convincing evidence hurdle."); *Tex. Digital Sys., Inc.*, 308 F.3d at 1216-18 (Federal Circuit affirmed decision to exclude from jury's consideration oral testimony, where the district court had refused to consider the non-contemporaneous corroborating evidence and deemed the contemporaneous evidence insufficient).

## CONCLUSION

Because there is no legally sufficient corroborating evidence that Quantel's PaintBox met all of the asserted claims of the '121 patent prior to the relevant dates, Ampex's motion for summary determination that the Quantel PaintBox is not prior art under 35 U.S.C.§ 102(a) and § 102(b) should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com

*Attorneys for Plaintiff Ampex Corporation*

OF COUNSEL:

Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue

Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC  20005
(202) 508-4600

May 23, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, Julia Heaney, hereby certify that on May 31, 2006, I caused to be electronically

filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of

such filing(s) to the following:

> Paul M. Lukoff, Esquire
> David E. Brand, Esquire
> Prickett, Jones & Elliott, P.A.

and that I caused copies to be served upon the following in the manner indicated:

### <u>BY E-MAIL and BY HAND</u>

> Paul M. Lukoff, Esquire
> Prickett, Jones, Elliott, P.A.
> 1310 King Street
> Wilmington, DE  19899

### <u>BY E-MAIL and BY FEDERAL EXPRESS</u>

> Michael J. Summersgill, Esquire
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA  02109

> */s/ Julia Heaney*
> Julia Heaney (#3052)