IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AMPEX CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. 04-1373 (KAJ) |
| EASTMAN KODAK COMPANY, ALTEK CORPORATION, and CHINON INDUSTRIES, INC., | ) ) ) ) ) | **PUBLIC VERSION** |
| Defendants. | ) ) | |

**AMPEX CORPORATION'S OPENING BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT THAT
U.S. PATENT NO. 4,821,121 IS NOT ANTICIPATED**

OF COUNSEL:
Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

Original Filing Date: May 23, 2006
Redacted Filing Date: May 31, 2006

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julie Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
  *Attorneys for Plaintiff Ampex Corporation*

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ..................................................................1

SUMMARY OF THE ARGUMENT .............................................................................1

STATEMENT OF THE FACTS ....................................................................................1

ARGUMENT.................................................................................................................4

I.   THE APPLICABLE LEGAL STANDARDS.......................................................4

II.  CLAIM CONSTRUCTION ................................................................................5
     A.   Automatic Nature Of Input Operations And Steps.....................................5

III. NONE OF THE ALLEGED PRIOR ART REFERENCES AUTO-
     MATICALLY GENERATES AND STORES REDUCED SIZE IMAGES..........6
     A.   The DLS 6030 Does Not Disclose The Required Automatic
          Input Operations And Steps.......................................................................6
     B.   The Paint Box Does Not Disclose The Required Automatic
          Input Operations And Steps.......................................................................8
     C.   The AVA Does Not Disclose The Required Automatic Input
          Operations And Steps ................................................................................9
     D.   The Scitex Response 300 Does Not Disclose The Required
          Automatic Input Operations And Steps....................................................10
     E.   The SDMS Does Not Disclose The Required Automatic
          Input Operations And Steps.....................................................................12
     F.   The Hell Chromacom System Does Not Disclose The
          Required Automatic Input Operations And Steps ....................................13
     G.   The Harada Patent Does Not Disclose The Required Automatic
          Input Operations And Steps.....................................................................14

CONCLUSION............................................................................................................14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242 ..................................................................4

*Biotec Biologische Naturverpackungen GmbH & Co. Kg* v. *BioCorp, Inc.*,
  249 F.3d 1341 ..................................................................................................................4

*Carella* v. *Starlight Archery and Pro Line Co.*, 804 F.2d 135 ................................................5

*Celotex Corp.* v. *Catrett*, 477 U.S. 317..................................................................................4

*Finnigan Corp.* v. *Int'l Trade Comm'n*, 180 F.3d 1354 ........................................4, 5, 11, 13

*Kegel Co.* v. *AMF Bowling, Inc.*, 127 F.3d 1420..................................................................4

*Key Pharms., Inc.* v. *Hercon Labs. Corp.*, 161 F.3d 709......................................................5

*SSIH Equip., S.A.* v. *United States Int'l Trade Comm'n*, 718 F.2d 365 ................................4

## FEDERAL STATUTES

35 U.S.C. § 102..............................................................................................................1, 4, 5

35 U.S.C.§ 112 .......................................................................................................................6

35 U.S.C. § 282......................................................................................................................4

Fed. R. Civ. P. 56...............................................................................................................1, 4

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Ampex asserts that Defendants' digital cameras infringe claims 7-8 and 10-15 of United States Patent 4,821,121 ("the '121 patent"). Defendants allege that certain prior art references anticipate these claims, rendering them invalid under 35 U.S.C. § 102. Fact and expert discovery have now concluded. Pursuant to Fed. R. Civ. P. 56 and Stipulation And Order To Extend Briefing Schedule (D.I. 273), Ampex submits this brief in support of its motion for partial summary judgment that the claims are not anticipated.

## SUMMARY OF THE ARGUMENT

If the Court adopts Ampex's construction of the claims, such that they require automatic input operations and order of steps as set forth in the Joint Claim Construction Chart, Constructions 18, 22-23, and 26-28, then the DLS 6030, Paint Box, and AVA cannot anticipate any claim as a matter of law. All three products – and four other systems Defendants allege are prior art – require manual input to perform other claimed functions and fail to operate in the required order.

