## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPEX CORPORATION, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) C.A. No. 04-1373 (KAJ) |
| v. | ) |
| | ) **REDACTED VERSION** |
| EASTMAN KODAK COMPANY, | ) |
| ALTEK CORPORATION, and | ) |
| CHINON INDUSTRIES, INC., | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

---

### DECLARATION II OF KAREN A. CHRISTIANSEN IN SUPPORT OF AMPEX CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT U.S. PATENT NO. 4,821,121 IS NOT INVALID FOR OBVIOUSNESS

OF COUNSEL:
Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

Original Filing Date: May 23, 2006
Redacted Filing Date: May 31, 2006

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julie Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
    *Attorneys for Plaintiff Ampex Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| ALTEK CORPORATION, and | ) | |
| CHINON INDUSTRIES, INC., | ) | |
| | ) | |
| *Defendants.* | ) | |

**DECLARATION II OF KAREN A. CHRISTIANSEN IN SUPPORT OF
AMPEX CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT
THAT U.S. PATENT NO. 4, 821, 121 IS NOT INVALID FOR OBVIOUSNESS**

1.      I am an associate with the law firm of Ropes & Gray LLP, attorneys for plaintiff Ampex Corporation ("Ampex") in this action. I make this declaration in support of Ampex Corporation's Motion For Partial Summary Judgment That U.S. Patent No. 4, 821, 121 Is Not Invalid For Obviousness.

2.      Attached hereto as Exhibit A are true and correct copies of pages 8, 49-50, and 54 from the Initial Expert Report of Dr. Brad A. Myers, submitted in this action on March 24, 2006.

3.      Attached hereto as Exhibit B are true and correct copies of pages 8-10 from the Deposition of Dr. Brad A. Myers, taken in this action on May 3, 2006.

199090_1

4.    Attached hereto as Exhibit C are true and correct copies of pages 31 and 58 from the Initial Expert Report of Richard John Taylor, submitted in this action on March 24, 2006.

5.    Attached hereto as Exhibit D is a true and correct copy of page 85 from the Deposition of Richard J. Taylor, taken in this action on April 28, 2006.

6.    Attached hereto as Exhibit E are true and correct copies of pages 13-23, 34, and Exhibit C from the Initial Expert Report of Dr. Dieter Preuss, submitted in this action on March 23, 2006.

7.    Attached hereto as Exhibit F are true and correct copies of pages 26-34 from the Deposition of Dr. Dieter Preuss, taken in this action on May 5, 2006.

8.    Attached hereto as Exhibit G are true and correct copies of pages 5-25 and 32-57 of the May 25, 2005 "Supplemental Response of Eastman Kodak Company to Complainant Ampex Corporation's Interrogatories No. 34, 35, 57 and 60, 98 and 101."

9.    Attached hereto as Exhibit H is a true and correct copy of the January 26, 2006 "Defendant Eastman Kodak Company's Second Supplemental Response to Ampex Corporation's Interrogatory No. 34, As Propounded During The ITC Investigation."

//

//

//

//

//

10.     Attached hereto as Exhibit I is a true and correct copy of *Syngenta Seeds, Inc. v. Monsanto Co.*, Civ. No. 02-1331-SLR, 2004 U.S. Dist. LEXIS 24252 (Nov. 19, 2004).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 22, 2006 in Palo Alto, California.

Karen A. Christiansen

EXHIBIT A

Redacted

EXHIBIT B

1

09:07:25  1
09:07:25  2     IN THE UNITED STATES DISTRICT COURT
          3     FOR THE DISTRICT OF DELAWARE
          4     ------------------------------------x
          5     AMPEX CORPORATION,
          6                        Plaintiff,

                                        C.A. No.
          7          -against-          04-1373-KAJ
          8     EASTMAN KODAK COMPANY, ALTEK CORPORATION
                and CHINON INDUSTRIES, INC.,
          9
                                   Defendants.
          10
                ------------------------------------x
          11                        May 3, 2006
                                   9:35 a.m.
          12
          13
          14         Videotaped Deposition of BRAD A. MYERS,
          15     taken by Plaintiff, pursuant to Notice, at the
          16     offices of Ropes & Gray, 1251 Avenue of the
          17     Americas, New York, New York, before TAMMEY M.
          18     PASTOR, a Registered Professional Reporter,
          19     Certified LiveNote Reporter and Notary Public
          20     within and for the State of New York.
          21
          22
          23
          24
          25

ORIGINAL

LEGALINK®
A MERRILL COMPANY
420 Lexington Ave
Suite 2108
New York, NY 10170
tel (212) 557-7400
tel (800) 325-3376
fax (212) 692-9171
www.merrillcorp.com

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

8

BRAD A. MYERS

09:41:25 1

09:41:26 2    respect to how I am interpreting the prior art

09:41:30 3    based on defendants' claim construction.

09:41:38 4            Q.      Referring to your experience as

09:41:39 5    a person of ordinary skill in the art.  As of

09:41:43 6    1983 did you have any experience in the

09:41:45 7    television broadcast industry?

09:41:51 8            A.      I was, you know,  in high

09:41:54 9    school I worked in a television station just

09:41:57 10   for fun.  And I did work on the SDMS system,

09:42:01 11   as I mention in this report while I was in

09:42:03 12   college which was not in the broadcast

09:42:07 13   industry, but it was for television.

09:42:14 14           Q.      Referring, again, to page 7 of

09:42:15 15   your Expert Report.  In particular, paragraph

09:42:17 16   30.  Do you see that paragraph?

