# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AMPEX CORPORATION, | ) |
| *Plaintiff*, | ) C.A. No. 04-1373 (KAJ) |
| v. | ) |
| EASTMAN KODAK COMPANY, ALTEK CORPORATION, and CHINON INDUSTRIES, INC. | ) |
| *Defendants*. | ) |

### AMPEX'S REPLY BRIEF
### IN SUPPORT OF ITS MOTION TO COMPEL

OF COUNSEL:

Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

May 31, 2006

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julie Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
*Attorneys for Plaintiff Ampex Corporation*

i.

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
|     I.    SELECTIVE DISCLOSURE OF COMMUNICATIONS IS DISFAVORED | 2 |
|     II.   THE COURT DOES NOT NEED TO SET FORTH A BROAD RULE TO RESOLVE THE ISSUES IN THIS CASE | 5 |
|     III.  FULL AND FAIR CROSS-EXAMINATION ON DEFENDANTS' KNOWLEDGE IS ESPECIALLY IMPORTANT IN THIS CASE | 6 |
|     IV.  THE FEDERAL RULES OF CIVIL PROCEDURE REQUIRE DEFENDANTS TO PRODUCE A LOG OF WITHHELD DOCUMENTS | 8 |
| CONCLUSION | 8 |

ii.

# TABLE OF CITATIONS

Page(s)

Cases

*Akeva, LLC v. Mizuno Corp.*,
    243 F. Supp. 2d 418 (M.D.N.C. 2003) — 3

*Caliper Tech. Corp. v. Molecular Devices Corp.*,
    213 F.R.D. 555 (N.D. Cal. 2003) — 8

*Chiron Corp. v. Genentech, Inc.*,
    179 F. Supp. 2d 1182 (E.D. Cal. 2001) — 3, 8

*In re Echostar Communications Corp.*,
    2006 WL 1149528 (Fed. Cir. May 1, 2006) — 3

*Micron Separations, Inc. v. Pall Corp.*,
    159 F.R.D. 361 (D. Mass. 1995) — 4

*VLT Inc. v. Artesyn Techs., Inc.*,
    198 F. Supp. 2d 56 (D. Mass. 2002) — 4, 8

Statutes

Fed. R. Civ. P. 26(b)(5) — 8

Other Authorities

William F. Lee and Lawrence P. Cogswell, III, *Understanding and Addressing the Unfair Dilemma Created By the Doctrine of Willful Patent Infringement*, 41 Hous. L. Rev. 393, 453 (2004) — 2

1.

## INTRODUCTION

Much of Defendants' Opposition Brief responds to arguments Ampex never made. Ampex does not contend, and never has contended, that the law always forbids appropriate limitations on discovery of communications between trial counsel and the client when the attorney-client privilege has been waived.

As explained in its opening brief, Ampex contends that the scope of waiver -- and therefore any limits on the scope -- depends on what is necessary in a given case to allow fair cross-examination of the client's state of mind. Ampex contends, furthermore, that on the facts of this case, in which at least Defendant Kodak could have requested a written opinion three years earlier but instead waited until the eve of litigation, and where the written opinion was not received until more than a year had passed and the patent had only nine months left in its term, Defendants' waiver should include within its scope all of trial counsel's communications with Defendants through expiration of the '121 patent (April 11, 2006). If Defendants are permitted to disclose some communications made on the subject matter of the advice relied upon by Defendants as a defense to willful infringement, but withhold other contemporaneous communications, Ampex will not have a fair opportunity to cross-examine Defendants on their states of mind.

Ampex asks the Court to disregard Defendants' attempts to mischaracterize Ampex's argument, and to focus instead on the dispute at hand. Given that Defendants do not dispute that the scope of the waiver reaches at least some of trial counsel's communications with Defendants and that the waiver applies to communications made through April 11, 2006, the dispute between the parties is a relatively narrow one. The only issue before the Court is whether, as Ampex contends, the scope of the waiver includes all communications on the subject matter of

infringement or, as Defendants contend, the scope of the waiver should be limited to only those communications that are attorney "opinions" on infringement.

