# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, ALTEK | ) | **PUBLIC VERSION** |
| CORPORATION and CHINON INDUSTRIES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO
## PLAINTIFF'S MOTION TO COMPEL

PAUL M. LUKOFF (I.D. #96)
DAVID E. BRAND (I.D. #201)
1310 King Street
P. O. Box 1328
Wilmington, DE 19899
Tel.  302.888.6500
Fax:  302.888-6331
*Attorneys for Defendants*

OF COUNSEL:
William F. Lee
Donald R. Steinberg
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Rebecca M. McCloskey
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

Date:  June 2, 2006

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

SUMMARY OF THE ARGUMENT ........................................................................1

STATEMENT OF THE FACTS ............................................................................3

I.    Defendants Obtained An Opinion Of Counsel Prior To The Commencement Of
Litigation. ..................................................................................................3

II.   Ampex First Filed Suit In The International Trade Commission Where Damages
And Willfulness Were Not At Issue. ...............................................................4

ARGUMENT ...................................................................................................5

I.    The Federal Circuit's *EchoStar* Opinion Does Not Address The Unique
Considerations Associated With The Waiver Of Trial Counsel Privilege. ............5

      A.    The Waiver As It Applies To Trial Counsel Has Traditionally Been
Strictly Limited. ..............................................................................5

      B.    Trial Counsel Privilege Was Not At Issue In *EchoStar*...........................7

II.   *EchoStar* Does Not Compel The Production Of *All* Communications Between Trial
Counsel And The Defendants Relating In Any Way To Infringement. ................8

III.  Only Documents Rising To The Level Of An Opinion Are Potentially Relevant To
The Defendants' State Of Mind. ....................................................................11

IV.  The Broad Waiver Ampex Seeks Would Have Extraordinary And Adverse
Consequences In This Case And Beyond. ........................................................13

V.   Ampex Is Not Entitled To A Privilege Log Separately Listing All Trial Counsel
Communications And Work Product That Fall Outside The Scope Of The Waiver.........18

CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**PAGE**

Federal Cases

*Akeva L.L.C. v. Mizuno Corp.*,
    243 F. Supp. 2d 418 (M.D.N.C. 2003) .................................................................. 10

*Caliper Tech. Corp. v. Molecular Devices Corp.*,
    213 F.R.D. 555 (N.D. Cal. 2003) .......................................................................... 19

*Chimie v. PPG Indust., Inc.*,
    218 F.R.D. 416 (D. Del. 2003) ............................................................................. 15

*Chiron Corp. v. Genentech, Inc.*,
    179 F. Supp. 2d 1182 (E.D. Cal. 2001).................................................................. 19

*Collaboration Props., Inc. v. Polycom, Inc.*,
    224 F.R.D. 473 (N.D. Cal. 2004)................................................................. 5, 12, 17

*Douglas Press, Inc. v. Universal Mfg. Co.*,
    No. 01 C 2565 2003 WL 21361731 (N.D. Ill. June 11, 2003) ................................. 6

*Haines v. Liggett Group, Inc.*,
    975 F.2d 81 (3d Cir. 1992)..................................................................................... 15

*Imperial Corp. of America v. Sheilds*,
    174 F.R.D. 475 (S.D. Cal. 1997) ........................................................................... 20

*In re EchoStar Commc'ns Corp.*, Misc. Nos 803, 805,
    2006 WL 1149528 (Fed. Cir. May 1, 2006) ................................................... passim

*Mahurkar v. C.R. Bard, Inc.*,
    79 F.3d 1572 (Fed. Cir. 1996)................................................................................ 11

*Micron Separations, Inc. v. Pall Corp.*,
    159 F.R.D. 361 (D. Mass. 1995)................................................................... 6, 11, 12

*Mosel Vitelic Corp. v. Micron Tech., Inc.*,
    162 F. Supp. 2d 307 (D. Del. 2000)......................................................................... 6

*Motorola, Inc. v. Vosi Techs., Inc.*,
    No. 01 C 4182, 2002 WL 1917256 (N.D. Ill. August 19, 2002) ............................. 6

*Novartis Pharm. Corp. v. Eon Labs Mfg.*,
    206 F.R.D. 396 (D. Del. 2002) ................................................................................ 6

- ii -

*Sharper Image Corp. v. Honeywell Int'l, Inc.*,
    222 F.R.D. 621 (N.D. Cal. 2004) ............................................................................. 15, 16

*Terra Novo, Inc. v. Golden Gate, Inc.*,
    No. C-03-2684, 2004 WL 2254559 (N.D. Cal. Oct. 1, 2004) ................................................ 6, 8

*Tivo Inc. v. EchoStar Commc'ns Corp.*,
    *No. 2:04-CV-1 (E.D. Tex. Sept. 26,2005)* ............................................................................ 7, 8

*VLT, Inc. v. Artesyn Tech., Inc.*,
    198 F. Supp. 2d 56 (D. Mass. 2002) ....................................................................... 6, 17, 18

Defendants Eastman Kodak Company ("Kodak") and Altek Corporation ("Altek") respectfully submit this Opposition to Ampex's Motion to Compel ("Ampex's Motion") the production of all communications between trial counsel and Defendants relating to the issue of infringement.

## NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action in which Ampex accuses Defendants of willfully infringing U.S. Patent No. 4,821,121 (the "'121 patent"). All discovery, with the exception of willfulness discovery, has been completed.

Ampex's Motion relates to ongoing discovery regarding the opinion of counsel defense. The Defendants have already produced communications between: (1) the Defendants and opinion counsel; (2) trial counsel and opinion counsel; and (3) trial counsel and the Defendants relating to the substance of the opinion. Ampex's Motion now seeks all communications between the Defendants and trial counsel that relate in any way to the issue of infringement.

On May 11, 2006, the Court held a telephone conference with the parties to address Ampex's demand. The Court heard argument and then requested further briefing.

## SUMMARY OF THE ARGUMENT

Ampex's Motion seeks an unprecedented waiver of the attorney client privilege between client and trial counsel that would have extraordinary consequences in this case and beyond. It asserts that it is entitled to *all communications* between trial counsel and defendants, that *relate in any way to issues of infringement*, for *as long as* the alleged infringement continues. Such a waiver would permit plaintiffs to discover communications

between trial counsel and client during trial; it would provide plaintiffs a roadmap to defendants' litigation and trial strategy; it would destroy the confidential relationship between defendant and trial counsel; and it would essentially eliminate the advice of counsel as a viable defense to willfulness.

Ampex does not articulate a principled basis for its proposed waiver. Instead, Ampex appears to be motivated only by a desire to inflict the broadest possible waiver on Defendants for the sake of creating strategic litigation advantage. The Federal Circuit's recent decision in *In re EchoStar* does not warrant such a result. First, as Ampex concedes, trial counsel communications were not at issue in *EchoStar*. Second, even if *EchoStar* is construed to extend the waiver to trial counsel, it does not compel the production of every single trial counsel communication regarding infringement. Finally, even under Ampex's theory, Ampex does not need *every single trial counsel communication* relating in any way to infringement to assess Defendants' state of mind. At most, only communications that rise to the level of opinions on the ultimate questions of liability could potentially have a bearing on Defendants' state of mind.

Ampex also asserts that, regardless of the ultimate meaning of *EchoStar*, the "peculiar facts" of this case -- allegedly Kodak's delay in seeking an opinion of counsel -- justify the broad waiver it seeks. Ampex is correct that the facts of this case are peculiar, but the peculiarity is a direct result of *Ampex's* strategic decisions. On two occasions, Kodak received letters from Ampex concerning the '121 patent and, in both cases, responded by asking Ampex to state the basis for its infringement claim. Ampex never did. Instead, Ampex filed its claims in the International Trade Commission where neither damages nor willfulness were

at issue.  After extensive discovery, and on the eve of the ITC trial, Ampex abandoned its

complaint.  It then reinitiated its claims in this action.  Disregarding the fact that Kodak

obtained an opinion of counsel from its in-house counsel three years before any litigation

commenced, and that Defendants obtained a further opinion from opinion counsel before even

an answer was filed in this action, Ampex argues that Defendants' alleged delay entitles it to

obtain communications between trial counsel and Defendants in this *and the earlier ITC*

*action.*  Neither *EchoStar,* nor preexisting district court precedent, support such a result.

## STATEMENT OF THE FACTS

### I.    Defendants Obtained An Opinion Of Counsel Prior To The Commencement Of Litigation.

On August 29, 2001, more than *ten years* after Kodak began selling its digital

cameras,[1] and twelve years after the '121 patent issued, Ampex sent Kodak a letter demanding

that Kodak take a license to the '121 patent.  *See* Letter from Talcott to Palumbo of 8/29/01, at

B – 1-2.  In response, Kodak's in-house counsel conducted an internal analysis of Ampex's

infringement claim and concluded that Defendants' digital cameras did not infringe the '121

patent.  *See* Kodak's Response to Interrogatory No. 37, 3/15/06, at B – 272; Deposition of

Pamela Crocker on behalf of Eastman Kodak Company, 2/28/06, at B – 266-70.

