VOLUME 41          SUMMER 2004          NUMBER 2



# HOUSTON LAW REVIEW

UNDERSTANDING AND ADDRESSING THE
UNFAIR DILEMMA CREATED BY THE
DOCTRINE OF WILLFUL PATENT
INFRINGEMENT

*William F. Lee & Lawrence P. Cogswell, III*

COPYRIGHT 2004          BY THE HOUSTON LAW REVIEW

# ARTICLE

—

# UNDERSTANDING AND ADDRESSING THE UNFAIR DILEMMA CREATED BY THE DOCTRINE OF WILLFUL PATENT INFRINGEMENT

*William F. Lee\* & Lawrence P. Cogswell, III\*\**

### TABLE OF CONTENTS

I.  INTRODUCTION .......................................................................... 395

II. THE LAW OF WILLFUL PATENT INFRINGEMENT ......................... 396
    A.  *Willfulness Generally* ....................................................... 397
        1.  *The Requirement of Culpability* ................................. 397
        2.  *Vagueness About the Requisite Degree*
            *of Culpability* ............................................................ 398
    B.  *Assessing Culpability for Willful Infringement:*
        *A Conceptual Framework* ............................................... 399
        1.  *Culpability Generally* ............................................... 399
        2.  *Willful Infringement: Elementary*
            *Considerations* .......................................................... 400
    C.  *Federal Circuit Caselaw: Factors Determining*
        *Willfulness* ..................................................................... 401
        1.  *Copying* ..................................................................... 405
        2.  *Closeness of the Case* ................................................ 406

    \*   Managing Partner, Hale and Dorr, LLP. A.B., *magna cum laude*, Harvard College, 1972. M.B.A., *with distinction*, Cornell Business School, 1976. J.D., *magna cum laude*, Cornell Law School, 1976. Mr. Lee has served as the John A. Reilly Visiting Professor at Harvard Law School. The views expressed herein are solely those of the Authors.
    \*\*   Summer Associate, Hale and Dorr, LLP, Boston Office, 2003. B.S., *summa cum laude*, Chemistry, Duke University, 1994. A.M., Chemistry, Harvard University, 1997. Ph.D., Biophysics, Harvard University, 2002. J.D. expected 2005, Yale Law School.

3.  Reliance on Competent Opinion of Counsel: The
    Special Duty of Those Having Actual Notice of
    Another's Patent Rights............................................407
4.  No General Duty to Investigate Whether a
    Product Is Patented ................................................420
5.  The Uncertain Future of the Adverse Inference
    and Affirmative Duty Rules ....................................421
D.  Awarding Damages ............................................................422

III.  MUST "WILLFUL INFRINGEMENT" BE DELIBERATE? .................424
A.  Three Approaches ..............................................................424
    1.  The Subjective Approach............................................424
    2.  The Objective Approach..............................................425
    3.  Other Formulations....................................................429
B.  The Consequences of an Ambiguous Standard
    of Intent .............................................................................430

IV.  THE EMERGENCE OF A DILEMMA..............................................432

V.  RECOGNIZING UNFAIRNESS IN THE
    "INFRINGER'S DILEMMA"..........................................................434
A.  The Uncertain Scope of the Waiver of Privilege and
    Immunity Makes an Informed Decision Difficult............434
    1.  Uncertain Temporal Scope of Waiver ........................434
    2.  Uncertain Scope of Waiver of Attorney-Client
        Privilege and Work Product Immunity ....................436
    3.  The Broad Waiver Position. ......................................438
    4.  The Narrow Waiver Position. ....................................445
B.  An Unfair Affirmative Duty Rule Places Many
    Infringers in the Dilemma Unnecessarily..........................448
C.  The Adverse Inference Rule Unjustifiably
    Increases the Severity of the Dilemma ..............................449
D.  Determining the Issues of Infringement and Willful
    Infringement in the Same Trial Unnecessarily
    Increases the Severity of the Dilemma ..............................450

VI.  ADDRESSING THE UNFAIRNESS OF THE CURRENT
    INFRINGER'S DILEMMA..............................................................451
A.  Addressing the Uncertain Scope of the Waiver................451
    1.  The Need for Federal Circuit Action ........................451
    2.  Proposed Guiding Principles in the Interim ............452
B.  Modifying the Affirmative Duty Rule................................455
C.  Eliminating the Adverse Inference ..................................456
D.  Bifurcating Trials..............................................................456

VII.  CONCLUSION............................................................................457

## I.  INTRODUCTION

No substantive doctrine in patent law creates greater risks and more difficult decisions than the concept of willful infringement. Consider these all too common, real life situations:

> You are the general counsel of an emerging technology company. You learn that one of your engineers, who is tasked with developing the company's newest products, has reviewed the patent portfolio of your closest competitor. The engineer has reviewed 1250 patents in total and, without consulting any file histories, concluded that the patents pose no problems. No outside counsel has been consulted and no opinions have been obtained. The product will be announced and released in two weeks.

> You are trial counsel and have been retained to represent a defendant charged with patent infringement. The defendant has known of the patent for three years, and its technical personnel have expressed concern to the company's general counsel. Nevertheless, no opinion has been obtained, and the allegedly infringing product has been on the market for two years.

> You are trial counsel and have been asked to represent a defendant charged with patent infringement. The product has just been released to the market, and the defendant was not on notice of the patent in issue until the lawsuit was filed. A separate firm has been retained and is preparing an opinion. You have been given a draft that is both factually and legally incorrect.

> Once again you are trial counsel, but this time there is an opinion that is provided to you. It is a favorable opinion that is competent and well reasoned. After reviewing the opinion, you decide to waive the attorney-client privilege and produce the opinion. You learn, however, that the vice president of research and development and the chief patent counsel have previously had an e-mail exchange that not only reaches a different conclusion from the opinion, but also contradicts the very arguments you think are the foundation of your noninfringement defense.

Each of these situations and many more like them result from the dilemma created by the law of willful infringement as it exists today. Parts II and III of this Article review the law as it exists today. Parts IV and V then discuss the very real dilemma that the law creates, and Part VI proposes modifications to allow

the law of willful infringement to achieve its intended purpose without creating unnecessary complications.

## II. THE LAW OF WILLFUL PATENT INFRINGEMENT

One who willfully infringes the patent rights of another may be liable for up to three times the amount of compensatory damages.[1] In addition, a finding of willful infringement may lead the court to award attorney fees.[2] Given the low burden of production required to support a complaint of willful infringement, allegations of willfulness are common in infringement cases.[3] The Court of Appeals for the Federal Circuit ("Federal Circuit") has made clear that enhanced damages are punitive in nature and intended to deter only intentional infringement.[4] Thus, it is inappropriate for a court to award enhanced damages solely to supplement a compensatory award it deems to be too meager[5] or to punish the infringer for vexatious litigation tactics or bad faith acts unrelated to the infringement itself.[6] Where willfulness has

---

1.   35 U.S.C. § 284 (2003) (providing that in a patent infringement case, the court may enter a judgment for the defendant in an amount not to exceed three times the compensatory damages). Although § 284 does not state when an increase is appropriate, it is well established that a finding of willful infringement is a sufficient basis for doing so. *See, e.g.*, Johns Hopkins Univ. v. CellPro, Inc., 152 F.3d 1342, 1364 (Fed. Cir. 1998); Ryco, Inc. v. Ag-Bag Corp., 857 F.2d 1418, 1429 (Fed. Cir. 1988).

2.   35 U.S.C. § 285 (allowing for the award of attorney fees in "exceptional cases"). While § 285 does not define this term, the Federal Circuit has noted that willful infringement may make a case exceptional. Modine Mfg. Co. v. Allen Group, Inc., 917 F.2d 538, 543 (Fed. Cir. 1990) ("An express finding of willful infringement is a sufficient basis for classifying a case as 'exceptional,' and indeed, when a trial court denies attorney fees in spite of a finding of willful infringement, the court must explain why the case is not 'exceptional' within the meaning of the statute."). In *Tate Access Floors, Inc. v. Maxcess Technologies, Inc.*, 222 F.3d 958, 972 (Fed. Cir. 2000), the Federal Circuit held that the district court abused its discretion in summarily denying attorney fees and increased damages against an infringer whom the jury found had acted willfully.

3.   The Authors are not aware of a single case in which a plaintiff has suffered Rule 11 sanctions for bringing a meritless claim of willful infringement.

4.   *See* Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996) ("Because increased damages are punitive, the requisite conduct for imposing them must include some degree of culpability."); Beatrice Foods Co. v. New England Printing & Lithographing Co., 923 F.2d 1576, 1579 (Fed. Cir. 1991) ("[E]nhanced damages may be awarded only as a penalty for an infringer's increased culpability, namely willful infringement or bad faith."); Mathis v. Spears, 857 F.2d 749, 754 (Fed. Cir. 1988) (stating that enhanced damages are intended to deter "blatant, blind, willful infringement" of patents).

5.   *Beatrice Foods Co.*, 923 F.2d at 1579 ("Damages cannot be enhanced to award the patentee additional compensation to rectify what the district court views as an inadequacy in the actual damages awarded.").

6.   Confusion exists over whether the court may award enhanced damages solely on the basis of the defendant's displaying "bad faith." The confusion has resulted largely from the many different contexts in which the term "bad faith" has been used. *See, e.g.*,

been found, however, an award of enhanced damages may properly account for equitable concerns.[7]

## A. Willfulness Generally

*1. The Requirement of Culpability.* The law requires that a potential infringer conduct himself prudently and ethically in both his legal and his commercial dealings.[8] Unlike the underlying tort of infringement, which requires neither a showing of intent nor culpability,[9] a finding of willful infringement requires something more, namely proof of negligent or intentional infringement.[10] The culpability requirement is

---

*Jurgens*, 80 F.3d at 1570 ("Bad faith is used, for example, in referring to . . . inequitable conduct during patent prosecution, bringing vexatious or unjustified suits, attorney or client misconduct during litigation, or unnecessarily prolonging litigation."). However, only bad faith infringement will allow the court to consider the possibility of enhancing damages, as the other types of bad faith "are not related to the underlying act of infringement and say nothing about the culpability of the infringer." *Id.*; *see also Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1580 (Fed. Cir. 1986) ("If infringement be accidental or innocent, increased damages are not awardable for the infringement."). Indeed, courts have other tools with which to punish other forms of bad faith. Refer to note 13 *infra*.

