of these factors relate to the willfulness of the defendant's acts of infringement, such as whether the defendant had sought to copy the patented invention;[165] whether he had actual notice of the patent, and if so, whether he had failed to obtain an opinion of counsel;[166] and whether the defendant had failed to mount any serious defenses during trial on the issue of willfulness[167] or on the underlying issue of infringement.[168] Additional factors, unrelated to willfulness, include an assessment of the defendant's behavior as a party to the litigation[169] and the defendant's financial condition.[170] To enable sufficient review on appeal, the Federal Circuit requires trial judges to explain the factual bases for their decisions on the issue of enhanced damages.[171] The Federal Circuit reviews such decisions only for errors of law, clearly erroneous findings of fact, or errors in judgment that constitute an abuse of discretion.[172]

---

165. *Id.* at 826–27; *see also* Bott v. Four Star Corp., 807 F.2d 1567, 1572 (Fed. Cir. 1986) (stating that deliberate copying is a relevant factor in the decision to increase damages).

166. *See Read Corp.*, 970 F.2d at 828–30 (asserting that the affirmative duty imposed by actual knowledge of another's patent right normally requires obtaining legal advice).

167. *Id.* at 827 (citing Modine Mfg. Co. v. Allen Group, Inc., 917 F.2d 538, 543 (Fed. Cir. 1990) ("No abuse of discretion to award no enhanced damages on the ground that willfulness was 'sufficiently close on the evidence.'"); Crucible Inc. v. Stora Kopparbergs Berglags AG, 701 F. Supp. 1157, 1164 (W.D. Pa. 1988) ("[B]ecause the court still considers the [willfulness] question to be a close one . . . double, and not treble damages are appropriate.").

168. Refer to Part II.C.2 *supra* (elaborating that courts consider the closeness of the infringement case when determining willfulness).

169. *See Jurgens*, 80 F.3d at 1570–71 (noting that "an infringer's inequitable conduct in prosecuting his own patents, or his egregious conduct in infringement litigation may be . . . used as a factor in determining whether or how much to increase a damages award once sufficient culpability is found").

170. *See Read Corp.*, 970 F.2d at 826–27 (listing factors such as the alleged infringer's size and financial condition, motivation for harm, and duration of the misconduct that must be taken into consideration).

171. *Jurgens*, 80 F.3d at 1572 (finding an abuse of discretion where the district court provided insufficient reasons for the denial of enhanced damages where willfulness has been found); *Read Corp.*, 970 F.2d at 828 (requiring that district courts "explain the basis for the award, particularly where the maximum amount is imposed").

172. SRI Int'l, Inc. v. Advanced Tech. Labs., Inc., 127 F.3d 1462, 1469 (Fed. Cir. 1997) (explaining that the decision to award or deny enhanced damages is reviewed for abuse of discretion, namely whether the decision to grant enhancement or the amount thereof was based "on clearly erroneous findings of fact, as incorrect legal conclusion, or a clearly erroneous judgment"); Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1573 (Fed. Cir. 1996) (noting that the reviewing court will sustain the trial court's decision whether or not to award enhanced damages "unless it was based on an incorrect conclusion of law, clearly erroneous findings of fact, or a clear error of judgment").

## III. Must "Willful Infringement" Be Deliberate?

Turning now to the second question posed above, we ask whether the determination that infringement has been willful requires proof that the infringer had not only undertaken an *unreasonable* risk, but that he had done so *deliberately*.[173] As will be seen, the Federal Circuit has articulated several different standards for willful patent infringement, and as a result, it is unclear whether a finding of willful infringement requires a determination that the defendant had intentionally infringed[174] or whether a showing of recklessness or even negligence would suffice.[175] This Part explores the various standards articulated by the Federal Circuit over the years. They are grouped into three categories: the so-called subjective standards, which require knowing, or deliberate, infringement; the objective standards, which do not require deliberate infringement; and the internally inconsistent standards.

### A.  Three Approaches

1.  *The Subjective Approach.* In some of its decisions, the Federal Circuit has articulated a subjective standard, which requires the infringer to have knowingly or deliberately disregarded the rights of the patent holder.[176] Under the subjective standard, a good faith belief in noninfringement constitutes a defense to willful infringement.[177] The subjective

---

173.  Refer to Part II.B.2 *supra.*

174.  Here I use the word "intentionally" in the sense of either "purposely" or "knowingly."

175.  *See* Jared S. Goff, *The Unpredictable Scope of the Waiver Resulting from the Advice-of-Counsel Defense to Willful Patent Infringement,* 1998 BYU L. Rev. 213, 232–33 (concluding that the reasonableness of defendant's actions is relevant to a determination of subjective willfulness).

176.  *See* Gustafson, Inc. v. Intersystems Indus. Prods., Inc., 897 F.2d 508, 510–11 (Fed. Cir. 1990) (concluding that "[w]hether an act is 'willful' is by definition a question of the actor's *intent,* the answer to which must be inferred from all the circumstances"). *See generally* Goff, supra note 175, at 232–33 (noting that willful infringement requires a finding of the defendant's state of mind).

177.  *See* Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579 (Fed. Cir. 1996) ("Whether an infringer acted willfully is a question of fact that rests on a determination of the infringer's state of mind. With the focus on an infringer's mental state, good faith reliance on the competent advice of counsel constitutes a defense to willfulness."); *see also* L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1127 (Fed. Cir. 1993) (stating that a defense to charges of willfulness was insufficient where "the accused infringer presented no probative evidence of a good faith belief in non-infringement"); Read Corp. v. Portec, Inc., 970 F.2d 816, 830 (Fed. Cir. 1992) (finding that the plaintiff "cannot point to any substantial evidence which indicates that [the defendant] did not have a good faith belief that it was not infringing").

standard for willful infringement is consistent with the stated purpose of the doctrine: namely to act as a "deterrent[] to blatant, blind, willful infringement of valid patents."[178]

The Federal Circuit gave an early formulation of the subjective standard in *American Original Corp. v. Jenkins Food Corp.*,[179] stating that "the ultimate issue on this aspect of the case is whether Jenkins' infringement was willful or reflected a good faith belief that its method of operation did not infringe the . . . patent."[180] In *Kloster Speedsteel AB*, the court implied that the willfulness standard was subjective, by distinguishing "willful" infringement from infringement that is "accidental or innocent."[181] Subsequently, in *Gustafson, Inc.*, the court held that "[w]hether an act is 'willful' is by definition a question of the actor's *intent*, the answer to which must be inferred from all the circumstances. Hence a party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge."[182] Indeed, the subjective standard holds that "[l]iability for willfulness of infringement turns on considerations of intent, state of mind, and culpability,"[183] and is appropriate only "[w]here an adjudged infringer acts with wanton disregard of a patentee's rights."[184]

   2.  *The Objective Approach.* In contrast to the subjective approach, the objective approach does not require the plaintiff to prove that the defendant's infringement was deliberate. Rather, the objective standard allows the plaintiff to prove willfulness by showing that the infringer's actions were unreasonable under the circumstances.[185]  There are two related objective standards:

---

178.   Mathis v. Spears, 857 F.2d 749, 754 (Fed. Cir. 1988).

179.   774 F.2d 459 (Fed. Cir. 1985).

180.   *Id.* at 465.

181.   793 F.2d 1565, 1580 (Fed. Cir. 1986) ("If infringement be accidental or innocent, increased damages are not awardable for the infringement. If infringement be willful, increased damages 'may' be awarded at the discretion of the district court, and the amount of increase may be set in the exercise of that same discretion.").

182.   *Gustafson, Inc.*, 897 F.2d at 510–11; *accord* Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992) (stating that "[w]hether infringement is 'willful' is by definition a question of the infringer's intent").

183.   Nat'l Presto Indus. v. W. Bend Co., 76 F.3d 1185, 1192 (Fed. Cir. 1996); *accord* Read Corp. v. Portec, Inc., 970 F.2d 816, 828 (Fed. Cir. 1992) (stating that "[w]illfulness is a determination as to a state of mind").

184.   Graco, Inc. v. Binks Mfg. Co., 60 F.3d 785, 794 (Fed. Cir. 1995) (reversing the trial court's enhancement of damages as an abuse of discretion); *Read Corp.*, 970 F.2d at 826 (noting that the Federal Circuit has upheld awards for willful infringement "where the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement is willful").

185.   Such circumstances could include not only what the defendant actually knew, but also what he should have known. *See* Akeva L.L.C. v. Mizuno Corp., 243 F. Supp. 2d

"reasonableness" and "reasonable belief." The reasonableness standard inquires strictly into the conformity of the infringer's actions with those of a reasonable person under the circumstances. As the Federal Circuit opined in *State Industries, Inc. v. Mor-Flo Industries, Inc.*,[186] "[t]he standard for proving willfulness . . . is 'whether, under all the circumstances, a *reasonable person* would prudently conduct himself with any confidence that a court might hold the patent invalid or not infringed.' Actual knowledge is not required."[187] Likewise, the Federal Circuit held in *Hoechst Celanese Corp. v. BP Chemicals Ltd.*,[188] that the willfulness of infringement is determined by "measur[ing] the infringing behavior, in the circumstances in which the infringer acted, against an objective standard of reasonable commercial behavior in the same circumstances. Willful infringement is thus a measure of reasonable commercial behavior in the context of the tort of patent infringement."[189] The infringer's beliefs are thus irrelevant. Even mere negligence might suffice, according to one district court:

> The Federal Circuit has noted that the duty to seek advice of counsel is an affirmative duty placed upon a potential infringer once he or she has actual notice of the existing patent. Thus, mere negligence or recklessness in failing to seek advice of counsel could constitute a finding of 'willful' patent infringement . . . .[190]

---

418, 423 (M.D.N.C. 2003) (reasoning that "[t]he totality of the circumstances test requires that all knowledge gained by the infringer relating to the advice subject matter must be revealed so that the factfinder can make its own determination as to whether the reliance was reasonable"). This requirement is analogous to the general requirement in tort law that for purposes of determining negligence, the reasonableness of an actor's conduct is evaluated by considering not only what he should have known under the circumstances, but also what he actually knew. Therefore, "[i]n general, the actor is required to know everything with respect to the risk of harm which is a matter of common knowledge in the community in which his conduct occurs." RESTATEMENT (SECOND) OF TORTS § 290 cmt. e (1965). However, "[i]f the actor has special knowledge, he is required to utilize it, but he is not required to possess such knowledge, unless he holds himself out as possessing it or undertakes a course of conduct which a reasonable man would recognize as requiring it." *Id.* § 290 cmt. f.

