# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMPEX CORPORATION,                    )
                                      )
                                      )
              Plaintiff,              )          C.A. No. 04-1373-KAJ
                                      )
      v.                              )
                                      )
EASTMAN KODAK COMPANY, ALTEK          )
CORPORATION and CHINON INDUSTRIES,    )
INC.,                                 )
                                      )
              Defendants.             )
                                      )
                                      )
                                      )

## COMPENDIUM OF UNREPORTED OPINIONS
## CITED IN DEFENDANTS' ANSWERING BRIEF TO AMPEX CORPORATION'S
## MOTION FOR SUMMARY JUDGMENT THAT U.S. PATENT NO. 4,821,121
## <u>IS NOT INVALID FOR OBVIOUSNESS</u>

Collins J. Seitz, Jr. (#2237)
Jaclyn M. Mason (#4737)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com
*Attorneys for Defendants Eastman Kodak Company
and Altek Corporation*

*Of Counsel:*
William F. Lee
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800

Date:  June 13, 2006

## UNREPORTED OPINIONS

TAB

Brief for the United States as Amicus Curie Supporting Petitioner,
*KSR Int'l Co. v. Teleflex Inc.*, (May 25, 2006) (No. 04-1350), 2006 WL 1455388          1

*Miller Prods. Co. v. Veltek Assoc.*,
No. 01-35-KAJ, 2004 U.S. Dist. LEXIS 1798 (Feb. 10, 2004)          2

# **TAB 1**

Westlaw.

2006 WL 1455388                                                      Page 1
2006 WL 1455388 (U.S.)


For opinion see 126 S.Ct. 327

**<u>Briefs and Other Related Documents</u>**

Supreme Court of the United States.
KSR INTERNATIONAL CO., petitioner,
v.
TELEFLEX INC., et al.
**No. 04-1350.**
May 25, 2006.
On Petition for a Writ of Certiorari to the United States Court of Appeals for the
Federal Circuit

Brief for the United States as Amicus Curiae
James A. Toupin, General Counsel.

John M. Whealan, Deputy General Counsel, and Solicitor.

Linda M. Isacson, William G. Jenks, Robert J. McManus, Associate Solicitors, United
States Patent and, Trademark Office, Alexandria, Va. 22313.

<u>Paul D. Clement</u>, Solicitor General, Counsel of Record.

<u>Peter D. Keisler</u>, Assistant Attorney General.

<u>Thomas G. Hungar</u>, Deputy Solicitor General.

Jeffrey P. Minear, Assistant to the Solicitor, General.

<u>Anthony J. Steinmeyer</u>, <u>Anthony A. Yang</u>, Attorneys, Department of Justice,
Washington, D.C. 20530-0001, (202) 514-2217.

**\*I** QUESTION PRESENTED
Whether a claimed invention can be "obvious," and therefore unpatentable under <u>35
U.S.C. 103(a)</u>, without proof of some "teaching, suggestion, or motivation" to modify
or combine the prior art in the manner claimed.

**\*III** TABLE OF CONTENTS

Statement ... 1

A. The Patent Act's requirement of nonobviousness ... 2

B. The subject matter at issue ... 4

C. The proceedings below ... 6

Discussion ... 9

A. The Federal Circuit's imposition of a teaching-suggestion-motivation test to
determine whether a claimed invention would be obvious presents an important
question of patent law that warrants this Court's review ... 10

B. The question presented has significant practical consequences and this case
provides an appropriate vehicle for its resolution ... 16

Conclusion ... 20

TABLE OF AUTHORITIES

Cases:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

_Anderson's-Black Rock, Inc. v. Pavement Salvage Co._, 396 U.S. 57 (1969) ... 12, 17

_Bonito Boats, Inc. v. Thunder Craft Boats, Inc._, 489 U.S. 141 (1989) ... 2, 3, 10, 17

_City of Erie v. Pap's A.M._, 529 U.S. 277 (2000) ... 18

_Dann v. Johnston_, 425 U.S. 219 (1976) ... 10, 11, 12, 13

_Dembiczak, In re_, 175 F.3d 994 (Fed. Cir. 1999) ... 14, 14

_FCC v. National Citizens Comm. for Broad._, 436 U.S. 775 (1978) ... 18

_Federal Power Comm'n v. Transcontinental Gas Pipe Line Corp._, 365 U.S. 1 (1961) ... 18

**\*IV** _Graham v. John Deere Co._, 383 U.S. 1 (1996) ... _passim_

_Hotchkiss v. Greenwood_, 52 U.S. (11 How.) 248 (1851) ... 3, 10

_Kahn, In re_, 441 F.3d 977 (Fed. Cir. 2006) ... 13

_Kotzab, In re_, 217 F.3d 1365 (Fed. Cir. 2000) ... 8, 14

_Lee, In re_, 277 F.3d 1338 (Fed. Cir. 2002) ... 14, 15

_Pfaff v. Wells Elecs., Inc._, 525 U.S. 55 (1998) ... 10

_Rouffet, In re_, 149 F.3d 1350 (Fed. Cir. 1998) ... 14

_Ruiz v. A.B. Chance Co._, 234 F.3d 654 (Fed. Cir. 2000) ... 15

_Sakraida v. Ag Pro, Inc._, 425 U.S. 273 (1976) ... 12

_United States v. Adams_, 383 U.S. 39 (1966) ... 12, 13

_Warner-Jenkinson Co. v. Hilton Davis Chem. Co._, 520 U.S. 17 (1997) ... 18

_Winner Int'l Royalty Corp. v. Wang_, 202 F.3d 1340 (Fed. Cir. 2000) ... 14

Constitution and statutes:

U.S. Const. Art. 1, § 8, Cl.8 (Patent Clause) ... 2

Act of Apr. 10, 1790, ch. 7, 1 Stat. 109 ... 2

Act of Feb. 21, 1793, ch. 11, 1 Stat. 318 ... 2

Act of July 4, 1836, ch. 357, 5 Stat. 117 ... 2

Act of Mar. 3, 1839, ch. 88, 5 Stat. 353 ... 2

Act of July 8, 1870, ch. 230, 16 Stat. 198 ... 2

Act of Aug. 5, 1939, ch. 451, 53 Stat. 1212 ... 2

Act of July 19, 1952, ch. 950, 66 Stat. 792 (35 U.S.C. 1 _et seq._) (Patent Act) ... 2

35 U.S.C. 100 _et seq._ ... 2

**\*V** 35 U.S.C. 101-103 ... 2

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1455388                                                    Page 3
2006 WL 1455388 (U.S.)

35 U.S.C. 103(a) ... *passim*

Miscellaneous:

Federal Trade Comm'n, *To Promote Innovation: The Proper Balance of Competition and
Patent Law and Policy* (2003), *available at* <
www.ftc.gov/os/2003/10/innovationrpt.pdf> ... 19

John R. Thomas, *Formalism at the Federal Circuit*, 52 Am. U. L. Rev. 771 (2002) ...
14

**\*1** This brief is submitted in response to the order of this Court inviting the
Solicitor General to express the views of the United States. In the view of the
United States, the petition for a writ of certiorari should be granted.

STATEMENT
Petitioner KSR International Co. is a Canadian company that markets foot-operated
throttle controls - gas pedals - for passenger cars and light trucks. Pet. App. 20a.
Respondents Teleflex Inc. and its subsidiary Technology Holding Co. sued KSR in the
United States District Court for the Eastern District of Michigan for patent
infringement, alleging that two of KSR's adjustable gas pedal systems literally
infringe Claim 4 of their U.S. Patent No. 6,237,565 (the Engelgau patent). *Id.* at
1a-2a, 20a, 23a-24a. The district court granted KSR's motion for summary judgment,
concluding that Claim 4 of the **\*2** Engelgau patent is obvious within the meaning of
Section 103(a) of the Patent Act of 1952, 35 U.S.C. 103(a), and therefore invalid.
See Pet. App. 18a-49a. The Federal Circuit vacated the grant of summary judgment,
concluding that the district court incorrectly applied its "teaching-suggestion-
motivation" test in determining that Claim 4 would have been obvious to a person of
ordinary skill in the art. *Id.* at 1a-17a.

