IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, ALTEK | ) | |
| CORPORATION and CHINON INDUSTRIES, | ) | |
| INC., | ) | **REDACTED** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO
AMPEX CORPORATION'S MOTION FOR SUMMARY JUDGMENT
THAT U.S. PATENT NO. 4,802,019 IS NOT PRIOR ART
TO U.S. PATENT NO. 4,821,121**

Collins J. Seitz, Jr. (#2237)
Jaclyn M. Mason (#4737)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com

*Attorneys for Defendants Eastman Kodak
Company and Altek Corporation*

OF COUNSEL:
William F. Lee
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800
Date: June 13, 2006

**TABLE OF CONTENTS**

PAGE

NATURE AND STAGE OF PROCEEDINGS .............................................................................. 1

SUMMARY OF ARGUMENT .................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 4

     A.     The Harada Patent .......................................................................................... 4

     B.     The January '83 Application's Disclosure of "A Detecting Output Thereof Being Utilized to Rearrange the Arrangement of Said Reduced Still Pictures on Said Screen" ................................................................................ 5

ARGUMENT .............................................................................................................................. 8

I.  Ampex's Sole Reliance on the Examiner's Conclusion is Misplaced and Does Not Dispositively Answer Enablement .......................................................................... 8

II.  The Proper Analysis Establishes That Harada is Entitled to Its January '83 Application Date. ...................................................................................................... 11

III. Defendants are Not Bound by any Purported "Acquiescence" of Harada ............................. 13

CONCLUSION .......................................................................................................................... 15

# TABLE OF AUTHORITIES

**PAGE**

<u>Federal Cases</u>

*Alexander Milburn Co. v. Davis-Bournonville Co.,*
 270 U.S. 390 (1926) ...................................................................................................9

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,*
 402 U.S. 313 (1971) .................................................................................................14

*Bruckelmyer v. Ground Heaters, Inc.,*
 445 F.3d 1374 (Fed. Cir. 2006) .................................................................................9

*Cryovac Inc. v. Pechiney Plastic Packaging, Inc.,*
 No. Civ. A. 04-1278-KAJ, --- F. Supp. 2d ---, 2006 WL 1216220 * 7
 (D. Del., April 17, 2006) ......................................................................................9, 12

*Falkner v. Inglis,*
 No. 05-1324, 2006 WL 1453040, at *4 (Fed Cir. May 26, 2006) ..............................9

*Fromson v. Advance Offset Plate, Inc.,*
 755 F.2d 1549 (Fed. Cir. 1985) ...............................................................................10

*Genentech, Inc. v. Novo Nordisk A/S,*
 108 F.3d 1361 (Fed. Cir. 1997) .................................................................................9

*Greenberg v. Croydon Plastics Co., Inc.,*
 378 F. Supp. 806 (D.C. Pa. 1974) ............................................................................11

*Novo Nordisk Pharm. v. Bio-technology General Corp.,*
 424 F.3d 1347 (Fed. Cir. 2005) ............................................................................9, 12

*In re Wertheim,*
 646 F.2d 527 (C.C.P.A. 1981) ...............................................................................8, 9

*IPXL Holdings, L.L.C. v. Amazon.Com, Inc.,*
 333 F. Supp. 2d 513 (E.D. Va. 2004) .......................................................................10

*Litton v. Whirlpool,*
 728 F.2d at 1423 (Fed. C ...........................................................................................13

*Panduit Corp. v. Dennison Mfg. Co.,*
 774 F.2d 1082 (Fed. Cir. 1985) ...............................................................................10

*Parklane Hosiery Co. v. Shore,*
 439 U.S. 322 (1979) .................................................................................................13

*Paperless Accounting, Inc. v. Bay Area Rapid Transit System,*
  804 F.2d 659 (Fed. Cir. 1986) ........................................................................13

*Pennwalt Corp. v. Akzona Inc.,*
  740 F.2d 1573 (Fed. Cir. 1984) ......................................................................13

<u>Federal Statutes</u>

35 U.S.C. 102(e) ...............................................................................................9

<u>State Rules</u>

*Manual of Patent Examining Procedure* §
  201.08 (8th ed., Nev. No. 2, 2004) .................................................................4

Defendants Eastman Kodak Company ("Kodak") and Altek Corporation ("Altek"), (collectively, "Defendants"), respectfully submit this Response in Opposition to Ampex Corporation's ("Ampex") Motion for Summary Judgment that U.S. Patent No. 4,802,019 issued to Harada et al. ("Harada" or the "Harada patent") is not prior art to U.S. Patent No. 4,821,121 (the "'121 patent").

