**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, ALTEK | ) | |
| CORPORATION and CHINON INDUSTRIES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**COMPENDIUM OF UNREPORTED OPINIONS CITED IN
DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF ITS
<u>MOTION TO EXCLUDE THE TESTIMONY OF CAROL SCOTT UNDER RULE 702</u>**

Collins J. Seitz, Jr. (#2237)
Jaclyn M. Mason (#4737)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
Tel: (302) 658-9141
cseitz@cblh.com
***Attorneys for Defendants Eastman Kodak Company
and Altek Corporation***

*Of Counsel*:
William F. Lee
Donald R. Steinberg
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Paul B. Keller
Rebecca McCloskey
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800
Date: June 20, 2006

**UNREPORTED OPINIONS**

**TAB**

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*,
No. Civ.A. 01-669-KAJ, 2004 WL 1534786 (D. Del. May 21, 2004)                    **1**

# **TAB 1**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1534786 (D.Del.)
**(Cite as: 2004 WL 1534786 (D.Del.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
CALLAWAY GOLF COMPANY,
Plaintiff/Defendant-in-Counterclaim,
v.
DUNLOP SLAZENGER GROUP AMERICAS,
INC., d/b/a Maxfli, Defendant/Plaintiff-in-
Counterclaim.
**No. Civ.A. 01-669-KAJ.**

May 21, 2004.

Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Plaintiff/Counter Defendant.

David J. Ferry, Jr., Ferry, Joseph & Pearce, P.A., Wilmington, DE, for Defendant/Counter Claimant.

*MEMORANDUM ORDER*

JORDAN, J.

I. Introduction

**\*1** Presently before me is a motion by Callaway Golf Company ("Callaway") to exclude the testimony of Dr. Lewis M. Koppel ("Dr.Koppel") (Docket Item ["D.I."] 316), a motion by Callaway to exclude portions of Dr. John Jepson's ("Dr.Jepson") testimony (D.I.318), and a motion by Callaway to exclude the testimony of Dr. Daniel Klempner ("Dr.Klempner") (D.I.320), all expert witnesses of Dunlop Slazenger Group Americas, Inc. d/b/a Maxfli ("Dunlop"). Also before me is a motion by Callaway for partial summary judgment on grounds that Dunlop cannot prove damages on its trade secret, common law, or false advertising claims. (D.I.312.) I have jurisdiction over this case pursuant to 28 U.S.C. § § 1331, 1338, and 1367. For the reasons set forth below, the motion to exclude Dr. Koppel's testimony will be granted in part and denied in part, the motion to exclude portions of Dr. Jepson's testimony will be granted, and the motion to exclude Dr. Klempner's testimony will be granted. The motion for partial summary

judgment will be denied.

II. Background

Because the factual and procedural history of this case is set forth in three prior rulings, *see* Memorandum Opinion dated May 13, 2004 (D.I.359), Memorandum Opinion dated May 18, 2004 (D.I.362), and Memorandum Order dated May 18, 2004 (D.I.360), it will not be repeated herein. Rather, the facts pertinent to the motions currently before me are incorporated in the discussion below.

III. Standard of Review

The motions to exclude evidence are committed to the court's discretion. See *In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 749, 777-78 (3d Cir.1994)* (on a motion to exclude proffered expert testimony, the trial court's inquiry is a flexible one, and its decision to admit or exclude expert testimony is reviewed under an "abuse of discretion" standard).

The summary judgment standard is well known. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." "[T]he availability of summary judgment turn [s] on whether a proper jury question ... [has been] presented." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)*. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making that determination, the Court is required to accept the non-moving parties' evidence and draw all inferences from the evidence in the non-moving parties' favor. *Id.* at 255; *Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992)*. Nevertheless, the non-moving party must, in opposing a summary judgment motion, "identify those facts of record which would contradict the facts identified by the movant." *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir.2002)* (internal quotes omitted).

IV. Discussion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 1534786 (D.Del.)
**(Cite as: 2004 WL 1534786 (D.Del.))**

**\*2** Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Rule provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702 (2003). The party offering the expert testimony has the burden of proving admissibility. *Daubert,* 509 U.S. at 592 n. 10. The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than a subjective belief or speculation. *Id.* at 589-590. Further, Rule 702 requires that expert testimony assist the trier of fact, in other words, it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id.* at 591-92.

In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue. *Id.* at 592-93. As part of that inquiry, the court must examine the expert's conclusions in order to determine whether they reliably follow from the facts known to the expert and the methodology used. *See Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 153 (3d Cir.1999).

