**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMPEX CORPORATION, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) C.A. No. 04-1373 (KAJ) |
| v. | ) |
| | ) **PUBLIC VERSION** |
| EASTMAN KODAK COMPANY, | ) |
| ALTEK CORPORATION, and | ) |
| CHINON INDUSTRIES, INC., | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**AMPEX CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT THAT U.S. PATENT NO. 4,821,121
IS NOT UNENFORCEABLE DUE TO ALLEGED INEQUITABLE
CONDUCT FOR FAILURE TO DISCLOSE THE QUANTEL DLS6000,
QUANTEL PAINTBOX, OR AMPEX AVA SYSTEMS**

OF COUNSEL:
Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

Original Filing Date: June 20, 2006
Redacted Filing Date: June 27, 2006

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julie Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jheaney@mnat.com

*Attorneys for Plaintiff Ampex Corporation*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.................................................................................1

II.   APPLICABLE LEGAL STANDARDS.................................................5

    A.    An Analysis Of Whether Or Not A Reference Is Cumulative Requires
          A Comparison Of The Disclosure Of The Cited Art To The Disclosure
          Of The Alleged References ................................................................5

III.  ANALYSIS .......................................................................................8

    A.    Defendants Never Address That Mr. Taylor Admitted The Same
          Operations That Allegedly Render AVA And PaintBox Material
          Were Disclosed By The '776 Patent..................................................8

    B.    The Operation That Defendants Incorrectly Identify As
          "Transferring Images Directly From Frame Store To Disc Store"
          Was Disclosed In The '776 Patent....................................................9

    C.    Storage Of A Reduced Size Image To Disk Using Only The Memory
          Corresponding To that Image Is Irrelevant To Patentability, As Well
          As Disclosed By Figure 19 Of The '776 Patent ...........................10

    D.    Defendants' Newly Raised Argument As To The Materiality Of
          The PaintBox Browse Of Cutouts Relies On Operation That Is
          Less Relevant Than The '776 Patent Disclosure .........................12

    E.    Defendants' Reliance On The Testimony Of Mr. Cavallerano
          Is Unavailing...................................................................................15

IV.   CONCLUSION ................................................................................16

# TABLE OF CITATIONS

Page

## Cases

*ATD Corp. v. Lydall, Inc.,*
    159 F.3d 534 (Fed. Cir. 1998)....................................................................5

*Abbott Laboratories v. TorPharm, Inc.,*
    300 F.3d 1367 (Fed. Cir. 2002)..................................................................5

*Advanced Cardiovascular System, Inc. v. Medtronic, Inc.,*
    265 F.3d 1294 (Fed. Cir. 2001)..................................................................5

*Baxter International, Inc. v. McGaw, Inc.,*
    149 F.3d 1321 (Fed. Cir. 1998)...........................................................6, 7, 8

*Bayer AG v. Sony Electric, Inc.,*
    229 F. Supp. 2d 332 (D. Del. 2002)...........................................................6

*Bayer Healthcare LLC v. Abbott Laboratories,*
    No. 03-189, 2004 WL 2862267 (D. Del. Dec. 10, 2004) ..........................5

*Corning Inc. v. SRU Biosystems,*
    418 F. Supp. 2d 596 (D. Del. 2006)........................................................3, 8

*Eaton Corp. v. Rockwell International Corp.,*
    No. 97-421-JIF, WL34368391 (D. Del. Feb. 9, 2001) ..............................6

*eSpeed, Inc. v. Brokertec USA, L.L.C.,*
    417 F. Supp. 2d 580 (D. Del. 2006)........................................................6, 7

*Hackman v. Valley Fair,*
    932 F.2d 239 (3d Cir.1991).......................................................................12

*Halliburton Co. v. Schlumberger Tech. Corp.,*
    925 F.2d 1435 (Fed. Cir. 1991)..................................................................6

*Impax Laboratories v. Aventis Pharms., Inc.,*
    333 F. Supp. 2d 265 (D. Del. 2004)...................................................4, 6, 11

