**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| AMPEX CORPORATION, | ) |
| *Plaintiff,* | ) )  ) ) |
| v. | )  C.A. No. 04-1373 (KAJ) |
| EASTMAN KODAK COMPANY, ALTEK CORPORATION, and CHINON INDUSTRIES, INC., | )  **PUBLIC VERSION** ) )  ) ) |
| *Defendants.* | )  ) ) |

**AMPEX CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT THAT U.S. PATENT NO. 4,802,019**
**IS NOT PRIOR ART TO U.S. PATENT NO. 4,821,121**

OF COUNSEL:
Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

Original Filing Date: June 20, 2006
Redacted Filing Date: June 27, 2006

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julie Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com

*Attorneys for Plaintiff Ampex Corporation*

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION..................................................................................1

II.    THE SETTLED LAW IS THAT AT LEAST ONE ISSUED CLAIM OF
       HARADA MUST BE SUPPORTED BY THE PARENT APPLICATION
       FOR THE HARADA PATENT TO POSSIBLY BE PRIOR ART TO
       THE '121 PATENT ..............................................................................3

III.   HARADA CLAIM 9 REQUIRES USE OF "INTERMEDIATE REGIONS"
       TO REARRANGE THE INDEX SCREEN; THEREFORE KNOWLEDGE
       OF SIMPLE "PICTURE SWAPPING" DOES NOT ENABLE CLAIM 9............4

       A.   Claim 9 Requires The Ability To Insert A Picture Between Two Other
            Pictures On The Index Screen ...................................................4

       B.   The Harada Parent Application Did Not Disclose The Circuitry To
            Insert A Picture Between Two Other Pictures On The Index Screen,
            And Rearrange the Remaining Pictures on the Index Screen, Using
            "Intermediate Regions" ..........................................................6

       C.   Kodak's Argument That A Person Of Ordinary Skill Knew How To
            Swap Picture Positions Is Immaterial To Enablement Of The Use Of
            Intermediate Regions Recited In Claim 9....................................8

IV.    KODAK'S MERE ASSERTION THAT PICTURE INSERTION WAS
       WELL KNOWN FAILS TO RAISE A GENUINE ISSUE OF FACT ................10

V.     CONCLUSION ..................................................................................13

i

## TABLE OF CITATIONS

**Page**

### FEDERAL CASES

*Alexander Milburn Co. v. Davis-Bournonville Co.*,
    270 U.S. 390 (1926)...............................................................................3

*American Hoist & Derrick Co v. Sowa & Sons, Inc.*,
    725 F.2d 1350 (Fed. Cir. 1984)..........................................................13

*Automotive Technologies Intn'l v. BMW of North America, Inc., et al.*,
    378 F. Supp. 2d 780 (E.D.Mich. 2005)............................................10

*Bruckelmyer v. Ground Heaters, Inc.*,
    445 F.3d 1374 (Fed. Cir. 2006)............................................................3

*Bruning v. Hirose*,
    161 F.3d 681 (Fed. Cir. 1998)............................................................11

*Fromson v. Advance Offset Plate, Inc.*,
    755 F.2d 1549 (Fed. Cir. 1985), *citing, American Hoist*, 725 F.2d at 1359 ...............13

*Genentech, Inc. v. Novo Nordisk*,
    108 F.3d 1361 (Fed. Cir. 1997)..........................................................10

*In re Lund*,
    376 F.2d 982 (C.C.P.A. 1967) ............................................................3

*National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.*,
    166 F.3d 1190 (Fed. Cir. 1999)..........................................................10

*Panduit Corp. v. Dennison Mfg. Co.*,
    774 F.2d 1082 (Fed. Cir. 1985)..........................................................13

*South Corporation v. United States*,
    690 F.2d 1368 (Fed. Cir. 1982)............................................................3

*In re Wertheim*,
    646 F.2d 527 (C.C.P.A. 1981) ........................................................3, 4

### FEDERAL STATUTES

35 U.S.C. § 102(b).................................................................................3

ii

## I.    INTRODUCTION

Plaintiff Ampex Corporation has moved for summary judgment that U.S. Patent No. 4,802,019 issued to Harada *et al.* ("Harada patent") is not prior art to U.S. Patent No. 4,821,121 ("'121 patent"). In its opening brief, Ampex established that, as a matter of law, no claim of the Harada patent is enabled by the parent application of the Harada patent, filed on January 3, 1983. As a result, the Harada patent is not entitled to the filing date of the parent application and cannot be used as prior art against the '121 patent. In their answering brief, defendants Eastman Kodak Company and Altek Corporation (collectively "Kodak") offer nothing to prevent entry of summary judgment that the Harada patent is not prior art to the '121 patent.

