IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPEX CORPORATION, | ) <br> ) <br> ) |
| *Plaintiff,* | ) <br> ) <br> ) |
| v. | ) C.A. No. 04-1373 (KAJ) <br> ) |
| EASTMAN KODAK COMPANY, ALTEK CORPORATION, and CHINON INDUSTRIES, INC., | ) **PUBLIC VERSION** <br> ) <br> ) <br> ) |
| *Defendants.* | ) <br> ) |

**AMPEX CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT THAT U.S. PATENT NO. 4,821,121
IS NOT ANTICIPATED**

OF COUNSEL:
Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

Original Filing Date: June 20, 2006
Redacted Filing Date: June 27, 2006

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julie Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jheaney@mnat.com

*Attorneys for Plaintiff Ampex Corporation*

## TABLE OF CONTENTS

                                                                                                          **Page**

I.    INTRODUCTION ..................................................................................................1

II.   THERE IS NO GENUINE DISPUTE THAT DEFENDANTS' PRIOR ART
      DOES NOT DISCLOSE AUTOMATIC GENERATION OF A REDUCED
      SIZE IMAGE FOR EACH FULL SIZE IMAGE PRIOR TO STORING
      FULL AND REDUCED SIZE IMAGES ON DISK ...............................................2
          A.    The DLS 6000 Series (which includes the DLS 6030) ................................6
          B.    Paint Box .......................................................................................................8
          C.    AVA ...............................................................................................................9
          D.    Hell Chromacom System ............................................................................10
          E.    Scitex Response 300 ...................................................................................11
          F.    Spatial Data Management System ("SDMS") ............................................12
          G.   U.S. Patent No. 4,802,019 ("the Harada patent") ......................................12

III.  DEFENDANTS' ASSERTION THAT THE PAINT BOX ANTICIPATES
      UNDER DEFENDANTS' CLAIM CONSTRUCTION IS IRRELEVANT
      AND INCORRECT ..............................................................................................13

IV.  CONCLUSION ....................................................................................................15

## TABLE OF CITATIONS

Page

### FEDERAL CASES

*Finnigan Corp. v. Int'l Trade Comm'n*,
    180 F.3d 1354 (Fed. Cir. 1999).................................................................................13

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
    292 F.3d 728 (Fed. Cir. 2002).............................................................................10, 11

*In re Oelrich*,
    666 F.2d 578 (C.C.P.A. 1981)...................................................................................13

### STATUTES

35 U.S.C. § 102(b).................................................................................................................10

## I.  INTRODUCTION

The '121 patent is directed to a particular architecture for electronic still stores that allows faster generation of reduced size image "browse" displays than the prior art. (Ampex Br. 1-3.)[1] Ampex's *Constructions 23 and 26-28* of the asserted claims reflect an important aspect of the '121 invention: *each time* a full size image is to be stored in the system, the system *automatically generates* a reduced size version *prior to* storing the full size and reduced size images. (Ampex Br. 5.) Then, when a user executes a browse command, the system automatically displays a browse screen matrix of reduced size images, rapidly generated by retrieving the previously-stored reduced size images. (*Id.* at 2, 5.)[2]

The parties agree that this motion is grounded on Ampex's *Constructions 23, 26-28*, set forth in the Joint Claim Construction Chart. In particular, for apparatus claims 7-8, 10, 12 and 14:

> [D]ata for the reduced size image is automatically generated from the full size image by the interaction between the size reducer and the random access memory (or "first store" or "memory") prior to storage in the "bulk memory" (or "bulk storage memory," "image store" or "second store"); and data representing the reduced size image is automatically generated and stored in the "bulk memory" (or "bulk storage memory," "image store" or "second store") each time that data representing the full size image is to be stored.

