**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| ALTEK CORPORATION and CHINON | ) | **REDACTED** |
| INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

Collins J. Seitz, Jr. (#2237)
Jaclyn M. Mason (#4737)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE #19899
(302) 658-9141
cseitz@cblh.com

*Of Counsel:*
William F. Lee
Donald R. Steinberg
Michael J. Summersgill
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

***Attorneys for Defendants Eastman Kodak Company
and Altek Corporation***

S. Calvin Walden
WILMER CUTLER PICKERING
    HALE AND DORR LLP
399 Park Avenue
New York, NY  10002
(212) 230-8800

Redacted Filing Date: June 27, 2006
Original Filing Date:  June 20, 2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| EASTMAN KODAK COMPANY, ALTEK CORPORATION and CHINON INDUSTRIES, INC., | ) ) ) | |
| | ) | **REDACTED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION
## FOR SUMMARY JUDGMENT OF NONINFRINGEMENT

Collins J. Seitz, Jr. (#2237)
Jaclyn M. Mason (#4737)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE #19899
(302) 658-9141
cseitz@cblh.com

*Of Counsel:*
William F. Lee
Donald R. Steinberg
Michael J. Summersgill
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

***Attorneys for Defendants Eastman Kodak Company
and Altek Corporation***

S. Calvin Walden
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, NY 10002
(212) 230-8800

Dated: June 20, 2006

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    AMPEX CANNOT PROVE INFRINGEMENT UNDER THE DEFENDANTS' CONSTRUCTION OF "VIDEO" AS A MATTER OF LAW .................................................... 3

     A.     Ampex Cannot Prove Literal Infringement ................................................. 3

     B.     The "All Elements Rule" Bars Ampex from Asserting the Doctrine of Equivalents with Respect to the "Video" Limitation. ......................................... 5

III.   AMPEX CANNOT PROVE INFRINGEMENT UNDER THE "SAID DATA" LIMITATION AS A MATTER OF LAW. .................................................................. 7

     A.     Ampex Cannot Prove Literal Infringement. ................................................ 7

     B.     The "All Elements Rule" Bars Ampex from Asserting the Doctrine of Equivalents with Respect to the "Said Data" Limitation. ........................................ 10

     C.     Prosecution History Estoppel Precludes Ampex from Asserting the Doctrine of Equivalents with Respect to the "Said Data" Limitation. ........................................ 12

IV.   AMPEX CANNOT PROVE INFRINGEMENT UNDER THE DEFENDANTS' CONSTRUCTION OF "DIRECT" AS A MATTER OF LAW. ............................................ 15

V.    AMPEX CANNOT PROVE INFRINGEMENT UNDER THE DEFENDANTS' CONSTRUCTION OF THE "INPUT PORT/OUTPUT PORT" LIMITATIONS AS A MATTER OF LAW. ................................................................................. 16

VI.   AMPEX CANNOT PROVE INFRINGEMENT UNDER THE DEFENDANTS' CONSTRUCTION OF THE "EXTERNAL SOURCE" LIMITATION AS A MATTER OF LAW ................................................................................. 17

     A.     Ampex Cannot Prove Literal Infringement. ............................................... 17

     B.     The "All Elements" Rule Precludes Ampex as a Matter of Law From Asserting Equivalents With Respect to the "External Source" Limitation. ................ 18

     C.     Prosecution History Estoppel Precludes Ampex from Asserting Equivalents with Respect to the "External Source" Limitation. ...................................... 19

VII.   CONCLUSION ............................................................................................. 20

## TABLE OF AUTHORITIES

Cases

American Permahedge, Inc. v. Barcana, Inc.
    105 F.3d 1441 (Fed. Cir. 1997)............................................................................ 13

Biagro Western Sales, Inc. v. Grow More, Inc.
    423 F.3d 1296 (Fed. Cir. 2005)............................................................................ 20

Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.
    93 F.3d 766 (Fed. Cir. 1996)................................................................................. 6

Intermatic, Inc. v. Lamson & Sessions Co.
    273 F.3d 1355 (Fed. Cir. 2001)............................................................................ 13

