IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPEX CORPORATION, | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 04-1373-KAJ |
| EASTMAN KODAK COMPANY, ALTEK CORPORATION and CHINON INDUSTRIES, INC., | ) **REDACTED** |
| Defendants. | ) |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT OF INEQUITABLE CONDUCT**

**OF COUNSEL:**

William F. Lee
Michael J. Summersgill
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6000
Fax: (617) 526-5000

S. Calvin Walden
WILMER CUTLER PICKERING
 HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
Tel: (212) 230-8800
Fax: (212) 230-8888

Redacted Filing Date: June 27, 2006
Original Filing Date:  June 20, 2006

Collins J. Seitz, Jr. (#2237)
Jaclyn M. Mason (#4737)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com

*Attorneys for Defendants Eastman Kodak
Company and Altek Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, ALTEK CORPORATION and CHINON INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | **REDACTED** |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INEQUITABLE CONDUCT**

Collins J. Seitz, Jr. (#2237)
Jaclyn M. Mason (#4737)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com
*Attorneys for Defendants Eastman Kodak Company and Altek Corporation*

*Of Counsel:*
William F. Lee
Donald R. Steinberg
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800

Date: June 20, 2006

## TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................................1

ARGUMENT...................................................................................................................................2

    A.    AVA Indisputably Disclosed The Direct Transfer Feature Of The '121 Patent. ....2

    B.    Ampex's Representations To The Patent Office Made The Direct Transfer Capability Of The AVA System Highly Material..................................................4

    C.    The AVA System Was Not Cumulative Of The Art Before The Examiner. ..........7

    D.    Individuals Involved In The Prosecution Of The '121 Patent Indisputably Were Aware Of The AVA System And The Direct Transfer Feature. ...................9

    E.    Ampex Intended To Deceive The Patent Office. ..................................................12

CONCLUSION..............................................................................................................................14

# TABLE OF AUTHORITIES

Federal Cases

Am. Standard, Inc. v. Pfizer, Inc.
  722 F. Supp. 86 (D. Del. 1989) .................................................................................... 6

Brasseler U.S.A. I, L.P. v. Stryker Sales Corp.
  267 F.3d 1370 (Fed. Cir. 2001) ............................................................................. 11, 12

eSpeed, Inc. v. Brokertec USA, L.L.C.
  417 F. Supp. 2d 580 (D. Del. 2006) ...................................................................... 6, 13

FMC Corp. v. Manitowoc Co.
  835 F.2d 1411 (Fed. Cir. 1987) ................................................................................. 11

Georgia-Pacific Corp. v. U.S. Gypsum Co.
  195 F.3d 1322 (Fed. Cir. 1999) ................................................................................... 6

ISCO Int'l, Inc. v. Conductus, Inc.
  279 F. Supp. 2d 489 (D. Del. 2003) ............................................................................ 9

LaBounty Mfg, Inc. v. U.S. Int'l Trade Comm'n
  958 F.2d 1066 (Fed. Cir. 1992) ............................................................................. 7, 13

LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.
  275 F.3d 1347 (Fed. Cir. 2001) ................................................................................... 9

Mobil Oil Corp. v. Advanced Envtl. Recycling Techs, Inc.
  869 F. Supp. 251 (D. Del. 1994) ........................................................................ 6, 7, 11

Novo Nordisk Pharms, Inc. v. Bio-Tech Gen. Corp.
  424 F.3d 1347 (Fed. Cir. 2001) ........................................................................... 11, 12

Reading & Bates Constr. Co. v. Baker Energy Resources Corp.
  748 F.2d 645 (Fed. Cir. 1984) ..................................................................................... 6

Eastman Kodak Company and Altek Corporation ("Defendants") respectfully submit this Reply in further support of their Motion for Summary Judgment of Inequitable Conduct (D.I. 291).

