**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | **REDACTED –** |
| ALTEK CORPORATION and CHINON | ) | **PUBLIC VERSION** |
| INDUSTRIES, INC.,  | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PROPOSED FINAL PRETRIAL ORDER

VOLUME 1

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | CONNOLLY, BOVE, LODGE & HUTZ LLP |
| Jack B. Blumenfeld (#1014) | Collins J. Seitz, Jr. |
| Julia Heaney (#3052) | 1007 North Orange Street |
| 1201 N. Market Street | P.O. Box 2207 |
| P.O. Box 1347 | Wilmington, DE  19899 |
| Wilmington, DE  19899 | (302) 658-9141 |
| (302) 658-9200 | *Attorneys for Defendants* |
| *Attorneys for Plaintiff* | |

Original Filing Date:  October 13, 2006
Redacted Filing Date:  October 23, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | C.A. No. 04-1373 (KAJ) |
| | ) | |
| v. | ) | |
| | ) | **NON CONFIDENTIAL VERSION** |
| EASTMAN KODAK COMPANY, | ) | |
| ALTEK CORPORATION, and | ) | |
| CHINON INDUSTRIES, INC., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

### PROPOSED FINAL PRETRIAL ORDER

This matter comes before the Court at a final pretrial conference held pursuant to

Rule 16, Federal Rules of Civil Procedure. The parties reserve the right to seek leave to

supplement this Order as appropriate in response to this Court's determination of pending

claim construction issues and summary judgment motions.

**Plaintiff's Counsel:** Ampex Corporation ("Ampex") is represented by:

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

Ropes & Gray LLP
525 University Avenue
Palo Alto, CA 943401

Ropes & Gray LLP
700 12th Street, NW, Suite 900

Washington, DC 20005

**Defendants' Counsel:** Eastman Kodak Company ("Kodak"), Altek Corporation

("Altek") and Chinon Industries, Inc. ("Chinon") are represented by:

Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Wilmer, Cutler, Pickering, Hale & Dorr LLP
60 State Street
Boston, MA 02109

Wilmer, Cutler, Pickering, Hale & Dorr LLP
399 Park Avenue
New York, NY 10022

## I.    Nature Of The Case

Ampex brought this action against Defendants, asserting that Kodak digital

cameras manufactured by Kodak, Altek and/or Chinon infringe claims 7-8 and 10-15 of

Ampex's United States Patent No. 4,821,121 ("the '121 patent"), entitled "Electronic

Still Store With High Speed Sorting And Method Of Operation." (Second Amended

Complaint, D.I. 38).

Defendants answered by denying infringement and raising as affirmative defenses

invalidity and unenforceability of the '121 patent and asserting that plaintiff's alleged

claims for relief are barred by the doctrine of laches. (Altek's Answer to Second

Amended Complaint, D.I. 41; Kodak and Chinon's Answer to Second Amended

Complaint, D.I. 42). Defendants also counterclaimed for declaratory judgment that the

'121 patent is invalid, unenforceable and is not infringed.

## II.    Jurisdiction

A.    Ampex's action is for patent infringement, asserting that Defendants have infringed claims 7-8 and 10-15 of the '121 patent, seeking reasonable royalty damages and interest, increased damages and attorney's fees based on allegations of willful infringement, and other relief pursuant to Title 35 of the United States Code.

B.    Defendants seek a declaratory judgment that the accused products do not infringe the asserted claims of the '121 patent, that the asserted claims are invalid, and that the '121 patent is unenforceable because the patent was procured by inequitable conduct. Defendants seek a finding that plaintiffs alleged claims for relief are barred by the doctrine of laches. Defendants request that the Court award defendants' attorneys' fees and costs under 35 U.S.C. § 285.

C.    The jurisdiction of the Court is not disputed. This Court has jurisdiction pursuant to 28 United States Code, §§ 1331 and 1338 and for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. Venue in this District is proper under 28 U.S.C. § 1391 and 1400(b).

## III.    Uncontroverted Facts

The Admitted Facts set forth in attached Exhibit 1 are not disputed or have been agreed to or stipulated to by the parties.

IV. **Issues Of Fact Remaining To Be Litigated And Statement Of Intended Proofs**

    A.    Ampex's Statement Of Issues Of Fact That Remain To Be Litigated and Statement Of Intended Proofs is attached as Exhibit 2.

    B.    Defendants' Statement Of Issues Of Fact That Remain To Be Litigated and Statement Of Intended Proofs is attached as Exhibit 3.

    C.    The parties agree that a party will not propound objections based on lack of specific detail in the attached statements, provided that such statements, as supplemented by previously served discovery responses, reports or briefs provide reasonable notice concerning the issue in question. The parties reserve all objections based on insufficient disclosure during discovery.

V. **Statement Of Issues Of Law**

    A.    **Ampex's Statement**

The following are the issues of law to be decided by the Court. Except as noted, Ampex has no objection to submitting unresolved issues of law to the jury for resolution, including issues of law based on underlying facts. Ampex understands that the parties agree that a more detailed discussion of the law governing the issues below, including legal citations, will be set forth in the proposed jury instructions that the parties will submit prior to the pre-trial conference. This statement is not intended to circumscribe a party's grounds for motion pursuant to Rule 50, F. R. Civ. P.

    1.    Whether the asserted claims of the '121 patent are invalid as obvious under 35 U.S.C. § 103.

    2.    Whether U.S. Patent No. 4,802,019 is entitled to its initial application's filing date of January 3, 1983.

3.    Whether, pursuant to 35 U.S.C § 102(b), the '121 claims require that a prior art device actually be used to practice, and actually operate as required by, the claimed invention. **(Not for the jury)**

4.    Whether, pursuant to 35 U.S.C § 102(b), there is sufficient corroboration to allow the alleged prior art to be admitted into evidence. **(Not for the jury)**

5.    Whether the asserted claims of the '121 patent are invalid for indefiniteness under 35 U.S.C. § 112. **(Not for the jury)**

6.    Whether Ampex is estopped from reliance on the doctrine of equivalents because of prosecution history estoppel. **(Not for the jury)**

7.    Whether Ampex is barred from pre-suit damages due to laches. **(Not for the jury)**

8.    Whether the '121 patent is rendered unenforceable due to inequitable conduct in its prosecution. **(See Plaintiff and Defendants' positions in Section IX, *infra*)**

9.    If infringement is found, the amount of pre- and post-judgment interest to which Ampex is entitled. **(Not for the jury)**

10.   If the fact issue of willfulness is found, whether Ampex is entitled to enhanced damages, and what amount, and whether this is an exceptional case. **(Not for the jury)**

11.   If inequitable conduct is found, whether this is an exceptional case. **(Not for the jury)**

12.   Whether costs and attorneys fees should be awarded to the prevailing party under 35 U.S.C. § 285. **(Not for the jury)**

**B.    Defendants' Statement**

Defendants submit the following issues of law and fact that remain to be litigated in this action. Defendants understand that the parties agree that a more detailed discussion of the law governing the issues below, including legal citations, will be set forth in the proposed jury instructions that the parties will submit prior to the pre-trial conference. This statement is not intended to circumscribe a party's grounds for motion pursuant to Federal Rule of Civil Procedure 50.

1.    Whether the asserted claims of the '121 patent are invalid as obvious under 35 U.S.C § 103.

2.     Whether the asserted claims of the '121 patent are invalid as anticipated under 35 U.S.C. § 102.

3.     Whether 35 U.S.C § 102(b) requires that a prior art device actually be used to practice the claimed method or only that the prior art device be capable of meeting the asserted claims.

4.     What evidence is necessary to corroborate testimony regarding the features and functions of a prior art device.

5.     Whether the '121 patent is rendered unenforceable due to inequitable conduct in its prosecution.

6.     If inequitable conduct is found, whether this is an exceptional case.

7.     Whether the asserted claims of the '121 patent are invalid for indefiniteness under 35 U.S.C. § 112.

8.     If Defendants are found to have infringed any of the asserted claims of the '121 patent, what is the appropriate date for the hypothetical negotiation used to calculate damages.

9.     If Defendants are found to have infringed any of the asserted claims of the '121 patent, whether Ampex is entitled to pre-judgment and/or post-judgment interest, and what amount.

10.    Whether Ampex's claims for relief are barred by the doctrine of laches.

11.    Whether an accused infringer's knowledge of the patent-at-issue is sufficient to establish willful infringement.

12.    Whether reasonable reliance on the exculpatory opinion of counsel defeats an allegation of willful infringement.

13.    If willfulness is found, whether Ampex is entitled to enhanced damages, and what amount.

14.    Whether Ampex has the burden to show a date of invention earlier than the filing date of the '121 patent and what evidence is necessary to establish an earlier priority date.

15.    Whether Ampex must demonstrate that each and every element of the asserted claims of the '121 patent were reduced to practice or conceived in order to establish a date of reduction to practice or conception.

16.    Whether Ampex can adequately corroborate oral testimony regarding the date of invention of the '121 patent.

17.    Whether Ampex can demonstrate diligence in reducing its invention to practice.

**VI.    Witnesses**

    **A.**    Ampex's list of witnesses is attached as Exhibit 4.

    **B.**    Defendants' list of witnesses is attached as Exhibit 5.

    **C.**    **Rebuttal Witnesses:**  Each of the parties may call such rebuttal witnesses as may be necessary, with notice thereof to the other party.

        **Ampex's Position:**  For rebuttal witnesses, the foregoing procedure will be followed except that notice shall be provided by 7:00 p.m. one day before a witness is called, and prior notice and resolution of objections is encouraged if time permits, but not required.

        **Defendants' Position:**  Subject to the provisions of the Trial Management Order, each of the parties may call such rebuttal witnesses as may be necessary, with notice thereof to the other party pursuant to Section 2(h) of the Trial Management Order.

    **D.**    **Notice Of Live Witnesses And Exhibits**:

**Ampex's Position:** Section 2.h. of the October 17, 2005 Trial Management Order entered in this case (D.I. 54) is modified as follows:  Other than for rebuttal witnesses, counsel shall provide notice to opposing counsel of witnesses to be called for live testimony by 7:00 p.m. two days before a witness is called (i.e., Monday evening for a witness to be called on Wednesday) with the name of each witness along with identification of the trial exhibits to be used on direct examination of the witness. Opposing counsel shall identify any objections to the admissibility of the exhibits sought to be used with the witness within 24 hours of receiving notice of the exhibits.  The parties shall meet and confer to attempt to resolve any objections to exhibits.  Any objections that cannot be resolved shall be raised with the Court before the exhibit is used

with the witness.

**Defendants' Position:** Counsel shall provide notice to opposing counsel of witnesses to be called for live testimony by 6:00 p.m. on the day before a witness is called (i.e., Tuesday evening for a witness to be called on Wednesday) with the name of each witness along with identification of the trial exhibits to be used on direct examination of the witness. The parties shall meet and confer to attempt to resolve any objections to exhibits. Any objections that cannot be resolved shall be raised with the Court before the exhibit is used with the witness.

    **E.**    **Deposition Designations:**

Section 2(e) of the October 17, 2005 Trial Management Order entered in this case (D.I. 54) is modified as follows:

        1.    The parties' deposition designations and counter-designations, and any objections thereto, will be provided to the court prior to the pretrial conference. Designated and counter-designated testimony will be consolidated such that it is read or played back in page order. The parties have agreed that all designations from a particular witness will be read or presented by video at the same time, in the order occurring in the deposition, with the parties' allocated time to be charged proportionate to the number of lines designated for that witness.

        2.    The parties will exchange designations of deposition testimony expected to be used at trial on October 24, 2006. The parties will exchange counter-designations of deposition testimony expected to

be used at trial, along with objections to designations on October 31, 2006. The parties will exchange objections to counter-designations, and counter-counter-designations, on November 3, 2006. The parties will exchange objections to counter-counter-designations on November 6, 2006.  Designations and counter-designations of interrogatory responses and responses to requests for admissions will also be exchanged pursuant to this schedule.

3.    Counsel shall provide notice to opposing counsel of deposition testimony to be presented at trial by ...

**Ampex's Position:**  7:00 p.m. two days before ...

**Defendants' Position:**  6:00 p.m. one day before ...

... the previously-designated transcript is to be read or the recording played, identifying the name of the witness along with identification of the specific pages and lines of each deposition. Opposing counsel shall identify any additional previously-designated transcript to be read or played, and any objections to testimony or exhibits sought to be used with the witness. The parties shall meet and confer to attempt to resolve any previously-stated objections, with any objections that cannot be resolved to be raised with the Court on the day that the deposition testimony is to be presented.

