# EXHIBIT 8.Z

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

Civil Action No.

04-1373-KAJ

*********************************

AMPEX CORPORATION,

Plaintiff,

v.

EASTMAN KODAK COMPANY, ALTEK

CORPORATION and CHINON

INDUSTRIES, INC.,

Defendants.

*********************************

VIDEOTAPED DEPOSITION OF DIETER
W. PREUSS, PhD, a witness called on behalf of
the Plaintiff, taken pursuant to the Federal
Rules of Civil Procedure, before Maureen
O'Connor Pollard, RPR, CLR, and Notary Public
within and for the Commonwealth of
Massachusetts, at the offices of Ropes & Gray,
LLP, One International Place, Boston,
Massachusetts, on the 5th of May, 2006,
commencing at 9:29 o'clock a.m.



**LEGALINK**
A **WORDWAVE** COMPANY

LegaLink San Francisco        tel (415) 357-4300      www.legalink.com
575 Market Street, 11th Floor    tel (800) 869-9132
San Francisco, CA 94105        fax (415) 357-4301

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

DIETER W. PREUSS, Ph.D.  May 5, 2006

| Time | Line | |
|---|---|---|
| 09:59:37 | 1 | A.    For the Scitex 300 system the same |
| 09:59:41 | 2 | would apply what I just said for the Chromacom |
| 09:59:43 | 3 | system, anticipated and also obvious. |
| 09:59:50 | 4 | Q.    Do you express your opinion that the |
| 09:59:52 | 5 | Scitex Response-300 system renders obvious the |
| 09:59:56 | 6 | asserted claims of the '121 patent under Ampex's |
| 09:59:59 | 7 | interpretation of the claim language anywhere in |
| 10:00:02 | 8 | your expert report? |
| 10:00:03 | 9 | MR. HIRSCH:    Objection. |
| 10:00:04 | 10 | A.    I didn't express it, no. |
| 10:00:07 | 11 | BY MR. SCHOENHARD: |
| 10:00:09 | 12 | Q.    Please direct your attention to |
| 10:00:10 | 13 | paragraph 28 of your expert report on page six. |
| 10:00:17 | 14 | Do you see that paragraph? |
| 10:00:27 | 15 | A.    28. |
| 10:00:27 | 16 | MR. HIRSCH:    Page six, paragraph 28. |
| 10:00:30 | 17 | THE WITNESS:    I know. |
| 10:00:35 | 18 | Yes. |
| 10:00:36 | 19 | BY MR. SCHOENHARD: |
| 10:00:43 | 20 | Q.    Please also direct your attention to |
| 10:00:44 | 21 | paragraph 100 on page 34 of your expert report. |
| 10:01:01 | 22 | A.    Yes. |
| 10:01:01 | 23 | Q.    Do you have any opinions with respect |
| 10:01:05 | 24 | to the obviousness of the asserted claims of the |

26

DIETER W. PREUSS, Ph.D.  May 5, 2006

| | | |
|---|---|---|
| 10:01:08 | 1 | '121 patent in light of the Hell Chromacom |
| 10:01:11 | 2 | system in combination with the Quantel Paintbox |
| 10:01:14 | 3 | beyond what you state in paragraphs 28 and 100 |
| 10:01:17 | 4 | of your expert report? |
| 10:01:19 | 5 | MR. HIRSCH:  Objection. |
| 10:01:41 | 6 | A.   No, I have no additional opinion on |
| 10:01:56 | 7 | that. |
| 10:01:56 | 8 | BY MR. SCHOENHARD: |
| 10:02:09 | 9 | Q.   Returning your attention to paragraph |
| 10:02:11 | 10 | 28 on page six of your expert report, do you see |
| 10:02:18 | 11 | the clause that reads "to the extent that a |
| 10:02:21 | 12 | claim construction is asserted or adopted under |
| 10:02:24 | 13 | which either of the Chromacom or Response-300 do |
| 10:02:27 | 14 | not meet each element of the asserted claims"? |
| 10:02:30 | 15 | A.   Yes. |
| 10:02:33 | 16 | Q.   Have you identified any particular |
| 10:02:35 | 17 | alternative claim construction under which a |
| 10:02:41 | 18 | combination of the Chromacom and the Quantel |
| 10:02:44 | 19 | Paintbox would render any of the asserted claims |
| 10:02:47 | 20 | of the '121 patent obvious? |
| 10:02:50 | 21 | MR. HIRSCH:  Objection.  Vague. |
| 10:02:53 | 22 | A.   No, I have not identified such a |
| 10:02:58 | 23 | theoretical claim construction. |
| 10:03:00 | 24 | BY MR. SCHOENHARD: |

27

DIETER W. PREUSS, Ph.D. May 5, 2006

| | | |
|---|---|---|
| 10:03:01 | 1 | Q. Have you identified any particular |
| 10:03:03 | 2 | features of the Quantel Paintbox that would be |
| 10:03:06 | 3 | combined with the Hell Chromacom system to |
| 10:03:07 | 4 | render any of the asserted claims of the '121 |
| 10:03:10 | 5 | patent obvious? |
| 10:03:13 | 6 | MR. HIRSCH: Objection. |
| 10:03:14 | 7 | A. In this opinion I express that under |
| 10:03:22 | 8 | the -- or provided that a certain not yet really |
| 10:03:29 | 9 | known claim construction combination is adopted, |
| 10:03:32 | 10 | I understand the judge does this at some time |
| 10:03:35 | 11 | later, and since I don't know that not yet |
| 10:03:39 | 12 | which, under this provision, so I really cannot |
| 10:03:44 | 13 | identify exactly which features would render, |
| 10:03:52 | 14 | when they are combined in both systems, would |
| 10:03:55 | 15 | render the claims obvious. |
| 10:03:56 | 16 | BY MR. SCHOENHARD: |
| 10:03:57 | 17 | Q. Have you identified any motivation to |
| 10:04:00 | 18 | combine any particular feature of the Quantel |
| 10:04:02 | 19 | Paintbox with the Hell Chromacom system? |
| 10:04:05 | 20 | MR. HIRSCH: Objection. Vague. |
| 10:04:06 | 21 | A. Could you repeat the question, please? |
| 10:04:13 | 22 | BY MR. SCHOENHARD: |
| 10:04:14 | 23 | Q. Have you identified any motivation to |
| 10:04:16 | 24 | combine any particular feature of the Quantel |

