**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMPEX CORPORATION,                          ) | |
|                                             ) | |
| Plaintiff,                          ) | |
|                                             ) | |
| v.                                          ) | C.A. No. 04-1373-KAJ |
|                                             ) | |
| EASTMAN KODAK COMPANY,                       ) | **REDACTED –** |
| ALTEK CORPORATION and CHINON                 ) | **PUBLIC VERSION** |
| INDUSTRIES, INC.,                            ) | |
|                                             ) | |
| Defendants.                          ) | |
|                                             ) | |

## <u>PROPOSED FINAL PRETRIAL ORDER</u>

VOLUME 3

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
  *Attorneys for Plaintiff*

CONNOLLY, BOVE, LODGE & HUTZ
LLP
Collins J. Seitz, Jr.
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899
(302) 658-9141
  *Attorneys for Defendants*

Original Filing Date:  October 13, 2006
Redacted Filing Date:  October 23, 2006

# EXHIBIT 9

# Defendants' Opposition to Plaintiff's Motion in Limine No. 1

I. **DEFENDANTS' OPPOSITION TO AMPEX'S MOTION IN LIMINE #1 (PAINT BOX VIDEO)**

INTRODUCTION

Defendants respectfully submit this opposition to Ampex's Motion in Limine to exclude the video demonstration of the Quantel Paint Box ("Ampex's motion").

In the Paint Box video,

**REDACTED**

Ampex seeks to avoid this highly relevant evidence at all costs. Its motion to exclude the video demonstration is riddled with unsupported assertions, overstatements, and factual inaccuracies:

**REDACTED**

Extensive factual evidence in the record confirms that the Paint Box demonstration video

**REDACTED**

Ampex's assertions to the contrary are merely unsupported attorney argument. The Paint Box video is therefore highly relevant to this litigation and in no way prejudicial under Fed. R. Evid. 403.[1]

FACTUAL BACKGROUND

Richard Taylor taped the demonstration of the Paint Box in March 2005.

**REDACTED**

---

[1]    Defendants intend to use the video as an exhibit in support of Mr. Taylor's testimony

**REDACTED**

**REDACTED**

The video demonstration was produced to Ampex on March 25, 2005. Defendants thereafter made the system shown in the video available to Ampex for inspection at Quantel's headquarters in England. (Ex.4, 4/25/05 letter to Ampex.) Ampex declined to inspect the system.

## ARGUMENT

**1. The Paint Box Video Is Highly Relevant Because** **REDACTED**

In the video, among many other features,

**REDACTED**

March 22, 1982 Preliminary Description of the Paint Box (Ex. 6, at 5 [cut-and-paste feature can "change the size" of images]); Richard Taylor (Ex. 2, at ¶ 70); and Martin Holbrook (Ex. 7, Holbrook Dep., at 45-7). The ability of the Paint Box

**REDACTED**

Ex. 6, at 4 [Paint Box can store cut-outs to disk]; Ex. 2, ¶¶ 79, 89.) In fact, Martin Holbrook testified that he personally demonstrated these features at the NAB convention from April 4-7, 1982:

---

[2] The Paint Box system demonstrated in the video is twenty-five years old and fragile. It would have been extraordinarily expensive--close to $40,000--to ship to the United States. (Ex. 3, 5/6/05 letter to Ampex.)

Q.    For your shorter hourly demos, did you demonstrate the browsing of cutouts?

A.    Oh, yes, most certainly.

Q.    Did you demonstrate the saving of reduced-size cutouts?

A.    Yes. It was a sequence. You reduced the size, you make it a cutout, you store it to the disk, you can retrieve it by the browse or title. All of that was demonstrated. (Ex. 7, at 112.) [3]

Ampex attempts to distort this evidentiary record with attorney arguments devoid of factual or legal support. First, Ampex inexplicably argues **REDACTED** This is incorrect as a matter of law. A device is prior art as long as it is sold or demonstrated prior to the critical date. *See* 35 U.S.C. § 102(b). **REDACTED**

each of which ignores the facts on record:

**REDACTED**

The very documents that Ampex cites for the proposition that the 1987 upgrade is relevant belie Ampex's contentions. One of Ampex's documents (Ex. 8C to Ampex's motion) *does not mention any*

---

[3]    The other features shown in the video are also described by uncontroverted evidence.

