IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMPEX CORPORATION,                    )
                                      )
              Plaintiff,              )
                                      )
      v.                              )          Civil Action No. 04-1373-KAJ
                                      )
EASTMAN KODAK COMPANY and             )
ALTEK CORPORATION,                    )
                                      )
              Defendants.             )

**MEMORANDUM ORDER**

## I. Introduction

This is a patent infringement suit.  Before me are two motions for summary

judgment filed by the plaintiff, Ampex Corporation ("Ampex"), that seek a determination

that certain evidence upon which defendants Eastman Kodak Company and Altek

Corporation (collectively, "Defendants") seek to rely as prior art cannot qualify as such.

(Docket Item ["D.I."] 286; D.I. 294.)  Background information regarding the case and the

technology at issue is set forth in the recently issued claim construction opinion.  (D.I.

472.)  For the reasons that follow, both motions are denied.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary

judgment if a court determines from its examination of "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,"

that there are no genuine issues of material fact and that the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In determining whether there is a

genuine issue of material fact, a court must review the evidence and construe all

inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).  However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted).  The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal citation omitted).  Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.  Discussion

Ampex's "Motion for Summary Judgment that the Quantel PaintBox is not Prior Art under 35 U.S.C. § 102(a) and § 102(b)" (D.I. 294) is the less complicated of the two prior art motions and requires little discussion.  Ampex asserts that "Defendants cannot meet their clear and convincing burden to prove that Quantel's PaintBox is prior art, because they cannot corroborate the oral testimony upon which they rely to prove how the PaintBox was used before the relevant dates under 35 U.S.C. § 102(a) and § 102(b)." (D.I. 295 at 1.)  Ampex also appears to argue that Defendants cannot show that the PaintBox inherently contains the elements of the invention claimed in this case.

2

(*Id.* at 8-9.)  Defendants respond that there can be no legitimate dispute that the PaintBox was sold before the critical date (D.I. 350 at 16) and that the testimony they wish to present about the device being anticipatory is "corroborated by a physical device, contemporaneous documents, witness testimony, and sales documents indicating the prior art device was complete as of the critical date ... ."  (*Id.* at 18.)

Having reviewed the parties' briefing, it is clear to me that there are numerous factual issues regarding what Defendants may be able to proffer as to when the PaintBox was used and sold and what corroboration can be offered to demonstrate the completeness of the PaintBox.  In short, Ampex has failed to demonstrate that there is no issue of material fact related to the question of whether Defendants can establish inherency, which is itself an issue of fact.  *See Finnigan Corp. v. International Trade Com'n*, 180 F.3d 1354, 1362 (Fed. Cir. 1999) ("Whether a claim limitation is inherent in a prior art reference for purposes of anticipation is also a question of fact.").

Ampex's second prior art motion, captioned "Motion for Summary Judgment That U.S. Patent No. 4,802,019 Is Not Prior Art To U.S. Patent No. 4,821,121," (D.I. 286), presents a more complicated picture, if I can be forgiven that metaphor in this digital photography case.  Defendants seek to rely upon U.S. Patent No. 4,802,019, issued to Harada, et al., (the "Harada patent" or "Harada") as prior art that anticipates the patent in suit (the "'121 patent").  (*See* D.I. 353 at 1.)  The '121 patent issued upon an application filed on April 8, 1983, although Ampex asserts that the invention claimed in the '121 patent was actually conceived in August of 1981.  (D.I. 287 at 2-3.)  Apparently seeking to avoid the burden of establishing conception before the filing date, Ampex is concerned about the Harada patent because that patent issued from a continuation-in-

3

part of a parent application that was filed on January 3, 1983, approximately three

months before the filing of the application for the '121 patent. (*See id.* at 3.)

