IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPEX CORPORATION, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )   Civil Action No. 04-1373-KAJ |
| EASTMAN KODAK COMPANY, and ALTEK CORPORATION, | ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM ORDER

**I.  INTRODUCTION**

This is a patent infringement case. Before me is the motion of Plaintiff Ampex Corporation ("Ampex") for partial summary judgment that U.S. Patent No. 4,821,121 (the "'121 patent") is not anticipated by any of the systems that Defendants, Eastman Kodak Company and Altek Corporation (collectively, "Defendants"), allege to be prior art. (Docket Item ["D.I."] 289; the "Motion".) The background of this dispute is set forth in the claim construction opinion I issued on October 26, 2006. (D.I. 472.) For the reasons set forth herein, I will deny Ampex's Motion.

**II.  STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a

genuine issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III.   DISCUSSION

Ampex argues that the '121 patent is not anticipated because none of the alleged prior art references identified by Defendants disclose the *automatic* generation of a reduced size image for each full size image *prior to* storing the full and reduced size images in bulk memory. (D.I. 290 at 1; D.I. 414 at 2 (emphasis added).) Ampex admits that its argument, and thus the Motion, depend entirely on the court's adoption of its proposed claim construction. (D.I. 290 at 1.) Ampex also acknowledges, in its reply brief, that the "automatic" generation of reduced size images is taught by the prior

art. (D.I. 414 at 3.) Specifically, Ampex states that:

> One important distinction that Defendants ignore is that, before the invention of the '121 patent, some electronic still stores, such as Quantel's DLS 6030 ... , used an "on-the-fly" browse approach that automatically generated reduced size images from full size images *already stored on disk*. The '121 invention is a fundamental departure from this approach – the system of the '121 patent automatically generates the reduced size image *before* storing the reduced size image and full size image on disk.

(*Id.* (original emphasis) (internal citations omitted).) Based on this statement, Ampex's position appears to be that the alleged prior art fails to teach a process of generating a reduced size image that is automatic *and* occurs prior to storage of the full size image. Thus, for Ampex to prevail on its Motion, the claims of the '121 patent must recite both of these limitations.

While there appear to be genuine issues of material fact regarding the teachings of the alleged prior art, my claim construction is dispositive of Ampex's Motion because I did not construe any of the claims to require both automatic operation and a specific order of steps. In particular, I found that only claims 11, 13, and 15 require the generation of a reduced size image prior to storage of the full and reduced size images in bulk memory. (D.I. 472 at 33-34.) I also determined that there is no language in claims 11, 13, and 15 which can be construed to mean that the generation of a reduced size image is automatic. (*Id.* at 29.) Thus, none of the claims of the '121 patent recite the two features that are essential to Ampex's Motion.

It is not entirely clear from the briefing whether Ampex intended to argue that the "prior to" limitation in claims 11, 13, and 15, by itself, is enough to distinguish those claims from the alleged prior art. However, even assuming that Ampex meant to make that argument, Defendants set forth sufficient evidence to raise genuine issues of

art. (D.I. 414 at 3.) Specifically, Ampex states that:

> One important distinction that Defendants ignore is that, before the invention of the '121 patent, some electronic still stores, such as Quantel's DLS 6030 ... , used an "on-the-fly" browse approach that automatically generated reduced size images from full size images *already stored on disk*. The '121 invention is a fundamental departure from this approach – the system of the '121 patent automatically generates the reduced size image *before* storing the reduced size image and full size image on disk.

(*Id.* (original emphasis) (internal citations omitted).) Based on this statement, Ampex's position appears to be that the alleged prior art fails to teach a process of generating a reduced size image that is automatic *and* occurs prior to storage of the full size image. Thus, for Ampex to prevail on its Motion, the claims of the '121 patent must recite both of these limitations.

While there appear to be genuine issues of material fact regarding the teachings of the alleged prior art, my claim construction is dispositive of Ampex's Motion because I did not construe any of the claims to require both automatic operation and a specific order of steps. In particular, I found that only claims 11, 13, and 15 require the generation of a reduced size image prior to storage of the full and reduced size images in bulk memory. (D.I. 472 at 33-34.) I also determined that there is no language in claims 11, 13, and 15 which can be construed to mean that the generation of a reduced size image is automatic. (*Id.* at 29.) Thus, none of the claims of the '121 patent recite the two features that are essential to Ampex's Motion.

It is not entirely clear from the briefing whether Ampex intended to argue that the "prior to" limitation in claims 11, 13, and 15, by itself, is enough to distinguish those claims from the alleged prior art. However, even assuming that Ampex meant to make that argument, Defendants set forth sufficient evidence to raise genuine issues of

material fact as to whether at least one of the alleged prior art references discloses the feature in question. (See D.I. 292, Ex. 9 at 78:18-19:10 (discussing the Hell Chromacom system); D.I. 357 at B-243-44, 66:12-67:16 (discussing the AVA system); D.I. 364 at 13-14, ¶ 44 (discussing the Harada patent).)

## IV. CONCLUSION

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that Ampex's Motion for Partial Summary Judgment that U.S. Patent No. 4,821,121 is Not Anticipated is DENIED.

_____
UNITED STATES DISTRICT JUDGE

November 2, 2006
Wilmington, Delaware