IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPEX CORPORATION,<br><br>*Plaintiff,*<br><br>v.<br><br>EASTMAN KODAK COMPANY,<br>ALTEK CORPORATION, and<br>CHINON INDUSTRIES, INC.,<br><br>*Defendants.* | C.A. No. 04-1373-KAJ |

**AMPEX'S MOTION FOR REARGUMENT AND RECONSIDERATION OF THE
COURT'S MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

**I.    INTRODUCTION**

Pursuant to L.R. 7.1.5, Ampex hereby moves for reargument and reconsideration of the Court's October 31, 2006 Memorandum Opinion and Order granting Defendants' Motion for Summary Judgment of Non-Infringement (D.I. 479-80). The October 31 Memorandum Opinion incorrectly determined that Ampex's addition of the word "said" to certain of the asserted claims during prosecution of the '121 patent in suit was a "narrowing amendment" that triggers a presumption of prosecution history estoppel under *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002).

Ampex added the word "said" to overcome a technical rejection by the Examiner, who had required Ampex to clarify the "antecedent basis" of the claim language at issue. Because the amendment in question only clarified and confirmed what was inherent in the original claim prior to the amendment, as a matter of law, it did not narrow the claims. The applicable legal authorities demonstrate that such clarifying amendments made to overcome technical indefiniteness rejections under 35 U.S.C. § 112 ¶ 2 are not narrowing and do not trigger

1

prosecution history estoppel. *E.g.*, *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed. Cir. 2001).

Reargument is necessary because the Court erred in its analysis, and because Ampex did not have a full and fair opportunity to address completely all of the evidence and authorities that bear on this issue. In their motion for summary judgment of non-infringement, Defendants devoted just one paragraph of a 40-page brief to the issue of prosecution history estoppel. Defendants did not meet their burden to show that a narrowing amendment had been made. Nor did Defendants discuss the evidence or the applicable authorities on what constitutes a narrowing amendment. As a result, Ampex in its Opposition also did not address this issue in detail. Thus, the issue has neither been briefed by the parties nor argued to the Court.

However, the Court's October 31 Memorandum Opinion makes an airing of the issues imperative, as it rules *sua sponte* on the issue of narrowing. Because the Court's grant of summary judgment would completely bar Ampex from obtaining a remedy for Defendants' patent infringement, the Court's reconsideration of the evidence and authorities on the issue of narrowing is necessary to prevent a miscarriage of justice.

Pursuant to the Court's ruling of November 3 (D.I. 489), this motion is to be heard under an expedited briefing schedule.

## II. PROCEDURAL HISTORY

On May 23, 2006, Defendants moved for summary judgment of non-infringement of the '121 patent (D.I. 302). In a 40-page brief covering dozens of issues, Defendants argued that their accused digital cameras did not meet five limitations of the asserted claims of the '121 patent either literally or under the doctrine of equivalents. (D.I. 304).

Among Defendants' non-infringement arguments were those directed to what Defendants described as the "said data" element. Defendants argued that the language "said

2

data" (or "the data") limits each of the asserted claims, that "said data" cannot be literally infringed under Defendants' proposed construction of that phrase, and that there cannot be infringement under the doctrine of equivalents on three separate grounds, including prosecution history estoppel. (D.I. 304 at 26-34).

Defendants' argument on prosecution history estoppel consisted of just a single paragraph. The argument merely noted that the asserted claims were amended to add the words "said" and "the" before the term "pixel data" to overcome a rejection under 35 U.S.C. § 112. Defendants admitted that the amendment was made in order "*to clarify*" that "said" and "the" refer to pixel data recited earlier in the claims. (D.I. 304 at 32 (emphasis added)).

In order for estoppel to apply, it was Defendants' burden to show that a narrowing of the claims had occurred. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003). Defendants nonetheless did not show that the addition of the words "said" and "the" were narrowing amendments. Defendants did not explain, for example, what, if any, claim scope allegedly would have been given up by the amendment. Nor did Defendants describe a single embodiment that would have been disclaimed.

