IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| ALTEK CORPORATION and CHINON | ) | |
| INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN OPPOSITION TO AMPEX'S MOTION
FOR REARGUMENT AND RECONSIDERATION OF THE COURT'S
MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

CONNOLLY BOVE LODGE & HUTZ LLP
Collins J. Seitz, Jr. (#2237)
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com

*Attorneys for Defendants Eastman Kodak Company
and Altek Corporation*

*Of Counsel:*
William F. Lee
Donald R. Steinberg
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800

Date: November 13, 2006

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ iv

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND ...................................................................................... 2

     A.   Ampex Amended and Narrowed The Asserted Claims In
          Response To An Examiner's Rejection Under 35 U.S.C. § 112, ¶ 2. ............ 2

     B.   The Question Whether The "Said/The Data" Amendment Was A
          Narrowing Amendment Sufficient To Trigger Prosecution History
          Estoppel Was Presented To The Court During Summary Judgment Briefing. ............ 3

     C.   The Court Squarely Addressed The Question Whether The
          "Said/The Data" Amendment Was Narrowing. ........................................... 5

III. ARGUMENT ................................................................................................................ 7

     A.   Ampex's Motion For Reconsideration Is Improper Because It Merely
          Addresses Issues That The Court Has Already Considered And Resolved. .......... 7

     B.   The Court Correctly Determined That The "Said/The Data"
          Amendment Was A Narrowing Amendment That Created An Estoppel. .......... 9

IV.  CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Brambles USA, Inc. v. Blocker*,
735 F. Supp. 1239 (D. Del. 1990) ................................................................................... 7

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*,
325 F. Supp. 2d 457, 459 (D. Del. 2004) ....................................................................... 7

*Davis v. Mountaire Farms, Inc.*,
No. Civ. A. 04-414-KAJ, 2005 WL 1800054, (D. Del. July 29, 2005) ......................... 8

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
No. Civ. A. 03-612-KAJ, 2005 WL 83471 (D. Del. Jan. 11, 2005) ........................ 7, 8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
535 U.S. 722 (2002) ............................................................................................... passim

*Glaxo Group Ltd. v. Ranbaxy Pharmaceuticals, Inc.*,
262 F.3d 1333 (Fed. Cir. 2001) .................................................................................... 13

*Inline Connection Corp. v. AOL Time Warner Inc.*,
395 F. Supp. 2d 115 (D. Del. 2005) ............................................................................... 7

*Kelly v. MBNA America Bank*,
No. Civ. A. 06-228-JJF, 2006 WL 2993268, (D. Del. Oct. 20, 2006) ......................... 9

*Litton Systems, Inc. v. Honeywell Inc.*,
238 F.3d 1376 (Fed. Cir. 2001) .................................................................................... 13

**Statutes**

35 U.S.C. § 112 ................................................................................................................ passim

## I. INTRODUCTION

Ampex's motion for reconsideration (D.I. 490) should be denied because: (1) Ampex argues a prosecution history estoppel issue that has already been presented to and considered by this Court; and (2) the Court correctly resolved the issue the first time.

Ampex argues that it is entitled to reconsideration because the addition of the word "said" (or "the") before the claim term "video pixel data" during prosecution of the '121 patent was not, in Ampex's view, a narrowing amendment invoking prosecution history estoppel. This *precise issue* was presented to the Court during summary judgment briefing and addressed by the Court's October 31, 2006 decision granting summary judgment of non-infringement. The Court explicitly found that the "said/the data" amendment *was* narrowing:

> By adding the term "said" to "video pixel data," the amendment narrowed the scope of this term. The applicant specifically stated that the purpose of the amendment was to limit the term "video pixel data" to the data that was identified earlier in the same claim.

(D.I. 479, at 7.) The Court's conclusion was correct and should not be revisited.

## II. FACTUAL BACKGROUND

### A. Ampex Amended and Narrowed The Asserted Claims In Response To An Examiner's Rejection Under 35 U.S.C. § 112, ¶ 2.

During prosecution, the examiner rejected the pending claims of the '121 patent as indefinite under 35 U.S.C. § 112, ¶ 2. With respect to claim 7 (application claim 18),[1] the examiner explicitly stated that "video pixel data" in line 11 (which described the data stored in bulk memory) was indefinite because it was not clear if it referred back to the pixel data recited in lines 5-6 (which described the data stored in random access memory). (*See* Appendix to Defendants' Opening Br. in Support of Their Motion for Summary Judgment of Non-Infringement ("D.I. 306"), at A-103.)

