IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPEX CORPORATION,<br><br>        *Plaintiff,*<br><br>    v.<br><br>EASTMAN KODAK COMPANY,<br>ALTEK CORPORATION, and<br>CHINON INDUSTRIES, INC.,<br><br>        *Defendants.* | )<br>)<br>)<br>)<br>)   C.A. No. 04-1373-KAJ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AMPEX'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR REARGUMENT AND RECONSIDERATION
OF THE COURT'S MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

OF COUNSEL:

Jesse J. Jenner
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Sasha G. Rao
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC 20005
(202) 508-4600

November 15, 2006

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
*Attorneys for Plaintiff Ampex Corporation*

## TABLE OF CONTENTS

|    |    | Page |
|---|---|---|
| TABLE OF CITATIONS | | ii |
| INTRODUCTION | | 1 |
| ARGUMENT | | 2 |
| I. | THE ISSUE OF NARROWING WAS NOT FULLY BRIEFED AND ARGUED | 2 |
| II. | AMPEX'S CLARIFYING AMENDMENT DID NOT NARROW THE CLAIMS | 3 |
| CONCLUSION | | 9 |

ii.

## TABLE OF CITATIONS

Page(s)

Cases

*Glaxo Group Ltd. v. Ranbaxy Pharm.*,
    262 F.3d 1333 (Fed. Cir. 2001)      7

*Litton Sys., Inc. v. Honeywell, Inc.*,
    238 F.3d 1376 (Fed. Cir. 2001)      7

*Max's Seafood Café* v. *Quinteros*,
    176 F.3d 669 (3d Cir. 1999)      3

Statutes

35 U.S.C. § 112      1, 6, 7

Other Authorities

MPEP § 2173.05(e)      7

ii.

## TABLE OF CITATIONS

Page(s)

Cases

*Glaxo Group Ltd. v. Ranbaxy Pharm.*,
    262 F.3d 1333 (Fed. Cir. 2001)      7

*Litton Sys., Inc. v. Honeywell, Inc.*,
    238 F.3d 1376 (Fed. Cir. 2001)      7

*Max's Seafood Café* v. *Quinteros*,
    176 F.3d 669 (3d Cir. 1999)      3

Statutes

35 U.S.C. § 112      1, 6, 7

Other Authorities

MPEP § 2173.05(e)      7

1.

## INTRODUCTION

In its Motion (D.I. 490), Ampex demonstrated that prosecution history estoppel cannot bar application of the doctrine of equivalents to the "said data" limitation because that limitation did not arise from a "narrowing amendment" made during prosecution. The claim amendment at issue merely clarified and confirmed a limitation inherent in the original application claim. The Examiner had rejected the claim not because of a problem of undue breadth, but rather to fix an antecedent basis problem – a problem the Manual of Patent Examining Procedure regards as a "minor problem" or "drafting oversight."

Defendants' initial response is to seek to avoid the merits altogether. They argue that, despite at most a paragraph of argument out of more than 100 pages of briefs, the issue was adequately addressed in the summary judgment papers. In the end, Defendants try to shift responsibility to Ampex for not responding to an argument that Defendants did not adequately support in the first place. Defendants do not dispute that it was their burden to show that a narrowing had occurred.

On the merits, Defendants either gloss over, or ignore, the most important evidence and the most relevant authorities. In their attempt to create a narrowing where there was none, Defendants rely on a reading of the original claim that is flatly illogical. As for the authorities cited by Ampex regarding amendments made to clarify antecedent basis problems, as well as other clarifying amendments made to cure similar indefiniteness deficiencies under 35 U.S.C. § 112 ¶ 2, Defendants have no adequate answer. That is because the proposition that Ampex narrowed application claim 18 cannot be squared with those authorities.

2.

# ARGUMENT

## I. THE ISSUE OF NARROWING WAS NOT FULLY BRIEFED AND ARGUED

Defendants do not dispute that the entirety of its argument on prosecution history estoppel in its summary judgment brief was confined to a single paragraph. Nor do Defendants dispute that they did not explain what, if any, claim scope was allegedly given up by the amendment at issue, or describe a single embodiment of the invention that would have been disclaimed. Indeed, Defendants do not dispute that the issue of "narrowing" was not expressly addressed in the parties' subsequent briefing.

