## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AMPEX CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1373-KAJ |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| ALTEK CORPORATION and CHINON | ) | |
| INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' BILL OF COSTS

Collins J. Seitz, Jr. (Bar No. 2237)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com
*Attorneys for Defendants Eastman Kodak*
*Company and Altek Corporation*

*Of Counsel:*
William F. Lee
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800

Dated: February 19, 2008

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................... 2

III.  DEFENDANTS' BILL OF COSTS .............................................................. 5

      A.    Prevailing Parties Are Entitled to Deposition, Copying,
            and Demonstrative Costs........................................................................ 5

      B.    Defendants Request Costs of Fewer than One-Third
            of the Depositions They Took ................................................................ 6

      C.    Defendants Request Only a Fraction of the Copying Costs
            They Expended ...................................................................................... 16

      D.    Defendants Seek Only a Portion of the Demonstrative
            Costs They Incurred .............................................................................. 16

IV.   CONCLUSION ............................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Advance Bus. Sys. & Supply Co. v. SCP Corp.*
  287 F.Supp. 143 (D.Md. 1968) ......................................................... 17

*Anders v. FPA Corp.*
  164 F.R.D. 383 (D.N.J. 1995) .........................................................5-6

*Cefalu v. Village of Elk Grove*
  211 F.3d 416 (7th Cir. 2000)............................................................. 17

*Cordis Corp. v. Boston Scientific Corp.*
  431 F.Supp.2d 442 (D. Del. 2006) ............................................... 5, 6

*Eickhoff v. Vulcan Iron Works*
  2 F.R.D. 490 (M.D. Pa. 1942).......................................................... 17

*In re Kulicke & Soffa Indus., Inc.* Securities Lit.
  747 F.Supp. 1136 (E.D. Pa. 1990).................................................... 17

*Loubier v. Modern* Acoustics, *Inc.*
  178 F.R.D. 17 (D. Conn. 1998) ......................................................... 6

*Mikel v. Kerr*
  499 F.2d 1178 (10th Cir. 1974)........................................................ 17

*Ochana v. Flores*
  206 F.Supp.2d 941 (N.D. Ill. 2002)................................................. 16

**FEDERAL STATUTES AND RULES**

28 U.S.C. § 1920............................................................ 1, 5, 16-18

Fed. R. Civ. P. 54 ............................................................... 1, 16, 18

Fed. R. Civ. P. 41(d) ............................................................... 5, 6

**DISTRICT OF DELAWARE LOCAL RULES**

Local Rule 54.1.........................................................1, 5, 6, 16, 18

Local Rule 30.4.......................................................................... 6

Defendants Eastman Kodak Company ("Kodak") and Altek Corporation ("Altek"), prevailing parties in the above-captioned action, respectfully submit this bill of costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, District of Delaware Local Rule 54.1, and 28 U.S.C. § 1920.

## I.    INTRODUCTION

Plaintiff Ampex Corporation ("Ampex") filed this suit in 2004, accusing Defendants of infringing U.S. Patent No. 4,821,121 ("the '121 patent").  Over the past four years, Defendants have been forced to spend millions of dollars to defend themselves against Ampex's infringement allegations.  Each and every court that has addressed Ampex's claims, however, has found them to be entirely without merit.  Indeed, after years of litigation, this Court dismissed Ampex's infringement allegations on summary judgment, finding that Ampex had failed to raise a single issue of material fact with respect to infringement.  (D.I. 480.)  On February 7, 2008, the United States Court of Appeals for the Federal Circuit affirmed this Court's decision without an opinion, suggesting that Ampex had "utterly failed to raise any issues" that required further explanation. (Federal Circuit Order (attached hereto as Exhibit A); Federal Circuit Questions and Answers regarding Petitions for Panel Rehearing (attached hereto as Exhibit B).)

Now, having been adjudicated the prevailing parties in this action, Defendants seek to recover costs pursuant to Fed. R. Civ. P. 54, District of Delaware Local Rule 54.1, and 28 U.S.C. § 1920.  The actual costs that Defendants incurred in this litigation reaches into the millions of dollars.  Defendants took more than thirty-five depositions, spent hundreds of thousands of dollars copying and preparing documents, and hundreds of thousands more preparing trial exhibits and demonstratives.  Defendants do not, however,

seek all of these costs. Instead, Defendants take a conservative approach to recovering costs and request only a fraction of the costs they actually incurred. Specifically, Defendants request only three limited categories of costs: (1) the costs of eleven depositions Defendants took and relied upon to resolve material issues in this case; (2) the cost of one copy of the pleadings and exhibits Defendants submitted to the Court; and (3) a portion of the costs of preparing demonstratives that Defendants used during two hearings before this Court.