## STATEMENT OF THE FACTS

The '121 patent is entitled "Electronic Still Store With High Speed Sorting And Method Of Operation." It was originally filed on April 8, 1983, and issued on April 11, 1989. (Christiansen Ex. 1.)[1] A still store was (and still is) understood to be a device that stored still images in electronic form. The '121 invention solves a problem that the prior

---

[1] "Christiansen Ex. __" refers to the Declaration of Karen A. Christiansen in Support of Ampex's Motion For Summary Judgment That U.S. Patent No. 4,821,121 is Not Anticipated, submitted herewith.

199248_2

1

art had failed to solve: as more images were stored on a still store, it became harder to rapidly review a large library of images and select a particular image for further use.

Prior art attempted to solve the problem with "browse screens" that automatically displayed multiple reduced size versions of the images at the same time. But the prior art systems, including Quantel's Digital Library System 6030 ("DLS 6030"), were slow to generate and display the browse screen. Whenever the user called for a browse screen, the system had to retrieve each full size image from disk, reduce each full size image to a reduced size image, and then place each reduced size image at its proper location on the screen. Ampex refers to this ad hoc generation of reduced size images as the "on-the-fly" approach, because reduced size images are created "on-the-fly" as they are needed.

Prior to the filing of the '121 patent, the "on-the-fly" approach was state of the art. "On-the-fly" systems are described and distinguished by the '121 patent. (*Id.* at col. 1, lines 34-38, 44-54.) The '121 patent describes a better system for rapidly generating and displaying a browse screen. The inventor, Mr. Daniel Beaulier, determined that a faster browse could be achieved if the reduced size images were automatically generated when the still store system first captures and stores the full size images. The reduced size image is then stored along with the full size image. Because the reduced size images to be used in a browse screen already have been created and stored, the browse screen can be generated more rapidly. (*See id.* at col. 2, lines 17-20, 37-43.)

There were, in addition to the DLS 6030, other systems that existed at the time of the filing of the '121 patent. These include video graphics systems, such as Quantel's Paint Box and Ampex's AVA. While they had electronic still store capability, their primary purpose was the manipulation of images. **REDACTED**

**REDACTED**

Christiansen Ex. 3, Tab A at p.4 (identifying apparent novelties of the '121 invention in the first office action of the '121 patent prosecution, including "the interaction between the size reducer and the frame store <u>prior</u> to store in the image storage" and "the 'frame' of video, containing both resolution copies, is non-selectively produced for all images that are stored.")

These systems did not solve – or even attempt to solve – the problem of slow browsing.

**REDACTED**

Other than the slow "on-the-fly" browse screen approaches described in column one of the '121 patent, the only other way to get a browse screen array of various reduced size images was for the operator to repeat this process for each reduced size image in the array, and then save the array as one composite image to preserve the browse screen.

Other alleged prior art – including the Scitex Response 300 system, the Hell Chromacom, the Spatial Data Management System ("SDMS"), and the parent application to the Harada patent – similarly do not disclose the configuration and operation of Mr. Beaulier's invention.

## ARGUMENT

I.  THE APPLICABLE LEGAL STANDARDS

Summary judgment under Fed. R. Civ. P. 56 is appropriate where the party who bears the burden of proof at trial has failed to establish a genuine issue of material fact of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed. Cir. 1997). A dispute involving a material fact is not genuine "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere denials or conclusory statements do not create a genuine issue of fact. *Biotec Biologische Naturverpackungen GmbH & Co. Kg v. BioCorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001) The nonmoving party bears the burden of responding to a motion for summary judgment by "designat[ing] 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (*quoting* Fed. R. Civ. P. 56(e)).

Each claim of a U.S. patent is presumed to be valid. 35 U.S.C. § 282 (2001). A party asserting invalidity bears the burden of proving by clear and convincing evidence that each patent claim is invalid. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1365 (Fed. Cir. 1999) (*quoting SSIH Equip., S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 375 (Fed. Cir. 1983)). Thus, a court ruling on a motion for summary judgment concerning patent validity must consider the clear and convincing evidentiary standard to determine whether a genuine issue of fact exists. *Anderson*, 477 U.S. at 252-55.

Section 102 of the patent code sets forth several patentability requirements relating to the novelty of an invention over the prior art. 35 U.S.C. § 102. Determining

whether a prior art reference anticipates a claim under § 102 requires two steps: the claim is first construed, then the construed claim is compared against the prior art. *Key Pharms., Inc.* v. *Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed. Cir. 1998). A prior art reference anticipates only if it discloses each and every element of the construed patent claim. *Finnigan*, 180 F.3d at 1365; *Carella* v. *Starlight Archery & Pro Line Co.*, 804 F.2d 135, 138 (Fed. Cir. 1986).