09:42:21 17           A.      Yes.

09:42:21 18           Q.      Do you see the sentence that

09:42:22 19   reads "To the extent that a claim construction

09:42:25 20   similar to those I have identified as asserted

09:42:28 21   or adopted under which any of the above

09:42:31 22   identified systems do not meet each element of

09:42:33 23   the asserted claims it is my opinion the

09:42:35 24   asserted claims would have been obvious in

09:42:37 25   view of the prior art systems and materials

9

BRAD A. MYERS

09:42:37 1

09:42:39 2    discussed in this report." Do you see that?

09:42:41 3         A.    Yes.

09:42:43 4         Q.    Can you explain to me what you

09:42:45 5    mean, please, by claim construction similar to

09:42:47 6    those I have identified?

09:42:51 7         A.    Well, there have been, you

09:42:52 8    know,  a variety of claim construction

09:42:54 9    presented by both sides in this case.  And

09:42:58 10   they've differed, you know,  in small and

09:43:01 11   medium size ways.  And it seems like that, you

09:43:07 12   know, to the extent that claim construction,

09:43:10 13   you know,  is close to the claim construction

09:43:14 14   that we've been using, that it would be

09:43:18 15   obvious how to map the prior art on to those

09:43:22 16   claims.  But, you know,  if you have a

09:43:24 17   particular claim construction in mind, I'd be

09:43:28 18   happy to consider it.

09:43:29 19        Q.    Have you considered any

09:43:29 20   particular claim construction that you would

09:43:32 21   consider close to the claim construction that

09:43:34 22   have been articulated in this case?

09:43:38 23        A.    Not in this report.

09:43:44 24        Q.    Do you have any opinion on

09:43:45 25   obviousness in light of such a claim

10

BRAD A. MYERS

09:43:45 1

09:43:48 2 construction similar to those identified

09:43:52 3 beyond what you expressed here in paragraph

09:43:54 4 30?

09:43:55 5        A.    Not at this time.

09:44:06 6        Q.    Referring to paragraph 31 of

09:44:08 7 your Expert Report.  On page 8.  Do you see

09:44:11 8 that paragraph?

09:44:11 9        A.    Yes.

09:44:13 10        Q.    The first sentence reads "To

09:44:15 11 the extent that a claim construction similar

09:44:17 12 to those I have identified is asserted or

09:44:19 13 adopted under which the original application

09:44:22 14 for U.S. Patent number 4,802,019 to Harada, et

09:44:27 15 al. does not meet each element of the asserted

09:44:30 16 claims, the asserted claims would still have

09:44:32 17 been obvious in view of the original

09:44:33 18 application by itself or a combination of the

09:44:37 19 system described in the original application

09:44:39 20 for U.S. Patent number 4,802,019 to Harada, et

09:44:43 21 al. with the Quantel Paint Box."

09:44:47 22        Do you see that?

09:44:47 23        A.    Yes.

09:44:52 24        Q.    Do you have any opinions with

09:44:54 25 respect to obviousness of the asserted claims

EXHIBIT C

Redacted

EXHIBIT D

VOLUME: I

PAGES: 1-146

EXHIBITS: 40-52


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - x

AMPEX CORPORATION,

                 Plaintiff,

    v.                       Civil Action

EASTMAN KODAK COMPANY, ALTEK      No. 04-1373-KAJ

CORPORATION and CHINON

INDUSTRIES, INC.,

                 Defendants.

- - - - - - - - - - - - - - - - - - x

## CERTIFIED COPY

VIDEOTAPED DEPOSITION of RICHARD J. TAYLOR

April 28, 2006

9:38 a.m.

Ropes & Gray LLP

One International Place

Boston, Massachusetts


Reporter: Michael D. O'Connor, RPR



LEGALINK
A WORDWAVE COMPANY

LegaLink San Francisco     tel (415) 357-4300     www.legalink.com
575 Market Street, 11th Floor    tel (800) 869-9132
San Francisco, CA 94105        fax (415) 357-4301

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 02:06:56 | 1 | A.    I'm getting into areas here that is not my |
| 02:07:12 | 2 | expertise, but those systems had several ways of |
| 02:07:17 | 3 | getting reduced-size images. |
| 02:07:20 | 4 | Q.    Well, for purposes of this lawsuit, are you |
| 02:07:23 | 5 | relying solely on Dr. Preuss' report in connection |
| 02:07:28 | 6 | with this paragraph or are you adding your knowledge |
| 02:07:30 | 7 | own as well? |
| 02:07:45 | 8 | A.    No.  For purposes of this lawsuit, I'd have |
| 02:07:48 | 9 | to rely on Dr. Preuss.  He's the expert. |
| 02:08:00 | 10 | Q.    You mentioned the capability, as you |
| 02:08:04 | 11 | understand it, to store reduced-size images of these |
| 02:08:08 | 12 | devices.  Is there any other combination that you're |
| 02:08:14 | 13 | relying on for your obviousness opinion? |
| 02:08:32 | 14 | A.    Not that I can recall at the moment, no. |
| 02:08:46 | 15 | Q.    Now, starting at Page 33 of your report, |
| 02:08:54 | 16 | you talk about AVA, and I have a question about |
| 02:08:59 | 17 | Paragraph 109 on Page 36.  You say "The random |
| 02:09:10 | 18 | access memory associated with the AVA computer also |
| 02:09:13 | 19 | stored video data.  Data was stored in the random |
| 02:09:17 | 20 | access memory associated with the AVA computer |
| 02:09:19 | 21 | before and after it was processed by the CPU."  At |
| 02:09:27 | 22 | the end of that paragraph you cite to a rather thick |
| 02:09:33 | 23 | manual, which I will ask the reporter to mark at |
| 02:09:35 | 24 | this point.  This is EKC 005021058 through 21414. |

85

EXHIBIT E

Redacted

# EXHIBIT F

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

Civil Action No.