Ampex believes it already has demonstrated in its Opening Brief why Defendants' proposal to parse attorney-client communications into different types is not only against the great weight of authority, but also unfair and unworkable. As Defendants' lead counsel put it in a law review article:

> [W]hen a litigant chooses to *waive* certain privileges or immunities, this requires a reevaluation of what is *fair*. Indeed, the tactical litigant will choose to waive privileges or immunities only when it is advantageous to do so. . . . [T]he power to *selectively* withhold document permits the privilege holders to manipulate the *apparent* weight of the evidence in their own favor. This is an unfairness that must somehow be mitigated. **One way of achieving this, of course, is by requiring a litigant who voluntarily discloses *some* privileged or immune documents to disclose *all* such documents that relate to the same subject area. Indeed, this principle has been generally accepted by the courts.**[1]

Thus, it is not Ampex that is asking this Court to upset the apple cart by flouting long-standing law. It is Defendants who ask the Court to cast aside generally accepted legal principles.

**ARGUMENT**

I.   **SELECTIVE DISCLOSURE OF COMMUNICATIONS IS DISFAVORED**

Defendants' proposal to limit the scope of the waiver not just to the relevant subject matter-infringement--but also to the **type** of communications made--"opinions"--not only defies

---

[1]   William F. Lee and Lawrence P. Cogswell, III, *Understanding and Addressing the Unfair Dilemma Created By the Doctrine of Willful Patent Infringement*, 41 Hous. L. Rev. 393, 453 (2004) (italics in original, bold added).

3.

the great weight of the case law, but also common sense. Courts have consistently rejected proposals of the type made by defendants because they are unfair and unworkable.

As demonstrated in Ampex's opening brief, courts have routinely found that the scope of the waiver relates to all types of attorney-client communications. (Ampex Br. at 8-9). Defendants fail to distinguish these cases, and do not even address some of them. Defendants also fail to address statements in *In re Echostar Communications Corp.,* 2006 WL 1149528 (Fed. Cir. May 1, 2006), that make plain that once the privilege is waived, the waiver applies to all types of communications on the relevant subject matter. (Ampex Br. at 8). Indeed, in *Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1187-88 (E.D. Cal. 2001), cited by Defendants, the District Court rejected a proposal to limit attorney-client communications to mere opinions.[2]

Lacking any authority explicitly holding that the scope of the waiver is limited to mere opinions, Defendants crop a quote from *Akeva, LLC v. Mizuno Corp.,* 243 F. Supp. 2d 418 (M.D.N.C. 2003) (cited with approval in *EchoStar*). Defendants Br. at 10. According to Defendants, the quote demonstrates that *Akeva* limited the scope of the waiver as Defendants propose. But the *Akeva* court held exactly the opposite. The Court stated so much explicitly not only in other portions of the opinion not cited by Defendants, but also in the Court's actual order. That order states in pertinent part that the party waiving privilege and work product must produce trial counsel communications "relating to facts and opinions on the subject matter of infringement." *Id.*, 243 F. Supp. 2d at 424-25.

---

[2]  In *Chiron*, the parties agreed that litigation counsel communications would be immune from discovery. The Court nonetheless stated that it does **not** hold that litigation counsel opinions would be immune from discovery. The Court did not address the issue based on the agreement of the parties. *Id.*, 179 F. Supp. 2d at 1188 n.5.

4.

Defendants next fall back on *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 363 (D. Mass. 1995), but it suggests a different, also unworkable rule that even Defendants do not advocate in this case. In *Micron Separations*, the District Court found that the scope of the waiver extends to trial counsel communications, including both facts and opinions, but only to the extent such communications are "inconsistent" with the opinion to be relied upon.

It remains unclear whether any other district court judge has followed the approach in *Micron Separations*. Defendants certainly have not cited such a case. In any event, the same magistrate judge that decided *Micron Separations* demonstrated how difficult it would be to divide disclosure between "consistent" and "inconsistent" facts and opinions. In *VLT Inc. v. Artesyn Techs., Inc.*, 198 F. Supp. 2d 56 (D. Mass. 2002), a case cited by Defendants, the magistrate judge ended up making the determination himself. He ordered *in camera* review of every document on the privilege log withheld by the infringer. *Id.*, 198 F. Supp. 2d at 59. Distinguishing "opinions" from other types of communications would be no easier. Ampex submits that if the Court were to adopt a rule requiring such parsing of different kinds of communications, it would have to do what the *VLT* court did to enforce it: have the Court do the parsing in a large scale *in camera* review.