On September 14, 2001, Kodak responded to Ampex's demand by requesting that

Ampex provide the basis for Ampex's infringement assertions.  *See* Letter from Crocker to

---

[1]    Ampex's assertion that Kodak first sold digital cameras in 1996 for the consumer market is misleading.  It is undisputed that Kodak first sold digital cameras -- for professional use -- in 1991.  *See* Ampex's Third Supplemental Response to Defendants' First Set of Interrogatories, 2/22/06, at B – 251.

Talcott of 9/14/01, at B – 3.  Ampex did not respond to Kodak's request and did not provide any basis for its assertion of infringement.

On May 26, 2004, nearly three years later, Ampex sent Kodak a second letter demanding that Kodak license the '121 patent.  In response, on June 18, 2004, Kodak repeated its request that Ampex provide the basis for its claim of infringement.  *See* Letter from Crocker to Talcott of 6/18/04, at B – 4.  Once again, however, Ampex did not respond. Indeed, Ampex never responded to Kodak's request and never provided a basis for its licensing demand.

In August 2004, over two months before any litigation had been filed, Kodak retained the law firm Roylance, Abrams, Berdo and Goodman LLP ("Roylance") and requested a further opinion on the issue of whether Kodak's digital cameras infringed the '121 patent.  In November 2004, Roylance provided Kodak with an oral opinion that its digital cameras did not infringe.  *See* B – 273.  In September 2005, it provided its formal written opinion that the accused cameras did not infringe.  *Id.*

## II. Ampex First Filed Suit In The International Trade Commission Where Damages And Willfulness Were Not At Issue.

On October 21, 2004, Ampex filed suit against the Defendants in the International Trade Commission ("ITC") asserting infringement of the '121 patent.  On the same date, Ampex also filed this action but it was stayed pending resolution of the ITC investigation. The ITC is statutorily permitted to grant only injunctive relief so neither Ampex's claim for damages nor its assertion of willful infringement was at issue during the ITC action.

On July 29, 2005, after nine months of extensive litigation, on the eve of trial, and only *after receiving Defendants' direct trial testimony on issues of noninfringement and invalidity,*

Ampex moved to withdraw its complaint in the ITC action. *See* Complainant Ampex

Corporation's Motion to Withdraw the Complaint and to Terminate the Investigation and to

Shorten Time for Response, 7/29/05 at B – 5. As a result, on August 23, 2005, Ampex's

complaint was dismissed. *See* D.I. 31.

    With the dismissal of Ampex's ITC complaint, the stay was lifted and this action was

commenced. Two weeks later, on September 2, 2005, Roylance provided Defendants with a

formal written opinion that the Defendants' digital cameras do not infringe the '121 patent.

*See* Letter from Torgovitsky to Crocker of 9/2/05, at B – 16, 171. On September 22, 2005,

Defendants answered Ampex's complaints in this action. *See* D.I. 41 and 42.

**ARGUMENT**

**I.      The Federal Circuit's *EchoStar* Opinion Does Not Address The Unique
Considerations Associated With The Waiver Of Trial Counsel Privilege.**

**A.      The Waiver As It Applies To Trial Counsel Has Traditionally Been
Strictly Limited.**

    Courts recognize that there is a unique relationship between trial counsel and client.

*See, e.g., Collaboration Props., Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 476 (N.D. Cal. 2004)

(communications between client and trial counsel "lie at the core of what is protected by the

attorney-client privilege."). As a result, in the context of willful infringement, where

defendants waive the attorney client privilege to rely on the advice of opinion counsel, courts

have applied a different, and more limited, scope of waiver to a client's communications with

trial counsel than to those with opinion counsel.

    This jurisdiction has only waived the privilege between client and trial counsel where

trial counsel was either the same as opinion counsel or trial counsel was substantively

- 5 -

involved in the preparation of the opinion. *See Novartis Pharm. Corp. v. Eon Labs Mfg.*, 206 F.R.D. 396 (D. Del. 2002) (trial counsel same as opinion counsel); *Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307 (D. Del. 2000) (trial counsel substantively involved in preparation of opinion).

Other jurisdictions have also strictly limited the waiver as it applies to trial counsel. *See, e.g., Terra Novo, Inc. v. Golden Gate, Inc.*, No. C-03-2684, 2004 WL 2254559 (N.D. Cal. Oct. 1, 2004) (communications between trial counsel and client are outside of the scope of the waiver); *Douglas Press, Inc. v. Universal Mfg. Co.,* No. 01 C 2565, 2003 WL 21361731, at *3 (N.D. Ill. June 11, 2003) ("Based on Universal's representation that it is not relying on any opinions from [trial counsel] as part of its advice of counsel defense, Universal need not disclose any documents or other materials prepared by the firm."); *VLT, Inc. v. Artesyn Tech., Inc.*, 198 F. Supp. 2d 56 (D. Mass. 2002) (waiver of communications between client and trial counsel includes only those that are inconsistent with the opinion).