    7.    *See SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1468 (Fed. Cir. 1997) (stating that in addition to serving as a punishment for, and deterrent to, wrongdoing, enhancement of damages has the "secondary benefit of quantifying the equities as between patentee and infringer"); *Jurgens*, 80 F.3d at 1571 (noting that, while enhancement is not appropriate in the absence of bad faith infringement, "an infringer's inequitable conduct in prosecuting his own patents, or his egregious conduct in infringement litigation may . . . be used as a factor in determining whether or how much to increase a damages award once sufficient culpability is found"); *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986) ("The measure of damages, as indeed the assessment of attorney fees, provides an opportunity for the trial court to balance equitable concerns as it determines whether and how to recompense the successful litigant.").

    8.    *SRI Int'l, Inc.*, 127 F.3d at 1465 ("The law of willful infringement does not search for minimally tolerable behavior, but requires prudent, and ethical, legal and commercial actions.").

    9.    *See Jurgens*, 80 F.3d at 1570 n.2 ("Infringement itself, however, is a strict liability offense . . . and a court must award 'damages adequate to compensate for the infringement,' 35 U.S.C. § 284, regardless of the intent, culpability or motivation of the infringer."); *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1527 (Fed. Cir. 1995) ("Infringement is, and should remain, a strict liability offense."). "Accidental or 'innocent' infringement is still infringement. Intent becomes a requirement only if and when the patent owner seeks enhanced damages or attorney fees for willful infringement under 35 U.S.C. §§ 284–285." *Id.* at 1523; *see also King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867 (Fed. Cir. 1985) (stating that while defendant's reasonable belief that its activities fell within its own patent claims is irrelevant in an infringement analysis, it is a factor in determining intent with respect to willful infringement).

    10.    *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1309 (Fed. Cir. 2001) ("Whether an act is 'willful' is by definition a question of the actor's intent . . . ." (quoting *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990))); *Biotec Biologische Naturverpackungen GmbH & Co. v. Biocorp, Inc.*, 249 F.3d 1341, 1356 (Fed. Cir. 2001) (stating that a finding of willful action "depends on

sometimes referred to as the requirement of "bad faith," even though this term has numerous patent law applications and thus may be misleading.[11] It is clear that the type of bad faith relevant in determining the defendant's culpability must derive specifically from the defendant's infringing activities.[12] Thus, the defendant's bad faith as a litigant would not be relevant to a determination of culpability for willful patent infringement.[13]

   2.   *Vagueness About the Requisite Degree of Culpability.* Unfortunately, the degree of culpability required to establish "willful" infringement is less than clear.[14] Indeed, relatively early in its existence the Federal Circuit recognized in *Rite-Hite Corp. v. Kelley Co.*[15] that "willfulness, 'as in life, is not an all-or-nothing trait, but one of degree . . . [and] may range from unknowing, or accidental, to deliberate, or reckless, disregard of a patentee's rights.'"[16] The court, however, has subsequently failed to make clear the precise level of culpability required to establish willful patent infringement.[17] Consequently, the name "willful infringement" is unfortunate in that it suggests a standard of culpability not always borne out by caselaw.

---

findings of culpable intent and deliberate or negligent wrongdoing"); *see also Jurgens*, 80 F.3d at 1570 ("Because increased damages are punitive, the requisite conduct for imposing them must include some degree of culpability. . . . An act of willful infringement satisfies this culpability requirement and is, without doubt, sufficient to meet the first requirement to increase a compensatory damages award.").

   11.   *See Jurgens*, 80 F.3d at 1570 ("The correlation between bad faith, willful infringement and increased damages, however, is sometimes misunderstood because the term 'bad faith' has numerous patent law applications. Only some of these are relevant in determining the predicate culpability for an increased damages award.").

   12.   Refer to note 6 *supra*.

   13.   Indeed, courts have other tools with which to punish conduct that, while egregious, does not derive from the nature of the underlying infringement, including Fed. R. Civ. P. 11, Fed. R. App. P. 38, and 28 U.S.C. § 1927 (2000). *See Jurgens*, 80 F.3d at 1570 n.3.

   14.   It should be noted at the outset that the name "willful infringement" is something of a misnomer, as willful infringement can sometimes be established without showing that the defendant deliberately infringed. Restated, some formulations of the willfulness standard appear to require no subjective inquiry into the alleged infringer's state of mind. Refer to Part III *infra*.

   15.   819 F.2d 1120 (Fed. Cir. 1987).

   16.   Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1190 (Fed. Cir. 1998) (quoting *Rite-Hite Corp.*, 819 F.2d at 1125–26).

   17.   In fact, the Federal Circuit has stated that the law does not seek to define minimally tolerable norms of behavior. Refer to note 8 *supra*.

## B. *Assessing Culpability for Willful Infringement: A Conceptual Framework*

*1. Culpability Generally.* Before addressing the Federal Circuit's treatment of willful infringement, a general reflection on the dimensions of culpability may be helpful. In assessing levels of "intent," it is useful to consider the behavior of the potential infringer with reference to that of an individual whom we, as a society, might hold morally blameless: the hypothetical "reasonable" infringer. Assume that before a reasonable potential infringer acts, he does as follows. First, he assesses the risks that his actions might infringe the patent rights of others—call this the objective risk of infringement. The reasonable potential infringer performs this risk assessment only after having acquired a reasonable knowledge of attendant circumstances. Second, having determined the risk of infringement, the reasonable potential infringer applies a rule of decision: if the risk is too great, he will refrain from acting.[18]

Now consider the manner in which the actions of a "real" potential infringer might deviate from those of his "reasonable" counterpart. First, the potential infringer may determine a risk of infringement—the "subjective risk" of infringement—that is not only lower than the objective risk, but lower to an unreasonable degree. The potential infringer's error could have derived either from a failure to acquire reasonable knowledge or from a failure of reasonable cognition. Second, the potential infringer, having determined a risk of infringement, may ignore the rational rule of decision and make the unreasonable decision to risk infringement.

The potential infringer's deviations from the "reasonable" decisionmaking process can give rise to various levels of culpability. First, a potential infringer may unreasonably underestimate the risk of infringement, yet faithfully apply the rule of decision to his underestimate. Such behavior may be described as *negligent*. If the underestimate of risk exceeds a certain threshold, perhaps the behavior may be considered grossly negligent. The reason for the "negligent" infringer's erroneous determination of subjective risk might stem from either (1) an awareness of a potential to infringe limited by an objective insufficiency of information-gathering efforts and/or reasonable cognition or (2) a failure to perceive a course of action's potential to infringe.

---

18.    A risk might be defined as "too great" if, for example, the expected harm of the contemplated act outweighs its social utility.

Second, a potential infringer may correctly assess the risk of infringement but decide to disregard the rule of decision, thereby imposing upon the patentee an unjustifiable risk of infringement, which subsequently materializes. Such an infringer is aware of a risk and unreasonably *chooses* to ignore it. If the ignored risk is that infringement is nearly certain to follow from a set of actions, then the infringer may be said to have acted *knowingly*. If the ignored risk is somewhat less, but still unjustifiable,[19] then the infringer may be said to have acted *recklessly*. Because the infringer's culpability has arisen from a conscious failure to regard a known risk in both instances, either course of conduct may be described as *willful*.[20] Unfortunately, it is difficult to reconcile the level of culpability required to sustain a charge of "willful patent infringement" with the logical meaning of the word.[21]

    2.  *Willful Infringement: Elementary Considerations.* Before turning to the Federal Circuit's multifactor test for determining willfulness, it is helpful to consider, *ab initio*, how a test for willful infringement might be logically structured. For example, one might view the risk of infringement as being determined by the product of three probability terms. First, there is the probability, from the perspective of the potential infringer that a patent has issued on a particular device. Second, there is the conditional probability, again from the perspective of the potential infringer, that if a patent has issued, the patent is both valid and enforceable. Third, there is the conditional probability that if the patent is valid and enforceable, the infringer's proposed acts would infringe the device's patent claims. Each of these three probabilities, in turn, might be estimated by looking to the presence or absence of various factors. Consider the deliberate copying of a device, for example.[22] Copying affects the value of the last of the three probability terms identified above: risk that a valid, enforceable claim is infringed. The value of the third term, and thus the overall risk of infringement, would be

---

    19.    The word "unjustifiable" is used here to make clear that even a reasonable infringer might take certain calculated risks.

    20.    Here I use the word "willful" in its ordinary sense, as it is used in other areas of law such as the Model Penal Code.

    21.    *Rite-Hite Corp.*, 819 F.2d at 1126 ("The term 'willfulness' thus reflects a threshold of culpability in the act of infringement that, alone or with other considerations of the particular case, contributes to the court's assessment of the consequences of patent infringement. . . . Whether or not 'willfulness' is found, the court has authority to consider the degree of culpability of the tortfeasor.").

    22.    We shall see that this is, indeed, one of the factors identified by the Federal Circuit in its test for willfulness. Refer to Part II.C.1 *infra*.

lower if the infringer had not copied, but rather, had independently developed the device.

Likewise, we can intuit factors that would inform us of the value of the other two probability terms. Consider the probability that a patent has issued on a device. If a potential infringer is aware that such a device had been marked with the words "Patent Pending" in the past, the likelihood that the product is currently patented might increase. Of course, the potential infringer may also have acquired actual knowledge of a patent's existence, in which case this probability term would be unity.[23] As for the remaining probability term, the probability that a given patent is valid and enforceable, an opinion of competent patent counsel might underlie a reasonable estimate of risk.