186.    883 F.2d 1573 (Fed. Cir. 1989).

187.    *Id.* at 1581 (emphasis added) (citation omitted); *accord* Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1555 (Fed. Cir. 1996) (evaluating willfulness under reasonable person standard); Ryco, Inc. v. Ag-Bag Corp., 857 F.2d 1418, 1428 (Fed. Cir. 1988) (same).

188.    78 F.3d 1575 (Fed. Cir. 1996).

189.    *Id.* at 1583.

190.    Everett Assocs. v. Transcon. Ins. Co., 57 F. Supp. 2d 874, 886 (N.D. Cal. 1999) (citation omitted); *see also* Mars, Inc. v. Conlux USA Corp., 818 F. Supp. 707, 718 (D. Del. 1993) ("Infringement of a patent is willful and deliberate when the infringer knows of the patent and has no reasonable basis to believe he has a good defense that the patent is invalid, not infringed or unenforceable, but nevertheless proceeds to make the patented product or device or to use the patented process.").

A related objective standard, the *reasonable belief* standard, requires both that the infringer hold a good faith belief of noninfringement, and that this belief be reasonable, as judged by comparison to that of a hypothetical prudent person under the circumstances. For example, in *King Instrument Corp. v. Otari Corp.*,[191] the Federal Circuit concluded that the defendant's *reasonable belief* that its activities fell within its own patent claims, although irrelevant in an infringement analysis, was a factor in determining intent with respect to willful infringement.[192] Likewise, in the early case of *Stickle v. Heublein, Inc.*,[193] the Federal Circuit found willfulness where the infringer had "no reasonable basis for believing it had a right to do the acts."[194]

More recently, in *SRI International, Inc.*, the Federal Circuit noted the plethora of willfulness formulations and offered a similar formulation:

> Although various criteria have been stated for determining "willful infringement," which is the term designating behavior for which enhanced damages may be assessed, the primary consideration is whether the infringer, acting in good faith and upon due inquiry, had *sound reason to believe* that it had the right to act in the manner that was found to be infringing. The law of willful infringement does not search for minimally tolerable behavior, but requires prudent, and ethical, legal and commercial actions. Thus precedent displays the consistent theme of whether a prudent person would have had *sound reason to believe* that the patent was not infringed or was invalid or unenforceable, and would be so held if litigated.[195]

The *SRI International, Inc.* standard makes clear that a potential infringer is required to have not only a good faith belief in noninfringement, but also a belief consistent with that of a

---

191. 767 F.2d 853 (Fed. Cir. 1985).

192. *Id.* at 867.

193. 716 F.2d 1550 (Fed. Cir. 1983).

194. *Id.* at 1565.

   With respect to the court's finding of deliberate and willful infringement, more is necessary to support a finding of "willfulness" than that the infringing acts were not inadvertent. The court must determine that the infringer acted in disregard of the patent, that is, that the infringer had no reasonable basis for believing it had a right to do the acts.

*Id.*; *see also* State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1581 (Fed. Cir. 1989) (noting that "[t]o establish willful infringement, a plaintiff must prove by clear and convincing evidence that the defendant acted with no reasonable basis for believing it had the right to do so").

195. SRI Int'l, Inc. v. Advanced Tech. Labs., Inc., 127 F.3d 1462, 1464–65 (Fed. Cir. 1997) (emphasis added) (citations omitted).

"prudent person." This standard requires the infringer's conduct to have been reasonable both subjectively *and* objectively. Similarly, in *WMS Gaming Inc. v. International Game Technology*,[196] the Federal Circuit held that

> [i]n order to find willful infringement, the district court 'was required to find by clear and convincing evidence in view of the totality of the circumstances that [the accused infringer] acted in disregard of the . . . patent and lacked a reasonable basis for believing it had a right to do what it did.'[197]

Thus, under the so-called "reasonable belief" standard, a plaintiff may support a claim of willful infringement by proving either the defendant's lack of a good faith belief in noninfringement or the unreasonableness of his actions. As observed by one commentator,

> A good faith belief of noninfringement is not a defense under the objective standard. Rather, the defendant must show that she reasonably relied on advice of counsel in forming a belief that she was not infringing. In proving this reasonable belief of noninfringement, the defendant must show: first that she actually believed she was not infringing and second that a reasonably prudent person in the defendant's position would share that belief.[198]

Because, as a practical matter, it will be easier for the defendant to prove unreasonableness than a culpable state of mind; therefore, this formulation will invite proof under the objective prong of the reasonable belief standard.

The Federal Circuit has also applied an objective standard to determine whether a defendant who had knowledge of a patent satisfied the attendant affirmative duty to seek competent advice of counsel.[199] As the court stated in *Ortho Pharmaceutical Corp.*, "counsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable."[200] In *Graco, Inc.*, the court held that "[a] critical factor in evaluating the effect of an opinion of counsel on willfulness is the reasonableness of a party's reliance thereon."[201]

---

196.    184 F.3d 1339 (Fed. Cir. 1999).
197.    *Id.* at 1354 (quoting Amsted Indus., Inc. v. Buckeye Steel Castings Co., 24 F.3d 178, 181 (Fed. Cir. 1994)).
198.    Goff, *supra* note 175, at 231 (footnote omitted).
199.    Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992).
200.    *Id.*
201.    Graco, Inc. v. Binks Mfg. Co., 60 F.3d 785, 793 (Fed. Cir. 1995).

Similarly, *Read Corp.* states that objective evidence must be considered in determining whether a defendant was justified in relying on patent counsel's advice.[202] In order to succeed, a good faith defense must rely on a letter bearing objective indicia of credibility, as perceived by the reasonable infringer.[203] Opinion letters should be reviewed to determine whether they evidence an adequate foundation based on a review of all necessary facts or whether they are conclusory on their face.

3.  *Other Formulations.* As we have seen, Federal Circuit opinions have articulated either an objective or a subjective standard for willfulness, with a lack of consistency from one opinion to the next.[204] In addition, many Federal Circuit decisions characterize the standard as one that is neither entirely objective nor subjective. For example, the Federal Circuit noted in *Georgia-Pacific Corp. v. United States Gypsum Co.,*[205] that "willfulness raises issues of *reasonableness . . . ,* and is often accompanied by questions of *intent*[ and] *belief.*"[206] This standard starts by articulating an objective standard, "reasonableness," and then recognizes that the objective inquiry may somehow be informed by subjective factors.[207] Such a standard is not only

---

202.  Read Corp. v. Portec, Inc., 970 F.2d 816, 829 (Fed. Cir. 1992) (concluding that an incompetent opinion must be shown by objective evidence).

203.  *Id.* A perusal of the opinion may lead one to believe that the letter must *be* legally competent, rather than *appear to be* competent to the layperson. As noted by one commentator, this is a source of confusion regarding what evidence is relevant to an inquiry into willfulness:

> [The court] then stated that an advice-of-counsel defense would fail if the advice were incompetent. If the reader takes this statement at face value without reading the entire opinion, she would believe that evidence of documents relied on by counsel, but not communicated to the client, would be admissible to show that the attorney was incompetent. However, the court later stated that the plaintiff must show that the letter would alert the client to the attorney's incompetence.

Goff, *supra* note 175, at 233.

204.  Refer to Parts III.A.1, III.A.2 *supra.*

205.  195 F.3d 1322 (Fed. Cir. 1999).

206.  *Id.* at 1334 (emphasis added).

207.  For another example of the Federal Circuit articulating a standard that shifts from one appearing to be objective to one that includes subjective factors, see *Hoechst Celanese Corp. v. BP Chemicals Ltd.,* 78 F.3d 1575, 1583 (Fed. Cir. 1996).

> The issue of "willful" infringement measures the infringing behavior, in the circumstances in which the infringer acted, against an *objective standard* of reasonable commercial behavior in the same circumstances. Willful infringement is thus a measure of reasonable commercial behavior in the context of the tort of patent infringement. The extent to which the infringer disregarded the property rights of the patentee, the *deliberateness* of the tortious acts, or other manifestations of unethical or injurious commercial conduct, may provide grounds for a finding of willful infringement and the enhancement of damages.

*Id.* (emphasis added).

confusing, but also logically dissatisfying. Likewise, in *Biotec Biologische Naturverpackungen GmbH & Co., v. Biocorp, Inc.,*[208] the court juxtaposed objective and subjective formulations by noting that willfulness "depends on findings of culpable intent and *deliberate* or *negligent* wrongdoing."[209] Recently, in the case of *Vulcan Engineering Co. v. FATA Aluminium, Inc.,*[210] the Federal Circuit again applied a standard that simultaneously described willful infringement as arising from a "deliberate disregard" for the patentee's rights and stated that the "focus is generally on whether the infringer exercised due care to avoid infringement."[211] These standards are at best vague and arguably internally inconsistent.

## B.  The Consequences of an Ambiguous Standard of Intent

The first consequence of this ambiguity is, of course, confusion over what must be proved to support a finding of willfulness.[212] It will generally be more difficult to prove that the defendant deliberately infringed (if the district court applies the subjective standard) than that he unreasonably infringed (under the objective standard), because there may be no direct evidence of the defendant's actual state of mind.[213]

A second, and related, consequence of the ambiguous willfulness standard is that different kinds of evidence will, at least in principle, be admissible under the different standards.[214] In practice, however, the evidentiary implications of the ambiguous standard are less significant than might initially be expected, because evidence that *directly* supports a finding of willfulness under one standard often tends to support *indirectly* the same finding under the opposing standard.[215] Thus, similar

---

208.    249 F.3d 1341 (Fed. Cir. 2001).

209.    *Id.* at 1356 (emphasis added).

210.    278 F.3d 1366 (Fed. Cir. 2002).

211.    *Id.* at 1378.

212.    *Compare* Graco, Inc. v. Binks Mfg. Co., 60 F.3d 785, 792 (Fed. Cir. 1995) (using the subjective standard where "a number of factors" are employed to determine willfulness), *with* Westvaco Corp. v. Int'l Paper Co., 991 F.2d 735, 743–44 (Fed. Cir. 1993) (utilizing objective criteria in determining "the reasonableness of the accused infringer's reliance on an opinion of counsel").

213.    *See* David A. Nelson, Comment, *Attorney-Client Privilege and Procedural Safeguards: Are They Worth the Costs?*, 86 NW. U. L. REV. 368, 413 & n.342–43 (stating that the defendant's state of mind is normally proven circumstantially because the defendant's own testimony is often the only direct evidence, and without this circumstantial evidence, willfulness seems difficult to prove).