A. The Patent Act's Requirement Of Nonobviousness

The Patent Clause of the Constitution vests Congress with authority "[t]o promote
the Progress of Science and useful Arts by securing for limited Times to *** 
Inventors the exclusive Right to their *** Discoveries." U.S. Con st.Art. 1, § 8,
Cl. 8. Congress has implemented the Patent Clause through statutory enactments,
commonly known as the Patent Acts, that have set out the conditions for securing a
patent and that strike "a careful balance between the need to promote innovation and
the recognition that imitation and refinement through imitation are both necessary
to invention itself and the very lifeblood of a competitive economy." *Bonito Boats,
Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146 (1989). [FN1]

    FN1. See, *e.g.*, Act of Apr. 10, 1790, ch. 7, 1 Stat. 109; Act of Feb. 21,
    1793, ch. 11, 1 Stat. 318; Act of July 4, 1836, ch. 357, 5 Stat. 117; Act of
    Mar. 3, 1839, ch. 88, 5 Stat. 353; Act of July 8, 1870, ch. 230, 16 Stat. 198;
    Act of Aug. 5, 1939, ch. 451, 53 Stat. 1212; Act of July 19, 1952, ch. 950, 66
    Stat. 792.

The Patent Act of 1952, as amended, provides the current law governing the issuance
and validity of patents. See 35 U.S.C. 100 et seq. Sections 101 through 103 provide
(35 U.S.C. 101-103), as a general matter, that "patentability is dependent upon
three explicit conditions: novelty and utility as articulated in § 101 and § 102,
and non-obviousness *** , as set **\*3** out in § 103." *Graham v. John Deere Co.*, 383
U.S. 1, 12 (1966); see *Bonito Boats*, 489 U.S. at 146-151, 156-157. Because "each of
[these conditions] must be satisfied," only those new and useful inventions that
would not have been "obvious" at the time of their discovery exhibit the "level of
innovation necessary to sustain patentability." *Graham*, 383 U.S. at 4, 17.

Congress enacted Section 103(a) to codify the principle, which this Court first
recognized in *Hotchkiss v. Greenwood*, 52 U.S. (11 How.) 248 (1851), that a new and
useful device does not qualify for a patent unless it embodies a "degree of skill
and ingenuity" beyond that of "an ordinary mechanic acquainted with the business."
*Id.* at 267. See *Graham, 383 U.S. at 11-18*. Section 103(a) states that a claimed
invention is not eligible for a patent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

    if the differences between the subject matter sought to be patented and the prior
art are such that the subject matter as a whole would have been obvious at the time
the invention was made to a person having ordinary skill in the art.
35 U.S.C. 103(a). "The nonobviousness requirement extends the field of unpatentable
material beyond that which is known to the public under § 102, to include that
which could readily be deduced from publicly available material by a person of
ordinary skill in the pertinent field of endeavor." Bonito Boats, 489 U.S. at 150
(citing Graham, 383 U.S. at 15).

    The question of nonobviousness is ultimately one of law, but it turns on "several
basic factual inquiries." Graham, 383 U.S. at 17. This Court has identified four
such inquiries: (1) "the scope and content of the prior art"; (2) "differences
between the prior art and the claims at issue"; (3) "the level of ordinary skill in
the pertinent art"; and (4) "secondary considerations," *4 such as "commercial
success," that might provide "indicia of obviousness or nonobviousness." Id. at 17-
18.

B. The Subject Matter At Issue

    The technology at issue in this case is relatively simple and its evolution is
straightforward. Before the 1970s, the driver of an automobile typically controlled
the vehicle's speed by pressing a foot-operated gas pedal, which was bolted at a
fixed location within the footwell of the vehicle interior. The pedal would act as a
lever, rotate around a pivot point, and pull a cable or mechanical linkage to
actuate the engine throttle. See Pet. App. 20a-21a. In the 1970s, automobile
manufacturers began offering adjustable pedal assemblies, designed to accommodate
drivers of different heights, that enabled a driver to adjust the pedal position
forward and backward within the footwell. Id. at 19a-20a; see C.A. App. 1568 (U.S.
Patent No. 5,010,782, Col. 1, ll. 14-27 (Asano patent)). [FN2]

        FN2. The driver's adjustment of the pedal position could alter the mechanical
        "lever[age]" at the pedal pad, by changing the distance between the pad and
        the pedal pivot, and it could consequently require the driver to apply a
        different amount of force when operating the pedal. See C.A. App. 1568 (Asano
        patent, Col. 1, ll. 28-45). The 1989 Asano design addressed that problem by
        attaching the adjustable pedal assembly to a fixed pivot point located on a
        stationary bracket in the footwell. See id. at 1562, 1565-1567 (Asano patent,
        Fig. 5-8); Pet. App. 32a-33a. That design then utilized mechanical linkages to
        preserve a constant force ratio and counteract the effect of adjusting the
        distance between the pedal pad and pedal pivot. See C.A. App. 1568, 1570-1571
        (Asano patent, Col. 1, ll. 48- 65; Col. 2, ll. 15-23; Col. 8, l. 63 - Col. 9,
        l. 4); Pet. App. 12a-13a & n.3. Not all adjustable pedal assemblies seek to
        address that constant force problem. See, e.g., C.A. App. 1490-1491 (U.S.
        Patent No. 5,632,183, Col. 1, ll. 35-38, 52-54, Col. 2, ll. 13-15, Col. 4, ll.
        26-29 (Rixon '183 patent))

    In the 1990s, automobile manufacturers sold increasing numbers of vehicles in the
United States that employed *5 computer-controlled engines and electronic throttle
controls. See Pet. App. 21a, 41a. The manufacturers of gas pedal assemblies adapted
their non-adjustable assemblies by attaching an electronic sensor to the pedal, in
place of the mechanical linkage, to determine the pedal position and transmit a
corresponding electronic signal to the throttle. See id. at 21a. The designs of that
era reveal configurations for non-adjustable pedals, mounted on the wall of the
footwell, in which the electronic pedal position sensor is actuated by the pedal
pivot and is located on a stationary wall bracket to which the pedal and its pivot
connect. See id. at 33a-35a. [FN3]

        FN3. U.S. Patent No. 5,385,068 (White patent) (C.A. App. 717-723) is
        illustrative. The White patent, which was filed in 1992, discloses a modular
        electronic pedal position sensor similar to a sensor later installed in
        certain 1994 Chevrolet pick-up trucks. That sensor, known as a CTS 503 Series
        position sensor, was designed to be mounted on the pedal pivot of a gas pedal
        and included a fitting that allowed the sensor to engage the pedal pivot shaft
        on different makes and models of vehicle gas pedal assemblies. See Pet. App.

2006 WL 1455388                                                                    Page 5
2006 WL 1455388 (U.S.)

32a; C.A. App. 1051-1053 (Willemsen Deck paras. 12-19). The sensor was mounted on the pedal support bracket in Chevrolet trucks and determined the pedal's position from the movement of the pedal pivot shaft. Id. at 1052-1053, 1077 (Willemsen Deck paras. 16-17, 19 & Exh. 8). See also, e.g., U.S. Patent Nos. 4,958,607 (Lundberg patent), 5,233,882 (Byram patent), 5,241,936 (Byler patent) (C.A. App. 708-716), 5,887,488 (Riggle patent).

Respondents' Engelgau patent reveals an adjustable pedal apparatus that combines an adjustable gas pedal assembly with an electronic pedal position sensor. The electronic sensor, which measures the pedal position at the pivot, is attached to the support bracket that connects the pedal assembly to the wall of the footwell. Pet. App. 2a, 26a. The patent explains that the pedal assembly "can be any of various adjustable pedal assemblies" and the electronic pedal position sensor can be any such sensor "known in the art." C.A. App. 38- 39 (Engelgau patent, Col. 2, ll. 54-56; Col. 3, ll. 22-24).

*6 Claim 4, which is set out verbatim at Pet. App. 3a, describes an apparatus composed of: (1) a support mounted to the vehicle structure; (2) an adjustable pedal assembly with a pedal arm that moves fore and aft with respect to the support; (3) a pivot located on the support to which the pedal assembly is attached; and (4) an electronic pedal position sensor attached to the support. Id. at 3a, 25a-26a. Claim 4 further describes that the electronic pedal position sensor is responsive to the pivot, the position of which remains constant with pedal arm adjustments. Id. at 3a, 26a.