## NATURE AND STAGE OF PROCEEDINGS

On October 24, 2004, Ampex filed complaints alleging infringement of the '121 patent in the International Trade Commission ("ITC") and this Court. This action was stayed pending the outcome of the ITC action.

In the ITC, as in this litigation, Defendants contended that the '121 patent is invalid in light of the prior art, including the Harada patent. On July 12, 2005, during the ITC action, Ampex filed a nearly identical motion for summary judgment that the Harada patent is not prior art. Defendants opposed Ampex's motion. The independent ITC investigative attorneys, agreeing with Defendants that the Harada patent was prior art to the '121 patent, also opposed Ampex's motion. Before Ampex's motion was decided, Ampex withdrew its ITC complaint and the case was dismissed. The stay on this action was subsequently lifted. Ampex now moves for the second time for summary judgment that the Harada patent is not prior art.

## SUMMARY OF ARGUMENT

In response to Defendants' argument that Harada anticipates the claimed invention of the '121 patent, Ampex attempts to exclude Harada as prior art. The Harada patent proves that Ampex was not the first to invent what is claimed in the '121 patent. On January 3, 1983, Harada et al. disclosed the claimed invention of the '121 patent in its own patent application (the "January '83 application"), three months earlier than the '121 patent application. Defendants therefore contend that the Harada patent is 35 U.S.C. 102(e) prior art

to the '121 patent: it is a patent granted on an application that describes the invention of the

'121 patent.

Ampex now asks this Court to find that Harada is not prior art to the '121 patent

because Harada did not issue from the initial January '83 application. Instead, Harada is a

"continuation-in-part" application ("CIP"): it includes the January '83 application as well as

some additional matter. In making this argument, Ampex concedes that Harada will be

entitled to its initial January '83 application date so long as the January '83 application

enables at least one issued claim. Ampex nonetheless contends that Defendants cannot prove

enablement because, following an examiner's conclusion that some of the original claims

were not enabled, Harada *et al.* chose to file the CIP.

Specifically, Ampex points to a single phrase contained in issued claim 9 as not being

enabled: "a detecting output thereof [*i.e.*, of a detecting circuit] being utilized to rearrange

the arrangement of said reduced still pictures on said screen." (Ampex Br., D.I. 287, at 14).[1]

To rearrange the pictures displayed on the screen, it is necessary to rearrange how they are

arranged in memory. (Beamer Ex. 4 at AX203777-AX20378).[2] Ampex contends that the

January '83 application does not enable a person of ordinary skill in the art to use the output

of the detecting circuit to rearrange the arrangement of the reduced size images in memory.

                                **REDACTED**                      even an undergraduate student studying this

technology would know how to perform the rearrangement of reduced still images:


                                        **REDACTED**

_____

[1] "Ampex Br." refers to Ampex's Memorandum In Support Of Its Motion For Summary
Judgment That U.S. Patent No. 4,802,019 Is Not Prior Art To U.S. Patent No. 4,821,121.

[2] "Beamer Ex." refers to the exhibit attached to the accompanying Declaration Of Norman H.
Beamer In Support Of Ampex's Motion For Summary Judgment That U.S. Patent No.
4,802,019 Is Not Prior Art To U.S. Patent No. 4,821,121.

**REDACTED**

Ampex argues that the fact that the examiner found a lack of enablement is dispositive. Ampex cannot simply rely on the examiner's statement as a substitute for performing the relevant analysis. If the required analysis is performed, we submit that.                    **REDACTED**                    the Court will find claim 9 enabled.

Ampex's motion should be denied for the following reasons. First, Ampex's singular reliance on the examiner's conclusion is not an adequate replacement for performing the actual analysis of comparing the January '83 disclosure to the issued Harada claims. The issue is not whether the examiner's decision should be upheld but instead whether any claim is enabled. The examiner's conclusion is not dispositive on enablement, and does not, as a matter of law, determine this issue.