A party cannot qualify a person as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue. *Redman v. John D. Brush & Co.,* 111 F.3d 1174, 1179 (4th Cir.1997); *Barrett v. Atl. Richfield Co.,* 95 F.3d 375, 382 (5th Cir.1996). Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the fact-finder. *McGowan v. Cooper Indus., Inc.,* 863 F.2d 1266, 1273 (6th Cir.1987); *STX, Inc. v. Brine, Inc.,* 37 F.Supp.2d 740, 768 (D.Md.1999) (quotation omitted), *aff'd,* 211 F.3d 588 (Fed.Cir.2000); *SEC v. Lipson,* 46 F.Supp.2d 758, 763 (N.D.Ill.1998).

**A. Dr. Koppel**

Dunlop has retained Dr. Koppel, as an expert, to quantify Dunlop's economic damages resulting from Callaway's alleged misappropriation of trade secrets described in the documents that Henry Felipe ("Felipe") took with him to Callaway after he was laid off at Dunlop (the "Felipe binder"), [FN1] and from Callaway's alleged misappropriation of Dunlop's polyurethane technology through Pijush Dewanjee ("Dewanjee"). [FN2] (D.I. 327 at 24; D.I. 322 at Ex. A; D.I. 327 at 5-16.) First, Dr. Koppel estimated that Callaway was unjustly enriched in the amount of $10.4 million because of avoided research and development costs through Callaway's use of the Felipe binder. (D.I. 327 at 25.) Second, Dr. Koppel asserts that Dunlop lost profits in the amount of $8.1 million from decreased golf ball sales during the years 2000 through 2006 because of Callaway's use of the Felipe binder. (*Id.* at 25-26.) Third, Dr. Koppel claims that Dunlop is entitled to approximately $11.3 million in royalty damages for the research and development costs that Callaway avoided by having the information in the Felipe binder rather than creating it independently, and for the head start, or accelerated market entry, that Callaway received by using that information. (*Id.* at 26.) Finally, Dr. Koppel claims that Dunlop is entitled to about $11 .3 million in royalty damages for Callaway's misappropriation of Dunlop's polyurethane technology. [FN3]

> FN1. The Felipe binder includes Dunlop's "Golf Ball Specifications and Process Manual."
>
> FN2. In my May 13, 2004 Memorandum Opinion, I held as a matter of law that Callaway, through Dewanjee, had not misappropriated trade secrets. (D.I.359.)
>
> FN3. Specifically, Dunlop claims that "Dr. Koppel uses the connection between [Dunlop's] Polyurethane Trade Secrets and [Callaway's U.S. Patent No. 6,117,024 (the " '024 patent") ] to substantiate his use of analyses most commonly used in patent valuation." (D.I. 327 at 27.)

**\*3** Callaway argues that Dr. Koppel's testimony should be excluded under *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) because Dr. Koppel's methodology and conclusions "are speculative and unreliable, do not fit the facts and circumstances of this case, and are inconsistent with damage measures required by law." (D.I. 317 at 2.) First, Callaway argues that Dr. Koppel's unjust enrichment analysis, which considers Callaway's avoided research and development costs, does not take into account the extent to which Callaway actually used or benefitted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 3
Not Reported in F.Supp.2d, 2004 WL 1534786 (D.Del.)
**(Cite as: 2004 WL 1534786 (D.Del.))**

from the information contained in the Felipe binder. (*Id.*) Callaway states that Dr. Koppel "deliberately chose to assess [Callaway's] avoided [research and development] expenses by calculating the amount that [Callaway] would have had to spend to recreate all of the information contained in the Felipe [binder] without analyzing what information from the Felipe [binder] [Callaway] actually used." (*Id.* at 15.) Callaway also claims that Dr. Koppel did not consider whether Callaway's research and development spending would have been different if it did not have the Felipe binder, and, as a result, included the cost of an item in his avoided research and development costs even if Callaway incurred the cost. (*Id.*)

Second, Callaway argues that Dr. Koppel's $10.4 million damages figure makes numerous erroneous factual assumptions, including the assumption that the Felipe binder contains information on 82 different golf balls  [FN4] (*Id.* at 16-17), the assumption that the Felipe binder describes 82 different paint systems [FN5] (*Id.* at 18-19), and the assumption that the Felipe binder contains information on patent searches and competitive golf ball analyses.  [FN6] (*Id.* at 19-20.)