*Jazz Photo Corp. v. International Trade Commission,*
    264 F.3d 1094 (Fed. Cir. 2001)..................................................................6

*Lifescan, Inc. v. Home Diagnostics, Inc.,*
    103 F. Supp. 2d 379 (D. Del. 2001)...........................................................6

*Martin v. Merrell Dow Pharma., Inc.*,
    851 F.2d 703 (3d Cir. 1988)............................................................................12

*Mentor H/S, Inc. v. Med'l Development Alliance, Inc.*,
    244 F.3d 1365 (Fed. Cir. 2001) .......................................................................6

*Mobil Oil Co. v. Advanced Environmental Recycling Techs.*,
    869 F. Supp. 251 (D. Del. 1994)....................................................................6, 7

*Regents of University of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997),
    *citing Scripps Clinic & Research Found. v. Genentech, Inc.*,
    927 F.2d 1565 (Fed. Cir. 1991)....................................................................1, 5

*Rhenalu v. Alcoa, Inc.*,
    224 F. Supp. 2d 773 (D. Del. 2002) ..................................................................6

*Rolls-Royce, Ltd. v. GTE Valeron Corp*,
    800 F.2d 1101 (Fed. Cir. 1986) ....................................................................6, 8

*Scripps Clinic & Research Foundation v. Genentech, Inc.*,
    927 F.2d 1565 (Fed. Cir. 1991)....................................................................5, 6

*Specialty Composites v. Cabot Corp.*,
    845 F.2d 981 (Fed. Cir. 1988) .........................................................................6

*Standard Manufacturing Co. v. United States*,
    25 Cl. Ct. 1 (Cl. Ct. 1991) ...........................................................................4, 11

*Tap Pharm. Products, Inc. v. Owl Pharms. L.L.C.*,
    419 F.3d 1346 (Fed. Cir. 2005)........................................................................6

*Tegal Corp. v. Tokyo Electron America, Inc.*,
    257 F.3d 1331 (Fed. Cir. 2001) ....................................................................3, 8

## I.      INTRODUCTION

On June 12, 2006, Defendants Eastman Kodak Company and Altek Corporation (collectively, "Defendants") submitted their Answering Brief in Opposition to Ampex's Motion for summary judgment ("Ampex's Motion") that Ampex's U.S. Patent No. 4,821,121 ("the '121 patent") is not unenforceable due to alleged inequitable conduct for failure to disclose the Quantel Paint Box or the Ampex Video Arts system ("AVA") systems (collectively, the "alleged prior art systems").[1] Plaintiff Ampex Corporation ("Ampex") hereby submits this Reply in response thereto.[2]

Defendants' Opposition Brief contains the same legal errors that pervade both their pleadings, as well as the opinions of their expert, Mr. Taylor, on inequitable conduct.  Both Defendants and their expert fail to compare the disclosure of the alleged prior art references to the disclosure of the cited art.  This legal error, in itself, is fatal to Defendants' claims of inequitable conduct based on an alleged failure to disclose: without comparing the disclosure of the cited art to the alleged prior art systems, Defendants cannot meet their burden of showing that those systems are material, *i.e.*, not cumulative of the art of record.  *E.g.*, *Regents of Univ. of Cal.* v. *Eli Lilly & Co.*, 119 F.3d 1559, 1574-75 (Fed. Cir. 1997), *citing Scripps Clinic & Research Found.* v. *Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991).

---

[1] "Defendants Brief" and "D.Br." refer to Defendants Brief in Opposition to Ampex's Motion (D.I. 365).

At Defendants Brief page 13, n.4, Defendants withdrew their contentions relating to an alleged failure to disclose the DLS 6000.  As a result, this Reply is limited to the remaining two alleged prior art references on which Defendants base their inequitable conduct assertions.