In order for the Harada patent to qualify as prior art to the '121 patent, it must be entitled to an effective filing date that at least comes before the '121 patent's effective filing date of April 8, 1983.[1] However, the application that led to the issuance of the Harada patent was filed long after 1983. That application was a continuation-in-part (CIP) that added new matter to the original Harada parent application filed January 3, 1983. In order for the Harada patent to be entitled to the January 3, 1983 filing date, at least one of the Harada patent's claims must be enabled by the original parent application.

It is Kodak's burden to show that at least one claim of the Harada patent is enabled by the parent application. The Examiner of the Harada applications determined that a critical limitation of the issued claims is not enabled by the parent application.

---

**REDACTED**

1

That limitation requires circuitry "to rearrange the arrangement of reduced still pictures" in response to a "detecting output" that was generated by a "detecting circuit" capable of detecting "intermediate regions" between reduced size pictures on the screen. The Examiner is presumed to be correct — particularly where, as in this case, the applicant acquiesced in the Examiner's decision. In order to overcome this strong presumption, Kodak bears the burden of showing that the Examiner was wrong. Kodak must cite specific facts demonstrating a genuine issue regarding the Examiner's determination.

In its Answering Brief, Kodak does not dispute that claims 1-8 of the Harada patent are not enabled by the parent application. The only claim that Kodak disputes lacks enablement from the parent application is claim 9. In its argument, Kodak fundamentally misconstrues claim 9, assuming that it should be enabled by a simple "picture swapping" version of the Harada system. But all of the Harada claims, including claim 9, require a much more sophisticated "picture insertion" capability. It is that latter capability that is not enabled by the Harada parent application.

Once Kodak's immaterial argument regarding "picture swapping," including its reliance on irrelevant testimony by Ampex's expert on that subject, is cast aside, as it should be, the only "evidence" of enablement that Kodak has proffered is an unsupported, conclusory assertion by its expert, Dr. Brad Myers. Dr. Myers' testimony is not, as a matter of law, sufficient to raise a genuine issue of fact. Therefore, Ampex is entitled to summary judgment.

## II. THE SETTLED LAW IS THAT AT LEAST ONE ISSUED CLAIM OF HARADA MUST BE SUPPORTED BY THE PARENT APPLICATION FOR THE HARADA PATENT TO POSSIBLY BE PRIOR ART TO THE '121 PATENT

As a threshold matter, Kodak, in a footnote to its Answering Brief, makes a half-hearted objection to Ampex's reliance on *In re Wertheim*, 646 F.2d 527, 537 (C.C.P.A. 1981), as the controlling law. However, *In re Wertheim* is binding precedent.[2] Far from being confined to interference practice, as Kodak suggests, the Court in *Wertheim* was unambiguous in its intent to set a precedent for all circumstances in which the Section 102(e) prior art status of CIP applications was at issue. 646 F.2d at 539 (overruling *In re Lund*, 376 F.2d 982 (C.C.P.A. 1967), an ex-parte prosecution matter).

Kodak's tentative new position is in contrast to its statements in opposition to the same motion that Ampex filed in the ITC Investigation. There, Kodak agreed that *In re Wertheim* applied: "to be prior art as of the earlier filing date, <u>Respondents need only show that one of the issued claims in the Harada patent is supported by the January 3, 1983 application.</u>" (emphasis in original).[3] In now questioning this binding precedent, Kodak offers nothing that would undercut *In re Wertheim*. *Bruckelmyer* v. *Ground Heaters, Inc.*, 445 F.3d 1374, 1378 (Fed. Cir. 2006) held that a patent file history was a prior art publication pursuant to 35 U.S.C. § 102(b), as of the date that its corresponding patent *issued*. Kodak's other case, *Alexander Milburn Co. v. Davis-Bournonville Co.*, 270 U.S. 390 (1926), is widely regarded as the precursor of Section 102(e), as explained in *In re Wertheim*, 646 F.2d at 532. Although the patent in that case did not, as in this

---

[2] *South Corporation* v. *United States*, 690 F.2d 1368, 1368 (Fed. Cir. 1982).