Similarly, for method claims 11, 13 and 15, the steps of *"receiving and storing ...."*; *"generating ...."*; *"storing ... along with ...."*; and *"storing both ...."* (for claim 11); and the steps of *"providing ..."*; *"generating ..."*; and *"storing both ...."* (for claims 13,

---

[1] "Ampex Br. __" refers to Ampex Corporation's Opening Brief In Support Of Motion For Partial Summary Judgment That U.S. Patent No. 4,821,121 Is Not Anticipated (D.I. 290).

[2] The aspect of the '121 invention directed to automatic generation of the browse screen is reflected in Ampex's *Construction 18*, not at issue in this motion.

15), must be automatically performed in the order recited in the claim, without the user orchestrating each step. Also, both the full video pixel data and reduced video pixel data must be available (in random access memory, for claim 11) *prior* to their storage (in the bulk storage memory, for claim 11).

Defendants devote the bulk of their Answering Brief[3] attempting to refute Ampex's claim constructions. In reply, Ampex incorporates by reference the pertinent discussion in its claim construction briefs.[4]

Defendants' Answering Brief raises no genuine dispute as to the real issue of this motion — *if* Ampex's claim construction is adopted, then Defendants' seven alleged prior art references do not anticipate.

## II. THERE IS NO GENUINE DISPUTE THAT DEFENDANTS' PRIOR ART DOES NOT DISCLOSE *AUTOMATIC* GENERATION OF A REDUCED SIZE IMAGE *FOR EACH* FULL SIZE IMAGE *PRIOR TO* STORING FULL AND REDUCED SIZE IMAGES ON DISK

There is no genuine dispute that the seven alleged prior art references asserted by Defendants do not teach automatic generation of a reduced size image each time a full size image is to be stored, and prior to storing the full and reduced size images. Defendants instead attempt to divert attention away from the real issues by proffering irrelevant evidence of:

- Automatic generation of a reduced size image *after* a full size image is already stored on disk;

---

[3] Defendants' Answering Brief To Ampex Corporation's Motion For Partial Summary Judgment That U.S. Patent No. 4,821,121 Is Not Anticipated (D.I. 356) ("Defendants' Br. _").

[4] In particular, Ampex incorporates by reference pp. 3-6 and 22-25 of Ampex Corporation's Opening Claim Construction Brief (D.I. 300); and pp. 25-27 and 31-37 of Ampex Corporation's Responsive Claim Construction Brief (D.I. 346).

- Reduced size images *generated manually*, including automatic creation of a browse screen using reduced size images that were *generated manually*;
- *Storing a reduced size image embedded as part of a larger composite image* after the reduced size image is generated.

Even if these features were actually present in some of the prior art on which Defendants rely,[5] that does not create a genuine issue of fact that would be material to anticipation under Ampex's construction requiring *automatic generation* of a reduced size image each time a full size image is to be stored, and *prior to* storing the full and reduced size image.

In an effort to create issues where none actually exist, Defendants gloss over fundamental distinctions between the prior art and the '121 invention. One important distinction that Defendants ignore is that, before the invention of the '121 patent, some electronic still stores, such as Quantel's DLS 6030 (discussed further below), used an "on-the-fly" browse approach that automatically generated reduced size images from full size images *already stored on disk*. (Christiansen Ex. 1, col. 1, lines 34-54; Ampex Br. 2, 6-8.)[6] The '121 invention is a fundamental departure from this approach — the system of the '121 patent automatically generates the reduced size image *before* storing the reduced size image and full size image on disk. (Christiansen Ex. 1, col. 2, lines 17-20, 37-43.) The prior "on-the-fly" approach was distinguished in column one of the '121

---

[5] Although Ampex disputes Defendants' characterizations of the alleged capabilities of the asserted prior art, Ampex will assume, except where indicated otherwise, that certain of Defendants characterizations are correct for the purposes of this summary judgment motion.

[6] "Christiansen Ex. [1-17]" refers to exhibits attached to the Declaration of Karen A. Christiansen In Support Of Ampex Corporation's Motion For Partial Summary Judgment That '121 Is Not Anticipated (D.I. 292).

patent, and further distinguished during the '121 prosecution. (Ampex Opening Claim Construction Brief (D.I. 300), pp. 3-6.)