Merck & Co. v. Teva Pharms. USA, Inc.
    395 F.3d 1364 (Fed. Cir. 2005)............................................................................. 6

Pause Tech. LLC v. TiVo Inc.
    419 F.3d 1326 (Fed. Cir. 2005)............................................................................. 6

Pioneer Magnetics, Inc. v. Micro Linear Corp.
    330 F.3d 1352 (Fed. Cir. 2003)............................................................................ 13

Primos, Inc. v. Hunter's Specialties, Inc.
    Nos. 05-1001, -1376, 2006 U.S. App. LEXIS 14525
    (Fed. Cir. June 14, 2006) ............................................................................... 7, 14

Process Control Corp. v. Hydreclaim Corp.
    190 F.3d 1350 (Fed. Cir. 1999)............................................................................. 7

Talbert Fuel Sys. Patents Co. v. Unocal Corp.
    347 F.3d 1355 (Fed. Cir. 2003)...................................................................... 14, 20

## I.    INTRODUCTION

Ampex's opposition brief attempts to complicate the record and generate the appearance of factual disputes where there are none. For example, Ampex: (1) dedicates many pages of its brief to irrelevant features of the accused Kodak cameras, including the "preview" and "movie/video" modes that Ampex does not accuse and that its experts admit do not infringe; (2) makes numerous assertions that squarely contradict the prior sworn deposition testimony of its experts; and (3) advances arguments for one purpose, while advancing the contrary view for other purposes (e.g., arguing that the components and processing features of the accused cameras were known and/or described in the '121 patent for claim construction purposes, while arguing that the same features represent "after-developed" technology under *Festo*).

When Ampex's brief is stripped of such extraneous commentary, all that remains is an undisputed factual record and straightforward issues that are ripe for resolution on summary judgment now:

*1.*    ***"Video:"*** Ampex concedes no literal infringement under the Defendants' construction of "video" (which requires the ***source*** of "pixel" and "image" data to be "a series of related electronic images created for rapid display to allow the appearance of movement"), except with respect to "burst mode." But that issue can be resolved here on summary judgment.

REDACTED

Ampex's admission that its equivalents argument requires treating "video" as "not a claim element" confirms that the "all elements" rule bars that argument as a matter of law as well.

*2.*    ***"Said Data:"*** The Defendants' construction of "said data" requires the "full size" image data stored to disk to contain the ***same numeric pixel values*** as the corresponding "full size" image data stored in RAM (and used to generate the "reduced size"

image).

**REDACTED**

Yet, Ampex claims that

literal infringement remains disputed based solely on its assertion that "data" does not refer to

"the numerical value of pixels." That argument, however, must be rejected as contrary to the

explicit admissions of Ampex's experts, and in any event, it presents an issue of law (claim

construction) appropriate for resolution on summary judgment. As a matter of law, the Court

also must resolve the Defendants' arguments based on the "all elements" rule and

prosecution history estoppel – both doctrines preclude Ampex from asserting any equivalents

with respect to the "said data" limitation.

    **3.**    *"Direct:"* Ampex concedes that it cannot demonstrate literal infringement of

claims 7, 8, or 10 if the Court adopts the construction of "direct" advanced by Ampex during

prosecution and adopted by the Defendants here ("the transfer of data without intervening

circuitry"). Ampex does not contest that it is barred from asserting any equivalents under

that construction by the "all elements" rule and prosecution history estoppel.

    **4.**    *"Input/Output Port:"* Ampex contends that literal infringement is disputed

under the Defendants' construction of the "an input port and an output port" limitations

(requiring two separate ports, one for data input and one for data output). But that argument

must be dismissed on summary judgment because it conflicts with the admission of Ampex's

expert that *no* literal infringement exists under that construction. Ampex does not dispute

that equivalents are barred by the "all elements" rule and prosecution history estoppel.

    **5.**    *"External Source:"*

Therefore,

no literal infringement exists. The parties' disagreements with respect to application of the

"all elements" rule and prosecution history estoppel present pure questions of law proper for

resolution on summary judgment.

Each of these issues should be resolved as a matter of law in the Defendants' favor.