## INTRODUCTION

Notwithstanding Ampex's opposition, the following five facts remain undisputed and compel a finding of inequitable conduct:

- *Ampex's own AVA system has the direct transfer feature of the '121 patent.* Ampex's own expert concedes this. (Cavallerano Dep., at A-217.) Ampex's own documents -- which state that the AVA direct transfer is without intervention from the CPU -- confirm it. (*See* Junaid Sheikh, "Ampex AVA Video Art System," at A-50-51; H.K. Regnier & Lawrence J. Evans, "Practical Computer Graphics for Television," at A-46.)[1]

- *Ampex represented to the Patent Office that the '121 invention was patentably distinct because it included the direct transfer feature.* During prosecution, Ampex represented to the Patent Office that direct transfer was a supposedly novel feature that made its claimed invention patentable over the prior art '776 patent. Ampex itself emphasized the materiality of the direct transfer feature. (*See* '121 File History, at A-140.)

- *Ampex argues even today that the prior art before the Patent Office did not teach direct transfer.* (*See* D.I. 372, at 27 (asserting that "the prior art" does not teach direct transfer).) According to Ampex, therefore, AVA was not cumulative.

- *Those involved in the prosecution of the '121 patent were aware of AVA and the direct transfer feature.* The sole inventor concedes that direct transfer was well known. The Ampex attorneys who prosecuted the '121 patent are the *very same* attorneys who prosecuted Ampex's '915 patent -- directed to AVA -- which disclosed direct transfer. (*See* Beaulier Dep., at A-210-11; '915 Patent, at A-1; '915 File History, at A-39-40; Ampex Resp. to ITC Interrog. No. 15, at A-154-55.)

- *Ampex did not disclose the AVA system to the Patent Office.* Despite their undisputed knowledge of the AVA system, and their representations to the Patent

---

[1] Citations to "A-__" refer to the Appendix to Defendants' Opening Brief in Support of Their Motion for Summary Judgment of Inequitable Conduct (D.I. 296). Citations to "C-__" refer to the Appendix to Defendants' Reply Brief in Further Support of Their Motion for Summary Judgment of Inequitable Conduct.

Office regarding the importance of the direct transfer feature, those involved in the prosecution of the '121 patent failed to disclose AVA to the Patent Office.[2]

## ARGUMENT

**A.   AVA Indisputably Disclosed The Direct Transfer Feature Of The '121 Patent.**

Ampex asserts in its Opposition that the AVA system does not teach "direct transfer" as that term is used in the '121 patent. (*See* D.I. 372, at 27.) Ampex's own expert and documents, however, demonstrate otherwise.

Asserted claims 7, 8, and 10 require the "direct transfer" of images from disk to random access memory. (*See* '121 Patent, claim 7, at A-69 ("*bulk memory means . . . for outputting upon a user's command, either a selected one of the successive full size images or selected ones of the corresponding reduced size versions thereof for direct transfer to*, and storage back in, said *random access memory means*" (emphasis added)); *id.*, 7:16-20, at A-70 (claim 8); *id.*, 7:50-52, at A-70 (claim 10).)[3]

Ampex's own expert conceded that AVA had this capability:

---

[2] Ampex's assertion that Defendants' allegations of inequitable conduct are "new" and "do not appear in Defendants' pleadings" (*see* D.I. 372, at 1) is a brazen misrepresentation of the record. From the very beginning of this litigation -- and, in fact, throughout the ITC proceeding -- Defendants have alleged inequitable conduct for the *same reasons* asserted in this Motion. Specifically, and by way of example, in Defendants' Answer to Ampex's complaint, *served more than eight months ago on September 22, 2005*, Defendants alleged inequitable conduct due to Ampex's failure to disclose the direct transfer feature of its own AVA system:

> During prosecution of the applications that issued as the '121 Patent, Ampex argued that the Taylor '776 patent did not disclose direct transfer of images between disk and random access memory. *However, Ampex's own AVA system had the capability to directly transfer images between disk and random access memory...*

(D.I. 42, at 14 (emphasis added); *see also* Taylor Expert Rep., Mar. 24, 2006, D.I. 233, ¶¶ 185-90; Taylor ITC Direct Testimony, July 15, 2005, at C-46-7 (highlighting the article by Junaid Sheikh, titled "Ampex AVA Video Art System," which describes AVA's ability to perform "'*direct data transfers between frame store and computer disk drive without any intervention from the CPU*'" (emphasis added)).)