**F.**    There are no third parties to the action.

**VII.    Exhibits**

   **A.**    Ampex's list of exhibits that it intends to offer at trial, including

   Defendants' objections thereto and the grounds for its objections, is

   attached as Exhibit 6.

   **B.**    Defendants' list of exhibits that they intend to offer at trial, including

   Ampex's objections thereto and the grounds for its objections, is attached

   as Exhibit 7.

   **C.**    The parties reserve the right to seek to offer an exhibit designated by the

   other party, including exhibits subsequently withdrawn from the party's

   exhibit list or not introduced by the designating party.  The parties reserve

   the right to  add or delete exhibits and to designate rebuttal exhibits, as

   well as any exhibits later determined to be relevant, based on the outcome

   of all pending motions.  The parties reserve the right to use impeachment

   exhibits on cross-examination.  All objections are preserved as to such

   documents.

   **D.**    The parties shall exchange demonstrative exhibits they intend to use at

   trial by November 29, 2006 at 5:00 pm EDT.  Reasonable edits may be

   made to the demonstrative exhibits prior to use; however, such edited

   demonstrative exhibits shall be exchanged by 7:00 p.m. EDT the evening

   before they are used.  The notice provisions of this paragraph shall not

   apply to demonstrative exhibits created in the courtroom during testimony

   at trial or to the enlargement, highlighting, ballooning, etc. of trial exhibits

   or transcripts of testimony, or to composites of exhibits and/or testimony.

E.   Legible photocopies of United States Patent Office documents (e.g., patents and file histories) are deemed prima facie authentic, subject to the right of the party against whom such a document is offered to adduce evidence to the contrary, and may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies. The dates of filing and issuance and the identity of the inventors of record shall be deemed to be shown on the face of a United States patent, subject to the right of the party against whom it is offered to adduce evidence to the contrary.

F.   A translation of any document shall be deemed prima facie authentic, subject to the right of the party against whom such a document is offered to adduce evidence to the contrary, or to challenge the accuracy of the translation.

## VIII. Damages

A.   Ampex's Position

As elaborated in Exhibit 2, Ampex contends that it is entitled to the following damages:

Reasonable royalty damages in the amount of $27,995,531.

Increased damages in the amount of $55,991,062 due to Defendants' willful infringement.

Pre-judgment interest in an amount to be determined.

Post-judgment interest in an amount to be determined.

Costs in an amount to be determined.

Reasonable attorneys' fees in an amount to be determined.

**B.**    Defendants' Position

Defendants assert that Ampex is not entitled to any damages in this action.

**IX.    Bifurcated Trial**

**Ampex's Position:** The inequitable conduct and laches issues will be tried to the Court out of the presence of the jury. Evidence on inequitable conduct and laches will be presented after the jury has been charged on the infringement, validity, willfulness and damages issues and has begun deliberations, except that, for the convenience of witnesses who testify during the part of the case to be tried by the jury, testimony relevant only to non-jury issues may be adduced during breaks or after the jury is dismissed that day.

Application for attorney fees pursuant to 35 U.S.C. § 285 shall be made within thirty days after judgment is entered as to the issues tried and determined at trial.

**Defendants' Position:** Defendants do not seek a bifurcated trial on any issue. For efficiency reasons, defendants believe that the underlying facts necessary for the determination of inequitable conduct and laches should be presented at the same time that issues of infringement, willfulness, and invalidity are presented to the jury.

**X.    Trial Briefs**

**A.**    Ampex's *in limine* requests are attached as Exhibit 8.

**B.**    Defendants' oppositions to Ampex's *in limine* requests are attached as Exhibit 9.

**C.**    Defendants' *in limine* requests are attached as Exhibit 10.

**D.**    Ampex's oppositions to Defendants' *in limine* requests are attached as Exhibit 11.

XI.    **Limitations, Reservations and Other Matters**

    A.    **Length of Trial**. The Court has scheduled this trial for eight days beginning at 9:30am on December 4, 2006. Each side has been allotted a total of 20 hours to present their case.

    Mark appropriate box:      Jury ___x___

                                    Non-jury _____

    B.    **Number of Jurors**. There shall be six jurors and two alternate jurors.

    C.    **Jury Voir Dire**. The Court will conduct voir dire. If voir dire questions are to be tendered, they should be submitted three days before the pretrial conference.

    D.    **Certificate of Attempted Resolution of Controversy**

The parties certify that individuals from each side with authority to resolve this action through settlement have communicated in a good faith effort to achieve such a settlement. No agreement has been reached.

    E.    **Miscellaneous Issues**

Ampex has recently completed its discovery regarding willful infringement, and intends to serve a supplement to the expert report of Richard L. Donaldson. Ampex expects to serve this supplemental expert report by October 20, 2006, with Mr. Donaldson available for deposition shortly thereafter. Should any issues arise, the parties will be prepared to discuss them at the Pretrial Conference.

IT IS ORDERED that this Final Pretrial Order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice or for good cause shown. Such modification may be made either on application of counsel for the parties or on motion of the Court.

DATED: _____

SO ORDERED

_____
U.S. District Court Judge

JOINTLY SUBMITTED BY:

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com

*Attorneys for Plaintiff*

CONNOLLY BOVE LODGE & HUTZ LLP

Collins J. Seitz Jr. (#2237)
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 888-6278
cseitz@cblh.com

*Attorneys for Defendants*

# EXHIBIT 1

NON-CONFIDENTIAL VERSION

## EXHIBIT 1 TO THE PROPOSED FINAL PRETRIAL ORDER:
## JOINT STATEMENT OF ADMITTED FACTS

1. Plaintiff Ampex Corporation ("Ampex") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1228 Douglas Avenue, Redwood City, California 94063-3117.

2. Defendant Eastman Kodak Company ("Kodak") is a New Jersey corporation having its principal place of business at 343 State Street, Rochester, New York 14650.

3. Defendant Altek Corporation ("Altek") is a Taiwanese corporation having its principal place of business at 3F, No. 10, Li-Hsin Road Science-Based Industrial Park, Hsinchu, Taiwan.

4. Chinon Industries, Inc. ("Chinon") became Kodak Digital Product Center, Japan Ltd. On July 1, 2004.

5. The patent at issue in this case is United States Patent No. 4,821,121 entitled "Electronic Still Store With High Speed Sorting And Method Of Operation" ("the '121 patent").

6. The named inventor of the '121 patent is Daniel A. Beaulier.

7. The '121 patent issued on April 11, 1989 based on an application filed February 24, 1987, which was a continuation of an application filed May 31, 1985, which was a continuation of an application filed April 8, 1983. It expired on April 12, 2006. The '121 patent has 15 claims of which 10 are independent. Claims 7, 8, 10, 11, 12, 13, 14 and 15 are asserted in this action.

1

NON-CONFIDENTIAL VERSION

8.    The examiner located three prior art references during prosecution of the '121 patent: an article by Hugh Boyd entitled "The DLS 6000 – A new Digital Still Store Library System" ("the Boyd article"); U.S. Patent No. 4,152,722 (the "'722 patent"); and European Patent No. 0051305 ("EP 0051305").

9.    Ampex did not disclose the Quantel Paint Box system during prosecution of the applications that issued as the '121 patent.

10.    Ampex did not disclose the Ampex Video Art system during prosecution of the applications that issued as the '121 patent.

11.    The Hell Chromacom system was not disclosed to the Patent Office during the prosecution of the applications that issued as the '121 patent.

████████████████████████████████████

████████████████████████

████████████████████████████████

████████████████████

14.    The first marketing or advertising of the ESS-5 occurred at the March 28-31, 1987 NAB convention in Dallas, Texas.

15.    The first offer to sell the ESS-5 occurred at the March 28-31, 1987 NAB convention in Dallas, Texas.  The first ESS-5 sale occurred during or after the March 28-31, 1987 NAB convention in Dallas, Texas.

16.    In the context of patent damages pursuant to 35 U.S.C. § 284, there is no established royalty rate for the '121 patent.

17.    Ampex accuses the following digital still cameras of infringement: DC4800. DX3900, DX4900, CX6330, CX6445, CX7330, DX6340, DX6440, LS443,

NON-CONFIDENTIAL VERSION

CX7430, CX7525, CX7530, DX6490, DX7440, DX7590, DX7630, LS743, LS753,

Z700, Z730, Z740, Z760, Z7590, C360, V530, V550, V570, Easyshare-One, C300,

CX4200, CX4230, CX4300, CX6200, CX6230, CX7220, CX7300, CX7310, C310,

C330, C530, C315, CD33, CD40, CD43, CW330, CD50.



(b) model number;

| | Model Number | | |
|---|---|---|---|
| | CX4200 | | |
| | CX4210 | | |
| | CX4230 | | |
| | CX4300 | | |
| | CX4310 | | |
| | CX6200 | | |
| | CX6230 | | |

NON-CONFIDENTIAL VERSION

| ▓▓▓ | Model Number | ▓▓▓ | ▓▓▓ |
|---|---|---|---|
| ▓▓ | CX6330 | ▓▓ | ▓▓ |
| ▓▓ | CX6445 | ▓▓▓ | |
| ▓▓ | CX7220 | ▓ | |
| ▓▓ | CX7300 | ▓ | ▌ |
| ▓▓ | CX7310 | ▓▓▓ | |
| ▓▓ | CX7330 | ▓ | ▓ |
| ▓▓ | CX7430 | ▓▓ | ▓ |
| ▓▓ | CX7525 | ▓▓ | ▓ |
| ▓▓ | CX7530 | ▓ | ▓ |
| ▓ | DC4800 | ▓ | |
| ▓▓ | DX3900 | ▓ | ▓ |
| ▓ | DX4900 | ▓ | |
| ▓▓ | DX6340 | ▓ | ▓ |
| ▓▓ | DX6440 | ▓▓ | ▓ |
| ▓▓ | DX6490 | ▓▓ | ▓ |
| ▓▓ | DX7440 | ▓▓ | ▓ |
| ▓▓ | DX7590 | ▓ | ▓ |
| ▓▓ | DX7630 | ▓▓ | ▓ |
| ▓▓ | LS443 | ▓▓ | ▓ |
| ▓▓ | LS743 | ▓ | ▓ |
| ▓▓ | LS753 | ▓ | ▓ |
| ▓▓ | Z700 | ▓ | ▓ |
| ▓▓ | Z730 | ▓ | ▓ |
| ▓▓ | Z740 | ▓ | ▓ |
| ▓▓ | Z760 | ▓ | ▓ |
| ▓▓ | Z7590 | ▓ | ▓ |
| ▓▓ | C300 | ▓ | |
| ▓▓ | C310 | ▓ | |
| ▓ | C315 | ▓ | |
| ▓▓ | C330 | ▓ | |
| ▓▓ | C340 | ▓ | ▓ |
| ▓▓ | C360 | ▓ | ▓ |
| ▓▓ | C530 | ▓ | |
| ▓▓ | CD33 | ▓▓ | |
| ▓▓ | CD40 | ▓▓ | |

4

NON-CONFIDENTIAL VERSION



| ███ | Model Number | ████ | ██████ |
|---|---|---|---|
| ██ | CD43 | ███ | |
| ██ | CD50 | ████ | |
| ██ | CW330 | █ | |
| ██ | V530 | █ | ██ |
| ██ | V550 | █ | ██ |
| ██ | V570 | ███ | ██ |
| ██ | Easyshare-One | ██ | ███ |

██████████████████████████

████████████████████████████████

██████████████████

22.    The accused digital cameras have been sold in the United States.

███████████████████████████

████████████████

████████████████████████████

█████████████

███████████████████████████████

███████████████████████████

███████████████████

███████████████████████████

██

27.    Users can take pictures with the Kodak digital cameras.

███████████████████████████

███████████████████████████

█████████████████████████████

NON-CONFIDENTIAL VERSION



31.     One or more users in the United States have taken pictures with each of the Kodak digital cameras.

32.     One or more users in the United States have inserted a memory card into each of the Kodak digital cameras.

33.     Kodak distributes a User's Guide with each of the Kodak digital cameras.

34.     Kodak maintains a website at www.kodak.com.

35.     Copies of the User's Guides distributed with the Kodak digital cameras are available on www.kodak.com.

36.     Kodak provides a telephone support line for owners of the Kodak digital cameras.

37.     Kodak provides email support for owners of the Kodak digital cameras.

38.     In 1991 Kodak began selling the DCS-100 digital camera.

39.     In 1992, Kodak introduced the DCS-200 camera.

NON-CONFIDENTIAL VERSION

40.    Throughout the 1990s and into 2000 new and improved models of digital cameras were introduced by several competitors.