28

DIETER W. PREUSS, Ph.D.  May 5, 2006

| | | |
|---|---|---|
| 10:04:18 | 1 | Paintbox with the Hell Chromacom system? |
| 10:04:21 | 2 | A.    Not any particular, no. |
| 10:04:34 | 3 | Q.    What do you mean by the Quantel |
| 10:04:39 | 4 | Digital Library System? |
| 10:04:43 | 5 | MR. HIRSCH:  Objection.  Vague. |
| 10:04:46 | 6 | A.    I understand that is an even older |
| 10:04:50 | 7 | system of Quantel, I mean older than the |
| 10:04:53 | 8 | Paintbox, which also contains a still store, and |
| 10:04:58 | 9 | does a lot of image handling functions related |
| 10:05:02 | 10 | to the TV broadcasting application. |
| 10:05:06 | 11 | BY MR. SCHOENHARD: |
| 10:05:07 | 12 | Q.    When you refer to the Quantel Digital |
| 10:05:10 | 13 | Library System, is there a particular model of |
| 10:05:12 | 14 | that system to which you are referring? |
| 10:05:15 | 15 | MR. HIRSCH:  Objection. |
| 10:05:17 | 16 | A.    No, I don't refer to any particular |
| 10:05:19 | 17 | model. |
| 10:05:20 | 18 | BY MR. SCHOENHARD: |
| 10:05:25 | 19 | Q.    Do you have any opinions with respect |
| 10:05:26 | 20 | to the obviousness of the asserted claims of the |
| 10:05:29 | 21 | '121 patent in light of the Hell Chromacom |
| 10:05:32 | 22 | system in combination with the Quantel Digital |
| 10:05:36 | 23 | Library System beyond what you state in |
| 10:05:37 | 24 | paragraphs 28 and 100 of your expert report? |

29

DIETER W. PREUSS, Ph.D.  May 5, 2006

| | | |
|---|---|---|
| 10:05:43 | 1 | A.    No, I don't have any opinion beyond |
| 10:05:56 | 2 | that. |
| 10:05:56 | 3 | Q.    Have you identified any particular |
| 10:06:00 | 4 | alternative claim construction under which such |
| 10:06:03 | 5 | a combination would render any of the asserted |
| 10:06:05 | 6 | claims of the '121 patent obvious? |
| 10:06:07 | 7 | MR. HIRSCH:  Objection. |
| 10:06:08 | 8 | A.    No, I also have not identified any |
| 10:06:13 | 9 | particular claim construction. |
| 10:06:15 | 10 | BY MR. SCHOENHARD: |
| 10:06:16 | 11 | Q.    Have you identified any particular |
| 10:06:17 | 12 | features of the Quantel Digital Library System |
| 10:06:21 | 13 | that would be combined with the Hell |
| 10:06:23 | 14 | Chromacom -- |
| 10:06:24 | 15 | MR. HIRSCH:  Objection. |
| 10:06:25 | 16 | BY MR. SCHOENHARD: |
| 10:06:25 | 17 | Q.    -- Hell Chromacom system to render any |
| 10:06:28 | 18 | of the asserted claims of the '121 patent |
| 10:06:30 | 19 | obvious? |
| 10:06:31 | 20 | MR. HIRSCH:  Objection. |
| 10:06:32 | 21 | A.    Also no particular feature I have |
| 10:06:35 | 22 | identified. |
| 10:06:36 | 23 | BY MR. SCHOENHARD: |
| 10:06:36 | 24 | Q.    Have you identified any motivation to |

30

DIETER W. PREUSS, Ph.D.  May 5, 2006

| | | |
|---|---|---|
| 10:06:38 | 1 | combine any particular feature of the Quantel |
| 10:06:41 | 2 | Digital Library System with the Hell Chromacom |
| 10:06:43 | 3 | system? |
| 10:06:44 | 4 | MR. HIRSCH:  Objection. |
| 10:06:44 | 5 | A.   Any motivation to combine.  Yes, these |
| 10:07:00 | 6 | systems, like the Quantel systems, all of the |
| 10:07:04 | 7 | Quantel systems, were in -- with regard to the |
| 10:07:11 | 8 | technology, they were about very similar to the |
| 10:07:15 | 9 | pre-press systems, and therefore it would have |
| 10:07:18 | 10 | been obvious to look at these to find features |
| 10:07:20 | 11 | in there which could be combined in order to |
| 10:07:26 | 12 | make or to render the claims obvious.  That is |
| 10:07:32 | 13 | the motivation, I think.  Technically they are |
| 10:07:36 | 14 | rather similar. |
| 10:07:37 | 15 | BY MR. SCHOENHARD: |
| 10:07:37 | 16 | Q.   Is there any particular feature of the |
| 10:07:39 | 17 | Quantel Digital Library System for which you |
| 10:07:42 | 18 | have identified any motivation to combine that |
| 10:07:45 | 19 | system with the Hell Chromacom system? |
| 10:07:47 | 20 | MR. HIRSCH:  Objection. |
| 10:07:47 | 21 | A.   No particular feature, no. |
| 10:07:56 | 22 | BY MR. SCHOENHARD: |
| 10:07:58 | 23 | Q.   Do you have any opinions with respect |
| 10:08:00 | 24 | to the obviousness of the asserted claims of the |