**REDACTED**

3

*features of the Paint Box*. The other article that Ampex cites (Ex. 8E to Ampex's motion) expressly states

that "*there [were] no major changes*" to the Paint Box after it was launched at NAB in 1982. (Ex. 8E to

Ampex motion, at 1.) (emphasis added)

Finally, Ampex argues that the Defendants do not have documentary evidence to corroborate the

features shown in the Paint Box video. (Ampex motion, at 3.) This argument is also directly contrary to the

factual evidence of record. As detailed in Defendants' Opposition to Ampex's Motion for Summary

Judgment that the Paint Box is Not Prior Art, Defendants have produced *at least thirteen separate*

*documents* that independently corroborate the features of the Paint Box. (D.I. 350.) As explained above,

these documents, including the March 10, 1982 brochure and March 22, 1982 Preliminary Description,

**REDACTED**

Indeed, Ampex's attorney arguments regarding the Paint Box video are even contradicted by its

own documents and witnesses. Ampex's expert witness on the Paint Box acknowledged that the system

sold and demonstrated in March and April 1982 had *each and every one of the features shown in the video*,

including the ability to generate, store, and browse reduced size images. (Ex. 8, Cavallerano Dep., at 202,

308-9.)

REDACTED

## 2.  The Paint Box Video Is Not Prejudicial.

Because the only actual evidence in the record confirms that the Paint Box video

**REDACTED**

the video is highly probative and not prejudicial. *See*

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 347 F.Supp.2d 121, 123 (D. Del. 2004) (denying

motion in limine to exclude accurate evidence as prejudicial).

Ampex argues that it would be prejudicial for Defendants to use the Paint Box video to support Mr.

Taylor's testimony because        **REDACTED**        It is well established,

4

however, that where a modification has *no impact on relevant features*, the device can corroborate witness testimony. *See Knorr v. Pearson*, 671 F.2d 1368, 1374 (Cust. & Pat. App. 1982) (exhibit is corroborating where evidence that modification is irrelevant "is challenged only by arguments of counsel").

Ampex also argues that the Paint Box video is prejudicial because

REDACTED

Q.   So one of the reasons the Paint Box browse [of] cutouts is faster than the Paint Box browse of full size images, is because the cutouts contain less data than the full size images; correct?

A.   Yes. Because again, what bogs down the system is needing to pull off the full size image. *And in fact that's what is such a benefit of the '121 system*, where you don't need to be able – where you don't need to pull off the full size image and send it through the size reducer each time." (Ex. 8, at 318) (emphasis added).[4]

That the Paint Box's undisputed ability to browse reduced size images is harmful to Ampex's case does not make the video prejudicial. *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1344 n.6 (3d Cir. 2002) (fact that evidence "tends to harm a party's case" does not establish it as prejudicial under Rule 403).

### 3.   Ampex's Arguments Are Inconsistent With Its Apparent Intent To Use A Video Of Its Own.

Ampex's argument that Defendants should not be entitled to use the Paint Box video is directly contrary to its apparent intent to use a video purporting to show the Ampex system that allegedly practices the claimed invention. Ampex apparently intends to use a video purporting to show the Ampex ESS-3 system as of December 1983. (*See* Ampex Ex. List, PTX 1258.)

REDACTED

---

[4]   Ampex's suggestion that Mr. Taylor testified that the Paint Box could not perform this function is disingenuous. When Mr. Taylor testified that the video shows an "experiment," he was referring to the portion of the video in which he compared the browse of full size images with the browse of reduced size images to show that reduced size images are browsed more rapidly. (Ampex motion, at 5.) Mr. Taylor has clearly explained that the Paint Box could store and browse reduced size images in March 1982. (Ex. 11, Taylor Dep. at 276-8; Ex. 2, ¶¶ 79, 89.)

5

# EXHIBIT NO. 1

# EXHIBIT NO. 1

# IS

# CONFIDENTIAL

# EXHIBIT NO. 2

# EXHIBIT NO. 2

# IS

# CONFIDENTIAL

# EXHIBIT NO. 3

# EXHIBIT NO. 3

# IS

# CONFIDENTIAL

# EXHIBIT NO. 4

# EXHIBIT NO. 4

# IS

# CONFIDENTIAL

# EXHIBIT NO. 5

# EXHIBIT NO. 5

# IS

# CONFIDENTIAL

# EXHIBIT NO. 6

# EXHIBIT NO. 6

# IS

# CONFIDENTIAL

# EXHIBIT NO. 7

VOLUME: I

PAGES: 1-115

EXHIBITS: 1-7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - x

AMPEX CORPORATION,

                    Plaintiff,

     v.                                Civil Action

EASTMAN KODAK COMPANY, ALTEK          No. 04-1373-KAJ

CORPORATION and CHINON

INDUSTRIES, INC.,

                    Defendants.

- - - - - - - - - - - - - - - - - x

**CERTIFIED COPY**

DEPOSITION of MARTIN A. HOLBROOK

March 10, 2006

9:44 a.m.