According to Ampex, the parent application to the Harada patent application

"included five claims, directed to a still store that generated an 'index' screen of small

pictures in order to browse the contents of the store." (*Id.*)  The invention supposedly

used a "memory control means" to allow a user to rearrange thumbnail images on a

browse screen.  (*See id.*)  Ampex notes that, in a January 23, 1985 office action, the

patent examiner rejected the claims in the Harada parent application, saying of the

specification that the "apparently mislabeled 'Memory Meplacement Control' [sic] is ...

not disclosed in an enabling manner.  It is still not clear just where the data rearranging

takes place.  Applicant is warned against the attempted addition of new matter in this

regard." (*See id.* at 4; D.I. 288 at Ex. 4 pg AX203820 ¶ 9.)  The applicants responded

by amending the claims but, with respect to the Memory Replacement Control

highlighted by the examiner, the applicants said simply, "[i]t is believed that the

implementation of such a system is well within the capability of one of ordinary skill in

the art, without undue experimentation, given the subject disclosure." (*See* D.I. 287 at

4; D.I. 288 at Ex. 4 pg AX203831.)  In more ordinary English, I believe that means the

applicants thought, despite the examiner's view of it, that the specification was good

enough because skilled folks would understand from it how the system worked.  The

examiner remained unimpressed.  On November 13, 1985, he said, "there is still not an

adequate description of the 'memory replacement control' and applicant's [sic] mere

assertion that it is 'well within the capability of one of ordinary skill in the art' is

insufficient to rebut the examiner's prima facia [sic] rejection." (D.I. 287 at 4; D.I. 288 at

4

Ex. 4 pg AX203836-37 ¶ 7.)  The applicants evidently decided not to continue their efforts at persuasion, because they abandoned the parent application and filed the continuation-in-part application on May 12, 1986.  (*See* D.I. 287 at 5.)

Now, more than twenty years later, the Defendants in this case are making an argument that sounds an awful lot like the one advanced by the initially disappointed Harada applicants back in 1985.  Defendants argue that Harada is prior art as of January 1983, "so long as the January '83 application enables at least one issued claim."  (D.I. 353 at 4.)  Defendants point to claim 9 of the Harada patent as being enabled as of the original, January '83 application date.  (*Id.*)  Their argument is, basically – and not quoting literally – "we have an expert here who will tell you that one of ordinary skill in the art would have understood from the '83 application everything necessary for the enablement of the issued claim 9."  (*See, e.g., id.* at 7 ("Defendants' expert, Dr. Brad Myers, concluded that one of ordinary skill in the art in the early 1980s would understand how to 'rearrange the arrangement of said reduced still pictures on said screen' ... .").)  Once again, in more ordinary English, it seems we are back to the assertion that, despite the examiner's view of it, the specification was good enough because skilled folks would understand from it how the system worked.

Ampex argues, in effect, that Defendants cannot take a position that the Harada applicants themselves abandoned.  (D.I. 287 at 15.)  Defendants respond that they cannot be bound by patent prosecution decisions they had nothing to do with.  (D.I. 353 at 10-11.)  It makes for an interesting puzzle, but, at the end of the day, it boils down to whether Defendants' expert raises a genuine issue of material fact regarding enablement that the jury should have the chance to hear.  Without commenting on the

strength or weakness of Defendants' evidence, I conclude that it does raise such an issue, and the jury will hear the evidence.

In reaching this conclusion, however, I am mindful of the need to preserve a record that will most fully allow for an unwinding of the jury's decision-making on this issue, should the completed record indicate that Defendants should not have been permitted to rely upon this reference.  In other words, if I or the Federal Circuit concludes after trial that the reference should not have been before the jury, it will be important to have a jury verdict form that poses interrogatories with sufficient specificity to permit an understanding of whether a verdict of invalidity turned on the Harada patent.  I will be depending upon the parties to cooperate in good faith to produce a draft of such a verdict form.

## IV. Conclusion

Accordingly, it is hereby ORDERED that the summary judgment motions regarding prior art (D.I. 286; D.I. 294) are DENIED.

_____
UNITED STATES DISTRICT JUDGE

November 2, 2006
Wilmington, Delaware