On June 13, Ampex filed its Opposition to Defendants' motion for summary judgment (D.I. 366). Ampex noted, at page 33 of its brief, that "Defendants make no more showing than that certain claims were amended." Ampex addressed additional reasons, not pertinent to this motion, why prosecution history estoppel should not apply.

On June 20, Defendants filed their Reply brief (D.I. 409). Defendants again did not make or attempt to make any showing that a narrowing amendment had been made. Instead, Defendants assumed (incorrectly) that Ampex "did not dispute" that a narrowing amendment had been made, so that the presumption of estoppel applies. (D.I. 409 at 12-13). There was no oral argument and Ampex did not have an opportunity to negate Defendants' assumption.

3

On October 26, the Court entered a Memorandum Opinion and Order construing certain limitations of the asserted claims, including the "said data" limitation. (D.I. 472-73). The Court did not adopt either of the parties' proposed constructions of that term.

On October 31, the Court entered a Memorandum Opinion and Order granting Defendants' motion for summary judgment of non-infringement (D.I. 479-80). The Court found, *inter alia*, that prosecution history estoppel barred assertion of infringement of the doctrine of equivalents under the "said data" language in the claims. In making that determination, the Court found – despite the absence of any effort by Defendants to discharge their burden—that "[b]y adding the term 'said' to 'video pixel data,' the amendment narrowed the scope of this claim term." (D.I. 480 at 7).

## III. THE PERTINENT FACTS

For the purposes of streamlining this motion, Ampex will address the "said data" language as it came to be included in the first of the asserted claims: claim 7 of the '121 patent in suit.[1] Claim 7 issued from application claim 18, which was added in a Preliminary Amendment received by the Patent Office on February 24, 1987 (attached as Exhibit A).

In a December 21, 1987 Office Action (attached as Exhibit B), the Examiner rejected all of the pending claims, including claim 18. Citing 36 separate deficiencies, the Examiner rejected the claims as indefinite under 35 U.S.C. § 112 ¶ 2. Eight of those deficiencies applied to claim 18 (Exhibit B at page 4).

In item 27 of the indefiniteness rejection in the December 21 Office Action, the Examiner stated, "In claim 18, line 11, 'video pixel data' is indefinite because it is not clear if it

---

[1] Defendants also argue that issued claims 8, 10, 11 and 12 (application claims 19, 23, 27 and 28) also were amended so that estoppel applies. Ampex's demonstration that claim 7 was not narrowed by the "said" amendment also applies to these claims. Thus no claim was narrowed and no claim is affected by estoppel.

4

refers back to the pixel data recited in lines 5 and 6." The "pixel data" at lines 5 and 6 was, in patent practice terms, the "antecedent basis" for the "video pixel data" at line 11 of the claim. *See* Manual of Patent Examining Procedure (MPEP) § 2173.05(e) (8th ed. 2001, rev. Aug. 2006) (attached as Exhibit C).

In making the rejection, the Examiner did not state or suggest that application claim 18 was overly broad and had to be narrowed. Indeed, claim 18 was not rejected on any ground other than indefiniteness. On page 6 of the Office Action, the Examiner noted that application claim 18 would be allowable if rewritten to comply with § 112 ¶ 2.

On April 27, 1988, Ampex filed an Amendment (attached as Exhibit D), amending several claims including application claim 18. Ampex made several clarifying amendments to claim 18, including the addition of the word "said" before the words "video pixel data" in the "memory means for receiving . . ." claim element. Set forth below is a comparison of claim 18 as originally filed and as amended (underlines for added language, brackets for language removed). The language at issue in this motion is highlighted in yellow and other pertinent language is highlighted in green[2]:

| An apparatus for storing video pixel data representing video images of a first resolution and, for each image at a first resolution a corresponding video image at a second resolution comprising: | An apparatus for storing video pixel data representing video images of a first resolution and, for each of the images [image] at said [a] first resolution, a corresponding video image at a second resolution comprising: |
|---|---|
| random access memory means for storing video pixel data representing a full size image at said first resolution and a corresponding reduced size version thereof at a second resolution; | random access memory means for individually storing video pixel data representing one of a succession of full size images [image] at said first resolution and a corresponding reduced size version thereof at said [a] second resolution; |
| means for storing one at a time in said random access memory means a plurality of said full size images; | [means for storing one at a time in said random access memory means a plurality of said full size images;] |
| memory means for receiving video pixel data ▬▬▬▬▬▬▬▬▬ and for storing said full size images and the corresponding reduced | memory means for receiving said video pixel data from said random access memory means and for storing said succession of full size images and the |

---

[2] Corresponding tables for application claims 19, 23, 27 and 28 (issued claims 8, 10, 11 and 12) are attached as Exhibit E.

5

| | |
|---|---|
| size images received from said random access memory means and for outputting, upon a user's command, a selected full size image or only the corresponding reduced size image for the selected full size image for storage in said random access memory means; | corresponding reduced size <u>versions thereof,</u> [images received from said random access memory means] and for outputting upon a user's command, <u>either</u> a selected <u>one of the successive</u> full size <u>images</u> [image] or only the corresponding reduced size <u>versions thereof</u> [image for the selected full size image] for storage <u>back</u> in said random access memory means; |
| means for generating said corresponding reduced size image from any said full size image in said random access memory means to be transferred to said memory means and for storing the video pixel data representing said reduced size image in said random access memory means ▮▮▮▮▮▮▮▮▮▮▮▮▮. | means for <u>selectively</u> generating <u>one of</u> said corresponding reduced size <u>versions</u> [image] from <u>the respective</u> [any said] full size image in said random access memory means<u>,</u> [to be transferred to said memory means] and for <u>transferring</u> [storing] the video pixel data representing said reduced size image <u>to</u> [in said random access memory means prior to storage of] the contents of said <u>memory means via said</u> random access memory means [in said memory means]. |

Ampex did not state or suggest that its addition of the word "said" was intended to do anything other than confirm what was inherent in the claim. Indeed, in its Remarks accompanying its amendments to the specification and claims, Ampex informed the Examiner that its amendments were made for purposes of standardization and clarification:

> The claims have also been carefully reviewed particularly in light of the Examiner's helpful suggestions, and have been amended throughout in keeping with the Examiner's suggestions as well as for purposes of **standardizing and/or clarifying** the language thereof.

(Exhibit D at 16 (emphasis added)).

Following additional amendments not pertinent to this motion, application claim 18 issued as claim 7 of the '121 patent on April 11, 1989.

## IV.  ARGUMENT

### A.  Amendments That Merely Clarify Subject Matter Inherent In a Claim Are Not Narrowing and Do Not Trigger Prosecution History Estoppel

As this Court held, the threshold question in a prosecution history estoppel inquiry is to determine whether a claim amendment has narrowed the literal scope of the claim. October 31, 2006 Memorandum Opinion, D.I. 480 at 7. If there is no narrowing on an issue related to patentability, prosecution history estoppel will not apply to bar application of the

doctrine of equivalents. *Festo Corp. v. Shoketsu Kinzoku Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003) (*Festo IX*).

Critical here, not all claim amendments are narrowing. Claim amendments that make express what is inherent in the original claim are not narrowing. *Bose*, 274 F.3d at 1359. An element is inherent in an original claim if it is "reasonably ascertainable" by persons of ordinary skill in the art. *Id.*

To determine whether a claim has been narrowed, a court must consider the claim as a whole in light of the specification, including the original claim. *See Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1377 (Fed. Cir. 2001). Important here, it is the accused infringer's burden to demonstrate the required narrowing of the claim. *Festo IX*, 344 F.3d at 1366.