In response, Ampex amended the pending claims. With respect to claim 7, Ampex limited the term "video pixel data" in line 11 to "*said* video pixel data" to indicate that the video pixel data stored in bulk memory must be the *same data* that is initially captured and stored in random access memory.[2] In conjunction with this amendment, Ampex explained that the "video pixel data" in the amended claim now "properly refer[s] back to lines 5, 6 ... of the original claims." (D.I. 306, at A-123.)

---

[1] In the same office action, the examiner also rejected claims 8, 10, and 12 (application claims 19, 23, and 28) as indefinite. (D.I. 306, at A-101.) Ampex's motion for reconsideration treats the amendment to claim 7 as representative of the amendments made to these claims as well. (*See* D.I. 490, at 4 n.1.) Consequently, Defendants focus on claim 7 in this opposition.

[2] Ampex made similar narrowing amendments to claims 8, 10, and 12. For example, Ampex amended claim 8 by adding the term "the" before "video pixel data" to specify that the bulk memory stored the *same data* as that in random access memory in an earlier limitation. (*See* D.I. 306, at A-114.)

Without subsequent amendment to the "said video pixel data" limitation, the examiner allowed application claim 18 to issue as claim 7 of the '121 patent. (*See* D.I. 306, at A-152.)

### B. The Question Whether The "Said/The Data" Amendment Was A Narrowing Amendment Sufficient To Trigger Prosecution History Estoppel Was Presented To The Court During Summary Judgment Briefing.

On May 23, 2006, Defendants filed a motion for summary judgment of non-infringement, asserting, among other arguments, that none of the accused digital cameras met the "said/the data" limitation present in each of the asserted claims. (D.I. 304, at 26-34.) Defendants argued that the accused cameras did not literally meet the "said/the data" limitation because the data initially captured by the cameras is not the same data saved to permanent storage. (*Id.* at 27-31.) Instead, in what is the heart of Defendants' digital camera technology, the cameras perform a series of complex processing steps that transform the initially captured data (resulting in entirely different data) in order to generate a high-quality photograph. (*Id.*)

Defendants argued further that Ampex was precluded from asserting that the cameras met the "said/the data" limitation under the doctrine of equivalents because of prosecution history estoppel. (*Id.* at 31-34.) Specifically, Defendants argued that the "said/the data" limitation was added by amendment to require that the data stored in bulk storage be the *same data* that is initially captured by the system and stored in random access memory. (*Id.* at 32.) Citing the Supreme Court's *Festo* decision, Defendants argued that Ampex was precluded "from asserting the doctrine of equivalents with respect to a claim limitation *narrowed in response to a rejection*" and therefore could not

assert equivalency with respect to the "said/the data" limitation. (*Id.* (emphasis added); *see also id.* at 3.)

In its June 13, 2006 Opposition to Defendants' motion for summary judgment, Ampex did not dispute that the "said/the data" limitation was a narrowing amendment that invoked the presumption of prosecution history estoppel. Without challenging whether the *Festo* presumption applied, Ampex only argued about the scope of what was surrendered by the narrowing amendment:

> With respect to claims 7, 8, 10, and 14, even **assuming the presumption of a bar is raised** "its reach requires an examination of the subject matter surrendered by the ***narrowing amendment.***"

(D.I. 366, at 33 (emphasis added; citations omitted).) More specifically, Ampex argued that prosecution history estoppel did not apply because of two exceptions to the *Festo* rule: (1) that the alleged equivalents represented "later-developed technology," and (2) that the "rationale underlying the amendments...bears no more than a tangential relation to the equivalent in question." (*Id.*)

In their June 20, 2006 Reply, Defendants highlighted Ampex's implicit concession that the "said/the data" amendment was narrowing. (D.I. 409, at 12 ("Ampex does not dispute that the *Festo* presumption of prosecution history estoppel applies . . . .").) Defendants also responded to Ampex's two arguments regarding the exceptions to the *Festo* rule. First, Defendants argued that the alleged equivalent would have been foreseeable because, among other reasons, digital cameras were known at the time of the "said/the data" amendment. (*Id.* at 13.) Second, Defendants argued that "the prosecution history makes clear that the 'said data' limitations were added to the asserted claims to require that the video pixel data stored on disk be the ***same data*** that is stored in RAM." Defendants explained that "because the reason for the 'said data' amendments and the

alleged equivalent *both* relate to the identity of the data stored on disk relative to the data stored in RAM . . . the two cannot be said to bear only a tangential relationship to one another." (*Id.* at 14 (emphasis in original).)