Defendants nonetheless argue that the "precise issue" of narrowing was presented to the Court during the summary judgment briefing. (D.I. 491 at 1, 8). It was not. Defendants merely cited *Festo* for the well-known proposition that prosecution history estoppel may apply to claim limitations that have been narrowed in response to an Examiner's rejection, and even this "argument" was made in a parenthetical to the citation. (D.I. 304 at 32). Defendants do not point to any facts demonstrating that narrowing occurred in this case.

Defendants also suggest (D.I. 491 at 5) that the issue of narrowing was addressed during the oral argument on claim construction. Not so. Defendants confuse claim construction arguments, which were made, with prosecution history estoppel arguments, which were not. At the July 13 hearing, the Court specifically noted that it would subsequently consider the parties' motions for summary judgment and hear argument if necessary. (D.I. 444 at 80).

Defendants finally argue that Ampex's motion should be denied on the grounds that Ampex argues new facts and issues that could have been presented before. (D.I. 491 at 8). Here, Defendants do not acknowledge the fact that they had the burden to prove narrowing, but did not do so, leaving nothing for Ampex to address. The briefing page limits, coupled with the need to

3.

respond to the dozens of other non-infringement arguments that Defendants did raise, imposed practical limitations on Ampex's ability to respond to an argument that was not even made. *See Max's Seafood Café* v. *Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999) (abuse of discretion to deny reconsideration to non-movant who did not produce evidence in support of defense because movant who had the burden of proof failed to produce evidence).

Indeed, it is Defendants who make new arguments that should have been raised before. Defendants could have, but did not, make an attempt to demonstrate narrowing on their motion for summary judgment, even though it was their burden to do so. Defendants' request for summary judgment should have been denied on that ground alone.

## II.    AMPEX'S CLARIFYING AMENDMENT DID NOT NARROW THE CLAIMS

In its motion, Ampex demonstrated that: 1) Ampex added the word "said" before "video pixel data" in application claim 18 (issued claim 7) to clarify an antecedent relationship in the original claim; 2) the antecedent relationship was inherent in the claim as originally written; and 3) amendments made to overcome technical rejections relating to antecedent basis under 35 U.S.C. § 112 ¶ 2 are rarely (if ever) narrowing. Thus, Ampex's claim amendment was not narrowing, and prosecution history estoppel does not apply.

Defendants do not contest that they have the burden to prove that a narrowing occurred. Yet Defendants' Opposition to this motion still does not meet that burden.

Defendants' primary argument is that "video pixel data from said random access memory" in original application claim 18 should be read to cover not only data that is the "same" as video pixel data in the random access memory, but also data that is "different" from the data in the random access memory. (D.I. 491 at 9-10). But Defendants do not explain how it would be possible, consistent with either the claims or the specification, for the memory means to receive

4.

video pixel data from "said random access memory" that is "different from" the video pixel data stored in the random access memory in the first place. As a matter of logic, video pixel data received from "said random access memory" must have been stored in "said random access memory."

This illogical argument is Defendants' only attempt to meet their burden of proof. Defendants make no showing to question that the antecedent relationship in the original application claim 18 would have been "reasonably ascertainable" by a person of ordinary skill in the art. Defendants do not address either the claims as a whole or the specification to determine whether a narrowing occurred.

The remainder of Defendants' brief only attempts to rebut Ampex's submission. Defendants first point to an argument made during claim construction in which Ampex, according to Defendants, pointed out that the bulk memory could store video pixel data "different" from data initially stored in the random access memory, provided the data relates to the same image. According to Defendants, Ampex's claim construction is inconsistent with its argument that the "said data" antecedent was inherent in the original application claim.