In total, as described herein and detailed and verified in the affidavit of Jordan L. Hirsch, attached hereto as Exhibit C, Defendants respectfully request a total of $144,998.47 in costs.

## II.    FACTUAL BACKGROUND

Ampex filed complaints against Defendants alleging infringement of the '121 patent in this Court and the International Trade Commission ("ITC") on October 21, 2004. This action was stayed during the pendency of the ITC action. In the ITC, Ampex claimed that Defendants infringed claims 7, 8, and 10 through 15 of the '121 patent. The parties litigated infringement, invalidity and unenforceability of these claims of the '121 patent in the ITC for ten months, conducting full discovery, proposing claim constructions, and submitting written trial testimony. On July 29, 2005, after the submission of written trial testimony on issues of non-infringement, invalidity, and unenforceability, and just weeks before trial was set to begin, Ampex abandoned its ITC complaint. The ITC action formally terminated on August 23, 2005.

Ampex then pursued this litigation. Ampex again asserted that Defendants infringed claims 7, 8, and 10 through 15 of the '121 patent. The parties agreed that discovery taken

in the ITC was deemed taken in this action.  Still, the parties litigated infringement,

invalidity, and unenforceability in this forum for an additional fourteen months.

Including the discovery from the ITC, the parties produced millions of pages of

documents and took more than seventy five depositions.  Defendants took more than

thirty five depositions in order to defend against Ampex's allegations.

On January 12, 2006, at the Court's request, the parties presented the Court with a

detailed tutorial regarding the technology at issue in this case.  Defendants presented

demonstrative and visual aids to the Court during the tutorial.

The parties also submitted extensive claim construction briefing and summary

judgment motions in May 2006.  Defendants submitted two summary judgment motions:

a Motion for Summary Judgment of Non-Infringement (D.I. 304), and a Motion for

Summary Judgment of Inequitable Conduct (D.I. 293).  In support of these motions,

Defendants relied on the deposition testimony of former and current Ampex employees,

Ampex's expert witnesses, and the attorneys who prosecuted the '121 patent.  Ampex

filed *five* summary judgment motions: a Motion for Partial Summary Judgment That U.S.

Patent No. 4,821,121 Is Not Invalid For Obviousness (D.I. 281); a Motion for Partial

Summary Judgment that U.S. Patent No. 4,821,121 Is Not Anticipated (D.I. 290); a

Motion for Summary Judgment that U.S. Patent No. 4,821,121 Is Not Unenforceable Due

to Alleged Inequitable Conduct (D.I. 284); a Motion for Summary Judgment That The

Quantel Paint Box Is Not Prior Art To U.S. Patent No. 4,821,121 (D.I. 295); and a

Motion for Summary Judgment that U.S. Patent No. 4,802,019 Is Not Prior Art to U.S.

Patent No. 4,821,121 (D.I. 287).  Defendants opposed Ampex's summary judgment

motions, relying on the deposition testimony of multiple fact and expert witnesses.

On July 13, 2006, the Court held a Markman and Summary Judgment Hearing during which the parties argued claim construction and summary judgment. Defendants presented demonstrative and visual aids to the Court during this hearing.

In October 2006, with trial approaching (trial was scheduled to begin in December 2006), the parties submitted a Proposed Final Pretrial Order, filed motions in limine, and exchanged deposition designations.

The Court ruled on claim construction and summary judgment in late October 2006. The Court denied each of Ampex's five summary judgment motions (D.I. 483 (denying Ampex's Motion for Partial Summary Judgment that U.S. Patent No. 4,821,121 Is Not Anticipated); D.I. 474 (denying Ampex's Motion for Summary Judgment that U.S. Patent No. 4,821,121 Is Not Unenforceable Due to Alleged Inequitable Conduct); D.I. 482 (denying Ampex's Motion for Summary Judgment That The Quantel Paint Box Is Not Prior Art To U.S. Patent No. 4,821,121 and Ampex's Motion for Summary Judgment that U.S. Patent No. 4,802,019 Is Not Prior Art to U.S. Patent No. 4,821,121); D.I. 485 (denying Ampex's Motion for Partial Summary Judgment That U.S. Patent No. 4,821,121 Is Not Invalid For Obviousness))[1] and one of Defendants' motions (D.I. 474 (denying Defendants' Motion for Summary Judgment of Inequitable Conduct)).