## II.    CLAIM CONSTRUCTION

### A.    Automatic Nature Of Input Operations And Steps

Under Ampex's proposed construction of claims 7-8 and 10-15, data for the reduced size image is **automatically** generated from the full size image by the interaction between the size reducer and the random access memory **prior to** storage in the bulk storage memory, and data representing the reduced size image is **automatically** generated and stored in the bulk storage memory **each time** that data representing the full size image is to be stored. (Joint Claim Construction Chart, Constructions 22-23, 26-28.) In addition, under Ampex's proposed construction, claims 7, 10, 12, 13 and 15 also require **automatic** operation of the output, transfer, access, or retrieval of a plurality of reduced size images disclosed in those claims. (*Id.* at Construction 18.)

For example, each time a full size image captured in random access memory is to be stored on bulk storage memory, a reduced size image is automatically generated and stored. The generation and storage of the reduced size image in this way occurs prior to the storage of the images and without a user orchestrating each step.

### III. NONE OF THE ALLEGED PRIOR ART REFERENCES AUTOMATICALLY GENERATES AND STORES REDUCED SIZE IMAGES

#### A. The DLS 6030 Does Not Disclose The Required Automatic Input Operations And Steps

As explained by Defendants' expert, Richard Taylor, the DLS 6030 was an electronic still store that "had a browse feature for browsing images stored on disk." [2] (Christiansen Ex. 2, ¶142.) The DLS 6030 browse feature is the prior art "on-the-fly" browse approach, discussed in § III *supra*, that was cited and distinguished in column one of the '121 patent.

During prosecution, Ampex amended its claims to distinguish the DLS 6000 series products (*e.g.*, the DLS 6030) as described in an article by Hugh Boyd.[3] (Christiansen Ex. 3, Tab B, pp.11-12; *id.* at Tab D, p.13; *see also id.* at Tab A, pp. AX061593-595.) While Mr. Beaulier's system automatically generates and stores reduced size images from full size images upon input of full size images to the system, the DLS 6000 series generated and stored them "on-the-fly." The Examiner subsequently withdrew rejections based on the Boyd article, and stated the pending claims would be allowable if certain 35 U.S.C. § 112 rejections were overcome. (*Id.* at Tab C, p. 4.) Thus, Ampex's arguments distinguishing the Boyd article from the '121 claims prevailed.

Defendants do not allege that the DLS 6030 browse function satisfies Ampex's claim construction requiring automatic operations and steps. (*See* Christiansen Ex. 2,

---

[2] Mr. Taylor joined Quantel in 1975 and served as its Executive Chairman for sixteen years before retiring in February 2006. (Christiansen Ex. 2, ¶¶5, 9.)

[3] According to Mr. Taylor, "[t]he 6000 is the generic name" and "[t]he 6030 was the three frame store version." (Christiansen Ex. 7, Taylor 4/28/06 Tr. 24:10-25:9; Christiansen Ex. 2, ¶142.)

¶152.) Instead, Defendants allege that an operator can use the DLS 6030's "Stack/Don't Care" function to perform automatic generation under Ampex's construction. (*Id.*) Defendants explain that "once a particular size had been selected for the images, [the Stack/Don't Care feature could] apply the same size to all images in the stack." (*Id.*)

But according to the DLS 6000 manual relied upon by Mr. Taylor in his expert report – and this is undisputed – using the Stack/Don't Care function required a series of operator inputs. The user would have had to record still images in a stack, select the "Size" effect and set up the reduced size using a joystick, then select the "Don't Care" effect in the setup mode, and finally select the "Play" mode to display the recorded stack. (Christiansen Ex. 4, p.13-14, 16; *see also* Christiansen Ex. 7, Taylor 4/28/06 Tr. 123:12-125:6.) The user would have had to manually perform additional steps to save the reduced size images generated in this way. (Christiansen Ex. 4, p. 8; *see also* Christiansen Ex. 7, Taylor 4/28/06 Tr. 126:20-127:4.)