04-1373-KAJ

*********************************

AMPEX CORPORATION,

Plaintiff,

v.

EASTMAN KODAK COMPANY, ALTEK

CORPORATION and CHINON

INDUSTRIES, INC.,

Defendants.

*********************************

VIDEOTAPED DEPOSITION OF DIETER
W. PREUSS, PhD, a witness called on behalf of
the Plaintiff, taken pursuant to the Federal
Rules of Civil Procedure, before Maureen
O'Connor Pollard, RPR, CLR, and Notary Public
within and for the Commonwealth of
Massachusetts, at the offices of Ropes & Gray,
LLP, One International Place, Boston,
Massachusetts, on the 5th of May, 2006,
commencing at 9:29 o'clock a.m.


LEGALINK®
A WORDWAVE COMPANY

LegaLink San Francisco
575 Market Street, 11th Floor
San Francisco, CA 94105

tel (415) 357-4300
tel (800) 869-9132
fax (415) 357-4301

www.legalink.com

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

DIETER W. PREUSS, Ph.D.  May 5, 2006

| | | |
|---|---|---|
| 09:59:37 | 1 | A.  For the Scitex 300 system the same |
| 09:59:41 | 2 | would apply what I just said for the Chromacom |
| 09:59:43 | 3 | system, anticipated and also obvious. |
| 09:59:50 | 4 | Q.  Do you express your opinion that the |
| 09:59:52 | 5 | Scitex Response-300 system renders obvious the |
| 09:59:56 | 6 | asserted claims of the '121 patent under Ampex's |
| 09:59:59 | 7 | interpretation of the claim language anywhere in |
| 10:00:02 | 8 | your expert report? |
| 10:00:03 | 9 | MR. HIRSCH:  Objection. |
| 10:00:04 | 10 | A.  I didn't express it, no. |
| 10:00:07 | 11 | BY MR. SCHOENHARD: |
| 10:00:09 | 12 | Q.  Please direct your attention to |
| 10:00:10 | 13 | paragraph 28 of your expert report on page six. |
| 10:00:17 | 14 | Do you see that paragraph? |
| 10:00:27 | 15 | A.  28. |
| 10:00:27 | 16 | MR. HIRSCH:  Page six, paragraph 28. |
| 10:00:30 | 17 | THE WITNESS:  I know. |
| 10:00:35 | 18 | Yes. |
| 10:00:36 | 19 | BY MR. SCHOENHARD: |
| 10:00:43 | 20 | Q.  Please also direct your attention to |
| 10:00:44 | 21 | paragraph 100 on page 34 of your expert report. |
| 10:01:01 | 22 | A.  Yes. |
| 10:01:01 | 23 | Q.  Do you have any opinions with respect |
| 10:01:05 | 24 | to the obviousness of the asserted claims of the |

26

DIETER W. PREUSS, Ph.D. May 5, 2006

| | | |
|---|---|---|
| 10:01:08 | 1 | '121 patent in light of the Hell Chromacom |
| 10:01:11 | 2 | system in combination with the Quantel Paintbox |
| 10:01:14 | 3 | beyond what you state in paragraphs 28 and 100 |
| 10:01:17 | 4 | of your expert report? |
| 10:01:19 | 5 | MR. HIRSCH:  Objection. |
| 10:01:41 | 6 | A.  No, I have no additional opinion on |
| 10:01:56 | 7 | that. |
| 10:01:56 | 8 | BY MR. SCHOENHARD: |
| 10:02:09 | 9 | Q.  Returning your attention to paragraph |
| 10:02:11 | 10 | 28 on page six of your expert report, do you see |
| 10:02:18 | 11 | the clause that reads "to the extent that a |
| 10:02:21 | 12 | claim construction is asserted or adopted under |
| 10:02:24 | 13 | which either of the Chromacom or Response-300 do |
| 10:02:27 | 14 | not meet each element of the asserted claims"? |
| 10:02:30 | 15 | A.  Yes. |
| 10:02:33 | 16 | Q.  Have you identified any particular |
| 10:02:35 | 17 | alternative claim construction under which a |
| 10:02:41 | 18 | combination of the Chromacom and the Quantel |
| 10:02:44 | 19 | Paintbox would render any of the asserted claims |
| 10:02:47 | 20 | of the '121 patent obvious? |
| 10:02:50 | 21 | MR. HIRSCH:  Objection.  Vague. |
| 10:02:53 | 22 | A.  No, I have not identified such a |
| 10:02:58 | 23 | theoretical claim construction. |
| 10:03:00 | 24 | BY MR. SCHOENHARD: |