Defendants also cite a series of cases for the proposition that the waiver is "strictly limited" as it applies to trial counsel. Defendants' Br. at 6. None of those cases lends support for the rule proposed by Defendants. And, as demonstrated in Ampex's opening brief, most courts limiting disclosure of trial counsel communications have done so by making the waiver expire upon filing of suit, following pre-litigation receipt of an outside counsel's opinion. Ampex Br. at 6. That approach has now been rejected by the Federal Circuit, and does not apply on the facts of this case in any event.

5.

Defendants' argument that only attorney "opinions" are relevant to their state of mind is belied by their own conduct in discovery. Defendants did not seek to limit discoverability of opinion counsel's communications. It is Ampex's understanding that Defendants and opinion counsel have disclosed all documents reflecting their communications. Defendants have, therefore, tacitly conceded that communications other than mere opinions can be relevant to assessing their state of mind. Such communications are no less relevant when they involve trial counsel.

## II.  THE COURT DOES NOT NEED TO SET FORTH A BROAD RULE TO RESOLVE THE ISSUES IN THIS CASE

Defendants devote a substantial portion of their argument to what they believe are the consequences of ruling in Ampex's favor. Defendants argue, for example, that "Ampex's proposed waiver would force defendants (in this case and others) to produce all trial counsel communications relating to infringement leading up to and through trial." Defendants' Br. at 14. This is a straw man.

Ampex made clear in its opening brief that ruling in favor of Ampex on these facts does not require such a broad rule. Ampex Br. at 10-12. Ampex contends -- and Defendants do not dispute -- that the scope of the waiver depends on a case by case determination of what is necessary to fairly examine the infringer's state of mind. *Id.* Such a rule would neither require nor foreclose disclosure of trial counsel's trial communications.

There may be additional, independent reasons underlying Defendants' mischaracterization of Ampex's argument. Just days after Ampex served its opening brief, Defendants' counsel at WilmerHale sought to rely on Ampex's brief to obtain a broad waiver of trial counsel communications in another patent infringement case pending in the Southern District of New York. A WilmerHale lawyer sent a copy of the brief to their opposing counsel in

6.

that case -- other lawyers from Ropes & Gray, LLP -- with a cover letter stating that Ropes & Gray LLP, through Ampex, had "taken the position that where a party obtains an opinion of counsel after the initiation of litigation, that party must produce all communications with its trial counsel (not merely with opinion counsel)." (Tab A). WilmerHale proceeded to request on behalf of its client that the accused infringer produce **all** communications with trial counsel.

Ampex does not make such a far-reaching argument in this case. To the extent Ampex seeks trial counsel communications in this case, it does so based on Defendants' actions and the need to fairly examine Defendants' state of mind near the time it received its opinion of counsel.

### III.   FULL AND FAIR CROSS-EXAMINATION ON DEFENDANTS' KNOWLEDGE IS ESPECIALLY IMPORTANT IN THIS CASE

The facts as explained by Defendants serve only to underscore why waiver is appropriate in this case. They show that Kodak could have obtained an objective analysis from outside counsel, but neglected to do so for three years, and then only on the eve of litigation. Had Defendants obtained an opinion from outside counsel earlier, the need to examine trial counsel's communications may have been lessened.

Defendants state, for example, that Kodak obtained an opinion of counsel prior to the lawsuit from its in-house counsel. Defendants fail to note, however, that the opinion was never put in writing, and have yet to state in any detail exactly what analysis underlies that opinion. The fact remains that Kodak did not seek to obtain an objective, outside analysis until litigation was imminent, and did not receive a written opinion until more than a year had passed since the request.

As Kodak admits, moreover, it did not actually obtain the outside opinion until after it became clear that the ITC action would not resolve the issues between the parties. Even then,

7.