The rationale for these limitations on the waiver as it applies to trial counsel has been that waiver would "inappropriately chill communications between trial counsel and client and would impair trial counsel's ability to give the client candid advice regarding the merits of the case." *Motorola, Inc. v. Vosi Techs., Inc.,* No. 01 C 4182, 2002 WL 1917256, at *2 (N.D. Ill. Aug. 19, 2002) (trial counsel opinions outside the scope of the waiver).

> The question of whether a waiver extends to litigation counsel puts two important goals in competition: preventing unfairness resulting from the Defendant's use of the attorney-client privilege as both sword and shield, and preservation of the confidential relationship between client and counsel. *After litigation has commenced, the dangers inherent in invading the confidentiality of the attorney-client privilege are magnified.*

*Terra Novo, Inc.,* 2004 WL 2254559, at *3 (emphasis added).

**B.     Trial Counsel Privilege Was Not At Issue In *EchoStar*.**

Although the Federal Circuit's recent decision in *In re EchoStar* contains language that could be construed as adopting a broad waiver encompassing trial counsel communications, as even Ampex concedes, trial counsel communications were not at issue and the opinion does not address the unique considerations associated with waiver of the trial counsel privilege. *See* Ampex Motion, D.I. 275, at 5.

In *EchoStar*, the defendant obtained opinions of counsel from an in-house lawyer and two separate outside firms acting as opinion counsel. *See Tivo Inc. v. EchoStar Commc'ns Corp.,* No. 2:04-CV-1 (E.D. Tex. Sept. 26, 2005), at B – 228-29.   The defendant attempted to rely upon the opinion received from in-house counsel while not waiving the privilege as to the communications with the two outside opinion counsel firms. *See id.*; *see also In re EchoStar Commc'ns Corp.*, Misc. Nos. 803, 805, 2006 WL 1149528, at *3 (Fed. Cir. May 1, 2006).  The plaintiff moved to compel discovery of communications with opinion counsel.  Communications with trial counsel were not at issue. *See* 5/25/06 Docket Report, *Tivo Inc. v. EchoStar Commc'ns Corp.,* No. 2:04-CV-1, at B – 296-308 (listing attorneys of record).

The District Court, noting that the scope of the waiver has not been well-defined, held that the waiver "extends to all pre- and post-filing communications *pertaining to advice of counsel* on the issue of [defendant's] potential infringement . . ." *Tivo*, No. 2:04-CV-1 at 14 (emphasis added).  The District Court ordered the defendant to produce its communications with the two outside opinion counsel firms. *Id.*  The Court did *not* order the defendant to produce communications with trial counsel. *Id.*

On appeal, the Federal Circuit affirmed the district court's decision requiring communications with outside opinion counsel to be produced. *See EchoStar*, 2006 WL 1149528, at *3 ("Thus, when EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel, which would include communications with Merchant & Gould."). Although the Court's broad statements could be interpreted to encompass trial counsel communications, the Court's actual order only addressed communications with Merchant & Gould, outside *opinion* counsel. *See id.* at *9 ("TiVo is entitled to discovery of Merchant & Gould documents consistent with, and in the manner set forth in, this opinion."). Communications with trial counsel, Morrison & Foerster, were never at issue. *See* Docket Report for *Tivo Inc. v. EchoStar Commc'ns Corp.,* No. 2:04-CV-1, at B – 296-308.

District court decisions preceding *EchoStar* had carefully attempted to balance the need for confidentiality between trial counsel and client with the need for an appropriate scope of waiver. *See, e.g. Terra Novo,* 2004 WL 2254559, at *3. The Federal Circuit's *EchoStar* opinion does not address the unique considerations of the waiver as it applies to trial counsel.

## II.  *EchoStar* Does Not Compel The Production Of *All* Communications Between Trial Counsel And The Defendants Relating In Any Way To Infringement.

Ampex's assertion that *EchoStar* justifies the production of all communications with trial counsel relating in any way to infringement -- *even draft interrogatory responses prepared during the ITC action (see* Ampex Motion, D.I. 275, at 10 n.3) -- is not supported by even a broad reading of the Federal Circuit's opinion.

In its opinion, the Federal Circuit excluded from the scope of the waiver day-to-day communications regarding the prosecution and strategy of litigation: "By asserting the advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or her attorney do not give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *See EchoStar*, 2006 WL 1149528, at *7.

The Court suggested instead that the waiver is limited to communications rising to the level of "a traditional opinion letter." *See id.* at *6 ("documents that embody a communication between the attorney and client concerning the subject matter of the case, *such as a traditional opinion letter*" are within the scope of the waiver) (emphasis added). "The overarching goal of waiver in such a case is to prevent a party from using the advice he received as both a sword, by waiving privilege to *favorable advice*, and a shield, by asserting privilege to *unfavorable advice*." *See id.* at *7 (emphasis added). The Court's analysis was therefore focused on ensuring that *advice* on the subject matter at issue -- such as traditional opinion letters -- could not be selectively produced.