With these general notions of culpability in mind and with an understanding of factors that seem intuitively relevant to a willfulness determination, we now approach the Federal Circuit's treatment of the subject. First, we examine how courts have defined the factors that determine the risk of infringement. Second, we turn to a salient question in the field, namely whether the standard for willful infringement is objective or subjective. In other words, does "willful infringement" merely require a finding of negligence or "unreasonable" infringement, or must "willful" infringement be knowing or reckless?

## C. Federal Circuit Caselaw: Factors Determining Willfulness

What does the Federal Circuit define as a "culpably high" risk of infringement? Upon what factors has it proposed to make this determination? What information-gathering duties, if any, does the law require the potential infringer to perform before calculating a risk of infringement and deciding to act thereupon? In understanding the logic of the willfulness doctrine, it is helpful to note that not all information-gathering efforts are equally costly of the time and resources of the potential infringer. For example, it is considerably more costly for the potential infringer to obtain an opinion of counsel with respect to the validity, enforceability, or infringement of a potentially infringed patent than it is for him to merely determine whether a patent exists on the device that he has slavishly copied. Indeed, we shall see in the coming Parts that in the interests of efficiency, the law sometimes imposes not absolute but rather conditional investigative duties on the potential infringer—duties that are

---

23.  The actual awareness of the existence of a patent is an especially important factor in determining willfulness. Refer to Part II.C.3 *infra* (discussing the affirmative duty of care imposed on those having actual knowledge of another's patent rights).

*HOUSTON LAW REVIEW* [41:2

most exacting when the risk of infringement, based on available information, is the greatest.

It is important to note at the outset that the Federal Circuit has not articulated a clear, consistent standard of willful patent infringement. On the contrary, it is sometimes difficult to perceive themes of consistency running though the court's opinions. Indeed, as stated by the Federal Circuit in *Graco, Inc. v. Binks Manufacturing. Co.*,[24] "There are no hard and fast rules regarding a finding of willfulness."[25] Rather, a determination of willfulness is to be made by considering a number of factors that courts have articulated over the years.[26]

In the early case of *Bott v. Four Star Corp.*,[27] the Federal Circuit established factors that could support a finding of willfulness.[28] These factors include (1) whether the infringer deliberately copied[29] the patented invention, and (2) where the infringer had been aware of the existence of the infringed patent, whether the infringer failed to investigate its scope.[30] Previously in *Underwater Devices Inc. v. Morrison-Knudsen Co.*,[31] the Federal Circuit had established that where an infringer has actual knowledge of the patent, there exists a duty to "exercise

---

24. 60 F.3d 785 (Fed. Cir. 1995).

25. *Id.* at 792 (citing Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1110 (Fed. Cir. 1986); *accord* Spindelfabrik Suessen-Schurr Stahlecker & Grill GmBH v. Schubert & Salzer Maschinenfabrik AG, 829 F.2d 1075, 1084 n.13 (Fed. Cir. 1987).

26. *See* Read Corp. v. Portec, Inc., 970 F.2d 816, 826–28 (Fed. Cir. 1992) (enumerating factors relevant to the willfulness inquiry); *see also* Bott v. Four Star Corp., 807 F.2d 1567, 1572 (Fed. Cir. 1986).

27. 807 F.2d 1567 (Fed. Cir. 1986).

28. *Id.* at 1572.

29. *See Jurgens*, 80 F.3d at 1571 (noting that copying of an invention suggests that an infringer had acted willfully); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1582 (Fed. Cir. 1989) (stating that "copying is evidence of willful infringement" (citing Kaufman Co. v. Lantech, Inc., 807 F.2d 970, 978 (Fed. Cir. 1986)). *But see* Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1109–10 (Fed. Cir. 1986) (upholding a finding of nonwillfulness where copying was the inadvertent result of a defendant's good faith efforts to "design around" a known patent). Indeed, designing around known patents is one of the positive results of the patent system, because it results in a steady stream of innovations. *See Read Corp.*, 970 F.2d at 828 (noting that "one of the benefits of the patent system is the incentive it provides for designing around patented inventions, thus creating new innovations"); Westvaco Corp. v. Int'l Paper Co., 991 F.2d 735, 745 (Fed. Cir. 1993) ("Designing or inventing around patents to make new inventions is encouraged." (quoting London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538 (Fed. Cir. 1991))).

30. *Bott*, 807 F.2d at 1572.

> In determining whether an infringer acted in bad faith as to merit an increase in damages awarded against him, the court will consider the totality of the circumstances, including[, *inter alia*,] . . . whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed . . . .

*Id.* (citation omitted).

31. 717 F.2d 1380 (Fed. Cir. 1983).

due care to determine whether or not he is infringing."[32] This duty of due care imposes "the duty to seek and obtain competent legal advice" before engaging in activity that may result in infringement.[33] Where the infringer had actual knowledge of the patent, "bad faith" properly refers to an infringer's failure to meet his affirmative duty to use due care in avoiding infringement.[34]

Later, in *Read Corp. v. Portec, Inc.*,[35] the Federal Circuit articulated a more extensive list of factors relevant to the determination of willfulness:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; . . . (3) the infringer's behavior as a party to the litigation[;] . . . (4) [d]efendant's size and financial condition[;] (5) [c]loseness of the case[;] (6) [d]uration of defendant's misconduct[;] (7) [r]emedial action by the defendant[;] (8) [d]efendant's motivation for harm[; and] (9) [w]hether defendant attempted to conceal its misconduct.[36]

In all cases, willfulness is to be found by examining the infringer's behavior in light of the "totality of the circumstances."[37] Specifically, the district court "must look at

---

32. *Id.* at 1389. The affirmative duty of those having actual knowledge of patents is discussed in detail at Part II.C.3, *infra.*

33. *Id.* at 1390. Satisfaction of this duty is an important factor in willfulness determinations. *See, e.g.,* Vulcan Eng'g Co. v. FATA Aluminium, Inc., 278 F.3d 1366, 1378 (Fed. Cir. 2002) (explaining that the focus of a willfulness analysis is "generally on whether the infringer exercised due care to avoid infringement, usually by seeking the advice of . . . counsel, and receiving exculpatory advice").

34. *Jurgens,* 80 F.3d at 1572.

> [I]n the initial determination of culpability, and thus liability for increased damages, 'bad faith' properly refers to an infringer's failure to meet his affirmative duty to use due care in avoiding infringement of another's patent rights. If an infringer adequately performs this duty by determining that, for example, an asserted patent is invalid, that there is no infringement, or that his conduct is covered by licensing agreements, he will not be held liable for increased damages. Even if a party is subsequently found to be infringing another's patent despite its investigations, it will be liable only for compensatory damages, not increased damages, if it performed its affirmative duty in good faith.

*Id.* (citations omitted).

35. 970 F.2d 816 (Fed. Cir. 1992).

36. *Id.* at 826–27 (citations and internal quotation marks omitted).

37. *See, e.g.,* Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294, 1308 (Fed. Cir. 2001); Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1190 (Fed. Cir. 1998) (explaining that a determination of willfulness involves an evaluation of the "totality of the circumstances" and that willfulness may range from an unknowing or

exculpatory evidence as well as evidence tending to show deliberate disregard of [the patentee's] rights."[38] Although no single factor is dispositive, one particularly important factor is the affirmative duty to seek the advice of counsel,[39] as discussed above.[40] Finally, it is important to note that patent infringement is a continuing tort, and as such, the degree of the infringer's culpability may change over time with changing circumstances.[41]

The determination of willfulness is a finding of fact that must be proved by clear and convincing evidence[42] because "the boundary between unintentional and culpable acts is not always bright."[43] A finding of willfulness is reviewed only for clear error[44]—

---

accidental to a deliberate or reckless disregard of the patentee's rights); *Underwater Devices Inc.*, 717 F.2d at 1390 (deciding the issue of willfulness after considering the "totality of the circumstances presented").

38.    *Comark Communications, Inc.*, 156 F.3d at 1190; *accord* Am. Med. Sys., Inc. v. Med. Eng'g Corp., 6 F.3d 1523, 1530 (Fed. Cir. 1993) ("In making a determination of willfulness, the court is also required to consider mitigating or ameliorating factors.").

39.    *See, e.g., Comark Communications, Inc.*, 156 F.3d at 1191 ("It is well settled that an important factor in determining whether willful infringement has been shown is whether or not the infringer obtained the opinion of counsel."); Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992) ("[A]n opinion of counsel letter is an important factor in determining the willfulness of infringement. . . . ").

40.    Refer to note 33 *supra* and accompanying text.

41.    Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1221–22 (Fed. Cir. 1995) (stating that although an action may be innocently begun, it "does not automatically retain its purity as circumstances change").

42.    Tegal Corp. v. Tokyo Electron Am., Inc., 257 F.3d 1331, 1350–51 (Fed. Cir. 2001) (stating that willfulness "is a finding of fact, reviewable under the clearly erroneous standard"); Graco, Inc. v. Binks Mfg. Co., 60 F.3d 785, 792 (Fed. Cir. 2000) (same); Embrex, Inc. v. Serv. Eng'g Corp., 216 F.3d 1343, 1350 (Fed. Cir. 2000) (noting that willfulness must be proven by clear and convincing evidence).

43.    Georgia-Pacific Corp. v. United States Gypsum Co., 195 F.3d 1322, 1334 (Fed. Cir. 1999) (quoting *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221 (Fed. Cir. 1995), which offers the additional rationale that willfulness is a punitive finding that can result in the multiplication of damages).