214.    *See* Goff, *supra* note 175, at 229–30 (addressing the complications of determining the scope of waiver, which arise as the result of the circuit split on whether to apply the objective or subjective standard of willfulness).

215.    *See id.* at 232–33 (asserting that factors used to determine admissibility under

evidence tends to be relevant under either standard. For example, under the subjective standard, willfulness must be proved by producing clear and convincing evidence that the defendant had deliberately infringed the rights of the patent holder.[216] The reasonableness of the infringer's acts is not directly at issue, and evidence of the defendant's reasonableness *vel non* does not *directly* support a finding on the issue of willfulness.[217] However, such evidence may nonetheless be relevant, because it provides indirect evidence of the infringer's state of mind.[218] For example, evidence that a reasonable person would not have shared the defendant's belief that his actions were noninfringing would be relevant, as it would tend to make the infringer's claim of "innocent" infringement less credible.[219]

Similarly, under the pure objective standard, willfulness must be proved by the introduction of clear and convincing

---

the objective standard are relevant to the same determination under the subjective standard).

216.    Refer to Part III.A.1 *supra*.

217.    *See* Goff, *supra* note 175, at 232–33 (stating that "the state of the defendant's mind" is the only issue under the subjective standard, the determination of which requires the court to weigh all of the evidence, including, *inter alia*, the reasonableness of the defendant).

218.    *See* Goff, *supra* note 175, at 232–33.

> [E]vidence that tends to show the defendant's infringement was unreasonable makes the defendant's testimony that she did not knowingly infringe the patent less believable. . . . [T]he reasonableness of the defendant, although not directly in issue, is one factor in determining the defendant's state of mind. Thus, the defendant's reasonableness would be relevant to a material issue, and admissible in court absent another reason for not allowing it. Therefore, the factors under the objective standard . . . would also be relevant under the subjective standard.

*Id.* (citation and footnotes omitted).

219.    *Id.* Indeed, the courts have appeared to recognize that as an evidentiary matter, objective evidence is required to prove culpability under the subjective standard. *See* Nat'l Presto Indus. v. W. Bend Co., 76 F.3d 1185, 1192–93 (Fed. Cir. 1996) ("Liability for willfulness of infringement turns on considerations of intent, state of mind, and culpability . . . . Precedent illustrates various *objective standards* whereby the culpable severity of patent infringement has been measured." (emphasis added)); Gustafson, Inc. v. Intersystems Indus. Prods., Inc., 897 F.2d 508, 510–11 (Fed. Cir. 1990) (stating that "[w]hether an act is 'willful' is by definition a question of the actor's *intent*, the answer to which must be *inferred* from all the circumstances" (second emphasis added)).

> The Federal Circuit has characterized the process as an analysis to determine whether the alleged infringer exercised due care. The potential infringer "has an affirmative duty of due care that normally requires the potential infringer to obtain competent legal advice before infringing or continuing to infringe . . . ." Notwithstanding this affirmative duty, willfulness is not determined by a *per se* rule, but rather by an actor's intent which may be *revealed and inferred* from all of the circumstances. Because the intent must be reasonable, this determination includes both subjective and objective elements.

Akeva L.L.C. v. Mizuno Corp., 243 F. Supp. 2d 418, 421 (M.D.N.C. 2003) (emphasis added) (citations omitted).

evidence that the defendant acted unreasonably under the circumstances.[220] Whether the defendant acted deliberately is not directly at issue, and evidence of the defendant's state of mind would not directly support a finding on the issue of willfulness *vel non.*[221] However, evidence of the defendant's actual knowledge might still be relevant, as it would comprise, in part, the circumstances with respect to which the factfinder must determine the reasonableness of his behavior.[222]

Although in principle the evidentiary implications of an unclear standard appear to be minimal, this ambiguity contributes to the lack of clarity surrounding the issue of the proper scope of discovery following voluntary production of an exculpatory opinion letter by the defendant.[223] For example, under neither the objective nor the subjective standard is the *attorney's* state of mind properly at issue. However, as observed by one commentator:

> [T]he confusing Federal Circuit opinions have allowed persuasive litigants to lead the district courts on paths that no Federal Circuit authority supports. This confusion has resulted in several district courts including evidence in the advice-of-counsel waiver that the attorney never communicated to the client because the courts believed that such evidence was directly relevant to the determination of willful infringement.[224]

The following Parts discuss in detail consequences of the district courts' disagreements about evidence properly admissible to determine willfulness.

## IV. THE EMERGENCE OF A DILEMMA

As stated above, there are many ways to counter an allegation of willfulness, because willfulness is to be determined in light of the "totality of the circumstances," including those that are mitigating or ameliorating.[225] However, one of the most common and most effective ways of countering allegations of

---

220.    Refer to Part III.A.2 *supra.*

221.    Although clearly true with regard to the standard of objectivity previously characterized as reasonableness, refer to note 185 *supra* and accompanying text (confining a reasonableness inquiry to a comparison of the infringer's actions with those of a similarly situated reasonable person), this assertion breaks down when applied to the objectivity standard of reasonable belief, refer to notes 191–92 *supra* and accompanying text (including the alleged infringer's good faith belief as a factor in a willfulness inquiry).

222.    Refer to note 176 *supra* and accompanying text.

223.    Refer to Part V.A.2.c *infra.*

224.    Goff, *supra* note 175, at 234.

225.    Refer to note 37 *supra* and accompanying text.

willfulness is to produce a favorable opinion letter from
competent counsel—a defense that is sometimes called the
"advice of counsel" defense. This defense involves producing a
legal opinion upon which the infringer timely and reasonably
relied in concluding either that infringement of a patent was
unlikely, or if infringement were likely, the patent at issue was
invalid or unenforceable.[226] Indeed, as a result of the negative
inference rule in *Kloster Speedsteel AB*, the alleged willful
infringer is strongly compelled to produce an opinion letter if
available.[227]

However, production of the opinion letter comes at a cost to
the defendant. As a consequence of its voluntary production, the
previously privileged opinion letter becomes relevant and
admissible.[228] Moreover, producing the opinion letter waives
attorney-client privilege with respect to other of the defendant's
communications with counsel and may also waive work product
immunity with respect to documents in counsel's files,[229]
sometimes regardless of whether such files were ever
communicated to the client.[230] The basic rationale for the
extended scope of the waiver is *fairness*.[231] The court should not
allow the infringer to rely on a self-serving disclosure while
hiding other information on the same topic under the guise of
privilege.[232] Consequently, a basic dilemma emerges for the
alleged willful infringer: claim the defense or claim the
privilege.[233]

---

226.  Refer to Part II.C.3.a *supra*.

227.  Kloster Speedsteel AB v. Crucible Inc., 793 F.2d 1565, 1580 (Fed. Cir. 1986)
(noting that a defendant's "silence on the subject [of advice obtained from counsel] would
warrant the conclusion that it either obtained no advice of counsel or did so and was
advised that its [proposed actions] would be an infringement of valid U.S. patents").

228.  Refer to note 242 *infra*.

229.  *See* Cecil C. Kuhne, III, *The Advice-of-Counsel Defense in Patent Infringement
Cases: How Far Does Waiver of Work Product Extend?*, 30 PEPP. L. REV. 445, 446–49
(2003) (noting that "the scope of work-product waiver relative to the advice-of-counsel"
defense is an important legal question).

230.  *See* Cordis Corp. v. SciMed Life Sys., Inc., 980 F. Supp. 1030, 1032–33 (D. Minn.
1997) (stating that it is rational to permit discovery of the factual bases for counsel's
opinion letter).

231.  *See* Mushroom Assocs. v. Monterey Mushrooms, Inc., 24 U.S.P.Q.2d 1767, 1770
(N.D. Cal. 1992) (noting that the underlying principle of waiver in the advice of counsel
defense is fairness); *see also* Abbott Labs. v. Baxter Travenol Labs., Inc., 676 F. Supp. 831,
831–33 (N.D. Ill. 1987) (noting that the court will not allow the defendant to hide behind
the privilege of advice of counsel, while concealing the full nature and extent of that
advice).

232.  *Mushroom Assocs.*, 24 U.S.P.Q.2d at 1770.

233.  The Federal Circuit has recognized this dilemma in *Quantum Corp. v. Tandon
Corp.*, 940 F.2d 642, 644 (Fed. Cir. 1991). *Id.* (advising district courts to "give serious
consideration to a separate trial on willfulness whenever the particular attorney-client

## V. Recognizing Unfairness in the "Infringer's Dilemma"

To begin an evaluation of the "infringer's dilemma," assume momentarily that the scope of the waiver was entirely clear. The alleged willful infringer would be forced to make a difficult, but not necessarily unfair, choice—either choose to invoke the advice-of-counsel defense, thereby waiving privilege or immunity or both, or choose not to produce an opinion letter, thereby maintaining a full panoply of privileges and immunities but suffering the adverse inference that the infringer either never obtained a letter or obtained an unfavorable one.

The mere fact that a dilemma exists and that it is involves a difficult choice between two important interests does not render it per se unfair. However, if an infringer is placed in this dilemma unnecessarily, or the severity of the dilemma is greater than necessary to reflect a fair balancing of underlying policies, then the dilemma *is* unfair. The sources of this unfairness are several. First, uncertainty about the scope of waiver following voluntary production of an opinion letter makes it difficult for the alleged willful infringer to resolve the dilemma in an informed and rational manner. Second, the dilemma itself arises because of an affirmative duty rule that unfairly burdens innovators. Third, the adverse inference rule unjustifiably increases the severity of the dilemma.

### A. *The Uncertain Scope of the Waiver of Privilege and Immunity Makes an Informed Decision Difficult*

Issues regarding the scope of the waiver involve precisely which materials must be disclosed in order to assert the advice-of-counsel defense. Unfortunately, the Federal Circuit has not yet addressed either the temporal scope of waiver or the scope of the waiver of attorney work product that was never disclosed to the client.

*1. Uncertain Temporal Scope of Waiver.* As a result of the Federal Circuit's silence, the temporal scope of the waiver remains unsettled. Particularly troubling is the possibility that the waiver of privilege and/or immunity may extend to trial counsel. If it does, how can the defendant ever really defend himself?[234] Indeed, some

---

communications, once inspected by the court *in camera*, reveal that the defendant is indeed confronted with this dilemma"). The possibility of bifurcating the trial and possibly even discovery is discussed in Part VI.D *infra*.