C. The Proceedings Below

KSR supplies a major automobile manufacturer with adjustable gas pedal assemblies for use with electronically controlled throttles in certain truck lines. Respondents, who compete with KSR, brought this suit alleging that KSR's pedal assemblies infringed three of respondents' patents. As a result of a series of motions and stipulations, the parties focused their dispute on whether KSR's pedal assemblies infringed Claim 4 of the Engelgau patent. The parties filed cross-motions for summary judgment, and the district court granted judgment for KSR on the ground that respondents' claimed invention would have been obvious to a person of ordinary skill in the art and that the Engelgau patent was therefore invalid. See Pet. App. 18a-24a.

The district court reached that conclusion based on the four-part inquiry that this Court set out in Graham, supra. See 383 U.S. at 17-18. It first determined that all of the elements of Claim 4 were revealed in the prior art because the Asano patent taught each element except Claim 4's reference to the use of an electronic pedal position sensor, which other prior art references taught. See Pet. App. 28a-35a. The district court then determined that a person of ordinary skill in the art would have had college training in mechanical engineering *7 and experience in the field of pedal assemblies. Id. at 35a-36a. The court next found that there was "little difference between the teachings of the prior art and claims of the patent-in-suit," and it further found that a person skilled in the art would readily "combine a pivotally mounted adjustable pedal assembly [the Asano patent] with an off-the-shelf modular pedal position sensor to solve the problem" that the Engelgau patent addressed. Id. at 39a, 44a. The court also evaluated, as a "secondary consideration," respondents' claim of commercial success, but the court concluded that the consideration was "insufficient to overcome [KSR's] clear and convincing evidence of obviousness." Id. at 48a.

In analyzing whether it would have been obvious to a person of ordinary skill to combine the Asano patent with an electronic pedal position sensor, the district court applied the Federal Circuit's "teaching-suggestion-motivation test." See Pet. App. 8a, 40a-46a. Under that test, a claimed invention that combined elements already present in the prior art would not have been obvious at the time of invention unless there was a teaching, suggestion, or motivation in the prior art that would have led a person of ordinary skill to combine the prior art references in the manner claimed. See id. at 40a-41a. The district court found that a person of ordinary skill would have been motivated to combine pre-existing adjustable pedal

©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1455388
2006 WL 1455388 (U.S.)                                                        Page 6

assemblies with co-existing electronic pedal position sensors and to avoid known problems with other pedal assemblies. *Id.* at 42a-43a. The court observed that the prior art references were closely related, others in the field had made similar combinations, and the patent examiner, who did not have the benefit of the Asano reference, had recognized similar combinations as obvious. *Id.* at 43a-46a.

The court of appeals reversed on the ground that the district court had incorrectly applied the teaching-suggestion-motivation test. Pet. App. 1a-17a. The court of appeals stated **\*8** that its test required the district court to make factual findings showing the "specific understanding or principle within the knowledge of the skilled artisan that would have motivated one with no knowledge of [the] invention to make the combination" in "the particular manner claimed by claim 4 of the [Engelgau] patent." *Id.* at 11a-12a (quoting *In re Kotzab*, 217 F.3d 1365, 1371 (Fed. Cir. 2000)); see *id.* at 16a. In other words, the court of appeals ruled that the district court could not find the Engelgau patent invalid as obvious without "specific findings as to a suggestion or motivation to attach an electronic control to the support bracket of the Asano assembly." *Id.* at 12a.

The court of appeals concluded that the Asano patent failed to provide such motivation because it addressed "the constant pedal force problem" in adjustable pedal assemblies, see note 2, *supra*, whereas the Engelgau patent purported to disclose a "smaller, less complex, and less expensive electronic pedal assembly." Pet. App. 12a-13a. The court of appeals also stated that the prior art references that taught the importance of avoiding movement of the pedal position sensor's wiring in non-adjustable pedal assemblies likewise were insufficient because they did not address the problem of wire chafing in "an adjustable pedal assembly" and did "not necessarily go to the issue of motivation to attach the electronic control on the support bracket." *Id.* at 13a.

The court of appeals concluded that KSR's other evidence describing the prior use of electronic pedal position sensors failed "to make out a *prima facie* case of obviousness." Pet. App. 14a. The court acknowledged that the evidence demonstrated a motivation to combine an electronic pedal position sensor with an adjustable pedal assembly and showed that such a sensor " 'could have been' mounted on the support bracket of a pedal assembly," but the court concluded that it failed to show a particular "motivation to attach the electronic **\*9** control to the support bracket." *Id.* at 14a-15a. The court of appeals accordingly concluded that genuine issues of material fact existed concerning "whether a person of ordinary skill in the art would have been motivated *** to attach an electronic control to the support structure of the [Asano] pedal assembly." *Id.* at 16a-17a. It therefore vacated the district court's judgment and remanded the case "for further proceedings on the issue of obviousness, and, if necessary, proceedings on the issues of infringement and damages." *Id.* at 17a.

DISCUSSION

This Court's decision in *Graham v. John Deere Co.*, 383 U.S. 1 (1966), sets out a flexible framework for determining whether a claimed invention is nonobvious within the meaning of Section 103(a) of the Patent Act of 1952, 35 U.S.C. 103(a). That decision instructs the lower courts to determine the content of the prior art, identify the differences between the prior art and the inventor's claims, and then determine whether a person of ordinary skill in the field would have found the claimed invention obvious. The Federal Circuit has transformed one means of establishing obviousness under that framework - proof that the prior art provided a teaching, suggestion, or motivation for combining separate prior art references - into an inflexible requirement for determining obviousness. As this case demonstrates, the Federal Circuit's teaching-suggestion-motivation test extends patent protection to non-innovative combinations of familiar elements. The issue is important, because many patent applications rest on the combination of prior art references, and because extension of patent rights to obvious combinations of familiar elements retards, rather than advances, new discoveries. This case presents a sound vehicle for the Court to determine whether the Federal Circuit's teaching-suggestion-motivation **\*10** test should continue to serve as the exclusive means of establishing obviousness under Section 103(a).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A. The Federal Circuit's Imposition Of A Teaching-Suggestion-Motivation Test To Determine Whether A Claimed Invention Would Be Obvious Presents An Important Question Of Patent Law That Warrants This Court's Review

1. This Court has explained that "the patent system represents a carefully crafted bargain that encourages both the creation and public disclosure of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time." *Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 63 (1998)* (citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 150-151 (1989)*). That bargain's effectiveness in inducing creative effort and disclosure depends on "a backdrop of free competition in the exploitation of unpatented designs and innovations," and the nonobviousness requirement is essential in ensuring that "free exploitation of ideas will be the rule, to which the protection of a federal patent is the exception." *Bonito Boats, 489 U.S. at 151.* Section 103(a) embodies the understanding that "concepts within the public grasp, or those so obvious that they readily could be, are the tools of creation available for all." *Id.* at 156; see *Graham, 383 U.S. at 6.*

This Court observed in *Graham* that Section 103(a)'s nonobviousness requirement codifies a "functional approach," traceable to *Hotchkiss v. Greenwood, 52 U.S. (11 How.) 248 (1851)*, for defining the "general level of innovation necessary to sustain patentability." See *Graham, 383 U.S. at 3-4, 11-12.* That approach proceeds from the perspective of a "hypothetical person" of ordinary skill in the relevant art, *Dann v. Johnston, 425 U.S. 219, 229 (1976)*, and turns on whether the claimed invention "as a whole" would have been obvious at the **11 time in light of the "differences between the subject matter sought to be patented and the prior art." 35 U.S.C. 103(a).

The "ultimate question" of patent validity is a question of law, *Graham, 383 U.S. at 17*, but it rests on a judgment, informed by relevant facts, of whether the hypothetical person of ordinary skill in the art would have found the invention as a whole "obvious." Section 103(a) itself identifies three "central factors relevant to any inquiry into obviousness" (*Johnston, 425 U.S. at 226*): the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art. See *Graham, 383 U.S. at 17.* Other "secondary considerations" - including a long-felt and unfulfilled need for the invention, the prior failures of others, and the commercial success of the invention - may also provide "indicia" supporting the legal conclusion of "obviousness or nonobviousness." *Id.* at 17-18, 35-36.