Second, performing the actual analysis shows that the January '83 application enables at least issued claim 9.                    **REDACTED**

Third, at a minimum, a fact issue exists as to whether the Harada claims are enabled, which cannot be determined on summary judgment. Contrary to Ampex's unsupported argument, Harada's decision to file an amended application following the office action does not foreclose Defendants, nonparties to the office action, from raising a fact issue that the January '83 application enables the Harada claims.

3

## STATEMENT OF FACTS

### A.    The Harada Patent

In January 1983, Harada *et al.* filed a patent application directed to an electronic still store system -- a computer-based system for storing, manipulating, and outputting digital images. In particular, the January '83 application describes a still store system that can capture, store, manipulate, reorganize, and recall images captured from a video stream. To carry out these functions, the January '83 application discloses a system that includes at least a monitor, random access memory, microprocessor, size reducer ("squeezer"), and a disk for storage of full and reduced size images. These elements disclosed in the Harada patent are the same elements claimed in the '121 patent.

The Harada patent issued from a May 1986 application, which incorporated the January '83 application. Following an office action rejecting some claims for failing to enable a "memory replacement control," Harada incorporated the January '83 application into another application (the "May '86 application"), and included additional information. Because Harada included additional matter in the May '86 application, Harada is considered a "continuation-in-part" of the January '83 application. *See* Manual of Patent Examining Procedure § 201.08 (8th ed., Nev. No. 2, 2004) (defining continuation-in-part applications).

Despite the addition of new matter, both parties agree that the Harada patent is prior art as of its January 1983 filing date so long as the January '83 application enables at least one issued claim. (Ampex Br., D.I. 287, at 13). Defendants contend that the January '83 application enables Harada's issued claim 9, and Ampex disputes enablement of only one small portion of its language, emphasized below (Ampex Br., D.I. 287, at 13-14):

Claim 9:

A picture processing system comprising:

4

a random access recording and playback member having a main recording portion in which a plurality of still picture signals are electronically recorded and an index recording portion in which a plurality of reduced still picture signals are electronically recorded, each of the reduced still pictures corresponding to a different one of said still pictures; and

a monitoring means including:

a screen for displaying either a group of said reduced still pictures in multiple segmented areas formed on said screen as an index to said still pictures or one of said still pictures;

selecting means for designating one of said multiple segmented areas to select the reduced still picture displayed therein by directly pointing to the surface of said screen, and for controlling said random access recording and playback member;

means for electronically recording the signal of the one still picture corresponding to the selected one of said reduced still pictures; and

a detecting circuit for detecting the position of said segmented areas designated by said selecting means on the basis of horizontal and vertical sync signals for said screen, said detecting circuit including means for detecting intermediate regions respectively provided between adjacent segmented areas on said screen, *a detecting output thereof being utilized to rearrange the arrangement of said reduced still pictures on said screen*.

**B.    The January '83 Application's Disclosure of "A Detecting Output Thereof Being Utilized to Rearrange the Arrangement of Said Reduced Still Pictures on Said Screen"**

There is ample evidence showing how the January '83 application enables "a detecting output thereof being utilized to rearrange the arrangement of said reduced still pictures on said screen." "Rearrangements" may include replacing, inserting, and/or rearranging still pictures on an index screen, and the January '83 application describes each of these processes.

For example, the January '83 application explains how to replace pictures:

> The sequence of the programs is replaceable by instructing the pictures on the multi-screen by means of the light pen. For

5

example, when the sequence of programs represented by the squeezed pictures 6, 7 is to be replaced, the operator designates the screen segments 6 and 7 by means of the light pen 10 and manipulates a "Change" key on the keyboard. *As the result, the memory replacement control circuit 11 is operated so that the squeezed picture information corresponding to regions 6, 7 in the index memory 5 is mutually replaced, and at the same time, the index reference numerals written in the schedule memory portion within the index memory 5 are mutually replaced.*

(Beamer Ex. 4, AX203777-78).

The January '83 application also explains how to insert one picture between two

others:

As one typical method, it is assumed that the squeezed picture 5 is to be inserted between the squeezed pictures 1 and 2, for example. The operator first designates the picture 1 and then the picture 5 by use of the light pen 10, and thereafter manipulates an "Insert" key on the keyboard. *The memory replacement control circuit 11 is thereby operated just as similar to the above-mentioned replacement operation. As the result, the picture 5 is inserted between the pictures 1 and 2, and the pictures 2, 3 and 4 are shifted by one segment in order, respectively.*

(Beamer Ex. 4, AX203778).