> FN4. Callaway asserts that there are 82 separate specification sheets contained in the Felipe binder, but many of those describe identical golf balls.

> FN5. Callaway claims that there are at most two paint systems described in the Felipe binder.

> FN6. Competitive golf ball analyses provide information about other companies' balls, which is obtained by taking the balls apart and examining them. Callaway says that there is no information about patent searches or competitive golf ball analyses in the Felipe binder.

Third, Callaway argues that Dr. Koppel's measure of damages for the profits Dunlop lost as a result of Callaway's entrance into the golf ball market sooner than it would have if Callaway did not have the Felipe binder damages is not supported by evidence. Specifically, Callaway claims that Dr. Koppel's opinion that it should have take Callaway five years to develop its first golf ball is flawed and that Dr. Koppel erroneously assumes that Callaway would have made no golf ball sales until 2007 without the Felipe binder. (*Id.* at 21-22.)

Fourth, Callaway argues that Dr. Koppel's calculation for royalties should be excluded because it is based on his avoided research and development costs and lost profits conclusions, which, according to Callaway, are inadmissible. (*Id.* at 23.)

Finally, Callaway argues that Dr. Koppel should be excluded from testifying on the damages allegedly resulting from Callaway's use of the '024 patent because, among other things, Callaway did not misappropriate Dunlop's trade secrets in the '024 patent. (*Id.* at 23-28.)

As to that fifth and final argument, because Callaway did not misappropriate trade secrets related to polyurethane technology, as I held in the May 13, 2004 Memorandum Opinion (D.I.359), Dr. Koppel's testimony on those points will be excluded. However, as to Dr. Koppel's testimony regarding the information contained in the Felipe binder, Callaway's arguments are matters for cross examination because Dr. Koppel's opinions, while arguably flawed and open to attack, are not so devoid of fit or reliability as to be inadmissible. Therefore, the motion to exclude Dr. Koppel's testimony will be granted in part and denied in part.

### B. Dr. Jepson

**\*4** Dunlop has retained Dr. Jepson, who "has worked in the golf industry for some 30 years" (D.I. 328 at 12), to testify regarding "Callaway's accelerated entry into the golf ball market as a result of misappropriating Dunlop's alleged proprietary information. (*Id.* at 7.) Dunlop states that Dr. Jepson "is not a 'forensic economic expert' who will offer a formal valuation opinion," and that it "has no intent to offer any calculations by [Dr.] Jepson as a competing valuation to the economic analysis offered by Dr. Lewis Koppel." (*Id.* at 6-7.) Rather, Dunlop claims that "Dr. Jepson's opinions merely add 'real world' corroboration to [Dr.] Koppel['s] valuation" and "suggest[ ] that [Dr.] Koppel['s] valuations are conservative." (*Id.* at 1.) Callaway asserts that Dr. Jepson has opined that Callaway's alleged misappropriation of the Felipe binder and Dunlop's polyurethane technology resulted in at least $74 million in unjust enrichment to Callaway. (D.I. 319 at 4; D.I. 323 at Ex. J, pp. 12-13.)

Callaway does not challenge Dr. Jepson's opinions that the trade secrets at issue are "valuable," and that Callaway allegedly acquired "valuable information" that "greatly accelerated Callaway's entry into the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 4
Not Reported in F.Supp.2d, 2004 WL 1534786 (D.Del.)
**(Cite as: 2004 WL 1534786 (D.Del.))**

golf ball market." (D.I. 344 at 3) (quoting D.I. 328 at 2, 11, 17). Remarkably, Callaway also does not challenge Dr. Jepson's "generic" opinion that "Dr. Koppel's forensic damages number is conservative." (D.I. 344 at 3.) Rather Callaway argues that Dr. "Jepson's testimony should not extend to asserting dollar figures purporting to 'quantify' the value of the trade secret information" because Dr. Jepson's unjust enrichment values and dollar amounts fail to meet the reliability and relevance standards under Fed.R.Evid. 702 and *Daubert.* (D.I. 344 at 3-4.) I agree.