[2] "Ampex's Brief" and "A.Br." refer to Ampex's Brief in Support of Ampex's Motion. (D.I. 284)

Moreover, this fundamental legal error in turn propagates further logical inconsistencies and unwarranted inferences on which Defendants ground their argument. For example, only by not comparing the operation of the asserted prior art references with the cited art can Defendants assert that, if AVA and PaintBox employ operations that Defendants characterize to be a "direct transfer" or "simultaneous storage of images in RAM," then AVA and PaintBox must disclose "something" not disclosed by the cited art (including the '776 patent). The false premise underlying Defendants' conclusion – in addition to the failure to make the required comparison – is that Defendants apply the same meaning to "direct transfer" and "simultaneous storage in RAM" in considering the operation AVA and PaintBox, as was applied during prosecution the '121 patent when applicants distinguished the '776 patent. Defendants, however, cannot avoid summary judgment by playing word games with the claim language.

In discussing what Defendants refer to as "direct transfer from disc to RAM" during patent prosecution, Ampex unambiguously distinguished systems that performed size reduction between disc store and frame store. In discussing what Defendants refer to as "simultaneous storage of images in RAM," Ampex unambiguously distinguished systems that did not generate and store a reduced size image in RAM along with its corresponding full size image prior to storing the full size image in the bulk store. While Defendants identify operations of PaintBox and AVA that allegedly meet these two requirements, comparison of the operation of PaintBox and AVA with the cited art exposes Defendants logical fallacy: both the '776 patent and the alleged prior art

references disclose the very same operation, and are distinguishable from the '121 patent claims for the same reasons.[3]

Instead of performing the required comparison between the allegedly withheld art and the '776 patent, Defendants substitute a test in which they (1) mischaracterize statements made by applicants during prosecution of the '121 patent as somehow being directed to the prior art as a whole, (2) take selected excerpts from those statements, and (3) compare the selected excerpts to AVA and Paintbox, while disregarding both what those statements meant in the '121 patent prosecution history, as well as the operation of the art distinguished by those statements. However, the statements on which Defendants rely were each, on their face, made to distinguish a single reference (in the first instance, the Boyd article, in the latter two instances, the '776 patent).[4]  Defendants' flawed analysis has been rejected both by the Federal Circuit and by this Court. *Tegal Corp.* v. *Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1350 (Fed. Cir. 2001); *see Corning Inc.* v. *SRU Biosystems*, 418 F. Supp. 2d 596, 600-01 (D. Del. 2006).

As to Defendants' newly proffered assertion that the cited '776 patent does not disclose "storage of reduced size images on disc using only the amount of memory corresponding to the reduced size image," not only is this assertion contradicted by Mr.

---

[3] Defendants Brief is, in effect, asking the Court to rewrite the '121 patent claims to cover the operation of AVA and PaintBox.  But in order to do so, the claims would necessarily cover the operation '776 patent, which was explicitly distinguished over the claims. Thus, Defendant's Brief also reveals that their understanding of the '121 patent claims is flawed – Defendants' understanding would render applicant's arguments distinguishing the '776 patent meaningless.

[4]

## REDACTED

3

Taylor's own deposition testimony, but it is *irrelevant*: the Examiner explicitly did not rely on this operation in finding the claims of the '121 patent distinguishable from the Boyd article (*i.e.* the reference to which this argument was directed). As a result, no reasonable Examiner would consider a prior art reference that operated in such a manner important to patentability. *E.g., Impax Labs. v. Aventis Pharms., Inc.*, 333 F. Supp. 2d 265, 281 (D. Del. 2004); *Standard Mfg. Co. v. United States*, 25 Cl. Ct. 1, 88-89 (Cl. Ct. 1991).

As to Defendants second newly proffered assertion – that the browsing of cut-outs renders PaintBox material to patentability – this operation is even less relevant to patentability than the disclosure of the '776 patent. Not only is this operation far slower than the Browse feature disclosed in the '776 patent – both on account of the number of user operations required to generate the cut-outs for browsing, and on account of the fact that, during these operations, full size images must be recalled from disc – but it suffers from the same disadvantages as the prior art technique of prestoring an array of reduced size images used for fast browsing, as disclosed in the '776 patent and distinguished in col. 1 of the '121 patent.