[3] Respondents Eastman Kodak Company and Altek Corporation's Memorandum of Points and Authorities in Opposition to Complainant's Motion for Summary Determination that U.S. Patent No. 4,802,019 is not Prior Art to U.S. Patent No. 4,821,121 at pp. 1-2.

case, issue from a continuation-in-part application, the policies expressed in that decision

inform and support the holding of *In re Wertheim*.

III.    **HARADA CLAIM 9 REQUIRES USE OF "INTERMEDIATE REGIONS" TO REARRANGE THE INDEX SCREEN; THEREFORE KNOWLEDGE OF SIMPLE "PICTURE SWAPPING" DOES NOT ENABLE CLAIM 9**

In arguing enablement of claim 9, Kodak and its expert assert that persons of skill

in the art would have known how to "swap the contents of two memory locations," to

cause two pictures on the index screen to switch places.  However, that simple

rearranging of pictures does not enable what is recited in the claims, including claim 9:

the use of the output of the detecting circuit to rearrange the arrangement of the reduced

still pictures on the screen, when the detecting circuit has detected intermediate regions.

Therefore, Kodak's argument is immaterial to this motion.

A.    **Claim 9 Requires The Ability To Insert A Picture Between Two Other Pictures On The Index Screen**

Kodak only argues that issued claim 9 of the Harada patent was enabled by the

parent application.  But Kodak fails to raise any genuine issue that even this single claim

is enabled.  The portion of issued claim 9 that is not enabled is the requirement of a:

> detecting circuit including *means for detecting intermediate regions* respectively provided between adjacent segmented areas on said screen, a detecting output thereof being *utilized to rearrange the arrangement* of said reduced still pictures on said screen.  (emphasis added)

This element of claim 9 is directed to an expressed object of the Harada patent, presented

in the section of the specification entitled "Summary of the Invention": to "accomplish

simple and accurate insertion of the selected pictures into the desired positions between

the still pictures arranged on the index screen." (2:26-29).[4] It was also the element of the claimed invention that persuaded the Patent Office to ultimately allow the Harada patent. (Beamer ¶¶ 16).[5]

The "intermediate regions" referred to in the claim are depicted as reference numbers 13 in Figure 3 of the Harada patent. As explained in the patent, to rearrange the pictures using these intermediate regions, the user first points to a picture on the index screen to be inserted, using, for example, a light pen. Then the user points to one of the "intermediate regions," indicating the insertion point on the screen — the place where the picture is to be inserted between two other pictures. A "memory replacement control circuit" then moves the information in memory so that the indicated picture appears at the insertion point, and the other pictures on the index screen are shifted, across or down to the next positions as necessary. (4:37-5:15). The Harada patent emphasizes that, by using the "intermediate regions," as opposed to pointing only to the pictures themselves, "erroneous operation" is avoided. (4:51-62; 5:13-15).

The patent gives an example of how this aspect of issued claim 9 works from the user perspective: The index screen is made up of sixteen reduced size pictures, with index numbers from 1-16, as depicted in Figure 2. The user wants to insert picture 5 between pictures 1 and 2. The user first touches picture 5 with the light pen, and then touches the "intermediate region" between pictures 1 and 2 and presses the "Insert" key on the keyboard. The memory replacement control circuit causes the pictures to be rearranged,

---

[4] The "index screen" is another name for a "browse screen" which is discussed, for example, in the Statement of Facts of Ampex's Opening Claim Construction Brief (D.I. 300).

[5] "Beamer" refers to the Declaration of Norman H. Beamer in Support of Ampex Corporation's Motion for Summary Judgment that U.S. Patent No. 4,802,019 is not Prior Art to U.S. Patent No. 4,821,121 (D.I. 288).

in the order: 1, 5, 2, 3, ...., etc., as depicted in Figure 4. In this example, all of the pictures

except picture 1 are shifted to a different position. (5:1-12).

> **B.    The Harada Parent Application Did Not Disclose The Circuitry To Insert A Picture Between Two Other Pictures On The Index Screen, And Rearrange the Remaining Pictures on the Index Screen, Using "Intermediate Regions"**

As Kodak quotes (in part) at page 6 of its Answering Brief, the original Harada

parent application included a user-level description of the above picture insertion and

resulting index screen rearrangement. However, that description only discloses nothing

about the memory replacement control circuit itself:

> The respective outputs of the index number detecting circuit 9 and the "Insert" key are thereby fed to the memory replacement control circuit 11 and the insert operation for the "squeezed" pictures and the reference numerals is carried out. As a result, such a rearranged program as shown on the monitor screen 14 in Fig. 4 is obtained. (5:6-12).