Thus, Kodak is disingenuous in holding up this prior art automatic browse screen as if it in any way satisfies the '121 claims. The following table contrasts the operation of the prior art on-the-fly browse with the '121 automatic browse. In each case, it is assumed that a library of still images is created, and subsequently browsed:

| PRIOR ART ON-THE-FLY APPROACH | '121 PATENTED APPROACH |
|---|---|
| *Input and storage:* | |
| 1. Capture a full size image in RAM (frame store). | 1. Capture a full size image in RAM (frame store). |
|  | 2. ***System automatically passes the full size image through a size reducer, generating a reduced size image.*** |
| 2. System stores the full size image on bulk store (magnetic disk). | 3. System stores the full size *and reduced size images* on bulk store (magnetic disk). |
| 3. Repeat steps 1 and 2, creating a library of stored full size images. | 4. Repeat steps 1-3, creating a library of stored full size images, *each with an associated reduced size image.* |
| *Browse:* | |
| 1. User selects browse function. | 1. User selects browse function. |
| 2. System automatically retrieves a *full size image* from the bulk store, *passes it through a size reducer, generating a reduced size image "on-the-fly."* | 2. System automatically retrieves a *reduced size image* from the bulk store. |
| 3. System places the reduced size image at the proper location in RAM. | 3. System places the reduced size image at the proper location in RAM. |
| 4. Steps 2-3 automatically repeated — browse screen *slowly* forms. | 4. Steps 2-3 automatically repeated — browse screen *rapidly* forms. |

This same comparison may be seen in graphic form in the attached figures at Tab 1 (the prior art) and Tab 2 (the '121 patent). The difference between these two approaches manifests itself in the fact that the browse screen of the '121 invention is generated much

4

faster. For example, for a browse screen made up of a mosaic four pictures wide and four pictures high, the '121 browse screen is generated sixteen times faster.[7]

Defendants mischaracterize Ampex's expert's discussion comparing the prior art browse feature to the '121 invention. Defendants assert that Ampex's expert has admitted that the prior art that uses the on-the-fly automatic browse approach satisfies the '121 claim requirement that is the subject of this motion: automatic generation of a reduced size image each time a full size image is to be stored, and prior to storing the full and reduced size images. (Defendants Br. 22.) Ampex's expert made no such admission. The portion of the expert report on which Defendants rely relates to claim construction. It explains that a person of ordinary skill, when reading the '121 specification, would understand that the process of generating and storing a reduced size image each time a full size image was to be stored was an *automatic* process.

**REDACTED**

---

[7] *See* Ampex Corporation's Opening Claim Construction Brief (D.I. 300), pp. 4-6 & Tab 3.

[8] This explanation corresponds to the Declaration of Alan Cavallerano In Support Of Ampex Corporation's Claim Construction Brief (D.I. 310), at ¶¶ 43-48. "Christiansen Ex. [18-23]" refers to exhibits attached to the Supplemental Declaration of Karen A. Christiansen In Support Of Ampex Corporation's Reply Brief In Support Of Its Motion

5

**REDACTED**

### A.    The DLS 6000 Series (which includes the DLS 6030)

Given that the automatic browse feature of Quantel's DLS 6000 Series was specifically cited and distinguished in the '121 patent and during the '121 prosecution, it is not surprising that Defendants only give passing mention to that feature (Defendants Br. 12). Defendants instead primarily rely on a function of the DLS 6030 called "Stack/Don't Care," which Defendants argue automatically generated reduced size images. (Defendants Br. 24.)[10]    **REDACTED**

---

For Partial Summary Judgment That U.S. Patent No. 4,821,121 Is Not Anticipated, submitted herewith.