Accordingly, the Court should grant the Defendants' motion and enter summary judgment of

non-infringement with respect to each asserted claim of the '121 patent.

## II.    AMPEX CANNOT PROVE INFRINGEMENT UNDER THE DEFENDANTS' CONSTRUCTION OF "VIDEO" AS A MATTER OF LAW.

### A.    Ampex Cannot Prove Literal Infringement.

The Defendants' claim construction and opening summary judgment briefs make

clear that: (1) under the "video" limitation (found in each asserted claim), the *source* of the

"pixel" (or "image") data received by the system must be from "a series of related electronic

images created for rapid display to allow the appearance of movement;" and (2) as a matter

of law, the accused Kodak digital cameras cannot literally satisfy that limitation :

### REDACTED

*(See* D.I. 304 at 22-23;

D.I. 299 at 5-8; D.I. 348 at 2-7.) Accordingly, the Defendants are entitled to summary

judgment of no literal infringement with respect to every asserted claim of the '121 patent.

Seeking to escape that conclusion, Ampex first dedicates several paragraphs of its

brief to a general discourse on the "preview" and "movie/video" modes offered by the

accused Kodak digital cameras. (D.I. 366 ("Opp'n") at 21.) However, that discussion is

nothing more than an effort to muddy the clear record before the Court. Ampex has *never*

asserted literal infringement based on either of these two modes, and its expert expressly

conceded that literal infringement does not occur when using the "preview" or "movie/video"

modes. (Ligler Dep., at A521-22 (testifying that "if Kodak's claim interpretation [of 'video']

is adopted, there is no literal infringement" based on, for example, the preview and

movie/video modes); *see id.* at C61-63, A523 (agreeing that "for the accused cameras that

have that video mode, none of them would literally satisfy each and every element of the

asserted claims").) In fact, Ampex's discussion of the preview mode itself is highly

misleading.    **REDACTED**

**REDACTED**

Ampex then asserts in a two-sentence argument that summary judgment of no literal infringement is precluded

**REDACTED**

Defendants do not dispute that burst mode has this capability.  (*See* D.I. 304 at 26 (Defendants describing both points about burst mode raised by Ampex).)  The proper inquiry, however, is *not* whether the photographed scene includes "moving objects," or whether the camera can store one or more images taken in "rapid succession" (as Ampex appears to maintain).

**REDACTED**

---

**REDACTED**

**REDACTED**

Accordingly, Ampex has failed to demonstrate the existence of any disputed issues of material fact sufficient to preclude summary judgment of no literal infringement.

**B.     The "All Elements" Rule Bars Ampex from Asserting the Doctrine of Equivalents with Respect to the "Video" Limitation.**

As explained in the Defendants' opening brief (pp. 23-24), Ampex cannot assert the doctrine of equivalents with respect to the "video" limitations because to do so would vitiate those limitations, thereby violating the "all elements" rule. Ampex offers two arguments in response, neither of which has merit.

First, Ampex asserts that the "all elements" rule is inapplicable here because the term "'video,' in isolation, is not a claim element (as Defendants would portray)." (Opp'n at 27; *see id.* at 2 (arguing that the claim term "'video" is nothing more than "an adjective used in certain claim elements").) That contradicts Federal Circuit authority explicitly holding that courts must strive to "give[] meaning to *all the terms* of the claim" – a result particularly appropriate where, as here, the term at issue appears numerous times in the claim, and dozens

-5-

of times in the specification. *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (emphasis added); *see Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1334 (Fed. Cir. 2005) ("In construing claims, however, we must give each claim term the respect that it is due."); *Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996) (rejecting construction that would render claim term superfluous).[3] In fact, that Ampex must resort to labeling "video" a mere "adjective" and "not a claim term" simply reinforces the conclusion that Ampex's equivalents argument requires vitiation of that limitation.

**REDACTED**

---

[3]    Ampex's position also is inconsistent with the fact that it has proposed a construction for the very term ("video") that it now contends is not a claim term. (*See* Opp'n at 20; D.I. 300 at 13-14.) Plainly, Ampex should not be permitted to escape summary judgment merely by reversing course and contending that the word now has no independent meaning as used in the claims.