[3] Ampex's prosecuting attorney represented to the Patent Office that a "direct transfer" meant "with no circuit therebetween." (*See* '121 File History, at A-139-40.) Ampex now claims this was an "obviously erroneous statement." (*See* D.I. 366, at 5.)

2

> Q. And is it your understanding that the AVA system was capable of transferring image data *directly from disk to the frame store*,[4] as Mr. Sheikh describes here?
> A. Yes, that's correct.

(Cavallerano Dep., at A-217 (emphasis added).)

Ampex's own documents confirm that AVA could transfer images directly from disk to random access memory. In fact, Ampex's documents confirm that this "direct transfer" feature provided the very same benefit in AVA that Ampex now claims it provides in the '121 system -- *fast picture recall*:

> Unique features…include: …*Direct data transfers between frame store and computer disk drive without any intervention from the CPU*. This feature facilitates *fast picture storage and recall*.

(Junaid Sheikh, "Ampex AVA Video Art System," <u>Video</u>, Jan. 1981, at A-50-51 (emphases added); *see also* H.K. Regnier & Lawrence J. Evans, "Practical Computer Graphics for Television," <u>Ampex Horizons</u>, 1980, at A-46 (describing AVA's ability to perform "direct disk to frame store data transfer without computer intervention").)

Even the inventor, Dan Beaulier, acknowledged that it was well known at the time the patent was filed to include a direct transfer feature in electronic still stores. (Beaulier Dep., at A-211 ("Q: As of the time you decided to include a direct transfer from disk to frame store in the [system described in the '121 patent], *was a direct transfer from disk to frame store well known in the art? A. Yes.*" (emphasis added)).)

**REDACTED**

Ampex attempts to rebut this evidence by asserting that the direct transfers referred to in the claims involve both full and reduced size images and AVA "cannot even store

---

[4] It is undisputed that the AVA frame store was random access memory.

**REDACTED**

3

reduced-size images in its disk store." (*See* D.I. 372, at 18-19.)

[5]

**REDACTED**

Ampex also asserts that AVA is not pertinent because it does not have a browse feature. This is beside the point. AVA is material because, as Ampex admits, it "had electronic still store capability" (D.I. 372, at 11) *including* the direct transfer feature. In any event, it is undisputed that AVA could output a full size image, a reduced size image, or multiple reduced size images.

**REDACTED**

This is all that is required by the claims. (*See* '121 Patent, claim 7, at A-69 (requiring direct transfer of either full or multiple reduced size images); *id.*, claim 8, at A-70 (requiring direct transfer of video pixel data for either a full or a reduced size image); *id.*, claim 10 (requiring direct transfer of video data).)

**B.    Ampex's Representations To The Patent Office Made The Direct Transfer Capability Of The AVA System Highly Material.**

Ampex argues that its representations to the Patent Office regarding the "direct transfer" feature of its claimed invention cannot constitute a misrepresentation because its

---

[5] Ampex's claim that the documents describing AVA's direct transfer feature refer only to full size images (*see* D.I. 372, at 19) is contradicted by the documents themselves. The articles expressly describe AVA's ability to generate reduced size images through the cut and paste function, to store "hundreds" of images to disk, and to recall any image stored on disk to random access memory. (*See, e.g.*, Junaid Sheikh, "Ampex AVA Video Art System," at A-50-51.) When describing direct transfer from disk to random access memory, the documents deliberately refer to the direct transfer of image data in general, and do not specify full or reduced size images. (*See, e.g., id.*)