41.    There were no communications between Ampex and Kodak regarding the '121 patent between September 14, 2001 and May 26, 2004.

42.    In August 2004, Kodak retained the law firm Roylance, Abrams, Berdo and Goodman LLP to provide an opinion on the issue of whether Kodak's digital still cameras infringed the '121 patent.

# EXHIBIT 2

NON CONFIDENTIAL VERSION

## EXHIBIT 2 TO THE PROPOSED FINAL PRETRIAL ORDER:

### PLAINTIFF'S STATEMENT OF ISSUES OF FACT REMAINING TO BE LITIGATED AND STATEMENT OF INTENDED PROOFS

Except where indicated otherwise, the following issues are submitted as issues for the jury.

Statements of intended proof are not to be construed as an admission as to whether or not a party has the burden of proof on an issue, or the burden of going forward with evidence as to an issue.

### I.    INFRINGEMENT

#### A.    Whether Kodak directly infringed the asserted claims

1. Ampex is the sole owner of all rights under and title to the '121 patent.

2. Kodak's use, sale, and offer for sale in the United States, and the importation into the United States, of ▓▓▓▓ digital cameras, comprising the CX6330, CX6445, CX7330, DX6340, DX6440, and LS443 Kodak digital cameras, directly infringed claims 7, 10, and 12-15 of the '121 patent, either literally or under the doctrine of equivalents.



4. Kodak's use, sale, and offer for sale in the United States, and the importation into the United States, of ▓▓▓▓ digital cameras, comprising the CX7430, CX7525, CX7530, DX6490, DX7440, DX7590, DX7630, LS743, LS753, Z700, Z730,

NON CONFIDENTIAL VERSION

Z740, Z7590, and Z760 Kodak digital cameras, directly infringed claims 7, 8, and 10-15 of the '121 patent, either literally or under the doctrine of equivalents.

6. Kodak's use, sale, and offer for sale in the United States, and the importation into the United States, of ███████ digital cameras, comprising the C360, V530, V550, V570, and Easyshare-One Kodak digital cameras, directly infringed claims 7, 8, and 10-15 of the '121 patent, either literally or under the doctrine of equivalents.

8. Kodak's use, sale, and offer for sale in the United States, and the importation into the United States, of ███████ digital cameras, comprising the DC4800, DX3900, and DX4900 Kodak digital cameras, directly infringed claim 13 of the '121 patent, either literally or under the doctrine of equivalents.

2

NON CONFIDENTIAL VERSION

10.    Kodak's use, sale, and offer for sale in the United States, and the importation into the United States, of ███████ digital cameras, comprising the C300, CX4200, CX4230, CX4300, CX6200, CX6230, CX7220, CX7300, and CX7310 Kodak digital cameras, directly infringed claims 7, 10, and 12-15 of the '121 patent, either literally or under the doctrine of equivalents.

████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████

12.    Kodak's use, sale, and offer for sale in the United States, and the importation into the United States, of ███████ digital cameras, comprising the C310, C330, C530/C315, CD33, CD40, CD43, CD50, and CW330 Kodak digital cameras, directly infringed claims 7, 8, and 10-15 of the '121 patent, either literally or under the doctrine of equivalents.

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████

██████████████████████

14.    The images that are stored in the accused Kodak digital cameras are video images or, in the alternative, are equivalent to video images, in that they are not substantially different from video images.

NON CONFIDENTIAL VERSION

15.    The data representing the images that are stored in the accused Kodak digital cameras are video pixel data or, in the alternative, are equivalent to video pixel data, in that they are not substantially different from video pixel data.

16.    The accused Kodak digital cameras are video still store systems or, in the alternative, are equivalent to video still store systems, in that they are not substantially different from video still store systems.



18.    When operating in burst mode, the images stored in the accused Kodak digital cameras are electronic signal representation of visual information that are one of a series of related electronic images created for rapid display to allow the appearance of movement.



20.    The memory cards of the accused Kodak digital cameras store data representing a succession of full size images.

4

NON CONFIDENTIAL VERSION

21.

NON CONFIDENTIAL VERSION

25.     The CCD and accompanying circuitry of the accused Kodak digital cameras is an external source for supplying a plurality of full size image data sets, or, in the alternative, is the equivalent to an external source, in that the pertinent structure is not substantially different from an external source.

26.     During review mode, the accused Kodak digital still cameras selectively access from the storage locations in the memory card a data set representing one of the plurality of full size images ███████████████████ ██████ and a data set representing one of the corresponding plurality of the reduced size reproduction images, simultaneously ██████████████████████ ██████

## B.     Whether Defendants induced the infringement of the asserted claims

27.     Users of the accused Kodak digital cameras in the United States directly infringed the asserted claims of the '121 patent, either literally or under the doctrine of equivalents.

28.     Defendants had knowledge of the '121 patent and of the infringing use of the accused Kodak digital cameras in the United States.

29.     As a result of defendants' activities involved in the sale and offer for sale in the United States, and the importation into the United States, of the accused Kodak digital cameras, and/or as a result of defendants' promotion, advertising, distribution of sales and product literature, maintenance of web sites, customer support and training efforts, and the like, defendants knowingly and with specific intent induced infringement of the asserted claims.

NON CONFIDENTIAL VERSION

C.    **Whether Defendants contributed to the infringement of the asserted claims**

30.    Users of the accused Kodak digital cameras in the United States directly infringed the asserted claims of the '121 patent, either literally or under the doctrine of equivalents.

31.    The pertinent capture and review features and operation of the accused Kodak digital cameras have no substantial noninfringing use.

32.    Defendants had knowledge of the '121 patent, and knew that the accused Kodak digital cameras were especially made so that users would use and did use the pertinent capture and review features of those cameras.

33.    As a result of defendants' activities involved in the sale and offer for sale in the United States, and the importation into the United States, of the accused Kodak digital cameras, defendants contributed to the infringement of the asserted claims.

II.    **DAMAGES**

A.    **The damages period**

34.    The damages period is from August 29, 2001 to April 11, 2006.

B.    **The reasonable royalty to which Ampex is entitled**

35.    The date of hypothetical negotiation for the reasonable royalty analysis is July 2000.

36.    The '121 patent invention is important to the marketability of Kodak's digital cameras, Kodak's efforts to generate sales of other products and services related to digital cameras, and in the preservation of the value of the Kodak brand.

7

NON CONFIDENTIAL VERSION



### C.    Prejudgment Interest

40.    Ampex is entitled to prejudgment interest from Kodak at least the prime rate, to be determined.

### D.    Postjudgment Interest

41.    Ampex is entitled to postjudgment interest, to be determined.

### E.    Whether Kodak willfully infringed the '121 patent, and whether Ampex is entitled to increased damages

43.    Kodak did not meet its duty of care to avoid infringement of the '121 patent.

44.    Kodak willfully infringed the '121 patent, and therefore Ampex is entitled to an award of increased damages and reasonable attorneys' fees.

### F.    Attorneys' Fees

45.    This is an exceptional case, and therefore Ampex should be awarded reasonable attorneys' fees.

NON CONFIDENTIAL VERSION

## III.    VALIDITY

### A.    Whether any claims are invalid pursuant to 35 U.S.C. § 112 as indefinite

46.    The specification of the '121 patent sufficiently discloses definite structure for the size reducer.  The term "size reducer," in the context of the '121 patent, connoted definite structure to one of ordinary skill in the art in 1983.

### B.    Whether any claims are invalid pursuant to 35 U.S.C. § 112 for failure to disclose the best mode

47.    The inventor did not contemplate a best mode for implementing the size reducer of his invention.

48.    The choice of implementation of the size reducer in the '121 patent is a routine design choice based on well known engineering tradeoffs.

49.    The specification of the '121 patent sufficiently discloses definite structure for the size reducer.

### C.    Whether any of the asserted claims are invalid pursuant to 35 U.S.C. § 102(b) as a result of the alleged on sale or public use of the Quantel Paint Box

50.    The Quantel Paint Box did not embody all of the elements of any of the asserted claims.

51.    There is insufficient admissible proof that the documents on which defendants rely to describe the Quantel Paint Box describe a single prior art device or system.

52.    Defendants' allegations concerning the circuitry, software and operation of the Quantel Paint Box as of April 8, 1982 are incorrect and insufficiently documented.

9

NON CONFIDENTIAL VERSION

53.    There is insufficient admissible corroborative evidence as to the alleged circuitry, software and operation of the Quantel Paint Box as of April 8, 1982.

54.    The alleged Quantel Paint Box was not on sale or in public use prior to April 8, 1982.

55.    The Quantel Paint Box was not used prior to April 8, 1982 in the manner alleged by defendants.

**D.    Whether any of the asserted claims are invalid pursuant to 35 U.S.C. § 102(b) as a result of the alleged on sale or public use of the Ampex AVA**

56.    The Ampex AVA did not embody all of the elements of any of the asserted claims.

57.    There is insufficient admissible proof that the documents on which defendants rely to describe the Ampex AVA describe a single prior art device or system.

58.    Defendants' allegations concerning the circuitry, software and operation of the Ampex AVA are incorrect and insufficiently documented.

59.    There is insufficient admissible corroborative evidence as to the alleged circuitry, software and operation of the Ampex AVA as of April 8, 1982.

60.    The alleged Ampex AVA was not on sale or in public use prior to April 8, 1982.

61.    The Ampex AVA was not used prior to April 8, 1982, in the manner alleged by defendants.

**E.    Whether any of the asserted claims are invalid pursuant to 35 U.S.C. § 102(b) as a result of the alleged on sale or public use of the Hell Chromacom System**

62.    The Hell Chromacom System did not embody all of the elements of any of the asserted claims.

10

NON CONFIDENTIAL VERSION

63.    There is insufficient admissible proof that the documents on which defendants rely to describe the Hell Chromacom System describe a single prior art device or system.

64.    Defendants' allegations concerning the circuitry, software and operation of the Hell Chromacom System are incorrect and insufficiently documented.

65.    There is insufficient admissible corroborative evidence as to the alleged circuitry, software and operation of the Hell Chromacom System as of April 8, 1982.

66.    The alleged Hell Chromacom System was not on sale or in public use prior to April 8, 1982.

67.    The Hell Chromacom System was not used prior to April 8, 1982, in the manner alleged by defendants.

  **F.  Whether any of the asserted claims are invalid pursuant to 35 U.S.C. § 102(e) in light of the Harada patent**

68.    The Harada patent does not disclose all of the elements of any of the asserted claims.

69.    The Harada patent is not entitled to its parent application's priority date because the disclosure of the parent does not support any of the issued claims of the Harada patent.

70.    The '121 invention date is prior to the earliest possible effective date of the Harada patent.

NON CONFIDENTIAL VERSION

**G.**     **Whether the inventions of the asserted claims would have been obvious to one of ordinary skill, at the time the inventions were made, in light of the pertinent art**

71.     The art pertinent to the subject matter of the '121 patent is the art of digital image processing and digital television broadcasting equipment.

72.     A person of ordinary skill in the pertinent art in 1983 was typically a person with a bachelor's degree in electrical engineering or computer science, and at least 3-4 years of design experience in the field. Alternatively, such a person of ordinary skill would have had a master's degree in electrical engineering or computer science and at least 1-2 years of design experience in the field.

73.     None of the inventions of the asserted claims would have obvious to one of ordinary skill in the art as of the invention date in light of any asserted combinations of alleged prior art.

74.     As set forth below, the secondary indicia of nonobviousness demonstrate nonobviousness in this case.

75.     The '121 patent, and products incorporating or using the '121 patent, was commercially successful.

NON CONFIDENTIAL VERSION

79.    The commercial success of the ESS-3 and ESS-5 products is due to the '121 patent.

80.    There was a long-felt need for the inventions of the '121 patent:

82.    The prior art taught away from Mr. Beaulier's invention.

83.    Others copied the inventions of the '121 by manufacturing and selling digital still cameras and camcorders that practice the inventions of the '121 patent.

84.    The browse feature of Ampex's ESS-3 and ESS-5 products, which incorporated the inventions of the '121 patent, received praise and recognition from the industry.

86.    Others faced with the same problem that Mr. Beaulier faced failed to design a system that would call up an array of reduced size images with minimal delay.

**H.    Whether the invention date of the asserted '121 claims is prior to the date of the Harada patent and Paint Box User Guide**

NON CONFIDENTIAL VERSION



93.    At the April 10-13, 1983 NAB convention in Las Vegas, Nevada, Ampex demonstrated two working ESS-3 systems.

14

NON CONFIDENTIAL VERSION

## IV.    ENFORCEABILITY

### A.    Whether the '121 patent is unenforceable due to inequitable conduct

98.    None of the art allegedly withheld from the Patent Office during the prosecution of the '121 patent was material, because it was at most cumulative to art that was cited and considered by the Patent Office.