31

# EXHIBIT 8.AA

Case 1:04-cv-01373-KAJ      Document 468-3      Filed 10/23/2006      Page 10 of 47

VOLUME: I

PAGES: 1-146

EXHIBITS: 40-52

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - x

AMPEX CORPORATION,

               Plaintiff,

  v.                          Civil Action

EASTMAN KODAK COMPANY, ALTEK      No. 04-1373-KAJ

CORPORATION and CHINON

INDUSTRIES, INC.,

               Defendants.

- - - - - - - - - - - - - - - - - x

# CERTIFIED COPY

VIDEOTAPED DEPOSITION of RICHARD J. TAYLOR

April 28, 2006

9:38 a.m.

Ropes & Gray LLP

One International Place

Boston, Massachusetts

Reporter: Michael D. O'Connor, RPR



**LEGALINK**
A **WORDWAVE** COMPANY

LegaLink San Francisco          tel (415) 357-4300      www.legalink.com
575 Market Street, 11th Floor    tel (800) 869-9132
San Francisco, CA 94105          fax (415) 357-4301

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 10:09:07 | 1 | A.    Yes, this was referring to the 6000. |
| 10:09:16 | 2 | Q.    In section Roman numeral IV of your report, |
| 10:09:26 | 3 | Pages 9 through 12, it's the heading "Summary of |
| 10:09:29 | 4 | Opinions."  Is this a complete summary of your |
| 10:09:39 | 5 | opinions -- |
| 10:09:39 | 6 | MR. SUMMERSGILL:  Objection. |
| 10:09:40 | 7 | Q.    -- that you currently hold? |
| 10:09:42 | 8 | MR. SUMMERSGILL:  Objection to the phrase |
| 10:09:43 | 9 | "complete summary," but you can answer. |
| 10:09:54 | 10 | A.    The trouble is, I don't understand the |
| 10:09:55 | 11 | question, because how -- can you define what you |
| 10:10:02 | 12 | mean by a complete summary? |
| 10:10:06 | 13 | Q.    For example, in your ITC opinions you dealt |
| 10:10:11 | 14 | with additional pieces of prior art, such as ADO, |
| 10:10:18 | 15 | and ADDA, A-D-D-A. You're no longer intending to |
| 10:10:23 | 16 | testify as to such other prior art; is that correct? |
| 10:10:51 | 17 | A.    This expert report is the basis of my |
| 10:10:59 | 18 | opinion and testify for this case in Delaware. |
| 10:11:10 | 19 | Q.    On Page 10, top of the page, part of |
| 10:11:14 | 20 | Paragraph 38, you say that you observed -- well, you |
| 10:11:17 | 21 | say you also "reinspected the Quantel Paint Box |
| 10:11:21 | 22 | system located in the lab at Quantel."  Do you mean |
| 10:11:27 | 23 | to say that you reinspected it subsequent to your |
| 10:11:32 | 24 | testimony in the ITC case? |

22

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 01:49:08 | 1 | A.    Not that I recall, no. |
| 01:49:28 | 2 | Q.    In Paragraph 77 you discuss that |
| 01:49:36 | 3 | reduced-size image stored in random access memory, |
| 01:49:39 | 4 | this is in the context of the Paint Box, and the |
| 01:49:41 | 5 | third sentence says, "When the Paint Box operator |
| 01:49:44 | 6 | used the cut and paste feature to generate a |
| 01:49:49 | 7 | reduced-size image, the reduced size image was |
| 01:49:50 | 8 | generated and transferred from the size reducer to a |
| 01:49:53 | 9 | frame store."  Is it correct that in order to reduce |
| 01:49:57 | 10 | the size of an image, that image has to first be |
| 01:50:00 | 11 | stored on disk in the Paint Box? |
| 01:50:40 | 12 | A.    Yeah, the size reducer worked at disk |
| 01:50:43 | 13 | speed. |
| 01:50:49 | 14 | Q.    So am I correct in saying that in order to |
| 01:50:51 | 15 | reduce the size of a picture, that picture had to |
| 01:50:54 | 16 | first be stored on disk; that's the way the Paint |
| 01:51:00 | 17 | Box worked? |
| 01:51:00 | 18 | A.    It would come from the disk, yes. |
| 01:51:05 | 19 | Q.    On Paragraph 91 on Page 30, you discuss |
| 01:51:10 | 20 | your obviousness opinion, and state in the second |
| 01:51:19 | 21 | sentence, "There was an explicit motivation to |
| 01:51:22 | 22 | combine the DLS 6030 with the Paint Box." |
| 01:51:29 | 23 | What is the result of the combination that |
| 01:51:31 | 24 | you're basing your opinion on? |