Ropes & Gray LLP

One International Place

Boston, Massachusetts

Reporter: Michael D. O'Connor, RPR



**LEGALINK**
A WORDWAVE COMPANY

LegaLink San Francisco          tel (415) 357-4300     www.legalink.com
575 Market Street, 11th Floor   tel (800) 869-9132
San Francisco, CA 94105         fax (415) 357-4301

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

MARTIN A. HOLBROOK    March 10, 2006

1      Q.    My question is whether the particular four

2   paragraphs I've asked you to focus on, is that a

3   description of a demo that you actually performed as

4   part of your demonstration at the NAB '82?

5      A.    I don't recollect that particular imagery,

6   no.

7      Q.    Do you recollect any imagery from that

8   demonstration, in the context of cut and paste?

9          MR. SUMMERSGILL:   Objection.

10     A.    I recollect a simple exercise that I did

11  for the hourly demonstration.

12     Q.    What was that?   Could you describe that?

13     A.    It was a, as I say, a very simple

14  demonstration, using some of the same facilities as

15  mentioned in these paragraphs, but necessarily short

16  for stage presentation.

17         What I did was create a mask or stencil,

18  which is actually in the first or second paragraphs

19  of "The Paint Box, a Perfect Picture Assembly Aid,

20  Cut and Paste, Page 4, cutting a circular hole in a

21  stencil medium, obviously electronically, the

22  equivalent, as I say, cutting in a plastic film.   I

23  used an air brush facility within the Paint Box to

24  create what looked like a ball bearing, a

MARTIN A. HOLBROOK    March 10, 2006

1    three-dimensional circle.

2        I was able, then, to cut out and move, as

3    described in this document, this ball bearing. I

4    could paste the ball bearing onto the background at

5    any size, and stick it in position. I then had

6    another ball bearing on the end of my pen, which I

7    could reduce in size, in this case with the aid of

8    the joystick probably, and by reactivating the mask

9    or stencil, I could actually manipulate the small

10   ball bearing in the matter of a moon around, in

11   front of and behind, the large ball bearing. Either

12   of those images I could have stored.

13        That was the sort of thing one could do for

14   a short demonstration. Obviously when talking

15   individually to a professional designer, one would

16   be more detailed.

17   Q.   What do you mean by either of those images

18   could then be stored?

19   A.   I should explain, and I'm sorry. I will

20   refer to this ball bearing, simply because it's a

21   useful example. By sticking the large ball bearing

22   onto the background, that actually becomes a full

23   frame image, a picture as I would call it. The

24   little moon ball bearing I was manipulating is a

46

MARTIN A. HOLBROOK    March 10, 2006

1    cutout or a reduced-sized image.

2        Q.    So the reduced-sized ball bearing was

3    generated from cutting out the full-sized ball

4    bearing; is that what you're saying?

5        A.    Yes.

6        Q.    And you would use the joystick to reduce it

7    in size?

8        A.    I would probably have used the joystick.

9    You could also have used the -- one could also have

10   used the keyboard if you preferred.

11       Q.    Then how do you move it?  You were talking

12   about it orbiting, in effect, the larger ball

13   bearing.  How would you do that?

14       A.    When you have removed an image from -- when

15   you've cut out an image -- I will refer to it as a

16   cutout, and you can also call it a reduced-sized

17   image or whatever, but I will call it a cutout,

18   because I've cut it out -- it remains, like on the

19   end of a pen, attached to the end of a pen, so if

20   you remove the pen, the small ball bearing will

21   occupy the equivalent position in space.

22       Q.    So the movement is caused by your moving

23   the pen --

24       A.    Yes.

47

MARTIN A. HOLBROOK     March 10, 2006

1      Q.    For your shorter hourly demos, did you

2   demonstrate the browsing of cutouts?

3      A.    Oh, yes, most certainly.

4      Q.    Did you demonstrate the saving of

5   reduced-sized cutouts?

6      A.    Yes.   It was a sequence.   You reduced the

7   size, you make it a cutout, you store it to the

8   disk, you can retrieve it by the browse or title.

9   All of that was demonstrated.

10     Q.    But you can't recall the specific nature of

11  the demo as to what image was being reduced or

12  saved; is that correct?   I'm talking now about the

13  hourly demo.

14          MR. SUMMERSGILL:   Objection.

15     A.    I mean, for the short demo, the hourly demo

16  we are talking, almost certainly the ball bearing

17  image.

18     Q.    So you're saying you saved the

19  reduced-sized ball bearing after you created the

20  image of the ball bearings orbiting one another?