### B. Because Ampex Added the Word "Said" To Application Claim 18 Solely To Clarify Inherent Subject Matter, Ampex's Amendment Did Not Narrow the Claim

Ampex's addition of the word "said" to application claim 18 is a classic example of a non-narrowing amendment. It was made to correct what amounted to a drafting omission in claim 18, which was the failure to make an explicit reference to an "antecedent basis" that was inherent in the original claim language. Ampex's amendment did not disclaim any subject matter covered by the original claim 18. It merely clarified a limitation that already was in the claim.

An examination of original application claim 18 as a whole demonstrates that adding the word "said" did not change the scope of the claim. Application claim 18 relates to an apparatus for "storing video pixel data." The "video pixel data" in line 11 of the claim – the video pixel data that would later be preceded by the word "said" – was, by the language of the claim, received from "said random access memory means" and stored in the memory means (the

7

magnetic disk store in the preferred embodiment). (See the language in the "memory means" highlighted in green, *supra*). By the plain language of the original claim, therefore, the "video pixel data" stored in the "memory means" necessarily had to refer to the same video pixel data stored in the random access memory.

That the "video pixel data" of line 11 must refer back to the "video pixel data" of lines 5 and 6 is further established by the language of the separate "means for generating" limitation at the end of the claim. The "means for generating" limitation makes clear that both the full size image initially stored in random access memory, and the corresponding reduced size image that is generated from the full size image, are stored in the random access memory "prior to" the storage of both images ("the contents") in the memory means. (See the language in the "means for generating" highlighted in green, *supra*). This additional claim language, not considered by Defendants or the Court's Memorandum Opinion, demonstrates that the scope of the claims was already set by the original claim as a whole and was not changed by adding the word "said" to clarify the antecedent basis.

It follows that it would have been "reasonably ascertainable" (*Bose*, 274 F.3d at 1359) for a person of ordinary skill in the art to read the "video pixel data" of the "memory means" of original application claim 18 to be the same "video pixel data" stored in the random access memory means. It is the only way to read the claim consistent with the function required by the "means for generating."

The specification confirms the antecedent relationship between the bulk memory and the random access memory. The specification explains: 1) the video data for each full size image is stored in random access memory; 2) the data is used by the size reducer to generate a corresponding reduced size image; 3) the reduced size image is stored back in random access memory with the full size image; and then 4) both are stored in the bulk store (magnetic disk).

'121 patent Col. 4, lines 1-7 and 16-19. This is the only mode of operation taught in the specification consistent with application claim 18.[3]

The Federal Circuit and district courts have repeatedly held that an amendment made to confirm expressly a limitation inherent in an original claim, such as Ampex's addition of the word "said" to make an antecedent basis express, is not narrowing. *E.g., Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 378 F. Supp. 2d 459, 474 (D. Del. 2005) (change in claim language from "'so that said engine starts along a predetermined schedule'" to "'so that said starter/generator only delivers the torque necessary to keep the engine accelerating along the schedule'" in response to a § 112 ¶ 2 rejection not narrowing); *Bose*, 274 F.3d at 1359-60 (change in claim language from "an ellipse" to "an ellipse having a major diameter" for the purposes of providing an antecedent basis is not narrowing because limitation is inherent from claim language); *Bus. Objects, S.A. v. MicroStrategy, Inc.*, 393 F.3d 1366, 1375 (Fed. Cir. 2005) ("Because the 'predetermined' limitation was implicitly contained in the original term, the amendment did not narrow the scope of the query engine means by expressly stating that the query language must be 'predetermined' in the amended term."); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1125-26 (Fed. Cir. 2001) (change in claim language from "'small diameter position corresponding to . . . small clearance of the seal ring with regard to the rotating shaft or rotor'" to "contact" between the surfaces "redefined the small clearance position limitation without narrowing the claim"); *Interactive Pictures*, 274 F.3d at 1377-78 (change in claim language from "'output signals'" to "'output transform calculation signals'" was mere clarification and did not narrow the claim); *Slimfold*

---

[3] In column 4 of the patent, the possibility of sending data directly from the size reducer to magnetic disk is mentioned, Col. 4 lines 7-12, but that is not pertinent to claim 18. Original claim 18 already made clear that "video pixel data" stored in memory comes "from said random access memory means." Thus claim 18 could not refer to the column 4 alternative.

*Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116-17 (Fed. Cir. 1987) (addition of language to provide antecedent basis did not change scope of the claim for re-examination; amendment merely corrected drafting error). *See also* MPEP § 2173.05(e) (antecedent basis rejections under 35 U.S.C. § 112 ¶ 2 are usually for the purpose of correcting "minor problems" and "drafting oversights") (Exhibit C).

Only rarely are amendments made in response to rejections under 35 U.S.C. § 112 ¶ 2 deemed to be narrowing amendments made for purposes of patentability. Courts have found such amendments to be narrowing only in special circumstances, such as where dependent claims are rewritten in independent form to add a new limitation, *see, e.g., Ranbaxy Pharms., Inc. v. Apotex, Inc.*, 350 F.3d 1235, 1240 (Fed. Cir. 2003), or where indefiniteness rejections are joined with rejections on other grounds that make clear the breadth of the claims was undue, *Medtronic Navigation, Inc. v. Brainlab Medizinische Computersystems GmbH*, 417 F. Supp. 2d 1188, 1193 (D. Col. 2006) (examiner expressly stating that claim is rejected because it is claimed so "'broadly and vaguely'").

The sole rejection here under § 112 ¶ 2 also strongly suggests that the Examiner did *not* believe that application claim 18 was overly broad or required narrowing. Had the Examiner believed the claim required narrowing, the Examiner would have rejected the claim on some other statutory ground, such as lack of enablement or written description under 35 U.S.C. § 112 ¶ 1, or lack of novelty or nonobviousness under 35 U.S.C § 102 and/or 103. Section 2173.04 of the MPEP (attached as Exhibit F) states that "[b]readth of a claim is not to be equated with indefiniteness" and counsels examiners not to reject claims for undue breadth under § 112 ¶ 2 unless "statements outside of the application" demonstrate the claim is too broad. Yet there is nothing in the record that suggests that the Examiner considered any statements outside of the

application as they relate to the breadth of the claim, much less intended to require narrowing of the claim based on such a statement.

Thus the Court's finding that the addition of the word "said" to claim 7 (and other asserted claims) was narrowing is in error. It is contrary to the evidence, which demonstrates that the inclusion of the word "said" did not limit the claim in a way not already reasonably apparent from the original claim language to a person of ordinary skill in the art. It also is contrary to the relevant legal authorities, which consistently have held that clarifying amendments are not narrowing. Reconsideration is warranted.

## V. CONCLUSION

A complete examination of the claim language as a whole and the relevant legal authorities demonstrates that the Court's determination that there was a "narrowing" amendment was in error. The Court should GRANT Ampex's motion for reargument and reconsideration.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld (#1014)*
_____
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
*Attorneys for Plaintiff Ampex Corporation*

OF COUNSEL:

Jesse J. Jenner
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Sasha G. Rao
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC  20005
(202) 508-4600

November 8, 2006

## PLAINTIFF'S 7.1.1 STATEMENT

I hereby certify that the subject of the foregoing motion has been discussed with counsel for defendants and that the parties have not been able to reach agreement.

*/s/ Jack B. Blumenfeld (#1014)*

_____

Jack B. Blumenfeld

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on November 8, 2006, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Collins J. Seitz, Jr., Esquire
> Connolly, Bove, Lodge & Hutz LLP

and that I caused copies to be served upon the following in the manner indicated:

### BY E-MAIL and BY HAND

Collins J. Seitz, Jr., Esquire
Connolly, Bove, Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

### BY E-MAIL and BY FEDERAL EXPRESS

Michael J. Summersgill, Esquire
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109


*/s/  Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (#1014)