On July 13, 2006, the Court heard oral argument on claim construction and the parties' summary judgment motions. The Court addressed Defendants' motion for summary judgment of non-infringement and the parties' arguments regarding the "said/the data" limitation. The Court specifically invited Ampex to make any arguments regarding the "said/the data" limitation. (*See* July 13, 2006 Hrg. Tr. at 44 ("THE COURT: "Is there anything else you want to tell me about 'data' and 'said...data' before I give Mr. Lee his crack at it?").)[3] Notwithstanding this offer, Ampex did not dispute that the "said/the data" amendment was narrowing.

### C. The Court Squarely Addressed The Question Whether The "Said/The Data" Amendment Was Narrowing.

In its October 31, 2006 Opinion granting Defendants' motion for summary judgment of non-infringement, the Court considered and resolved the question of whether the "said/the data" amendment was narrowing. (D.I. 479.) After finding no literal infringement of the "said/the data" limitation (*id.* at 3-6), the Court determined that Ampex was precluded from relying on the doctrine of equivalents because of prosecution history estoppel. In reaching this conclusion, the Court specifically determined that the "said/the data" amendment narrowed the scope of the claims:

> By adding the term "said" to "video pixel data," *the amendment narrowed the scope of this term*. The applicant *specifically stated that*

---

[3] Ampex contends that "[t]here was no oral argument" on this issue and it "did not have an opportunity" to address Defendants' assertion that prosecution history estoppel applies to the "said/the data" limitation. (D.I. 490, at 3.) To the extent Ampex did not focus on the "said/the data" amendment in its briefing or at oral argument, it was of its own choosing.

-5-

> *the purpose of the amendment was to limit the term "video pixel data" to the data that was identified earlier in the same claim.* . . . Since the applicant here made a narrowing amendment to overcome a rejection under section 112, there is a "presumption that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation."
>
> \*\*\*
>
> [T]he prosecution history shows that the term "said" was added for the purpose of indicating an antecedent relationship between the pixel data first stored and the data subsequently referenced, or, more specifically, to demonstrate that the data stored in the bulk memory of the still store system is *the same* as that stored in the random access memory.

(D.I. 479, at 7, 9-10 (emphasis added; citations omitted).)[4]

---

[4] The Court then determined that Ampex had failed to rebut the *Festo* presumption, and held that prosecution history estoppel prevents the doctrine of equivalents from being applied to the "said/the data" element in every asserted claim. (D.I. 479, at 10.) Ampex does not challenge these portions of the Court's ruling.

## III. ARGUMENT

### A. Ampex's Motion For Reconsideration Is Improper Because It Merely Addresses Issues That The Court Has Already Considered And Resolved.

Motions for reconsideration and re-argument "should be granted only 'sparingly.'" *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 325 F. Supp. 2d 457, 459 (D. Del. 2004) (citation omitted). A motion for reconsideration is proper only if: (1) the Court has "patently misunderstood a party"; (2) the Court has made a decision outside the adversarial issues presented by the parties; or (3) the Court "has made an error not of reasoning, but of apprehension." *Id.*; *see eSpeed, Inc. v. Brokertec USA, L.L.C.*, No. Civ. A. 03-612-KAJ, 2005 WL 83471, at *1 (D. Del. Jan. 11, 2005). Further, the Court should grant a motion for reconsideration "only when: ... there has been an intervening change in the controlling law; ... there is newly discovered evidence which was not available to the moving party at the time of judgment; ... or ... there is a need to correct a legal or factual error which has resulted in a manifest injustice." *See eSpeed*, 2005 WL 83471, at *1.

A motion for reconsideration is not appropriate if it merely addresses issues that the Court has already considered and resolved. *See Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) (explaining that a motion for reargument "should not be granted where it would merely 'allow wasteful repetition of arguments already briefed, considered and decided'" (citation omitted)); *Inline Connection Corp. v. AOL Time Warner Inc.*, 395 F. Supp. 2d 115, 117 (D. Del. 2005) ("[M]otions for reconsideration 'should not be used to rehash arguments already briefed.'" (citation omitted)).