To the contrary, Ampex never asserted that the "data" (in the bulk store and random access memory) is different, and never questioned the antecedent relationship between the data in random access memory and the data in bulk store. Rather, Ampex explained what it meant for the data to be the same. Unlike Defendants, Ampex argued that the "data" remains the same, even if the ones and zeros change, and even if it is "processed to enhance the representation of the image, altered in format, or compressed," as long as the picture information is the same. See D.I. 300 at 20-22. Although the Court did not agree with Ampex's argument that the pixel values could change, that argument has nothing to do with the question here — whether the antecedent

5.

relationship of the data in the RAM and the data in the bulk store was inherently present in the original claim.

Nothing in Ampex's claim construction arguments suggested that original claim 18 and issued claim 18 have different scope with respect to the "said data" limitations. Ampex's claim construction arguments – as well as Defendants' – apply with equal force to original application claim 18 as they applied to the issued claim (claim 7). To the extent the issued claim would have allowed for changes in ones and zeroes or pixel values (but not the image itself), so too would have the original claim. Similarly, to the extent the issued claim did not allow for changes in pixel values (as construed by the Court), so too did the original claim not allow for those changes, because the original claim contained other language, for example in the "means for generating" limitation, that would compel the same result under the Court's claim construction.

Defendants dispute the significance of the additional claim language highlighted by Ampex that demonstrates that the "said data" requirement was inherently required by original application claim 18. Defendants' argument, that the original claim 18 did not require the same video pixel data stored in random access memory to be stored in bulk memory, merely assumes its conclusion. It ignores the operative claim language of original claim 18, which specifically required that the video pixel data be received from "said random access memory." This argument also ignores the patent specification, which teaches only one mode of operation consistent with original claim 18. (D.I. 491 at 8-9).

Defendants also do not address the original claim language when trying to avoid a logical application of the "means for generating" limitation. Without citing any support in the claim language or specification, Defendants argue that the "means for generating" could allow for the possibility of altering data between the random access memory and bulk store. But, as Ampex

6.

showed in its motion, the actual language of the original claim made clear that the data stored in the memory means was the data that previously had been stored in the random access memory. Ampex highlighted, for example, original claim language stating that video pixel data is stored in the random access memory "prior to storage of the contents of said random access memory means in said memory means." Indeed, the "means for generating" limitation included the very antecedent-specifying language that Defendants have successfully argued *rule out* any possibility (under literal construction) that the data can be altered between the random access memory and the bulk store:

> means for generating said corresponding reduced size image from any said full size image in said random access memory means to be transferred to said memory means and for storing the video pixel data representing said reduced size image in said random access memory means prior to storage of the contents of said random access memory means in said memory means.

Defendants do not even acknowledge this original claim language, much less address it.

Defendants then turn to the Examiner's rejection of claim 18 for indefiniteness. The Examiner's statement also does not help Defendants, however, because it makes plain that the basis for the rejection was that the claim was "not clear," rather than being overbroad. Defendants ignore the fact that the MPEP describes antecedent basis problems of the sort identified by the Examiner as "minor problems" and "drafting oversights." Defendants do not cite any case in which a rejection under § 112 ¶ 2 relating to an antecedent basis problem was found to be narrowing. Nor do Defendants offer any explanation why an amendment to correct an antecedent basis problem should be narrowing, especially where, as here, there is no indication on the record that the original claim was being rejected for undue breadth.

Defendants speculate (D.I. 491 at 11-12) that Ampex could have argued to the Examiner that the original claim did not need to be amended. Just as the cases cited in Ampex's motion

7.

show, however, Ampex was entitled to amend the claim to further clarify what already had been claimed and was inherent in the claim. As the MPEP explains, routine drafting suggestions for clarification are routinely accepted and complied with by applicants. MPEP § 2173.05(e). D.I. 490, Exhibit C.

Finally, Defendants cite two cases for the proposition that amendments made following § 112 ¶ 2 rejections can be narrowing. Ampex does not dispute that, on appropriate facts, such an amendment could be narrowing. But that is not the case here, and the cases cited by Defendants are readily distinguishable.