On October 31, 2006, however, after issuing a claim construction for the relevant terms of the '121 patent, the Court granted Defendants' Motion for Summary Judgment of Non-Infringement. (D.I. 480.) The Court found that Ampex had not presented any material issues of fact with respect to its infringement allegations. (*Id.*)

---

[1]    Ampex contended in its Motion For Partial Summary Judgment That U.S. Patent No. 4,821,121 Is Not Invalid For Obviousness that seven combinations of prior art could not render the '121 patent obvious. In order to narrow the issues before the Court, Defendants opposed Ampex's motion with respect to only four of these combinations. The Court denied Ampex's motion with respect to each of the four combinations that Defendants addressed in their opposition.

Ampex moved for reconsideration of the Court's non-infringement summary judgment decision.  On November 20, 2006, after additional briefing by both Ampex and Defendants, the Court denied Ampex's request for reconsideration.  (D.I. 494.)  The Court entered final judgment in favor of Defendants on November 21, 2006.  (D.I. 496.)

Ampex subsequently appealed the Court's judgment to the United States Court of Appeals for the Federal Circuit.  On February 7, 2008, one day after hearing oral argument, the Federal Circuit entered judgment affirming this Court's ruling without an opinion, indicating that Ampex had "utterly failed to raise any issues in the appeal that require an opinion to be written…"  (Exhibit A; Exhibit B.)

## III.    DEFENDANTS' BILL OF COSTS

### A.    Prevailing Parties Are Entitled to Deposition, Copying, and Demonstrative Costs

Under District of Delaware Local Rule 54.1, the prevailing party in litigation "shall be entitled to costs."  *See* D. Del. Local Rule 54.1; *Cordis Corp. v. Boston Scientific Corp.*, 431 F.Supp.2d 442, 451 (D. Del. 2006) (explaining that Rule 54 "creates a strong presumption that costs are to be awarded to a prevailing party").  The prevailing party is entitled to a variety of costs, including (i) deposition costs; (ii) copying costs; and (iii) the cost of demonstratives.  *See* D. Del. Local Rule 54.1(b); 28 U.S.C. § 1920.

Where a plaintiff brings an action against defendants in one forum, voluntarily dismisses the action, and then brings the same claims against the same defendants in another forum, prevailing defendants may recover costs from *both* actions.  *See* Fed. R. Civ. P. 41(d) ("If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action …"); *Anders*

*v. FPA Corp.*, 164 F.R.D. 383, 386-88 (D.N.J. 1995) (explaining that where plaintiff drops suit against defendant and then re-asserts essentially the same claims, the defendant may obtain costs from both actions in the event it prevails in the later action). In order to obtain these costs, the defendants do *not* need to show that either action was motivated by bad faith. *See Loubier v. Modern Acoustics, Inc.*, 178 F.R.D. 17, 22 (D. Conn. 1998).

As the prevailing parties in this litigation, Defendants can recover deposition, copying, and demonstrative costs. *See* D. Del. Local Rule 54.1; 28 U.S.C. § 1920; *Cordis Corp.*, 431 F.Supp.2d at 451. Because Ampex brought suit against Defendants in the ITC, voluntarily dismissed its ITC complaint, and then brought the same claims in this Court, the costs that Defendants can now recover include those accrued during both the ITC proceedings and this action. *See* Fed. R. Civ. P. 41(d).

Ampex forced Defendants to expend millions of dollars in costs over the past four years to defend against its infringement allegations. Defendants, however, seek only a small portion of the costs they have actually incurred. Specifically, Defendants request only: (1) costs for fewer than one-third of the depositions they took; (2) a fraction of the actual copying costs they incurred; and (3) a portion of the costs they expended to prepare demonstrative exhibits used at two Court hearings.

### B. Defendants Request Costs of Fewer than One-Third of the Depositions They Took

Prevailing parties may recover the costs of a deposition if a substantial portion of the deposition was introduced at trial or used to resolve a material issue. *See* D. Del. Local Rule 54.1(b)(3). These costs include the court reporter's reasonable charges for original deposition transcripts and the charges associated with videotaping the deposition. *See* D. Del. Local Rule 54.1(b)(3); D. Del. Local Rule 30.4 (authorizing videotape depositions).