The Boyd article cited by the '121 patent Examiner does not explicitly refer to a function called "Stack/Don't Care." But it does describe the "showing of pre-chosen slides waiting in the 'stack' for display." (Christiansen Ex. 3, Tab A at p. AX061594.) Boyd further describes an editing function that allows "[c]omplete sequences of commands to the DLS 6000 can be set up and stored for simple single button operation." (*Id.*) This is essentially the same operation as the Stack/Don't Care function set forth by Defendants. As discussed *supra*, the Examiner allowed the '121 patent claims in consideration of the Boyd article.

The generation of reduced size images using Stack/Don't Care (or using the browse function) also does not satisfy the requirement that a reduced size image is

automatically generated prior to storage of the full size image.

**REDACTED**

**B.    The Paint Box Does Not Disclose The Required Automatic Input Operations And Steps**

As described by Mr. Taylor, the Paint Box was a "video graphics system" that also functioned as an electronic still store. (Christiansen Ex. 2, ¶57.) According to Taylor, an operator of the Paint Box system could use the system's "cut and paste" function to generate a reduced size image. (*Id.* at ¶70.) But Defendants do not allege that the Paint Box cut and paste function satisfies Ampex's claim construction requiring automatic operations and steps.

Defendants assert instead that the Paint Box "browse function" could automatically generate reduced size images under Ampex's construction

**REDACTED**

The PTO has already determined this operation does not meet the claims.

**REDACTED**

The Examiner allowed the '121 claims in light of Ampex's distinction that the prior art browse function did not automatically generate reduced size images from a full size image in the frame store. (Christiansen Ex. 3, at Tab B, pp.11-12.) Furthermore, the prior art browse function "[did] not store a reduced image **automatically** with the full size counterpart each time a full size image in the frame buffer is to be stored on disk." (*Id.* at Tab D, p.13 (emphasis added).)

Defendants present no evidence that the Paint Box generated reduced size images prior to storage of the full size images. As explained above with respect to the DLS 6030, the Examiner determined that the '121 patent's browse function was novel over the prior art because the reduced size image data is generated by the interaction between the size reducer and frame store **prior to** storage in the bulk memory (or image store). (*Id.* at Tab A, p.4.) Plus, it is not even possible for the Paint Box to reduce an image in frame store without first storing it on magnetic disk. Like the DLS 6030, the filter card, that handles the size reduction, can only receive image data from the disk. (*See* Christiansen Ex. 7, Taylor 4/28/06 Tr. 48:10-49:16.)

C.  **The AVA Does Not Disclose The Required Automatic Input Operations And Steps**

Like the Paint Box, the AVA was a "video graphics system" that also had electronic still store capabilities. (Christiansen Ex. 2, ¶102.) Also like the Paint Box,

Defendants' expert, Mr. Taylor, states that AVA's "cut and paste" function can be used by an operator to generate a reduced size image. (*Id.* at ¶114.)

**REDACTED**

Defendants present no evidence that the AVA automatically generates and stores reduced size images under Ampex's claim construction. (*See id.*) Defendants also present no evidence that AVA generated reduced size images prior to storage of the full size images.

D.  **The Scitex Response 300 Does Not Disclose The Required Automatic Input Operations And Steps**

Defendants offer a variety of references and the uncorroborated oral testimony of Dr. Dieter Preuss on the issue of whether the Scitex Response 300 system meets the asserted claims of the '121 patent. Dr. Preuss asserts two manners in which reduced size images may have been generated in a version of the Scitex Response 300 system: an operator could opt to create a reduced size image; or a reduced size image could be

//
//
//

generated when a full size image was accessed by the system's editing station. (Christiansen Ex. 8, ¶¶ 85, 87.)[4]

However, in both cases, the full size image would have been stored to disk prior to generation of a reduced size image. (Christiansen Ex. 9, Preuss 5/5/2006 Tr. 142:20-143:1 ("Q: Would a reduced size image be generated prior to the storage of a scanned full size image to disk? A: In the Response-300, reduced size images were not generated prior to storage of the full size images onto disk."); Christiansen Ex. 8, ¶¶ 85-87.) Moreover, like the non-automatic size reduction generated by the operator, any size reduction through the Scitex Response 300 editing station would only be performed when the full size image was too large to display in its entirety at the editing station. (Christiansen Ex. 10, EKC000142057.) In neither case would a reduced size image automatically be saved for each full size image. (Christiansen Ex. 8, ¶ 92.) Finally, the only manner in which the Scitex Response 300 system could display a browse screen as part of one operation, assuming the system functioned as Defendants assert, would have been by the operator of the system manually creating an assembly, storing that assembly to disk, and recalling that pre-made assembly to RAM. (Christiansen Ex. 9, Preuss 5/5/2006 Tr. 175:15-176:3; Christiansen Ex. 8, ¶¶ 97-98.)