27

DIETER W. PREUSS, Ph.D.  May 5, 2006

| | | |
|---|---|---|
| 10:03:01 | 1 | Q.   Have you identified any particular |
| 10:03:03 | 2 | features of the Quantel Paintbox that would be |
| 10:03:06 | 3 | combined with the Hell Chromacom system to |
| 10:03:07 | 4 | render any of the asserted claims of the '121 |
| 10:03:10 | 5 | patent obvious? |
| 10:03:13 | 6 | MR. HIRSCH:  Objection. |
| 10:03:14 | 7 | A.   In this opinion I express that under |
| 10:03:22 | 8 | the -- or provided that a certain not yet really |
| 10:03:29 | 9 | known claim construction combination is adopted, |
| 10:03:32 | 10 | I understand the judge does this at some time |
| 10:03:35 | 11 | later, and since I don't know that not yet |
| 10:03:39 | 12 | which, under this provision, so I really cannot |
| 10:03:44 | 13 | identify exactly which features would render, |
| 10:03:52 | 14 | when they are combined in both systems, would |
| 10:03:55 | 15 | render the claims obvious. |
| 10:03:56 | 16 | BY MR. SCHOENHARD: |
| 10:03:57 | 17 | Q.   Have you identified any motivation to |
| 10:04:00 | 18 | combine any particular feature of the Quantel |
| 10:04:02 | 19 | Paintbox with the Hell Chromacom system? |
| 10:04:05 | 20 | MR. HIRSCH:  Objection.  Vague. |
| 10:04:06 | 21 | A.   Could you repeat the question, please? |
| 10:04:13 | 22 | BY MR. SCHOENHARD: |
| 10:04:14 | 23 | Q.   Have you identified any motivation to |
| 10:04:16 | 24 | combine any particular feature of the Quantel |

28

DIETER W. PREUSS, Ph.D. May 5, 2006

| | | |
|---|---|---|
| 10:04:18 | 1 | Paintbox with the Hell Chromacom system? |
| 10:04:21 | 2 | A.   Not any particular, no. |
| 10:04:34 | 3 | Q.   What do you mean by the Quantel |
| 10:04:39 | 4 | Digital Library System? |
| 10:04:43 | 5 | MR. HIRSCH:  Objection.  Vague. |
| 10:04:46 | 6 | A.   I understand that is an even older |
| 10:04:50 | 7 | system of Quantel, I mean older than the |
| 10:04:53 | 8 | Paintbox, which also contains a still store, and |
| 10:04:58 | 9 | does a lot of image handling functions related |
| 10:05:02 | 10 | to the TV broadcasting application. |
| 10:05:06 | 11 | BY MR. SCHOENHARD: |
| 10:05:07 | 12 | Q.   When you refer to the Quantel Digital |
| 10:05:10 | 13 | Library System, is there a particular model of |
| 10:05:12 | 14 | that system to which you are referring? |
| 10:05:15 | 15 | MR. HIRSCH:  Objection. |
| 10:05:17 | 16 | A.   No, I don't refer to any particular |
| 10:05:19 | 17 | model. |
| 10:05:20 | 18 | BY MR. SCHOENHARD: |
| 10:05:25 | 19 | Q.   Do you have any opinions with respect |
| 10:05:26 | 20 | to the obviousness of the asserted claims of the |
| 10:05:29 | 21 | '121 patent in light of the Hell Chromacom |
| 10:05:32 | 22 | system in combination with the Quantel Digital |
| 10:05:36 | 23 | Library System beyond what you state in |
| 10:05:37 | 24 | paragraphs 28 and 100 of your expert report? |

29

DIETER W. PREUSS, Ph.D.  May 5, 2006

| | | |
|---|---|---|
| 10:05:43 | 1 | A.    No, I don't have any opinion beyond |
| 10:05:56 | 2 | that. |
| 10:05:56 | 3 | Q.    Have you identified any particular |
| 10:06:00 | 4 | alternative claim construction under which such |
| 10:06:03 | 5 | a combination would render any of the asserted |
| 10:06:05 | 6 | claims of the '121 patent obvious? |
| 10:06:07 | 7 | MR. HIRSCH:   Objection. |
| 10:06:08 | 8 | A.    No, I also have not identified any |
| 10:06:13 | 9 | particular claim construction. |
| 10:06:15 | 10 | BY MR. SCHOENHARD: |
| 10:06:16 | 11 | Q.    Have you identified any particular |
| 10:06:17 | 12 | features of the Quantel Digital Library System |
| 10:06:21 | 13 | that would be combined with the Hell |
| 10:06:23 | 14 | Chromacom -- |
| 10:06:24 | 15 | MR. HIRSCH:   Objection. |
| 10:06:25 | 16 | BY MR. SCHOENHARD: |
| 10:06:25 | 17 | Q.    -- Hell Chromacom system to render any |
| 10:06:28 | 18 | of the asserted claims of the '121 patent |
| 10:06:30 | 19 | obvious? |
| 10:06:31 | 20 | MR. HIRSCH:   Objection. |
| 10:06:32 | 21 | A.    Also no particular feature I have |
| 10:06:35 | 22 | identified. |
| 10:06:36 | 23 | BY MR. SCHOENHARD: |
| 10:06:36 | 24 | Q.    Have you identified any motivation to |