Kodak did not waive privilege and produce the opinion until after discovery closed. The only reasonable conclusion is that Kodak delayed obtaining, and then relying on, its opinion of counsel.

The facts also demonstrate that Kodak sought, and obtained, the outside opinion for the purpose of seeking to avoid liability for treble damages and to obtain a tactical advantage at trial rather than to make a good-faith determination as to whether it was infringing. If Kodak's objective had been to determine whether in good-faith it was infringing, it would have sought assistance from outside counsel long before it did.

Defendants do not dispute that the written opinion Kodak received in September, 2005 is relevant to show good-faith reliance only for the last nine months of the '121 patent term. Yet Defendants' plans for the opinion apparently are not limited to proving reliance during those nine months. Defendants rejected out of hand Ampex's offer to forego willfulness and enhanced damages after September 2005, and thereby forego the need to examine trial counsel's communications, in exchange for an agreement that Defendants would not rely on the outside opinion and would rely solely on its in-house "opinion." Thus Kodak seeks to rely on the written opinion, even for a period for which it could not be relevant. This shows not only that Kodak cannot seriously rely on its in-house opinion, but more importantly that Kodak's unstated objective is to use its late opinion to confuse the jury.

Given its made-for-trial purpose and questionable relevance, Defendants should not be permitted to rely on their outside opinion of counsel at all. If, however, Defendants are allowed to rely on the outside opinion, then it is especially important that Ampex's ability to cross-examine on the subject matter of the opinion not be hindered. Permitting Defendants to foreclose discovery on a substantial portion of the information they received from their attorneys

8.

would severely compromise Ampex's ability to cross-examine Kodak's opinion counsel or in-house counsel to show what Defendants' knew, when they knew it, and what facts they could reasonably rely on.

### IV. THE FEDERAL RULES OF CIVIL PROCEDURE REQUIRE DEFENDANTS TO PRODUCE A LOG OF WITHHELD DOCUMENTS

Defendants do not dispute that the Federal Rules' requirement to provide a log of withheld documents is mandatory. Fed. R. Civ. P. 26(b)(5). That rule, which Defendants do not even address, is dispositive. The Court should grant Ampex's request for a supplemental log.

Defendants rely on *VLT Inc. v. Artesyn Techs., Inc.*, 198 F. Supp. 2d 56 (D. Mass. 2002), for the proposition that it may be difficult to describe documents in detail without waiving privilege. Defendants fail to point out, however, that in *VLT* a privilege log already had been provided, and the only issue was whether the log needed to be supplemented with additional detail. *Id.*, 198 F. Supp. 2d at 58-59. The other two cases cited by Defendants also are not on point. *Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1190 (E.D. Cal. 2001), stands for the unremarkable proposition the defendants need not log documents that are determined by the Court to be irrelevant. *Caliper Tech. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 563 (N.D. Cal. 2003), merely addresses the types of information that must be disclosed, whether by log or otherwise, in order for a withholding party to make a prima facie case of privilege.

### CONCLUSION

For the reasons stated above, Ampex respectfully requests that the Court order Defendants to produce trial counsel communications made through April 11, 2006, on the subject matter of infringement, and to produce a privilege log for all withheld documents reflecting communications made on or before April 11, 2006.

9.

                        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                        */s/ Julia Heaney*

                        _____
                        Jack B. Blumenfeld (1014)
                        Julia Heaney (#3052)
                        1201 North Market Street
                        P.O. Box 1343
                        Wilmington, DE 19899-1347
                        (302) 658-9200
                          Attorneys for Plaintiff Ampex Corporation

**OF COUNSEL:**

Jesse J. Jenner
Sasha G. Rao
Ropes & Gray
1251 Avenue of the America
New York, New York 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

May 31, 2006

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on May 31, 2006, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Paul M. Lukoff
> David E. Brand
> Prickett, Jones & Elliott, P.A.

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND AND EMAIL

> Paul M. Lukoff
> Prickett, Jones, Elliott, P.A.
> 1310 King Street
> Wilmington, DE  19899

### BY FEDERAL EXPRESS AND EMAIL

> Michael J. Summersgill
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA  02109

*/s/ Julia Heaney*

Julia Heaney (#3052)
jheaney@mnat.com