At the May 11, 2006 hearing on this issue, Ampex highlighted the Federal Circuit's language on page 4 of its opinion that a defendant "waives the attorney-client privilege as to *all such communications* regarding the same subject matter." *See id.* at *4 (emphasis added); *see* Conf. Tran., D.I. 272, at 5-6. This Court correctly noted that the meaning of that statement turns on the question of what the Federal Circuit intended to reference by the phrase "all such communications." *See* Conf. Tran., D.I. 272, at 12-14. A full review of the surrounding language demonstrates that the Court intended the waiver to extend only to opinion-like communications constituting "favorable" or "unfavorable" advice:

> However, selective waiver of the privilege may lead to the inequitable
> result that the waiving party could waive its privilege *for favorable*
> *advice* while asserting its privilege on *unfavorable advice*. In such a
> case, the party uses the attorney-client privilege as both a sword and a
> shield. To prevent such abuses, we recognize that when a party
> defends its actions by disclosing an attorney-client communication, it
> waives the attorney-client privilege as to all such communications
> regarding the same subject matter.

*EchoStar*, 2006 WL 1149528, at *4 (citations omitted) (emphasis added). The Court did

not intend for day-to-day communications relating to litigation strategy -- though they

might relate to issues of infringement -- to be encompassed within the waiver.

Ampex's suggestion that its broad reading of *EchoStar* is simply a ratification of

preexisting district court precedent is misplaced. In fact, the principal district court case relied

upon by Ampex for the proposition that the waiver should extend to trial counsel, and which,

as Ampex notes, was also cited by the Federal Circuit in *EchoStar*, specifically stated that the

subject matter waiver extends to "*all opinions*":

> Subject matter waiver does not mean all opinions as to all possible
> defenses, but does mean all ***opinions*** of the specific issue of advice
> asserted as a defense to willfulness, be it infringement, validity,
> enforcement, or a combination. . . . Therefore, all ***opinions*** received
> by the client relating to infringement must be revealed . . .

*Akeva L.L.C. v. Mizuno Corp.,* 243 F. Supp. 2d 418, 422-23 (M.D.N.C. 2003) (emphasis

added).

To the extent that *EchoStar* is interpreted to extend the waiver to trial counsel

communications, therefore, the Federal Circuit's opinion should be read to extend the waiver

only to those communications in which the client actually received favorable or unfavorable

advice with respect to the plaintiff's ultimate allegations, such as in a traditional opinion letter.

III.    **Only Documents Rising To The Level Of An Opinion Are Potentially Relevant To The Defendants' State Of Mind.**

The determination of willful infringement turns on the alleged infringer's state of mind with respect to whether it was infringing a valid and enforceable patent. *See, e.g., Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996). Courts, including the Federal Circuit in *EchoStar*, have consistently held that the waiver extends only so far as it bears on the alleged infringer's state of mind. *See, e.g., EchoStar*, 2006 WL 1149528, at *7 ("Work-Product waiver extends only so far as to inform the court of the infringer's state of mind."); *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 363 (D. Mass. 1995) ("[W]hen a party is charged with willful infringement, what is relevant is that party's state of mind during the time when it is taking actions which allegedly infringe the patent.").

Only communications rising to the level of "favorable" and "unfavorable" advice on the ultimate issue of liability are potentially relevant to the defendant's state of mind. That is, if an attorney gives the defendant an opinion regarding whether the defendant's activities infringe, that opinion would arguably be relevant to the question of whether the defendant believed its activities were infringing. *See, e.g. Micron Separations*, 159 F.R.D. at 363 ("Thus, if MSI received an *opinion of counsel* subsequent to Attorney Jacobs' opinion which contradicted it, i.e., concluded that the product did infringe the Pall patent, and MSI continued to market its product, it can hardly be argued that a finder of fact could not find that its actions after receiving the later opinion constituted willful infringement.") (emphasis added).

Conversely, communications relating only to the prosecution of a litigation -- addressing, for example, what discovery needs to be produced, what arguments will be most effective before a jury, and how arguments should be presented in a brief -- relate to litigation

- 11 -

strategy and therefore have virtually no bearing on the defendant's state of mind with respect to the ultimate issue of liability. A waiver can only be justified, therefore, with respect to communications, such as opinions, that relate to the ultimate question of liability.