44.    *See, e.g., Tegal Corp.*, 257 F.3d at 1350–51 (stating that a finding of willfulness is reviewable under the clearly erroneous standard); *Georgia-Pacific Corp.*, 195 F.3d at 1334 ("Because willfulness raises issues of reasonableness and prudence, and is often accompanied by questions of intent, belief, and credibility, appellate review requires appropriate deference to the special role of the trial court in making such determinations."); *Comark Communications, Inc.*, 156 F.3d at 1190 ("The correct legal standard . . . is whether, in light of all the evidence, there is substantial evidence to support the jury's finding of willfulness by clear and convincing evidence."); SRI Int'l, Inc. v. Advanced Tech. Labs., Inc., 127 F.3d 1462, 1465 (Fed. Cir. 1997) (stating that reviewing courts should give appropriate deference to trial courts' special competence in determining questions of reasonableness, prudence, intent, belief, and credibility, all of which underlie findings of willfulness); Hoechst Celanese Corp. v. BP Chems. Ltd., 78 F.3d 1575, 1583 (Fed. Cir. 1996) (pronouncing that Federal Circuit reviews a jury's finding of willful infringement to determine whether there was substantial evidence to support that finding); Read Corp. v. Portec, Inc., 970 F.2d 816, 829 (Fed. Cir. 1992) (reversing willfulness finding as unsupported by substantial evidence where "[n]o reasonable juror could find the asserted proof of willfulness rose to the quantum of clear and convincing evidence").

an error that leaves the reviewing court with the "definite and firm conviction" that a mistake has been committed.[45]

Three of these factors, copying, failure to meet the affirmative duty to use due care to avoid infringement (where imposed), and closeness of the case are now examined in greater detail.

*1. Copying.* It is clear that the Federal Circuit regards copying as a factor relevant to willfulness.[46] The court has nonetheless struggled to define the precise culpable dimensions of the act of copying. Indeed, it has sought to distinguish the willfulness implications of one who intends to copy a device from those of one who attempts unsuccessfully to create a patentably distinct device. The Supreme Court identified the essence of this challenge in *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,[47] noting that "one wonders how ever to distinguish between the intentional copyist making minor changes to lower the risk of legal action and the incremental innovator designing around the claims, yet seeking to capture as much as is permissible of the patented advance."[48]

In *Yarway Corp. v. Eur-Control USA, Inc.*,[49] the court noted the negative policy consequences of failing to apply the copying criterion skillfully:

> One of the benefits of a patent system is its so-called "negative incentive" to "design around" a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace. It should not be discouraged by punitive damage awards except in cases where conduct is so obnoxious as clearly to call for them.[50]

The Federal Circuit has certainly made clear that it is possible for one to "copy" a device, in the sense that is relevant to the willfulness inquiry, without necessarily having sought to

---

45. *See, e.g.,* Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 855 (1982) ("Because of the deference due the trial judge, unless an appellate court is left with the 'definite and firm conviction that a mistake has been committed,' it must accept the trial court's findings." (citation omitted)); *Georgia-Pacific Corp.*, 195 F.3d at 1334 (stating that a finding of nonwillfulness should be sustained unless the reviewing court has a "definite and firm conviction that the trier of fact erred"); *SRI Int'l, Inc.*, 127 F.3d at 1465 (same).

46. Refer to note 29 *supra* and accompanying text (discussing the establishment and role of copying factor).

47. 520 U.S. 17 (1997).

48. *Id.* at 36.

49. 775 F.2d 268 (Fed. Cir. 1985).

50. *Id.* at 277 (quoting State Indus. v. A.O. Smith Corp., 751 F.2d 1226, 1236 (Fed. Cir. 1985)).

*HOUSTON LAW REVIEW* · [41:2

produce an *identical* device. Rather, as the court noted in *Stryker Corp. v. Intermedics Orthopedics, Inc.*,[51]

> Neither *Hayes* nor *Bott* holds or states that any copying must be "slavish copying" in order for it to be a relevant factor in determining willfulness. Instead, they respectively state that the inquiry is whether the infringer "intentionally copied the ideas of another," or "deliberately copied the ideas or design of another."[52]

However, in *Rite-Hite Corp.*, the Federal Circuit held that factors "weigh[ing] on the side" of the conclusion of nonwillfulness included both (1) that the infringer's copying of a certain feature was "not exact," and (2) that the infringer's stated aim was to "'design around'" the patentee's claims.[53]

    *2. Closeness of the Case.* Another factor relevant to a determination of willfulness is the closeness of the underlying infringement case. In the early case of *Paper Converting Machine Co. v. Magna-Graphics Corp.*,[54] the Federal Circuit held that "[a]n increase in damages for willfulness, however, is generally inappropriate when the infringer mounts a good faith and substantial challenge to the existence of infringement."[55] Subsequent cases have also looked to the closeness of the case as a factor militating against a finding of willfulness. For example, in *Delta-X Corp. v. Baker Hughes Production Tools, Inc.*,[56] the court noted that "an infringer may generally avoid enhanced damages with [a] meritorious good faith defense and a substantial challenge to infringement."[57] In *Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc.*,[58] the Federal Circuit overturned a finding of willfulness, opining that "[t]he [patent infringement and invalidity] questions were indeed close, and this was another relevant factor [the district court] overlooked in the assessment of willfulness."[59] The potential strength of the closeness-of-the-case doctrine as a mitigating factor was perhaps most clearly illustrated by the Federal Circuit in *Odetics, Inc. v.*

---

51.    96 F.3d 1409 (Fed. Cir. 1996).

52.    *Id.* at 1414 (citations omitted).

53.    Rite-Hite Corp. v. Kelley Co., 819 F.2d 1120, 1125 (Fed. Cir. 1987).

54.    745 F.2d 11 (Fed. Cir. 1984).

55.    *Id.* at 20, *cited with approval in* State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1064 (Fed. Cir. 2003).

56.    984 F.2d 410 (Fed. Cir. 1993).

57.    *Id.* at 413.

58.    34 F.3d 1048 (Fed. Cir. 1994).

59.    *Id.* at 1057 (Fed. Cir. 1994).

*Storage Technology Corp.*[60] There, the court found that the trial judge did not abuse his discretion when he failed to enhance damages after having stated that "given the closeness of the case, it would have denied enhanced damages even if [the accused infringer] had not 'mounted a good faith and substantial challenge to the existence of infringement.'"[61]

### 3.  *Reliance on Competent Opinion of Counsel: The Special Duty of Those Having Actual Notice of Another's Patent Rights.*

a.  **The Affirmative Duty to Seek the Advice of Patent Counsel.** A person having actual notice[62] of another's patent rights has an affirmative duty to exercise due care not to infringe[63]—a duty that usually imposes a requirement to seek and obtain competent[64] legal advice before proceeding with possibly infringing activities[65] or continuing to infringe.[66] The

---

60.     185 F.3d 1259 (Fed. Cir. 1999).

61.     *Id.* at 1274 (quoting Odetics, Inc. v. Storage Tech. Corp., 14 F. Supp. 2d 800, 805 n.9 (E.D. Va. 1998)).

62.     "Willful infringement requires actual notice of the patent, and knowledge of the patent must be actual," as opposed to "implied or constructive knowledge." Douglas Y'Barbo, *Written Opinions from Counsel,* 29 AM. INTELL. PROP. L. ASS'N Q.J. 65, 112 (2001); *see also* Robert O. Bolan & William C. Rooklidge, *Imputing Knowledge to Determine Willful Patent Infringement,* 24 AM. INTELL. PROP. L. ASS'N Q.J. 157, 168 (1996) ("[N]o precedential case has applied liability for willful patent infringement on the basis of implied or constructive knowledge, that is, that the infringer had reason to know or should have known of the patent."). For more on the concept of actual notice, refer to Part II.C.3.c *infra.*

63.     *See* Jurgens v. CBK, Ltd., 80 F.3d 1566, 1571 (Fed. Cir. 1996) (stating that culpability attaches if, and only if, infringer has "fail[ed] to meet his affirmative duty to use due care in avoiding infringement of another's patent rights"); Stryker Corp. v. Intermedics Orthopedics, Inc., 96 F.3d 1409, 1414 (Fed. Cir. 1996) (stating that the relevant factor is whether the infringer, upon becoming aware of the patent, investigated its scope and formed a good-faith belief either in noninfringement or invalidity); Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1389 (Fed. Cir. 1983). Failure to carry out this affirmative duty is, however, not dispositive on the issue of willfulness. Refer to notes 71–72 *infra* and accompanying text (citing Federal Circuit holdings discussing the affirmative duty).

64.     *See* Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1191 (Fed. Cir. 1998) (noting that a legal opinion that is not competent is of little value in showing the good faith of the alleged infringer and provides little defense against a finding of willfulness (citing Read Corp. v. Portec, Inc., 970 F.2d 816, 828–29 (Fed. Cir. 1992))); *Jurgens,* 80 F.3d at 1572 ("To reasonably rely on an opinion, it must be authoritative, not just conclusory, and objective."). Refer also to Part II.C.3.f *infra* (addressing the requirement that reliance on counsel be reasonable).

65.     *See, e.g., Comark Communications, Inc.,* 156 F.3d at 1190 ("As a general matter, a potential infringer with actual notice of another's patent has an affirmative duty of care that usually requires the potential infringer to obtain competent legal advice *before* engaging in any activity that could infringe another's patent rights." (emphasis added)); Electro Med. Sys., S.A. v. Cooper Life Scis., Inc., 34 F.3d 1048, 1056 (Fed. Cir. 1994) (same); Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1580 (Fed. Cir. 1992) (same); Ryco, Inc. v. Ag-Bag Corp., 857 F.2d 1418, 1428 (Fed. Cir. 1988) ("The duty of due care normally requires that a potential infringer obtain competent legal advice before infringing or continuing to infringe.").