234.    *See* Hickman v. Taylor, 329 U.S. 495, 511 (1947) (noting that the "[p]roper preparation of a client's case demands that [the lawyer] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and

courts have refused to allow discovery of materials prepared after the start of litigation.[235] Others, however, have considered the waiver of immunity to be temporally unbounded.[236]

Consider, for example, two recent district court cases. In *Aspex Eyewear, Inc. v. E'lite Optik, Inc.*,[237] the district court opined:

> [A]lthough the court finds the defendant has waived the attorney-client privilege and work-product immunity on the subject matter of the defense of advice of counsel, that defense is limited to the advice provided by [opinion counsel]. . . . The work-product doctrine is aimed to protect the effectiveness of a lawyer's trial preparation by immunizing his or her materials from discovery.[238]

In contrast, in *Akeva L.L.C. v. Mizuno Corp.*,[239] the court stated that:

> [t]he waiver of attorney-client privilege or work product protection does not, as defendants argue, exist solely at a particular point of time, such as when the client receives the opinion from counsel. As recognized by the Federal Circuit[,] because infringement is a continuing activity, the requirement to exercise due care and seek and receive advice is a continuing duty. Therefore, once a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement. Consequently, the waiver of attorney-client privilege or work product protection covers all points of time, including up through trial.[240]

The *Akeva L.L.C.* court ultimately held that plaintiffs could discover the opinion work product of the defendant's trial

---

plan his strategy without undue and needless interference").

235.   Refer to notes 237–38 *infra* and accompanying text.

236.   Refer to notes 239–40 *infra* and accompanying text.

237.   276 F. Supp. 2d 1084 (D. Nev. 2003).

238.   *Id.* at 1095; *accord* Dunhall Pharm., Inc. v. Discus Dental, Inc., 994 F. Supp. 1202, 1206 (C.D. Cal. 1998) ("Once the lawsuit is filed, the waiver of work-product protection ends. This temporal limitation flows from the enhanced interest in protecting against disclosure of trial strategy and planning."); *see also* Electro Scientific Indus., Inc. v. Gen. Scanning, Inc., 175 F.R.D. 539, 547 (N.D. Cal. 1997) (holding that work product before the lawsuit was filed is discoverable).

239.   243 F. Supp. 2d 418 (M.D.N.C. 2003).

240.   *Id.* at 423 (citation omitted) (allowing discovery of opinion work product of patent counsel); *accord* Chiron Corp. v. Genentech, Inc., 179 F. Supp. 2d 1182, 1188 (E.D. Cal. 2001) (allowing discovery of attorney opinions offered before the start of litigation); D.O.T. Connectors, Inc. v. J.B. Nottingham & Co., No. 4:99cv311-WS, 2001 U.S. Dist. LEXIS 739, at *7, 9–10 (N.D. Fla. Jan. 22, 2001) (allowing discovery of all communications relevant to an opinion of *any* counsel regarding the defendant's possible infringement).

counsel, as long as those opinions had been communicated to the client.[241] The temporal uncertainty of the waiver, as illustrated by the holdings of these two cases, remains troubling.

   2.  *Uncertain Scope of Waiver of Attorney-Client Privilege and Work Product Immunity.*  Further complicating the defendant's decision is the unclear scope of the waiver of privilege and/or immunity that would follow from voluntary production of an opinion letter, although most courts seem to agree that the scope of waiver of attorney-client privilege is broad.[242] The reason for a broad waiver of privilege (with respect to documents communicated to the alleged infringer) is that such documents are useful in shedding light on the defendant's state of mind.[243] There is no consensus, however, about the proper scope of the waiver of immunity for attorney work product that was never communicated to the client.[244] Included in this category

---

241. *Aveka L.L.C.*, 243 F. Supp. 2d at 424 (holding that the defendants must reveal all documents relating to infringement including the trial lawyer's opinions if they are in the defendant's possession).

242. *See, e.g.*, Steelcase, Inc. v. Haworth, Inc., 954 F. Supp. 1195, 1198–99 (W.D. Mich. 1997) (stating that privilege is waived with respect to all documents communicated between client and patent counsel concerning the subject matter of the opinion); Thorn EMI N. Am., Inc. v. Micron Tech., Inc., 837 F. Supp. 616, 621 (D. Del. 1993) (noting that "[w]hen an alleged infringer decides to respond to a claim of willful infringement by offering evidence that he or she reasonably and in good faith relied on advice of counsel in making, using, or selling the allegedly infringing device, then the advice becomes relevant and admissible"); Mushroom Assocs. v. Monterey Mushrooms, Inc., 24 U.S.P.Q.2d 1767, 1770 (N.D. Cal. 1992) (holding that "the use of the advice of counsel defense waives the attorney-client privilege"); Abbott Labs. v. Baxter Travenol Labs., Inc., 676 F. Supp 831, 832 (N.D. Ill. 1987) (holding that when the defendant produced the three opinion letters regarding infringement, the defendant waived his privilege regarding any other such opinions on the same subject matter); Handgards, Inc. v. Johnson & Johnson, 413 F. Supp 926, 929 (N.D. Cal. 1976) (stating that "[t]he deliberate injection of the advice of counsel into a case waives the attorney-client privilege as to communications and documents relating to the advice").

243. *See Steelcase, Inc.*, 954 F. Supp. at 1199 (reasoning that "the scope of the waiver is 'broad,' to the extent that it is necessary to shed complete light upon the alleged infringer's state of mind").

244. *See* Aspex Eyewear, Inc. v. E'lite Optik, Inc., 276 F. Supp. 2d 1084, 1091–92 (D. Nev. 2003).

   There is a split of authority among the cases that have addressed the scope of the waiver of the attorney-client privilege and work-product immunity in the context of the defense of reasonable reliance on advice of counsel to an allegation of willful infringement. One line of cases take an expansive view of the scope of a waiver analyzing the need for discovery in litigation generally. Another line of cases criticizes this [broad] approach for failing to recognize Federal Circuit authority on the substantive patent law of willful infringement, and holds that the waiver does not extend to attorney work-product or documents upon which an attorney relied, unless they were disclosed to the client.

*Id.* (citations omitted); *see also* Kuhne, *supra* note 229, at 446–49 (noting that the scope of the advice-of-counsel defense waiver is variant among courts).

is "mental impression" work product,[245] such as drafts of the opinion, and possibly, internal memoranda regarding legal issues or the level of confidence an attorney had in his opinion. The uncertainty among the district courts is striking and disconcerting. While some courts have allowed a broad waiver of both attorney-client privilege and work product immunity,[246] others have permitted a narrower waiver, leaving work product protection intact, except for those documents that have actually been communicated to the client.[247]

In the following Parts, the competing approaches taken by the courts will be explored in more detail through the examination of two paradigmatic cases. The district court's opinion in *Thorn EMI* is a good example of the "narrow waiver" position, wherein the court held that, by asserting the advice-of-counsel defense, the defendants had waived only their attorney-client privilege with respect to the issue of reasonable reliance on patent counsel's advice.[248] The court held that materials not communicated between the defendants and outside patent counsel were irrelevant to the willfulness inquiry and thus remained protected from discovery under the doctrine of work product immunity.[249] In contrast, the *Mushroom Associates* court held that by invoking the advice-of-counsel defense, the defendants had waived not only attorney-client privilege but also work product immunity.[250] The court thus ordered discovery of all documents relating to infringement, including uncommunicated

---

245.   When a court orders discovery of work product, Federal Rule of Civil Procedure 26(b)(3) requires that it "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." FED. R. CIV. P. 26(b)(3). The Supreme Court has not ruled on whether a court can permissibly order opinion work product to be disclosed. *See* Upjohn Co. v. United States, 449 U.S. 383, 401–03 (1981). Some courts have distinguished between ordinary and opinion work product in ordering discovery of documents following the defendant's voluntary production of an opinion letter. *See, e.g.,* D.O.T. *Connectors, Inc.,* 2001 U.S. Dist. LEXIS 739, at *10 (waiving immunity with respect to all evidence considered by opinion counsel whether or not it was communicated to the client, but preserving immunity for uncommunicated *opinion* work product).

246.   *See, e.g.,* Novartis Pharm. Corp. v. Eon Labs Mfg., Inc., 206 F.R.D. 396, 399 (D. Del. 2002) (holding that a broad waiver applies to all materials available to opinion counsel); *Mushroom Assocs.,* 24 U.S.P.Q.2d at 1770–71 (holding that both privilege and immunity are waived with respect to all relevant documents regardless of whether they were communicated).

247.   *See, e.g., Thorn EMI,* 837 F. Supp. at 622 (stating that counsel's uncommunicated work product is irrelevant to a determination of the client's state of mind and therefore work product immunity should be respected); Steelcase, Inc. v. Haworth, Inc., 954 F. Supp. 1195, 1199–1200 (W.D. Mich. 1997) (agreeing with the rationale given in *Thorn EMI* regarding uncommunicated work product).

248.   *Thorn EMI,* 837 F. Supp. at 622–23.

249.   *Id.*

250.   *Mushroom Assocs.,* 24 U.S.P.Q.2d at 1770–71.

attorney mental impression work product.[251]

### 3. *The Broad Waiver Position.*

a. *Mushroom Associates.* First, the court considered the issue of attorney-client privilege—finding that the defendant's "inject[ion of] their counsel's advice as an issue into this litigation . . . 'waives the attorney-client privilege as to communications and documents relating to the advice.'"[252] The court opined that fairness is the underlying principle supporting a waiver in such circumstances, stating that "[a] party should not be allowed to rely on self-serving documents in its defense while withholding potentially damaging information under the guise of the attorney-client privilege."[253] The *Mushroom Associates* court acknowledged that such a rule imposes a tough choice on those defending against a charge of willful patent infringement—namely a choice of "claim the defense or claim the attorney-client privilege. However, tough choices are usually only disfavored when the choice is between constitutional rights . . . [and none] are at stake [here]."[254]

Next the court considered the separate issue of whether, by asserting the advice-of-counsel defense, the defendants had also waived their attorney work product immunity.[255] Holding that production of the opinion letter did indeed waive work product immunity, the court ordered the defendants to produce all work product relevant to the infringement issue.[256] The court justified its holding on two grounds. First, the court found support in principles of fairness equivalent to those underlying the need to waive privilege in these cases.[257] "If a party is going to attack another party's reliance on advice of counsel, information covered by the work product immunity would aid in that attack."[258] Further, the court believed that in the instant case, "[a]s in most instances where the advice of counsel is an issue, the party seeking discovery will be able to meet the standard imposed by

---

251.  *Id.* at 1771 (stating that a plaintiff's need for this information is compelling in order to attack the defendant's advice-of-counsel defense).