In specifying nonobviousness as a condition of patentability, Section 103(a) codifies the Court's historic approach to evaluating whether a claimed invention is sufficiently innovative to warrant a patent, *Graham, 383 U.S. at 17*, but it does not specify how courts should weigh the relevant factors in making the legal determination, in any particular case, of whether an invention as a whole would have been "obvious." While the Court identified in its *Graham* decision the framework for analysis and the relevant considerations, it observed that the application of Section 103(a) would continue to depend on the "given factual context," that the inquiry is comparable to that involving similar fact-dependant legal judgments such as "negligence and scienter," and that further refinements "should be amenable to a case-by-case development." *Id.* at 18.

This Court's decisions from *Graham* forward reflect the understanding that courts must apply Section 103(a) "realistically" **12 as a "practical test of patentability." See *383 U.S. at 17.* The Court has accordingly declined to embrace rigid categorical rules that would inflexibly limit the ability of the courts or the United States Patent and Trademark Office (PTO) - which has "the primary responsibility for sifting out unpatentable material" (*id.* at 18) - to make individualized determinations of obviousness. In none of its decisions has the Court adopted the inflexible rule, which the Federal Circuit applied in this case and has consistently articulated in other decisions, that a court or PTO cannot conclude that a claimed invention would have been obvious unless it makes "specific findings showing a teaching, suggestion, or motivation to combine prior art in the particular manner claimed by the patent at issue" (Pet. App. 16a). [FN4]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1455388
2006 WL 1455388 (U.S.)                                    Page 8

FN4. See _Sakraida v. Ag Pro, Inc._, 425 U.S. 273, 280-282 (1976) (ruling that a claimed invention of a method for cleaning dairy barns was obvious); _Johnston_, 425 U.S. at 226-230 (ruling that a claimed invention of a computer program for managing bank accounts was obvious); _Anderson's-Black Rock, Inc. v. Pavement Salvage Co._, 396 U.S. 57, 61-63 (1969) (ruling that a claimed invention of a paving machine was obvious); _United States v. Adams_, 383 U.S. 39, 48-52 (1966) (ruling that the claimed invention of a new type of battery was not obvious); _Graham_, 383 U.S. at 24-26, 32-37 (ruling, in two consolidated cases, that a claimed invention of a plow improvement and a claimed invention of a container cap were obvious).

2. The Federal Circuit's teaching-suggestion-motivation test subjects persons challenging the validity of a patent, as well as PTO's patent examiners, to substantial obstacles in establishing obviousness beyond those that Section 103(a) and this Court's decisions prescribe. As this case aptly demonstrates, the Federal Circuit's rigorous and inflexible application of its test alters _Graham_'s functional approach to the nonobviousness inquiry in a way that unnecessarily sustains patents that would otherwise be subject to invalidation as obvious.

**\*13** The Federal Circuit's test departs from this Court's precedents because it treats a particular method of demonstrating obviousness - namely, proof that the prior art taught, suggested, or provided a motivation for combining the prior art references - as the _exclusive_ means of showing obviousness. As the court of appeals stated in this case,

When obviousness is based on teaching of multiple prior art references, the movant _must_ also establish some "suggestion, teaching, or motivation" that would have led a person of ordinary skill to combine the relevant prior art teachings _in the manner claimed_.

Pet. App. 6a (citations omitted; emphasis added). See _id._ at 7a, 11a-12a. While this Court's flexible approach allows ample room to rely on such teachings, suggestions, or motivations as a sufficient basis for a finding of obviousness, see _United States v. Adams_, 383 U.S. 39, 47 (1966), the Federal Circuit's test mandates that showing as a prerequisite to an obviousness determination in any case involving a novel combination of previously known elements. See Pet. App. at 12a ("the district court was _required_ to make _specific findings_ as to whether there was a suggestion or motivation to combine the teachings of Asano with an electronic control _in the particular manner claimed_ by claim 4" (emphasis added)). [FN5]

FN5. After the Court called for the views of the United States, the Federal Circuit stated that its teaching-suggestion-motivation test "is consistent with governing obviousness law," citing Section 103(a) and this Court's decisions in _Johnston_ and _Graham_. See _In re Kahn_, 441 F.3d 977, 987 (2006). But the _Kahn_ decision does not acknowledge the key difference: This Court's decisions nowhere suggest that a court _must_ make the _specific findings_ that the Federal Circuit requires. To the contrary, this Court has found that a claimed invention would have been obvious based on the small difference between the prior art and what the inventor claimed, without any mention of teaching, suggestion, or motivation. See _Johnston, 425 U.S. at 230_.

**\*14** The Federal Circuit's test creates a substantial obstacle to showing that a claimed invention that simply combines known features without substantial innovation would have been obvious, because the test requires the party challenging the patent to come forward with affirmative evidence in the prior art of a teaching, suggestion, or motivation to combine the features. See, _e.g._, _In re Kotzab, 217 F.3d 1365, 1370-1371 (Fed. Cir. 2000); Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1348-1349 (Fed. Cir. 2000); In re Rouffet, 149 F.3d 1350, 1357 (Fed. Cir. 1998)_. That showing may be difficult or impossible even though the combination, on its face, would have been obvious. For example, such affirmative evidence may be lacking if the claim arose in a newly emerging technical field or if the combination was so obvious to persons skilled in the art that no one would have had need or incentive to record the trivial extension of the art. See John R. Thomas, _Formalism at the Federal Circuit, 52 Am. U. L. Rev. 771, 801-802 (2003)_. [FN6]

FN6. Indeed, the Federal Circuit's approach has led it to hold that "

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

'[c]ommon knowledge and common sense,' even if assumed to derive from the [PTO's] expertise, do not substitute" for evidence of a "specific hint or suggestion" to combine prior art. See In re Lee, 277 F.3d 1338, 1344- 1345 (2002). Thus, even when prior art is closely analogous to the invention at issue, the court has required evidence showing a particular suggestion or motivation to combine the prior art to create the invention. See In re Dembiczak, 175 F.3d 994, 997, 1000 (Fed. Cir. 1999) (lawn trash bag having a Halloween pumpkin design is not prima facie obvious in the absence of evidence of suggestion to combine normal trash bag with references describing pumpkin designs on paper bags).

The Federal Circuit states that the teaching, suggestion or motivation may be found explicitly or implicitly: 1) in the prior art references themselves; 2) in the knowledge of those of ordinary skill in the art that certain references, or disclosures **15 in those references, are of special interest or importance in the field; or 3) from the nature of the problem to be solved, "leading inventors to look to references relating to possible solutions to that problem."
Pet. App. 6a (citations omitted). The court's seemingly helpful observation that the teaching, suggestion, or motivation may be found "explicitly or implicitly" has not, in practice, substantially reduced the burden that its test imposes. This case is illustrative. The district court found that the Asano patent revealed all of the elements of Claim 4 of the Engelgau patent except the mounting of a pivot-actuated electronic sensor on the adjustable pedal assembly support structure, and that other manufacturers had mounted such sensors on non-adjustable pedal assembly support structures. See id. at 42a-44a. The court of appeals nevertheless concluded that a mechanical engineer with experience in pedal assembly faced with the problem of mounting an electronic sensor on an adjustable pedal assembly would not be implicitly motivated to transfer the known technique for mounting the electronic sensor on the support structure of non-adjustable assemblies to adjustable assemblies. See id. at 11a-13a; see also 13a-15a (rejecting the district court's alternative bases for finding a teaching, suggestion, or motivation to combine the elements). [FN7] The Federal Circuit justifies its rigid teaching-suggestion-motivation test as a necessary measure to eliminate the possibility of "hindsight-based obviousness analysis." Pet. App. 6a-7a (quoting In re Dembiczak, 175 F.3d 994, 999 (Fed. Cir. 1999)); see **16Ruiz v. A.B. Chance Co., 234 F.3d 654, 665 (Fed. Cir. 2000). While an inquiry into teaching, suggestion, or motivation may shed light on the question of obviousness, this Court did not perceive a need in Graham or subsequent cases to employ such a rigid prophylactic test to prevent courts or patent examiners from "read[ing] into the prior art the teachings of the invention in issue." Graham, 383 U.S. at 36. The Federal Circuit's test effectively constricts this Court's guidance in Graham respecting the nonobviousness inquiry, it fails to account adequately for the problem-solving abilities of persons of ordinary skill in the art, and it underestimates the capabilities of courts and patent examiners to "resist the temptation" of hindsight and to consider fairly the question of obviousness. See ibid. Moreover, if there is a need for the Federal Circuit's strict measures to guard against the possibility of hindsight, this Court should make that decision itself.