Finally, the January '83 application describes the rearrangement of pictures:

Now it is assumed that the picture 5 is to be inserted between the pictures 1 and 2 by utilization of the intermediate region 13. In this case, the operator first designates the picture 5 and then the intermediate region 13 located between the pictures 1 and 2, and thereafter manipulates the "Insert" key on the keyboard. The respective outputs of the index number detecting circuit 9 and the "Insert" key are thereby fed into the memory replacement control circuit 11, and the insert operation for the squeezed pictures and the reference numerals is carried out. *As the result, such a rearranged program as shown on the monitor screen 14 in Figure 4 is obtained.* As clearly understood from the foregoing, the aforesaid insertion process is extremely simple and any erroneous operation can be avoided.

(Beamer Ex. 4, AX203779).

Figure 3 from the January '83 application, which shows a starting arrangement of the images and intermediate regions between images that can be designated for a rearrangement operation, and Figure 4, which shows the results of the rearrangement, are reproduced below:



(Beamer Ex. 4, AX203817).

Defendants' expert, Dr. Brad Myers, concluded that one of ordinary skill in the art in the early 1980s would understand how to "rearrange the arrangement of said reduced still pictures on said screen" and explained why: because the kinds of rearrangements discussed in the January '83 application "are just swapping two pictures, inserting a picture, or replacing a picture. ... Any student after completing their first or second programming class would know how to write a program for a microprocessor that would swap the contents of two memory locations, and how to do the insertion or replacement." (Beamer Ex. 7, ¶ 76; *see also* Myers Decl. ¶ 22.)

**REDACTED**         any undergraduate student would know how to write a program for a microprocessor that would swap the contents of two memory locations, and how to do the insertion or replacement:

**REDACTED**

**REDACTED**

Ampex does not address these facts in its motion for summary judgment.

**ARGUMENT**

I.    **Ampex's Sole Reliance on the Examiner's Conclusion is Misplaced and Does Not Dispositively Answer Enablement.**

Taking Ampex's test at face-value,[3] Ampex proposes that Harada is entitled to its January 1983 application date so long as the January '83 application enables at least one issued Harada claim. "Enablement is a question of law involving underlying factual inquiries," (*Falkner v. Inglis*, No. 05-1324, 2006 WL 1453040, at *4 (Fed Cir. May 26, 2006)) and requires that the patent specification teach those skilled in the art how to make and use the full scope of the claimed invention without "undue experimentation." *See, e.g., Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997); *see also Novo Nordisk Pharm. v. Bio-technology General Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005) ("Whether a prior art reference is enabling is a question of law based upon underlying factual findings."); *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, No. Civ. A. 04-1278-KAJ, --- F.

---

[3] Ampex's test derives from statements made by the Court of Custom and Patent Appeals in determining a priority dispute between two parties. (*See* Ampex Br., D.I. 287, at 9-11, quoting *In re Wertheim*, 646 F.2d 527, 537 (C.C.P.A. 1981). *In re Wertheim* is a limited case, applicable in an interference proceeding where two parties are claiming the *same* invention and *same* claims, and the Court must determine who is entitled to the invention. 646 F.2d at 528-29 (providing the procedural history of this priority dispute).

Applying *In re Wertheim* here would require that a prior patent application that has published disclose some patentable invention in addition to the alleged invention at issue in the litigation in order to be "prior art." This is not a requirement for prior art. *See* 35 U.S.C. § 102(e) (allowing a published application to be prior art as of its filing date regardless of whether the application discloses a patentable invention); *see also Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374 (Fed. Cir. 2006) (portions of foreign patent application that did not appear in issued patent qualify as prior art because they were in the prosecution history); *Alexander Milburn Co. v. Davis-Bournonville Co.*, 270 U.S. 390, 400 (1926) (noting that one cannot be the first inventor if "somebody else had made a complete and adequate description of the thing claimed before the earliest moment to which the alleged inventor can carry his invention back"). Harada's filing of its patent application in January 1983 shows that when Ampex filed the '121 patent, Ampex was not the first to invent. It does not matter whether Harada described adequately the invention it attempted to claim; it is enough that Harada described the '121 patent's invention to show that Ampex is not entitled to a patent. In any event, Harada meets even Ampex's test for obtaining the benefit of its January '83 application date.