Dunlop's Answering Brief and Dr. Jepson's expert report both fail to explain how Dr. Jepson arrived at his claim that Callaway was unjustly enriched by $74 million from the misappropriation of Dunlop's trade secrets. (*See* D.I. 328; D.I. 323 at Ex. J.) Therefore, Dr. Jepson's unjust enrichment estimate appears to be based solely on his personal knowledge and experience rather than any methodology, analysis, or factual support. Under *Daubert,* such evidence is not reliable. *See Primavera Familienstifung v. Askin,* 130 F.Supp.2d 450, 530 (S.D.N.Y.2001) (An expert "must do more than simply aver conclusorily that his experience led to his opinion"); *LinkCo., Inc., v. Fujistsu Ltd.,* No. 00 Civ. 7242(SAS), 2002 WL 1585551 at *4 (S.D.N.Y. July 16, 2002) ("[A] court cannot permit experts to 'offer credentials rather than analysis' ') (citation omitted). In addition to proffering unreliable testimony, Dunlop concedes that Dr. Jepson is "not qualified to independently opine on trade secrets quantification." (D.I. 328 at 2.) Therefore, Callaway's motion to exclude Dr. Jepson from opining or testifying as to the dollar amounts set forth in his expert report will be granted.

### C. Dr. Klempner

**\*5** Dunlop has retained Dr. Klempner, a polymer chemist, to testify that Callaway misappropriated Dunlop's trade secrets

> through Dewanjee's systematic incorporation of each and every ingredient of Dunlop's proprietary polyurethane formula into the initial Callaway cover formula. This includes a polyurethane cove formulation using a diisocyanate with a PTMEG polyol to form a prepolymer, cured with a curing agent blend, such as is disclosed, or should have been disclosed, in the Dunlop February, 1997 Patent Application and/or Dewnajee's Dunlop laboratory notebook. This also includes the use of PPDI as the diisocyanate component of a polyurethane-based cover formulation, in general, and specifically as the diisocyanate component of Dunlop's polyurethane cover system.

(D.I.329.) Dr. Klempner also opines that Callaway's development of its two polyurethane-based cover formulations was expedited by its use of Dunlop's trade secret technology.

As earlier stated, I have already ruled on summary judgment that Callaway did not misappropriate Dunlop's trade secrets in relation to Dewanjee's work. Therefore, the motion to exclude Dr. Klempner's testimony will be granted.

### D. Motion for Partial Summary Judgment

Callaway brings a motion for partial summary judgment on grounds that Callaway cannot prove damages on its trade secret, common law, or false advertising claims. (D.I.312.) Callaway argues that "[i]f this Court grants [Callaway's] motion to exclude Koppel's testimony and damage measures ... [Dunlop] can make no showing that it suffered any damages recoverable under the UTSA--even if [Dunlop] is entitled to summary judgment on [Dunlop's] trade secret claim," and is thus is entitled to summary judgment on Dunlop's trade secret misappropriation claim. (D.I. 313 at 6.) Since Callaway's motion to exclude Dr. Koppel's testimony is denied as to the information in the Felipe binder, the summary judgment motion is likewise denied as to Dunlop's misappropriation and common law claims involving that information. [FN7]

> FN7. As to damages related to Dunlop's claim that Callaway misappropriated polyurethane technology, the present motion is moot because summary judgment has already been granted against Dunlop on that claim. (*See* D.I. 359.)

### V. Conclusion

Accordingly, and as explained herein, IT IS HEREBY ORDERED that the motion to exclude Dr. Koppel's testimony (D.I.316) is GRANTED in part and DENIED in part, the motion to exclude the challenged portions of Dr. Jepson's testimony (D.I.318) is GRANTED, and the motion to exclude Dr. Klempner's testimony (D.I.320) is GRANTED. The motion for partial summary judgment on grounds that Callaway cannot prove damages on its trade secret, common law, or false advertising claims (D.I.312) is DENIED.

Not Reported in F.Supp.2d, 2004 WL 1534786 (D.Del.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 5
Not Reported in F.Supp.2d, 2004 WL 1534786 (D.Del.)
**(Cite as: 2004 WL 1534786 (D.Del.))**

   **Motions, Pleadings and Filings (Back to top)**

• 1:01CV00669 (Docket) (Oct. 03, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2006, I electronically filed Compendium of Unreported Opinions Cited in Defendants' Reply Brief in Further Support of its Motion to Exclude the Testimony of Carol Scott Under Rule 702 to with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

and that I caused copies to be served upon the following in the manner indicated:

**VIA E-MAIL**

Jesse J. Jenner, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

**VIA E-MAIL & FEDERAL EXPRESS**

Norman H. Beamer, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301

**VIA E-MAIL & HAND DELIVERY**

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

*/s/ Collins J. Seitz, Jr.*
Collins J. Seitz, Jr. (Bar No. 2237)
Connolly Bove Lodge & Hutz LLP
P.O. Box 2207
1007 North Orange Street
Wilmington, DE 19899