Finally, nothing in Defendant's Opposition can overcome the unambiguous admissions of their validity expert, Mr. Taylor, that the very operations which Defendants identify as rendering AVA and PaintBox material were in fact disclosed in the '776 patent that was cited to the Examiner, thereby effectively admitting that PaintBox, AVA,

4

and DLS6000 are cumulative of the cited art.[5] For this testimony, Defendants have no credible answer.

## II.     APPLICABLE LEGAL STANDARDS

As this Court has stated: "[T]he court is obliged to be vigilant in its effort to prevent certain defenses from proceeding beyond summary judgment. This is particularly true with regard to the defense of inequitable conduct." *Bayer Healthcare LLC* v. *Abbott Labs.*, No. 03-189, 2004 WL 2862267, at \*2 (D. Del. Dec. 10, 2004). This case presents another example of an unsubstantiated inequitable conduct assertion, which relies on flawed legal premises. As a result, summary judgment is appropriate. *See Scripps*, 927 F.2d at 1582; *accord Abbott Labs.* v. *TorPharm, Inc.*, 300 F.3d 1367, 1379-80 (Fed. Cir. 2002); *Advanced Cardiovascular Sys., Inc.* v. *Medtronic, Inc.*, 265 F.3d 1294, 1306-07 (Fed. Cir. 2001); *ATD Corp.* v. *Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998).

### A.     An Analysis Of Whether Or Not A Reference Is Cumulative Requires A Comparison Of The Disclosure Of The Cited Art To The Disclosure Of The Alleged References

In order to determine whether a reference is cumulative, the relevant inquiry is whether the reference discloses subject matter relevant to the examination of the application at issue that is not taught by the cited prior art, which requires a comparison of the cited art to the allegedly material reference. *Regents*, 119 F.3d at 1574-75, *citing*

---

[5] Defendants assert that Ampex "speaks out of both sides of its mouth," based on Ampex's position that the operations of AVA and PaintBox that Defendants mistakenly claim to be the "direct transfer" and "simultaneous storage" were disclosed in the cited art. D.Br. 22. Defendants unfounded invective simply illustrates that it is Defendants' own inconsistent application of the terms "direct transfer" and "simultaneous storage in RAM" that are born out by Mr. Taylor's admissions that AVA and PaintBox disclose nothing more than what is disclosed in the cited '776 patent.

5

*Scripps*, 927 F.2d at 1582; *see Tap Pharm. Prods., Inc.* v. *Owl Pharms. L.L.C.*, 419 F.3d 1346, 1351-52 (Fed. Cir. 2005) (finding allegedly material reference cumulative based on comparison of reference to cited prior art); *Jazz Photo Corp.* v. *Int'l Trade Comm'n*, 264 F.3d 1094, 1109-10 (Fed. Cir. 2001) (same); *Mentor H/S, Inc.* v. *Med'l Dev. Alliance, Inc.*, 244 F.3d 1365, 1377-78 (Fed. Cir. 2001) (same); *Scripps Clinic & Research Found.* v. *Genentech, Inc.*, 927 F.2d 1565, 1582-83 (Fed. Cir. 1991) (same); *Halliburton Co.* v. *Schlumberger Tech. Corp.*, 925 F.2d 1435, 1440-42 (Fed. Cir. 1991) (same); *Specialty Composites* v. *Cabot Corp.*, 845 F.2d 981, 992 (Fed. Cir. 1988) (same); *Rolls-Royce, Ltd.* v. *GTE Valeron Corp*, 800 F.2d 1101, 1106-07 (Fed. Cir. 1986) (same); *Impax Labs.*, 333 F. Supp. 2d at 278-81 (same); *Bayer AG* v. *Sony Elec., Inc.*, 229 F. Supp. 2d 332, 363-64 (D. Del. 2002) (same); *Rhenalu* v. *Alcoa, Inc.*, 224 F. Supp. 2d 773, 806-07 (D. Del. 2002) (same): *Eaton Corp.* v. *Rockwell Int'l Corp.*, No. 97-421-JIF, WL34368391 (D. Del. Feb. 9, 2001) at *6; *Lifescan, Inc.* v. *Home Diagnostics, Inc.*, 103 F. Supp. 2d 379, 383-84 (D. Del. 2001) (same).