The above described claim limitation regarding the use of the output of the

detecting circuit when it detects intermediate regions, that is present in issued claim 9,

also appeared (almost identically) in parent application claim 9. (Beamer ¶ 20). Kodak

touts the parent application's description of this picture insertion function as if it were

sufficient to enable claim 9. (Kodak Answering Brief, pp. 11-12).[6] However, as is

apparent from the quote from the specification above, although the parent application

explains what happens during index screen rearrangement from the *user's perspective*, it

is totally uninformative as to how to make the memory replacement control circuit that

would accomplish that task. Nothing is disclosed except the name of the circuit

("memory replacement control") and an empty box in the figure. This description is in

---

[6] "Kodak Answering Brief" refers to Defendant's Answering Brief in Opposition to Ampex Corporation's Motion for Summary Judgment that U.S. Patent No. 4,802,109 is not Prior Art to U.S. Patent No. 4,821,121. (D.I. 353).

stark contrast to the detailed drawing and description of the memory replacement control *circuitry* that performs picture insertion that was added to the CIP application. (Fig. 6; 5:45-8:3).

Because of the complete absence of any enabling support for this claim element in the parent application, the Examiner rejected this claim limitation in parent application claim 9 (as well as all other claim elements) that required this insertion/rearrangement capability. The Examiner rejected the claims because the "memory replacement control circuit" was not described in an enabling manner — it was "not clear just where the data rearranging takes place." (Beamer ¶ 8).

In response, just as Kodak does now, the applicants argued that "It is believed that the implementation of such a system is well within the capability of one of ordinary skill in the art, without undue experimentation, given the subject disclosure." (Beamer ¶ 9). Unpersuaded by the applicant's mere assertion, the Examiner made his lack of enablement rejection final, stating that:

> [T]here is still not an adequate description of the 'memory replacement control' and the applicant's mere assertion that it is 'well within the capability of one of ordinary skill in the art' is insufficient to rebut the examiner's prima facia rejection.' (Beamer ¶ 10).

In response, the Harada applicants acquiesced in the Examiner's nonenablement finding, abandoned the parent application, and filed the CIP application with the new matter describing in detail the memory replacement control circuitry.[7] Ultimately, the

---

[7] Thus, it is the memory replacement control circuitry that is not enabled by the parent application. The Examiner did not find, and Ampex does not maintain, that the detecting circuit itself is not enabled. Nonetheless, the fact that the claims specify a detecting circuit that detects "intermediate regions" is dispositive in defining the functionality of the memory replacement control circuit that must be, but is not, enabled by the parent application.

Examiner allowed patent claim 9, after it was amended to include the above-discussed "detecting output ... to rearrange the arrangement" limitation. (Beamer ¶¶ 6-7, 11-13, 20). Thus, the Patent Office unambiguously determined that issued claim 9 is not enabled by the disclosure of the original Harada parent application.

Incredibly, Kodak attempts to dispute this fact, by asserting that the "Examiner never compared issued claim 9 to the January '83 application, so he never determined whether the January '83 application enables any of the issued claims of the Harada patent." (Kodak Answering Brief, p. 10). Kodak is wrong. Original application claim 9 contained the same element at issue that ultimately appeared in issued claim 9. (Beamer ¶ 15, 18, 20). There is no genuine dispute that that element was rejected during the parent application prosecution for lack of enablement. (Beamer ¶¶ 9-10). There also can be no dispute that, once the new matter describing the circuitry that enabled that element was added to the CIP application, the presence of that element was crucial in distinguishing what issued as claim 9 over the prior art. (Beamer ¶ 16-17).

C.     **Kodak's Argument That A Person Of Ordinary Skill Knew How To Swap Picture Positions Is Immaterial To Enablement Of The Use Of Intermediate Regions Recited In Claim 9**

**REDACTED**

[8] Kodak also relies on the testimony of Ampex's expert, Dr. Ligler, who agreed that one of ordinary skill in the art in 1983 would have known how to swap picture locations in the

---

[8] "Myers" refers to the June 13, 2006 Declaration of Dr. Brad A. Myers In Support Of Defendants' Answering Briefs To Ampex Corporations Motions For Summary Judgment (D.I. 364).