[9] Defendants also attempt to capitalize on a statement in Ampex's Opening Claim Construction Brief (D.I. 300), at page 24, which Defendants similarly mischaracterize as an admission that the prior art automatic on-the-fly browse feature satisfies the claim requirement of automatic generation and storage of reduced size images. (Defendants Br. 22-23). This passage was a paraphrase of the above-discussed explanation by Ampex's expert of how one of ordinary skill would construe the claims to require automatic generation and storage of the reduced size images when full size images were stored. The paraphrase is perhaps inartful, although in context with the portion of Ampex's expert's report on which it relies, cannot be fairly taken as Defendants would have it. To clarify Ampex's point, the sentence in question would be better phrased, in pertinent part: "...a person of ordinary skill would have understood that, at minimum, certain basic features of the prior art (including automatic generation of a browse screen) would have to be carried over to the system of the '121 patent, and that as a consequence the '121 patent would have to have the following additional features: ...."

[10] The "Don't Care" feature applied the particular "Composing Effects" programmed for an image in a stack, such as size and position in the display, to every subsequent image in

**REDACTED**

In addition, the "Stack/Don't Care" function required several manual steps, including initially saving the full size image, programming the stack, and accessing each image in the stack for display. (Christiansen Ex. 4, at AX203964, AX203966-968, AX203972.) Significantly, therefore, compared to the automatic browse function of the DLS 6030 that was specifically distinguished in the '121 patent, the "Stack/Don't Care" function is even less relevant to the '121 claims. It uses a less automatic "on-the-fly" approach to generate reduced size images from full size images already stored on disk.

Thus, neither the automatic browse function nor the Stack/Don't Care function of the DLS 6030 (nor anything else in the DLS 6030) satisfy the '121 claim requirement of automatic generation of a reduced size image *before storing the full and reduced size image*.

---

the stack. (Christiansen Ex. 4, at AX203969-970, AX203972.) As a result, instead of a browse screen type of matrix, each reduced size image generated by "Stack/Don't Care" would overwrite the previous reduced size image.

[11] "Taylor ¶ _" refers to the Declaration of Richard John Taylor In Support Of Defendants' Answering Briefs To Ampex Corporations' Motions For Summary Judgment (D.I. 369).

B.  **Paint Box**

The Quantel Paint Box browse function is virtually identical to the Quantel DLS 6030 browse function, and also used the prior art "on-the-fly" approach.

**REDACTED**

This argument is no better for the Paint Box than it is for the DLS 6030.

**REDACTED**

---

**REDACTED**

C.  AVA

**REDACTED**

In addition to the fact a manual process is irrelevant to the issues raised by this motion, there is absolutely no support in the record for the assertion that AVA could generate reduced size images without first storing the full size image to disk. The deposition testimony on which Defendants rely does not support this assertion. Indeed, Defendants' expert agreed at his deposition that the testimony relied on does not say what he originally thought it said. (Christiansen Ex. 20, Taylor 4/28/06 Tr. 92:22-95:9.)

**REDACTED**

**REDACTED**

### D. Hell Chromacom System

Defendants rely on their expert's assertion that the Hell Chromacom imaging system could automatically generate reduced size images from "input full size images" using its "Scan/Reco" station. (Preuss ¶ 29; *see* Defendants Br. 23-24.)[13] As previously demonstrated, there is no contemporaneous corroboration that such automatic generation of reduced size images was present in any Hell Chromacom device in public use or on sale more than one year before the '121 application date. (Ampex Br. 13, fn. 6.)[14]

---

[13] "Preuss ¶ _" refers to the Declaration of Dieter Preuss In Support Of Defendants' Answering Briefs To Ampex Corporations' Motions For Summary Judgment (D.I. 363). Defendants admit that the Hell Chromacom's "Combiskop" station required operator input to generate a reduced size image. (Preuss ¶ 28.)