That outcome is not affected by Ampex's belated June 16, 2006 filing (D.I. 382), which supplemented Ampex's forty-page opposition brief with an additional three pages of argument directed to the Federal Circuit's recent decision in *Primos, Inc. v. Hunter's Specialties, Inc.*, Nos. 05-1001, -1376, 2006 U.S. App. LEXIS 14525 (Fed. Cir. June 14, 2006). In *Primos*, the district court construed the term "plate" to mean "a structural element of relatively uniform thickness and flatness which may also have ***some moderate curvature to it***." *Id.* at *5 (emphasis added). On appeal, the parties did not contest that construction, and the accused party argued that application of the doctrine of equivalents to its "dome"-shaped structure would vitiate the "plate" limitation. Not surprisingly, the Federal Circuit disagreed, holding that a curved dome could be deemed equivalent to a "plate" (a structure construed to include "some moderate curvature"). *Id.* at *20-22. Here, by contrast, Ampex's equivalence argument ***would*** completely eliminate the "video" limitation by allowing image data to be captured from any source, including from a single image not meant for rapid display to give the appearance of movement.[4]

## III. AMPEX CANNOT PROVE INFRINGEMENT OF THE "SAID DATA" LIMITATION AS A MATTER OF LAW.

### A. Ampex Cannot Prove Literal Infringement.[5]

**REDACTED**

---

[4] To the extent the Court determines that the "all elements" rule does not apply, for the reasons set forth in the Defendants' opening brief, any reasonable jury would conclude that the Defendants' accused cameras do not satisfy the "video" limitation under the doctrine of equivalents. (D.I. 304 at 25-26.) Indeed, Ampex has no answer for why the accused cameras need a separate "video" mode if all modes capture "video."

[5] Ampex asserts that the Defendants' "said data" arguments do not apply to claim 11 because that claim "does not use the term 'said data' or the like." (Opp'n at 28.) Ampex is wrong. Like asserted claims 7, 8, 10, and 12-15 – which refer to the capture of full size "video pixel data" (or a "video image") and storage of the "said video pixel data" (or "said video image") on disk – claim 11 requires "full video pixel data comprising a full size image" and storage of "**the** full size image" (i.e., the same data "comprising" the captured "full size image"). Accordingly, the Defendants' "said data" arguments apply to all asserted claims. *See, e.g., Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350, 1356 (Fed. Cir. 1999) ("the discharge rate" means the same rate mentioned previously in the claim).

6

**REDACTED**

---

[6]   Ampex continues to argue that Defendants' proposed construction for "said data" would prevent the claims from reading on the preferred embodiment of the '121 patent because the binary 1s and 0s of the image data in that embodiment are altered before storage to disk. (Opp'n at 3.) But that argument misapplies the Defendants' construction. The Defendants do not contend that the same 1s and 0s must be stored to disk; all agree that digital data is represented by 1s and 0s, and that the arrangement of 1s and 0s can change depending upon the storage medium. Rather, the numerical "data" values that must remain the same are the ***pixel values*** – regardless of how those values are expressed in 1s and 0s. This is exactly what is described and claimed in the '121 patent.

**REDACTED**

. – the '121 patent does not disclose any processing of the "full size"

image data that occurs ***after*** the image data is stored in the framestore and ***before*** it is saved

to disk. (Opp'n at 8-10.) This is entirely consistent with the electronic still store-based

claims of the '121 patent, which require the ***already-processed*** image data to be captured and

stored for later access, and say nothing about processing the image data after storage in the

framestore.

Ampex raises just one literal infringement argument in rebuttal: that "Kodak's

selective citations completely mischaracterize the testimony of Ampex's experts as to the

meaning of data and whether the 'said data' limitation is limited to the numerical values of

pixels." (Opp'n at 29

**REDACTED**

.) But Ampex cannot escape the

clear admissions of its experts. Drs. Ligler and Boncelet both have conceded that data *is*

nothing more than a set of numbers. (*See* Ligler Dep., at A514 ("Q. Right. Can you think of

[data] being anything other than numbers? A. Not when it's in stored form, no."); *id.* at C65-

67 ("[Data] is stored as numbers;" "pixel values [are] stored as data"); *id.* at A512

("Typically in a digital device, data would be numbers."); Boncelet Dep., at A453 ("The data

would be information; would be presumably a set of numbers.").)