4

comments were directed to a particular reference, and not the prior art as a whole. Ampex argues a distinction without a difference.[6]

Ampex represented to the Patent Office that its claimed invention was patentably distinct over the electronic still store system of the '776 patent because, among other features, it had the ability to make direct transfers from disk to random access memory. (*See* '121 File History, at A-140 ("Taylor et al *fails to teach ... the direct transfer of images between the disc storage and random access memory....*" (emphasis added)).) In other words, Ampex argued (and still argues today) that the ability to transfer images directly from disk to random access memory was one of the purportedly unique features of its invention.

**REDACTED**

[7] This feature was important, according to Ampex, because it facilitated rapid picture recall. (*See* '121 Patent, 2:32-51, at A-67 (describing the rapid recall of images from disk); D.I. 372, at 6 (alleged invention allows "rapid image review").)

Ampex now asserts that this representation to the Patent Office "has nothing to do" with the prior art as a whole. (*See* D.I. 372, at 17.) But by arguing that the direct transfer feature made its claimed invention patentably distinct over the electronic still store of the '776 patent, Ampex was necessarily representing that direct transfer was a novel feature in the electronic still store field (or that it had somehow employed this feature in a novel fashion). Otherwise, the addition of this feature could not have made the claimed invention patentably distinct over the '776 still store. Put differently, an applicant cannot distinguish a

---

[6] Ampex accuses Defendants of misquoting the prosecution history. (*See* D.I. 372, at 16.) Ampex's charges are without merit. As an initial matter, the words "the prior art" were in brackets in Defendants' quote making clear to the reader that Defendants were paraphrasing rather than identifying the specific prior art reference. Moreover, Defendants' brief explicitly stated that Ampex made its representations in the context of attempting to overcome the Examiner's rejection that the claims were anticipated by the '776 patent. (*See* D.I. 293, at 4.)

[7] "Christiansen Ex. __" refers to the Declaration of Karen Christiansen (D.I. 373), submitted by Ampex in support of its Opposition to Defendants' Motion.

5

claimed invention over a prior art reference with a feature that is well known and obvious to those practicing in the relevant field. *See Reading & Bates Constr. Co. v. Baker Energy Resources Corp.*, 748 F.2d 645, 653 (Fed. Cir. 1984) (where feature of invention is "well known in the art," patentee cannot rely on the feature to distinguish cited prior art); *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1327 (Fed. Cir. 1999) (where difference between patent at issue and prior art reference is well known, difference "does not serve to distinguish" the patent from prior art).[8]

Ampex's assertions regarding the supposedly unique and important nature of the direct transfer feature thus made the AVA system and its direct transfer capabilities highly material. This can be seen most clearly by analogy. Consider an applicant who claims as its invention a car. Were the applicant to argue that its car is patentably distinct over a disclosed prior art car because its car has wide as opposed to narrow wheels, the fact that wide-wheeled cars are well known, and that the applicant itself had built and sold such a car, would indisputably be material to the Examiner. So it is here. Particularly in light of Ampex's arguments to the Patent Office, the fact that it was well known to include the direct transfer feature in electronic still stores -- and that Ampex's own AVA system included such a feature -- would have been highly material to the Examiner. *See Am. Standard, Inc. v. Pfizer, Inc.*, 722 F. Supp. 86, 142 (D. Del. 1989) ("***Nothing could be more material***" than prior art that discloses "one of the important teachings which was missing from the prior art references considered by the Patent Office." (emphasis added)); *Mobil Oil Corp. v. Advanced Envtl. Recycling Techs., Inc.*, 869 F. Supp. 251, 255-56 (D. Del. 1994) (holding that where "one of the bases upon which [the applicant] argued to the Patent Examiner that its process was patentable" over a particular reference is the use of wood fibers, prior art that discloses use of

---

[8] *See also eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 593 (D. Del. 2006) (applicant's arguments to distinguish the prior art are made in the context of overcoming *a particular reference* before the Examiner).