99.    No one substantially involved in the prosecution of the '121 patent withheld, with any deceptive intent, any information from the Patent Office.

### B.    Whether Ampex is barred from collecting damages due to laches

100.    Ampex did not unreasonably delay in notifying Kodak of its infringement of the '121 patent.

101.    Defendants were not prejudiced by any alleged delay of Ampex.

# EXHIBIT 3

EXHIBIT 3 TO THE PRETRIAL ORDER

**DEFENDANTS' STATEMENT OF ISSUES OF FACT THAT REMAIN TO BE LITIGATED AND STATEMENT OF INTENDED PROOFS**

**I.     Issues of Fact That Remain to be Litigated**

**I. Infringement Issues**

1. Kodak built the first working digital camera in 1975.

2. Kodak began commercially selling professional digital still cameras in 1991.

3. Kodak began commercially selling consumer digital still cameras in 1995.

4. Ampex has never designed, manufactured, or sold digital cameras.

5. The accused digital still cameras have a "video" mode and one or more "still" capture modes.

6. The accused digital still cameras do not infringe when operated in "video" mode.

REDACTED

14. Whether the accused digital still cameras literally infringe claims 7, 8, 10, 11, 12, 13, 14, or 15 of the '121 patent.

15. Whether the accused digital still cameras infringe claims 7, 8, 10, 11, 12, 13, 14, or 15 of the '121 patent under the doctrine of equivalents.

## II. '121 Patent Issues

16. The '121 patent relates to a digital electronic still store for use in broadcast television.

17. An electronic still store system is a system that can capture, store, and recall video images. Television stations used electronic still stores in the early 1980s to store images for use in television broadcasts.

18. Electronic still stores were first developed in the 1970s. These electronic still stores could capture images, adjust the size of the images, store the images, and output the images for later use in television broadcasts.

19. In the state of television broadcast art in 1983 and earlier, it was common to use electronic still stores to generate reduced size images from captured full size video images. These reduced size images could be used, for example, during news broadcasts. The '121 patent states at column 1, lines 23 to 25 that it was "common to insert a selected still store image depicting a news event in the upper left hand corner of a live studio image depicting a newscaster describing the news event."

20. Figure 1 of the '121 patent depicts the components of the '121 system, including: an "Input A/D," which converted analog television signals to digital format; a "frame store" that was implemented as random access memory and could store a frame of video; a "Disk Store," which was used for long term storage of video images; a "Size Reducer" that could generate a reduced size version of the input full size image; a "CPU," or computer, that controlled the systems' functions; an "Output A/D" that converted the signal back to analog format so that it could be used in broadcast television; an "output processor" that prepared the image to be sent to the television studio; and a monitor that displayed images. All of the components of the '121 system were known in the art prior to the filing of the '121 patent. Each performed functions they were known to be capable of performing.

21. What was the level of ordinary skill in the art with respect to the disclosure of the '121 patent at the time that the '121 patent was filed.

22. What, if any, is the invention of the '121 patent.

23. Whether one of ordinary skill in the art would understand claims 7, 8, 12, and 14 of the '121 patent to be indefinite.

REDACTED

- 2 -

26. Whether plaintiff can demonstrate diligence in reducing its invention to practice.

27. Whether Daniel Beaulier disclosed the best mode for practicing the claimed invention of the '121 patent.

### III. Validity and Inequitable Conduct Issues

#### A.   The Prosecution History of the '121 Patent

28. Ampex disclosed two prior art references to the Patent Office during prosecution of the '121 patent: U.S. Patent No. 4,172,264 (the "'264 patent"); and U.S. Patent No. 4,302,776 (the "'776 patent").

29. In order to overcome a rejection in light of the Boyd article, Ampex argued that the invention of the '121 patent was patentable because in the '121 patent, "the reduced spatial resolution image frame copy occupies less space within said image store than the full spatial resolution image frame copy."

30. In order to overcome a rejection in light of the '776 patent, Ampex argued that the '776 patent "fails to teach…the direct transfer of images between the disk storage and random access memory."

31. In order to overcome a rejection in light of the '776 patent, Ampex also argued that the '776 patent did not "teach the above features of storing both size images simultaneously in the random access memory."

#### B.   The Quantel Paint Box

32.  The Quantel Paint Box was an electronic still store and graphics system manufactured by Quantel.

33. Quantel first sold the Paint Box in the United States in March 1982.

34. The Quantel Paint Box was demonstrated to WFAA in Dallas, Texas, in late March or early April 1982, and at the National Association of Broadcasters convention in Dallas, Texas, between April 4-7, 1982.

35. The Quantel Paint Box could, among other functions, capture frames of video from a television broadcast, store captured images in random access memory, store captured images on disk, generate reduced size images from full size images, recall and display full and reduced size images, and browse images stored on disk.

36. The Paint Box could browse "cutouts" stored on disk.

37. Richard Taylor worked on the Quantel team that built and designed the Paint Box.

38. Martin Holbrook demonstrated the Quantel Paint Box at the National Association of Broadcasters convention in 1982.

- 3 -

39. Whether the Quantel Paint Box discloses each and every limitation of the asserted claims of the '121 patent.

40. The Quantel Paint Box and the Quantel DLS 6000 series were designed to be used together.

41. Whether the asserted claims of the '121 patent would have been obvious in light of a combination of the Quantel Paint Box and the Quantel DLS 6000 series.

42. Whether the asserted claims of the '121 patent would have been obvious in light of a combination of the Quantel Paint Box and the Hell Chromacom system.

43. Ampex and Quantel were competitors in the electronic still store industry.

REDACTED

48. Whether the Quantel Paint Box would have been material to the Patent Office during the prosecution of the applications that issued as the '121 patent.

49. Whether individuals involved in the prosecution of the applications that issued as the '121 patent had knowledge of the features of the Quantel Paint Box.

50. Whether individuals involved in the prosecution of the applications that issued as the '121 patent had intent to deceive the Patent Office by not disclosing the Quantel Paint Box during the prosecution of the applications that issued as the '121 patent.

### C. The Ampex AVA System

51. The Ampex Video Art System ("AVA system") was an electronic still store and graphics system manufactured by Ampex.

52. The AVA system could, among other functions, capture frames of video from a television broadcast, store captured images in random access memory, store captured images on disk, generate reduced size images from full size images, and recall and display full and reduced size images.

53. The AVA system was sold in the United States in 1980 and is prior art to the '121 patent.

54. Whether the AVA system discloses each and every limitation of the asserted claims of the '121 patent.

55. Whether the asserted claims of the '121 patent would have been obvious in light of a combination of the AVA system and the Quantel DLS 6000 series.

REDACTED

62. Ampex employee, Junaid Sheikh, wrote and published an article on the AVA system entitled "Ampex AVA Video Art System." In the article, Sheikh stated that the AVA was capable of "[d]irect data transfers between frame store and computer disk drive without any intervention from the CPU."

63. Whether the AVA system would have been material to the Patent Office during the prosecution of the applications that issued as the '121 patent.

64. Whether individuals involved in the prosecution of the applications that issued as the '121 patent had knowledge of the features of the AVA system.

65. Whether individuals involved in the prosecution of the applications that issued as the '121 patent had intent to deceive the Patent Office by not disclosing the AVA system during the prosecution of the applications that issued as the '121 patent.

### D. The Hell Chromacom System

66. The Hell Chromacom system was a prepress system manufactured by Hell.

67. The Hell Chromacom system was sold in the United States in 1980 and is prior art to the '121 patent.

- 5 -

68. The Hell Chromacom system could, among other functions, store captured images in random access memory, store captured images on disk, automatically generate reduced size images from full size images, maintain a relationship between full and reduced size images such that edits to reduced size images were automatically applied to the full size versions of the images, and recall and display full and reduced size images.

69. Dr. Dieter Preuss worked on the team that designed and built the Hell Chromacom system.

70. Whether the Hell Chromacom system discloses each and every limitation of the asserted claims of the '121 patent.

71. Whether the asserted claims of the '121 patent would have been obvious in light of a combination of the Hell Chromacom and the Quantel Paint Box.

72. Whether the asserted claims of the '121 patent would have been obvious in light of a combination of the Hell Chromacom and the Quantel DLS 6000 series.

### E.  The Harada Patent

73. U.S. Patent No. 4,802,019 ("the Harada patent") is directed to an electronic still store system that could, among other functions, capture frames of video from a television broadcast, store captured images in random access memory, store captured images on disk, automatically generate reduced size images from full size images, recall and display full and reduced size images, and browse images stored on disk.

74. The original application for the Harada patent was filed on January 3, 1983, before the application for the '121 patent was filed.

75. Whether the original application for the Harada patent discloses each and every limitation of the asserted claims of the '121 patent.

76. Whether the asserted claims of the '121 patent would have been obvious in light of a combination of the system disclosed in the original application for the Harada patent and the Quantel Paint Box.

### IV. Damages Issues

77. If infringement is found, and the '121 patent is found to be valid and enforceable, the amount of monetary damages Ampex is entitled to recover as a result of the infringement.

78. Whether, in determining reasonable royalty damages, the appropriate date for the hypothetical negotiation is 1991.

79. Whether there are acceptable non-infringing substitutes to the technology claimed in the '121 patent.

80. Whether Ampex's claims are barred under the doctrine of laches.

REDACTED

90. If infringement is found, whether Kodak's infringement was willful.

## II.    Brief Statement of What Defendants Intend to Prove as a Defense

It is Ampex's burden to prove infringement. Defendants intend to show that the accused devices do not infringe the asserted claims of the '121 patent either literally or under the doctrine of equivalents. Defendants contend that the accused cameras do not infringe for at least the following reasons:

- 

- 


- 

REDACTED

- 

- 

- 

- The CCD imager in the accused cameras is not an external source; it is internal to the accused cameras;

REDACTED

- 

It is Ampex's burden to prove willful infringement. Defendants intend to show that they have not willfully infringed the '121 patent. The '121 patent relates to technology for television broadcast, not to digital cameras. Defendants obtained opinions from in-house and outside counsel, both of whom concluded that the accused cameras do not infringe the asserted claims of the '121 patent.

Defendants intend to prove that the asserted claims of the '121 patent are invalid as anticipated by the Quantel Paint Box, the Hell Chromacom System, the Original Application to

- 8 -

U.S. Patent No. 4,802,019 ("the Harada patent"), and the Ampex Video Art ("AVA") System. Defendants intend to prove that the asserted claims of the '121 patent are invalid as obvious in view of a combination of prior art systems. Specifically, defendants intend to prove that that the claims of the '121 patent are obvious in light of the combination of: the Quantel Paint Box with the Quantel DLS 6000 series; the Quantel Paint Box with the Hell Chromacom system; the AVA system with the DLS 6000 series system; the Hell Chromacom system with the DLS 6000 series system; and the system disclosed by the Harada patent and the Quantel Paint Box. Defendants also intend to prove that the specification of the '121 patent did not disclose the best mode contemplated by the inventor of the '121 patent for practicing the claimed invention of the '121 patent and that at least claims 7, 8, 12, and 14 are indefinite.

Defendants intend to prove that the '121 patent is unenforceable due to Ampex's inequitable conduct during prosecution of the applications that led to the issuance of the '121 patent. In particular, defendants intend to prove that the individuals involved in the prosecution of the applications that issued as the '121 patent committed inequitable conduct by failing to disclose the AVA and the Paint Box to the Patent Office, with the intent to deceive the Patent Office.

Finally, defendants intend to prove that Ampex's delay in bringing suit was unreasonable and resulted in material prejudice to the defendants and, as such, plaintiff's alleged claims for relief are barred by the doctrine of laches. Defendants intend to show that plaintiff is not entitled to any damages but, rather, that defendants are entitled to their costs and reasonable attorneys' fees incurred in defending this action pursuant to 35 U.S.C. § 285.