LegaLink San Francisco  (800) 869-9132

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 01:51:38 | 1 | MR. SUMMERSGILL:  Objection. |
| 01:51:39 | 2 | Q.   I.e., what is the combination that you're |
| 01:51:41 | 3 | referring to? |
| 01:51:43 | 4 | MR. SUMMERSGILL:  Objection. |
| 01:51:53 | 5 | A.   I'm not sure I understand your question. |
| 01:51:56 | 6 | Are you saying was the combination Paint Box and |
| 01:52:01 | 7 | DLS? |
| 01:52:01 | 8 | Q.   What specific combination are you referring |
| 01:52:04 | 9 | to here? |
| 01:52:04 | 10 | A.   The Paint Box working with the DLS. |
| 01:52:07 | 11 | Q.   Could you describe how that would work, how |
| 01:52:11 | 12 | they would be connected up or configured? |
| 01:52:20 | 13 | A.   This was the straightforward video way |
| 01:52:22 | 14 | where the video output of the Paint Box would go |
| 01:52:25 | 15 | into the video input of the DLS, which, in turn, |
| 01:52:28 | 16 | increased the number of frame stores available. |
| 01:52:35 | 17 | Q.   So that's the specific combination you're |
| 01:52:37 | 18 | talking about here; is that right? |
| 01:52:56 | 19 | A.   Yes. |
| 01:52:58 | 20 | Q.   Then further into that, toward the end of |
| 01:53:03 | 21 | the paragraph, the last sentence of Paragraph 91, |
| 01:53:08 | 22 | you say, "To the extent a claimed construction is |
| 01:53:12 | 23 | adopted under which the Paint Box does not meet all |
| 01:53:13 | 24 | of the elements of the asserted claims, it is my |

78

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 01:53:14 | 1 | opinion that a combination of the Paint Box with the |
| 01:53:18 | 2 | DLS 6030, would render the asserted claims obvious." |
| 01:53:24 | 3 | What claim construction are you referring |
| 01:53:26 | 4 | to here?  Is there a specific alternative claim |
| 01:53:33 | 5 | construction you have in mind? |
| 01:54:22 | 6 | A.   I think it's a construction talking about |
| 01:54:29 | 7 | numbers of frame stores. |
| 01:54:35 | 8 | Q.   So what claim element would be met by this |
| 01:54:43 | 9 | combination that you're positing here? |
| 01:54:48 | 10 | MR. SUMMERSGILL:   Objection. |
| 01:55:00 | 11 | A.   I'm saying, in general terms, you have the |
| 01:55:08 | 12 | 6000 that could browse images.  You had the Paint |
| 01:55:25 | 13 | Box that could store reduced-size images using only |
| 01:55:46 | 14 | the space on the disk on that reduced-size image. |
| 01:55:55 | 15 | So the two working together would appear to |
| 01:56:00 | 16 | me to, in general, if it was the side that either |
| 01:56:12 | 17 | one didn't meet, the two of them together must be |
| 01:56:16 | 18 | considered. |
| 01:56:18 | 19 | Q.   And so could you give me an example of a |
| 01:56:22 | 20 | particular use of both together that would be |
| 01:56:27 | 21 | pertinent to your analysis? |
| 01:57:10 | 22 | A.   Well, let's take, for example, supposing it |
| 01:57:13 | 23 | was decided that you had to display the outputs, you |
| 01:57:29 | 24 | could have a reduced-size image come from Paint Box |

79

RICHARD J. TAYLOR  April 28, 2006

| 01:57:34 | 1 | into the DLS and you would have a full-sized image |
| 01:57:43 | 2 | placed in the output, one output store of the 6030, |
| 01:57:47 | 3 | and a Paint Box reduced-size image placed in the |
| 01:57:52 | 4 | other store. |
| 01:57:53 | 5 | Q.   How would you get the reduced-size image |
| 01:57:58 | 6 | from the Paint Box into one of the output stores of |
| 01:58:00 | 7 | the DLS? |
| 01:58:14 | 8 | A.   That would be a video connection.  Yeah, |
| 01:58:26 | 9 | done by video connection. |
| 01:58:28 | 10 | Q.   Wouldn't it have to go to the disk of the |
| 01:58:31 | 11 | DLS first and then be called up to the output store? |
| 01:58:37 | 12 | A.   Yes, it would. |
| 01:58:39 | 13 | Q.   So how would that be any different from |
| 01:58:41 | 14 | just calling up an image that's already stored on |
| 01:58:45 | 15 | disk just with the DLS alone? |
| 01:59:03 | 16 | A.   In that example, it wouldn't.  I agree. |
| 01:59:07 | 17 | Q.   Were there any other examples that would |
| 01:59:09 | 18 | make a difference between the combination and either |
| 01:59:12 | 19 | one alone? |
| 01:59:18 | 20 | MR. SUMMERSGILL:   Objection. |
| 01:59:30 | 21 | A.   Well, for example, I've already talked |
| 01:59:36 | 22 | about the auto numbering, a combination of the auto |
| 01:59:52 | 23 | numbering, and if, for example, someone was to |
| 01:59:57 | 24 | decide that the Paint Box as a hypothetical didn't |

80

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 02:00:01 | 1 | have the auto numbering we've talked about, |
| 02:00:08 | 2 | certainly the still store did. |
| 02:00:12 | 3 | So if you combine the capabilities of Paint |
| 02:00:17 | 4 | Box in terms of storing its reduced-size images, |
| 02:00:29 | 5 | browsing reduced-size images, and the still stores |
| 02:00:33 | 6 | auto numbering, you have a very powerful combination |
| 02:00:38 | 7 | there. |
| 02:00:43 | 8 | Q.    So now you're talking about actually |
| 02:00:46 | 9 | modifying the Paint Box to have auto numbering; |
| 02:00:48 | 10 | you're not just connecting the two devices together? |
| 02:00:51 | 11 | A.    Maybe I'm confused on the law here. |
| 02:00:54 | 12 | MR. SUMMERSGILL:    Objection.    You can |
| 02:00:55 | 13 | answer. |
| 02:00:59 | 14 | A.    Maybe I'm confused on the law, but |
| 02:01:01 | 15 | certainly if you got two machines that are designed |
| 02:01:04 | 16 | to work together, and in my example with auto |
| 02:01:15 | 17 | numbering, you're the lawyer, not me, but I didn't |
| 02:01:18 | 18 | think the law required you to actually say did that |
| 02:01:22 | 19 | auto numbering move across to Paint Box.    A |
| 02:01:26 | 20 | combination of the two makes it obvious you can use |
| 02:01:28 | 21 | that auto numbering in Paint Box. |
| 02:01:30 | 22 | Q.    That's what I'm trying to find out. |
| 02:01:32 | 23 | A.    I thought your question was did we, and I'm |
| 02:01:36 | 24 | saying, as I understand it, you would simply have to |