21     A.    As a demonstration piece, yes.

22     Q.    In general, the term storing cutouts or

23  retrieving cutouts or browsing cutouts, that's not

24  necessarily referring to reduced-sized images, is

Martin A. Holbrook                                      03/10/2006

115

```
 1                        CERTIFICATE
 2   Commonwealth of Massachusetts
 3   Suffolk, ss.
 4
 5       I, Michael D. O'Connor, Registered Professional
 6   Reporter and Notary Public in and for the
 7   Commonwealth of Massachusetts, do hereby certify
 8   that MARTIN A. HOLBROOK, the witness whose
 9   deposition is hereinbefore set forth, was duly sworn
10   by me and that such deposition is a true record of
11   the testimony given by the witness.
12       I further certify that I am neither related to
13   or employed by any of the parties in or counsel to
14   this action, nor am I financially interested in the
15   outcome of this action.
16       In witness whereof, I have hereunto set my hand
17   and seal this 10th day of March, 2006.
18
19                            Michael D. O'Connor
20                            Notary Public
21
22
23   My commission expires
24   November 7, 2008
```

# EXHIBIT NO. 8

Alan Cavallerano                                              05/03/2006

1

1

2    IN THE UNITED STATES DISTRICT COURT

3    FOR THE DISTRICT OF DELAWARE

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5    AMPEX CORPORATION,

6                         Plaintiff,

7         -against-          C.A. No.
                             04-1371-KAJ
8    EASTMAN KODAK COMPANY, ALTEK
     CORPORATION and CHINON INDUSTRIES,
9    INC.,                              **CERTIFIED ORIGINAL**
                                        **LEGALINK BOSTON**
10                       Defendants.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

12                       May 3, 2006
                         9:08 a.m.
13

14        Videotaped Deposition of ALAN

15   CAVALLERANO, taken by Defendants,

16   pursuant to Notice, at the offices of

17   Wilmer Cutler Pickering Hale and Dorr

18   LLP, 399 Park Avenue, New York, New

19   York, before ERIC J. FINZ, a Shorthand

20   Reporter and Notary Public within and

21   for the State of New York.

22

23

24

25

Alan Cavallerano                                    05/03/2006

202

|       |    |                                      |
|-------|----|--------------------------------------|
| 34:31 | 1  | ALAN CAVALLERANO                     |
| 14:34:37 | 2 | then reside as one composite image. |
| 14:34:39 | 3 | That much I am aware of, yeah. |
| 14:34:41 | 4 | Q. Let's put aside for a |
| 14:34:42 | 5 | moment what happens when you stick the |
| 14:34:47 | 6 | image down. We will get to that. Do |
| 14:34:51 | 7 | you agree that the Paint Box could |
| 14:34:55 | 8 | generate reduced size images? |
| 14:34:56 | 9 | MR. BEAMER: Asked and |
| 14:34:56 | 10 | answered. |
| 14:34:59 | 11 | A. Yes, as I stated, that's |
| 14:34:59 | 12 | correct. |
| 35:01 | 13 | Q. Do you agree that the Paint |
| 14:35:03 | 14 | Box could automatically generate |
| 14:35:05 | 15 | reduced size images? |
| 14:35:06 | 16 | MR. BEAMER: Objection; |
| 14:35:07 | 17 | vague. |
| 14:35:11 | 18 | A. Well, automatically, under |
| 14:35:13 | 19 | control of a user going through a |
| 14:35:17 | 20 | series of steps. |
| 14:35:19 | 21 | Q. Well, if the Paint Box |
| 14:35:22 | 22 | browse were used to browse full size |
| 14:35:27 | 23 | images stored on disk, didn't that |
| 14:35:29 | 24 | browse feature automatically generate |
|       | 25 | reduced size images? |

Alan Cavallerano                                        05/03/2006

308

| | | |
|---|---|---|
| 00:18 | 1 | ALAN CAVALLERANO |
| 17:00:20 | 2 | Q.    And the Paint Box could |
| 17:00:25 | 3 | reduce the size of those cutouts; |
| 17:00:25 | 4 | correct? |
| 17:00:25 | 5 | A.    That's correct. |
| 17:00:27 | 6 | Q.    And the Paint Box could |
| 17:00:31 | 7 | store those reduced size cutouts to |
| 17:00:31 | 8 | disk; correct? |
| 17:00:34 | 9 | MR. BEAMER:  Objection. |
| 17:00:37 | 10 | A.    The Paint Box could store |
| 17:00:41 | 11 | cutouts to disk. |
| 17:00:42 | 12 | Q.    And the Paint Box could |
| 17:00:45 | 13 | then browse cutouts that were stored on |
| 17:00:46 | 14 | disk; correct? |
| 17:00:47 | 15 | A.    Yes, that's correct. |
| 17:00:49 | 16 | Q.    And it could browse reduced |
| 17:00:52 | 17 | size cutouts that were stored on disk; |
| 17:00:53 | 18 | correct? |
| 17:00:54 | 19 | A.    Yes, that's my |
| 17:01:01 | 20 | understanding. |
| 17:01:03 | 21 | Well, when we say reduced |
| 17:01:08 | 22 | sized cutouts, though, what we're |
| 17:01:14 | 23 | talking about are cutouts.  They are |
| 17:01:16 | 24 | still cutouts. |
| | 25 | Q.    Well, cutouts can be |