Ampex asserts only one argument in its motion for reconsideration: that the "said/the data" amendment was not a narrowing amendment and therefore could not invoke the presumption of prosecution history estoppel. (D.I. 490, at 1.) This *precise issue* was raised during summary judgment briefing and considered by the Court. (*See* D.I. 304, at 3, 32 (arguing that prosecution history estoppel applies to the "said/the data" limitation because it was added by amendment to require the pixel data stored in bulk memory to be the same pixel data initially captured and stored in random access memory); D.I. 366, at 33-34 (not disputing that "the presumption of a bar is raised" with respect to claims that were narrowed to include the "said/the data" limitation).) The Court correctly held that "[b]y adding the term 'said' to 'video pixel data,' *the amendment narrowed the scope of this term*" and that "the applicant specifically stated that the purpose of the amendment was to *limit* the term 'video pixel data' to the data that was identified earlier in the same claim." (D.I. 479, at 7 (emphasis added).)

Ampex's motion for reconsideration therefore presents no issues that the Court has not already considered and no arguments that Ampex could not have made in its summary judgment opposition. On this basis alone, Ampex's motion for reconsideration should be denied. *See Davis v. Mountaire Farms, Inc.*, No. Civ. A. 04-414-KAJ, 2005 WL 1800054, at *1-2 (D. Del. July 29, 2005) (rejecting motion for reargument where the movant repeated arguments already considered by the Court); *eSpeed*, 2005 WL 83471, at *1 ("'Courts should be particularly vigilant that motions for reargument or reconsideration are not used as a means to argue new facts or issues that inexcusably were not presented to the Court in the matter previously decided.'" (citation omitted)); *Kelly v. MBNA America Bank*, No. Civ. A. 06-228-JJF, 2006 WL 2993268, at *1 (D. Del.

- 8 -

Oct. 20, 2006) ("A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made.").

### B. The Court Correctly Determined That The "Said/The Data" Amendment Was A Narrowing Amendment That Created An Estoppel.

During prosecution, the examiner rejected the pending claims of the '121 patent as indefinite under 35 U.S.C. § 112, ¶ 2. With respect to claim 7, the examiner explicitly stated that "video pixel data" in line 11 (which described the data stored in bulk memory) was indefinite because it was not clear if it referred back to the pixel data recited in lines 5-6 (which described the data stored in random access memory). (*See* D.I. 306, at A-103.)

Ampex responded to the examiner's § 112, ¶ 2 rejection by amending claim 7 to require the data stored in the system's bulk memory to be the same data as initially captured and stored in random access memory. Specifically, Ampex limited the term "video pixel data" in line 11 to "*said* video pixel data" and explained that the "video pixel data" in the amended claim now "properly refer[s] back to lines 5, 6 . . . of the original claims." (D.I. 306, at A-123.)[5]

This "said data" amendment necessarily narrowed the scope of claim 7. Prior to the amendment, claim 7 recited "random access memory means for storing video pixel data" and "[bulk] memory means for receiving video pixel data" – without limitation as to whether the data identified as being stored in bulk memory was the same as, altered, or otherwise different than the data identified as being stored in random access memory. In other words, the original claim 7 permitted the data stored in bulk memory to be *either*

---

[5]    In their summary judgment briefing, Defendants argued that the estoppel created by the "said/the data" amendments applies to all asserted claims. (D.I. 304, at 32; D.I. 409, at 12-13 & n.10.)

the same as *or* different than the data stored in random access memory. The "said data" amendment specifically imposed an additional limitation by requiring that the data stored in bulk memory *must* be the *same data* that is stored in random access memory. As this Court correctly recognized, the very purpose of the "said data" amendment was "to *limit* the term 'video pixel data' to the data that was identified earlier in the claim." (D.I. 479, at 7 (emphasis added); *see also* D.I. 472, at 16 ("Again, however, the claims will not cover a system that, in the course of processing data, changes the values of the luminance and chrominance components.").) Under *Festo*, this narrowing amendment gives rise to a presumption of prosecution history estoppel. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002) ("[A] narrowing amendment made to satisfy *any* requirement of the Patent Act may give rise to an estoppel." (emphasis added)).