In both of the cases, the Examiner's rejection made plain that the asserted claim was overly broad, and would have to be narrowed to overcome the rejection. And in both cases, the applicant acquiesced and stated that it was narrowing the claims. Neither case involved an antecedent basis issue.

In *Litton Sys., Inc. v. Honeywell, Inc.*, 238 F.3d 1376 (Fed. Cir. 2001), the Examiner rejected proposed reissue claims over the prior art and under § 112 ¶ 2 because the applicant did not claim what it regarded as his invention. The applicant argued that its claims already were limited to "Kaufman-type ion beam guns," but the Examiner conditioned allowance of the claims on Litton's amendment to limit them to "Kaufman-type ion beam sources." *Id.* at 1378, 1380.

In *Glaxo Group Ltd. v. Ranbaxy Pharm.*, 262 F.3d 1333 (Fed. Cir. 2001), the Examiner again made clear that the claim had an undue breadth problem, by statting that it was unclear "how much crystalline material is permitted." The applicant's response unambiguously narrowed the claim by reducing the claimed amount of crystalline material permitted by the claim. Indeed, the applicant amended the claim so that it would be "essentially free from crystalline material." *Id.* at 1338.

8.

Defendants do not discuss the facts of the cases cited by Ampex. In a footnote (D.I. 491 at 12 n.7), Defendants dismiss them all with the argument that they do not apply because, according to Defendants, in this case the claim limitation was not inherent in the original claim. But that just begs the question. If the amendments in the cases cited by Ampex merely confirmed what is inherent in the claims, why didn't Ampex's amendment do the same? It is no answer to say, as Defendants do in their footnote, that this case involves "adding" an antecedent relationship. The claims in the cases cited by Ampex involved claim language that had been added by the applicants, and Defendants' argument once again assumes that the antecedent relationship was not in the claims in the first place. Defendants do not distinguish the cases cited by Ampex because they have no meaningful way to do so.

In a final footnote, Defendants ask the Court to foreclose infringement under the doctrine of equivalents even if it agrees with Ampex that prosecution history estoppel cannot apply. In so doing, Defendants refer to arguments in the summary judgment briefs relating to the "all-elements" rule and the "insubstantial differences" test. The parties' arguments on those issues do not address, however, the subsequently issued Claim Construction Order (D.I. 472-73), which did not adopt either party's proposed construction of "said data." That Order provides further support for Ampex's demonstration that the "all elements rule" does not bar application of the doctrine of equivalents and that the "insubstantial differences" test is met. (D.I. 472 at 29-32, 34). Ampex is prepared to address how the Court's Claim Construction Order would affect Ampex's proofs of infringement under the doctrine of equivalents, if necessary.

9.

## CONCLUSION

As demonstrated in Ampex's motion, an examination of the claims as a whole and the relevant authorities demonstrates that the Court's determination that there was a "narrowing" amendment was in error. The Court should GRANT Ampex's motion for reargument and reconsideration.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld (#1014)*
_____
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

OF COUNSEL:

*Attorneys for Plaintiff Ampex Corporation*

Jesse J. Jenner
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Norman H. Beamer
Gabrielle E. Higgins
Sasha G. Rao
Ropes & Gray LLP
525 University Avenue
Palo Alto, California 94301
(650) 617-4000

James E. Hopenfeld
Ropes & Gray LLP
One Metro Center
700 12th Street, NW
Washington, DC  20005
(202) 508-4600

November 15, 2006

**CERTIFICATE OF SERVICE**

       I, Jack B. Blumenfeld, hereby certify that on November 15, 2006, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

       Collins J. Seitz, Jr., Esquire
       Connolly, Bove, Lodge & Hutz LLP

and that I caused copies to be served upon the following in the manner indicated:

**BY E-MAIL and BY HAND**

Collins J. Seitz, Jr., Esquire
Connolly, Bove, Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

**BY E-MAIL and BY FEDERAL EXPRESS**

Michael J. Summersgill, Esquire
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109


                             */s/   Jack B. Blumenfeld (#1014)*
                             Jack B. Blumenfeld (#1014)