Defendants took more than ***thirty-five*** depositions in order to defend against Ampex's allegations. To be conservative, however, Defendants seek to recover the costs of only ***eleven*** of these depositions. Defendants substantially relied on each of these depositions in successfully obtaining summary judgment of non-infringement or successfully defeating Ampex's numerous motions for summary judgment.[2]

The following describes each of the depositions for which Defendants seek costs and the costs incurred as a result of each deposition:

### 1. Dr. George Ligler

George Ligler was one of Ampex's infringement experts. During the ITC action and this litigation, Dr. Ligler opined on the subject matter of the '121 patent, the operation of the accused Kodak and Altek devices, Ampex's infringement allegations, and certain prior art systems. Dr. Ligler's deposition testimony was critical in resolving claim construction, infringement, and validity issues throughout this litigation. By way of example, Defendants relied on Dr. Ligler's deposition testimony in their opening and reply briefs in support of their successful Motion for Summary Judgment of Non-Infringement (*see, e.g.,* D.I. 304 at 6, 9, 10, 22, 23, 25-30, 35, 37, 38; D.I. 409 at 3, 5, 8-10, 13, 14, 16, 18, 19), their opening and reply Claim Construction briefs (*see, e.g.,* D.I. 299 at 7, 9, 12, 15, 19, 24-25; D.I. 348 at 11), and their successful oppositions to Ampex's Motion for Partial Summary Judgment that U.S. Patent No. 4,821,121 Is Not Anticipated (*see, e.g.,* D.I. 356 at 4-5, 10, 14), Ampex's Motion for Summary Judgment that U.S. Patent No. 4,821,121 Is Not Unenforceable Due To Inequitable Conduct (*see,*

---

[2]    To be sure, these are not the only depositions Defendants relied on in moving for summary judgment and defending against Ampex's summary judgment motions. Defendants relied on a number of other depositions for background, context, and support. Nonetheless, Defendants conservatively seek costs only with respect to the eleven depositions that they affirmatively cited or quoted in their successful Motion for Summary Judgment of Non-Infringement or their successful defenses to Ampex's summary judgment motions.

*e.g.* D.I. 365 at 23), and Ampex's Motion for Summary Judgment that U.S. Patent No. 4,802,019 Is Not Prior Art to U.S. Patent No. 4,821,121 (*see, e.g,* D.I. 353 at 2-3, 8, 12).

Dr. Ligler was deposed on multiple days. The costs of each day of Dr. Ligler's deposition were as follows[3]:

- Court reporter and original deposition:

| | |
|---|---|
| 6/1/05 | $2,911.50 |
| 6/3/05 | $1,788.88 |
| 5/10/06 | $3,741.85 |
| 5/11/06 | $3,246.50 |

- Videotaping

| | |
|---|---|
| 6/1/05 | $1,947.63 |
| 6/3/05 | $1,112.81 |
| 5/10/06 | $1,587.50 |
| **TOTAL:** | **$16,336.67** |

(*See* Ex. C at ¶ 3.)

### 2. Joel Talcott

Joel Talcott is Ampex's General Counsel and served as Ampex's 30(b)(6) witness on numerous topics. Mr. Talcott provided deposition testimony regarding the prosecution of the '121 patent, the structure, function, and operation of the system embodying the subject matter of the '121 patent, certain prior art systems, and Ampex's knowledge of prior art systems. Mr. Talcott's deposition testimony was used to resolve numerous infringement and enforceability issues. By way of example, Defendants relied

---

[3]     In addition to the listed dates, Dr. Ligler was deposed on June 2, 2005. This deposition covered the same topics Dr. Ligler testified to during the other days of his deposition. Defendants, however, did not specifically cite to any testimony Dr. Ligler provided on June 2, 2005 in their successful motion for summary judgment or oppositions to Ampex's summary judgment motions and therefore do not request any costs associated with this day of Dr. Ligler's deposition.

on Mr. Talcott's deposition testimony in support of their Motion for Summary Judgment of Non-Infringement (*see, e.g.,* D.I. 304 at 6) and their successful opposition to Ampex's Motion for Summary Judgment that U.S. Patent No. 4,821,121 is Not Unenforceable Due To Inequitable Conduct (*see, e.g.,* D.I. 365 at 3, 7).  Defendants and Ampex also designated portions Mr. Talcott's deposition testimony for use at trial.  The parties exchanged initial and counter designations of Mr. Talcott's deposition testimony.