---

[4] Dr. Preuss does not base his opinion on physical inspection of a Scitex Response 300 system, and, for a number of his assertions, Dr. Preuss does not offer any evidence whatsoever. (Christiansen Ex. 9, Preuss 5/5/2006 Tr. 139:4-11, 144:21-145:21, 168:11-170:12; *see also, e.g.,* Christiansen Ex. 8, ¶¶ 79, 91, 97, 98.) Applying *Finnigan,* 180 F.3d at 1367, this uncorroborated oral testimony of Defendants' witness is not sufficient as a matter of law to establish that the Scitex Response 300 anticipates the automatic claim elements. (*See* Ampex's Motion for Summary Judgment That The Quantel Paint Box Is Not Prior Art Under 35 U.S.C. § 102(a) and § 102(b)). Defendants' uncorroborated witness testimony regarding the alleged automatic nature of the Hell Chromacom, SDMS and the Harada patent, discussed at §§ III. E-G and fn. 5, 6 *infra,* likewise fails as a matter of law to prove anticipation.

### E. The SDMS Does Not Disclose The Required Automatic Input Operations And Steps

Defendants' expert on the Spatial Data Management System ("SDMS"), Dr. Brad A. Myers, based his opinion that the SDMS anticipates on a videotape, articles, and the statements of Mr. Christopher Herot, a former expert for Defendants in the preceding ITC Investigation involving the parties. (Christiansen Ex. 11, Myers 5/3/2006 Tr. 26:10-27:24.) But for a document Dr. Myers relied upon in support of his opinions, he testified: "[T]his is a preliminary design. . . . [I]n fact, the real system didn't operate in this manner." (*Id.* at 51:4-12, 51:18-52:12.)[5]

Assuming for purposes of this motion, however, that the documents on which Dr. Myers relies do, in fact, describe SDMS, the SDMS does not disclose, among other things, the storage of reduced size images to disk. According to Dr. Myers, "[t]he reduced size image that appeared on the left monitor as part of the world view map was stored on a moving-head disk as part of the world view map." (Christiansen Ex. 13, ¶ 143; *see also* Christiansen Ex. 11, Myers 5/3/2006 Tr. 44:21-45:5 ("[T]he reduced size image is stored as part of the I-plane that represents the world-view map.")) This is not the automatic storage to bulk memory required under Ampex's construction. Rather, it is merely storing a single large composite image – an approach that was distinguished in column one of the '121 patent. (Christiansen Ex. 1, col. 1, lines 54-61.)

---

[5] Mr. Herot also testified that portions of the document Dr. Myers relies upon do not accurately describe the SDMS functionality. (Christiansen Ex. 12, Herot 6/15/2005 ITC Tr. 220.) With respect to the videotape, Dr. Myers cannot explain how certain scenes relating to generation of a reduced size image were created or what happened during cut-aways. (Christiansen Ex. 11, Myers 5/3/2006 Tr. 56:10-57:21.)

### F. The Hell Chromacom System Does Not Disclose The Required Automatic Input Operations And Steps

Defendants again offer the testimony of their expert, Dr. Preuss (*see* § III.D *supra*), this time to assert that the Hell Chromacom system meets the asserted claims of the '121 patent. Like the Scitex Response 300, Dr. Preuss asserts two ways for the Hell Chromacom to generate a reduced size image: an operator could opt to create a reduced size image; or using the "Scan/Reco" station of the system which is used to scan and review images. (Christiansen Ex. 8, ¶¶ 48, 50.)[6]

For the first manner of size reduction, the full size image would have been stored to disk prior to the generation of a reduced size image. (Christiansen Ex. 9, Preuss 5/5/2006 Tr. 89:22-90:12 (describing that a reduced size image "would be generated from the full size image that was on the disk"; *id.* at 115:20-116:21.) Moreover, size reduction in this manner would only be performed "at [the operator's] option." (Christiansen Ex. 8, ¶ 48.) Additionally, Defendants offer no evidence beyond Dr. Preuss's testimony that the Hell Chromacom disclosed reduced size images automatically being stored to disk. (*Id.* at ¶ 57; *cf.* Christiansen Ex. 9, Preuss 5/5/2006 Tr. 102:19-105:14.)