30

DIETER W. PREUSS, Ph.D.  May 5, 2006

| | | |
|---|---|---|
| 10:06:38 | 1 | combine any particular feature of the Quantel |
| 10:06:41 | 2 | Digital Library System with the Hell Chromacom |
| 10:06:43 | 3 | system? |
| 10:06:44 | 4 | MR. HIRSCH:  Objection. |
| 10:06:44 | 5 | A.   Any motivation to combine.  Yes, these |
| 10:07:00 | 6 | systems, like the Quantel systems, all of the |
| 10:07:04 | 7 | Quantel systems, were in -- with regard to the |
| 10:07:11 | 8 | technology, they were about very similar to the |
| 10:07:15 | 9 | pre-press systems, and therefore it would have |
| 10:07:18 | 10 | been obvious to look at these to find features |
| 10:07:20 | 11 | in there which could be combined in order to |
| 10:07:26 | 12 | make or to render the claims obvious.  That is |
| 10:07:32 | 13 | the motivation, I think.  Technically they are |
| 10:07:36 | 14 | rather similar. |
| 10:07:37 | 15 | BY MR. SCHOENHARD: |
| 10:07:37 | 16 | Q.   Is there any particular feature of the |
| 10:07:39 | 17 | Quantel Digital Library System for which you |
| 10:07:42 | 18 | have identified any motivation to combine that |
| 10:07:45 | 19 | system with the Hell Chromacom system? |
| 10:07:47 | 20 | MR. HIRSCH:  Objection. |
| 10:07:47 | 21 | A.   No particular feature, no. |
| 10:07:56 | 22 | BY MR. SCHOENHARD: |
| 10:07:58 | 23 | Q.   Do you have any opinions with respect |
| 10:08:00 | 24 | to the obviousness of the asserted claims of the |

31

DIETER W. PREUSS, Ph.D.  May 5, 2006

| | | |
|---|---|---|
| 10:08:02 | 1 | '121 patent in light of the Scitex Response-300 |
| 10:08:05 | 2 | system in combination with the Quantel Paintbox |
| 10:08:09 | 3 | beyond what you state in paragraphs 28 and 100 |
| 10:08:12 | 4 | of your expert report? |
| 10:08:13 | 5 | A.   Was the question do I have motivation |
| 10:08:26 | 6 | or do I have opinion? |
| 10:08:28 | 7 | Q.   Do you have any opinions with respect |
| 10:08:29 | 8 | to the obviousness of the asserted claims of the |
| 10:08:32 | 9 | '121 patent in light of the Scitex Response-300 |
| 10:08:35 | 10 | system in combination with the Quantel Paintbox |
| 10:08:38 | 11 | beyond what you state in paragraphs 28 and 100 |
| 10:08:39 | 12 | of your expert report? |
| 10:08:42 | 13 | MR. HIRSCH:  Objection. |
| 10:08:47 | 14 | A.   No, I don't have any opinions beyond |
| 10:08:53 | 15 | this, what is stated here in the expert report. |
| 10:08:56 | 16 | BY MR. SCHOENHARD: |
| 10:08:56 | 17 | Q.   Have you identified any particular |
| 10:08:58 | 18 | alternative claim construction under which such |
| 10:09:01 | 19 | a combination would render any of the asserted |
| 10:09:04 | 20 | claims of the '121 patent obvious? |
| 10:09:06 | 21 | MR. HIRSCH:  Objection. |
| 10:09:07 | 22 | A.   I have also not identified any |
| 10:09:09 | 23 | particular claim construction. |
| 10:09:10 | 24 | BY MR. SCHOENHARD: |

32

DIETER W. PREUSS, Ph.D.  May 5, 2006

| | | |
|---|---|---|
| 10:09:12 | 1 | Q.    Have you identified any particular |
| 10:09:13 | 2 | features of the Quantel Paintbox that would be |
| 10:09:15 | 3 | combined with the Scitex Response-300 system to |
| 10:09:18 | 4 | render any of the asserted claims of the '121 |
| 10:09:21 | 5 | patent obvious? |
| 10:09:22 | 6 | MR. HIRSCH:  Objection. |
| 10:09:23 | 7 | A.    To identify such features one would |
| 10:09:31 | 8 | have to know about the claim construction that |
| 10:09:35 | 9 | will perhaps be adopted, therefore I have not |
| 10:09:37 | 10 | identified any such features yet. |
| 10:09:42 | 11 | BY MR. SCHOENHARD: |
| 10:09:43 | 12 | Q.    Have you identified any motivation to |
| 10:09:45 | 13 | combine any particular feature of the Quantel |
| 10:09:46 | 14 | Paintbox with the Scitex Response-300 system? |
| 10:09:49 | 15 | MR. HIRSCH:  Objection. |
| 10:09:49 | 16 | A.    I have only identified the general |
| 10:10:01 | 17 | motivation that again the Quantel Paintbox |
| 10:10:05 | 18 | system and the Response-300 systems are in a |
| 10:10:10 | 19 | field of very similar technology, digital |
| 10:10:13 | 20 | storage of images, handling display of images. |
| 10:10:17 | 21 | BY MR. SCHOENHARD: |
| 10:10:18 | 22 | Q.    Do you have any opinions with respect |
| 10:10:19 | 23 | to the obviousness of the asserted claims of the |
| 10:10:22 | 24 | '121 patent in light of the Scitex Response-300 |