The principle underlying the determination of the appropriate scope of waiver is that a litigant should not be able to use the attorney-client privilege as a sword and a shield. *See, e.g., EchoStar*, 2006 WL 1149528, at *7 ("The overarching goal of waiver in such a case is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice."). That principle is only implicated where a defendant selectively produces favorable and unfavorable advice on the ultimate issue. *See, e.g., Micron Separations,* 159 F.R.D. at 365 ("A party claiming good faith reliance upon legal advice could produce three opinions of counsel approving conduct at issue in a law suit and withhold a dozen or more expressing grave reservations over its legality. Preservation of privilege in such a case is simply not worth the damage done to the truth."). It is not implicated when the defendant is permitted to preserve the privilege with respect to day-to-day communications regarding the prosecution of a litigation. *See Collaboration Props.*, 224 F.R.D. at 476-77.

> Waiver of the attorney-client privilege and work product doctrine in the context [of litigation-related communications] not only strikes at the core of these privileges, but it also seems far afield from the central (though not sole) purpose of the implied waiver doctrine--to ensure as a matter of fairness that the defendant not be permitted to assert reliance on advantageous advice obtained from opinion counsel while shielding from discovery contradictory or adverse information received in connection with that advice.

*Id.* at 477.

Ampex argues that such a distinction would permit trial counsel to communicate a fact or argument inconsistent with the formal opinion of counsel yet protect such a communication by not making it in the context of an "opinion." Ampex's apparent concern is misplaced. To the extent a communication undercuts the very basis for the formal opinion, such a communication would rise to the level of an opinion, regardless of its characterization. In this case, for instance, Roylance offers the independent opinion that the accused digital cameras do not infringe because they do not store the same image data on disk that is initially captured in the cameras' temporary storage. Instead, the cameras store only data that has been newly generated through an extensive series of image processing steps. *See* B – 19-20. If trial counsel communicated to Defendants that in fact the cameras did store the initially captured data, contradicting the very basis for the Roylance opinion, that would rise to the level of an opinion.

Ampex next argues that making distinctions between opinion and non-opinion like communications would be unworkable. Making such distinctions, however, is no different from what Courts and attorneys do on a regular basis. Attorneys -- including Ampex's attorney's in this case -- routinely make privilege and relevance determinations. Once the Court makes a ruling as to the categories of documents, if any, that should be produced, Defendants can determine what documents are relevant to those categories. Defendants are also willing to submit any close calls to the Court for *in camera* review.

## IV.    The Broad Waiver Ampex Seeks Would Have Extraordinary And Adverse Consequences In This Case And Beyond.

Ampex argues that it is entitled to *all* communications between trial counsel and client, relating in *any way* to the issue of infringement, for as long as the alleged infringement

continues. *See, e.g.,* Ampex Motion, D.I. 275, at 7. Such a waiver would have extraordinarily adverse consequences in this litigation and beyond.

First, Ampex's proposed waiver would force defendants (in this case and others) to produce all trial counsel communications relating to infringement leading up to and through trial. By Ampex's rationale, the waiver would even extend *to communications between trial counsel and client made during trial, such as those made in preparation of client witnesses.* *See* Ampex Motion, D.I. 275, at 11 ("which could include trial in some cases"). Ampex makes no attempt to defend its underlying rationale. Instead, Ampex asserts that communications made during trial are not an issue in *this case* because of the fortuity that the asserted patent expired in April 2006 (and therefore there can be no ongoing infringement or reliance). *See* Ampex Motion, D.I. 275, at 8, 11. Even that, however, is incorrect. Ampex dropped its complaint in the ITC after the parties had submitted written direct trial testimony and only weeks before the actual hearing was to begin. As a result, under Ampex's proposed waiver, Ampex seeks access to Defendants' communications made in preparation of Defendants' direct trial testimony and for the ITC hearing.

Second, Ampex's proposed waiver would give plaintiffs the unfair advantage of having a roadmap to defendants' litigation and trial strategy. Recognizing the extraordinary implications of compelling such a production, Ampex baldly asserts that in this case most communications relating to "trial tactics, witness selections, and drafting of discovery responses" will "*not relate to . . . infringement.*" Ampex Motion, D.I. 275, at 9 (emphasis added). There is no basis for such an assertion. This is a patent infringement action -- *most* of trial counsel's discussions with Defendants relating to litigation strategy *will* invariably relate

- 14 -

in some way to issues of noninfringement. Indeed, Ampex confirms as much by reaffirming on the very next page that its proposed waiver would cover *even draft interrogatory responses.* Giving plaintiffs access to such communications would convey a significant yet unwarranted advantage. *See Chimie v. PPG Indust., Inc.*, 218 F.R.D. 416, 420 (D. Del. 2003) (noting "the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases") (citing *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 94 (3d Cir. 1992)).