66.     *See, e.g., Minn. Mining & Mfg. Co.,* 976 F.2d at 1580 (stating that "it is well settled

Federal Circuit first articulated this rule in *Underwater Devices Inc.*, where the language of the opinion suggests that advice of counsel is necessary to avoid a finding of willful infringement:

> Where, as here, a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing. Such an affirmative duty *includes, inter alia*, the duty to seek and obtain competent legal advice from counsel *before* the initiation of any possible infringing activity. [67]

The *Underwater Devices Inc.* court also held that the proper test for willfulness is a multifactor test—one based on the totality of the circumstances. [68] However, in subsequent cases, the Federal Circuit quietly retreated from its original statement that the duty of due care "includes, *inter alia*," [69] obtaining competent legal advice by recognizing the related, yet clearly distinct, proposition that the duty of due care "usually includes" the obtainment of competent legal advice. [70] Indeed, subsequent decisions have made clear that counsel's opinion is not dispositive on the issue of willfulness. [71] Thus, an infringer who has not obtained an opinion letter may sometimes escape a finding of willful infringement. [72]

---

that a potential infringer having actual notice of another's patent has an affirmative duty of due care that normally requires the potential infringer to obtain competent legal advice before infringing or continuing to infringe"). *But see* Gustafson, Inc. v. Intersystems Indus. Prods., Inc., 897 F.2d 508, 511 (Fed. Cir. 1990) (stating that a party that believes in good faith that it has a legitimate defense to a charge of infringement may continue to manufacture even after being sued for infringement, without risk of being found liable for willful infringement on that basis alone). Refer also to Part II.C.3.d *infra* (discussing the duty placed on those acquiring knowledge of a patent while already manufacturing a potentially infringing device).

67.    *Underwater Devices Inc.*, 717 F.2d at 1389–90 (first emphasis added) (citations omitted).

68.    *Id.* at 1390 ("The appellant clearly failed to exercise its affirmative duty. Accordingly, the district court's finding that infringement was willful, in the totality of the circumstances presented in this case, is not clearly erroneous . . . .").

69.    *Underwater Devices Inc.*, 717 F.2d at 1390.

70.    *See, e.g.,* Bott v. Four Star Corp., 807 F.2d 1567, 1572 (Fed. Cir. 1986) (citing *Underwater Devices Inc.*, 717 F.2d at 1389–90, for the proposition that the duty to exercise due care "usually includes" the duty to seek and obtain competent legal advice before engaging in possibly infringing activity).

71.    *See, e.g.,* Rite-Hite Corp. v. Kelley Co., 819 F.2d 1120, 1125 (Fed. Cir. 1987) (observing that "[t]here is no *per se* rule that an opinion letter from patent counsel will necessarily preclude a finding of willful infringement, . . . nor is there a *per se* rule that the lack of such a letter necessarily requires a finding of willfulness" (quoting Mach. Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 472 (Fed. Cir. 1985))).

72.    *See, e.g.,* State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1064 (Fed. Cir. 2003) (stating that failure to obtain an opinion of counsel does not automatically require a finding of willful infringement); Biotec Biologische Naturverpackungen GmbH & Co. v. Biocorp, Inc., 249 F.3d 1341, 1356 (Fed. Cir. 2001) (same); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1555 (Fed. Cir. 1996) (same); Delta-X Corp. v. Baker Hughes Prod. Tools, Inc., 984 F.2d 410, 414 (Fed Cir. 1993) (same); Amstar Corp. v. Envirotech Corp., 823 F.2d 1538, 1547 (Fed. Cir. 1987) (same); Kloster Speedsteel

Likewise, willfulness may be found despite the presence of an opinion letter.[73] This situation typically occurs either when the opinion letter was not competent or was not relied upon,[74] or when the client withheld important factual predicates from his opinion counsel.[75] Indeed, as mentioned, the "totality of the circumstances" must be considered in deciding whether or not infringement was willful.[76] Nevertheless, in practice, reliance on a competent opinion of counsel (along with the absence of deliberate copying) is an extremely important factor in avoiding a finding of willful patent infringement.[77]

b. Relevance of Process by Which the Infringer Developed Actual Knowledge of the Patent. Whenever an infringer acquires actual notice of a patent, he has an affirmative duty to obtain competent advice of counsel, and the manner by which he acquires that knowledge is irrelevant with respect to his obligation.[78] Where the infringer discovers the patent through his own efforts, however, such facts may properly be factored into a district court's assessment of willfulness under the totality of the circumstances test. Therefore, for example, in *Studiengesellschaft Kohle m.b.H. v. Dart Industries, Inc.*,[79] the Delaware District Court observed that the reasonableness of the defendant's actions was demonstrated in part by its learning of the patent "through its own diligence" rather than through notification by the patentee.[80] Likewise, in *Braun Inc. v. Dynamics Corp. of*

AB v. Crucible Inc., 793 F.2d 1565, 1579 (Fed. Cir. 1986) (same); Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1109 (Fed. Cir. 1986) (same).

73.    *See In re* Hayes Microcomputer Prods., Inc., 982 F.2d 1527, 1544 (Fed. Cir. 1992) ("[A] device of counsel alone cannot be used as a shield irrespective of the nature and timing of that advice in the context of the surrounding circumstances.").

74.    Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1191 (Fed. Cir. 1998) ("[C]ases where willful infringement is found despite the presence of an opinion [letter] generally involve situations where [the advice] was either [incompetent or ignored]." (quoting *Read Corp.*, 970 F.2d at 828–29)).

75.    *See id.* at 1191 ("Whenever material information is intentionally withheld, or the best information is intentionally not made available to counsel during the preparation of the opinion, the opinion can no longer serve its prophylactic purpose of negating a finding of willful infringement.").

76.    Refer to note 37 *supra* (citing authority requiring examination of the totality of circumstances); *see also Biotec Biologische*, 249 F.3d at 1356 (stating that in determining willfulness, "[a]ll of the circumstances must be considered").

77.    *See* Y'Barbo, *supra* note 62, app. at 108 & n.3 (concluding, based on empirical inferences from case holdings, that imitation and reliance on competent opinion from counsel are the strongest factors contributing to a willfulness finding).

78.    Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1389–90 (Fed. Cir. 1983) (establishing the affirmative duty). Refer to Part II.C.3.c *infra* (discussing the concept of actual notice).

79.    666 F. Supp. 674 (D. Del. 1987).

80.    *Id.* at 689 ("Although Dart's pre-infringement knowledge creates Dart's

*America*,[81] the Federal Circuit reversed a jury's finding of willfulness given circumstances that included the infringer's discovery of the patent through a self-initiated search.[82]

    c.  **Existence of Legally Sufficient "Actual Notice" Despite Lack of Knowledge by Key Corporate Decisionmakers.** A related, more fundamental question asks under what circumstances the infringer will be deemed to have had "actual notice" of a patent. Courts have held that the defendant may acquire "actual notice" of the existence of a patent in many ways,[83] such as through receipt of an offer to license a patented item[84] or through a conversation with an unaffiliated third party.[85] However, if a corporate officer of the defendant firm receives notice of a patent, yet fails to notify management or anyone in the legal department of the patent's existence, is the defendant corporation nonetheless "on notice" of the patent? The answer clearly seems to be "yes."[86]

    Conversely, it is not clear whether or not the knowledge of an *employee* will be imputed to the corporation in this context.[87] Likewise, it is not clear precisely when the knowledge of a defendant's *patent agent* may be imputed to the defendant itself. In *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,[88] the Federal Circuit upheld the district court's decision not to award increased damages despite a finding of willful infringement, where

> [the defendant] respond[ed] that its awareness of the patents was only "technical," that its patent staff routinely monitor[ed] patent activity in all areas of glass technology,

---

affirmative duty, that Dart learned of the patent through its own diligence is a relevant factor in the totality of circumstances.").

    81.   975 F.2d 815 (Fed. Cir. 1992).

    82.   *Id.* at 823.

    83.   *See, e.g.,* Jepson Inc. v. Makita USA Inc., 32 U.S.P.Q.2d 1107, 1111 (C.D. Cal. 1994) ("Actual notice of [a] patent under Section 284 may come in a variety of forms.").

    84.   Leinoff v. Louis Milona & Sons, Inc., 726 F.2d 734, 743 (Fed. Cir. 1984) ("Milona knew of the Leinoff patent as early as 1974 when Leinoff offered Milona a license. Instead of studying the patent or consulting patent counsel, Milona simply ignored the letter.").

    85.   Great N. Corp. v. Davis Core & Pad Co., 782 F.2d 159, 166–67 (Fed. Cir. 1986) (finding that the defendant's conversation with a third party unassociated with either the patentee or the defendant was sufficient for defendant to acquire actual notice of the existence of the patent).

    86.   *See* Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 553 (Fed. Cir. 1990) (stating that a corporate officer's knowledge of a patent may be imputed to the corporation).

    87.   *See, e.g.,* Bolan & Rooklidge, *supra* note 62, at 179. ("No willful patent infringement case has yet thoroughly addressed the issue of when the knowledge of or notification to an employee of a corporation will be imputed to the corporation.").

    88.   758 F.2d 613 (Fed. Cir. 1985).

but that its key people on the . . . project were not aware of the patents until this litigation arose [and that therefore] it did not have actual notice of the Shatterproof patents, as required in *Underwater Devices Inc. v. Morrison-Knudsen Co.*[89]

Subsequently, however, in *Stryker Corp.*, the Federal Circuit made clear that its decision in *Shatterproof Glass Corp.* did not constitute a bar to the imputation of knowledge from a defendant's patent agent to the defendant itself, and the court upheld the district court's finding that the defendant "had actual notice of the . . . patent as of . . . when [its] patent attorney . . . saw a reference to the . . . patent in the Official Gazette of the United States Patent Office . . . ."[90] Specifically, the court noted that:

> The *Shatterproof* court did not affirm the district court's denial of the motion for increased damages by embracing [the defendant's] argument that its notice of Shatterproof's patents was only "technical," rather than "actual." Instead, it noted that willfulness is a question of fact requiring clear and convincing evidence reviewed for clear error. It affirmed the district court because it could not, based on the record before it, find clear error in the district court's decision.[91]

d.  Duty of Those Acquiring Knowledge of a Patent While Already Manufacturing a Potentially Infringing Device. Sometimes a potential infringer gains awareness of a pertinent patent while still developing a device. In such a case, *Underwater Devices Inc.* appears to require the acquisition of "competent legal advice from counsel *before* the initiation of any possible infringing activity."[92] The cost of obtaining the opinion is limited essentially to the direct cost of hiring outside counsel. One can imagine, however, a scenario that involves the potential for considerable indirect costs as well. What should a potential infringer do upon becoming aware of the patent *after* having begun the manufacture of an infringing device? If the potential infringer does not immediately cease manufacture pending receipt of advice of competent patent counsel, does a violation of the affirmative duty occur, as first articulated by the court in

---

89.   *Id.* at 628.