252.  *Id.* at 1770 (quoting, in part, Handgards, Inc. v. Johnson & Johnson, 413 F. Supp. 926, 929 (N.D. Cal. 1976)).

253.  *Id.*

254.  *Id.* (citing Abbott Labs. v. Baxter Travenol Labs., Inc., 676 F. Supp. 831, 832–33 (N.D. Ill. 1987)).

255.  *Id.*

256.  *Id.* at 1771.

257.  *Id.* at 1770.

258.  *Id.*

Rule 26(b)(3) [of the Federal Rules of Civil Procedure]."[259] The court stated, "A substantial need exists for the work product so that the discovering party can adequately address the advice-of-counsel defense. Also, the discovering party cannot obtain substantially equivalent materials because the specific work product is directly at issue."[260]

In addition, the court cited *Handgards, Inc.*, which held that under Rule 26(b)(3) of the Federal Rules of Civil Procedure, opinion work product is not absolutely protected by the work product immunity, but rather is properly discoverable "when an attorney's opinion work product is directly at issue and the need for production is compelling."[261] In the instant case, the court opined both that the plaintiff's knowledge of the attorney's thought processes bore directly on the defendants' advice-of-counsel defense, and that the plaintiff displayed compelling need for this information, because "[t]he only way the plaintiff can attack the defendants' advice of counsel defense is by having access to circumstances and factors surrounding the advice."[262] The court's order also extended to all attorney opinion work product relating to the infringement issue.[263]

Absent from the opinion in *Mushroom Associates* is the citation of Federal Circuit law regarding the standard for willful patent infringement. Thus, the court appears to have ordered broad production of privileged and immune documents, including opinion work product, without consideration of whether the privileged documents would be relevant to the issue of willfulness, and without consideration of whether the immune documents would be either relevant or reasonably calculated to lead to admissible evidence under Rule 26(b)(1) of the Federal Rules of Civil Procedure. As discussed above, no Federal Circuit authority suggests that the state of mind of the attorney is relevant to the determination of willfulness.[264]

b.   Progeny. A string of subsequent opinions embraced the decision in *Mushroom Associates*, and several supplied additional rationales for their decisions to allow a broad waiver of attorney work product immunity. The following survey of several "broad waiver" opinions reveals the persistence of the "fundamental

---

259.   *Id.* at 1771.

260.   *Id.*

261.   *Id.* (citing Handgards, Inc. v. Johnson & Johnson, 413 F. Supp. 926, 931 (N.D. Cal. 1976)).

262.   *Id.*

263.   *Id.*

264.   Refer to Part III.B *supra.*

fairness" rationale advanced in *Mushroom Associates*[265] plus the emergence of at least four additional reasons.

First, a number of courts, including *Mushroom Associates*, have continued to articulate "fundamental fairness" as a rationale supporting the broad waiver of privilege and immunity.[266] For example, the court in *Chiron Corp. v. Genentech, Inc.*,[267] held that a defendant should not be permitted to selectively disclose self-serving privileged communications while claiming privilege on damaging communications relating to the same subject.[268] Likewise, in *Aspex Eyewear, Inc.*, the court held,

> Fundamental fairness compels the conclusion that a litigant may not use reliance on advice of counsel to support a claim or defense as a sword in litigation, and also deprive the opposing party the opportunity to test the legitimacy of that claim by asserting the attorney-client privilege or work-product doctrine as a shield. . . . [T]he defendant, having waived the privilege by asserting the advice of counsel defense, must produce not only attorney-client communications, but also all documents relied upon or considered by counsel in rendering the opinions relied upon. A contrary result ignores the potential for litigation abuses, and erects too much of an impediment to the truth seeking process. Counsel for the opposing party should not be able to act as the gatekeeper to determine what information their adversary is entitled to have.[269]

The fundamental fairness rationale thus addresses the unfairness that would be inherent under a regime wherein a defendant could selectively disclose only that relevant information which is also self-serving. How far, however, does "fundamental fairness" go in explaining the need to allow full disclosure of evidence *notwithstanding its relevancy*? Perhaps recognizing the limited potential of the "fundamental fairness" reasoning, courts have supplied additional reasons in support of a broad waiver—reasons dealing directly with issues of relevance, admissibility, and policy concerns. These reasons are discussed next.

Some courts have noted that the examination of attorney work product may be permitted under the rules of discovery,

---

265. This discussion is intended to be illustrative, not exhaustive, and therefore cites representative district court cases.

266. *Mushroom Assocs.*, 24 U.S.P.Q.2d at 1770.

267. 179 F. Supp. 2d 1182 (E.D. Cal. 2001).

268. *Id.* at 1186.

269. Aspex Eyewear, Inc. v. E'lite Optik, Inc., 276 F. Supp. 2d 1084, 1092–93 (D. Nev. 2003) (citations omitted).

even if such evidence is not ultimately admissible at trial. Restated, these courts have noted that the standard for discovery is broader than that for admissibility.[270] Consider, for example, the court's opinion in *Dunhall Pharmaceuticals, Inc. v. Discus Dental, Inc.*[271]:

> A narrowly circumscribed waiver, at the discovery stage, creates a danger of a defendant utilizing favorable opinion letters while allowing unfavorable evidence to languish in their attorney's files under the protection of the work-product doctrine. *Steelcase* overemphasizes the Federal Circuit's limitations on admissibility, and fails to take into account Rule 26(b)(1)'s broader reach at the discovery phase of the litigation. While negative evidence contained in the attorney's files may not ultimately reflect upon the client's state of mind, and will therefore not be admissible as evidence of willfulness, that evidence could very well lead to the discovery of relevant and admissible evidence of the client's state of mind that might not otherwise come to light. If the attorney's files contain evidence contradicting or questioning the opinion relied on by the client, the plaintiff has a right to know about such evidence in order to fully question defendants and their counsel regarding that evidence, disclosure to the client, and other related issues.[272]

In addition, some courts have noted that the examination of attorney work product might often be relevant to the defendant's state of mind, as it may reveal the presence of hitherto undisclosed communications between counsel and client. For example, as the court explained in *Electro Scientific Industries, Inc. v. General Scanning, Inc.*,[273]

> Documents in the files of [patent or opinion] counsel might be highly probative [on the issues] of whether [the client] in fact received additional communications from counsel about the issues addressed in the opinion letter, and . . . whether any such additional communications included views,

---

270.    *Id.* at 1093 (citing Dunhall Pharms., Inc. v. Discus Dental, Inc., 994 F. Supp. 1202, 1204 (C.D. Cal. 1998)). The court stated:

> [A]lthough the state of mind of the alleged infringer is the relevant inquiry in a willful infringement accusation, the standard for discovery is broader than that for admissibility. In this court's view, the cases that narrow the scope of the waiver of the attorney-client privilege and work-product immunity to communications between the attorney and the client overemphasize the standards for admissibility and fail to recognize that litigants are entitled to test the positions taken by adverse parties in discovery.

*Id.*

271.    994 F. Supp. 1202 (C.D. Cal. 1998).

272.    *Id.* at 1204–05.

273.    175 F.R.D. 539 (N.D. Cal. 1997).

information, or analysis that was in any material way different from the views, information, or analysis in that letter . . . [especially where] analyses and conclusions in the lawyer's private file were clearly at odds with the content of the disclosed opinion . . . . [I]t would be . . . irrational to assume that there could be no relationship between what counsel really thought (as reflected in her private papers) and what she in fact communicated to her client. In this important sense, evidence about what really was in the lawyer's mind could be quite relevant to . . . what really was in the client's mind.[274]

Likewise, in *Aspex Eyewear, Inc.*, the court noted that failure to order disclosure of attorney work product "ignore[s] the fact that evidence in an attorney's file will not always clearly reflect whether its contents were communicated to the client."[275]

The district court reasoned similarly in *Mosel Vitelic Corp. v. Micron Tech., Inc.*[276] A brief introduction to this case is helpful. In *Mosel*, during the pendency of an action alleging willful patent infringement, the defendant asked its outside patent counsel for a written opinion on the infringement issue.[277] Patent counsel and trial counsel conferred on the contents of the opinion letter, and the plaintiffs sought discovery of the patent counsel's initial draft opinions, which were presumably "uncontaminated" by the influence of the trial lawyers.[278] Patent counsel had, however, destroyed the previous draft after each revision, and plaintiffs sought sanctions.[279] The court sanctioned the defendants for the destruction of the drafts by instructing the jury that it could draw an adverse inference from the draft's destruction—rejecting defendant's argument that sanctions were unwarranted because patent counsel's notes and rough drafts fell within the attorney-client privilege or work-product immunity and were therefore not discoverable.[280]

The court disagreed with the defendant's argument, holding that announcing an intent to assert the advice-of-counsel defense at trial waives not only privilege but work product immunity as well, even immunity for "mental impression" work product.[281] The court gave two separate reasons for its holding. First, it found

---

274.    *Id.* at 545.
275.    *Aspex Eyewear, Inc.*, 276 F. Supp. 2d at 1094.
276.    162 F. Supp. 2d 307, 312 (D. Del. 2000).
277.    *Id.* at 309.
278.    *Id.* at 309–10, 312.
279.    *Id.* at 309–10.
280.    *Id.* at 311–13, 316.
281.    *Id.* at 312–13.

that the discarded materials, previously immune, became discoverable because they were relevant to the issue of whether the defendant's asserted reliance on the advice of patent counsel was in fact reasonable.[282] Specifically, the court agreed with the plaintiff that patent counsel's draft opinions were essential to determining whether counsel's ultimate, communicated opinion was "objective and independent or, instead, tainted by the suggestions of trial attorneys who were representing [the alleged infringer] in a hotly-contested litigation."[283] The court criticized *Thorn EMI* and its progeny for failing to recognize that uncommunicated opinion work product of patent counsel can sometimes be relevant to the determination of the defendant's state of mind, such as when discrepancies in the evolution of the opinion letter permit the inference that "[the client] in fact received additional communications from counsel about the issues addressed in the opinion letter."[284] The *Mosel Vitelic Corp.* court reasoned that in this important sense, "'evidence about what really was in the lawyer's mind could be quite relevant to what really was in the client's mind.'"[285]

Another rationale advanced in support of a "broad waiver" of work product immunity is that, as a matter of policy, a broad waiver removes a troubling incentive for ignorance that would exist if attorneys' opinion work product were not subjected to scrutiny. That is, because the Federal Circuit does not require the client to evaluate the legal correctness of an attorney's opinion, the potential infringer has an interest in being given a rosy, if unrealistic, opinion. As the court stated in *Mosel Vitelic Corp.*,

> [B]y limiting the waiver of the privilege only to those matters which are communicated to the client, *Thorn* and its progeny have effectively encouraged patent counsel to place only the most favorable version of the facts and the law in their opinion letters, even if these attorneys are aware of other information which is far less helpful to their client.[286]

---

282.    *Id.* at 311–13.