> FN7. See generally In re Lee, 277 F.3d at 1343 (requiring "objective evidence" of a particular "teaching, motivation, or suggestion to select and combine the [prior art] references"); In re Dembiczak, 175 F.3d at 999 (requiring "actual evidence" revealing a "clear and particular" reason to select and combine the elements as combined in the invention).

B. The Question Presented Has Significant Practical Consequences And This Case Provides An Appropriate Vehicle For Its Resolution

1. The Federal Circuit's adoption and strict application of its teaching-suggestion-motivation test presents an issue of substantial and ongoing practical importance. As this case illustrates, the test renders patent examination and litigation more costly, it grants patent applicants unjustified rewards for disclosing non-innovative subject matter, and it forecloses competitors from using the public storehouse of knowledge that should be freely available to all.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The interlocutory posture of this case does not counsel against review, because further proceedings on remand are themselves a product of the Federal Circuit's rigid rule. The Federal Circuit's decision to vacate the district court's grant of summary judgment will require additional proceedings to determine whether Claim 4 of the Engelgau patent would have been obvious. The district court will be required to hold **17** a trial to determine, among other things, "whether a person of ordinary skill in the art would have been motivated, at the time the invention was made, to attach an electronic control to the support structure of the pedal assembly disclosed by the Asano patent." Pet. App. 16a-17a. Those costly proceedings are unnecessary. The district court convincingly explained that the combination of known elements would have been obvious to a mechanical engineer confronted with the task of developing an electronically controlled adjustable pedal. *Id.* at 40a-46a. The claimed invention here is at least as obvious as the inventions in *Graham, see 383 U.S. at 24-26, 32-37*, and *Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 60-63 (1969)*. The Federal Circuit's test nevertheless prevents summary resolution of the issue, potentially grants respondents an undeserved windfall, and prevents a competitor from employing what should be "tools of creation available to all." *Bonito Boats, 489 U.S. at 156*.

The Federal Circuit's test not only shunts cases to trial that should be resolved at summary judgment, but it also unduly restricts the ability of PTO to reject obvious patent applications. Congress vested PTO with "primary responsibility for sifting out unpatentable material." *Graham, 383 U.S. at 18*. That responsibility, which requires technical expertise drawn from a wide variety of disciplines, places extraordinary burdens on patent examiners, particularly in light of the high volume of patent applications. In fiscal year 2005 alone, PTO received more than 400,000 patent applications. Section 103(a) plays a crucial role in filtering out non-innovative applications and focusing the examination efforts on substantial claims. When PTO applies its technical expertise and reasonably articulates why a patent claim is obvious under Section 103(a), that determination is entitled to deference reflecting "the primacy of the PTO in ensuring that the claims allowed cover only subject matter that is properly patentable." **18** *Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 33-34 (1997)*. PTO's obviousness inquiry should not require an unnecessary search for evidence showing a particular suggestion, teaching, or motivation to make insubstantially innovative combinations of elements that are known in the prior art. PTO should instead be allowed to bring to bear its full expertise - including its reckoning of the basic knowledge and common sense possessed by persons in particular fields of endeavor - when making the predictive judgment whether an invention would have been obvious to a person of ordinary skill in the art. [FN8]

> FN8. Cf. *City of Erie v. Pap's A.M., 529 U.S. 277, 298 (2000)* (opinion of O'Connor, J.) (agency may take official notice of facts within its special knowledge and is not confined to the evidence in the record in reaching its expert judgment if party has opportunity to respond); *FCC v. National Citizens Comm. for Broad., 436 U.S. 775, 813-814 (1978)* (agency's predictive judgment forecasting "the direction in which future public interest lies necessarily involves deductions based on the expert knowledge of the agency" (quoting *Federal Power Comm'n v. Transcontinental Gas Pipe Line Corp., 365 U.S. 1, 29 (1961)*)).

2. Respondents contend (Br. in Opp. 2, 17-19) that this case merely involves a routine application of summary judgment standards that does not warrant this Court's review. To the contrary, the case presents an important and recurring issue of basic importance in the field of patent law. The Federal Circuit's longstanding teaching-suggestion-motivation test has a substantial impact on commercial enterprise and innovation. See Cisco Systems Amicus Br. It also has been the subject of critical scholarly comment. See Intellectual Property Law Professors Amicus Br. The Federal Trade Commission's comprehensive report on the United States patent system noted the controversy surrounding the teaching-suggestion-motivation test, describing it as "a core issue in assessing obviousness and a focal point of current **19** debate." See Federal Trade Comm'n, *To Promote Innovation: The Proper Balance of Competition and Patent Law and Policy*, ch. 4, at 9-15 (2003), *available at* < www.ftc.gov/os/2003/10/innovationrpt.pdf>.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1455388
2006 WL 1455388 (U.S.)

This case presents a sound vehicle for examining the merits of the Federal Circuit's test. The court of appeals squarely ruled that KSR's undisputed evidence at the summary judgment stage of the proceedings did not establish a prima facie case of obviousness under its established precedents requiring proof of a teaching, suggestion, or motivation to combine. Pet. App. 14a-15a. Respondents contested KSR's assertion that the claimed invention would be obvious to one of ordinary skill in the art, but they did not dispute the core factual record relevant to this Court's review of the court of appeals' test. See C.A. App. 1547 (Radcliffe Decl. paras. 14-16), 1550 (Andresen Decl. paras. 5-7). KSR has properly preserved its challenge to the court of appeals' teaching-suggestion-motivation test by urging in the proceedings below that this Court's decisions provided an alternative basis for affirmance. See Pet. C.A. Br. 47-50. This case accordingly presents no procedural impediments to this Court's review.

**\*20** CONCLUSION

The petition for a writ of certiorari should be granted.

KSR Intern. Co. v. Teleflex Inc.
2006 WL 1455388

## Briefs and Other Related Documents (Back to top)

• 2005 WL 1637043 (Appellate Petition, Motion and Filing) Reply Brief (Jul. 08, 2005)

• 2005 WL 1503650 (Appellate Petition, Motion and Filing) Motion for Leave to File Amicus Curiae Brief and Brief of Cisco Systems Inc., Microsoft Corp., Hallmark Cards, Incorporated, V.F. Corporation, and Fortune Brands Inc. as Amici Curiae in Support of Petitioner (Jun. 22, 2005)

• 2005 WL 1492885 (Appellate Petition, Motion and Filing) Brief in Opposition (Jun. 21, 2005)

• 2005 WL 1198839 (Appellate Petition, Motion and Filing) Motion of the Progress & Freedom Foundation for Leave to File a Brief as Amicus Curiae in Support of the Petition for a Writ of Certiorari and Brief of the Progress & Freedom Foundation as Amicus Curiae in Support of the Petition for a Writ of Certio rari (May 12, 2005)

• 2005 WL 1334163 (Appellate Petition, Motion and Filing) Motion for Leave to File Amicus Curiae Brief and Brief of Twenty-Four Intellectual Property Law Professors As Amici Curiae in Support of Petitioner (May. 12, 2005)

• 04-1350 (Docket) (Apr. 11, 2005)

• 2005 WL 835463 (Appellate Petition, Motion and Filing) Petition for a Writ of Certiorari (Apr. 06, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

LEXSEE 2004 U.S. DIST. LEXIS 1798

**MILLER PRODUCTS CO., INC., Plaintiff, v. VELTEK ASSOCIATES, INC. and ARTHUR L. VELLUTATO, Defendants.**

**Civil Action No. 01-35-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 1798*

**February 10, 2004, Decided**

**SUBSEQUENT HISTORY:** Reargument denied by *Miller Prods. Co. v. Veltek Assocs., 2004 U.S. Dist. LEXIS 12797 (D. Del., June 4, 2004)*

**PRIOR HISTORY:** *Miller Prods. Co. v. Veltek Assocs., 218 F.R.D. 425, 2003 U.S. Dist. LEXIS 19871 (D. Del., 2003)*

**DISPOSITION:** [*1] Plaintiff's motions for summary judgment denied. Defendant's motions for summary judgment denied.

**COUNSEL:** For MILLER PRODUCTS CO., INC., plaintiff: Richard D. Kirk, Morris, James, Hitchens & Williams, Wilmington, DE.