9

Supp. 2d ---, 2006 WL 1216220, at *7 (D. Del., April 17, 2006) (summary judgment of lack of enablement under section 112 denied where there were factual issues in dispute).

The relevant analysis therefore focuses on whether the January '83 application teaches one skilled in the art how to make and use any of the inventions of any of the issued Harada claims without undue experimentation. Ampex does not perform this analysis, but instead relies on the examiner's conclusion of lack of enablement. This case, however, is not an administrative appeal from an agency decision and neither the Court nor the Defendants are bound by the Examiner's opinion.

Ampex disputes enablement of only a portion of the last limitation of issued claim 9, "a detecting output thereof being utilized to rearrange the arrangement of said reduced still pictures on said screen," which is a circuit that rearranges the order of pictures. Ampex did not analyze whether one skilled in the art, based on the January '83 application, could make and use this limitation. Instead, Ampex contends that claim 9 is not enabled because (1) the examiner rejected several of Harada's original claims for failing to enable a "memory replacement control," and (2) Harada subsequently filed a continuation-in-part application that included additional matter.[4]

Ampex's reliance on the examiner's analysis is misplaced for at least two reasons. First, the examiner never compared issued claim 9 to the January '83 application, so he never determined whether the January '83 application enables any of the issued claims of the Harada patent. Therefore, the examiner's analysis cannot be determinative of enablement of claim 9.

---

[4]  Issued claim 9 does not recite a "memory replacement control"; but Ampex nonetheless argues that the examiner's rejection is conclusive because one of the many functions of the "memory replacement control" is to rearrange images.

**REDACTED**

10

Second, to the extent the examiner's office action is some evidence of nonenablement, an examiner's view of a patent application is not determinative. *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir.1985) ("The Examiner's decision, on an original or reissue application, is never binding on a court."); *Panduit Corp. v. Dennison Mfg. Co.*, 774 F.2d 1082, 1094 (Fed. Cir. 1985) (noting that "Courts are not, of course, bound by the Examiner's determination"). Courts can, and have, freely reviewed and overturned an examiner's conclusions. *See, e.g., IPXL Holdings, L.L.C. v. Amazon.Com, Inc.*, 333 F. Supp. 2d 513, 536-43 (E.D. Va. 2004) (holding that a reference anticipated four claims of a patent, even though the examiner had explicitly considered the reference, heard argument from the applicant about the reference, and allowed the claims); *Greenberg v. Croydon Plastics Co., Inc.*, 378 F. Supp. 806, 811 (D.C. Pa. 1974) (noting that courts must not "blindly accept the Patent Examiner's determination even if the attack on the patent's validity is based primarily or even exclusively on prior art which was considered by the Examiner in his decision to issue the patent"). Examiners make mistakes and the jurisdiction of district courts exist to correct them. Were it otherwise, patent validity would never be an issue in litigation.

II.    **The Proper Analysis Establishes That Harada is Entitled to Its January '83 Application Date.**

A comparison of the Harada claims with the January '83 application demonstrates that the January '83 application enables at least claim 9. *Both* parties' experts support this analysis.

Defendants' expert, Dr. Brad Myers, specifically found that the January '83 application adequately discloses the rearrangement of the "the arrangement of said reduced still pictures on said screen." (Myers Decl. ¶ 22.) His opinions are not mere "conclusions" as argued by Ampex, but are based on fact. As discussed above, the January '83 application

11

extensively discusses the selection and rearrangement of still pictures in an index screen displaying a plurality of images, which is precisely the subject of the disputed limitation of claim 9.

As described by Dr. Myers, the kinds of rearrangements in issued claim 9 are merely the swapping of two pictures, inserting a picture, or replacing a picture. (Beamer Ex. 7, ¶ 76; Myers Decl. at ¶ 22.) These types of rearrangements were well-known in the art. (*Id*.)


**REDACTED**


testimony supports the conclusion that to make and use the "rearrangement" aspect of issued claim 9, one skilled in the art required no more disclosure than what Harada provided in the January '83 application.

Ampex's attempts to rebut Dr. Myers' findings are unavailing. That Dr. Myers disagrees with the examiner's conclusion of lack of enablement of the "memory replacement control" only highlights that a factual dispute exists. Dr. Myers based his conclusion on the specific disclosures of the January '83 application and the particular limitations of claim 9 of the Harada patent, and even Ampex's own expert agrees with the facts supporting Dr. Myers' analysis. Therefore, the examiner's assertion that the January '83 application did not adequately support a "memory replacement control" does not preclude the fact dispute now between Ampex and Defendants.