Defendants ignore the clear mandate of both the Federal Circuit and this Court as to the requirements of a cumulativeness analysis. Instead, Defendants only rely on dicta from *eSpeed, Inc.* v. *Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580 (D. Del. 2006); *Baxter Int'l, Inc.* v. *McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998), and *Mobil Oil Co.* v. *Advanced Envtl. Recycling Techs.*, 869 F. Supp. 251, 255-56 (D. Del. 1994), as support for the unfounded proposition that Defendants can ignore the operation of the cited art. *eSpeed, Baxter,* and *Mobil Oil*, however, are inapplicable for a number of reasons.

In *eSpeed*, the plaintiff/patentee apparently did not even dispute that the alleged

reference (the "Super System") was relevant to patentability.[6] And both *Mobil Oil* and

*Baxter* in fact contradict Defendants asserted legal standard. The Court in *Mobil Oil*

undertook the very analysis that Defendants' claim they can avoid: in that case, the Court

compared the disclosure of the allegedly material references (the "Hearthbrite, Rivenite,

and Juniper Products") with the cited art (the "Erb patent") in performing a materiality

analysis. *Mobil Oil*, 869 F. Supp. at 255-56.

Likewise, the court in *Baxter*, in performing a materiality analysis, also compared

the disclosure of the allegedly material reference (the "Borla Device") with the cited art

(the "Herlitze EPO reference"). *Baxter*, 149 F.3d at 1329. Indeed, Defendants' citation

to the statement in *Baxter* that materiality must be considered "based upon the overall

degree of similarity between the omitted reference and the invention ***in light of the other***

---

[6] In *eSpeed*, the patentee cited the Super System as relevant prior art in a continuation
application claiming priority from the patent at issue (which continuation contained
nearly identical disclosure to, and claimed subject matter similar to, the patent at issue),
and further submitted declarations by the named inventors stating that the Super System
had not been cited in the parent (*i.e.* the application that led to the patent at issue) because
"it had not occurred to [the inventors] earlier to cite the Super System as prior art" – a
claim that the Court found to be "unbelievable." *eSpeed*, 417 F. Supp. 2d at 590, 594.
The patentee also did not simply assert that the claimed invention was distinguishable
over a single prior art reference; rather, the patentee asserted that "the inclusion of
various trading states in their Invention made the Invention novel." *Id.* at 593. It was this
particular statement – *i.e.*, that the inclusion of certain trading states rendered the patent
at issue "novel" over the prior art as a whole – that the Court found to be refuted by the
Super System. Moreover, the Super System was not simply an unrelated system to what
became the patent at issue, but was in fact "a computer system in the same line of
systems as the invention disclosed in the '733 application [which lead to the patent at
issue]," was "essentially described in the 'Background of the Invention' section of the
[patent at issue]," and was even referred to internally by the patentee as the system they
wished to patent. *Id.* at 594-95. Finally, in *eSpeed*, the Court noted that the patentee, in
characterizing the Super System, had deliberately misrepresented its operation to the
Patent Office in the declarations submitted by the named inventors referenced above. *Id.*
at 590.

*prior art before the Examiner*" is puzzling given that it directly undermines Defendants' position.[7] *See id.* (emphasis added).

Far more relevant to the present case is the Federal Circuit's analysis in *Tegal*, 257 F.3d 1331, as well as this Court's decision in *Corning*, 418 F. Supp. 2d 596. As the Federal Circuit noted in *Tegal*, in which the alleged infringer attempted the very same argument Defendants raise in this case, it is improper to attempt to broaden a statement made in the prosecution history with respect to a single reference as applying to the prior art as a whole. *Tegal*, 257 F.3d at 1350. Similarly, the Court in *Corning*, 418 F. Supp. 2d at 600-01, refused even to broaden a statement made by the applicant with respect to one reference to other references under discussion in the same Response to Office Action.