8

index screen by swapping the picture information between two memory locations, using a third location as a buffer. (Kodak Answering Brief, p. 8). Kodak apparently believes that, because swapping two pictures is a type of "rearrangement of the arrangement of said reduced still pictures on said screen," therefore claim 9 is enabled.

This argument, and in particular Kodak's reliance on Dr. Ligler's testimony, do not raise any genuine issues of material fact. Merely swapping pictures is not an example of using the detecting output recited in claim 9 (or any of the other issued claims) when the detecting circuit has detected intermediate regions. All of the issued claims require the capability of performing this much more sophisticated form of rearrangement of the index screen.[9] The claims require a rearrangement operation in which a picture is inserted between two other pictures, with the insertion point selected by pointing to the "intermediate regions," and as a result the pictures to one side of the insertion point are shifted in position to accommodate the inserted picture. Claim 9, for example, invokes this operation by first requiring a "detecting means" for detecting "intermediate regions," and further requiring a resulting "detecting output" to be "utilized to rearrange the arrangement of said reduced still pictures on the screen."

The Harada patent specification establishes beyond dispute that swapping two pictures is *NOT* an example of what the "intermediate region" recitations in the issued claims are directed to. It does refer to swapping, explaining that the user can do this by pointing (e.g., with a light pen) at the two pictures to be swapped, and then pressing an appropriate command key. (4:22-36). But in that example the user does not use the

---

[9] Original application claim 1 was not limited to a detecting circuit capable of using "intermediate regions." But, like all of the other claims, the applicants were forced to add that limitation to overcome the cited art. (Beamer ¶¶ 14, 16).

9

capability that the claims require — the user does not point to any "intermediate region" to indicate what pictures to swap. Rather, the user points at each picture itself (to what the patent calls a "picture segment" (5:29)). At that point in the specification, the use of "intermediate regions" has not yet been described. The intermediate regions come into play as part of the explanation of how the picture insertion operation takes place. (4:37-5:15). The use of these intermediate regions purports to be the key inventive improvement of the Harada disclosure. To obtain issuance, applicants were forced to abandon any claim directed only to the simple "picture swapping" embodiment that was disclosed, and limit their invention to require the picture insertion embodiment that made use of "intermediate regions." (Beamer ¶¶ 16-17).

Thus, Kodak raises no genuine issue of material fact in arguing that a person of ordinary skill, in 1983, would have known how to perform simple picture swapping.[10]

## IV.    KODAK'S MERE ASSERTION THAT PICTURE INSERTION WAS WELL KNOWN FAILS TO RAISE A GENUINE ISSUE OF FACT

### REDACTED

---

[10] At the very least, Kodak's argument is immaterial because it fails to take in to account the full scope of what the "detecting output" of claim 9 encompasses. "The enablement requirement of § 112 demands that the patent specification enable 'those skilled in the art to make and use the *full scope* of the claimed invention without 'undue experimentation''" (emphasis added). *Genentech, Inc. v. Novo Nordisk*, 108 F.3d 1361, 1365 (Fed. Cir. 1997); *see also National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.*, 166 F.3d 1190, 1195-96 (Fed. Cir. 1999) ("enabling a proxy for the claimed invention is not the same as enabling the claimed invention itself"); *Automotive Technologies Intn'l v. BMW of North America, Inc., et al.*, 378 F.Supp.2d 780, 813 (E.D.Mich. 2005) (rejecting patentee's argument that disclosure enabled one mode of the claimed invention because another mode, embodying the point of novelty argued by applicants during prosecution of the patent application, lacked enablement in the application's disclosure).

**REDACTED**

It is not enough for Dr. Myers to cite the same statements in the parent application that the Examiner determined to be non-enabling.  These statements merely recite the functionality of the memory replacement control circuitry from the user's perspective, *supra*, p. 6.[13]  In order to raise a genuine issue of fact, Kodak must provide actual analysis of whether the "rearrangement" could have been performed without any "undue experimentation" in 1983 (*e.g.*, tests demonstrating that the detecting output could have been made without undue experimentation).  *See, e.g., Bruning* v. *Hirose*, 161 F.3d 681, 686 (Fed. Cir. 1998).  Dr. Myers has conducted no such analysis, nor does Kodak rely on any such analysis.