[14] According to Defendants' expert, the Hell Chromacom system did not have size reduction functionality as of October 1979. (Christiansen Ex. 22, Preuss 5/5/06 Tr. 91:17-93:9, 94:2-95:23.) The expert insists that size reduction was implemented in 1980, but can cite no documents that corroborate this alleged implementation date. (*Id.* at 96:5-12.) The only document that arguably could be interpreted as disclosing automatic size reduction in the Hell Chromacom system is dated December 13, 1982. (*See* Christiansen Ex. 8, ¶ 50; Christiansen Ex. 17.) The absence of size reduction functionality in an earlier version of the product coupled with tenuous documentary support eight months *after* the critical date for anticipation (April 8, 1982 under 35 U.S.C. § 102(b)) demands stronger evidence of the actual implementation date to survive summary judgment. *See*

10

Furthermore, as Defendants' expert admitted, there is no corroboration whatsoever for the notion that, in the Hell Chromacom, reduced size images were generated *prior* to storage of the full size image. (Christiansen Ex. 22, Preuss 5/5/2006 Tr. at 76:24-77:20; 78:22-79:20.) All defendants have to go on is the unsupported testimony, over 24 years after the fact, of their paid expert. As a matter of law, that is insufficient.

E.  **Scitex Response 300**

As evidence that the Scitex Response 300 anticipates under Ampex's construction, Defendants cite their expert's statement that a reduced size image is automatically generated when a full size image is accessed by the system's "editing station." (Preuss ¶ 55 ("This reduced size image was sometimes referred to as the 'view file' . . . ."); Defendants Br. 24.) But in this instance, the full size image is already in storage — an "on-the-fly" approach that does not satisfy Ampex's claim construction:

> Q.  Would a reduced size image be generated prior to the storage of a scanned full size image to disk?
>
> A.  In the Response-300, reduced size images were not generated prior to storage of the full size images onto disk." (Christiansen Ex. 22, Preuss 5/5/06 Tr. 142:20-143:1.)

In addition, size reduction in the Scitex Response 300 would have only occurred when an image was too large for display in an editing monitor. (Christiansen Ex. 10, at EKC000142057 ("When *view files* are needed for the [Scitex 300] display, they are recalculated for each acquisition by the display terminal.") (emphasis added).) This

---

*Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 741 (Fed. Cir. 2002) (describing the "high standard" for "evaluating the credibility of oral statements").

11

operation does not satisfy the requirement of automatic generation of a reduced size image *for each* full size image.

  F.  **Spatial Data Management System ("SDMS")**

**REDACTED**

But the size of the memory used is not the point here – if the reduced size image is inserted into a composite image, then the reduced size image is not stored — as evidenced by the fact that it is impossible for it to then be retrieved as its own entity. In column 1 of the '121 patent, such storing of a composite image made up of component smaller images was specifically distinguished as *not* covered by the '121 patent. ('121 patent, 1:54-61.) Using such a prestored array, it is impossible, for example, to flexibly create a browse display of reduced size images.

  G.  **U.S. Patent No. 4,802,019 ("the Harada patent")**

**REDACTED**

---

[15] "Myers ¶ _" refers to the Declaration of Brad A. Myers In Support Of Defendants' Answering Briefs To Ampex Corporations' Motions For Summary Judgment (D.I. 364).

**REDACTED**

Defendants' argument amounts to a flawed assertion that the required order of operations is inherently disclosed in Harada. "Inherency, however, may not be established by probabilities or possibilities." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1365 (Fed. Cir. 1999) (quoting *In re Oelrich*, 666 F.2d 578, 581 (C.C.P.A. 1981)).

### III. DEFENDANTS' ASSERTION THAT THE PAINT BOX ANTICIPATES UNDER *DEFENDANTS'* CLAIM CONSTRUCTION IS IRRELEVANT AND INCORRECT

Despite the fact that Ampex's motion is premised on the Court's adoption of Ampex's claim construction, Defendants' Answering Brief introduces argument that, under Defendants' claim construction, there is no dispute that the Paint Box anticipates. (Defendants Br. 19-21.) In the first place, Defendants have not made any motion asking the Court to enter summary judgment of anticipation, and so this argument is a gratuitous irrelevancy and should be disregarded.