In any event, Ampex's argument is directed exclusively to a claim construction

question (i.e., what the term "data" means). Acceptance of the Defendants' proposed

construction answers that question by requiring the captured full size image data and the

stored full size image data sets to contain the *same* numerical pixel values. Ampex expressly

concedes that it cannot prove literal infringement under that construction:

**REDACTED**

see Ligler Dep., at A529-30 (admitting that "if the court

decides that said data must be the same mathematical data as video pixel data [in claim 7] ...

then the accused Kodak cameras do not satisfy that limitation literally"); Opp'n at 14

, *id.* at 29

**REDACTED**

*id.* at 30 ·                    **REDACTED**

*id.* at 32 ·

**REDACTED**                    Therefore,

summary judgment is required.[7]

**B.    The "All Elements" Rule Bars Ampex from Asserting the Doctrine of
Equivalents with Respect to the "Said Data" Limitation.**

In their opening brief, the Defendants explained how Ampex's doctrine of

equivalents arguments with respect to the "data" and "said data" limitations would vitiate

claim elements in two ways:

•

**REDACTED**

•

_____

[7]    Ampex incorrectly states that the Defendants' motion "assume[s] this Court will adopt
Defendants' construction" of "said data." (Opp'n at 1.) The Defendants' opening brief (p. 31)
also addressed the lack of infringement under Ampex's flawed "said data" construction
("information in any form, representing a video image").

**REDACTED**

-10-

**REDACTED**

(*See* D.I. 304 at 32-33.)

**REDACTED**

Second, Ampex argues that its equivalents theory would not violate the "all elements" rule because "[t]hat rule is equally inapplicable to the phrase 'said data' – which is not a claim element." (Opp'n at 4.) This argument should be rejected for the reasons discussed above in connection with the same argument lodged by Ampex against the "video" limitation – i.e., that each claim term is presumed to have independent meaning, that Ampex itself has proposed a construction of the "said data" requirement, and that the "not a claim element" argument raised by Ampex proves that an equivalents analysis requires vitiation of the "said data" claim term. (*See* Opp'n at 28 ("Ampex's proposed claim construction for 'said data' … is 'data (or data sets) representing the same image as the antecedent data (or data sets).'").) In fact, Ampex's argument is quite remarkable given that Ampex added the "said data" limitation – which it now claims is not a limitation at all – during prosecution to overcome a rejection by the Examiner. ('121 file history, at A101-04.)

REDACTED

## C.    Prosecution History Estoppel Precludes Ampex from Asserting the Doctrine of Equivalents with Respect to the "Said Data" Limitation.

Ampex does not dispute that the *Festo* presumption of prosecution history estoppel applies to claims 7, 8, 10, and 14 with respect to the "said data" element (Opp'n at 32-33), and claims 11 and 12 are subject to the same presumption because they too were narrowed by

amendment for reasons of patentability with respect to "said data."[10] Ampex tries to rebut

that presumption by claiming that its proposed equivalent was not "foreseeable" as of April

1983, and only "tangentially" related to the amendments made to those claims. Both

arguments fail.

With respect to its first argument, Ampex argues that "the alleged equivalents in

question represent later-developed technology that would not have been foreseeable at the

time of the amendment" because "any differences in the image processing disclosed in the

'121 patent to that employed by the Kodak digital cameras [were] attributable to the

integration of the video input circuit ... within the same chassis as the circuitry used for

image capture and storage." (Opp'n at 33.) This assertion is misplaced for two reasons.

First, putting the video input, image capture, and image storage circuitry in one

package certainly was not unforeseeable, especially given that digital cameras were known at

the time of the "said data" amendments. (See Ligler Dep., at C51, C52, A493, C55-56; U.S.