6

wood fibers is material); *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1076 (Fed. Cir. 1992) (applicant's own undisclosed prior art system is material because if it had been disclosed, "the conclusion is inescapable that the prosecution would not have focused merely on the [reference before the Examiner], which did not have the critical...feature").[9]

### C. The AVA System Was Not Cumulative Of The Art Before The Examiner.

Ampex next argues that AVA's "direct transfer" ability is at best cumulative of the references that were before the examiner. (D.I. 372, at 18.) However, Ampex itself argues that the prior art before the examiner ***does not teach*** "direct transfer." (*Id.* at 27 ("Does the prior art teach 'direct transfer' as it [is] used in the prosecution history? (No.)").) It follows that an undisclosed prior art reference that does include "direct transfer" -- such as AVA -- is not cumulative.

#### 1. AVA Is Not Cumulative Of The '776 Patent.

Ampex argues that if AVA includes "direct transfer" -- which its expert admits it does (Cavallerano Dep., at A-217) -- then so too must the '776 patent. (*See* D.I. 372, at 18-19.) Not only does this argument contradict what Ampex argues elsewhere in its answering brief (*see id.* at 7, 27 (stating that the '776 patent does not teach "direct transfer")), but it is exactly the opposite of what Ampex told the Patent Office. During prosecution, Ampex specifically distinguished the invention claimed in the '121 patent on the basis that, among other things, "[the '776 patent] ***fails to teach*** ... the direct transfer of images between the disc storage and the random access memory." ('121 file history, at A-140 (emphasis added).) Ampex should not now be permitted to avoid inequitable conduct by representing to this Court the ***exact opposite*** of what it represented to the Patent Office. *See Mobil Oil*, 869 F.

---

[9] Ampex asserts that the "novelty of the Beaulier invention over...all of the cited art, was never at issue." (D.I. 372, at 9.) Ampex disregards the fact that the claims were rejected multiple times as both obvious and anticipated over the limited art that was before the Examiner.

7

Supp. at 255-56 (finding an undisclosed reference to be material and non-cumulative because it disclosed a feature that was one of the bases upon which the patentee argued to the Patent Office that its process was patentable over a cited reference).

Moreover, based on the evidence, there can be no issue of fact that AVA and the '776 patent do not transfer images between disk and random access memory in the same way. Ampex itself asserts that the '776 patent includes a size reducer interposed between disk and random access memory such that images cannot pass between disk and random access memory without passing through the size reducer. (*See* D.I. 372, at 7.) In contrast, the uncontroverted evidence describing AVA makes clear that AVA was capable of "[d]irect data transfers between frame store [random access memory] and computer disk drive [disk] ***without any intervention from the CPU*** [which includes the size reducer]." (Junaid Sheikh, "Ampex AVA Video Art System," at A-50-51 (emphasis added); D.I. 372, at 11-12 (AVA's CPU acts as a size reducer); *see also* D.I. 293, at 6-8.) Simply put, the record does not support Ampex's assertion that "AVA does not disclose anything not already disclosed in the '776 patent" (D.I. 372, at 18).

### 2. AVA Is Not Cumulative Of EP 0051305.

Ampex also asserts -- for the first time and without *any* support -- that European Patent 0051305, which was before the examiner, teaches "direct transfer." (D.I. 372, at 20.) This, too, contradicts what Ampex says elsewhere in its brief. (*See id.* at 27, question 6 (stating that the prior art does not teach "direct transfer").) It also contradicts what Ampex told the Patent Office: in response to the Examiner's identification of EP 0051305 in a "Notice of References Cited,"[10] Ampex stated that EP 0051305 "does not appear to be

---

[10] Ampex states, incorrectly, that Ampex disclosed EP 0051305 to the Patent Office. However, it was the Examiner who located and identified EP 0051305 during prosecution of the '121 patent. (*See* '121 file history, at C-25-6.)

pertinent to the claims." ('121 File History, at C-38.) In any event, it is undisputed that EP 0051305 says nothing about the data path between disk and random access memory.