USIDOCS 5882935v1

EXHIBIT 4

**EXHIBIT 4 TO THE PROPOSED FINAL PRETRIAL ORDER:**

**PLAINTIFF'S LIST OF WITNESSES**

## I.    EXPERT WITNESSES

**George Ligler**
GTL Associates
12400 Beall Mountain Road
Potomac, MD 20854

Dr. Ligler's expertise encompasses computer and telecommunications systems (both hardware and software) including digital image processing.  The general subject matter on which Dr. Ligler is expected to testify and render opinions has been identified in Dr. Ligler's reports, declarations and testimony, regarding technical issues relevant to liability and damages. Such issues include: (i) the subject matter of the '121 patent, including its use, operation and advantages, the background and field of the '121 inventions, and the level of skill in the art; (ii) infringement of the asserted claims of the '121 patent by the accused Kodak digital still cameras; (iii) the validity of the claims of the '121 patent, including that the CCA SDMA, Hell Chromocom, Scitex Response 300, or Harada patent, alone or in combination with other references, do not render any claim of the '121 patent anticipated or the subject matter of any claim obvious; (iv) conception and reduction to practice of the subject matter of the claims of the '121 patent; (v) sufficiency of disclosure of the size reducer in the '121 patent; (vi) the embodiment in the Ampex ESS-3 of the claims of the '121 patent; and (vii) technical damages issues including absence of acceptable noninfringing alternatives and commencement of infringement by Kodak.  As set forth in his report, Dr. Ligler will rely on the reports of Ampex experts Charles Boncelet, Stephen Gray and Kendall Dinwiddie.

**Alan Cavallerano**
26 Woodland Road
Bedford  NY 10506

Mr. Cavallerano's expertise encompasses television technology, video standards, consumer electronics, user interfaces and ergonomics.  The general subject matter on which Mr. Cavallerano is expected to testify and render opinions has been identified in Mr. Cavallerano's reports, declarations and testimony, regarding technical issues relevant to liability and damages. Such issues include: (i) the subject matter of the '121 patent, including its use, operation and advantages, the background and field of the '121 inventions, and the level of skill in the art; (ii) the validity of the claims of the '121 patent, including that the Quantel Paint Box, Ampex AVA, Quantel DLS 6030, 1983 Paint Bix User Guide, alone or in combination with other references, do not render any claim of the '121 patent anticipated or the subject matter of any claim obvious; (iii) the enforceability of the '121 patent, including that the Quantel Paint Box, Ampex AVA, and Quantel DLS 6030 are at most cumulative to art cited during the prosecution of the '121 patent; (iv) sufficiency of disclosure of the size reducer in the '121 patent; and (v) technical damages issues including the importance of the '121 inventions to the marketing of the Kodak digital still cameras.

**Prof. Charles G. Boncelet, Jr**.
Dept. of Electrical and Computer Engineering
University of Delaware
Newark, DE 19716

Prof. Boncelet's expertise encompasses image processing, data compression, and computer networking.  The general subject matter on which Dr. Boncelet is expected to testify and render opinions has been identified in Prof. Boncelet's reports, declarations and testimony, regarding technical issues relevant to liability.  Such issues include infringement of the asserted claims of the '121 patent by the accused Kodak digital still cameras.

**Richard L. Donaldson**
5508 Grasmere Drive
Plano, TX 75093

Mr. Donaldson's expertise encompasses patent licensing negotiation and strategy, patent license agreements, and standards of responsibility and due diligence that are required in the event a company becomes aware of a patent. The general subject matter on which Mr. Donaldson is expected to testify and render opinions has been identified in Mr. Donaldson's reports and testimony, regarding issues relevant to damages and willful infringement. Such issues include: (i) the amount and rationale of reasonable royalty damages, and interest, to which Ampex is entitled; and (ii) the applicable standard of care to reasonably investigate the '121 patent, after Kodak became aware of that patent, and an assessment of whether Kodak met that standard.

**Prof. Carol A. Scott**
1834 Park Blvd.
Palo Alto CA 94306

Prof. Scott's expertise encompasses marketing. The general subject matter on which Prof. Scott is expected to testify and render opinions has been identified in Prof. Scott's reports and testimony, regarding issues relevant to damages. Such issues include the market for digital still cameras, Kodak's marketing of digital still cameras, the significance of the '121 inventions to the marketing of Kodak's digital still cameras, and the effect on Kodak's sales if it were not able to use the '121 inventions.

**Brian C. Dragun**
Stanford Consulting Group
702 Marshall Street
Redwood City, CA 94063

Mr. Dragun's expertise encompasses accounting, economics, and the measure of damages in patent litigation. The general subject matter on which Mr. Dragun is expected to

testify and render opinions has been identified in Mr. Dragun's reports and testimony, regarding issues relevant to damages. Such issues include Kodak's sales and profits, and the amount of damages and interest to which Ampex is entitled.

## II.    FACT WITNESSES

Ampex may call the following fact witnesses to trial. Witnesses indicated as appearing in person are so designated in accord with Ampex's best current understanding, and Ampex reserves the right to call certain of these witnesses by deposition, depending on availability and subject to further determination by Ampex. The remaining witnesses may be called by deposition, subject to further determination during the deposition designation process, and, although it currently does not intend to do so, Ampex also reserves the right to call certain such witnesses in person, if available.

| | |
|---|---|
| Hideki Akiyama<br>1 - 1 Sakuranamiki, Tsuzuki-ku<br>Yokohama city<br>Kanagawa<br>Japan | Gerald Mlodnosky<br>3727 Cass Way<br>Palo Alto, CA  94306 |
| George Almeida<br>1531 Shoal Drive<br>San Mateo, CA | Thomas Napoli<br>Eastman Kodak Company<br>343 State Street<br>Rochester, NY 14650 |
| Frank Armstrong<br>Eastman Kodak Company<br>343 State Street<br>Rochester, NY 14650 | John O'Grady<br>Eastman Kodak Company<br>343 State Street<br>Rochester, NY 14650 |
| Daniel Beaulier (in person)<br>9 Lily Lane<br>San Carlos, CA 94070 | Hiroko Ohtake<br>2-809 1 Zama<br>Zama-chi<br>Kanagawa-ken<br>Japan |
| John Caligiuri<br>104 Applewood Drive<br>Rochester, NY | Kenneth Parulski<br>Eastman Kodak Company<br>343 State Street<br>Rochester, NY 14650 |

| | |
|---|---|
| William Carpenter (in person)<br>1079 The Dalles Avenue<br>Sunnyvale, CA 94087 | Jeff Petrik (in person)<br>KVLY TV<br>1350 21st Avenue South<br>Fargo, ND 58103 |
| Nico Chen<br>198 Nankang Road<br>Shonsi Village<br>Baoshan Town, Hsinchu County<br>Taiwan R.O.C. | Harold Regnier (in person)<br>26040 Golf Links Drive<br>Pioneer, CA 95666-9153 |
| Pamela Crocker<br>Eastman Kodak Company<br>343 State Street<br>Rochester, NY 14650 | Gregory Roth<br>6 Centerpoint Drive, Suite 780<br>La Palma, CA 90623 |
| Joachim Diermann (in person)<br>13288 Hobart Lane<br>Cedar Ridge, CA 95924 | Steve Rumsey<br>24 Smethwick Court<br>Pittsford, NY |
| Takeshi Domen<br>254-1-107 Aoto-cho<br>Midori-ku, Yokohama City<br>Kanagawa<br>Japan | Peter Sara<br>Care of Finale Editworks<br>201 West Second Avenue<br>Vancouver, British Columbia<br>V5Y 3V5, Canada |
| Michael Felix (in person)<br>225 Clifton Ave.<br>San Carlos, CA 94070 | Steve Sasson<br>Eastman Kodak Company<br>343 State Street<br>Rochester, NY 14650 |
| Kimimori Gomi<br>2371 Okkoto<br>Fujimimachi<br>Suwa-gun, Nagano-ken<br>Japan | Pierre Schaeffer<br>10605 Trotters Trail<br>Potomac, MD 20854 |
| Mary Hadley<br>Eastman Kodak Company<br>343 State Street<br>Rochester, NY 14650 | Philip Scott<br>Eastman Kodak Company<br>343 State Street<br>Rochester, NY 14650 |
| John Holmes<br>Roylance, Abrams, Berdo &<br>Goodman LLP<br>1300 19th Street, N.W., #600<br>Washington, DC 20036-1649 | Craig Smith<br>Eastman Kodak Company<br>343 State Street<br>Rochester, NY 14650 |
| Thomas Hung<br>98-2, Lane 20<br>Shen Ho Road, Section 4<br>Sanchun City, Taipei 22 | Marjorie Stell<br>Eastman Kodak Company<br>343 State Street<br>Rochester, NY 14650 |

| | |
|---|---|
| Wilbert Janson<br>870 Curran Road<br>Shortsville, NY 14548 | Peter Sucy<br>2495 Brick Schoolhouse Road<br>Hilton, NY  14468-9710 |
| Ming-Chin Kang<br>Fuhsing 7-2, Neighborhood 20<br>Chongfu Village<br>Luchun Taoyuan County<br>Taiwan R.O.C. | Katsutoshi Sugano<br>1 - 1 Sakuranamiki, Tsuzuki-ku<br>Yokohama city<br>Kanagawa<br>Japan |
| Manabu Kiri<br>1-4-A502 Wakakusadai<br>Aoba-ku<br>Yokohama City<br>Japan | Joel Talcott (in person)<br>Ampex Corporation<br>1228 Douglas Avenue<br>Redwood City, CA  94063-319 |
| Howard Knight<br>(deceased) | Robert Titus (in person)<br>819 Spruance Lane<br>Foster City, CA 94404 |
| John Leenerts (in person)<br>WDRB Fox 41<br>624 West Muhammad Ali Blvd.<br>Louisville, KY 40203 | Stan Torgovitsky<br>Roylance, Abrams, Berdo &<br>Goodman LLP<br>1300 19th Street, N.W., #600<br>Washington, DC 20036-1649 |
| Robert Lemen<br>5 Woodworth Street<br>Victor, NY 14564 | Ramon Venema<br>Ampex Corporation<br>1228 Douglas Avenue<br>Redwood City, CA  94063-319 |
| Ted Liu<br>1 Eighth Floor, Number 72-8<br>Lane 531<br>Kuan Fu Road, Section 1<br>Hsinchu City<br>Taiwan R.O.C. | Greg Westbrook<br>30 Washington Avenue<br>Victor, NY 14534 |
| Theodore Marsh (in person)<br>521 Helen Drive<br>Millbrae, CA 9403 | David Woods<br>940 Raccoon Run<br>Victor, NY 14564 |
| Hiroshi Masuda<br>1 - 1 Sakuranamiki, Tsuzuki-ku<br>Yokohama city<br>Kanagawa<br>Japan | Roy Wu<br>32 Xi Wei Street<br>Sanchong County, Central City,<br>Taipei County<br>Taiwan, R.O.C. |
| John McCommons<br>9000 Testerman Way<br>Elk Grove, CA 95758 | Hiroshhi Yamagata<br>4-21-10-207 Nakanoshima<br>Tama-ku<br>Kawasaki City, Kanagawa<br>Japan |

| James McGarvey | Shinichi Yoshida |
|---|---|
| Eastman Kodak Company | 1-12-15, Number 502 Masukata |
| 343 State Street | Tama-ku |
| Rochester, NY 14650 | Kawasaki city |
| | Kanagawa |
| | Japan |
| | Sumito Yoshikawa |
| | 2-16-26 Shimota-cho |
| | Kohoku |
| | Yokohama City |
| | Kanagawa |
| | Japan |

EXHIBIT 5

## EXHIBIT 5 TO THE PRETRIAL ORDER

## DEFENDANTS' LIST OF WITNESSES

### I.    EXPERT WITNESSES:

**William T. Freeman, Ph.D.**
MIT Computer Science Artificial Intelligence Lab
32D-476
Dept. of Electrical Engineering and Computer Science,
77 Massachusetts Avenue
Cambridge, MA 02139

Dr. William Freeman will offer expert testimony regarding the processing steps of the accused digital cameras. He will testify that the image that is initially captured and stored in CFA does not contain the same data as the image stored on the memory card.  The details of Dr. Freeman's opinions are set forth in his expert report.

**Philip Green**
Hoffman Alvary & Company LLC
Seven Wells Avenue
Newton, MA 02459-3247

Mr. Philip Green will provide testimony about the appropriate date of the hypothetical negotiation and the amount of damages, if any, that should be awarded to Ampex should the patent be found to be infringed, valid and enforceable.  The details of Mr. Green's opinions are set forth in his expert report.