81

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 02:01:39 | 1 | have the motivation, but you could see those two |
| 02:01:44 | 2 | ideas side by side in two machines designed to work |
| 02:01:49 | 3 | together, therefore it's obvious you could use that |
| 02:01:52 | 4 | technique in that machine. |
| 02:01:52 | 5 | Q.   I understand what you're saying.  I just |
| 02:01:54 | 6 | wanted to make sure I understood what your position |
| 02:01:57 | 7 | was.  Any other combinations or using one idea in -- |
| 02:02:07 | 8 | A.   I'm sure there are.  I'm sure I can't think |
| 02:02:20 | 9 | of them sitting here at the moment, but I'm sure |
| 02:02:23 | 10 | there are combinations. |
| 02:02:23 | 11 | Q.   In Paragraph 92 you make a similar |
| 02:02:26 | 12 | statement of opinion with respect to the combination |
| 02:02:27 | 13 | of the Paint Box with either the Hell Chromacom or |
| 02:02:33 | 14 | the Scitex response 300.  Again, what specific |
| 02:02:39 | 15 | combination or combinations are you relying on? |
| 02:02:54 | 16 | MR. SUMMERSGILL:  Objection. |
| 02:02:55 | 17 | A.   Well, for example, I think I'm writing |
| 02:03:04 | 18 | saying it's no dispute that a reduced-size image on |
| 02:03:13 | 19 | a Chromacom occupies only the space in the memory of |
| 02:03:18 | 20 | that image itself. |
| 02:03:24 | 21 | So again, if, for example, it was decided |
| 02:03:26 | 22 | hypothetically that Paint Box didn't have that or |
| 02:03:31 | 23 | that the still store didn't have that, those two |
| 02:03:35 | 24 | minutes, which were in very similar fields, that |

82

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 02:03:41 | 1 | combination would render it obvious that you could |
| 02:03:46 | 2 | store an image in, say, the still store, using only |
| 02:03:53 | 3 | the amount of oxide that the picture took up. |
| 02:04:00 | 4 | Q.    What do you base your knowledge of the Hell |
| 02:04:04 | 5 | Chromacom or the Scitex Response 300 on? |
| 02:04:11 | 6 | A.    I don't purport to be an expert in those, |
| 02:04:15 | 7 | but I do have some knowledge because of Quantel's |
| 02:04:18 | 8 | involvement in the graphic arts business a few years |
| 02:04:21 | 9 | ago. |
| 02:04:22 | 10 | Q.    Could you elaborate on how you learned |
| 02:04:24 | 11 | about these devices? |
| 02:04:27 | 12 | A.    We used to make a machine called the |
| 02:04:35 | 13 | Graphic Paint Box that was in a similar field.  It |
| 02:04:40 | 14 | wasn't necessarily competitive, because one is |
| 02:04:42 | 15 | designed to be used by an operator.  The other was |
| 02:04:46 | 16 | designed to be used by an artist, but they were in |
| 02:04:49 | 17 | very similar fields.  Therefore, I got to know about |
| 02:04:57 | 18 | that side of the industry. |
| 02:05:01 | 19 | Q.    Did you learn about the circuitry of these |
| 02:05:06 | 20 | devices? |
| 02:05:12 | 21 | A.    Only because we used to have to interface |
| 02:05:19 | 22 | to them. |
| 02:05:22 | 23 | Q.    So were you given access to schematics or |
| 02:05:26 | 24 | software or any other internal documentation |

83

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 02:05:30 | 1 | concerning these devices? |
| 02:05:31 | 2 | A.    No. |
| 02:05:36 | 3 | Q.    In an earlier question, you said you |
| 02:05:38 | 4 | thought there was no dispute over whether one of |
| 02:05:43 | 5 | these devices could store only the reduced-size |
| 02:05:50 | 6 | image, you mentioned oxide.  What do you base that |
| 02:05:54 | 7 | on? |
| 02:05:58 | 8 | A.    Of course, the best of my knowledge, from |
| 02:06:01 | 9 | what I learned at the time, that's how they worked. |
| 02:06:05 | 10 | They treated the picture like a computer treats |
| 02:06:09 | 11 | pictures. |
| 02:06:13 | 12 | Q.    How were the reduced-size images generated |
| 02:06:18 | 13 | in the Chromacom and the Scitex? |
| 02:06:24 | 14 | A.    They came from -- often came from a drum |
| 02:06:28 | 15 | scanner.  That was the typical way it was done. |
| 02:06:31 | 16 | Q.    So the drum scanner would generate the |
| 02:06:35 | 17 | reduced-size image? |
| 02:06:36 | 18 | MR. SUMMERSGILL:  I'm just going to object, |
| 02:06:39 | 19 | because he's not purporting to be an expert on |
| 02:06:42 | 20 | either the Chromacom or Scitex.  He said he's got |
| 02:06:48 | 21 | some knowledge, but he specifically says in his |
| 02:06:50 | 22 | report he's relying on price. |
| 02:06:52 | 23 | You can answer these questions to the |
| 02:06:54 | 24 | extent you know. |