Alan Cavallerano                                    05/03/2006

|   |   |
|---|---|
| | 309 |

01:17      1           ALAN CAVALLERANO

17:01:19   2   reduced in size; correct?

17:01:20   3       A.    Yes, it's my understanding

17:01:22   4   that you would be able to pull up a

17:01:26   5   cutout and manipulate it, for example,

17:01:28   6   reducing it in size.

17:01:33   7       Q.    And after you reduce it in

17:01:36   8   size, you can store that cutout to disk

17:01:38   9   on the Paint Box; correct?

17:01:40  10       A.    That's my understanding,

17:01:40  11   yes.

17:01:43  12       Q.    And then using the Paint

1⁻ 01:45  13   Box browse function, you can browse

17:01:47  14   through cutouts that are stored on

17:01:48  15   disk; correct?

17:01:50  16       A.    Yes, that's correct.

17:01:53  17       Q.    And that's set forth in the

17:01:59  18   Paint Box manual guide; correct?

17:01:59  19   Strike that.

17:02:00  20           That's set forth in the

17:02:02  21   Paint Box user guide; correct?

17:02:04  22       A.    Yes, I have reviewed that

17:02:07  23   document, I believe that -- I know that

17:02:15  24   that is correct, yes.

          25       Q.    And as far as you know, the

Alan Cavallerano                                    05/03/2006

318

ALAN CAVALLERANO

17:12:05  1
17:12:09  2     pulling off the amount of data for
17:12:11  3     these individual pieces.
17:12:14  4          Q.     So one of the reasons the
17:12:20  5     Paint Box browse cutouts is faster than
17:12:22  6     the Paint Box browse of full size
17:12:24  7     images, is because the cutouts contain
17:12:27  8     less data than the full size images;
17:12:34  9     correct?
17:12:35  10         A.     Yes.  Because again, what
17:12:37  11    bogs down the system is needing to pull
17:12:39  12    off the full size image.  And in fact
1  12:43   13    that's what is such a benefit of the
17:12:45  14    '121 system, where you don't need to be
17:12:47  15    able -- where you don't need to pull
17:12:50  16    off the full size image and send it
17:12:59  17    through the size reducer each time.
17:13:02  18         Q.     Now, you agree that the
17:13:05  19    demonstration that Mr. Taylor showed on
17:13:08  20    his videotape could actually be done on
17:13:10  21    the Quantel Paint Box; correct?
17:13:13  22         A.     I have no reason to think
17:13:17  23    that an operator couldn't set up the
17:13:23  24    steps to be able to create that -- to
          25    be able to create that effect.

403

```
 1              ALAN CAVALLERANO
 2            C E R T I F I C A T E
 3   STATE OF NEW YORK    )
                          : ss.
 4   COUNTY OF NEW YORK   )

 5

 6      I, ERIC J. FINZ, a Shorthand
 7   Reporter and Notary Public within and
 8   for the State of New York, do hereby
 9   certify:
10      That ALAN CAVALLERANO, the witness
11   whose deposition is hereinbefore set
12   forth, was duly sworn by me and that
13   such deposition is a true record of the
14   testimony given by the witness.
15      I further certify that I am not
16   related to any of the parties to this
17   action by blood or marriage, and that I
18   am in no way interested in the outcome
19   of this matter.
20      IN WITNESS WHEREOF, I have hereunto
21   set my hand this  8   day of
22   May    , 2006.                CERTIFIED ORIGINAL
                                    LEGALINK BOSTON
23
24
25
              ERIC J. FINZ
```

# EXHIBIT NO. 9

# EXHIBIT NO. 9

# IS

# CONFIDENTIAL

# EXHIBIT NO. 10

# EXHIBIT NO. 10

# IS

# CONFIDENTIAL

# EXHIBIT NO. 11

# EXHIBIT NO. 11

# IS

# CONFIDENTIAL