Ampex nevertheless argues now that the "said data" amendment did not narrow claim 7 because, according to Ampex, the original claim inherently required the data stored in bulk memory to be the same data that is stored in random access memory. (D.I. 490, at 7-8.) Not only is this contention contrary to Ampex's own claim construction arguments – in which Ampex repeatedly argued that, even in the amended claim, the video pixel data stored in bulk memory can be *different* from the data stored in random access memory (*e.g.*, D.I. 300, at 20-22; D.I. 346, at 12-13; D.I. 366, at 29) – but it is also contrary to the examiner's reading of the original claim. (*See* D.I. 306, at A-103 (stating that it was not clear if the "video pixel data" stored in bulk memory referred back to the pixel data stored in random access memory); *see also* D.I. 479, at 7, 9-10.) Accordingly, there is no basis for Ampex's contention that it would have been "reasonably

- 10 -

ascertainable" for a person of ordinary skill in the art to read the original claim to require the "video pixel data" stored in bulk memory to be the same data that is stored in random access memory.

Moreover, nothing in the language of the original claim required the *same data* to be stored in both random access memory and bulk memory. Contrary to Ampex's assertion, the original claim's recitation of "[bulk] memory means for receiving video pixel data" only indicated that some "video pixel data" must be received from random access memory (which could store more than one set of "video pixel data"). It did not require the very same "video pixel data" that is stored in random access memory to be stored in bulk memory; nor did it identify which (if any) "video pixel data" from random access memory it was referring to. Similarly, the "means for generating" limitation in the original claim said nothing about whether the video pixel data could be altered between storage in random access memory and bulk memory.

At bottom, Ampex's "inherency" argument incorrectly presumes that an antecedent relationship already existed between the "video pixel data" first recited in the random access memory limitation and the "video pixel data" later recited in the bulk memory limitation in the claim as originally filed. (*See, e.g.*, D.I. 490, at 5, 8.) However, the original claim's failure to indicate what, if any, relationship there was between the two "video pixel data" terms is precisely what led to the examiner's rejection of the claim as indefinite. (*See* D.I. 306, at A-103 ("In claim 18, line 11, 'video pixel data' is indefinite because it is not clear if it refers back to the pixel data recited in lines 5 and 6").) Had Ampex not intended to narrow the scope of claim 7, it could have argued – without amendment – that the original claim required the "video pixel data" recited in

line 11 to be the same data as the "video pixel data" recited in lines 5-6. Instead, Ampex intentionally chose to narrow the claim scope by amendment.[6] (*See id.* at A-122 ("The claims have also been carefully reviewed particularly in light of the Examiner's rejections and helpful suggestions, and have been amended throughout in keeping with the Examiner's suggestions...."); *id.* at A-123 ("[T]he 'video pixel data' ... properly refer[s] back to lines 5, 6 ... of the original claims.").) Indeed, as this Court properly recognized, it was the added "said/the data" language – and not the language of the original claim – that created an antecedent relationship and required the data stored in bulk memory to be the same as the data stored in random access memory. (D.I. 479, at 9-10.)[7]

Ampex argues in its motion for reconsideration that amendments made in response to rejections under 35 U.S.C. § 112, ¶ 2 are narrowing amendments "[o]nly rarely" and "only in special circumstances." (D.I. 490, at 10.) The Supreme Court has held, however, that § 112 amendments can be narrowing even if made only for the purpose of better describing claim requirements:

> [I]f a § 112 amendment is necessary and narrows the patent's scope – *even if only for the purpose of better description* – estoppel may apply. A patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter, whether the amendment was made to avoid the prior art or to comply with § 112.

---

[6] Ampex's decision to amend the "bulk storage" limitation in each of claims 7, 8, 10, and 12 to specify an antecedent basis for the "data" in bulk storage further highlights that the amendment was not made simply to correct a clerical error.

[7] In making its "inherency" argument, Ampex cites decisions in which courts have found amendments not to be narrowing because they merely confirmed limitations that were already present in the original claims. (*See* D.I. 490, at 9-10.) As explained above, however, the "said/the data" limitation was not inherent in the original claims of the '121 patent. Accordingly, the cases cited by Ampex are not instructive as to whether the "said/the data" amendments – which changed the meaning of the asserted claims by *adding* an antecedent relationship – narrowed the asserted claims of the '121 patent.

*Festo*, 535 U.S. at 737 (emphasis added).