Mr. Talcott was deposed on multiple days. The costs of each day of Mr. Talcott's deposition were as follows[4]:

|  |  |  |
|---|---|---|
| • | Court reporter and original deposition: | |
| | 3/16/05 | $2,957.05 |
| | 3/17/05 | $1,792.20 |
| | **TOTAL:** | **$4,749.25** |

(*See* Ex. C at ¶ 4.)

### 3.  Charles Boncelet, Jr.

Charles Boncelet was another of Ampex's infringement experts.  His deposition testimony was used to resolve non-infringement in this case.  Defendants relied on Professor Boncelet's deposition testimony in their briefs in support of their successful Motion for Summary Judgment of Non-Infringement (*see, e.g.,* D.I. 304 at 9, 17, 18, 23, 27-31, 33; D.I. 409 at 9, 11) and their Claim Construction briefs (*see, e.g.,* D.I. 299 at 7, 9, 13).

---

[4]     In addition to the dates listed, Mr. Talcott was deposed on May 13, 2005, February 22, 2006 and February 23, 2006.  On May 13, 3005, Mr. Talcott testified regarding damages, a topic which the Court did not address before dismissing Ampex's claims.  Defendants therefore do not request any costs associated with this day of Mr. Talcott's deposition.  Mr. Talcott's February 22 and 23, 2006 depositions covered topics relating to Ampex's knowledge of prior art systems, an issue addressed in Defendants' successful opposition to Ampex's Motion for Summary Judgment that U.S. Patent 4,821,121 Is Not Unenforceable Due To Alleged Inequitable Conduct.  Defendants did not, however, specifically cite to any of Mr. Talcott's February 22 or 23, 2006 testimony in opposing Ampex's summary judgment motion.  Defendants therefore also do not seek the costs associated with these days of Mr. Talcott's deposition.

The costs of Professor Boncelet's deposition were as follows:

- Court reporter and original deposition:
  4/26/06                    $2,204.79

- Videotaping
  4/26/06                    $1,116.00

  **TOTAL:**                 **$3,320.79**

(*See* Ex. C at ¶ 5.)

### 4. Alan Cavallerano

Mr. Cavallerano, another of Ampex's experts, opined on the prosecution of the '121 patent, the alleged invention of the '121 patent, and certain prior art systems. Mr. Cavallerano's deposition testimony was used to resolve issues relating to infringement, claim construction, and invalidity. Defendants relied on Mr. Cavallerano's deposition testimony in their successful Motion for Summary Judgment of Non-Infringement (*see, e.g.,* D.I. 304 at 35; D.I. 409 at 15), their opening and reply Claim Construction briefs (*see, e.g.,* D.I. 299 at 8, 16-17, 29, 30, 35, 36, 39; D.I. 348 at 15, 17, 18, 24, 29, 31, 36), and their successful oppositions to Ampex's Motion for Summary Judgment that U.S. Patent No. 4,821,121 Is Not Unenforceable Due to Alleged Inequitable Conduct (*see, e.g.,* D.I. 365 at 8-13, 15, 22, 24-29), Ampex's Motion for Partial Summary Judgment that U.S. Patent No. 4,821,121 Is Not Anticipated (*see, e.g.,* D.I. 356 at 4-10, 12, 19-24), Ampex's Motion for Partial Summary Judgment That U.S. Patent No. 4,821,121 Is Not Invalid For Obviousness (*see, e.g.*, D.I. 360 at 3-5), and Ampex's Motion for Summary Judgment That The Quantel Paint Box Is Not Prior Art To U.S. Patent No. 4,821,121 (*see, e.g.,* D.I. 350 at 1, 5, 11, 13-16, 20-22).

The costs of Mr. Cavallerano's deposition were as follows:

- Court reporter and original deposition:

  5/3/06                         $3,671.23

- Videotaping:

  5/3/06                         $2,119.94

**TOTAL:**                    **$5,791.17**

(*See* Ex. C at ¶ 6.)