For the second manner of size reduction, there is no disclosure that the Scan/Reco station had the connectivity or structural elements (such as a size reducer and a RAM

---

[6] Like the Scitex Response 300, Dr. Preuss's opinion is not based on a physical analysis of a Hell Chromacom system. (Christiansen Ex. 9, Preuss 5/5/2006 Tr. 57:21-58:7.) Furthermore, Dr. Preuss does not recall when the operator-generated manner of size reduction was implemented in the Hell Chromacom. (*Id.* at 93:14:20.) He asserts that the Scan/Reco size reduction was implemented in 1980, but Defendants offer no evidence to corroborate the date. (*Id.* at 95:24-96:12.) Indeed, the only three documents Dr. Preuss relies upon for his opinions regarding Scan/Reco are all dated "1982" or December 1982. (Christiansen Exs. 10, 16 and 17.) Applying *Finnigan*, 180 F.3d at 1367 and other law set forth in Ampex's Motion for Summary Judgment That The Quantel Paint Box Is Not Prior Art Under 35 U.S.C. § 102(a) and § 102(b), these three documents cannot corroborate anticipation of any asserted claim of the '121 patent under 102(b).

associated with a size reducer) required to generate reduced size images automatically. (Christiansen Ex. 9, Preuss 5/5/2006 Tr. 61:15-23, 62:1-9, 71:20-72:6.) There is also no functional disclosure that the Scan/Reco station had the necessary interaction between the size reducer and RAM, or that it generated reduced size images prior to storage of the full size image (e.g., Christiansen Ex. 8, ¶ 56.) Instead, Defendants rely on the uncorroborated testimony of Dr. Preuss for these limitations. (Christiansen Ex. 9, Preuss 5/5/2006 Tr. 78:22-79:20).

### G.  The Harada Patent Does Not Disclose The Required Automatic Input Operations And Steps

Defendants assert that the parent application to U.S. Patent No. 4,802,019 ("the Harada patent") meets the asserted claims of the '121 patent.[7] But, among other things, the parent application to the Harada patent does not disclose the generation of a reduced size image prior to the storage of the full size image to disk. To the contrary, Mr. Harada testified that the storage of full size images to disk occurred before the generation of reduced size images (Christiansen Ex. 15, Harada 2/17/2006 Tr. 62-63, 88; *see also* Christiansen Ex. 14, Figure 1, Col. 2, lines 55-63.) Even Defendants' expert, Dr. Myers, admits that the "prior to" limitation is not expressly or inherently disclosed by Harada. (Christiansen Ex. 13, ¶ 107.) Bare assertions by Defendants' experts that these alleged prior art references anticipate is insufficient as a matter of law.

### CONCLUSION

Viewing all of the evidence in a light most favorable to Defendants, Defendants cannot prove as a matter of law that the "automatic" or "order of steps" required by

---

[7] Plaintiff contends that the parent application to the Harada patent is not prior art to the '121 patent. *See* Ampex Corporation's Motion for Summary Judgment that U.S. Patent No. 4,802,019 Is Not Prior Art to U.S. Patent No. 4,821,121.

Ampex's construction of claims 7-8 and 10-15 are contained in the alleged items of prior art. Therefore Ampex respectfully requests that its motion for partial summary judgment be granted that the '121 patent is not invalid as anticipated by the DLS 6030, Paint Box and/or AVA, and is not invalid as anticipated by the Scitex Response 300, SDMS, Hell Chromacom, or the Harada patent.

/s/ Julia Heaney
_____
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com

*Attorneys for Plaintiff Ampex Corporation*

OF COUNSEL:

Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

May 23, 2006

199248_2

**CERTIFICATE OF SERVICE**

I, Julia Heaney, hereby certify that on May 31, 2006, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Paul M. Lukoff, Esquire
> David E. Brand, Esquire
> Prickett, Jones & Elliott, P.A.

and that I caused copies to be served upon the following in the manner indicated:

**BY E-MAIL and BY HAND**

> Paul M. Lukoff, Esquire
> Prickett, Jones, Elliott, P.A.
> 1310 King Street
> Wilmington, DE  19899

**BY E-MAIL and BY FEDERAL EXPRESS**

> Michael J. Summersgill, Esquire
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA  02109

> */s/ Julia Heaney*
> Julia Heaney (#3052)