33

DIETER W. PREUSS, Ph.D.  May 5, 2006

| | | |
|---|---|---|
| 10:10:24 | 1 | system in combination with the Quantel Digital |
| 10:10:29 | 2 | Library System beyond what you state in |
| 10:10:30 | 3 | paragraphs 28 and 100 of your expert report? |
| 10:10:32 | 4 | MR. HIRSCH:  Objection. |
| 10:10:33 | 5 | A.    No additional opinion, no. |
| 10:10:40 | 6 | BY MR. SCHOENHARD: |
| 10:10:40 | 7 | Q.    Have you identified any particular |
| 10:10:42 | 8 | alternative claim construction under which such |
| 10:10:44 | 9 | a combination would render any of the asserted |
| 10:10:47 | 10 | claims of the '121 patent obvious? |
| 10:10:49 | 11 | MR. HIRSCH:  Objection. |
| 10:10:50 | 12 | A.    No.  Also I didn't have identified any |
| 10:10:58 | 13 | particular claim construction. |
| 10:11:00 | 14 | BY MR. SCHOENHARD: |
| 10:11:01 | 15 | Q.    Have you identified any particular |
| 10:11:02 | 16 | features of the Quantel Digital Library System |
| 10:11:05 | 17 | that would be combined with the Scitex |
| 10:11:07 | 18 | Response-300 system to render any of the |
| 10:11:09 | 19 | asserted claims of the '121 patent obvious? |
| 10:11:13 | 20 | MR. HIRSCH:  Objection. |
| 10:11:14 | 21 | A.    Again this would depend on which claim |
| 10:11:18 | 22 | construction would be adopted, so I have not yet |
| 10:11:22 | 23 | identified such features. |
| 10:11:26 | 24 | BY MR. SCHOENHARD: |

34

EXHIBIT G

Redacted

EXHIBIT H

Redacted

EXHIBIT I

SYNGENTA SEEDS, INC., Plaintiff, v. MONSANTO COMPANY, DEKALB
GENETICS CORP., PIONEER HI-BRED INTERNATIONAL, INC., DOW
AGROSCIENCES, LLP, and MYCOGEN PLANT SCIENCE, INC. and
AGRIGENETICS, INC., collectively d.b.a. MYCOGEN SEEDS, Defendants.

Civ. No. 02-1331-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 24252

November 19, 2004, Decided

**SUBSEQUENT HISTORY:** Patent interpreted by Syngenta Seeds, Inc. v. Monsanto Co., 2004 U.S. Dist. LEXIS 24253 (D. Del., Nov. 19, 2004)

**PRIOR HISTORY:** Syngenta Seeds, Inc. v. Monsanto Co., 2004 U.S. Dist. LEXIS 19817 (D. Del., Sept. 27, 2004)

**DISPOSITION:** Plaintiff's motion for summary judgment was granted in part and denied in part.

**COUNSEL:** [*1] For SYNGENTA SEEDS INC., Plaintiff: Paul M. Lukoff, Prickett, Jones, Elliott, Wilmington, DE.

For MONSANTO COMPANY, DEKALB GENETICS CORP, PIONEER HI-BRED INTERNATIONAL INC, DOW AGROSCIENCES LLC, MYCOGEN PLANT SCIENCES, INC., AGRIGENETICS INC., COLLECTIVELY D.B.A. MYCOGEN SEEDS, Defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For DEKALB GENETICS CORP, Counter-claimant: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For SYNGENTA SEEDS INC., Counter-defendant: Paul M. Lukoff, Prickett, Jones, Elliott, Wilmington, DE.

For MONSANTO COMPANY, DOW AGROSCIENCES LLC, PIONEED HI-BRED INTERNATIONAL INC., Counter-claimants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** ROBINSON, Chief Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM OPINION

Dated: November 19, 2004
Wilmington, Delaware

**ROBINSON, Chief Judge**

### I. INTRODUCTION

Plaintiff brought the present action on July 25, 2002, alleging infringement of, inter alia, U.S. Patent No. 6,320,100 ("the '100 patent"). Currently before the court (among dozens of other motions) is plaintiff's motion for summary judgment that [*2] claim 26 of the '100 patent is infringed and not invalid. (D.I. 274) For the reasons set forth below, the court denies plaintiff's motion with respect to infringement but grants the motion with respect to validity. Plaintiff asserts that two of defendants' products, MON810 and TC6275, infringe claim 26 of the '100 patent. (D.I. 275 at 1) Claim 26 depends from claims 18, 21, 23, 24 and 25, which claims have been construed by the court in its memorandum order dated November 19, 2004. (D.I.)

### II. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Ze-

2004 U.S. Dist. LEXIS 24252, *

nith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). " Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position [*3] of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then " must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. 574, 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). If the nonmoving party fails to make a sufficient showing on an essential elemenet of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. [*4] See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

## III. INFRINGEMENT

### A. Legal Standard.

A determination of infringement requires a two-step analysis. First, the court must construe the asserted claims so as to ascertain their meaning and scope. Second, the claims as construed are compared to the accused product. See KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1355 (Fed. Cir. 2000). Claim construction is a question of law while infringement is a question of fact. See id. To establish literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." Southwall Tech., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995). Occasionally, "the issue of literal infringement may be resolved with the step of claim construction, for upon correct claim construction, it may be apparent whether the accused device is within the claims." Multiform Desiceants, Inc. v. Medzam, Cir. 1998).

### B. Analysis.

There is a genuine issue of material fact as to whether defendants infringe claim 26 of the '100 patent. In order to infringe dependant claim 26 of the '100 [*5] patent, defendants must make, use, sell, or offer to sell a product which contains all of the limitations of claims

18, 21, 23, 24, 25 and 26. See 35 U.S.C. § 271 (2004); Exxon Chem. Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1559 (Fed. Cir. 1995). As a result, defendants' products must include: (1) transgenic seed (claim 26); (2) from a transgenic maize plant (claim 25) comprising; (3) transgenic plant cells (claim 24) containing; (4) a chimeric gene (claim 23) having a heterologous promoter and synthetic Bt gene (claim 21); (5) which synthetic Bt gene was modified to increase expression in corn and encodes a Bt protein, and (7) contains a sufficient number of the claim preferred codons such that the G+C content of the synthetic DNA is at least about 60% (claim 18). n1 (D.I. 275 at 22)

> n1 The court does not cosider whether defendants' products possess the process limitations in claim 26, consistent with its discussion in its claim construction analysis and Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1583 (Fed. Cir. 1991).