Third, Ampex's proposed waiver would destroy a defendant's ability to communicate with trial counsel. Knowing that all communications with trial counsel relating in any way to infringement would be discoverable by plaintiffs, defendants would be forced to simply cease all such communications. *See Sharper Image Corp. v. Honeywell Int'l, Inc.*, 222 F.R.D. 621, 636-37 (N.D. Cal. 2004) ("[T]here is a considerable risk that a defendant in these kinds of cases who could not have a confidential relationship with its lead trial counsel would be at a significant disadvantage.").

> In some circumstances, *the magnitude of that disadvantage could threaten basic due process (fairness) values and could dislodge essential underpinnings of the adversary system*.")

*Sharper Image*, 222 F.R.D. at 636-37 (emphasis added).

Finally, Ampex's proposed waiver would give plaintiffs an extreme and unwarranted strategic advantage in patent litigation. As long as defendants have an affirmative duty to show that they are not willfully infringing patents, there will be cases in which the most effective defense to a charge of willfulness is an opinion of counsel. In such cases, by simply making an allegation of willfulness, the plaintiff could force a defendant to choose between its

most effective defense or producing to plaintiffs all communications relating to infringement

trial strategy.  In effect, Ampex's proposed waiver would therefore eliminate advice of

counsel as a viable defense to willfulness.  *See Sharper Image*, 222 F.R.D. at 636-37.

> Fear of conferring such an advantage on an opponent might lead defendants to conclude that the risks that accompany an invocation of the advice of counsel defense exceed the risks of not invoking that defense.  Thus, courts that insisted on *imposing very broad waivers would risk forcing defendants to choose between two potentially significant unfairnesses:  (1) losing the confidentiality of the relationship with trial counsel that her opponent (often a competitor) would continue to enjoy, or (2) losing the ability to present the most effective defense to a claim of willfulness (sophisticated advice of counsel).*

*Id.* (emphasis added).

Unable to justify the consequences of such a broad waiver, Ampex argues that

defendants in this case brought any such burdens upon themselves by "obtaining and relying

on an opinion of counsel long after the commencement of litigation."  *See* Ampex Motion,

D.I. 275, at 8.  Ampex is wrong as a matter of fact and law.

As an initial matter, Kodak first obtained an opinion from in-house counsel in 2001,

*three years before any litigation was filed,* when Ampex first notified it of its infringement

allegations.  *See* B – 272.  Kodak requested a further opinion from the Roylance firm in

August 2004, two months before either this or the ITC litigation was filed.  *See* B – 273.

Kodak received oral noninfringement opinions from Roylance in November 2004.  *Id.*

Defendants received the formal written Roylance opinion on September 2, 2005, only weeks

after the stay in this case was lifted and twenty days before they answered Ampex's complaint.

*Id.*

Ampex's assertion is also inconsistent with *EchoStar* and preexisting district court cases. In *EchoStar,* as Ampex itself asserts, the Federal Circuit noted that there is no principled distinction between "advice" given before litigation was filed and that received after litigation was filed. *EchoStar*, 2006 WL 1149528, at *6 n.4; *see also, e.g., VLT*, 198 F. Supp. 2d 56 (waiver included only to the date of the last opinion where opinion received after the complaint was filed); *Collaboration Props.*, 224 F.R.D. 473 (waiver did not extend to trial counsel communications where opinion was received after the complaint was filed). There is therefore no basis to punish Defendants for the fact that they received the formal written opinion from the Roylance firm on September 2, 2005, two weeks after the stay in this case was lifted.[2]

Ampex makes no attempt to articulate a principled basis for its proposed waiver, even admitting that it "takes no position" on whether litigants should be entitled to the "extraordinary discovery" that would necessary follow. *See* Ampex Motion, D.I. 275, at 11, 12. Ampex's only guiding principle appears to be obtaining the broadest possible waiver in

---

[2]    Ampex's repeated assertions regarding Defendants' alleged tardiness in producing its opinions of counsel are particularly brazen in light of Ampex's discovery practices in this case: (1) on April 1, 2006, a month after close of fact discovery, Ampex produced for the first time *eight hundred boxes of documents* for inspection, *see* Letter from Beamer to Summersgill of 3/31/06, at B – 294; (2) Ampex has produced documents on fifteen separate occasions since the close of fact discovery, even producing documents as recently as May 18, 2006, *after the initial deadline for filing summary judgment briefs*; and (3) Ampex has produced multiple documents relied upon by its experts in their reports both after the reports were served and after the close of fact discovery. *See* Ampex production letters dated 3/2/06 through 5/18/06, at B – 277-93. To the extent any party ought to be foreclosed from presenting evidence due to tardiness, it is Ampex.

order to obtain strategic litigation advantage. That was not the point of *EchoStar*, is not the law, and should not be permitted in this case.[3]

## V.     Ampex Is Not Entitled To A Privilege Log Separately Listing All Trial Counsel Communications And Work Product That Fall Outside The Scope Of The Waiver.