90.   Stryker Corp. v. Intermedics Orthopedics, Inc., 96 F.3d 1409, 1415 (Fed. Cir. 1996) (upholding the district court's finding of willful infringement).

91.   *Id.* (citations omitted).

92.   Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1389–90 (Fed. Cir. 1983).

*Underwater Devices Inc.?*[93]

The Federal Circuit established relatively early in its existence that the mere commencement of manufacture of an accused device prior to the issuance of a patent does not bar a finding that subsequent infringement was willful.[94] However, in *Gustafson, Inc. v. Intersystems Industrial Products, Inc.*[95] the court held:

> [T]here [is no] universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit. Exercising due care, a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer. That such a defense proves unsuccessful does not establish that infringement was willful.[96]

The *Gustafson, Inc.* court also noted that in our patent system, applications are secret and the law authorizes patentees to sue "innocent" manufacturers immediately after their patents issue and without warning; therefore, "[t]o hold such patentees entitled to increased damages or attorney fees on the ground of willful infringement . . . would be to reward use of the patent system as a form of ambush."[97] However, in a later decision, the court made clear that *Gustafson, Inc.*, did not change the fundamental duty of due care on the part of the potential infringer, stating that *Gustafson, Inc.*, "did not hold, as a matter of law, that a party that continues its accused infringing activity after a patentee files suit cannot be guilty of willful infringement as long as that party presents a non-frivolous defense to infringement."[98]

e.   Duty Where Infringer Is Aware that a Patent May Issue in the Future. What is the duty of a potential infringer who has less than actual notice of the existence of a patent? For example, what is the duty of someone who is aware merely that a patent *might* issue in the future? Must the potential infringer then immediately seek the advice of competent counsel in order to

---

93.   *Id.*

94.   Shiley, Inc. v. Bentley Labs., Inc., 794 F.2d 1561, 1568 (Fed. Cir. 1986) (holding that depending on the totality of the circumstances, "a finding of willful infringement [may stand even though] manufacture of an accused device beg[an] prior to the issuance of a patent").

95.   897 F.2d 508 (Fed. Cir. 1990).

96.   *Id.* at 511 (internal citation omitted).

97.   *Id.*

98.   Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336, 1351–52 (Fed. Cir. 2001).

protect against a potential charge of willful infringement if and when a patent eventually issues? Or is the potential infringer protected by a literal reading of *Underwater Devices Inc.*, which does not expressly impose that affirmative duty upon those not having "actual notice of another's patent rights"?[99]

Where a potential infringer is aware only that a patent *might issue* in the future, he has no duty to consult with competent patent counsel in order to avoid a finding of willfulness. In the early case of *State Industries v. A.O. Smith Corp.*,[100] the Federal Circuit overturned the district court's finding of willfulness where the defendant knew only that a patent was *pending* and not that one had actually issued.[101] Recognizing the problems inherent in allowing less than actual notice of an existing patent to trigger a duty to seek the advice of counsel, the court stated:

> To willfully infringe *a patent*, the patent must exist and one must have knowledge of it. A "patent pending" notice gives one no knowledge whatsoever. It is not even a guarantee that an application has been filed. Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.[102]

The court later made clear in *Shiley, Inc. v. Bentley Laboratories, Inc.*,[103] that *State Industries* did not lay down a per se rule that willful infringement could never be found where manufacture had begun before a patent had issued; rather, the "totality of the circumstances" test was to be applied.[104]

Conversely, where a potential infringer has actual knowledge that a patent *currently exists*, he does have a duty to obtain competent advice of counsel. Thus, in *Power Lift, Inc. v. Lang Tools,*

---

99.   Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1389 (Fed. Cir. 1983).

100.   751 F.2d 1226 (Fed. Cir. 1985).

101.   *Id.* at 1236.

102.   *Id.*; *see also* Am. Original Corp. v. Jenkins Food Corp., 774 F.2d 459, 465 (Fed. Cir. 1985) (affirming district court finding of no willfulness):

> Although some evidence suggests Jenkins may have been aware that American had a pending application (although it is unclear that it was aware of the precise claims asserted), "[t]o willfully infringe *a patent*, the patent must exist. . . ." We have no basis to reject the district court's finding that "[t]he evidence fails to establish . . . a copying of Marvin's patent."

*Id.*

103.   794 F.2d 1561 (Fed. Cir. 1986).

104.   *Id.* at 1568.

*Inc.,*[105] the court sustained a jury finding of willful infringement, distinguishing *State Industries* because Lang knew of the actual patent as of the day it issued.[106] Later, in *National Presto Industries v. West Bend Co.,*[107] the Federal Circuit upheld a finding of willfulness, even though the defendant "had no grace period after patent issuance in which it might have suspended its infringing activities." [108] The court distinguished *State Industries* on the facts and noted that in the instant case, "West Bend knew exactly when Presto's patent came into existence, and indeed had several months' advance notice, whereas in *State Industries* the infringer had no knowledge of the patent beyond the footnote 'Patent Applied For' in the patentee's literature."[109]

However, what must a potential infringer do where he is on notice that a patent *will issue* in the future? In *Pacific Furniture Manufacturing Co. v. Preview Furniture Corp.,*[110] the court upheld a willfulness finding where a future patentee had warned the defendant that a specific patent would issue as of a specific date.[111] Likewise, in *Avia Group International, Inc. v. L.A. Gear California, Inc.,*[112] the Federal Circuit upheld a willfulness finding where a future patentee had advised the defendant that a specific patent would issue in the future and that the defendant's product would infringe its upcoming patent.[113]

---

105.    774 F.2d 478 (Fed. Cir. 1985).

106.    *Id.* at 482 (contrasting instant case with *State Indus. v. A.O. Smith Corp.,* 751 F.2d 1226 (Fed. Cir. 1985)).

> The difference between this case and *Smith* is that Smith's first notice of the existence of the patent came with the filing of the infringement suit against it. Here, Lang had knowledge of the existence of the patent the day it issued. Although the infringement suit was filed 9 days later, we agree with the jury's conclusion that Lang's decision to continue production after notice was clear and convincing evidence of willfulness.

*Id.*

107.    76 F.3d 1185 (Fed. Cir. 1996).

108.    *Id.* at 1193.

109.    *Id.*

110.    800 F.2d 1111 (Fed. Cir. 1986).

111.    *Id.* at 1112–13.

> On September 16, 1980, Pacific . . . inform[ed] [Preview] that Pacific had filed applications for design patent protection of its Model 120 (the design for which became the '100 patent) and Model 150 (leading to the '101 patent) chairs. Pacific was informed that the patents were going to issue on February 3, 1981.

*Id.* The court went on to note that "[t]he fact that Preview may have started its infringement before the patents issued (or before [it was] aware of the patents) does not bar an award of increased damages or attorney fees." *Id.* at 1114 n.9 (citing Shiley, Inc. v. Bentley Labs., Inc., 794 F.2d 1561, 1568 (Fed. Cir. 1986)).

112.    853 F.2d 1557 (Fed. Cir. 1988).

113.    *Id.* at 1566 (stating that by "continu[ing] to sell the infringing shoes after the patent issued, well after it had notice the patent was pending for a *particular* design, and even after this suit for infringement was filed . . . [the defendant] intentionally accepted

f.   Assessing Whether Reliance on Counsel's Advice Was "Reasonable." Whether or not reliance on an opinion letter is a factor weighing in favor of the reasonableness of an infringer's actions depends on whether reliance on the letter was reasonable in the totality of the circumstances.[114] As the court stated in *SRI International, Inc. v. Advanced Technology Laboratories, Inc.*,[115]

> The court will determine whether the advice of noninfringement or invalidity or unenforceability could have reasonably been relied on, and whether, on the totality of the circumstances, exculpatory factors avert a finding of willful infringement. The totality of the circumstances may include not only such aspects as the closeness or complexity of the legal and factual questions presented, but also commercial factors that may have affected the infringer's actions. Aspects in mitigation, such as whether there was independent invention or attempts to design around and avoid the patent or any other factors tending to show good faith, should be taken into account and given appropriate weight.[116]

The Federal Circuit has established a test for determining whether or not the infringer's reliance on advice of counsel is a mitigating factor. In *Ortho Pharmaceutical Corp. v. Smith*,[117] the court held that "counsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable."[118] The reasonableness of such reliance depends in turn on several factors,[119] including whether

---

risk of infringement").

114.   *See* Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1191 (Fed. Cir. 1998) (explaining that the exculpatory value of legal advice depends on whether, in the totality of circumstances, the infringer was reasonable in relying on it); Graco, Inc. v. Binks Mfg. Co., 60 F.3d 785, 793 (Fed. Cir. 1995) ("A critical factor in evaluating the effect of an opinion of counsel on willfulness is the reasonableness of a party's reliance thereon.").

115.   127 F.3d 1462 (Fed. Cir. 1997).

116.   *Id.* at 1465.

117.   959 F.2d 936 (Fed. Cir. 1992).

118.   *Id.* at 944.