283.    *Id.* at 309.

284.    *Id.* at 312 (referring to *Thorn EMI N. Am., Inc. v. Micron Tech, Inc.*, 837 F. Supp. 616, 622 (D. Del. 1983), which stated that counsel's uncommunicated work product is irrelevant to a determination of the client's state of mind and therefore work product immunity should be respected). *Thorn EMI* is the leading case for the so-called "narrow-waiver" position, which is discussed in detail below. Refer to Part V.A.4.a *infra*.

285.    *Mosel Vitelic Corp.*, 162 F. Supp. 2d at 312 (quoting *Electro Scientific Indus., Inc. v. Gen. Scanning, Inc.*, 175 F.R.D. 539, 545 (2000)).

286.    *Id.* at 312.

Similarly, in *Cordis Corp. v. SciMed Life Systems, Inc.*,[287] the court stated, "We doubt that the law would intend, however inadvertently, to reward incompetence, or willful artifice, by insulating such opinions from searching scrutiny."[288] Likewise the *Aspex Eyewear, Inc.* court opined,

> A litigant could manipulate the process by giving the attorney only favorable information, and directing that he or she only review the materials provided, effectively dictating what the opinion will be. Similarly, an attorney who reviews and discounts or disregards materials adverse to the client's position should not be able to hide those materials from discovery asserting he or she did not rely upon them in rendering his or her opinion. There is simply too much potential for abuse to preclude an adversary from conducting discovery in these areas.[289]

Thus, a number of district courts appear to have decided to order the broad waiver of attorney work product immunity, based at least in part on public policy grounds.

A final reason sometimes advanced to support the broad waiver of work product immunity is that the state of mind of the attorney is *inherently* somehow relevant to the willfulness inquiry. Indeed, courts have sometimes expressed concern over the need to determine the competence of the attorney's opinion. Thus, in *Aspex Eyewear* the court stated that those who oppose disclosure of attorney work product "fail to recognize that the absence of materials in an attorney's file may be compelling evidence of the competency of the opinion and/or the adequacy of the inquiry on the subject matter of the defense."[290] However, as discussed in Part III, Federal Circuit caselaw makes clear that even under an objective standard of willfulness, the relevant inquiry is not into the *actual* legal competence of the opinion, but

---

287.    980 F. Supp. 1030 (D. Minn. 1997).

288.    *Id.* at 1034 n.1. The *Mosel Vitelic Corp.* court's second basis for its decision was essentially a policy argument. Citing *Cordis Corp.* with approval, the court opined that limiting the waiver of the privilege only to those matters actually communicated to the client

> effectively encourage[s] patent counsel to place only the most favorable version of the facts and the law in their opinion letters, even if these attorneys are aware of other information which is far less helpful to their client . . . . This court, like the one in *Cordis*, does not believe that the law should encourage or reward, even if inadvertently, the creation of opinion letters that, while facially valid, are 'fraught with ineptitude [or] error' in an effort to protect the client.

*Mosel Vitelic Corp.*, 162 F. Supp. 2d at 312–13 (quoting, in part, *Cordis Corp.*, 980 F. Supp. at 1034 n.1).

289.    Aspex Eyewear, Inc. v. E'lite Optik, Inc., 276 F. Supp. 2d 1084, 1094 (D. Nev. 2003).

290.    *Id.*

rather whether a reasonable layperson would have *perceived* the opinion to have been competent. How the state of mind of the attorney could be viewed as a proper target of inquiry is therefore difficult to understand.

### 4. *The Narrow Waiver Position.*

a. *Thorn EMI*. The court in *Thorn EMI* examined the same issues as those in *Mushroom Associates*.[291] While the *Thorn EMI* court concurred in a finding that the defendant's invocation of the advice-of-counsel defense constituted a waiver of attorney-client privilege, it reached the entirely opposite conclusion about the degree to which work product immunity should be waived.[292] In *Thorn EMI*, the plaintiff sought to discover documents relating to outside counsel's opinions: documents prepared by in-house counsel for outside counsel, documents received by in-house counsel from outside patent counsel, and uncommunicated attorney work product of outside patent counsel, including "documents that evidence mental impressions of the attorneys preparing the opinions, such as internal memoranda and drafts of the opinions."[293]

The plaintiff believed that these documents were relevant to determining the competence of the opinions and whether or not the defendant's alleged reliance on them was justified.[294] In particular, the plaintiff sought to discover why a full year had elapsed between the plaintiff's receipt of notice of infringement and the issuance of the opinion of outside counsel, why some of the opinions were missing some legal analyses, and why outside counsel had relied virtually exclusively on the predicate technical facts presented to it by the defendants.[295] The defendants disputed the relevance of these documents and argued in addition that they were protected from discovery by the doctrine of work product immunity because they reflected the mental impressions of their opinion counsel.[296]

First, the court noted that in a case of willful patent infringement, the matter of consequence is the alleged infringer's state of mind.[297] As a result, both the advice of counsel and

---

291.   Thorn EMI N. Am., Inc. v. Micron Tech., Inc., 837 F. Supp. 616 (D. Del. 1993).

292.   *Id.* at 622 (concluding that uncommunicated mental-impression work product is not probative of the alleged infringer's state of mind).

293.   *Id.* at 619.

294.   *Id.*

295.   *Id.*

296.   *Id.*

297.   *Id.* at 620.

"[d]ocuments and testimony relating to that advice are relevant in that they are probative of the alleged infringer's intent. They are admissible because the alleged infringer has waived the privilege as to the subject matter of the advice."[298] The court then held that Thorn should be able to discover facts relating to whether or not the defendant's reliance on the opinions was reasonable.[299] Thus, it ordered discovery of communications between the patent counsel and client on such matters, for example the timeliness of defendant's request for an opinion letter, its knowledge of counsel's competence, and its knowledge of the rigor of counsel's analysis.[300]

However, with respect to documents neither received from nor communicated to the defendant, the court refused to order discovery.[301] The court concluded that materials unknown to the defendant were not probative of the defendant's intent and were thus probably not relevant:

> [T]his Court does not believe a party's assertion of good faith reliance on advice of counsel necessarily puts counsel's work product at issue. The facts of consequence to the determination of a claim of willful infringement relate to the infringer's state of mind. Counsel's mental impressions, conclusions, opinions or legal theories are not probative of that state of mind unless they have been communicated to that client.[302]

The court held that the defendant had not waived work product immunity, noting that

> materials relating to mental impressions, opinions and legal theories of attorneys, are typically found to be immune from disclosure under Federal Rule of Civil Procedure 26(b)(3). . . . [C]ourts generally find a waiver [of immunity] only if facts relevant to a particular, narrow subject matter are at issue and have been disclosed under circumstances where it would be unfair to deny the other party an opportunity to discover other facts relevant to that subject matter.[303]

b.   Progeny. In the recent case of *Akeva L.L.C.*, the court took issue with a number of the reasons articulated by courts

---

298.   *Id.* at 621.
299.   *Id.* at 622–23.
300.   *Id.*
301.   *Id.*
302.   *Id.* at 622.
303.   *Id.* at 621.

that support the broad waiver position.[304] In refusing to order disclosure of noncommunicated attorney work product, the court found the broad waiver rule to be "best suited to the situation where the opinion counsel is trial counsel. In that situation, the opinion counsel has a dual role in advertising [sic] the client and, thus, there is a greater need to make sure the opinion is not tainted by bias or other influences."[305] The court also discounted the possibility that client and counsel may be orchestrating a sham opinion—finding "that possibility to be sufficiently remote . . . . Therefore, when the opinion counsel is independent, and should nothing else appear, the broader waiver of work product need not be employed."[306]

In *Nitinol Medical Technologies, Inc. v. AGA Medical Corp.*,[307] the court recognized that "it is the alleged infringer's state of mind which is relevant, and the inquiry is whether the infringer's reliance on the opinion of counsel was reasonable."[308] Consequently, the court concluded that "[u]nless it can be established that the defendant knew of the factual basis for counsel's opinions, such work product should not have to be produced."[309] Indeed, in *Steelcase Inc. v. Haworth, Inc.*,[310] the trial court noted that despite the lack of "Federal Circuit authority directly addressing the discovery issue[,] . . . [t]he Federal Circuit has . . . provided substantial guidance concerning the general principles governing the advice-of-counsel defense."[311] The court went on to criticize *Mushroom Associates* and its progeny for their failure to accept this guidance—namely that it is the state of mind of the infringer, and not that of the attorney, that is at issue in the determination of willful patent infringement.

> Remarkably, these cases do not attempt to divine from Federal Circuit authority any controlling principle grounded in substantive patent law. In fact, these cases do not cite Federal Circuit authority at all, but rely upon district court opinions in patent cases or in general civil litigation. Furthermore, . . . the *Mushroom Associates* case is based upon faulty analysis, under which the attorney's state of mind, and not that of the client, becomes

---

304.    *Akeva L.L.C.*, 243 F. Supp. 2d 418, 424 (M.D.N.C. 2003).

305.    *Id.*

306.    *Id.*

307.    135 F. Supp. 2d 212 (D. Mass. 2000).

308.    *Id.* at 218.

309.    *Id.* (noting, however, that it may be relevant that the alleged infringer "did not have information about the factual basis of counsel's opinion").

310.    954 F. Supp. 1195 (W.D. Mich. 1997).

311.    *Id.* at 1198.

paramount.[312]

The split among the district courts on the proper scope of the waiver of work product immunity for documents undisclosed to the client is likely to continue until the Federal Circuit is able to address the issue.

### B. *An Unfair Affirmative Duty Rule Places Many Infringers in the Dilemma Unnecessarily*

The current version of the affirmative duty rule imposes an unfair burden on many potential infringers to obtain legal advice. Without this rule, many fewer infringers would find themselves on the horns of the infringer's dilemma. Indeed, the rule, generally requiring an opinion letter when the defendant has actual notice of another's patent rights, is undesirable for two principal reasons.