For VELTEK ASSOCIATES, INC., ARTHUR L. VELLUTATO, defendants: Neal C. Belgam, Steven L. Caponi, Blank Rome LLP, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM ORDER**

**I. INTRODUCTION**

This is a patent infringement case, currently set for a jury trial beginning on March 10, 2004. Jurisdiction is proper under *28 U.S.C. § § 1331and 1338.* Presently before me are two Motions for Summary Judgment (Docket Items ["D.I."] 162, 165) filed by plaintiff Miller Products Co. Inc. ("Miller") and two Motions for Summary Judgment (D.I. 168, 170) filed by defendants [*2] Veltek Associates, Inc. and Arthur L. Vellutato, Sr. (collectively, "Veltek"). On November 13, 2003, Miller filed a Motion for Summary Judgment that *U.S. Patent No. 6,123,900* (the "'900 patent") is invalid based on prior sales (D.I. 162) and a Motion for Summary Judgment that the '900 patent is unenforceable due to inequitable conduct and for attorney's fees (D.I. 165). On November 17, 2003, Veltek filed a Motion for Summary Judgment of validity of claims 1-5 and 9 of the '900 patent (D.I. 168) and a Motion for Summary Judgment of literal infringement of claims 1-5 and 9 of the '900 patent (D.I. 170). For the following reasons, all of the Motions will be denied.

**II. BACKGROUND**

Because the procedural and factual history of this case is familiar to the court and to the parties n1, I will set forth only those facts that are pertinent to the Motions under consideration.

> n1 *See Miller Products Co., Inc. v. Veltek Assocs., Inc., 2003 U.S. Dist. LEXIS 18673 (D. Del. Oct. 9, 2003)* (denying Miller's motion for summary judgment of invalidity due to obviousness); *Miller Products Co., Inc. v. Veltek Assocs., Inc., 2003 U.S. Dist. LEXIS 18675 (D. Del. Oct. 17, 2003)* (denying Miller's motion for summary judgment of invalidity based on *res judicata*); *Miller Products Co., Inc. v. Veltek Assocs., Inc., 218 F.R.D. 425 (D. Del. 2003)* (denying Veltek's motions for leave to file an answer with first and second amended counterclaims).

[*3]

Miller instituted this action on January 17, 2001, seeking a declaratory judgment of invalidity and noninfringement of claims 1-5 and 9 of the *'900 patent.* The application for the *'900 patent* was filed on October 28, 1993, and the patent issued on September 26, 2000. (*See* '900 patent, attached to D.I. 1 as Ex. A.) The patent

claims a method of sterilizing alcohol contained in an aerosol container and a method of storing the sterilized alcohol composition. *See id.*, claims 1, 6, 9. All of the claims of the *'900 patent* are process or method claims. Claim 1 is representative of those involved in this suit and recites the claimed method of sterilization:

> 1. A method of sterilizing alcohol contained in an aerosol container comprising the steps of:
> providing an aerosol container having an internal volume;
> charging the internal volume of the aerosol container with a quantity of alcohol;
> pressurizing the internal volume of the aerosol container with an inert gas and sealing the aerosol container;
> hermetically sealing the aerosol container in a first sealing layer to form a first hermetically sealed container enclosure;
> hermetically sealing said first hermetically sealed [*4] container enclosure in a second sealing layer to form a second hermetically sealed container enclosure;
> inserting at least one second hermetically sealed container enclosure into a third sealing layer;
> closing said third sealing layer to enclose said at least one second hermetically sealed container enclosure and form a third container enclosure;
> enclosing said third container enclosure in a carton member to form a closed shipping package; and
> externally irradiating said closed shipping package at a predetermined radiation level for a predetermined time interval to simultaneously sterilize said alcohol, said aerosol container, said first and second hermetically sealed container enclosures and said third container enclosure.

*See '900 patent*, col. 6, lns. 44-67 to col. 7, lns. 1-6. Veltek sells and markets the product sterilized according to the method disclosed in the *'900 patent* under the DECON-AHOL trademark. (D.I. 164, *Ex. 3 P 3*.)

Veltek has filed a Declaration of Arthur L. Vellutato, Sr., wherein he stated that "the first order of alcohol-pressurized aerosol containers packaged and sterilized according to my invention [the *'900 patent*] was shipped [*5] to the United States by CCL [Industries Limited, located in England] in about August 1992."

(D.I. 164, *Ex. 3 P 6*.) During the course of discovery, Veltek produced several documents that support this statement by Mr. Vellutato, including an invoice from CCL to Veltek for the containers that were shipped to the United States in August 1992 (*id.*, Ex. 5) and an invoice from the shipping company that accepted the shipment from CCL to Veltek at a customs checkpoint in Baltimore, Maryland on September 14, 1992 (*id.*, Ex. 6).

Currently, Miller sells a product called XTRACLEAN, which it advertises as "12 ounce aerosol spray cans" of "sterile isopropyl alcohol." (D.I. 170, Ex. 5.) The XTRACLEAN product is manufactured and produced by Applied Laboratories, Inc. (D.I. 185 at 7.) Miller describes its XTRACLEAN product as a "bag in a can" system, meaning that alcohol is encapsulated within a bladder inserted into a can, and then nitrogen gas is used to pressurize the can, surrounding the bladder and forcing liquid to be expelled through the nozzle. (D.I. 170, Ex. 6.)

## III. STANDARD OF REVIEW

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, [*6] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)* (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita, 475 U.S. at 587* (quoting *Fed. R. Civ. P. 56(e)*). The court will "view the underlying facts and all reasonable inferences [*7] therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995)*. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*.

2004 U.S. Dist. LEXIS 1798, *

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).*

IV. DISCUSSION

A. Miller's Motion for Summary Judgment That the *'900 Patent* is Invalid Based on Prior Sales

*Section 102 of Title 35 of the United States Code* provides, in pertinent part, that "[a] person shall be entitled to a patent unless...the invention was...in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States. [*8] .. ." *35 U.S.C. § 102(b) (2003).* This statutory provision is known as the "on-sale bar." *Brasseler, U.S.A.I, L.P. v. Stryker Sales Corp., 182 F.3d 888, 889 (Fed. Cir. 1999).* The ultimate determination of whether an invention was on sale within the meaning of *§ 102(b)* is a question of law. *Id.* (citation omitted). Courts employ a two-part test to determine if the on-sale bar applies. *Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 67, 142 L. Ed. 2d 261, 119 S. Ct. 304 (1998).* First, the product must be the subject of a commercial offer for sale and, second, the invention must be ready for patenting. *Id.*

Because the application for the *'900 patent* was filed on October 28, 1993, the critical date that triggers the on-sale bar in this case is October 28, 1992. Miller argues that, because the product produced according to the method disclosed in the *'900 patent* was on sale in the United States prior to the critical date, the *'900 patent* is invalid under *35 U.S.C. § 102.* n2 (D.I. 162 at 8.) By Veltek's own admission, it "placed orders with CCL to supply Veltek with commercial quantities of alcohol-charged pressurized [*9] alcohol containers packaged and sterilized according to [the] invention" of the '900 patent prior to the critical date. (D.I. 164, *Ex. 3 P 5.*) Because CCL's offer to sell was made from England and directed to Veltek at its place of business in the United States, the containers were on sale in the United States for purposes of *35 U.S.C. § 102. See In re Caveney, 761 F.2d 671, 676-77 (Fed. Cir. 1985)* (even though company made its offer to sell from England, offer was directed to a company in the United States, making on-sale bar applicable). It is also undisputed that CCL shipped these containers to Veltek and that they arrived in the United States on September 14, 1992. (D.I. 164, Ex. 6.) It is clear, then, that the containers were the subject of a commercial offer for sale by CCL to Veltek prior to the critical date. *See Special Devices, Inc. v. OEA, Inc., 270 F.3d 1353, 1355 (Fed. Cir. 2001)* ("It does not matter who places the invention 'on sale'; it only matters that

someone - inventor, supplier or other third party - placed it on sale.").

n2 As is discussed more fully *infra*, Miller's argument fails to recognize that the on-sale bar applies differently to product patents than it does to process patents, such as the *'900 patent. See, e.g., Minton v. NASD, Inc., 336 F.3d 1373, 1378 (Fed. Cir. 2003)* (Gajarsa, J., concurring); *see also Torpharm, Inc. v. Ranbaxy Pharmaceuticals, Inc., 336 F.3d 1322, 1327 (Fed. Cir. 2003)* (when supplier sells product manufactured according to patented process but process remains secret, "the sale of the product [does] not pose a statutory bar to a claim on the process") (citation omitted).