Ampex also asserts that claim 9 is not enabled because it took Mr. Harada between one to one-and-a-half years to produce the commercial machine disclosed in Figure 6 of the Harada patent. The time to bring a product to commercial reality does not answer the question whether a person of ordinary skill in the art would be able to make and use the

invention(s) of the Harada patent based on the January '83 disclosure. Notably, although Ampex deposed Mr. Harada, it did not even ask Mr. Harada about enablement of this limitation.

The best evidence provided is that the January '83 application enables the disputed element of claim 9. While Ampex is free to dispute this conclusion and these facts, Ampex's disagreement is an issue of fact inappropriate for a motion for summary judgment. Indeed, enablement is an inherently factual issue because it is a question of law based on underlying factual findings. *See Novo Nordisk*, 424 F.3d at 1355; *Cryovac*, 2006 WL 1216220, at* 7.


**III.    Defendants are Not Bound by any Purported "Acquiescence" of Harada.**

Perhaps recognizing that there is a factual dispute of whether the Harada patent is prior art, Ampex has posited that the doctrine of acquiescence prevents Defendants from arguing enablement of the "detecting output" element of claim 9.

Without any legal support, Ampex contends that Defendants, as the proponent of the Harada patent as prior art, should, like Harada, be estopped from arguing that the January '83 application enables the Harada patent claims. Ampex's bold extension of the law cannot be sustained.

The doctrine of acquiescence prevents a *patentee* in some circumstances from arguing that it is entitled to an earlier application date for its *own* patent where the *patentee* chose to file a continuation-in-part rather than appeal certain rejections by the examiner. *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1578-79 (Fed. Cir. 1984). By choosing to abandon the right to review via PTO appellate procedure, a patentee will be "bound by *its* acquiescence." *Litton v. Whirlpool*, 728 F.2d 1423, 1440 (Fed. Cir. 1984) (emphasis added); *compare Paperless Accounting, Inc. v. Bay Area Rapid Transit System*, 804 F.2d 659, 663

(Fed. Cir. 1986) (finding patentee could not "acquiesce" where there is no outstanding final office action from which to appeal).

Harada's purported acquiescence does not apply to Defendants and Ampex has pointed to no authority that it should – Harada's actions at most could estop Harada and those in privity with Harada.  To apply acquiescence to Defendants would effectively violate Defendants' rights to be heard on this issue.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard" (quoting *Blonder-Tongue Labs, Inc. v. Univ. of Ill. Foundation*, 402 U.S. 313, 329 (1971)).

Defendants are not the patentee.  Nor were Defendants involved in any way with the prosecution of the January '83 application.  Defendants never had any opportunity to appeal the patent examiner's conclusion.  Thus, Defendants have acquiesced to *nothing*.  For these reasons, the Court should reject Ampex's application of the doctrine of acquiescence in this case.

14

## CONCLUSION

Ampex has failed to meet its burden of showing that there is no genuine issue of material fact warranting summary judgment that the Harada patent is not prior art. For the above-cited reasons, Defendants therefore respectfully request that the Court deny Ampex's motion.

CONNOLLY BOVE LODGE & HUTZ LLP,

/s/ Collins J. Seitz, Jr.
Collins J. Seitz, Jr. (#2237)
Jaclyn M. Mason (#4737)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com

**Attorneys for Defendants Eastman Kodak Company and Altek Corporation**

OF COUNSEL:
William F. Lee
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800

Date: June 13, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2006, I electronically filed Defendants' Redacted Answering Brief in Opposition to Ampex Corporation's Motion for Summary Judgment that U.S. Patent No. 4,802,019 is Not Prior Art to U.S. Patent No. 4,821,121 with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

and that I caused copies to be served upon the following in the manner indicated:

**VIA E-MAIL**

Jesse J. Jenner, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

**VIA E-MAIL & FEDERAL EXPRESS**

Norman H. Beamer, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301

**VIA E-MAIL & HAND DELIVERY**

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

_____/s/ Collins J. Seitz, Jr._____
Collins J. Seitz, Jr. (Bar No. 2237)
Connolly Bove Lodge & Hutz LLP
P.O. Box 2207
1007 North Orange Street
Wilmington, DE 19899