## III.    ANALYSIS

### A.    Defendants Never Address That Mr. Taylor Admitted The Same Operations That Allegedly Render AVA And PaintBox Material Were Disclosed By The '776 Patent

Defendants' brief never addresses Mr. Taylor's admission during cross-examination that the operations that both he and Defendants mistakenly characterize as the "transfer of images directly from disc to RAM" are disclosed by the '776 patent, namely, (1) transfer of images from disc to a buffer in the size reducer; and (2) transfer of an image from the disc, through a size reducer whose gain is set to unity, to a framestore.

A.Br. pp. 19, 33-36.          **REDACTED**

---

[7] To the extent Defendants rely on *Baxter* for the proposition that the "combination" of various "features" in a single reference renders AVA and PaintBox material (*see* D.Br. p. 28), this reliance is misplaced:    **REDACTED**

A.Br. pp. 17-20, 28-31, 33-40; *see also Rolls Royce*, 800 F.2d at 1107 (holding that, where a cited reference and an allegedly material reference disclose the same limitations, structural differences as to how those limitations are met cannot render the non-cited reference material).

**REDACTED**

**B.    The Operation That Defendants Incorrectly Identify As
       "Transferring Images Directly From Frame Store To Disc Store"
       Was Disclosed In The '776 Patent**

Defendants assert that the AVA and PaintBox systems had the ability to "directly

transfer images from disk to random access memory." However, in so doing, Defendants

never identify just what is required by a "direct transfer," as that term is used in the

prosecution history or the '121 patent claims. In fact, the operations identified by

Defendants as being "direct" transfers are no different than the types of transfers set forth

in the '776 patent, and in particular, the embodiments disclosed in connection with

Figures 18 and 19. A. Br. pp. 31-36. Defendants are attempting to recast the prosecution

history to read the phrase "direct transfer" as covering the operations explicitly

distinguished therein.

The only evidence on which Defendants rely to support the assertion that the

PaintBox performed direct transfers between the "disk and RAM," such that the PaintBox

would be material to patentability, is the transfer of data from disc to buffer within the

filter card (*i.e.*, the size reducer) on its way to the framestore. **REDACTED**

9

**REDACTED**

The only evidence on which Defendants' rely to support the assertion that AVA performs "direct transfers between frame store and disc" is the alleged capability of an AVA system to use DMA transfers to transfer data from the disk to the frame store. Notably, Defendants never discuss just how DMA transfers would be implemented in AVA.

**REDACTED**

**C.     Storage Of A Reduced Size Image To Disk Using Only The Memory Corresponding To that Image Is Irrelevant To Patentability, As Well As Disclosed By Figure 19 Of The '776 Patent**

As set forth in Ampex's Brief at p. 39, the Examiner did not rely on Ampex's argument as to the storage of a reduced size image to disk using only the memory corresponding to the reduced size image in reaching the determination that the inventions

10

of the '121 patent were, as claimed, distinguishable from the Boyd article.[8] (*See* Zado

Ex. 19, Paper 6, p. 6, Paper 11, p. 2.)[9] Rather, the arguments that were ultimately

successful in overcoming the Boyd article during the prosecution of the '121 patent

application related to the automatic use of a size reducer to generate a reduced size image

in response to the storage of a full size image in frame store, prior to storage of the full

size image on disc store. (Zado Ex. 19, Paper 13, pp. 10-12, Paper 14, p. 4.)  As a matter

of law, a reasonable Examiner would therefore not consider storage of a reduced size

image to disk using only the memory corresponding to the reduced size image material to

patentability.  *Impax Labs.*, 333 F. Supp. at 281; *Standard Mfg.*, 25 Cl. Ct. at 88-89.

**REDACTED**

The only evidence

Defendants offer in the face of this admission is that the operation of *the DLS6000* does

not disclose storing a reduced size image on disc using only the space corresponding to

that image.

**REDACTED**

---

[8]

**REDACTED**

[9] "Zado Ex. __" refers to the correspondingly numbered Exhibit attached to the
Declaration of Ray R. Zado in Support of Ampex's Motion.