---

11

**REDACTED**

[12] *See* Ampex Corporation's Opening Brief In Support Of Its Motion For Summary Judgment That U.S. Patent No. 4,802,019 Is Not Prior Art To U.S. Patent No. 4,821,121 ("Ampex Opening Br."), pp. 15-16

13

**REDACTED**

In an attempt to bolster its own expert, Kodak misconstrues Ampex's expert's testimony about picture swapping, *supra*, pp. 8-9, into a broader admission that picture insertion and replacement were enabled. (Kodak Answering Brief, pp. 7, 12). Dr. Ligler never testified that picture insertion or replacement involving the use of "intermediate regions," as required by claim 9, could have been performed by one of ordinary skill in the art in 1983 without undue experimentation. Indeed, Dr. Ligler testified:

**REDACTED**

Dr. Ligler's testimony does not support Kodak — it confirms that claim 9 was not enabled by the Harada parent application.[15]

---

[14] "Supp. Beamer __" refers to the Supplemental Declaration of Norman H. Beamer in Support of Ampex Corporation's Motion for Summary Judgment that U.S. Patent No. 4,802,019 is not Prior Art to U.S. Patent No. 4,821,121, submitted herewith.

[15] Kodak at first tried to block Dr. Ligler's explanation of why the subject matter of the Harada claims was not enabled by the parent application. **REDACTED**

Recognizing its failure to satisfy its burden, Kodak inappropriately attempts to shift the burden to Ampex, arguing that Ampex has failed to provide its own analysis to show that the "rearrangement" would require undue experimentation. (Kodak Answering Brief, p. 10). But the fact that the Examiner is presumed to have correctly determined that claim 9 lacks enablement in the parent application, and that the applicants acquiesced in this determination, shifts to Kodak the burden of coming up with specific facts establishing that the Patent Office was wrong.[16] *American Hoist & Derrick Co* v. *Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984); *see also Fromson* v. *Advance Offset Plate, Inc.*, 755 F.2d 1549, 1558 (Fed. Cir. 1985), *citing, American Hoist*, 725 F.2d at 1359 (the lead case cited in Kodak's Answering Brief) ("When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have done its job.").

V.     **CONCLUSION**

In order for Harada to be available as possible prior art to the '121 patent, it must be entitled to the filing date of its parent application (filed January 3, 1983). The Harada patent can only be so entitled if its parent application enables at least one claim of the Harada patent. In its Answering Brief, Kodak does not dispute that claims 1-8 lack

---

**REDACTED**

[16] Kodak's argument that Courts can, and have "freely reviewed and overturned an examiner's conclusion," leaves out the fact that the Federal Circuit cases cited by Kodak in its Answering Brief *upheld* the Examiners' determinations. *See Fromson*, 755 F.2d at 1558. *See also Panduit Corp.* v. *Dennison Mfg. Co.*, 774 F.2d 1082, 1096 (Fed. Cir. 1985) (reversing the trial court's overturning of the examiner's decision, noting "the district court gave too little, if any, effect to the presumption" and that the presumption places the burden on the challenger).

enablement in the parent application. Nor does Kodak establish any genuine issue of fact regarding the lack of enablement of claim 9. Therefore, Ampex is entitled to summary judgment as a matter of law that the Harada patent is not prior art to the '121 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com

*Attorneys for Plaintiff Ampex Corporation*

OF COUNSEL:

Jesse J. Jenner
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Sasha G. Rao
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

June 20, 2006

14

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 20, 2006, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Collins J. Seitz, Jr., Esquire
> Jaclyn Mason, Esquire
> Connolly, Bove, Lodge & Hutz LLP

and that I caused copies to be served upon the following in the manner indicated:

### BY E-MAIL and BY HAND

> Collins J. Seitz, Jr., Esquire
> Connolly, Bove, Lodge & Hutz LLP
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899

### BY E-MAIL and BY FEDERAL EXPRESS (on June 21, 2006)

> Michael J. Summersgill, Esquire
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA 02109

> */s/ Julia Heaney (#3052)*
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200
> jheaney@mnat.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 27, 2006, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Collins J. Seitz, Jr., Esquire
> Jaclyn Mason, Esquire
> Connolly, Bove, Lodge & Hutz LLP

and that I caused copies to be served upon the following in the manner indicated:

### BY E-MAIL and BY HAND

> Collins J. Seitz, Jr., Esquire
> Connolly, Bove, Lodge & Hutz LLP
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE  19899

### BY E-MAIL and BY FEDERAL EXPRESS

> Michael J. Summersgill, Esquire
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA  02109

> */s/  Julia Heaney (#3052)*
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> jheaney@mnat.com