In any event, Defendants' assertion ignores several genuine issues of material fact that are well-established in the record. For example, there is at least a genuine dispute as to whether the Paint Box meets the following limitations set forth in Defendants' brief:

- ***Storing full and reduced size images in RAM simultaneously*** – this requirement applies to the input side of operations, *i.e.*, before a full size image is stored on disk, and after the reduced size image is generated, data for both the full size and reduced size images are stored in RAM simultaneously. (*See* Christiansen Ex. 1, col. 3, line 44 – col. 4, line 7.) Defendants argue that the Paint Box's ability to "'have the reduced size image temporarily in one frame store'" and "'full size counterpart present

13

in another'" satisfies this element. (Defendants Br. 20 (quoting Defendants App. B-333 to B-334).)[16] Since Paint Box can only generate a "reduced size image" if the full size image is already on disk (see § II.B, supra), the only way Paint Box can have the full and reduced sizes in RAM simultaneously is if the full size image is already on disk.

- *Storing reduced size images to disk*

**REDACTED**

Furthermore, Ampex disputes whether this alleged use of the Paint Box "cut and paste" is even prior art because Defendants rely on uncorroborated oral testimony in an attempt to prove that this convoluted manual process was ever even done. (*See* Ampex Opening Brief In Support Of Motion For Summary Judgment That The Quantel PaintBox Is Not Prior Art Under 35 U.S.C. 102(a) And (102)(b) (D.I. 295).)

- *Transferring images from disk directly to RAM*

**REDACTED**

- *Displaying a mosaic of reduced size images -*

**REDACTED**

Contrary to Defendants' position, there can be no genuine dispute that this "on-the-fly" browse function *does not* meet the '121 patent claims. (*See* Christiansen Ex. 7, Taylor 4/28/06 Tr. 55:24-56:2 ("A.

---

[16] "Defendants App. _" refers to the Appendix To Defendants' Answering Brief In Opposition To Plaintiff's Motion For Partial Summary Judgment That '121 Is Not Anticipated (D.I. 357).

Column 1 of the patent describes . . . taking a full-sized image and reducing its size on the fly").)

**REDACTED**

As explained above, these are not the "reduced size images" disclosed in the '121 patent. (*See* discussion of element "Store the reduced size images to disk," *supra*.)

- *Selecting a reduced size image from the browse to retrieve the full size version of the image* – Again, Defendants rely on the browse function of the Paint Box to satisfy an element of a '121 patent claim. (Defendants Br. 20.) As explained for the element above, the Paint Box "on-the-fly" browse function is not covered by the '121 patent – and vice versa.

- *Browsing reduced size images that were stored on disk* – In an attempt to satisfy this element, Defendants combine argument that "cutouts" are "reduced size images" (*see* dispute over "[s]tore reduced size images to disk," *supra*) with their position for the preceding two disputed elements that Paint Box's browse function can satisfy the '121 claims. Ampex disputes Paint Box's disclosure of this element under Defendants' construction for the same reasons set forth above: the "cutouts" are not reduced size images and the "on-the-fly" browse is not the '121 invention.

**REDACTED**

## IV. CONCLUSION

Ampex's claim construction requires that, *each time* a full size image is to be stored in the system, the system *automatically generates* a reduced size version *prior to* storing the full size and reduced size images. Defendants present no genuine dispute that

15

none of the asserted prior art references satisfies this limitation. Ampex's motion for summary judgment that the '121 patent is not anticipated should be granted.

/s/ Julia Heaney
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com

*Attorneys for Plaintiff Ampex Corporation*

OF COUNSEL:

Jesse J. Jenner
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Sasha G. Rao
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC  20005
(202) 508-4600

June 20, 2006