Patent No. 4,131,919, C1-11 (1978 Kodak patent directed to electronic still camera); Opp'n

at 21 n. 11 (admitting that the CCD image sensors were known as of April 1983). See

Pioneer Magnetics, Inc. v. Micro Linear Corp., 330 F.3d 1352, 1357 (Fed. Cir. 2003) (non-

switching circuit was disclosed in prior art and therefore would have been foreseeable).


**REDACTED**


---

[10]    In response to an indefiniteness rejection, Ampex amended claim 11 by adding "*the* full
video pixel data" and amended claim 12 by adding "said" before "full size image data sets." (See
'121 file history, at A101, A104; *id.* at A119.) In addition, claims 13, 14, and 15 (which also
have a "said data" requirement) were added either at the same time or after claims 7, 8, 10, 11,
and 12 were amended to include the "said data" requirement; therefore, those claims also are not
entitled to any range of equivalents. See *Intermatic, Inc. v. Lamson & Sessions Co.*, 273 F.3d
1355, 1366-67 (Fed. Cir. 2001) (estoppel generated by amendment made to one claim applies to
all other claims containing that limitation); *see also American Permahedge, Inc. v. Barcana, Inc.*,
105 F.3d 1441, 1445-46 (Fed. Cir. 1997) (applying prosecution history estoppel equally to all
claims including same element).

**REDACTED**

Ampex's "tangential" theory should also be rejected as a matter of law. The prosecution history makes clear that the "said data" limitations were added to the asserted claims to require that the video pixel data stored on disk be the ***same data*** that is stored in RAM (and used to generate reduced size image data). (*See, e.g.*, '121 file history, at A103 (Examiner's rejection stating that, in claim 7, "'video pixel data' is indefinite because it is not clear if it refers back to the pixel data recited [as stored in RAM]").)

**REDACTED**

11

Thus, because the reason for the "said data" amendments and the alleged equivalent ***both*** relate to the identity of the data stored on disk relative to the data stored in RAM (and used to generate reduced size image data), the two cannot be said to bear only a tangential relationship to one another. *See Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 347 F.3d

---

[11]  *Primos* does not support Ampex's assertion that the "said data" amendments bore only a tangential relationship to the alleged equivalent. In that case, the "plate" limitation was amended to require that the plate be "differentially spaced" above a membrane. *Primos*, 2006 U.S. App. LEXIS 14525, at *18. Because the accused device used a dome (and not a plate) that extended above the membrane, the court held that the amendment was merely tangential to the alleged equivalent. *Id.* at *19. In other words, there was only a tangential relationship because the amendment related to the "differentially spaced" aspect of the claim, while the equivalent related to the "plate" aspect of the claim. Here, in contrast, both the amendment and the alleged equivalent relate to the "said data" portion of the asserted claims.

1355, 1360 (Fed. Cir. 2003) (reason for amendment could not be deemed "tangential" to alleged equivalent because both related to boiling range and carbon content).[12]

## IV.  AMPEX CANNOT PROVE INFRINGEMENT UNDER THE DEFENDANTS' CONSTRUCTION OF "DIRECT" AS A MATTER OF LAW.

Ampex admits that the Defendants do not literally infringe claims 7, 8, and 10, under the "transfer of data without intervening circuitry" construction of "direct" and "directly" that Ampex advanced during prosecution of the '121 patent, and that Defendants have adopted here. (*See* Ligler Dep., at A513 (agreeing that the Defendants' construction is consistent with Ampex's prosecution history statements); Opp'n at 35).) Moreover, faced with a *Festo* bar and the need to argue that an indirect connection is equivalent to a direct one (thereby violating the "all elements" rule), Ampex's brief does not even advance an equivalents argument with respect to these limitations.  Therefore, to the extent the Court adopts the Defendants' construction of "direct" and "directly," even Ampex concedes that summary judgment of non-infringement of claims 7, 8, and 10 is warranted.

As an apparent fallback position, Ampex formulates a new, secondary claim construction of "direct" from a phrase used in the Defendants' claim construction brief: a transfer "without passing through the CPU or any other circuitry that would permit processing." (Opp'n at 36.)  As Ampex well knows, the Defendants included that phrase only to describe the transfer of data in the sole figure of the '121 patent – it was not offered as an alternate claim construction.