### 3. Ampex's Inconsistent Positions Cannot Make AVA Cumulative.

Ampex attempts to create apparent issues of fact regarding the materiality of AVA by taking inconsistent positions. But under either scenario, AVA is not cumulative of the art that was before the Examiner:

- If, as Ampex argued to the Patent Office, the cited prior art -- including the '776 patent -- does not disclose "direct transfer," then AVA is not cumulative because it indisputably does disclose "direct transfer."

- If, however, the '776 patent does disclose "direct transfer," then Ampex misrepresented the '776 patent to the Patent Office and AVA's disclosure of "direct transfer" is not cumulative because Ampex would not have been able to make the same arguments to the Patent Office had AVA been presented to the Examiner.

Either way, Ampex should have disclosed AVA to the Patent Office so that the Examiner could consider its importance to his determination of the patentability of the '121 patent application. *See LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1361 (Fed. Cir. 2001) ("[W]hen a question of materiality is close, a patent applicant should err on the side of disclosure."); *ISCO Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 500 (D. Del. 2003) (same).

### D. Individuals Involved In The Prosecution Of The '121 Patent Indisputably Were Aware Of The AVA System And The Direct Transfer Feature.

It is undisputed that the individuals involved in the prosecution of the application leading to the '121 patent were aware of Ampex's AVA system and the direct transfer feature:

- The inventor admitted that direct transfers were well known in the prior art and a "fundamental" capability of still stores. (*See* Beaulier Dep., at A-210-11; D.I. 372, at 11 (AVA has electronic still store capability).)

9

- The inventor worked on the AVA system before working on the system described in the '121 patent. (*See* D.I. 372, at 20-21 (acknowledging that Mr. Beaulier worked on AVA).)

- Gregory Roth, the patent attorney who drafted the '121 patent, was aware of the AVA system and had previously drafted Ampex's '915 patent, which is directed to the AVA system and discloses direct transfer. (*See* D.I. 372, at 23 ("Ampex agrees that Mr. Roth was aware of the AVA system, and that he drafted the application leading to the '915 patent");

**REDACTED**

- Each of the attorneys listed on the '915 patent was also involved in the prosecution of the '121 patent. (*See* '915 Patent, at A-1; '915 File History, at A-39-40; Ampex Resp. to ITC Interrog. No. 15, at A-154-55.)

- Joel Talcott, Ampex's patent counsel and general counsel, was aware of the AVA system before the '121 patent was filed. (*See* Talcott ITC Dep. I., at A-164; D.I. 372, at 25 ("Ampex does not dispute that Mr. Talcott was generally aware of AVA.").)

- George Almeida, an Ampex patent agent who prosecuted the '121 patent, was responsible for the engineering division that developed the AVA system. (*See* D.I. 372, at 24.)

Ampex nevertheless contends that Defendants have not proven the requisite knowledge for a finding of inequitable conduct. Specifically, Ampex argues that: (1) the inventor could not have known that the direct transfer feature was material because he was no longer involved in the prosecution when the representation regarding the novelty of direct transfers was made to the Patent Office; and (2) the prosecuting attorneys, though they made the representation, did not know that direct transfer was a well known feature of still stores, including in Ampex's own AVA system. (*See* D.I. 372, at 20.) Ampex's argument is wrong both as a matter of undisputed fact and as a matter of law.