US1DOCS 5882962v1

**Brad A. Myers, Ph.D.**
Carnegie Mellon University
5000 Forbes Avenue
HCII, NSH 3517
Pittsburgh, PA 15213-3891

Dr. Brad Myers will testify that that the asserted claims of the '121 patent are invalid as anticipated by the original application for U.S. Patent No. 4,802,019 to Harada et al. To the extent that a claim construction similar to those he identified in his expert report is asserted or adopted under which the original application for U.S. Patent No. 4,802,019 to Harada et al., does not meet each element of the asserted claims, he will testify that the asserted claims would still have been obvious in view of the original application by itself or a combination of the system described in the original application for U.S. Patent No. 4,802,019 to Harada et al., with the Quantel Paint Box. With regard to the documents that Ampex asserts show conception and reduction to practice of the asserted claims of the '121 patent, Dr. Myers will address whether, based on technical review of the materials that Ampex has identified, the documents disclose all of the elements of each of the asserted claims of the '121 patent. Dr. Myers will testify that the named inventor on the '121 patent, Daniel Beaulier, failed to disclose the best mode of practicing the claimed invention. The details of Dr. Myers' opinions are set forth in his expert report.

**Dieter Preuss, Ph.D.**
Neue Koppel 31
24248 Moenkeberg
Germany

Dr. Dieter Preuss will testify that the Hell Chromacom system contains each and every element of the asserted claims of the '121 patent. Dr. Preuss will also testify that it would have been obvious to one of ordinary skill in the art to combine the Hell Chromacom system with

either the Quantel Paint Box or the Quantel DLS 6000 series in order to meet each and every

limitation of the '121 patent.  The details of Dr. Preuss' opinions are set forth in his expert report.

> **James A. Storer, Ph.D.**
> Brandeis University
> P.O. Box 9110
> Waltham, MA 02454-9110

Dr. James Storer will provide an overview of digital still camera technology.  He will

describe the operation of the accused digital cameras. He will testify that the accused digital still

cameras do not infringe the asserted claims either literally or under the doctrine of equivalents.

He will provide testimony regarding the operation of the Kodak DCS100 that Kodak first sold in

1991.  The details of Dr. Storer's opinions are set forth in his expert report.

> **Richard Taylor**
> Huntsgreen Farm
> Huntsgreen
> Newbury RG208BZ
> United Kingdom

Richard Taylor will provide an overview of electronic still store technology.  Mr. Taylor

will testify that the Quantel Paint Box contains each and every element of the asserted claims of

the '121 patent.  Mr. Taylor will testify that the Ampex AVA system includes most of the

elements of the asserted claims under Defendants' claim construction and every element of the

asserted claims under Ampex's claim construction. Mr. Taylor will also testify that it would have

been obvious to one of ordinary skill in the art to combine the Quantel Paint Box with the

Quantel DLS 6000 series, the Quantel Paint Box with the Hell Chromacom system, and the

Ampex AVA system with the Quantel DLS 6000 series in order to meet each and every element

of the asserted claims.  Finally, Mr. Taylor will provide testimony regarding Ampex's failure to

disclose its own AVA system and the Quantel Paint Box system to the United States Patent Office during prosecution of the '121 patent and will explain that both systems were material prior art not cumulative of any art before the Patent Office. The details of Mr. Taylor's opinions are set forth in his expert report.


## II.    NON-EXPERT WITNESSES:

Hideki Akiyama
Team Manager Software Design Group
Kodak Digital Product Center, LTD Japan
Yokohama Dia Building Kohokukan
1-1 Sakuranamiki, Tsuzuki-ku
Yokohama-shi, Kanagawa 224-0046
Japan

Pamela Crocker, Esq.
Eastman Kodak Company
343 State Street
Rochester, NY 14650

Phil Faraci
Eastman Kodak Company
343 State Street
Rochester, NY 14650

Carl Gustin
Eastman Kodak Company
343 State Street
Rochester, NY 14650

Mary Hadley
Eastman Kodak Company
343 State Street
Rochester, NY 14650

Martin Holbrook
Seguy 46800
Lascabanes
France

- 4 -

James M. McGarvey
Principal Engineer, Patents & Standards, Digital & Film Imaging
Systems
Eastman Kodak Company
343 State Street
Rochester, NY 14650

Kenneth Parulski
Eastman Kodak Company
343 State Street
Rochester, NY 14650

Craig Smith
Eastman Kodak Company
343 State Street
Rochester, NY 14650

Steve Sasson
Eastman Kodak Company
343 State Street
Rochester, NY 14650

Stan Torgovitsky, Esq.
Roylance, Abrams, Berdo & Goodman LLP
1300 19th Street, N.W.
Suite 600
Washington, DC 20036-1649

Roy Wu
32 Xi Wei Street,
Sanchong County, Central City, Taipei County
Taiwan

As described in the Pretrial Order, the parties have agreed upon a schedule for

designating testimony by deposition.  Defendants' proposed list of witnesses who may testify by

designation is provided below.  Defendants will finalize this list, and eliminate those who will

not provide deposition testimony, upon completion of deposition designations.

Charles Anderson
Daniel Beaulier
Bill Carpenter

Joachim Diermann
Larry Evans
David Fabian
Michael Felix
Russ Gustafson
Yoshiji Zenji Harada
Kenneth Hayward
Carlos Kennedy
Donald Kleffman
Howard Knight
William Lindemann
Donald MacLeod
Peter Mann
Ted Marsh
Gerald Mlodnosky
John McCommons
Craig McKibben
Les Oxley
Brad Perkins
Harold Regnier
Greg Roth
Peter Sara
Richard Searles
Joel Talcott
Ray Venema
Richard West

EXHIBIT 6

**EXHIBIT 6 TO THE PROPOSED FINAL PRETRIAL ORDER:**

**PLAINTIFF'S PROPOSED TRIAL EXHIBIT LIST**

In addition to the exhibits identified below, Ampex reserves the right to offer any of the exhibits identified in Defendants' Proposed Trial Exhibit List (Exhibit 7 to the Proposed Final Pretrial Order).

| Exhibit No. | Description | Deposition Ex. No. | Objections [1] |
|---|---|---|---|
| PTX-1 | 4/11/1989, U.S. Patent No. 4,821,121 to Beaulier, original | | |
| PTX-1a | 4/11/1989, Certified copy of U.S. Patent No. 4,821,121 to Beaulier (AX060406-15) | | |
| PTX-2 | 5/28/2004, Certified prosecution history of U.S. Patent No. 4,821,121, chronologically reordered, pages numbered, with tabs  (AX061557-826) | | |
| PTX-2a | 5/28/2004, Prosecution history of U.S. Patent No. 4,821,121 with tabs | | |
| PTX-3 | 5/1/1979, U.S. Patent No. 4,152,722 to Inuiya et al.  (AX060424-31) | | |
| PTX-4 | 10/23/1979, U.S. Patent No. 4,172,264 to Taylor et al.  (AX060416-23) | | |
| PTX-5 | 11/24/1981, U.S. Patent No. 4,302,776 to Taylor et al.  (AX060432-57) | | |
| PTX-6 | 5/12/1982, European Patent Application No. 0051305 to Yamamoto  (AX060458-93) | | |
| PTX-7 | 3/80, Article "The DLS6000-A New Digital Still Store Library System" by Hugh Boyd in International Broadcast Engineer, Vol. 11, No. 170, pp. 46-48 (AX060494-97) | | |
| PTX-8 | 6/16/1983, Certified Copy of Assignment of U.S. Serial Number 483,327 from D. Beaulier to Ampex (AX061425-28) | | |
| PTX-9 | 11/25/1992, Certified Copies of Ampex Assignments   (AX061429-79, AX061517-55) | | |

[1] An index to the codes used to indicate Defendants' objections to Plaintiff's exhibits is provided on the last page of this Exhibit.