84

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 02:06:56 | 1 | A.   I'm getting into areas here that is not my |
| 02:07:12 | 2 | expertise, but those systems had several ways of |
| 02:07:17 | 3 | getting reduced-size images. |
| 02:07:20 | 4 | Q.   Well, for purposes of this lawsuit, are you |
| 02:07:23 | 5 | relying solely on Dr. Preuss' report in connection |
| 02:07:28 | 6 | with this paragraph or are you adding your knowledge |
| 02:07:30 | 7 | own as well? |
| 02:07:45 | 8 | A.   No.  For purposes of this lawsuit, I'd have |
| 02:07:48 | 9 | to rely on Dr. Preuss.  He's the expert. |
| 02:08:00 | 10 | Q.   You mentioned the capability, as you |
| 02:08:04 | 11 | understand it, to store reduced-size images of these |
| 02:08:08 | 12 | devices.  Is there any other combination that you're |
| 02:08:14 | 13 | relying on for your obviousness opinion? |
| 02:08:32 | 14 | A.   Not that I can recall at the moment, no. |
| 02:08:46 | 15 | Q.   Now, starting at Page 33 of your report, |
| 02:08:54 | 16 | you talk about AVA, and I have a question about |
| 02:08:59 | 17 | Paragraph 109 on Page 36.  You say "The random |
| 02:09:10 | 18 | access memory associated with the AVA computer also |
| 02:09:13 | 19 | stored video data.  Data was stored in the random |
| 02:09:17 | 20 | access memory associated with the AVA computer |
| 02:09:19 | 21 | before and after it was processed by the CPU."  At |
| 02:09:27 | 22 | the end of that paragraph you cite to a rather thick |
| 02:09:33 | 23 | manual, which I will ask the reporter to mark at |
| 02:09:35 | 24 | this point.  This is EKC 005021058 through 21414. |

85

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 03:04:39 | 1 | that.  It refers to a conventional DMA type of block |
| 03:04:49 | 2 | access, and goes on to describe that.  Do you see |
| 03:04:53 | 3 | that? |
| 03:04:53 | 4 |     A.   Column 3, Line 24 did you say? |
| 03:04:56 | 5 |     Q.   Column 3, Line 24.  Does DMA refer to |
| 03:05:16 | 6 | direct memory access? |
| 03:05:17 | 7 |     A.   Yes, it does. |
| 03:05:22 | 8 |     Q.   Do you agree that as of 1980, when the |
| 03:05:29 | 9 | original application was filed, that DMA was a |
| 03:05:35 | 10 | well-known conventional technique? |
| 03:05:57 | 11 |     A.   I can't remember when DMA first became |
| 03:06:01 | 12 | common.  It would have been around about that time, |
| 03:06:03 | 13 | but I can't remember the exact time. |
| 03:06:11 | 14 |     Q.   In Paragraph 135 on Page 44, you are |
| 03:06:25 | 15 | talking about a limitation regarding storing |
| 03:06:29 | 16 | full-size and reduced-size images in random access |
| 03:06:35 | 17 | memory simultaneously," and you say "Even if Ampex |
| 03:06:39 | 18 | were correct that the AVA did not meet this |
| 03:06:40 | 19 | limitation, electronic still stores with greater |
| 03:06:42 | 20 | memory capacity met this limitation and it would |
| 03:06:45 | 21 | have been obvious to combine the AVA with such |
| 03:06:48 | 22 | electronic still store systems." |
| 03:06:52 | 23 |         The same question as similar to what I've |
| 03:06:54 | 24 | asked before, what is the combination that you're |

103

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 03:06:56 | 1 | actually referring to here? |
| 03:07:04 | 2 | MR. SUMMERSGILL:  Objection. |
| 03:07:22 | 3 | A.   Well, again, as I understand the law, if |
| 03:07:29 | 4 | you have a system with multiple frame stores, and |
| 03:07:32 | 5 | you have a system with a single frame store, it |
| 03:07:39 | 6 | would be an obviousness argument to say you could |
| 03:07:46 | 7 | have multiple frame stores in the single frame store |
| 03:07:56 | 8 | system, and indeed, AVA itself went on to describe |
| 03:08:07 | 9 | expanded frame stores. |
| 03:08:07 | 10 | So the combination I'm talking about there |
| 03:08:13 | 11 | is if you're adding frame store blocks -- sorry, |
| 03:08:17 | 12 | adding -- using the knowledge that a still store |
| 03:08:20 | 13 | system had multiple frame stores with the knowledge |
| 03:08:26 | 14 | of the AVA system. |
| 03:08:31 | 15 | Q.   In paragraph 140 you, again, talk about |
| 03:08:35 | 16 | obviousness, and that's on Page 146.  You say that |
| 03:08:38 | 17 | "To the extent that Ampex argues that AVA cannot |
| 03:08:41 | 18 | meet the elements of certain claims, it would have |
| 03:08:44 | 19 | been obvious to combine AVA with a Quantel DLS |
| 03:08:54 | 20 | 6030."  Is that the same point that you were making |
| 03:08:59 | 21 | in Paragraph 135 that we just talked about or are |
| 03:09:02 | 22 | there additional combinations or claim elements that |
| 03:09:08 | 23 | are being met, in your opinion, under obvious |
| 03:09:11 | 24 | necessary? |