Consistent with this principle, the Federal Circuit has found amendments made in response to § 112, ¶ 2 rejections to be narrowing amendments that give rise to prosecution history estoppel. In *Litton Systems, Inc. v. Honeywell Inc.*, 238 F.3d 1376 (Fed. Cir. 2001), for example, the Federal Circuit held that "Litton narrowed its claims by amending the term 'ion beam source' to read 'Kaufman-type ion beam source' . . . . in direct response to a rejection under 35 U.S.C. § 112, ¶ 2." *Id.* at 1380.[8] Notably, the court found this amendment to be narrowing even though the applicant had expressly argued prior to the amendment that the "ion beam source" in its original claims could not properly be construed to refer to anything other than a Kaufman-type ion beam source. *Id.* Rejecting the applicant's own statement during prosecution that the original claim was "inherently" limited, and instead focusing on the change in claim scope effected by the amendment, the court held that the narrowing "Kaufman-type" amendment resulted in an estoppel. *See id.*

Similarly, in *Glaxo Group Ltd. v. Ranbaxy Pharmaceuticals, Inc.*, 262 F.3d 1333 (Fed. Cir. 2001), the Federal Circuit held that an amendment made in response to an indefiniteness rejection was a narrowing amendment. In that case, the examiner initially rejected all of the pending claims under § 112, ¶ 2, stating: "It is not definite what is particularly included or excluded by the term 'highly pure, substantially amorphous form.' . . . It is also not clear how much crystalline material is permitted." *Id.* at 1338. In response to that rejection, the applicant clarified how much crystalline material was

---

[8]   Although the claims had been rejected earlier on obviousness grounds, the court specifically held that the narrowing amendment giving rise to prosecution history estoppel was made in response to the examiner's § 112, ¶ 2 rejection. *See Litton*, 238 F.3d at 1378, 1380.

permitted (and, conversely, how "pure" or "amorphous" the claimed compound must be) by amending the original claims to include the limitation "essentially free from crystalline material." *Id.* Because the applicant chose to cure the indefiniteness problem by narrowing the claim scope, the Federal Circuit held that the "essentially free from crystalline material" amendment gave rise to prosecution history estoppel and prevented reliance on the doctrine of equivalents for the amended limitation. *Id.*

As these cases demonstrate, any narrowing amendment made for a substantial reason of patentability – including an amendment made in response to an indefiniteness rejection under 35 U.S.C. § 112, ¶ 2 – triggers the *Festo* presumption of prosecution history estoppel. Here, because Ampex chose to narrow its claims during prosecution by adding the "said/the data" limitations to overcome the examiner's indefiniteness rejections, the Court correctly determined that Ampex should not be permitted to recapture that surrendered claim scope through the doctrine of equivalents.[9]

---

[9] As Defendants argued in their summary judgment briefing, two additional bases support the Court's determination that the "said/the data" limitation cannot be met under the doctrine of equivalents: (1) the "all elements" rule precludes a finding of equivalence because ***different*** data cannot be equivalent to "said/the data" or else this antecedent term would be vitiated (D.I. 304, at 32-33; D.I. 409, at 10-12); and (2) no reasonable jury could find that there are only "insubstantial differences" between the CFA image data (which stores only one color value per pixel) and the JPEG-compressed Primary image data (which stores three values per pixel) in the accused cameras (D.I. 304, at 33-34).

IV. **CONCLUSION**

Defendants respectfully request that the Court deny Ampex's motion for reargument and reconsideration.

CONNOLLY BOVE LODGE & HUTZ LLP

/s/ Collins J. Seitz, Jr.
Collins J. Seitz, Jr. (#2237)
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com

*Attorneys for Defendants Eastman Kodak Company
and Altek Corporation*

*Of Counsel:*
William F. Lee
Donald R. Steinberg
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800

Date: November 13, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2006, I electronically served Defendants' Brief in Opposition to Ampex's Motion for Reargument and Reconsideration of the Court's Memorandum Opinion and Order Granting Defendants' Motion for Summary Judgment of Non-Infringement as follows:

**By Email and Hand Delivery**

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

| | |
|---|---|
| **VIA E-MAIL** | **VIA E-MAIL & FEDERAL EXPRESS** |
| Jesse J. Jenner, Esquire<br>Ropes & Gray LLP<br>1251 Avenue of the Americas<br>New York, NY 10020 | Norman H. Beamer, Esquire<br>Ropes & Gray LLP<br>525 University Avenue<br>Palo Alto, CA 94301 |

/s/ Collins J. Seitz, Jr.
Collins J. Seitz, Jr. (Bar No. 2237)
Connolly Bove Lodge & Hutz LLP
P.O. Box 2207
1007 North Orange Street
Wilmington, DE 19899