### 5.  Kendall L. Dinwiddie

Mr. Dinwiddie was another of Ampex's infringement experts.  Mr. Dinwiddie's

deposition testimony was used to resolve the issue of non-infringement.  In particular,

Defendants relied on Mr. Dinwiddie's deposition testimony in their successful Motion for

Summary Judgment of Non-Infringement (s*ee, e.g.,* D.I. 304 at 18).

The costs of Mr. Dinwiddie's deposition were as follows:

- Court reporter and original deposition:

  5/10/06                        $2,730.41

- Videotaping:

  5/10/06                        $2,033.31

**TOTAL:**                    **$4,763.72**

(*See* Ex. C at ¶ 7.)

### 6.  Daniel Beaulier

Daniel Beaulier is the named inventor of the '121 patent.  Mr. Beaulier provided

deposition testimony regarding the circumstances and scope of his alleged invention,

certain prior art systems, including the Quantel Paint Box system and the Ampex "AVA"

system, and Ampex's knowledge of prior art systems.  Defendants relied on Mr.

Beaulier's deposition testimony in their opening and reply Claim Construction briefs

(*see, e.g.,* D.I. 299 at 14, 18-19; D.I. 348 at 19) and in their successful oppositions to

Ampex's Motion for Summary Judgment That The Quantel Paint Box Is Not Prior Art To U.S. Patent No. 4,821,121 (*see, e.g.,* D.I. 350 at 13, 16, 22), and Ampex's Motion for Summary Judgment that U.S. Patent No. 4,821,121 Is Not Unenforceable Due to Alleged Inequitable Conduct (*see, e.g.,* D.I. 365 at 7, 25). Defendants and Ampex designated portions of Mr. Beaulier's deposition testimony for use at trial. The parties exchanged initial and counter designations of Mr. Beaulier's deposition testimony.

Mr. Beaulier was deposed on multiple days. The costs of Mr. Beualier's deposition were as follows:

- Court reporter and original deposition:

| | |
|---|---|
| 3/22/05 | $2,941.45 |
| 4/4/06 | $2,627.79 |

- Videotape:

| | |
|---|---|
| 4/4/06 | $1,875.97 |
| **TOTAL:** | **$7,445.21** |

(*See* Ex. C at ¶ 8.)

### 7. Junaid Sheikh

Junaid Sheikh is a former Ampex employee who worked on the design of certain prior art systems at issue in this litigation, including the Ampex AVA system. Mr. Sheikh testified at his deposition regarding the structure, function, and operation of the AVA. Defendants relied on Mr. Sheikh's deposition testimony in their opening and reply Claim Construction briefs (*see, e.g.,* D.I. 299 at 8; D.I. 348 at 8) and their successful oppositions to Ampex's Motion for Partial Summary Judgment that U.S. Patent No. 4,821,121 Is Not Anticipated (*see, e.g.,* D.I. 356 at 13, 24), and Ampex's Motion for Summary Judgment that U.S. Patent No. 4,821,121 Is Not Unenforceable Due to Alleged

Inequitable Conduct (*see, e.g.,* D.I. 365 at 8). Defendants and Ampex designated and exchanged portions of Mr. Sheikh's deposition testimony for use at trial.

The costs of Mr. Sheikh's deposition were as follows:

- Court reporter and original deposition:
  5/6/05                     $2,579.60

- Videotape:
  5/6/05                     $1,367.25

  **TOTAL:**               **$3,946.85**

(*See* Ex. C at ¶ 9.)

### 8. Leslie Oxley

Leslie Oxley was Ampex's designated 30(b)(6) witness regarding the features, functions, and operation of the Ampex AVA system. Defendants relied on Mr. Oxley's deposition testimony to successfully oppose Ampex's Motion for Summary Judgment That U.S. Patent No. 4,821,121 Is Not Unenforceable Due To Alleged Inequitable Conduct (*see, e.g.,* D.I. 365 at 8, 9, 17-18). Defendants and Ampex designated portions of Mr. Oxley's deposition for use at trial. The parties exchanged initial and counter designations of Mr. Oxley's deposition testimony.

The costs of Mr. Oxley's deposition were as follows:

- Court reporter and original deposition:
  3/17/05                    $1,181.35
  **TOTAL:**               **$1,181.35**

(*See* Ex. C at ¶ 10.)