[*6]

MON810 and TC6275 produce seeds that contain genetic material from other organisms. (D.I. 276 at A0004-A0006, A0023) MON810 and TC6275, therefore, produce transgenic seeds as required by claim 26. MON810 and TC6275 are also corn plants that contain genetic material from another organism, making each a transgenic maize plant according to claim 25. (Id. at A0006, A0020, A0074, A0128) MON810 and TC6275 are made up of plant cells that contain genetic material from other organisms, meaning each is comprised of transgenic plant cells as required by claim 24. (Id. at A0020, A0128, A0162-A0163) MON810 also contains a chimeric gene comprising a Bt gene linked to a heterologous promoter, the enchanced 35S promoter derived from cauliflower mosaic virus as required by claims 23 and 21. (Id. at A0012-A0013, A0130) Similarly, TC6275 contains the Zea mays ubiquitin 1 promoter which is a heterologous promoter sequence operatively linked to the Bt coding sequence to promote expression of the CryIF protein as required by claims 23 and 21. (Id. at A0027)

MON810 and TC6275 both comprise a synthetic DNA coding sequence that encodes a Bt insecticidal protein selected for optimized expression [*7] in a plant as required by claim 18. (Id. at A0008, A0057-A0058, A0075-A0076, A0162) However, claim 18 also requires that the synthetic DNA coding sequence contain a sufficient number of the listed codons to raise the G+C content to 60%. Defendants used different lists of codons to construct the MON810 and TC6275 synthetic DNA coding sequences. For MON810, this list identified TCC, not AGC, as the preferred codon for the amino acid Serine

("Ser") and identified GTC, not GTG, as the preferred codon for the amino acid Valine ("Val"). (D.I. 338 at 4) Defendants used a third list of preferred codons to construct TC6275. This list identified different codons for the amino acids Leucine ("Leu") and Proline ("Pro"). (Id. at 5) Consequently, the codons used by defendants for Ser and Val in MON810 and the Leu and Pro in TC6275 cannot contribute "G"s or "C"s to the G+C content calculation under claim 18. Plaintiff has produced no evidence to show that, even excluding the Ser and Val "G"s and "C"s in MON810 and the Leu and Pro "G"s and "C"s in TC6275, defendants still have a DNA coding sequence that has a G+C content of 60% under plaintiff's formula. Consequently, plaintiff has not show [*8] an absence of a genuine issue of infringement by defendants.

## IV. VALIDITY

### A. Prior Invention.

Prior inventions must exhibit all the limitations of the claimed invention. Slip Track Sys., Inc. v. Metal-Lite, Inc., 304 F.3d 1256, 1265-66 (Fed. Cir. 2002). One of the limitations of claim 26 is that the claimed DNA coding sequence must have a G+C content of 60%. Defendants have conceded that neither Bt11 nor the prior Monsanto work had a G+C content of 60%. (D.I. 388 at 15, 19) The evidence produced in this case supports the conclusion that Bt11 and the prior work of Monsanto did not have a G+C content of 60%. (D.I. 276 at A0466, A0152) As a result, neither Bt11 nor the Monsanto's work are prior inventions of claim 26.

### B. Anticipation.

"A rejection for anticipation under Section 102 requires that each and every limitation of the claimed invention be disclosed in a single prior art reference." In re Paulsen, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994); see also Crown Operations Int'l, Ltd. v. Solutia, Inc., 289 F.3d 1367, 1375 (Fed. Cir. 2002) ("A patent is invalid for anticipation when the same device or method, having [*9] all of the elements contained in the claim limitations, is described in a single prior art reference.") claim 26 of the '100 patent contains the limitation that the claimed DNA coding sequence must have a G+C content of 60%. None of the prior art references cited by defendants contain 60% G+C. The Bt11 gene had a G+C content of 49%. (D.I. 276 at A0446) The plants from Monsanto's experiment on GUN147 had a G+C content of 49%. (D.I. 275 at 26) The Barnason abstract and the Armstrong EUCARPIA abstract, both of which relate to the GUN147 plants, not only did not mention a G+C content, but also did not enable one skilled in the art to practice the invention. (D.I. 277 at A0496-A0499, A0668-A0670) Similarly, Monsanto's GUN284 and

GUN295 plants did not have a gene with more than 50% G+C content. (Id. at A0471-A0472)

Finally, the Lundquist patent, U.S. Patent No. 6,331,665 ("the '665 patent"), does not provide any specific target for G+C content. The '665 patent specification states that "the complete Bt coding sequence, or sections thereof, containing a higher proportion of maize preferred codons than the original bacterial gene could be synthesized using standard chemical synthesis [*10] protocols." Defendants point to this language as evidence that the '665 patent allowed one of skill in the art to use the '665 patent to make the seeds of claim 26. However, this statement does not suggest that one of skill in the art should modify a DNA sequence to have a G+C content of 60%. It only states that such a DNA sequence could be made. In any event, the language cited by defendants certainly does not teach one of skill in the art to make a gene sequence containing 60% G+C.