Ampex also moves to compel Defendants to produce a privilege log listing all trial counsel communications and work product that Defendants contend fall outside the scope of the waiver. The Defendants have already served a privilege log that includes communications between trial counsel and Kodak that occurred prior to the filing of the ITC investigation. Defendants do not believe that the production of an additional log listing all other trial counsel communications is warranted because it would inevitably reveal trial strategy, it is not necessary to assess Defendants' privilege claims, and it would be extraordinarily burdensome to do so.

First, Defendants cannot realistically produce a privilege log to show that the privileged contents of trial counsel documents do not relate to a particular subject matter without actually revealing the contents of the privileged communications. *VLT*, 198 F. Supp. 2d at 59.

> In such cases involving the scope of a subject matter waiver, it may be difficult if not impossible for the party asserting the privilege to 'describe the nature of the documents. . . in a manner that, without

---

[3]     Ampex offers in a footnote to drop its willfulness allegation for the period after September 2, 2005 if Defendants agree to not rely on the Roylance opinion. *See* Ampex Motion, D.I. 275, at 7 n.2. As an initial matter, Ampex's offer confuses the issue of liability for willful infringement with the issue of enhancement. Only liability for willfulness is at issue at this time and there is no basis for breaking such an inquiry into periods of time. In any event, particularly since the privilege as to the Roylance opinion has already been waived, Defendants believe the jury is entitled to know that Kodak obtained the opinion as part of its efforts to ensure it was not violating any intellectual property rights.

> revealing the information itself privileged or protected, will enable
> other parties to assess the applicability of the privilege or
> protection.'. . . How can one show that the privileged contents of a
> document do not relate to a certain subject matter without revealing
> the contents of what is contained in the documents?

*Id.* Ampex misses the distinction between a log for establishing whether certain documents are privileged (which requires an identification of authors, recipients, and general subject matter) and a log for determining whether certain indisputably privileged documents fall within the scope of a waiver (which requires a review of the contents of the privileged communication). The latter, which Ampex requests here, would necessarily reveal the contents of the privileged communications. Indeed, even without revealing the privileged contents of trial counsel communications, providing merely the date and subject matter of *all* trial counsel communications with Defendants would provide a roadmap to Defendants' trial strategy.

Second, a detailed log is not necessary to assess Defendants' privilege claims. Instead, once the Court determines the categories of documents that must be produced (if any), Defendants can simply produce the documents that fall into those categories. *See Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1190 (E.D. Cal. 2001) ("If the documents fall without the court's directive [as to scope of waiver], no identification [in a log] need be made because they are not relevant to the advice of counsel inquiry."); *Caliper Tech. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 563 (N.D. Cal. 2003) (in lieu of a privilege log that could itself reveal privileged information, the withholding party may describe the documents categorically).

Finally, to require a privilege log listing *every single trial counsel communication with Defendants* would impose a significant yet unwarranted burden on Defendants. *See, e.g. Imperial Corp. of America v. Sheilds*, 174 F.R.D. 475, 479 (S.D. Cal. 1997) (document-by-document privilege log not required because the large volume of documents to be logged would make the task overly burdensome).

## CONCLUSION

Ampex's attempt to obtain strategic advantage by imposing a broad waiver of the attorney client privilege is neither supported by the facts nor the law. Defendants respectfully request that Ampex's Motion to Compel be denied.

PRICKETT, JONES & ELLIOTT, P.A.,

PAUL M. LUKOFF (I.D. #96)
DAVID E. BRAND (I.D. #201)
1310 King Street
P. O. Box 1328
Wilmington, DE 19899
Tel. 302.888.6500
Fax: 302.888.6331
*Attorneys for Defendants*

OF COUNSEL:
William F. Lee
Donald R. Steinberg
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Rebecca M. McCloskey
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800

- 20 -

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2006, I electronically filed the following document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

**PUBLIC VERSION OF DEFENDANTS' ANSWERING BRIEF
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

I hereby certify that on June 2, 2006, I have forwarded the above-noted document to the following as noted below:

**VIA E-MAIL**

Jesse J. Jenner, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

**VIA E-MAIL & FEDERAL EXPRESS**

Norman H. Beamer, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301

**VIA E-MAIL**

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

**VIA E-MAIL & HAND DELIVERY**

Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

PAUL M. LUKOFF (Bar I.D. #96)
DAVID E. BRAND (Bar I.D. #201)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE  19899-1328
TEL: 302-888-6500
E-MAIL:  PMLukoff@prickett.com
              DEBrand@prickett.com