119.   *See, e.g.*, *SRI Int'l, Inc.*, 127 F.3d at 1467 (to determine whether advice opinion of counsel may serve as exculpatory evidence on the issue of willful infringement, a court must view the evidence objectively to determine "whether it was obtained in a timely manner, whether counsel analyzed the relevant facts and explained the conclusions in light of the applicable law, and whether the opinion warranted a reasonable degree of certainty that the infringer had the legal right to conduct the infringing activity"); Westvaco Corp. v. Int'l Paper Co., 991 F.2d 735, 743–44 (Fed. Cir. 1993) ("In considering the reasonableness of the accused infringer's reliance on an opinion of counsel, the opinion letter should be reviewed for its 'overall tone, its discussion of case law, its analysis of the particular facts and its reference to inequitable conduct.'" (quoting *Ortho Pharm. Corp.*, 959 F.2d at 945)).

the infringer had *sought* a competent opinion[120] and whether the opinion received was competent.[121] Moreover, "[t]he competency requirement applies to both the qualifications of the person giving the opinion and to the content of the opinion itself."[122] Without the requirement that an opinion be competent, infringers would be completely insulated from findings of willfulness.[123]

In general, an infringer is entitled to rely upon, and only upon, opinions that bear *objective* manifestations of credibility.[124] For example, in *Underwater Devices Inc.*, the Federal Circuit referred to the need for opinions to contain sufficient "internal indicia of credibility."[125] Internal indicia tending to support a finding of nonwillfulness include statements that are supported by legal analysis as opposed to being merely conclusory,[126] which are given in firm, yet not absolute, language.[127]

Conversely, the Federal Circuit has held that the competence of a letter does not depend on its legal correctness.[128]

---

120.   *See, e.g.*, Jurgens v. CBK, Ltd., 80 F.3d 1566, 1571 (Fed. Cir. 1996) (stating that an infringer tends to show willfulness "where he obtains incompetent, conclusory opinions of counsel only to use as a shield against a later charge of willful infringement, rather than in a good faith attempt to avoid infringing another's patent").

121.   Johns Hopkins Univ. v. CellPro, Inc., 152 F.3d 1342, 1364 (Fed. Cir. 1998) ("A [sic] opinion is competent if it is 'thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable.'" (quoting *Ortho Pharm. Corp.*, 959 F.2d at 944)).

122.   *Jurgens*, 80 F.3d at 1572.

123.   *Id.* at 1572–73 (concluding that the adequacy of an opinion is inherent to the inquiry of reasonable reliance thereon).

124.   *Westvaco Corp.*, 991 F.2d at 743 ("'[O]bjective evidence' must be considered to determine whether a defendant was justified in relying on patent counsel's advice, *i.e.*, whether the patent counsel's opinion was competent.") (quoting Read Corp. v. Portec, Inc., 970 F.2d 816, 829 (Fed. Cir. 1992) ("That an opinion is 'incompetent' must be shown by objective evidence."))).

125.   Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1390 (Fed. Cir. 1983).

126.   *See Jurgens*, 80 F.3d at 1572 ("The steps 'normally considered to be necessary and proper in preparing an opinion' include a thorough review of the cited prior art and prosecution history." (quoting *Underwater Devices Inc.*, 717 F.2d at 1389–90)); *Westvaco Corp.*, 991 F.2d at 743 ("Opinion letters should be reviewed to determine whether they evidence an adequate foundation based on a review of all necessary facts or whether they are conclusory on their face." (citing *Read Corp.*, 970 F.2d at 829)). However, under the totality of the circumstances test, failure to consider a legal doctrine does not render an opinion incompetent per se. *See* Graco, Inc. v. Binks Mfg. Co., 60 F.3d 785, 793 (Fed. Cir. 1995) ("There is no requirement that an opinion *must* address validity to negate a finding of willful infringement." (citing *Ortho Pharm. Corp.*, 959 F.2d at 944 (stating that the relevant inquiry is whether counsel's opinion was sufficiently thorough as combined with other factors "to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable"))).

127.   Y'Barbo, *supra* note 62, at 111 n.9 (stating that "[f]rank, equivocal opinions are slightly preferred to absolute, unequivocal ones" (citing *Read Corp.*, 970 F.2d at 829 n.9 ("An honest opinion is more likely to speak of probabilities than certainties."))).

128.   *See* Johns Hopkins Univ. v. CellPro, Inc., 152 F.3d 1342, 1364 (Fed. Cir. 1998) (stating that legal opinions, if competent and followed by the infringer, may insulate an

"Indeed, the question arises only where counsel was wrong."[129] Likewise, the infringer is not expected to be able to evaluate the competence of the opinion counsel's legal arguments or conclusions. If such an evaluation were possible the infringer "would not need the attorney's advice at all".[130] At least one district court, however, has suggested that the infringer is responsible for the accuracy of underlying *factual* predicates relied upon by his attorney.[131] Moreover, if the defendant is sophisticated in patent matters, then the district court may properly impose a higher standard with regard to evaluating the legal competence of the opinion.[132]

In addition, the reasonableness of the infringer's reliance on the advice of counsel depends on other factors, namely those external to the opinion itself. These include whether the infringer had consulted a patent attorney as opposed to general counsel,[133] the objectivity of counsel,[134] as might be indicated by whether

---

infringer from a charge of willful infringement, even if those opinions are ultimately found to be incorrect); *Graco, Inc.*, 60 F.3d at 793 ("Whether or not an opinion was 'legally' correct is not the proper focus."); *Ortho Pharm. Corp.*, 959 F.2d at 944 ("While an opinion of counsel letter is an important factor in determining the willfulness of infringement, its importance does not depend on its legal correctness."); *see also* Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc., 862 F.2d 1564, 1577–79 (Fed. Cir. 1988) (affirming a finding of nonwillfulness where the defendant had reasonably relied on counsel's opinion, even though the opinion was legally incorrect).

129.    *Ortho Pharm. Corp.*, 959 F.2d at 944. The court goes on to state that, "[r]ather, counsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." *Id.*

130.    *Read Corp.*, 970 F.2d at 829.

131.    Cordis Corp. v. SciMed Life Sys., Inc., 980 F. Supp. 1030, 1033 (D. Minn. 1997).
We can accept that an inventor, who seeks legal counsel so as to exercise due care in respecting the patent rights of a competitor, might not be fully qualified, in the ordinary course of events, to appraise the validity of his patent attorney's legal reasoning, but we cannot accept that the inventor would be similarly unqualified to assess the validity of the factual premises upon which his patent counsel has framed his legal opinion, or that he would be permitted carte blanche to accept any factual predicate without question.
*Id.*

132.    *See, e.g.*, *Johns Hopkins Univ.*, 152 F.3d at 1364 (upholding finding of willfulness despite presence of favorable opinion letter where agent of the defendant who procured opinion letter from outside counsel was highly sophisticated in patent matters and "should have been on notice concerning the opinions' obvious shortcomings and accordingly of the impropriety of [the defendant's] course of action").

133.    *See* Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1390 (Fed. Cir. 1983) (stating that the defendant appeared not to proceed in "good faith based on the advice of its counsel, . . . [where] the attorney from whom it sought advice was its own in-house counsel, . . . [and was] not a patent attorney").

134.    *See, e.g.*, Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1191 (Fed. Cir. 1998) ("Obtaining an *objective* opinion letter from counsel also provides the basis for a defense against willful infringement." (emphasis added)). However, the objectivity requirement does not require that a potential infringer resolve close issues in

counsel was in-house or external,[135] whether the infringer sought the opinion promptly after receiving notice of infringement,[136] whether the opinion was oral or written,[137] whether the client actually relied on the obtained advice,[138] whether the client acted reasonably in light of the totality of legal advice rendered (as opposed to getting credible but negative advice from one attorney and then getting a showpiece opinion from another), and whether the defendant fully and in good faith had disclosed the factual predicates upon which the attorney based his opinion.[139] The absence of one or more supporting factors is not necessarily fatal to the defendant's case. For example, in *Underwater Devices Inc.*, the Federal Circuit stated that a defendant in an infringement action might have justified its reliance on an opinion of counsel letter notwithstanding negative inferences arising from

---

favor of the patentee. *Ortho Pharm. Corp.*, 959 F.2d at 945 ("A party is not guilty of ignoring patent rights [merely] because it resolves a close question of infringement in its favor.").

135.    Refer to note 132 *supra*. Nevertheless, despite the greater weight granted to opinions for outside counsel, there is no rule excluding reliance on opinions from in-house counsel. SRI Int'l, Inc. v. Advanced Tech. Labs., Inc., 127 F.3d 1462, 1467 (Fed. Cir. 1997) (noting that the timing of the opinion's issuance relative to litigation is always relevant, regardless of the opinion's source).

136.    As the court stated in *Underwater Devices Inc.*, the potential infringer has "the duty to seek and obtain competent legal advice from counsel *before* the initiation of any possible infringing activity." *Underwater Devices Inc.*, 717 F.2d at 1389–90. This duty appears to include the duty to obtain prompt legal advice before *continuing* to infringe as well. However, the duty does not require the potential infringer to immediately cease activities while obtaining a letter from counsel, as long as its efforts to do so are timely. *See* Gustafson, Inc. v. Intersystems Indus. Prods., Inc., 897 F.2d 508, 511 (Fed. Cir. 1990) ("[A] party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer.").

137.    *See* Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1580 (Fed. Cir. 1992) ("[O]ral opinions are not favored."). The Federal Circuit has disfavored oral opinions because they need to be proved perhaps years after the event, based on "testimony which may be affected by faded memories and the forces of contemporaneous litigation." *Id.* However, an oral opinion may sometimes be adequate when considered in light of the totality of the circumstances. *See* Radio Steel & Mfg. Co. v. MTD Prods., Inc., 788 F.2d 1554, 1559 (Fed. Cir. 1986) (upholding a finding of no willful infringement where the defendant relied on the oral opinion of an outside patent attorney).

138.    A party cannot claim good faith reliance on its patent counsel's opinion where, by its acts, it had already disregarded important elements of counsel's advice. *See* Cent. Soya Co., Inc. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1577 (Fed. Cir. 1983). Similarly, a party cannot claim reliance on advice of counsel when the opinion was obtained retrospectively as an attempt to justify decisions already made. *See In re* Hayes Microcomputer Prods., Inc., 982 F.2d 1527, 1544 (Fed. Cir. 1992) ("The evidence shows that the advice of counsel was more of a protective device than a genuine effort to determine before infringing whether the patent was invalid.").