First, the rule is tremendously and inefficiently costly to the potential infringer. For example, in conducting prior art research concomitant with, or subsequent to, development of a product, the developer may come across myriad patents. Because this research conveys actual notice of these patents, the current version of the affirmative duty rule appears on its face to require the developer to obtain legal advice regarding each of them. Obviously, this may be impracticable; the inventor may need to make judgment calls about which patents appear to be sufficiently related to the invention so as to merit further inquiry. However, it may be easy for the inventor to make "the wrong call," especially if the assessment of the probability of infringement proceeds solely according to the degree of similarity between the product and the specific embodiments described in the patent, rather than based on an examination of the patent's claims, which may seem abstruse to a nonlawyer. Thus, the inventor might end up infringing the patent even though his product bears no cognizable resemblance to any of the embodiments described therein. Such an error in judgment—failing to obtain competent legal advice with respect to each patent—can thus prove quite costly, given the multiplicative effect of a willful infringement award on damages.

Due to the potential for large damage awards, the inventor has a strong yet economically inefficient incentive to err on the side of obtaining legal advice on all patents of which he has actual notice—a response that is unnecessarily costly. Moreover, given that insubstantial opinions lack value as a mitigating

---

312.    *Id.* at 1199.

factor, the inventor is likely to insist on a *thorough* analysis with respect to each patent, even if this is not necessarily the most efficient course of action. Finally, an independent reason why the current affirmative duty rule is so costly is that patentees can give potential infringers actual notice of their patents (and thereby invoke the potential infringer's affirmative duty to seek competent legal advice) without creating declaratory judgment jurisdiction.[313]

A second reason why the current affirmative duty rule is undesirable is that the duty is triggered by *actual* notice. Thus, the rule creates a perverse incentive for potential infringers not to become "too aware" of the intellectual property landscape in their field of endeavor.[314] One consequence of such "willful ignorance" is that inventors without knowledge of existing patents will be unable to design around them. Given the desirability of this feature of the patent system,[315] creating incentives not to design around existing patents seems strongly suspect.

### C. The Adverse Inference Rule Unjustifiably Increases the Severity of the Dilemma

The infringer's dilemma is also unnecessarily severe because of the ill-justified adverse inference that failure to produce an opinion letter at trial is prima facie evidence either that the infringer did not obtain a letter or that an obtained letter was

---

313.    *See* SRI Int'l, Inc. v. Advanced Tech. Labs., Inc., 127 F.3d 1462, 1470 (Fed. Cir. 1997) ("Actual notice may be achieved without creating a case of actual controversy in terms of 28 U.S.C. § 2201[, the Declaratory Judgment Act]."). Actual notice provides the basis for enhanced damages. Refer to notes 52–67 *supra* and accompanying text.

314.    *See* Y'Barbo, *supra* note 62, at 73–74.

Moreover, the more carefully the firm reviews the opinion, the more vulnerable it becomes at the hands of this completely unchecked waiver. For instance, suppose a firm hires outside counsel to prepare a written opinion regarding whether the firm may potentially infringe a competitor's patent. The opinion is then handed over to in-house counsel who critiques it and sends it back for revision. To me, this is strong evidence that the firm wishes to avoid infringement. However, such written critique in the form of e-mails and memos is discoverable. This means that along with the opinion, opposing counsel will have documents stating things like "I think the factual comparison of our proposed product with claim one is weak and needs further work," which the plaintiff will naturally use to show the absence of a good faith belief of non-infringement. As a result, a firm may want to avoid creating a record like the one described and instead, have outside counsel send the written opinion directly to senior management. Of course, the firm does so at an enlarged risk of infringement since the opinion has not been properly reviewed.

*Id.*

315.    Refer to notes 29, 46–48 *supra* and accompanying text (discussing benefits of encouraging potential infringers to design around existing patents).

unfavorable. Indeed, if the inference were justified, that is if failure to produce a letter almost always resulted from either the lack of a letter or the receipt of a negative letter, then the inference would not be unfair. As one commentator observed, "Negative inferences are not [properly] based on the bare fact that a party withholds a piece of evidence, but on nonproduction when it would be natural for the party to produce the evidence if it had been favorable."[316] However, in many circumstances even an *innocent* infringer who had obtained a *favorable* letter would likely be reluctant to disclose it. For example, the infringer may correctly perceive that disclosure of the letter as a defense to willfulness could increase his chances of being found liable for the underlying infringement.[317] Such a concern might reasonably arise when the same court is trying both the issues of infringement and, if infringement is found, willfulness. It is possible, for example, that the legal arguments contained in the opinion letter are not the same arguments as those being advanced at trial, and this may undermine the alleged infringer's credibility in defending against the infringement allegation. Likewise, withholding the opinion letter allows the defendant to retain the advantage of withholding the basis of his legal defenses, at least until later in the litigation process.

D. *Determining the Issues of Infringement and Willful Infringement in the Same Trial Unnecessarily Increases the Severity of the Dilemma*

As stated in the previous Part, it is possible that the introduction of an opinion of counsel to defeat an allegation of willfulness might increase the chances of the defendant being found liable for infringement. The risk seems particularly great if the trial is by jury. Noting these problems, in *Quantum Corp. v. Tandon Corp.*, the Federal Circuit recommended that district courts seriously consider allowing a separate trial on the issue of willfulness.[318]

> Proper resolution of the dilemma of an accused infringer . . . is of great importance . . . . An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving

---

316.     John Dragseth, Comment, *Coerced Waiver of the Attorney-Client Privilege for Opinions of Counsel in Patent Litigation*, 80 MINN. L. REV. 167, 195 (1995).

317.     Quantum Corp. v. Tandon Corp., 940 F.2d 642, 643–44 (Fed. Cir. 1991) (noting that waiver of attorney-client privilege may be to the detriment of the defendant in determining the underlying issue of infringement *vel non*).

318.     *Id.* at 644.

the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera*, reveal that the defendant is indeed confronted with this dilemma.[319]

## VI. Addressing the Unfairness of the Current Infringer's Dilemma

### A. *Addressing the Uncertain Scope of the Waiver*

*1. The Need for Federal Circuit Action.* Ideally, the Federal Circuit will directly address the scope of the waiver. Unfortunately, however, although the court has recognized the need for clarity on this issue, such clarification appears unlikely to be forthcoming. As the Federal Circuit has noted:

> [The] orders, which involve immediate discovery and a refusal to defer the willfulness issue are not now appealable. They do not satisfy the third requirement of the *Cohen* doctrine, because they *are* effectively reviewable on appeal from a final judgment. . . . Additionally, the district court properly declined to certify its orders under 28 U.S.C. § 1292(b), (c)(1) because, while important, the questions of law involved may not be "controlling" and in any event, their early appellate resolution would not likely "materially advance the ultimate termination of the litigation."[320]

The current inconsistency in the scope of the waiver poses a serious, and unfair, challenge to the defendant who is trying to decide whether or not to invoke the advice-of-counsel defense in defending against a charge of willful infringement. Given these barriers to Federal Circuit review, the district courts may continue to have widely varying opinions on the appropriate scope of waiver of the attorney-client privilege and work product immunity.

---

319. *Id.* at 643–44. The court went on to state, "While our court has recognized that refusal of a separate trial will not require reversal in every case involving attorney-client communications bearing on willfulness, we have suggested the advisability of separate trials in appropriate cases." *Id.* at 644 (citing Fromson v. W. Litho Plate & Supply Co., 853 F.2d 1568, 1572 (Fed. Cir. 1988) (stating, "'That approach may be useful in meeting the attorney-client privilege problem'")).

320. *Id.*

### 2. Proposed Guiding Principles in the Interim.

Nevertheless, until the Federal Circuit rules directly on the proper scope of waiver, district courts should strive to reach consistency in their determinations of the proper degree of disclosure. Three principles should help to guide courts. First, the proper degree of disclosure is one that is sufficient to satisfy the interests of fairness. Second, disclosure should be mandated only for those documents that are relevant to the determination of willful infringement or likely to lead to the discovery of relevant evidence. Third, a document's relevance is essentially independent of the objective or subjective nature of the willfulness inquiry. To the extent that all courts can achieve a uniform understanding of the caselaw, the uniformity in the extent of the waiver may be increased. Each of these principles is developed below.

### a. Preserving Fairness.

When a litigant selectively discloses privileged information, courts should order disclosure of additional documents in order to preserve the fairness of our system of privileges and immunities. Over the years, the doctrines of attorney-client privilege and work product immunity have developed comfortable and familiar boundaries, and, when litigants choose to rely on privileges and immunities to the fullest possible extent, such reliance is widely viewed as a necessary consequence of a *fair* balancing of competing interests. On one hand, privileges and immunities result in less information being available to the factfinder.[321] As such, they have been characterized as impediments to a determination of truth. On the other hand, they serve underlying functions that we deem even more important than the probative value of the evidence withheld under asserted privileges or immunities.[322] The existence of attorney-client privilege, for example, has been justified as promoting communication between client and counsel.[323] Likewise, work product immunity is justified because

---

321.  Trammel v. United States, 445 U.S. 40, 50 (1980) (stating that privileges "contravene the fundamental principal" that all the evidence should be brought forward).

322.  8 WIGMORE ON EVIDENCE § 2285, at 527 (J. McNaughton rev. 1961) (discussing the general principles behind the privileges and the four conditions that are necessary to recognize a privilege, including that the relationship between the parties to the communication be one that should be encouraged and that preventing injury, arising from disclosure, to that relationship is more beneficial to society than the "correct disposal of litigation").

323.  See, e.g., Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (recognizing that the purpose of attorney-client privilege is to "encourage frank and full communication between attorneys and their clients and . . . promote broader public interests in the observance of law and administration of justice").

it serves a variety of functions as enumerated in *Hickman v. Taylor*,[324] including helping to maintain the integrity of the legal profession, not discouraging careful note-taking and analysis, and eliminating detrimental overemphasis on discovering the litigation tactics of adverse parties.[325]

However, when a litigant chooses to *waive* certain privileges or immunities, this requires a reevaluation of what is *fair*. Indeed, the tactical litigant will choose to waive privileges or immunities only when it is advantageous to do so. More precisely, the litigant will measure the degree of that advantage not according to the hypothetical "true" probative value of the released evidence, but according to the weight that he perceives the jury will assign to it. Thus, the power to *selectively* withhold documents permits privilege holders to manipulate the *apparent* weight of the evidence in their own favor. This is an unfairness that must somehow be mitigated. One way of achieving this, of course, is by requiring a litigant who voluntarily discloses *some* privileged or immune documents to disclose *all* such documents that relate to the same subject area. Indeed, this principle has been generally accepted by the courts.[326]

b.  Limiting Disclosure to Relevant Evidence (or Evidence That Is Likely to Lead to Relevant Evidence). The court should not order the production of irrelevant evidence unless it is likely to lead to the discovery of admissible evidence at trial. Restated, documents relevant to a determination of willfulness, or those likely to lead to the discovery of relevant evidence, define the broadest scope of what should be discoverable following a defendant's waiver of privilege.[327]

c.  Recognizing the Limited Effect of the Standard of Willfulness on the Proper Scope of Discovery. Ambiguity in the willfulness standard[328] presents the artful litigator with sufficient opportunities for obfuscation to succeed in persuading the court

---

324.   329 U.S. 495 (1947).