[*10]

To determine whether the invention was ready for patenting under the second prong of *Pfaff*, there must be proof of reduction to practice before the critical date. *525 U.S. at 67.* "A process is reduced to practice when it is successfully performed." *Id. at 57 n.2* (citation omitted). On the basis of Mr. Vellutato's declaration, it appears that the process claimed by the *'900 patent* was successfully performed sometime in August 1992. (D.I. 164, *Ex. 3 P 6* ("The first order of alcohol-charged pressurized aerosol containers packaged and sterilized according to my invention was shipped to the United States by CCL in about August 1992.").) n3 Therefore, Miller argues, under the two-prong test articulated in *Pfaff*, the on-sale bar should apply in this case.

n3 In Veltek's brief in opposition to Miller's Motion for Summary Judgment based on prior sales (flied on December 15, 2003), Veltek, for the first time, asserts that the CCL transaction was experimental. (D.I. 179 at 22.) That argument is undermined by Mr. Vellutato's earlier declaration, filed on November 2, 2001, which makes no mention of experimental use or trial runs conducted by CCL.

[*11]

However, an exception to the general rule of *Pfaff* "exists where a patented method is kept secret and remains secret after a sale of the unpatented product of the method. Such a sale prior to the critical date is a bar if engaged in by the patentee or patent applicant, but not if engaged by another." *Caveney, 761 F.2d at 675* (citing *W.L. Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1550 (Fed. Cir. 1983), cert. denied, 469 U.S. 851, 83 L. Ed. 2d 107, 105 S. Ct. 172 (1984));* *D.L. Auld Co.*

2004 U.S. Dist. LEXIS 1798, *

*v. Chroma Graphics Corp., 714 F.2d 1144, 1147-48 (Fed. Cir. 1983).*

In this case, the *'900 patent* claims a method of sterilization. While it is true that CCL sold, prior to the critical date, aerosol containers to Veltek that were packaged and sterilized according to the method claimed in the *'900 patent*, "neither party contends, and there [is] no evidence, that the public could learn the claimed process by examining" the aerosol containers. *W.L. Gore, 721 F.2d at 1550*. Furthermore, if CCL, the supplier, (and not Veltek, the patentee) sold the aerosol containers and the process of making them remained unknown, "the sale of the product [*12] [does] not pose a statutory bar to a claim on the process." *Torpharm, Inc. v. Ranbaxy Pharmaceuticals, Inc., 336 F.3d 1322, 1327 (Fed. Cir. 2003)* (citing *W.L. Gore, 721 F.2d at 1550*).

At oral argument, Miller's counsel took the position that whether the *'900 patent* claimed a product or a process was immaterial and that the on-sale bar was triggered when CCL sold and shipped to Veltek in the United States the aerosol containers created according to the method of the *'900 patent* prior to the critical date. However, the Federal Circuit recently confirmed that

> while [*35 U.S.C. § 102*] indeed makes no distinction between various types of inventions in setting out the statutory bar, there are different types of sales and different types of inventions. It is not correct that "nothing in *§ 102(b)* compels different treatment between an invention that is a tangible item and an invention that describes a series of steps in a process." The very nature of the invention may compel a difference. The sale of a tangible item is usually a straightforward event; the item is transferred from the seller to the buyer, who normally owns it [*13] outright. In contrast, a process is a series of acts, and the concept of sale as applied to those acts is ambiguous.

*Minton v. NASD, Inc., 336 F.3d 1373, 1378 (Fed. Cir. 2003)* (Gajarsa, J., concurring). Thus, Miller's position is not an accurate interpretation of the law relating to process or method patents and the on-sale bar.

Miller has offered no evidence to prove that the process or method of sterilization claimed in the *'900 patent* was not kept secret by CCL prior to the critical date. Indeed, on March 9, 1992, CCL sent Veltek a partially executed confidentiality agreement wherein CCL

agreed to keep Veltek's "product formulations" secret and confidential for a period of five years from the date of the agreement. (D.I. 181, Ex. E.) In addition, Robert Calabro, the East Coast sales manager of CCL from 1989 to 1993, submitted a declaration wherein he stated that, to the best of his knowledge and belief, "CCL never disclosed anything regarding the DECON-AHOL product to any third party and never sold any product similar to the DECON-AHOL product to any third party." (*D.I. 180 P 4*.) Because Miller has offered no evidence to prove that the method [*14] claimed in the *'900 patent* was not maintained in secret prior to the critical date, its Motion for Summary Judgment based on prior sales will be denied. n4

> n4 However, genuine issues of material fact remain as to whether the method disclosed in the *'900 patent* remained a secret prior to the critical date, as there is no evidence that the confidentiality agreement signed by CCL was ever executed by Veltek, or, even if executed, that it was complied with.

**B. Miller's Motion for Summary Judgment That The *'900 Patent* is Unenforceable Due to Inequitable Conduct and for an Award of Attorney's Fees**

Miller argues that, because Veltek never informed the patent examiner of the "invalidating prior sales" just discussed, Veltek fraudulently obtained the *'900 patent*. (D.I. 166 at 1.) As further evidence of Veltek's alleged fraud, Miller asserts that Veltek's trademark application for DECON-AHOL stated that the mark was used in interstate commerce for sterile isopropyl alcohol at least as early as January 1987, and that Veltek [*15] intentionally concealed the application from the patent examiner. (*Id. at 20*.) Finally, Miller argues that this case is "clearly exceptional" and it is entitled to attorney's fees under *28 U.S.C. § 285*. (*Id.* at 3.) Veltek, of course, vigorously disputes all of Miller's assertions. n5 As the Federal Circuit wisely counsels, "[a] summary judgment that a reputable attorney has been guilty of inequitable conduct, over his denials, ought to be, and can properly be, rare indeed." *Burlington Indus., Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988)*. The record before me is inadequate to support a summary judgment that Veltek obtained the *'900 patent* through fraudulent or inequitable conduct before the U.S. Patent and Trademark Office. Miller's Motion for Summary Judgment that the *'900 patent* is unenforceable due to inequitable conduct and for attorney's fees will be denied.

n5 Veltek also argues that it is entitled to attorney's fees due to Miller's unreasonable and vexatious conduct for bringing multiple summary judgment motions for inequitable conduct. (D.I. 178 at 28.) Miller's allegations are not entirely baseless. On the present record, therefore, I am not prepared to say that sanctions are appropriate. *See 28 U.S.C. § 1927* (sanctions are appropriate against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously").

[*16]

C. Veltek's Motion for Summary Judgment of Validity of Claims 1-5 and 9 of the *'900 Patent*

Veltek argues that summary judgment of validity is appropriate because Miller's expert, Mr. Charles Berndt, "fails to set forth a *prima facie* case of obviousness under *35 U.S.C. § 103* based on either of his alternative grounds of invalidity" and, because his testimony at trial is limited to his expert report, *see Fed. R. Civ. P. 26(a)(2)(B)*, Miller will be unable to prove that the *'900* is invalid by clear and convincing evidence. (D.I. 169 at 10.) In response, Miller points to various pieces of evidence, apart from Mr. Berndt's testimony, that it intends to use at trial to rebut the presumption that the *'900 patent* is valid. (D.I. 185 at 5.) For example, Miller intends to call Anthony Moravec, the founder and president of Applied Laboratories, Inc., n6 to testify that Applied Laboratories manufactured and commercially sold containers of saline solution contained in an aerosol container sterilized by gamma radiation in the mid-1980s. (D.I. 185 at 7.) Miller also intends to argue that the method claimed in the *'900 patent* [*17] was disclosed in a 1992 reader service card insert in *CleanRooms* magazine in March 1992, and that the reader service card therefore constitutes an anticipatory reference which invalidates the *'900 patent*. n7 (*Id.*)

n6 Applied Laboratories, Inc. is the company that manufactures Miller's XTRACLEAN product. (D.I. 185 at 7.)

n7 For a full description and discussion of the *CleanRooms* reader service card, *see Miller v. Veltek, 2003 U.S. Dist. LEXIS 18673 at *2-*4 (D. Del. Oct. 9, 2003).*

While it goes without saying that the *'900 patent* enjoys the statutory presumption of validity unless and until Miller rebuts that presumption with clear and convincing evidence at trial, the foregoing items of potential evidence raise genuine issues of material fact regarding validity and it is therefore inappropriate to grant sum-

mary judgment. Veltek's Motion for Summary Judgment of validity of claims 1-5 and 9 of the *'900 patent* will therefore be denied.