**REDACTED**

### D.  Defendants' Newly Raised Argument As To The Materiality Of The PaintBox Browse Of Cutouts Relies On Operation That Is Less Relevant Than The '776 Patent Disclosure

Defendants raise, for the first time in their Brief, the assertion that the browsing of cut-outs renders the PaintBox material to patentability of the '121 patent claims.  D.Br. pp. 26, 29.  Given that this stated basis of materiality is neither set forth in the expert report of Mr. Taylor (Zado Ex. 10, ¶¶ 199-210), nor evidenced by Defendants' pleadings or discovery responses (*see* D.I. 16; D.I. 17; Zado Ex. 24), this argument should be stricken.[11]  Moreover, this operation is less material than the operation disclosed in the '776 patent for generating a multi-image browse display.

First, Defendants fail to identify on what basis the use of a Browse for cut-outs is material to patentability.  Defendants neither identify whether this operation allegedly meets any claim limitations of the '121 patent, nor set forth how it renders the PaintBox

---

[10]

**REDACTED**

\*Hackman* v. *Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991) ("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists."); *Martin* v. *Merrell Dow Pharma., Inc.*, 851 F.2d 703, 706 (3d Cir. 1988). Moreover, for the reasons set forth above, this operation is not even relevant to patentability of the '121 patent claims.

[11] Indeed, Ampex would be substantially prejudiced if Defendants were allowed to introduce a new theory at this late data.  More particularly, Ampex would have raised alternative grounds for summary judgment, at least based on there being no evidence whatsoever in the record that this operation was disclosed to or known by the applicants for the '121 patent.

more material than the cited art, other than the assertion that it results in a "faster browse" such as disclosed in the '121 patent. *See* D.Br. p. 26.[12]

Defendants' assertion on p. 29 of its Brief that "the fast browse feature of the '121 patent [is] an advantage over the prior art," is correct. As stated in Ampex's Opening Claim Construction Brief (D.I. 300) at p. 5 (on which Defendants rely), the '121 patent enjoyed a speed advantage over prior art browse approaches, such as was disclosed in the '776 patent, which required a plurality of images to be recalled from disc, reduced in size, and then inserted into a multi-image array. The browsing of cut-outs in Paint Box is *far slower* than even this prior art approach, for two reasons.

## REDACTED

More importantly, in addition to the time it takes the system to resize the cut-outs as necessary in order to fit the cut-outs within the Browse screen, it also takes the user a

---

[12] Defendants' assertion on pages 26 and 29 of their Brief that Ampex identifies the browsing of reduced size cut-outs "as the inventions of the '121 patent" is both irrelevant, and inaccurate. The '121 patent indisputably does not describe (except in the context of setting forth the operation of the prior art in col. 1) or claim a user manually generating a series of reduced size images and storing them to disk in order to generate a multi-image browse display. Indeed, as Mr. Cavallerano noted just prior to the question and answer cited in Defendants' Brief, a manual series of operations for generating and storing reduced size images for subsequent use in a multi-image browse display (via, as described above, recalling a series of full size images from disc, size reducing them under control of the user, and storing them back on disc), is disclosed in the '776 patent. (Zado Ex. 28, Cavallerano 5/3/06 Tr. pp. 133:20 – 135:25).

substantial amount of time to manually create a reduced size cut-out for each image on the disc store (through the process described in Ampex's Brief at pp. 22-23), and then store the reduced size cut-out back to disk – both on account of the number of operations required, and on account of the fact that, during these operations, full size images must be recalled from disc. Indeed, the '121 patent explicitly notes the disadvantage of the time delays encountered when manually pre-generating a series of reduced size images for use in a multi-image browse display, such as is required to set up the browsing of cut-outs on which Defendants rely. A.Br. p. 5; Zado Ex. 1, col. 1, lines 59-61. In contrast to the browsing of cut-outs, the browse/polyphoto screen approach of the '776 patent required no such series of steps to implement the browse screen: it automatically recalled the full size images from disc, size reduced them, and stored them in a multi-image browse screen in frame store – all in response to one user command. A. Br. pp. 10-11.