**REDACTED**

---

[12]     To the extent the Court determines that the "all elements" rule and prosecution history estoppel do not apply, for the reasons set forth in the Defendants' opening brief, any reasonable jury would conclude that the Defendants' accused cameras do not satisfy the "said data" limitation under the doctrine of equivalents.  (D.I. 304 at 32-34.)

**REDACTED**

**V.    AMPEX CANNOT PROVE INFRINGEMENT UNDER THE DEFENDANTS'
CONSTRUCTION OF THE "INPUT PORT"/"OUTPUT PORT"
LIMITATIONS AS A MATTER OF LAW.**

Ampex contends that "[disputed] material facts" preclude summary judgment of non-

infringement under the Defendants' construction of the "an input port and an output port"

limitations of claims 8 and 14 (construed by the Defendants to mean "[RAM] ... with an

input port and a separate output port").

**REDACTED**

Ampex's expert, Dr. Ligler, admitted at his deposition that the Defendants would not

literally infringe those claims under the Defendants' construction:

> Q.    If Kodak's definition is adopted by the court, then the accused
> Kodak products would not literally meet the input port and output
> port requirement of claims 8 and 14, correct?
>
> A.    In my view, they would not, that's right."

(Ligler Dep., at C72-73.)

-16-

Ampex ignores that undisputed fact testimony and critical admission of its expert, calling the Defendants' reliance upon it "misplaced."

**REDACTED**

This argument makes no sense.

Claims 8 and 14 of the '121 patent require the claimed "input port" and "output port" each to provide an *interface* between the claimed RAM and one or more *other components* of the claimed electronic still store system. (*See* Opp'n at 36 (defining a "port" as an "interface").) No reasonable jury possibly could conclude that those requirements are satisfied by "pins" residing exclusively *inside* an SDRAM chip and provide *no* input or output interface to other components. (*See* Zado Decl., Ex. 18, at 2.) Moreover, under Ampex's new theory, there would be no distinction between single ports with an input/output capability, and separate input and output ports – a distinction made by the claims. As such, summary judgment of non-infringement would be appropriate even in the absence of Dr. Ligler's admission.[14]

## VI. AMPEX CANNOT PROVE INFRINGEMENT UNDER THE DEFENDANTS' CONSTRUCTION OF THE "EXTERNAL SOURCE" LIMITATION AS A MATTER OF LAW.

### A. Ampex Cannot Prove Literal Infringement.

In a new, single-sentence argument, Ampex contends that the accused Kodak cameras literally satisfy the "external source" limitation under the Defendants' proposed construction

**REDACTED**

**REDACTED**

---

[14]  Ampex does not contest that the "all elements" rule and the doctrine of prosecution history estoppel bar it from asserting any equivalents with respect to the "input port/output port" limitations. (*See* D.I. 304 at 37-38.)

**REDACTED**                                        Notwithstanding

Ampex's claim to the contrary, however, that argument is *not* based on the Defendants'

proposed construction – which, as applied here, requires the source of "video data" to be

located outside of the housing of the cameras. Ampex has no proof of literal infringement

under that construction, and does not argue that it does

**REDACTED**                            Therefore, summary

judgment of no literal infringement of claim 12 is warranted.[16]

**B.    The "All Elements" Rule Precludes Ampex from Asserting Equivalents
       with Respect to the "External Source" Limitation.**

As explained in the Defendants' opening brief, the "all elements" rule prohibits

Ampex from arguing that a source of video data located *inside* the housing of the accused

Kodak cameras (i.e., the CCD) is equivalent to a source located *outside* the camera housing –

to do so would vitiate the requirement of an "*external* source." In response, Ampex contends

that it should be permitted to argue equivalents because the CCD is a component "different

than the other claimed components of the system." (Opp'n at 39.) This argument fails as a

matter of law. Casting *every* component that is "different" from the other "claimed

components of the system" (even components located on the same chip or board) as

"external" effectively would eviscerate the requirement that a source be "external."