As an initial matter, Ampex's argument that the attorneys who prosecuted the '121 patent were unaware that the direct transfer feature was a well-known feature of electronic still stores is inconsistent with the undisputed fact that the same attorneys were involved in the prosecution of the '915 patent -- the Ampex patent directed to the AVA system that

10

disclosed direct transfer. (*See* '915 Patent, at A-1; '915 File History, at A-39-40; Ampex Resp. to ITC Interrog. No. 15, at A-154-55.) Ampex's argument that the inventor was no longer involved in the prosecution when direct transfer became an issue is similarly contradicted by the undisputed fact that the direct transfer feature is referenced in the abstract, which was part of the initial application for the '121 patent. (*See* '121 File History, at C-19.)

Moreover, the law specifically rejects Ampex's suggestion that an applicant can avoid inequitable conduct by segregating knowledge amongst those prosecuting a patent. *See Mobil Oil*, 869 F. Supp. at 254 ("*Any knowledge or action taken by the attorney is considered chargeable to the applicant.*" (emphasis added)).[11] More specifically, where some individuals involved in prosecution are aware of undisclosed information, and others involved in the prosecution make representations to the Patent Office that render the undisclosed information material, *the "applicant" is properly charged with knowledge of the undisclosed information and its materiality. See Novo Nordisk Pharms., Inc. v. Bio-Tech. Gen. Corp.*, 424 F.3d 1347, 1361-62 (Fed. Cir. 2001) (finding inequitable conduct where individuals involved in prosecution collectively knew of undisclosed information and its materiality); *Brasseler U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1379-80 (Fed. Cir. 2001) (finding inequitable conduct based on applicant's collective knowledge of material information and failure to disclose the same). Indeed, were it otherwise, the incentive for inventors would be to withhold all knowledge regarding prior art systems from their prosecuting attorneys.

The patentee in *Brasseler* argued, just as Ampex does here, that it could not have committed inequitable conduct because the individuals who were aware of the undisclosed

---

[11] *See FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 n.8 (Fed. Cir. 1987) ("applicant" "includes the patentee and the attorney who prosecuted the application that resulted in the patent-in-suit").

11

information purportedly did not know it was material, and the attorneys who communicated with the Patent Office were not aware of the undisclosed information. *See Brasseler*, 267 F.3d at 1379-80. The Federal Circuit specifically and unequivocally rejected this argument:

> Thus, Brasseler asks this court to find, on one hand, that the inventors' failure to disclose the sale to its representatives absolves the inventors of their duty to disclose the sale to the PTO because they could not have known -- absent their attorneys' assistance -- that the sale was material. On the other hand, Brasseler maintains that its counsels' failure to investigate the facts surrounding the potential bar is excused on the basis that the inventors failed to fully inform them of the details of the sale. *We refuse to pursue the circular logic of Brasseler's request and decline to carve out an exception to the inequitable conduct law to shield those guilty of inequitable conduct from responsibility for their actions.*

*Id.* at 1380 (emphasis added).

Similarly, in *Novo Nordisk*, the patentee argued that it did not commit inequitable conduct because the inventor did not know that the undisclosed information was material and the prosecuting attorneys were unaware of the relevant information. *See Novo Nordisk*, 424 F.3d at 1361. The Federal Circuit again squarely rejected the patentee's attempt to segregate the knowledge and actions of the various individuals involved in the prosecution:

> Thus, Novo asks us to hold, on the one hand, that the failure of [the inventor] and his co-inventors to disclose the truth about Example 1 to Novo's attorneys absolves them of their duty to disclose this information to the PTO...because without their attorney's consultations, they could not have known that this information was material. At the same time, Novo asks us to hold that its counsel's failure to disclose the truth about Example 1 to the PTO...is excused because the inventors failed to fully inform them of the details surrounding Example 1. *As we have done in similar situations in the past, we reject the 'circular logic' of this request.*

*Id.* at 1361-62 (emphasis added).