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-10 | 3/24/2006, Corrected Type 3A Digital Camera Fact Chart (corrected version of Tab D to Expert Report of Kendal L. Dinwiddie) (with trial exhibit citations) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance; Inaccurate/ incomplete description |
| PTX-11 | 3/24/2006, The Operation of the Kodak Type 3B Digital Cameras with Exemplary Citations for Each Camera (Tab 10 to Initial Disclosure of Expert Testimony of Dr. George T. Ligler) (with trial exhibit citations) (corrected in accordance with Ligler Errata Sheet) | | Hearsay; Lacks foundation; FRE 403; Partial document/ lacks context; Lacks relevance |
| PTX-12 | 3/24/2006, The Operation of the Kodak Type 3C Digital Cameras with Exemplary Citations for Each Camera (Tab 11 to Initial Disclosure of Expert Testimony of Dr. George T. Ligler) (with trial exhibit citations) (corrected in accordance with Ligler Errata Sheet) | | Hearsay; Lacks foundation; FRE 403; Partial document/ lacks context; Lacks relevance |
| PTX-13 | 3/24/2006, Corrected Type 2 Digital Camera Fact Chart (corrected version of Tab C to Expert Report of Kendall L. Dinwiddie) (with trial exhibit citations) | | Hearsay; Lacks foundation; FRE 403; Partial document/ lacks context; Lacks relevance |
| PTX-14 | 3/24/2006, Corrected Altek Sunny3 and Sunny4 Digital Camera Fact Chart (second Corrected version of Tab C to Expert Report of Stephen Gray) (with trial exhibit citations) | | Hearsay; Lacks foundation; FRE 403; Partial document/ lacks context; Lacks relevance |
| PTX-15 | 3/24/2006, Corrected Altek Sunny 6 Digital Camera Fact Chart (corrected version of Tab D to Expert Report of Stephen Gray) (with trial exhibit citations) | | Hearsay; Lacks foundation; FRE 403; Partial document/ lacks context; Lacks relevance |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-16 | 3/24/2006, Comparison of the claims of U.S. Patent No. 4,821,121 to the Kodak DX6440, DX6340, CX7330, CX6445, CX6330, and LS443 Digital Still Cameras (the "Type 3A Digital Cameras") (with trial exhibit citations) | | Hearsay; Lacks foundation; FRE 403; Lacks relevance; Partial document/ lacks context; Lacks relevance |
| PTX-17 | 3/24/2006, Comparison of the claims of U.S. Patent No. 4,821,121 to the Kodak Z7590, Z760, Z740, Z730, Z700, CX7530, CX7525, CX7430, DX7630, DX7590, DX7440, DX6490, LS753, and LS743 Digital Still Cameras (the "Type 3B Digital Cameras") (with trial exhibit citations) | | Hearsay; Lacks foundation; FRE 403; Partial document/ lacks context; Lacks relevance |
| PTX-18 | 3/24/2006, Comparison of the claims of U.S. Patent No. 4,821,121 to the Kodak C360, V530, V550, V570, and Easyshare One Digital Still Cameras (the "Type 3C Digital Cameras") (with trial exhibit citations) | | Hearsay; Lacks foundation; FRE 403; Partial document/ lacks context; Lacks relevance |
| PTX-19 | 3/24/2006, Comparison of the claims of U.S. Patent No. 4,821,121 to the Kodak DX4900, DX3900, and DC4800 Digital Still Cameras (the "Type 2 Digital Cameras") (with trial exhibit citations) | | Hearsay; Lacks foundation; FRE 403; Partial document/ lacks context; Lacks relevance |
| PTX-20 | 3/24/2006, Comparison of the claims of U.S. Patent No. 4,821,121 to the Kodak CX4200, CX4230, CX4300, CX6200, CX6230, CX7220, CX7300, CX7310, and C300 Digital Still Cameras (the "Sunny 3/4 Digital Cameras") (with trial exhibit citations) | | Hearsay; Lacks foundation; FRE 403; Partial document/ lacks context; Lacks relevance |
| PTX-21 | 3/24/2006, Comparison of the claims of U.S. Patent No. 4,821,121 to the Kodak C310, C315, C330, CW330, C530, CD33, CD40, CD43, and CD50 Digital Still Cameras (the "Sunny 6 Digital Cameras") (with trial exhibit citations) | | Hearsay; Lacks foundation; FRE 403; Partial document/ lacks context; Lacks relevance |
| PTX-22 | Notes re: Type 1, Type 2, Type 3A, Type 3B and Type 3C | Akiyama Ex. 289 | |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-23 | Camera History and Leverage (ECKNYI005010266) | Akiyama Ex. 290 | |
| PTX-24 | List of Kodak digital cameras | Yamagata No. 329 | |
| PTX-25 | Chart re: Product Names | Yoshikawa No. 345 | |
| PTX-26 | 2/24/2006, List of Altek developed cameras | Chen No. 425 | |
| PTX-27 | 6/12/1998, Exchangeable Image File Format ("EXIF") Standard ver. 2.1 (AX035166-334) | | Hearsay; Lacks relevance |
| PTX-28 | 4/02, Exchangeable Image File Format ["EXIF"] Standard ver. 2.2 (AX035335-487 ) | Ligler Ex. 6 (ITC) | Hearsay; Lacks relevance |
| PTX-29 | 4/02, JEITA CP-3451, Exchangeable Image File Format for Digital Still Cameras: Exif Ver. 2.2 (AX061166-319) | Gray Ex. 6 | Hearsay; Lacks relevance |
| PTX-30 | 9/03, JEITA CP-3451-1, Exchangeable image file format for digital still cameras: Exif ver. 2.21 [Amendment ver 2.2] (EKCYHC000004614-26) | Gray Ex. 7 | Hearsay; Lacks relevance |
| PTX-31 | 12/98, JEIDA-49-2, Design rule for Camera File system, ver. 1.0 (AX201557-603) | Gray Ex. 8 | Hearsay; Lacks relevance |
| PTX-32 | 2003, JEITA CP-3461, Design Rule for Camera File system, DCF ver. 2.0, Draft (AX098574-626) (AX098574-626) | | Hearsay; Lacks relevance |
| PTX-33 | 2004, Kodak Easyshare CX7330 zoom digital camera User's Guide (AX037888-948) | Janson Ex. 70 | |
| PTX-34 | Easyshare Coors Digital Camera Engineering Requirement Spec (CX7330) rev. 1.0 (EKC001021710-761) | | |
| PTX-35 | 10/8/2003, Easyshare Coors Digital Camera Engineering Requirement Spec (CX7330) rev. 0.1 (EKC000035762-74) | Janson Ex. 8 | |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-36 | Coors Block Diagram ver. 1.1 (CX7330)  (EKC000043137) | Excerpt from Janson Ex. 26 | |
| PTX-37 | 1/30/2004, Coors Block Diagram ver. 1.0 (CX7330)  (EKC001021686) | Napoli Ex. 141 | |
| PTX-38 | 9/4/2003, CX7330 Circuit Diagram (EKCCCI011193-200) | Gomi Ex. 166 | |
| PTX-39 | 2/04, Kodak Coors (CX7330) Digital Camera User Interaction Spec ver. 1.1 (EKC001021704-09) | | |
| PTX-40 | 4/00, Application Report "Programmable DSP Platform for Digital Still Cameras" by Texas Instruments (AX201864-75) | | Lacks authenticity, Hearsay; Lacks foundation; Lacks relevance |
| PTX-41 | 2001, Technical Reference Manual (DSC25) ver. 1.1  (EKCNYI043224-843) | Yoshida Ex. 200 | |
| PTX-42 | 4/27/2001, Texas Instruments TMS320DSC25 System Specification Rev 0.1 (EKCCCI002051-114) (EKCCCI002050-114) | Napoli Ex. 135 | |
| PTX-43 | 4/27/2001, DSC25 System Spec. Rev. 0.1  (EKCCCI006239-304) | Ohtake Ex. 124 | |
| PTX-44 | 1/30/2002, DSC25 Register Manual Rev. 0.5  (EKCCCI008222-365) | Napoli Ex. 134 | |
| PTX-45 | 10/31/2001, DSC25 JPEG Codec v. 0.4  (EKCCCI007976-8024) | Napoli Ex. 133 | |
| PTX-46 | 2003, Texas Instruments Data Sheet for TMS320DSC25 Processor (AX201797-98) | | Lacks authenticity; Hearsay; Lacks relevance |
| PTX-47 | 9/22/2000, TI DSC Phase 2 iMX API Specification, Version 1.1 (EKCNYI005013517-589) | Akiyama Ex. 311 | |
| PTX-48 | 12/22/1999, TI DSC21 Imx Hardware Programming Interface, Version 0.2 (EKCNYI005013590-609) | Akiyama Ex. 313 | |
| PTX-49 | 3/02, Data Sheet Rev 0.3 for Hynix HY57V281620HC (L/S/T) Synchronous DRAM (AXD029368-380) | | |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-50 | 2002, AD9891/AD9895 Data Sheet Rev. A  (AXD029310-367) | | Lacks authenticity; Hearsay; Lacks relevance |
| PTX-51 | 5/14/2003, Translation of Data Sheet for Panasonic MN39482PQJ-Z (Japanese version at PTX-53) (AXD031168-201) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-52 | 5/28/2002, Data Sheet for Panasonic MN39481, initial version (Japanese) with translation (EKCCCI036445) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-53 | 5/14/2003, Data Sheet for Panasonic MN39482 (Japanese) (translation at PTX-51) (EKCNYI005011972-1002) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-54 | Kodak CX7330 SD bus traffic (AX201882-83) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-55 | Report "Tests performed on Kodak CX7300 Digital Camera" (AX201982-2008) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-56 | Kodak CX7330 Thumbnail Test (AXD032672-681) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-57 | 3/9/2005, Bristol IP-Chain Algorithm Spec  (EKCCCI002586-592) | | |
| PTX-58 | 8/12/2002, Bristol DSC25 ARM7 and C5409 communication (LS633) ver. 0.3 / Hideki Akiyama with translation (EKCCCI002728-45, AX211773-94) | | Lacks foundation; Lacks relevance |
| PTX-59 | 3/9/2005, Bristol DSC25: ARM7 and C5409 Communication Spec (LS633) ver. 0.1 with translation (EKCCCI005618-37, AX212270-92) | Akiyama Ex. 105 | Lacks foundation; Lacks relevance |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-60 | 7/29/2002, Bristol ARM IP Interface Spec [Bristol & Pacific & Atlantic] / Hiroko Ohtake with translation (EKCCCI014030-44; AX212819-833) | | Lacks foundation; Lacks relevance |
| PTX-61 | 7/24/2002, Bristol Camera F/W Task Interface DSPCtl <-> IPMain DSPCtl <-> IPEncode DSPCtl <-> IPDecode (LS633) ver. 0.01 / Taichi Okabayashi with translation (EKCCCI002770-95, AX211795-817) | | Lacks foundation; Lacks relevance |
| PTX-62 | 7/9/2003, F/W Task Interface DSPCtl <-> IPMain DSPCtl <-> IPEncode DSPCtl <-> IPDecode ver. 0.01 / Taichi Okabayashi with translation (EKCCCI003290-318, AX211968-93) | | Lacks foundation; Lacks relevance |
| PTX-63 | 3/14/2003, 2003 Camera F/W Task Interface Spec Control Task <-> DSP Control Task ver. 0.02 / Hirohisa Fujisaki with translation (EKCCCI002654-60, AX211717-22) | | Lacks foundation; Lacks relevance |
| PTX-64 | 6/27/2003, 2003 Kodak Camera F/W Task Interface Spec Control task <-> Local I/F task ver. 0.13 / H. Fujisaki with translation (EKCCCI002661-703, AX211723-72) | | Lacks foundation; Lacks relevance |
| PTX-65 | 2/6/2004, Coors Digital Camera Host Interface Spec rev. 0.02 (EKC001021687-703) | | Lacks foundation; Lacks relevance |
| PTX-66 | Summary of Intertask Messages of Sydney (EKC000122094-103) | Janson Ex. 23 | Lacks foundation; Lacks relevance |
| PTX-67 | Summary of Intertask Messages of Sydney (color version) | Janson Ex. 73 | Lacks foundation; Lacks relevance |
| PTX-68 | 7/2/2001, Kodak Sydney Camera F/W Capture Main Task Architecture and Flow, Version 1.00, with translation (EKC 001023433-447; AXD029839-853) | Domen Ex. 351 | Lacks foundation; Lacks relevance |
| PTX-69 | 11/28/2000, Kodak Sydney Camera F/W Task Interface Control <->Capture Main, Version 0.09 (EKC000122108-130) | Domen Ex. 352 | Lacks foundation; Lacks relevance |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-70 | 6/28/2001, Kodak Sydney Camera F/W Task Interface Capture Main <-> Image ISR, Version 1.00, with translation (EKCCCI003897-910; AX212588-601) | Domen Ex. 353 | Lacks foundation; Lacks relevance |
| PTX-71 | 6/28/2001, Kodak Sydney Camera F/W Task Interface Control <->Capture Main, Version 1.00, with translation (EKCCCI003931-957; AX212547-571) | Domen Ex. 355 | Lacks foundation; Lacks relevance |
| PTX-72 | 8/7/2000, Kodak Sydney Camera Image Info Structure Specification, Version 0.05 with translation (EKCCCI005020-040) | Kiri Ex. 362 | Lacks foundation; Lacks relevance |
| PTX-73 | 2003, The List of Li Task Interface to the other tasks, Version 0.01, with translation (EKCNYI005010408-421; AXD030909-921) | Kiri Ex. 363 | Lacks foundation; Lacks relevance |
| PTX-74 | 6/26/2000, Sydney Camera Image ISR Task Architecture ver. 0.01 / T. Kimura with translation (EKCCCI001829-58, AX211506-41) | | Lacks foundation; Lacks relevance |
| PTX-75 | 5/14/2001, Sydney Camera EXIF File Access Library Spec ver. 0.04 / H. Yamagata with translation (EKCCCI003647-68, AX212026-47) | | Lacks foundation; Lacks relevance |
| PTX-76 | 7/3/2001, Sydney Camera Storage Sub System Spec ver. 0.07 / T. Arai, Yamagata with translation (EKCCCI003684-759, AX212048-124) | | Lacks foundation; Lacks relevance |
| PTX-77 | 8/26/2003, Altek Thunderbird IRP&SW Interface Engineering Detail Design Document Rev. 0.01 (ALT000010383-389) | Hung Ex. 270 | Lacks foundation; Lacks relevance |
| PTX-78 | 12/5/2003, Circuit Diagram DS270 Base BB (toDM320) (ECKNYI005072210-216) | | Lacks foundation; Lacks relevance |
| PTX-79 | 6/5/2000, Sydney Camera F/W Task Interface Spec DSPCtl <-> IPMain DSPCtl <-> IPEncode DSPCtl <-> IPDecode ver. 1.00 / Hideki Akiyama with translation (EKCCCI004172-96, AX212723-47) | | Lacks foundation; Lacks relevance |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-80 | 3/13/2005, Sydney_Fix&Zoom Camera ARM-IPC Development Document ver. 0.4 / H. Ohtake with translation (EKCCCI004411-43, AX212125-69) | | Lacks foundation; Lacks relevance |
| PTX-81 | 6/5/2001, Sydney ARM IP Interface Spec. ver. 1.00 / Hideki Akiyama with translation (EKCCCI011855-69, AX212708-22) | | Lacks foundation; Lacks relevance |
| PTX-82 | 2/21/2001, Sydney ARM IP Interface Spec ver. 0.92 with translation (AX211124-37) | Akiyama Ex. 113 | Lacks foundation; Lacks relevance |
| PTX-83 | 2/15/2005, Sydney_Fix&Zoom DSP IPC (Thumb Nail Spec) / H. Ohtake with translation  (EKC001023812- 21, AX212748-59) | Janson Ex. 74 | Lacks foundation; Lacks relevance |
| PTX-84 | 10/24/2000, Sydney Camera F/W Architecture Specification v 0.21 (EKC000120931-1026) | Janson Ex. 18 | Lacks foundation; Lacks relevance |
| PTX-85 | 10/24/2000, Sydney Camera FW Architecture Spec ver. 0.21 [color version] with translation  (AX212602-707) | Smith Ex. 52 | Lacks foundation; Lacks relevance |
| PTX-86 | 3/13/2005, Sydney DSP FW Architecture ver. 0.26 with translation (EKC000120897-930) | Janson Ex. 19; Smith Ex. 53 | Lacks foundation; Lacks relevance |
| PTX-87 | 12/12/2000, Sydney DSP Software Spec ver. 0.95  (EKC 000121552-94) | Janson Ex. 20 | Lacks foundation; Lacks relevance |
| PTX-88 | 6/20/2000, Sydney Camera F/W Task Interface ver. 0.01  (EKC000029295-326) | Janson Ex. 21 | Lacks foundation; Lacks relevance |
| PTX-89 | 6/26/2000, Sydney Camera F/W Capture Main Task Architecture & Flow ver. 0.02 (EKC000121521-36) | Janson Ex. 22 | Lacks foundation; Lacks relevance |
| PTX-90 | 7/7/2005, Circuit Diagram DS270 BK-E001A (EKCNYI5076364-72) | | Lacks foundation; Lacks relevance |
| PTX-91 | 10/20/2000, Sydney DSP IP Interface Spec ver. 0.7 with translation (AX202378-91) | Janson Ex. 75 | Lacks foundation; Lacks relevance |
| PTX-92 | 3/14/2005, Sydney DSC21: ARM7 and C5409 Communication ver. 0.8 with translation  (AX202257-75) | Janson Ex. 76 | Lacks foundation; Lacks relevance |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-93 | 12/6/2000, Sydney Camera FW Task Interface Storage->IPMain ver. 0.08 with translation (AX202300-23) | Janson Ex. 85 | Lacks foundation; Lacks relevance |
| PTX-94 | 2/16/2001, Sydney Camera Storage Subsystem Specification ver. 0.06 with translation | Janson Ex. 86 | Lacks foundation; Lacks relevance |
| PTX-95 | 12/6/2000, Sydney Camera F/W Task Interface IPMain <-> HWJPG <-> IPEnc <-> IPDec ver. 0.6 with translation (AX202392-408) | Janson Ex. 87 | Lacks foundation; Lacks relevance |
| PTX-96 | 12/11/2000, Sydney Camera EXIF File Access Library Spec ver. 0.02 with translation (AX202324-44) | Janson Ex. 88 | Lacks foundation; Lacks relevance |
| PTX-97 | 10/13/2000, Sydney Camera F/W Task Interface DSPCtl->IPMain, IPEncode, IPDecode with translation (AX202276-99) | Janson Ex. 89 | Lacks foundation; Lacks relevance |
| PTX-98 | 5/21/2004, Circuit Diagram DS270BK-E001A (EKCCCI011385-394) | | Lacks foundation; Lacks relevance |
| PTX-99 | 2/15/2005, ARM-IPC Quickzview with translation (EKC01022120-53; AXD037939-972) | Ohtake Ex. 126 | Lacks foundation; Lacks relevance |
| PTX-100 | 12/27/2004, Source code build.dsp (EKCS02875-78) | Armstrong Ex. 91 | |
| PTX-101 | 6/15/2004, Circuit Diagram DS272BK-E001A (EKCCCI011242-250) | | Lacks foundation; Lacks relevance |
| PTX-102 | 1/1/2002, Kodak Easyshare LS443 zoom digital camera User's Guide (EKC000063553-674) | | |
| PTX-103 | 8/29/2002, Easyshare LS443 Digital Camera Engineering Requirement Specification Rev. 1.02 (EKCNYI005013936-986) | Akiyama Ex. 292 | |
| PTX-104 | 9/4/2002, LS443 Block Diagram (EKC000043145) | Excerpt from Janson Ex. 26 | |
| PTX-105 | 8/20/2002, LS443 Circuit Diagram (EKCCCI011049-055) | | Lacks foundation; Lacks relevance |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-106 | 7/9/2002, Kodak LS443 Ayers Rock Digital Camera User Interaction Spec ver. 1.03 (EKCNYI005099886-100200) | | |
| PTX-107 | 2/13/2002, IP-Chain Requirement Items for Andes and Ayers Rock (EKC000046488-491) | Yoshikawa Ex. 349 | |
| PTX-108 | 9/13/2001, Kodak Patagonia/Andes Camera SD Task Specification, Version 0.02 with translation (EKCNYI005004658-670; AXD036033-045) | Yamagata Ex. 343 | Lacks foundation; Lacks relevance |
| PTX-109 | 4/9/2002, Kodak Patagonia/Andes Camera SD/DOS Interface Specification, Version 0.70 with translation (EKCNYI005007809-864; AXD037839-894) | Yamagata Ex. 334 | Lacks foundation; Lacks relevance |
| PTX-110 | 6/26/2002, Kodak Ayers Rock Camera EXIF File Access Library Specification, Version 0.02 with translation (EKCNYI005008334-355; AXD037758-779) | Yamagata Ex. 341 | Lacks foundation; Lacks relevance |
| PTX-111 | 3/1/2002, Kodak Andes Camera Image Info Structure Specification, Version 0.04 with translation (EKCNYI005004774-794) | Yamagata Ex. 338 | Lacks foundation; Lacks relevance |
| PTX-112 | 12/6/2001, Kodak Andes Camera F/W Task Interface Capture Main <-> Images ISR, Version 0.02 with translation (EKCNYI005098852-869) | Domen Ex. 354 | Lacks foundation; Lacks relevance |
| PTX-113 | 1/24/2002, Kodak Patagonia Camera Image Info Structure Specification, Version 0.05 with translation (EKCNYI005012920-939; AXD031552-577) | Domen Ex. 356 | Lacks foundation; Lacks relevance |
| PTX-114 | 2003, Kodak Easyshare DX6440 zoom digital camera User's Guide (AX036670-803) | Janson Ex. 63 | |
| PTX-115 | 6/10/2003, Easyshare DX6440 Digital Camera Engineering Requirement Spec rev 1.1 (EKC002002319-336) | | |
| PTX-116 | 6/10/2003, Easyshare DX6440 Digital Camera Engineering Requirement Spec rev. 1.1 (EKC001020839-56) | | |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-117 | 2/12/2003, Boardwalk Block Diagram ver. 0.1  (EKC000043134) | Excerpt from Janson Ex. 26 | |
| PTX-118 | 2/12/2003, Boardwalk Block Diagram ver. 0.1 (EKC001020807) | Napoli Ex. 139 | |
| PTX-119 | 11/25/2002, DX6440 Circuit Diagram (EKCCCI011061-70) | | Lacks foundation; Lacks relevance |
| PTX-120 | 6/23/2003, DX6440 Circuit Diagram (EKCCCI011073-82) | Gomi Ex. 171 | Lacks foundation; Lacks relevance |
| PTX-121 | 7/9/2003, Kodak Boardwalk Digital Camera User Interaction Spec ver. 1.2 (EKC001020808-15) | | |
| PTX-122 | 7/14/2003, Data Sheet Rev 2.21 for Hynix HY57V561620B[L/S]T Synchronous DRAM (AXD029381-393) | Gray Ex. 3 | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-123 | 2003, AD9991 Data Sheet Rev. 0 (AX202009-68) | Yoshida Ex. 198 | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-124 | 2003, Data Sheet Rev. 0 for Analog Devices AD9991 10-bit CCD Signal Processor (AX200090-149) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-125 | Kodak DX6440 SD bus traffic (AX201917-18) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-126 | 4/10/2003, Boardwalk Camera EXIF File Access Library Spec (DX6440) ver. 0.02 / H. Yamagata with translation (EKCCCI002515-39, AX211692-716) | | Lacks foundation; Lacks relevance |
| PTX-127 | 6/20/2003, Boardwalk / HiZoom CFA Format ver. 0.87 / H. Akiyama with translation (EKCCCI003206-19, AX211887-903) | | |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-128 | 2003, Kodak Easyshare CX6330 zoom digital camera User's Guide (AX038250-369) | Janson Ex. 68 | |
| PTX-129 | 3/18/2003, Easyshare Atlantic Digital Camera Engineering Requirement Spec rev. 1.0 (EKC001027769-822) | | |
| PTX-130 | 12/20/2002, Atlantic Block Diagram ver. 0.3 (EKC000043132) | | |
| PTX-131 | Atlantic Block Diagram (EKC000032591) | Janson Ex. 24 | |
| PTX-132 | 12/20/2002, Atlantic Block Diagram ver. 0.3 (EKC001027751) | Napoli Ex. 148 | |
| PTX-133 | 9/25/2002, CX6330 Circuit Diagram (EKCCCI011024-31) | Gomi Ex. 165 | Lacks foundation; Lacks relevance |
| PTX-134 | 5/26/2003, Kodak Atlantic Digital Camera User Interaction Spec ver. 1.10 (EKC001027823-156) | | |
| PTX-135 | 10/3/2002, Kodak Atlantic Digital Camera User Interaction Spec ver. 0.85 (EKC000122318-664) | Janson Ex. 14 | |
| PTX-136 | Kodak CX6330 SD bus traffic (AX201880-81) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-137 | 4/21/2003, Atlantic Camera EXIF File Access Library Spec (CX6330) ver. 0.02 / H. Yamagata with translation (EKCCCI002231-55, AX211582-606) | | Lacks foundation; Lacks relevance |
| PTX-138 | 8/12/2002, Bristol / Pacific / Atlantic Camera F/W Task Interface Storage <-> IPMain ver. 0.02 / H. Ohtake with translation (EKCCCI002746-69; AX212760-786) | | Lacks foundation; Lacks relevance |
| PTX-139 | 11/13/2002, Atlantic VRAM Format (CX6330) ver. 0.2 / H. Akiyama with translation (EKCCCI005305-18, AX212170-91) | | Lacks foundation; Lacks relevance |
| PTX-140 | 11/20/2002, Atlantic Camera CFA Format Spec (CX6330) ver. 0.02 with translation (EKCCCI005406-24, AX212192-210) | | |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-141 | 2003, Kodak Easyshare DX6340 zoom digital camera User's Guide (AX036804-937) | Janson Ex. 58 | |
| PTX-142 | 6/10/2003, Easyshare DX6340 Digital Camera Engineering Requirement Spec  rev. 1.6  (EKC002002264-318) | | |
| PTX-143 | 9/20/2002, Easyshare Pacific Digital Camera Engineering Requirement Spec rev. 0.50 (EKC000127466-522) | Janson Ex. 10 | |
| PTX-144 | 11/20/2002, Collection of block diagrams (EKC000043131-51) | Janson Ex. 26 | |
| PTX-145 | Pacific Block Diagram (EKC001022713) | Napoli Ex. 143 | |
| PTX-146 | 7/22/2002, DX6340 Circuit Diagram (EKCCCI011468-477) | | Lacks foundation; Lacks relevance |
| PTX-147 | 4/3/2003, DX6340 Circuit Diagram (EKCCCI011480-89) | Gomi Ex. 177 | Lacks foundation; Lacks relevance |
| PTX-148 | 7/9/2003, Kodak Pacific Digital Camera User Interaction Spec ver. 1.6 (EKC001023077-432) | | |
| PTX-149 | Kodak DX6340 SD bus traffic (AX201915-16) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-150 | 3/19/2003, Pacific Camera EXIF File Access Library Spec ver. 0.03 / H. Yamagata with translation (EKCCCI000923-47, AX211367-91) | | Lacks foundation; Lacks relevance |
| PTX-151 | 12/25/2002, Pacific Camera Storage Sub System Spec (DX6340) ver. 0.03 / M. Onoda with translation (EKCCCI001113-204, AX211392-505) | | Lacks foundation; Lacks relevance |
| PTX-152 | 10/30/2002, Pacific Camera Image Info Structure Spec ver. 0.03 / Hirohisa Fujisaki with translation (EKCCCI015372-93; AX212870-898) | | Lacks foundation; Lacks relevance |
| PTX-153 | 1/1/2004, Kodak Easyshare CX6445 zoom digital camera User's Guide (EKC000061764-893) | | |
| PTX-154 | 1/21/2005, Circuit Diagram DS283BK-E003A (EKCNYI005049362-368) | | |