104

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 03:09:13 | 1 | A.    135 is referring specifically to storing |
| 03:09:40 | 2 | full and reduced-size images in random access |
| 03:10:29 | 3 | memory.  Again, you've got two systems together |
| 03:10:33 | 4 | which have overlapping characteristics.  I've |
| 03:10:43 | 5 | already given you one example. |
| 03:10:48 | 6 | Another example would be, for example, if |
| 03:10:51 | 7 | it was decided that the size reducer had to be a |
| 03:10:55 | 8 | dedicated size reducer, not a general purpose |
| 03:10:57 | 9 | computer, then it would be obvious combining AVA and |
| 03:11:03 | 10 | the capabilities of the still store, it would be |
| 03:11:08 | 11 | obvious that you could have a -- use the dedicated |
| 03:11:14 | 12 | size reducer in the DLS and the AVA or the opposite |
| 03:11:21 | 13 | could also apply. |
| 03:11:25 | 14 | Q.    Any other combinations that you are relying |
| 03:11:28 | 15 | on?  Should I stop, by the way?  Any other |
| 03:11:43 | 16 | combinations that you're relying on? |
| 03:11:52 | 17 | A.    Not that I can think of sitting here. |
| 03:11:56 | 18 | Q.    Starting at Page 141 you discuss the |
| 03:12:00 | 19 | Quantel 6030, and at Paragraph 144 you say, "The |
| 03:12:10 | 20 | competence of the DLS 6030 included a Winchester |
| 03:12:14 | 21 | disk, two output frame stores, a preview frame |
| 03:12:17 | 22 | store, a disk data buffer, a size reducer, a micro |
| 03:12:22 | 23 | computer, a preview monitor and one or two display |
| 03:12:28 | 24 | monitors." |

105

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 04:42:24 | 1 | patent describe the same browse functionality that |
| 04:42:27 | 2 | you're referring to in Paragraph 165? |
| 04:42:35 | 3 | A.  No.  I think that's going back to the |
| 04:42:40 | 4 | ground we were covering before the break.  I think |
| 04:42:42 | 5 | that's a step too far, to say that '776 completely |
| 04:42:52 | 6 | describes the same. |
| 04:42:57 | 7 | Q.  166 you're talking about storing a mosaic. |
| 04:43:01 | 8 | I take it you would agree, then, that the '776 |
| 04:43:04 | 9 | patent does disclose that functionality? |
| 04:43:06 | 10 | A.  Yes, I would. |
| 04:43:12 | 11 | Q.  Finally, a control means in 167, the '776 |
| 04:43:18 | 12 | patent discloses a CPU which would act as the |
| 04:43:22 | 13 | control means under your interpretation of this |
| 04:43:24 | 14 | element; is that right? |
| 04:43:28 | 15 | A.  Yes, that's correct. |
| 04:43:31 | 16 | Q.  In Paragraph 168 you talk about the |
| 04:43:33 | 17 | combination of the 6030 with the Paint Box.  Is this |
| 04:43:42 | 18 | any different from your analysis in Paragraph 91 |
| 04:43:44 | 19 | where you also were talking about such a |
| 04:43:47 | 20 | combination? |
| 04:43:58 | 21 | A.  I think it's the same argument, yes. |
| 04:44:02 | 22 | Q.  And likewise, in Paragraph 169, you talk |
| 04:44:05 | 23 | about combining the 6030 with AVA, and is that the |
| 04:44:11 | 24 | same combination that you were referring to in |

135

RICHARD J. TAYLOR  April 28, 2006

| | | |
|---|---|---|
| 04:44:12 | 1 | Paragraph 140? |
| 04:44:22 | 2 | A.  ·Yes, it's the same one. |
| 04:44:23 | 3 | Q.   On 170 you talk about the Paint Box user |
| 04:44:26 | 4 | guide, and you say it was released and distributed |
| 04:44:30 | 5 | publicly to Paint Box customers beginning in |
| 04:44:33 | 6 | January, '83.  Which customers was it specifically |
| 04:44:38 | 7 | distributed to? |
| 04:44:46 | 8 | A.   It would have been WFAA, NBC, and also the |
| 04:44:59 | 9 | salespeople used to use this type of literature as a |
| 04:45:06 | 10 | sales aid.  So they would tend to give it out to |
| 04:45:13 | 11 | anybody they thought was a potential serious |
| 04:45:15 | 12 | customer. |
| 04:45:17 | 13 | Q.   Do you have any record of such a |
| 04:45:20 | 14 | distribution?  Are you aware of any record? |
| 04:45:24 | 15 | A.   No.  It was common practice then. |
| 04:45:28 | 16 | Q.   So you're saying that the user manual was |
| 04:45:32 | 17 | given out to non-customers? |
| 04:45:36 | 18 | A.   No.  What I said was it was given out to |
| 04:45:39 | 19 | potential customers, and, you know, it's a standard |
| 04:45:44 | 20 | technique.  You get somebody interested, they either |
| 04:45:52 | 21 | are about to have a demonstration or have had a |
| 04:45:55 | 22 | demonstration, and it's a very flexible machine, the |
| 04:46:06 | 23 | salespeople would tend to give out that document as |
| 04:46:08 | 24 | part of the sales literature to keep people excited |

136

# EXHIBIT 8.AB



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMPEX CORPORATION,

        *Plaintiff,*

        v.