### 9. Gregory Roth

Gregory Roth was one of the attorneys who prosecuted the application that led to the issuance of the '121 patent. Mr. Roth's deposition testimony, which pertained to the

prosecution of the '121 patent, was used to address invalidity and enforceability issues. Defendants relied on Mr. Roth's deposition testimony in their successful opposition to Ampex's Motion for Summary Judgment That U.S. Patent No. 4,821,121 Is Not Unenforceable Due To Alleged Inequitable Conduct (*see, e.g.,* D.I. 365 at 7). Defendants and Ampex also designated portions of Mr. Roth's deposition testimony for use at trial. The parties exchanged initial and counter designations of Mr. Roth's deposition testimony.

The costs of Mr. Roth's deposition were as follows:

- Court reporter and original deposition:
  5/16/05                                              $2,556.30
- Videotape:
  5/16/05                                              $1,553.63
  **TOTAL:**                                       **$4,109.93**

(*See* Ex. C at ¶ 11.)

### 10. Lawrence Evans

Lawrence Evans is a former Ampex employee who worked on the Ampex AVA prior art system. Defendants relied on Mr. Evans' deposition testimony to successfully oppose Ampex's Motion for Summary Judgment That U.S. Patent No. 4,821,121 Is Not Unenforceable Due To Alleged Inequitable Conduct (*see, e.g.,* D.I. 365 at 9, 15, 16). Defendants and Ampex designated portions of Mr. Evans' deposition testimony for use at trial to resolve validity and enforceability issues. The parties exchanged initial and counter designations of Mr. Evans' deposition testimony.

The costs of Mr. Evans' deposition were as follows:

- Court reporter and original deposition:
  2/21/06                                              $2,189.73
- Videotape:

|  |  |
|---|---|
| 2/21/06 | $1,911.00 |
| **TOTAL:** | **$4,100.73** |

(*See* Ex. C at ¶ 12.)

### 11. John McCommons

John McCommons is a former Ampex employee who worked on the system that allegedly embodies the subject matter of the '121 patent. Mr. McCommons submitted written trial testimony in the ITC regarding the reduction to practice of the alleged invention of the '121 patent and testified regarding these issues during his deposition. Mr. McCommons also testified regarding Ampex's knowledge of certain prior art systems, including the Quantel Paint Box system. Defendants relied on Mr. McCommons' deposition testimony to successfully oppose Ampex's Motion for Summary Judgment That U.S. Patent No. 4,821,121 Is Not Unenforceable Due To Inequitable Conduct (*see, e.g.*, D.I. 365 at 7, 10, 23). Defendants and Ampex designated portions of Mr. McCommons' deposition testimony for use at trial. The parties exchanged initial and counter designations of Mr. McCommons' deposition testimony.

The costs of Mr. McCommons' deposition were as follows:

- Court reporter and original deposition:

|  |  |
|---|---|
| 2/24/06 | $2,004.72 |

- Videotape:

|  |  |
|---|---|
| 2/24/06 | $1,505.00 |
| **TOTAL:** | **$3,509.72** |

(*See* Ex. C at ¶ 13.)

### TOTAL DEPOSITION COSTS SOUGHT BY DEFENDANTS:   $ 59,255.39

### C.     Defendants Request Only a Fraction of the Copying Costs They Expended

Prevailing parties may also recover copying costs pursuant to D. Del. Local Rule 54.1(b)(5) and 28 U.S.C. §1920.  These costs include expenses associated with copying exhibits required to filed and served, and the expense of copies of papers that are "necessarily obtained for use in the case."  *See* D. Del. Local Rule 54.1(b)(5); 28 U.S.C. §1920.

Defendants spent hundreds of thousands of dollars copying papers for use in this case.  Defendants do not, however, seek all of these costs.  Defendants do not, for example, seek the cost of copies made for office use, attorney preparation, or even the cost of copies made for trial preparation.  Defendants also do not seek the cost of all copies of documents they produced to Ampex in this litigation.  Instead, Defendants conservatively seek only the cost of *one copy of the pleadings and exhibits* they filed during this litigation.  *See Ochana v. Flores*, 206 F.Supp.2d 941, 946 (N.D. Ill. 2002) (even without verification explaining why copying costs should be permitted, costs for one copy are allowed).

- Copies of Pleadings (2,208 pages X \$.10 per copy):        \$ 220.80

- Copies of Exhibits to Pleadings (6,941 X \$.10 per copy):    \$ 694.10

(See Ex. C at ¶¶ 14-15.)