### C. Obviousness.

A patent claim is invalid for obviousness under 35 U.S.C. § 103 if the differences between it and the prior art are such that the claimed subject matter as a whole would have been obvious to one of ordinary skill in the art at the time the invention was made. Union Carbide Plastics & Tech. Corp. v. Shell Oil Co., 308 F.3d 1167, 1187 (Fed. Cir. 2002). "Obviousness is a legal conclusion based on . . . : (1) the scope and content of the prior art; (2) the differences between the claims and the prior art, (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness." McNeil-PPC, Inc. v. L. Perrigo. Co., 337 F.3d 1362, 1368 (Fed. Cir. 2003). [*11] When the party alleging obviousness fails to demonstrate the existence of a motivation to combine references, the obviousness defense fails and summary judgment is appropriate. Kolmes v. World Fibers Corp., 107 F.3d 1534, 1541 (Fed. Cir. 1997). However, "the motivation to combine may be found 'in the knowledge generally available to one of ordinary skill in the art." Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1337 (Fed. Cir. 2004) (citing In re Jones, 958 F.2d 347, 351 (Fed. Cir. 1992)).

Defendants have not produced sufficient evidence to create a genuine issue of material fact as to the obviousness of claim 26. First, defendants did not identify any prior art that suggests modifying a DNA coding sequence so that it contains 60% G+C content. Neither of the Fowler Australian Patent Office documents, AU-B-46884/89 and AU-B-36568/89, describes a Bt insecticidal protein modified to have 60% G+C content. (D.I. 277 at 500) If anything, the Fowler publication teach away from a DNA coding sequence containing 60% G+C since they teach that synthetic genes can only be synthesized by the methods described when the gene

Case 1:04-cv-01373-KAJ    Document 329    Filed 05/31/2006    Page 38 of 39

Page 4
2004 U.S. Dist. LEXIS 24252, *

encodes [*12] small proteins of less "than 150 [100] amino acids." (D.I. 276 at A0508-A0510) U.S. Patent Application No. 01/0003849 ("the Barton application) also did not teach a DNA sequence with 60% G+C. The Barton application describes results from three different modified Bt genes, Bt2, Bt3, and B4. Bt4, the gene that had the most modification, only had a G+C content of about 43%. (D.I. 277 at A0700-A0713; D.I. 275 at 29) Furthermore, Barton actually teaches away from a DNA coding sequence of 60% G+C since it shows that the modified Bt genes with less modification were more effective at killing insects. (D.I. 277 at A0712; A0504-A0506) Thus, Barton does not teach modification of a DNA coding sequence to have 60% G+C. The Adang patent, U.S. Patent No. 5,380,831, also does not describe a DNA coding sequence with 60% G+C. Adang teaches that the G+C content should be adjusted preferably to 40% and most preferably to 45%. (D.I. 277 at A0962) Finally, the Fischhoff patent, U.S. Patent No. 5, 500, 365, does not include a DNA sequence with 60% G+C. None of the genes provided as examples in the Fischhoff patent have a G+C content greater than 50%. (D.I. 277 A0633, A0635-A0639)

Second, even if defendants [*13] had indentified prior art containing all the limitations of claim 26, they failed to identity any motivation to combine the references cited. Defendants' opposition does not identify any reference that suggests combining any of the prior art cited in the opposition. Defendants, therefore, failed to identify an express written motivation to combine references. Defendants also failed to identify a motivation to combine references based on the knowledge generally available to one of ordinary skill in the art. Defendants argue that several of the limitations in claim 26 were well known in the art at the time of plaintiff's invention. (D.I. 338 at 25-28) While this may have been true, the fact that the limitations were well known does not suggest that it was obvious to combine these well known limitations of claim 26. Consequently, defendants failed to identify a motivation to combine the references.

### D. Written Description.

Defendants also fail to identify a material issue regarding the sufficiency of the written description supporting claim 26. support construing claim 26 to cover all DNA coding sequences with at least about 60% G+C. According to defendants, the '100 patent specification [*14] only describes optimized DNA sequences in which all of the native codons have been replaced by codons most preferred by maize except for minor variations to permit manipulation of the gene or to eliminate potentially deleterious processing sites. (D.I. 338 at 36) This, however, is not true. The '100 specification generally describes "an optimized gene or DNA sequence" as one in which "the nucleotide sequence of a native gene has been modified in order to utilized preferred codons for maize." ('100 patent, col. 8, 11. 51-53) The specification goes on to differentiate between a "pure maize optimized gene", wherein the "nucleotide sequence comprises 100 percent of the maize preferred codon sequences for a partucular polypeptide," and "partially maize optimized" DNA coding sequences that contain at least about 5% optimized sequence." ('100 patent, col. 8, 11. 57-60, col. 9, 11. 5-15) As a result, the '100 specification does describe maize optimized DNA coding sequence with significantly less than all native codons replaced by maize preferred codons.

### IV. CONCLUSION

For the reasons set forth above, the court denies plaintiff's motion with respect to infringement but grants motion [*15] with respect to validity. An order shall issue.

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on May 31, 2006, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Paul M. Lukoff, Esquire
> David E. Brand, Esquire
> Prickett, Jones & Elliott, P.A.

and that I caused copies to be served upon the following in the manner indicated:

### BY E-MAIL and BY HAND

Paul M. Lukoff, Esquire
Prickett, Jones, Elliott, P.A.
1310 King Street
Wilmington, DE 19899

### BY E-MAIL and BY FEDERAL EXPRESS

Michael J. Summersgill, Esquire
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

*/s/ Julia Heaney*
Julia Heaney (#3052)