139.    *See, e.g., Comark Communications, Inc.*, 156 F.3d at 1191 (an infringer's intentional withholding of material information from opinion counsel defeats the opinion as defense to willful infringement).

circumstances—namely that the letter had been provided by nonpatent, in-house counsel.[140]

g.  Consequences of the Failure to Produce an Opinion of Counsel: The Adverse Inference. One reason for the tremendous importance of the opinion letter is that an adverse inference may flow from a defendant's failure to produce one at trial.[141] Indeed, several years after its decision in *Underwater Devices Inc.*, the Federal Circuit concluded in *Shatterproof Glass Corp.* that "[a] record devoid of opinions of counsel and silent on [the defendant's] reaction to the existence of the [infringed] patents may indeed lead to negative inferences."[142] Shortly thereafter, in *Kloster Speedsteel AB v. Crucible Inc.*,[143] the court again stated that a factfinder is entitled to infer from the absence of an opinion letter either that the infringer had not obtained such a letter, or that the letter was negative and the infringer had disregarded counsel's advice.[144] Subsequent Federal Circuit decisions have approved of these adverse inferences.[145] Either inference is a virtual deathblow to the defendant's case. Although in principle both negative inferences can be overcome, it is quite difficult to do so. In essence, the combination of the adverse inference rule with the affirmative duty rule makes it much easier for a plaintiff to prove a case of willful infringement, because after the plaintiff alleges willfulness, the defendant bears the burden of producing a competent opinion letter, if possible, in order to defeat the allegation.

---

140.  *Underwater Devices Inc.*, 717 F.2d at 1390 (finding willful infringement nevertheless, based on the totality of the circumstances).

141.  *See generally* Y'Barbo, *supra* note 62, at 113 & n.15.

142.  Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 628 (Fed. Cir. 1985).

143.  793 F.2d 1565 (Fed. Cir. 1986).

144.  *Id.* at 1580.

145.  *E.g.*, Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294, 1309 (Fed. Cir. 2001) ("A party asserting its attorney-client privilege runs the risk of having the fact-finder draw a negative inference."); Electro Med. Sys., S.A. v. Cooper Life Scis., Inc. 34 F.3d 1048, 1057 (Fed. Cir. 1994) ("The district court here was free to draw an inference adverse to [the infringer] when, asserting the attorney-client privilege, [it] refused to produce an opinion of counsel."); Am. Med. Sys., Inc. v. Med. Eng'g Corp., 6 F.3d 1523, 1531 (Fed. Cir. 1993) (stating that the district court properly drew a negative inference from the defendant's withholding of documentary evidence of prior searches and outside counsel opinions); Fromson v. W. Litho Plate & Supply Co., 853 F.2d 1568, 1572–73 (Fed. Cir 1988) ("Where the infringer fails to introduce an exculpatory opinion of counsel at trial, a court must be free to infer that either no opinion was obtained or, if an opinion were obtained, it was contrary to the infringer's desire to initiate or continue its use of the patentee's invention.").

    *4. No General Duty to Investigate Whether a Product Is Patented.* Does an inventor have a general duty to investigate whether a product is patented, which might in turn lead to an affirmative duty to seek the advice of counsel? The answer seems to be "no," judging from the lack of caselaw on the matter.

    The lack of a *general* duty might be understood on the grounds of economic efficiency. Imposing infringement-avoidance costs on the infringer is efficient only when those costs are less than the expectation value of costs otherwise borne by the patentee because of infringement. The expected cost of infringement, in turn, is calculated as the product of the infringement cost and the *ex ante* probability that infringement will occur. Thus, the imposition of an affirmative duty to further investigate (in some specified manner) the likelihood of infringement is most likely to be economically efficient where the "pre-investigation" probability of infringement is highest. Factors significantly increasing this probability might include, for example, a potential infringer's having actual knowledge of a patent relating to his device. Indeed, the Federal Circuit has held that actual knowledge of a patent gives rise to an affirmative duty to investigate issues of infringement, enforceability, and validity.[146] Does similar reasoning support the imposition of other affirmative duties under at least some other circumstances?

    Assume, for example, that a defendant copies a device without knowing whether or not it is patented. Given today's crowded patent "landscape,"[147] the probability of infringement may be quite high. Perhaps one might expect the law to impose on him an affirmative duty to seek the advice of counsel on the issue of the existence of a patent on the "template" device.[148] However, the law of willful patent infringement does not impose any such affirmative duty of investigation upon those lacking actual knowledge of a patent, not even upon copyists.[149]

---

    146.   Stryker Corp. v. Intermedics Orthopedics, Inc., 96 F.3d 1409, 1413–15 (Fed. Cir. 1996) (rejecting defendant's argument that actual notice requires both notice of the patent and notice of the possibility of infringement).

    147.   Technology Assessment and Forecast Branch, USPTO, U.S. Patent Statistics Report, *at* http://www.uspto.gov/web/offices/ac/ido/oeip/taf/us_stat.pdf (last visited Apr. 23, 2004) (showing the yearly increases in patent applications and granted patents for the years 1963–2001).

    148.   If a patent is found to exist, one would then expect the potential infringer to have the usual duty to investigate validity and enforceability.

    149.   Copying is, however, a factor militating in favor of willfulness. Refer to Part II.C.1 *supra*.

  5.  *The Uncertain Future of the Adverse Inference and Affirmative Duty Rules.* Although the adverse inference rule has appeared to have been a well-settled doctrine,[150] recent action by the Federal Circuit has rendered its future uncertain. In considering an appeal from a finding of willful patent infringement where the district court had drawn an adverse inference from the defendant's failure to produce an opinion letter at trial,[151] the Federal Circuit took the unusual step of taking the case sua sponte en banc "to reconsider its precedent concerning the drawing of adverse inferences, with respect to willful patent infringement, based on the actions of the party charged with infringement in obtaining legal advice, and withholding that advice from discovery."[152] Specifically, the court asked the parties to consider whether, "[w]hen the attorney-client privilege and/or work product privilege is invoked by a defendant in an infringement suit, [it is] appropriate for the trier of fact to draw an adverse inference with respect to willful infringement[.]"[153]

  Even more surprising is the Federal Circuit's apparent readiness to reconsider the affirmative duty rule as well,[154] asking that the parties address two additional questions: First, whether "[w]hen the defendant has not obtained legal advice, [it is] appropriate to draw an adverse inference with respect to willful infringement." Second, whether "the existence of a substantial defense to infringement [should] be sufficient to defeat liability for willful infringement even if no legal advice has been secured."[155]

  This recent action by the Federal Circuit is, to say the least, welcome, and the potential significance of its ruling on these issues of law is difficult to overstate. Indeed, the doctrine of willful patent infringement may be about to change significantly.

---

  150.    Refer to note 145 *supra* (detailing the Federal Circuit's application of the negative inference rule).

  151.    Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 133 F. Supp. 2d 843, 862 (E.D. Va. 2001) (applying the adverse inference rule in the absence of an exculpatory opinion of counsel).

  152.    Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 344 F.3d 1336, 1336 (Fed. Cir. 2003).

  153.    *Id.*

  154.    The affirmative duty rule dates back to the early years of the Federal Circuit. *See* Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1389–90 (Fed. Cir. 1983) (holding that when the "potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing").

  155.    *Knorr-Bremse*, 344 F.3d at 1336–37.

*HOUSTON LAW REVIEW*                     [41:2

## D. *Awarding Damages*

The process for awarding increased damages proceeds in two steps.[156] In the first step, the factfinder must decide whether or not the defendant's acts of infringement were willful.[157] Absent a finding of willfulness, the court may not enhance damages.[158] For example, damages may not be increased solely to compensate for a perceived inadequacy in the compensatory award.[159] Given a finding of willfulness, however, the second step requires the trial judge to decide whether to increase damages[160] and, if so, by how much.[161] While these decisions are left to the court's discretion,[162] they should be based on the overall egregiousness[163] of the defendant's acts, as measured by a number of factors.[164] Several

---

156.    Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996) (explaining the two-step process for increasing damages (citing State Indus., Inc. v. Mor-Flo Indus., Inc., 948 F.2d 1573, 1576–77 (Fed. Cir. 1991))).

157.    *Id.* at 1571.

158.    *See id.* at 1570 (holding that because increased damages are punitive, they may be imposed only when the infringer's conduct was culpable, as in when the infringer acted either willfully or in bad faith).

> Thus, although an infringer's inequitable conduct in prosecuting his own patents, or his egregious conduct in infringement litigation may be sufficient for other sanctions or fee awards, or may be used as a factor in determining whether or how much to increase a damages award once sufficient culpability is found, these actions are not sufficient independent bases to justify increased damages under section 284.

*Id.* (internal citations omitted); Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1573–74 (Fed. Cir. 1996) (stating that enhancement of damages must be premised on willful infringement or bad faith).

159.    *Sensonics, Inc.*, 81 F.3d at 1574 (Fed. Cir. 1996) (noting that increased damages are punitive rather than compensatory).

160.    *See* Stryker Corp. v. Davol Inc., 234 F.3d 1252, 1259–60 (Fed. Cir. 2000) (stating that "a verdict of willful infringement authorizes but does not mandate enhanced damages").

161.    *See* Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1274 (Fed. Cir. 1999) (citing Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992)) (noting that an award of enhanced damages for infringement is within the discretion of the trial court); *Jurgens*, 80 F.3d at 1570 (noting that in assessing increased damages, once the factfinder has established willfulness, the second step is for the court, in its exercise of discretion, is to determine whether and to what extent damages should be increased, in light of the totality of the circumstances).

162.    Vulcan Eng'g Co. v. Fata Aluminium, Inc., 278 F.3d 1366, 1378–79 (Fed. Cir. 2002) (noting that "discretion [to enhance damages award] reposes in the district court, on consideration of all of the circumstances"); Rite-Hite Corp. v. Kelley Co., 819 F.2d 1120, 1126 (Fed. Cir. 1987) (stating that a finding of willfulness does not always lead to an award of increased damages, because the decision to increase damages is within the court's discretion).

163.    *See, e.g., Jurgens*, 80 F.3d at 1571–72 (identifying "'the egregiousness of the defendant's conduct based on all of the facts and circumstances'" as the foundation for assessing the propriety of enhanced damages (quoting *Read Corp.*, 970 F.2d at 826)).

164.    *See Read Corp.*, 970 F.2d at 826–28 (reviewing both culpable and mitigating factors relevant to a consideration of enhanced damages).