325.   *Id.* at 510–11.

326.   *See* United States v. Davis, 636 F.2d 1028, 1043–44 n.18 (5th Cir. 1981) (noting that the party's disclosure of tax information on his tax return waived any possible attorney-client privilege as to that matter); *see also* 8 WIGMORE ON EVIDENCE § 2327, at 636 (stating that a party "cannot be allowed, after disclosing as much [privileged material] as he pleases, to withhold the remainder").

327.   Refer to Part III.A.1–2 *supra*.

328.   While some Federal Circuit cases have appeared to apply a subjective standard that focuses on what the infringer actually knew and believed (a "deliberateness" standard), others have applied an objective standard, focusing on what the defendant should have known and how he should have acted under the circumstances (an "unreasonableness" standard). Refer to Part III.A.1–2 *supra*.

to adopt a scope of waiver that is inconsistent with that logically mandated by an analysis of underlying principles.[329] Therefore, until the Federal Circuit can rule directly on the issue, we recommend that courts recognize that, in principle, the formulation of the willfulness test as an objective or subjective inquiry should have little effect on which documents constitute evidence relevant to a willfulness inquiry.    —

For example, under a subjective standard of willfulness, where the ultimate inquiry is what the infringer *actually knew and believed*, evidence of intent is, of course, relevant. Evidence of the *objective* reasonableness of the infringer's actions is also relevant, at least to the extent that it informs the weight to be accorded to direct evidence of his beliefs and intent. Evidence unrelated to establishing the culpable intent of the infringer is irrelevant under the subjective standard. Such irrelevant evidence includes evidence of which the infringer was unaware, including *uncommunicated* attorney work product.[330]

Likewise, under an objective standard of willfulness, where the ultimate inquiry is whether the infringer acted reasonably given the totality of the circumstances, objective evidence of reasonableness is, of course, relevant. In addition, evidence of what the infringer actually knew is relevant to the extent that it informs the factfinder of the "totality of circumstances" with respect to which the reasonableness of the infringer's actions is to be judged. Evidence unrelated to establishing the unreasonableness of the infringer's actions is irrelevant under the objective standard. Such irrelevant evidence includes evidence of which the infringer was *reasonably* unaware given the totality of the circumstances, such as *uncommunicated* attorney work product. Evidence is not discoverable unless it is

---

329.    Refer to note 224 *supra* and accompanying text.

330.    Granted, however, it is at least conceivable that uncommunicated work product might be relevant if it tends either to support or to undermine the credibility of the infringer's claims that all relevant communications have been disclosed. This might occur, for example, when the attorney's records disclose an unexplained shift in legal opinion that could arguably be explained by the presence of an undisclosed communication with counsel. *See* Beneficial Franchise Co., Inc. v. Bank One, N.A., 205 F.R.D. 212, 218 (N.D. Ill. 2001).

"[C]ertainly it would not be rational to assume that everything in counsel's files reached the client, or that counsel communicated to the client all of what he or she really thought, but it would be comparably irrational to assume that there could be no relationship between what counsel really thought (as reflected in her private papers) and what she in fact communicated to her client. In this important sense, evidence about what really was in the lawyer's mind could be quite relevant to the issue of what was really in the client's mind."

*Id.* (alteration in original) (quoting Dunhall Pharms., Inc. v. Discus Dental, Inc., 994 F. Supp. 1202, 1205 (C.D. Cal. 1998)).

relevant and admissible or reasonably calculated to lead to admissible evidence at trial.[331] Absent such a showing, therefore, under the objective standard for willfulness, the broadest scope of waiver should be one that extends only to all privileged attorney-client communications, as well as to *communicated* attorney work product. This is the same scope of waiver that applies if the subjective standard of willfulness is used.

Note that under either standard, the state of mind of the *attorney* is irrelevant. Moreover, except in narrowly circumscribed cases, knowledge of the attorney's state of mind is unlikely to lead to admissible evidence. We believe that the court in *Steelcase Inc.* expressed the proper view regarding the scope of waiver:

> [T]he scope of the waiver is "broad," to the extent that it is necessary to shed complete light upon the alleged infringer's state of mind. By the same token, the scope of the waiver appears narrow, as it pertains to the attorney's state of mind. Especially irrelevant is discovery addressed to the "legal correctness" of the opinion.[332]

Thus, under either the subjective or objective standard for willfulness, only *communications* between an attorney and client should generally be relevant and, therefore, discoverable. The uncertainty about whether the willfulness standard is an objective or subjective one should thus, in principle, have little impact on what the courts deem to be relevant evidence. This is true because documents relating to matters of which the defendant neither had knowledge nor could reasonably be expected to have had knowledge are irrelevant for the purposes of the willfulness inquiry under either standard, and moreover, they are unlikely to lead to the discovery of evidence admissible at trial. Noncommunicated attorney work product is typically not relevant to the willfulness inquiry and should remain protected by the attorney work product doctrine, except in exceptional circumstances. In such cases the court should order an examination of the documents in camera.

### B.  *Modifying the Affirmative Duty Rule*

A second way in which the severity of the infringer's dilemma should be mitigated is by not placing infringers in the dilemma unnecessarily. One way to do this is to reexamine the

---

331.  *See* FED. R. CIV. P. 26(b)(1) (stating that "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence").

332.  Steelcase, Inc. v. Haworth, Inc., 954 F. Supp. 1195, 1199 (W.D. Mich. 1997).

desirability of the affirmative duty rule and to limit the circumstances under which a potential infringer bears any affirmative duty at all. The American Intellectual Property Law Association has suggested modifying the rule so that it imposes a duty of care only if at least one of the following conditions is met: (1) the party receives "written notice by or on behalf of the patentee of specific acts of infringement,"[333] or (2) the party deliberately copied the patented technology "with knowledge that it is patented."[333] "Reasonable reliance on advice of counsel," then, when "offered into evidence, shall establish due care."[334]

## C. *Eliminating the Adverse Inference*

The adverse inference seems unjustified in its current form.[335] It should, in our view be eliminated.

## D. *Bifurcating Trials*

Finally, in order to reduce prejudice to the defendant in the determination of the underlying claim of infringement, trials should be bifurcated.[336] Indeed, this idea has been suggested by the Federal Circuit in *Quantum Corp.*[337] Granted, some may criticize this measure as being too costly in terms of judicial time and resources.[338] However, a fair balancing of cost against benefit must recognize that the factfinder may find the defendant not liable for infringement, and thus never reach the damages issue. Bifurcation would therefore *conserve* judicial resources in a number of cases. In addition to bifurcating the trial, bifurcating discovery may be reasonable as well, so the trial judge is not prejudiced by documents reviewed *in camera*, and documents produced in the context of willful infringement discovery do not

---

333.    E-mail from Jim Crowne, Director of Communications, American Intellectual Property Law Association, to Patrick Elkins, Managing Editor, Houston Law Review (Apr. 16, 2004, 12:24 CST) (quoting a resolution on proposed amendment to 35 U.S.C. § 284, formally approved by AIPLA Board of Directors) (on file with Houston Law Review).

334.    *Id.*

335.    Refer to Part V.C *supra.*

336.    Fed. R. Civ. P. 42(b) (providing for separate trials when needed "to avoid prejudice").

337.    Quantum Corp. v. Tandon Corp., 940 F.2d 642, 643–44 (Fed. Cir. 1991).

338.    *See, e.g.,* Aptargroup, Inc. v. Owens-Illinois, Inc., No. 02 C 5058, 2003 WL 21557632, at *1 (N.D. Ill. July 3, 2003).

The district courts are reluctant to bifurcate . . . if there is not a good reason to bifurcate damages as well, or it is uncertain that the party faces the "Quantum dilemma," or legal advice becomes relevant for other reasons, or prior rulings establish that the patent holder has a strong liability case . . . .

*Id.* (citing *Quantum Corp.*, 940 F.2d 642 (Fed. Cir. 1991)).

give the patentee an unfair advantage in proving his underlying infringement claim. Bifurcation of discovery would also help to conserve judicial resources, to the extent that discovery relevant to the willfulness of infringement will never be reached if the defendant is found not liable for infringement.[339]

## VII. CONCLUSION

In closing, it is hoped that this review of willful patent infringement law and the dilemma that it creates for the alleged willful infringer, will increase awareness of, and hopefully effect a reduction in, some of the doctrine's inherent unfairness. Four suggestions have been advanced. The first is to increase the uniformity with which courts define the scope of waiver of privilege and/or immunities in the context of the advice-of-counsel defense. This uniformity will most effectively be achieved by the Federal Circuit's ruling directly on the issue, although until then, a ruling clarifying the precise standard for willful infringement would also serve to promote uniformity. The second suggestion is to reform the affirmative duty rule such that it does not unduly burden inventors. Third, the adverse inference rule seems, on its face, to be unjustifiable and should be abandoned. Finally, the issues of infringement and willfulness should be determined in separate trials, with the discovery phase for the latter being stayed until a decision on the former has been reached.

---

339.   *See* Princeton Biochem., Inc. v. Beckman Instruments, Inc., 45 U.S.P.Q.2d 1757, 1762–63 (D.N.J. 1997) (allowing a stay of discovery on the issues of willfulness and damages until the issue of liability had been adjudicated after finding "no significant overlap" of willfulness and liability); *In re* Recombinant DNA Tech., 30 U.S.P.Q.2d 1881, 1901 (S.D. Ind. 1994) (same); Lemelson v. Apple Computer Inc., 28 U.S.P.Q.2d 1412, 1424 (D. Nev. 1993) (bifurcating the trial and staying discovery on damages until the underlying issue of liability was resolved).