D. Veltek's Motion for Summary Judgment of [*18] Literal Infringement of Claims 1-5 and 9 of the *'900 Patent*

A patent infringement analysis involves two steps: claim construction and application of the construed claim to the accused process or product. *Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995)* (en banc), *aff'd, 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996).* Before I address Veltek's Motion for Summary Judgment of literal infringement (D.I. 170) on its merits, the parties agree that I must first construe the claim term "aerosol" as it appears in claims 1-5 and 9 of the *'900 patent.*

1. Claim Construction

Patent claims are construed as a matter of law. *Markman, 52 F.3d at 979.* A court's objective is to determine the plain meaning, if any, that those of ordinary skill in the art would apply to the language used in the patent claims. *Waner v. Ford Motor Co., 331 F.3d 851, 854 (Fed. Cir. 2003)* (citing *Rexnord v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001)).* While the court may look to pertinent art dictionaries, treatises and encyclopedias for assistance, *Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202-03 (Fed. Cir. 2002),* [*19] the intrinsic record is the best source of the meaning of claim language, *Vitronics Corp. v. Conceptronics, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).* Unless the inventor has manifested an express intent to depart from the ordinary and accustomed meaning that patent claim language has in the art, there is a heavy presumption that the inventor intended the ordinary meaning to apply. *See Teleflex Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1325 (Fed. Cir. 2002)* (en banc) (citation omitted); *Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc., 262 F.3d 1258, 1268 (Fed. Cir. 2001)* (citation omitted). The use of extrinsic evidence in the claim construction process is "proper only when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence." *Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1332 (Fed. Cir. 2001).*

Veltek proposes that I construe the claim term "aerosol" according to its dictionary definition. (D.I. 171 at 5.) "Aerosol" is defined as "a suspension of fine solid or liquid particles in gas (smoke, fog and mist are aerosols)" or "a substance [*20] (as an insecticide or cosmetic) dispensed from a pressurized container esp. as an aerosol; also: the container for this." Merriam-Webster's Collegiate Dictionary at 19 (10th Ed. 2002). Miller agrees that I should adopt this common, dictionary definition of

Case 1:04-cv-01373-KAJ    Document 362    Filed 06/13/2006    Page 21 of 22

Page 6
2004 U.S. Dist. LEXIS 1798, *

aerosol (D.I. 184 at 6) but argues that "a suspension of liquid particles...is obviously a commingling of the alcohol and gas (*id.* at 4)" within the container.

I disagree with Miller's proposed claim construction. The dictionary definition of aerosol does not require a substance, such as alcohol, that is dispensed from a pressurized container to be mixed or commingled with gas inside a can in order to constitute an aerosol. Further, nothing in the claims, specification, or the intrinsic record of the *'900 patent* indicates that the patentee intended to deviate from the ordinary and accustomed meaning of aerosol. *See '900 patent,* col. 4, lns. 12-16 ("When using isopropyl alcohol as the chemical composition, such is generally inserted under pressure with an inert element such as nitrogen or another chemical formulation acting as the propellant into an aerosol can type chemical composition container."). Miller would have me [*21] read the "commingling" limitation into the claims of the *'900 patent* based solely on Miller's interpretation of the dictionary definition of aerosol. I decline to do so.

Therefore, I construe "aerosol" to mean a substance dispensed from a pressurized container as a suspension of fine liquid particles in gas. This construction is consistent with the plain language of the claim and the specification. The claim language itself does not refer to commingling or mixing the alcohol and a gas within an aerosol container; rather, it refers only to "charging the internal volume of the aerosol container with a quantity of alcohol" and then "pressurizing the internal volume of the aerosol container with an inert gas." *See '900 patent,* col. 6, lns. 50-54. Similarly, the specification states that "isopropyl alcohol" is "inserted under pressure with an inert element such as nitrogen" into an aerosol can. *Id.,* col. 4., lns. 13-16. Miller has not overcome the "heavy presumption that the inventor intended the ordinary meaning to apply" to the claim term aerosol, *Bell Atlantic, 262 F.3d at 1268,* and it is apparent that the *'900 patent* discloses an aerosol as it is commonly defined. [*22]

2. Literal Infringement

The second step in a patent infringement analysis, application of the claim to the accused process or product, is a question of fact. *Kustom Signals, Inc. v. Applied Concepts, Inc., 264 F.3d 1326, 1332 (Fed. Cir. 2001).* Summary judgment in patent suits is appropriate when it is apparent that only one conclusion regarding infringement could be reached by a reasonable jury. *See Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001).*

Veltek argues that, by Miller's own admission, its accused product infringes claims 1-5 and 9 of the *'900 patent.* (D.I. 171 at 10.) Specifically, Veltek points to

Miller's responses to Veltek's Second Set of Request for Admissions, wherein Miller contends that its accused XTRACLEAN product does not infringe claims 1-5 and 9 because it is not an aerosol container. (*Id.,* Ex. 2.)

In support of its argument, Miller cites the deposition testimony of Mr. Moravec, the president of the company that manufactures XTRACLEAN. He testified that filling a bag with alcohol within a container is not, by definition, an aerosol, and is more accurately described as a "barrier packaging [*23] system." (D.I. 184, Ex. A at 29.) However, Veltek states that Miller refers to its accused XTRACLEAN product as an "aerosol," a "fully evacuating aerosol spray," and an "isopropyl alcohol aerosol" in advertising, on its website, and on each container of the accused product itself. (D.I. 171, Exs. 3-6.) Veltek also notes that its expert, Dr. Fitzgerald, concluded that "an aerosol container...generates an aerosol," as does Miller's accused product. (D.I. 192 at 6.) Finally, Veltek cites several prior art references disclosing what it characterizes as similar "barrier packaging technology" to that used in the accused product, wherein the container is described as an aerosol container. (*Id.,* Exs. 9-16.)

While Mr. Moravec's testimony may be viewed as self-serving, given his position with the company that manufactures the accused XTRACLEAN product, there is enough evidence on the record that would allow a reasonable jury to reach more than one conclusion regarding literal infringement, particularly on the question of whether Miller's XTRACLEAN product constitutes an aerosol, as I have construed that claim term. Therefore, Veltek's Motion for Summary Judgment of literal infringement [*24] must be denied.

V. CONCLUSION

For the reasons set forth, it is hereby ordered that Miller's Motion for Summary Judgment that the *'900 patent* is invalid based on prior offers for sale (D.I. 162) is DENIED; Miller's Motion for Summary Judgment that the *'900* is unenforceable due to inequitable conduct and for attorney's fees (D.I. 165) is DENIED; Veltek's Motion for Summary Judgment of validity of claims 1-5 and 9 of the *'900 patent* (D.I. 168) is DENIED; and Veltek's Motion for Summary Judgment of literal infringement of claims 1-5 and 9 of the *'900 patent* (D.I. 170) is DENIED. The disputed claim term "aerosol" is construed to mean "a substance dispensed from a pressurized container as a suspension of fine liquid particles in gas."

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

Wilmington, Delaware
February 10, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2006, I electronically filed Compendium of Unreported Opinions Cited in Defendants' Answering Brief in Opposition to Plaintiff's Motion for Summary Judgment that U.S. Patent No. 4,821,121 is Not Valid for Obviousness with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

I hereby certify that on June 13, 2006, I have forwarded the above-noted document to the following as noted below:

**VIA E-MAIL**                                    **VIA E-MAIL & FEDERAL EXPRESS**

Jesse J. Jenner, Esquire                          Norman H. Beamer, Esquire
Ropes & Gray LLP                                  Ropes & Gray LLP
1251 Avenue of the Americas                       525 University Avenue
New York, NY 10020                                Palo Alto, CA 94301

**VIA E-MAIL & HAND DELIVERY**

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

              */s/ Collins J. Seitz, Jr.*
              Collins J. Seitz, Jr. (Bar No. 2237)
              Connolly Bove Lodge & Hutz LLP
              P.O. Box 2207
              1007 North Orange Street
              Wilmington, DE 19899