In any event, the manual series of operations for generating and storing reduced size images for subsequent use in facilitating a "rapid" browse via, as described above, recalling a full size image from disc, size reducing it under control of the user, and storing it back on disc, is less relevant than the disclosure of the '776 patent, as well as the disclosed "prior art" section of the '121 patent. A. Br. pp. 5, 11-12.[13]

---

[13] Defendants contend that the '121 patent claims do not require any "automatic" operation. This assertion is not relevant to Ampex's Motion, as even the manual operations on which Defendants' rely are disclosed by the cited art. *E.g.*, A.Br. pp. 8-9, 11-12. Moreover, this assertion is incorrect, as it ignores the literal language of the file history on which Defendants' rely. In fact, it was the automatic nature of the operations set forth in the '121 patent claims that the Examiner relied upon in finding the claims patentably distinct over the Boyd article. *See* Section II.C, *supra*; A.Br. pp. 38-39; *see also* Ampex's Opening Claim Construction Brief (D.I. 300) pp. 22-25.

E.    **Defendants' Reliance On The Testimony Of Mr. Cavallerano Is Unavailing**

Defendants rely on the testimony of Mr. Cavallerano to support various assertions about the operation of the alleged prior art systems. *E.g.*, D.Br. pp. 28-29. These assertions fall into two categories (1) the general operations identified in Defendants' pleadings, as rendering the alleged prior art references material (*e.g.*, "store reduced size images to disk," "recall images from disc," "display a mosaic of images," etc.); and (2) the so-called "direct transfer," "simultaneous storage in RAM," and "storing the reduced size image in only the memory corresponding to that image" operations set forth in Mr. Taylor's report. The first category of operations is addressed in Ampex's Brief at pp. 28-29; the second category at pp. 30-40.

As to the testimony of Mr. Cavallerano cited in Defendants Brief at p. 24 regarding "direct transfers," that testimony on its face refers not to a transfer of data from disk to RAM as required by the '121 patent claims, but to a transfer from disc to a buffer included in the size reducer (*i.e.*, the filter card)    **REDACTED**

As to the testimony of Mr. Cavallerano which Defendants cite on p. 25 of their Brief regarding "simultaneous storage in RAM," Mr. Cavallerano stated that "through a particular series of steps," a full size image could be in one frame store, and a reduced size cut out in a second frame store – *i.e.*, after the series of steps outlined in Ampex's Brief at pages 37-38 (which steps Defendants do not dispute are required in order to achieve storage of a full size image in one frame store, and a reduced size image in the other).    **REDACTED**

## IV.    CONCLUSION

For the foregoing reasons, Ampex's Motion For Summary Judgment That U.S.

Patent No. 4,821,121 Is Not Unenforceable Due To Alleged Inequitable Conduct For

Failure To Disclose The Quantel DLS6000, Quantel PaintBox, Or Ampex AVA Systems

should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com

*Attorneys for Plaintiff Ampex Corporation*

OF COUNSEL:

Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Norman H. Beamer
James E. Hopenfeld
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

June 20, 2006

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 20, 2006, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Collins J. Seitz, Jr., Esquire
> Jaclyn Mason, Esquire
> Connolly, Bove, Lodge & Hutz LLP

and that I caused copies to be served upon the following in the manner indicated:

### BY E-MAIL and BY HAND

> Collins J. Seitz, Jr., Esquire
> Connolly, Bove, Lodge & Hutz LLP
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE  19899

### BY E-MAIL and BY FEDERAL EXPRESS (on June 21, 2006)

> Michael J. Summersgill, Esquire
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA  02109

> */s/  Julia Heaney (#3052)*
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> jheaney@mnat.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 27, 2006, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Collins J. Seitz, Jr., Esquire
> Jaclyn Mason, Esquire
> Connolly, Bove, Lodge & Hutz LLP

and that I caused copies to be served upon the following in the manner indicated:

### BY E-MAIL and BY HAND

> Collins J. Seitz, Jr., Esquire
> Connolly, Bove, Lodge & Hutz LLP
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE  19899

### BY E-MAIL and BY FEDERAL EXPRESS

> Michael J. Summersgill, Esquire
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA  02109

> /s/   Julia Heaney (#3052)
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> jheaney@mnat.com