**REDACTED**

---

[16]    Ampex feigns surprise that the Defendants read their construction to require the "external
source" to be "outside 'the camera.'" (Opp'n at 38.) Given Ampex's allegation that "[t]he
Kodak digital *cameras* are *electronic still stores*" (Opp'n at 20), it makes perfect sense under the
Defendants construction ("a source located outside of and at a separate physical location from the
physical location of the other components of the *video still store system*") that the external source
must be outside the camera (i.e., the alleged "video still store system").

### C. Prosecution History Estoppel Precludes Ampex from Asserting Equivalents with Respect to the "External Source" Limitation.

During prosecution, Ampex amended the "external source" limitation of claim 12 in response to a § 112 rejection. (*See* '121 file history, at A101 (rejecting application claim 28 as indefinite); *id.* at A119-20 (amending application claim 28).) This amendment narrowed the claim by requiring the data in the image store to be supplied by an "external source" (whereas, before amendment, the data in the image store could have been supplied by either an internal source or an external source). Therefore, the *Festo* presumption of prosecution history estoppel applies.

As a matter of law, Ampex cannot rebut that presumption. First, there is no basis for Ampex's assertion that its supposed equivalent **REDACTED** was after-developed technology. (Opp'n at 39.)

**REDACTED**

Nor can Ampex argue that the rationale underlying the "external source" amendment was only "tangential" to the alleged equivalent. (Opp'n at 39.) Claim 12 was amended to identify the source of data in the image store, and to require that the data in the image store be supplied by a source *external* to the rest of the still store. Moreover, the alleged equivalent of the "external source," according to Ampex, is a component located *inside* the housing of the accused digital cameras. Thus, the reason for the "external source" amendment and the alleged equivalent *both* relate to the physical location of the source of image data in relation to the other components of the system. Clearly, the relationship

-19-

between the amendment and the alleged equivalent is more than tangential. *See Talbert*, 347

F.3d at 1360.[17]

## VII.    CONCLUSION

For the reasons set forth above and in their opening brief, the Defendants respectfully

request that the Court grant their motion for summary judgment of non-infringement with

respect to each asserted claim of the '121 patent.

CONNOLLY BOVE LODGE & HUTZ LLP

*/s/ Collins J. Seitz, Jr.*

OF COUNSEL:
William F. Lee
Donald R. Steinberg
Michael J. Summersgill
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

Collins J. Seitz, Jr. (Bar No. 2237)
Jaclyn Mason (Bar No. 4737)
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

*Attorneys for Defendants*

S. Calvin Walden
Rebecca McCloskey
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800

Dated: June 20, 2006

---

[17]    To the extent that the reason for the "external source" amendment is not clear from the
prosecution history, Ampex cannot claim that the rationale underlying the amendment was only
"tangential" to the alleged equivalent. *See Biagro Western Sales, Inc. v. Grow More, Inc.*, 423
F.3d 1296, 1306 (Fed. Cir. 2005).

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2006, I electronically filed the Defendants' Reply Brief in Support of Their Motion for Summary Judgment of Non-Infringement with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

and that I caused copies to be served upon the following in the manner indicated:

### VIA E-MAIL

Jesse J. Jenner, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

### VIA E-MAIL & FEDERAL EXPRESS

Norman H. Beamer, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301

### VIA E-MAIL & HAND DELIVERY

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

_/s/ Collins J. Seitz, Jr._
Collins J. Seitz, Jr. (Bar No. 2237)
Connolly Bove Lodge & Hutz LLP
P.O. Box 2207
1007 North Orange Street
Wilmington, DE 19899

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 27, 2006, I electronically filed the Defendants' Redacted Reply Brief in Further Support of Their Motion for Summary Judgment of Non-Infringement with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

and that I caused copies to be served upon the following in the manner indicated:

<u>**VIA E-MAIL**</u>

Jesse J. Jenner, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

<u>**VIA E-MAIL & FEDERAL EXPRESS**</u>

Norman H. Beamer, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301

<u>**VIA E-MAIL & HAND DELIVERY**</u>

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

_/s/ Collins J. Seitz, Jr._
Collins J. Seitz, Jr. (Bar No. 2237)
Connolly Bove Lodge & Hutz LLP
P.O. Box 2207
1007 North Orange Street
Wilmington, DE 19899