### E. Ampex Intended To Deceive The Patent Office.

Finally, Ampex argues that Defendants have not shown intent to deceive because the materiality of undisclosed prior art, by itself, does not indicate intent. (*See* D.I. 372, at 25.) Ampex's misconduct, however, extends far beyond the simple failure to disclose a material

12

prior art system. Ampex affirmatively represented to the Patent Office that its claimed invention was patentably distinct from the prior art because it included the purportedly novel direct transfer feature. At the time it made this representation, those involved in the prosecution were well aware that *direct transfer was a well known and fundamental feature of the prior art* (*see* Beaulier Dep., at A-208-11) and that even Ampex's own system -- the AVA system -- included this same direct transfer feature. (*See* Junaid Sheikh, "Ampex AVA Video Art System," at A-50-51.) Courts have repeatedly inferred intent based on similar circumstances. *See eSpeed*, 417 F. Supp. 2d at 594-95 (inferring intent to deceive where applicant fails to disclose its own prior art system that includes a feature the applicant represented was missing from the disclosed prior art); *LaBounty*, 958 F.2d at 1076 (applicant acted "with culpable intent to mislead or deceive the PTO by withholding its own known prior art devices and by making an argument for patentability which could not have been made had the art been disclosed").

In *eSpeed,* this Court inferred intent to deceive where the applicant failed to disclose its own prior art system that included the same feature the applicant argued was missing from the prior art before the Examiner. *See eSpeed*, 417 F. Supp. 2d at 594 ("It strains credulity to the snapping point to claim that [the applicant's own prior art system] simply slipped the applicants' minds."). The same rationale applies here. Ampex's representations to the Patent Office -- coupled with its failure to disclose that its own AVA system included the very feature it argued was missing from the prior art -- merit an inference of intent and a finding of inequitable conduct.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment of Inequitable Conduct and declare the '121 patent unenforceable.

                                CONNOLLY BOVE LODGE & HUTZ LLP

                                */s/ Collins J. Seitz, Jr.*
                                Collins J. Seitz, Jr. (#2237)
                                Jaclyn M. Mason (#4737)
                                1007 North Orange Street
                                P.O. Box 2207
                                Wilmington, DE 19899
                                (302) 658-9141
                                cseitz@cblh.com
                                ***Attorneys for Defendants Eastman Kodak Company and Altek Corporation***

*Of Counsel:*
William F. Lee
Donald R. Steinberg
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800

Date:  June 20, 2006

14

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2006, I electronically filed the Defendants' Reply Brief in Further Support of Their Motion for Summary Judgment of Inequitable Conduct with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

and that I caused copies to be served upon the following in the manner indicated:

**VIA E-MAIL**

Jesse J. Jenner, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

**VIA E-MAIL & FEDERAL EXPRESS**

Norman H. Beamer, Esquire
Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 94301

**VIA E-MAIL & HAND DELIVERY**

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

                                                          /s/ *Collins J. Seitz, Jr.*
                                             Collins J. Seitz, Jr. (Bar No. 2237)
                                             Connolly Bove Lodge & Hutz LLP
                                             P.O. Box 2207
                                             1007 North Orange Street
                                             Wilmington, DE 19899

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 27, 2006, I electronically filed the Defendants' Redacted Reply Brief in Further Support of Their Motion for Summary Judgment of Inequitable Conduct with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

      and that I caused copies to be served upon the following in the manner indicated:

| **VIA E-MAIL** | **VIA E-MAIL & FEDERAL EXPRESS** |
| --- | --- |
| Jesse J. Jenner, Esquire<br>Ropes & Gray LLP<br>1251 Avenue of the Americas<br>New York, NY 10020 | Norman H. Beamer, Esquire<br>Ropes & Gray LLP<br>525 University Avenue<br>Palo Alto, CA 94301 |

**VIA E-MAIL & HAND DELIVERY**

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

                                            */s/ Collins J. Seitz, Jr.*
                                      Collins J. Seitz, Jr. (Bar No. 2237)
                                      Connolly Bove Lodge & Hutz LLP
                                      P.O. Box 2207
                                      1007 North Orange Street
                                      Wilmington, DE 19899