| Exhibit No. | Description | Deposition Ex. No. | Objections |
|---|---|---|---|
| PTX-155 | 4/6/2004, Kodak CX6445 Digital Camera User Interaction Spec ver. 0.1 (EKC001029291-98) | | Lacks foundation; Lacks relevance |
| PTX-156 | Kodak CX6445 SD bus traffic (AX203380-81) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-157 | 2004, Kodak Easyshare DX7630 zoom digital camera User's Guide (AX036394-460) | Janson Ex. 62 | |
| PTX-158 | 3/9/2004, Easyshare DX7630 Digital Camera Engineering Requirement Spec rev. 1.1 (EKC001025706-58) | Akiyama Ex. 118 | |
| PTX-159 | Bud PP Block Diagram ver 1.0 (EKC000043139) | Janson Ex. 26 | |
| PTX-160 | 4/30/2003, Bud Block Diagram (EKC001025549) | Yoshida Ex. 197 | |
| PTX-161 | 10/31/2003, DX7630 Circuit Diagram (EKCCCI003420-26) | Gomi Ex. 180 | Lacks foundation; Lacks relevance |
| PTX-162 | 9/9/2003, Kodak Bud Digital Camera DX7630 User Interaction Spec ver. 1.2 (EKC001024503-5228) | Napoli Ex. 163 | |
| PTX-163 | Kodak DX7630 SD bus traffic (AXD022492-494) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-164 | Kodak DX7630 SD bus traffic (AX201936-45) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-165 | Report "Test performed on Kodak DX7630 Digital Camera" (AX201949-81) | | Lacks authenticity; Hearsay; Lacks foundation; Lacks relevance |
| PTX-166 | 11/12/2002, DM270 Preliminary System Spec. v. 0.2 (EKCCCI001684-796) | Napoli Ex. 136 | |
| PTX-167 | 01/03, Technical Reference Manual [DM270] ver 1.3 (EKCNYI041909-2743) | | |