EASTMAN KODAK COMPANY,
ALTEK CORPORATION, and
CHINON INDUSTRIES, INC.,

        *Defendants.*

C.A. No. 04-1373 (KAJ)

## DECLARATION OF DR. DIETER PREUSS IN SUPPORT OF DEFENDANTS' ANSWERING BRIEFS TO AMPEX CORPORATION'S MOTIONS FOR SUMMARY JUDGMENT

1.      I make this declaration in support of Defendants' Answering Briefs in Opposition to: (i) Ampex Corporation's Motion for Partial Summary Judgment that U.S. Patent No. 4,821,121 Is Not Anticipated; and (ii) Ampex Corporation's Motion for Partial Summary Judgment that U.S. Patent No. 4,821,121 Is Not Invalid For Obviousness.

2.      I have been retained as an expert in this litigation by counsel for Defendants, Eastman Kodak Company ("Kodak") and Altek Corporation ("Altek").

3.      I worked in the field of image processing for thirty-seven years, including as a professor researching image processing technology and a hardware development engineer.

- 1 -

14.     In 1997, Linotype-Hell AG was purchased by Heidelberger Druckmaschinen AG ("Heidelberger"). From 1995 until my retirement in December 2005 I worked as a patent solicitor for Linotype-Hell AG and then Heidelberger. As a patent solicitor, I drafted and filed patent applications. The patents I worked with related to prepress technology. I am listed as the inventor on two United States patents.

15.     In this litigation, I expect to testify regarding my opinion that the asserted claims of the '121 patent are, under Ampex's interpretation of the term "video", invalid as anticipated by two prior art systems that were sold in the United States prior to April 8, 1982: the Hell Chromacom and Scitex Response 300 systems.

16.     I also expect to testify regarding my opinion that, under the claim construction for "video" proposed by the Defendants, the asserted claims are invalid as obvious in light of the Chromacom in combination with other references that teach the "video" limitation, including the Quantel Paint Box and the Quantel (Digital Still Store Library System) DLS systems.

17.     To the extent that a claim construction is asserted or adopted under which the Chromacom does not meet each element of the asserted claims, I expect to testify that the asserted claims would still have been obvious in view of a combination of the Chromacom with the Quantel Paint Box as well as the Quantel DLS. It is my opinion that it would have been obvious for one of ordinary skill in the art to combine the Chromacom with either of these two references. My Initial Expert Report in this action, dated March 24, 2006, summarizes my opinions.

- 4 -

I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

Executed on June 13, 2006, in  *Mönkeberg, Germany*

*Dieter Preuss*
Dieter Preuss

# EXHIBIT 8.AC

# EXHIBIT 8.AC

# IS

# CONFIDENTIAL

# EXHIBIT 8.AD

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| ALTEK CORPORATION and CHINON | ) | |
| INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF AMPEX CORPORATION'S FIRST SET OF
## INTERROGATORIES TO DEFENDANT EASTMAN KODAK COMPANY (NOS. 1-3)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Ampex

Corporation ("Ampex") requests that Defendant Eastman Kodak Company ("Kodak") answer

the following interrogatories separately and fully, in writing, under oath, by an officer or agent of

Kodak and in the manner provided in Rule 33, Fed. R. Civ. P., within thirty (30) days after

service in accordance with Ampex's Definitions and Instructions. Answers are to be signed and

verified by the person making them and objections signed by the attorney making them.

If Kodak elects to avail itself of the procedure authorized by Rule 33(d), Fed. R. Civ. P.,

for answering interrogatories, Ampex requests, for each interrogatory so answered, that Kodak

identify the particular documents in the manner set forth below in Ampex's Definitions and

Instructions.

The obligation imposed by these interrogatories is continuing and, if after answering

these interrogatories Kodak acquires any additional or corrective information called for by these

## DEFINITIONS

Ampex hereby incorporates by reference the Definitions set forth in its First Set of Document Requests to Defendant Eastman Kodak Company.

## INTERROGATORIES

### INTERROGATORY NO. 1

If Kodak contends that any of the Kodak Devices do not infringe any claim of the Patent-In-Suit, explain in detail, for each element of each claim of the Patent-In-Suit, Kodak's reason(s) why each such Kodak Device does not infringe the Patent-In-Suit, either literally or under the doctrine of equivalents.

### INTERROGATORY NO. 2

If the Patent-In-Suit were found to be not invalid and infringed by Kodak, set forth in detail the basis for damages to which Ampex would be entitled, including without limitation identification of (a) the reasonable royalty rate that Kodak contends should be used to compute damages for each Kodak Device, (b) the base to which that the royalty rate is to be applied and how such base was determined; (c) all documents that Kodak contends supports the use of said rate(s) and base(s); and, (d) all people having knowledge of any fact supporting Kodak's reasonable royalty contentions and analyses.

### INTERROGATORY NO. 3

State the monthly sales of each of the Kodak Devices in the United States since January 1, 2001, by dollar value (United States dollars) and number of units.

- 5 -

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
~~1201 North Market Street~~
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Counsel for Plaintiff Ampex Corporation*

**OF COUNSEL:**

Jesse J. Jenner
Sasha G. Rao
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC  20005

September 15, 2005
483450

# EXHIBIT 8.AE

# EXHIBIT 8.AE

# IS

# CONFIDENTIAL

# EXHIBIT 8.AF

# EXHIBIT 8.AF

# IS

# CONFIDENTIAL

# EXHIBIT 8.AG

# EXHIBIT 8.AG

# IS

# CONFIDENTIAL

# EXHIBIT 8.AH

# EXHIBIT 8.AH

# IS

# CONFIDENTIAL

# EXHIBIT 8.AI

# EXHIBIT 8.AI

# IS

# CONFIDENTIAL

# EXHIBIT 8.AJ

# EXHIBIT 8.AJ

# IS

# CONFIDENTIAL