### TOTAL COPYING COSTS SOUGHT BY DEFENDANTS:        \$ 914.90

### D.     Defendants Seek Only a Portion of the Demonstrative Costs They Incurred

Under 28 U.S.C. § 1920, Fed. R. Civ. P. 54, and D. Del. Local Rule 54.1(b)(6), the costs of exemplifications, maps, and charts are recoverable.  These provisions allow

recovery of the costs of demonstrative aids. *See* 28 U.S.C. § 1920(4); *Mikel v. Kerr*, 499 F.2d 1178, 1182-83 (10th Cir. 1974) (28 U.S.C. § 1920 allows recovery of costs of maps, charts, and graphs necessarily obtained for use in case); *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427-28 (7th Cir. 2000) (costs under Fed. R. Civ. P. 54 include "a wide variety of exhibits and demonstrative aids"); *Eickhoff v. Vulcan Iron Works*, 2 F.R.D. 490, 491 (M.D. Pa. 1942) (cost of drawings offered to give court understanding of subject matter are taxable).

Defendants spent hundreds of thousands of dollars preparing demonstratives and visual aids in this litigation. By way of example, because Ampex did not drop its ITC complaint until weeks before the ITC trial was scheduled to begin, Defendants incurred tens of thousands of dollars in costs to prepare demonstratives for the ITC trial. Similarly, Defendants spent tens of thousands of dollars preparing demonstratives for trial in this forum. Defendants do not, however, seek to recover all of the exemplification costs they incurred. Rather, Defendants seek only the costs they expended to prepare illustrative and demonstrative aids that they used at the January 12, 2006 technology tutorial and the July 13, 2006 Markman and Summary Judgment Hearing. *See* 28 U.S.C. § 1920(4); *In re Kulicke & Soffa Indus., Inc. Securities Lit,* 747 F.Supp. 1136, 1147 (E.D. Pa. 1990) (allowing recovery of costs of preparing demonstratives); *Advance Bus. Sys. & Supply Co. v. SCP Corp.*, 287 F.Supp. 143, 164 (D.Md. 1968) (28 U.S.C. § 1920 allows recovery of costs of maps, charts, and graphs necessarily obtained for use in case).

Moreover, even with respect to this subset of demonstrative expenses, Defendants seek to recoup only the amount they were billed by the legal graphics company, Fulcrum Legal Graphics, that helped them prepare the visual aids that were shown to the Court.

Defendants do not seek the costs they incurred editing and revising the demonstratives that Fulcrum Legal Graphics helped to prepare.

- Costs to prepare demonstrative and visual aids for
  January 12, 2006 Technology Tutorial:                       $59,685.77

- Costs to prepare demonstrative and visual aids for
  July 13, 2006 Markman and Summary Judgment Hearing:        $25,142.41

(*See* Ex. C at ¶¶ 16-17.)

**TOTAL DEMONSTRATIVE COSTS SOUGHT BY DEFENDANTS:     $84,828.18**

## IV.     CONCLUSION

Pursuant to 28 U.S.C. § 1920, Rule 54(d) of the Federal Rules of Civil Procedure, and District of Delaware Local Rule 54.1, Defendants respectfully request $59,255.39 in deposition costs, $914.90 in copying costs, and $84,828.18 in demonstrative costs, totaling $144,998.47.

CONNOLLY BOVE LODGE & HUTZ LLP


_____ */s/ Collins J. Seitz, Jr.* _____
Collins J. Seitz, Jr. (#2237)
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com
***Attorneys for Defendants Eastman Kodak
 Company and Altek Corporation***

*Of Counsel:*

William F. Lee
Michael J. Summersgill
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

S. Calvin Walden
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Tel: (212) 230-8800

Date:  February 19, 2008

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 19, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

| Jack B. Blumenfeld, Esquire<br>Julia Heaney, Esquire<br>Morris, Nichols, Arsht & Tunnell<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19899 | |
|---|---|

I further certify that on this same date I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record, and by Federal Express and e-mail on the following counsel of record:

| Jesse J. Jenner, Esquire<br>Ropes & Gray LLP<br>1251 Avenue of the Americas<br>New York, NY 10020 | Norman H. Beamer, Esquire<br>Ropes & Gray LLP<br>525 University Avenue<br>Palo Alto, CA 94301 |
|---|---|

      */s/ Collins J. Seitz, Jr.*
Collins J. Seitz, Jr. (Bar No. 2237)
cseitz@cblh.com